**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------x
In re                                        Chapter 11

The Weinstein Company Holdings LLC *et al.*   Case No. 18-10601

                      Debtors.

------------------------------------------------------------x

**INITIAL PROTECTIVE OBJECTION AND RESERVATION OF**
**RIGHTS OF FPF LENDING, LLC TO DEBTORS' MOTION**
**FOR ORDERS (I) APPROVING THE DIP FACILITY, (II) AUTHORIZING USE**
**OF CASH COLLATERAL, (III) PROVIDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE**
**PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) GRANTING**
**RELATED RELIEF AND (VII) SCHEDULING A FINAL HEARING**

FPF Lending, LLC (the "New Party Lender") by and through its undersigned counsel, hereby filed this Initial Protective Objection and Reservation of Rights (the "Protective Objection") to the *Debtors' Motion for Orders (I) Approving the DIP Facility, (II) Authorizing Use of Cash Collateral, (III) Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Granting Related Relief, and (VII) Scheduling a Final Hearing* [Docket No. 11] (the "DIP Motion").[1]  In support hereof, the New Party Lender respectfully states as follows:

**PROTECTIVE OBJECTION**

1. The Debtors acknowledge that they received DIP financing offers on better economic terms and with lighter restrictions on the operation of their business than those included in the DIP Facility.  *See* DIP Motion ¶ 27; Del Genio Aff, ¶¶ 66-68. Indeed, the Debtors reference what is believed to be the New Party Lender's proposal, which the Debtors state offered compelling terms that resulted in the parties moving forward with definitive documentation. *See Id*. Despite the Debtors' statements about the fast paced prepetition diligence

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion.

{00022619. }

process and potential challenges in understanding the complex capital structure, the Debtors concede (as they must) that ultimately it was the Debtors who determined to move forward with the current DIP Facility with the Union Bank as the New Party Lender never exercised a due diligence out nor indicated any intention of doing so. What is difficult to understand is the business reason why the estate fiduciaries would do so. The New Party Lender remains committed to providing postpetition financing on *more favorable* terms and has repeatedly made the Debtors aware of such commitment. Thus, to the extent any interim relief is granted, it should be limited and restricted to what the Debtors demonstrate is truly needed "to avoid immediate and irreparable harm to [the Debtors and their estates] pending the final hearing. Local Rule 4001-2(b).

2. The DIP Motion requests the Court approve at the interim hearing, on less than fourteen hours notice, $2 million in fees comprised of the Upfront Fee, Exit Fee and Backstop Fee (which amount does include the monthly Agent Fee) to loan $7.5 million for the interim period pending a Final Hearing. Such extraordinary relief is not only unnecessary, it is also detrimental to the Debtors estates and forever precludes any alternative financing in the future, including financing that the Debtors themselves found compelling. Moreover, given the notoriety of these proceedings and that they are well covered by the media and closely monitored, the proceedings will be subject to scrutiny and critique. Thus, the integrity of the process and transparency requires consideration of the issues raised in this Protective Objection and only the scope of relief necessary for the Debtors to get through to a Final Hearing.

3. The terms proposed by the New Party Lender will likely be attractive to an official committee of unsecured creditors and a yet to be appointed committee should not be foreclosed from the opportunity to consider alternatives that would be beneficial to the estates and their creditors. These circumstances, as well as the highly unusual circumstances that precipitated the filing of these Chapter 11 Cases warrant caution.

4. Accordingly, the relief granted in the DIP Motion should be limited as follows:

(a) *Upfront Fee*: The Upfront Fee of 2% should only apply to the initial interim funding amount which, based on the Debtors' forecast, is the maximum amount required by the Debtors for the next four weeks of these Chapter 11 Cases.

(b) *Exit Fee*: Approval of a 2% Exit Fee is premature and unnecessary at this time. The Exit Fee should be considered at the Final Hearing.

(c) *Backstop Fee*. The Backstop Fee adds an additional $1 million in principal to the DIP Facility. The Backstop Fee is substantial and based on final relief and should be considered only at a Final Hearing.

5. The New Party Lender is committed to providing financing on more favorable terms set forth below:

| Key DIP Terms | Current DIP Facility | New Party Lender |
|---|---|---|
| *Interest Rate* | LIBOR + 950 with a 1.5% LIBOR floor (current three month LIBOR is 2.2%) | 7% |
| *Default Rate* | 3% | 2% |
| *Scheduled Maturity Date* | 125 days | 140 days |
| *Milestones* | Inextricably tied to the sale process and milestones, including events of default for failure to reach specific milestones | Provide time cushion between a sale milestone and event of default |
| *Permitted Variance* | $600,000 | $750,000 |
| *Priming Liens* | DIP Lender is priming its own prepetition liens | No priming liens |
| *Backstop Fee* | 4% | None |

6. There is a real benefit (and no harm) in allowing an open and competitive process to proceed and tailoring the relief granted on the first day of these Chapter 11 Cases. The DIP Lender is certainly adequately protected because it will among other things, receive pay downs on both its prepetition outstanding obligations and postpetition obligations directly from the

receipts set aside in a lockbox account and placed in an account controlled by the DIP Lender with the ability to regularly sweep the account. *See* Cash Management Motion, ¶¶ 14, 18; DIP Motion ¶ 31(v); DIP Credit Agreement § 2.03(b). It appears the DIP Lender will utilize those set aside funds in accordance with the DIP Credit Agreement, 50% of which is will be used to pay down prepetition obligation and 50% of which will be used to pay down postpetition obligations on an ongoing basis.

7.  In sum, given the context and unique circumstances of these proceedings, this aspect of relief (particularly on fourteen hours notice) should be especially scrutinized and tailored to what is truly a demonstrable need. In order to not prevent consideration of alternative financing and irreversibly harm the estates, the approximately $2.2 million in extraneous fees should not be considered or approved until a Final Hearing.

## **RESERVATION OF RIGHTS**

8.  The New Party Lender reserves its rights to supplement, modify and amend this Protective Objection in writing or orally at or prior to any hearing on the DIP Motion. In addition, the New Party Lender reserves all other rights, including but not limited to, all rights relating to any prepetition breaches by the Debtors or other parties of the respective governing term sheets or other agreements.

## **CONCLUSION**

**WHEREFORE**, the New Party Lender respectfully requests that the Court tailor and limit the relief granted in the DIP Motion as set forth herein and grant other and further relief as is just and proper.

Dated: March 20, 2018
      New York, New York

**ARENT FOX LLP**

*/s/ Robert M. Hirsh*
Robert M. Hirsh
Beth M. Brownstein
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: robert.hirsh@arentfox.com
      beth.brownstein@arentfox.com

*Counsel for FPF Lending, LLC*