**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re:

THE WEINSTEIN COMPANY HOLDINGS
LLC, *et al.*,

Debtors.[1]

-------------------------------------------------------------x

: Chapter 11
:
: Case No. 18-10601 (MFW)
:
: Jointly Administered
:
: Re: Docket No. 11

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) AND 364(e) AND (B) UTILIZE CASH COLLATERAL OF PRE-PETITION SECURED ENTITIES, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED ENTITIES, (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c), AND (IV) GRANTING RELATED RELIEF

This matter is before the Court on the motion dated March 19, 2018 (the "Motion")[2] of The Weinstein Company Holdings LLC ("TWC Holdings") and its affiliated debtors, as debtors-in-possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (collectively, the "Chapter 11 Cases"), for entry of an interim order (this "Interim Order") and a final order ("Final Order"), under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rule 4001-2 and 9103-1 of the Local

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] All defined terms shall have the meaning ascribed to them in the Motion or DIP Credit Agreement (as defined below) unless otherwise defined herein.

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things:

(1)    authorization for TWC Holdings, The Weinstein Company LLC ("TWC"), and TWC Domestic LLC ("TWCD"), as debtors and debtors-in-possession (each a "DIP Borrower" and, collectively, the "DIP Borrowers"), to obtain post-petition financing (the "DIP Facility") and for the remaining Debtors (each a "DIP Guarantor" and collectively, the "DIP Guarantors"), as debtors and debtors-in-possession, to guarantee unconditionally the DIP Borrower obligations under the DIP Facility, consisting of a delayed draw term loan facility (the "DIP Facility Loans") in the aggregate maximum principal amount of up to $25 million, of which up to $7,500,000 (the "Interim Advance") shall be advanced upon the entry of this Interim Order, with MUFG Union Bank, N.A., formerly known as Union Bank, N.A. ("MUFG"), as administrative agent (in such capacity, the "DIP Agent") for itself and the DIP Lenders (as defined below), subject and pursuant to the terms of this Interim Order, that certain Debtor-In-Possession Loan and Security Agreement by and among the DIP Borrowers, the DIP Guarantors, the DIP Agent, and the lenders party thereto (the "DIP Lenders"), which shall be in form and substance acceptable to the DIP Agent and the DIP Lenders and substantially similar to the form attached hereto as Exhibit A (as the same may be amended, restated, supplemented or otherwise modified from time to time pursuant to the terms thereof, the "DIP Credit Agreement") and any related documents and instruments delivered pursuant to or in connection therewith (collectively, and together with the DIP Credit Agreement, the "DIP Loan Documents").

(2)    authorization for the Debtors to (i) execute and enter into the DIP Loan Documents and (ii) perform such other and further acts as may be required in connection with the DIP Loan Documents;

(3)     authorization for the Debtors to grant (i) valid, enforceable, nonavoidable and fully perfected security interests and liens (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and consensual priming liens pursuant to section 364(d) of the Bankruptcy Code on Pre-Petition Collateral (as defined below)) to the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders (collectively, the "DIP Secured Parties") on all DIP Collateral (as defined below) to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "DIP Obligations"), subject and subordinate only to any Permitted Third-Party DIP Liens (as defined below) and those security interests in and liens on DIP Collateral (other than the Pre-Petition Liens (as defined below)) that, as of the Petition Date, were valid, enforceable and nonavoidable (collectively, "Pre-Petition Third-Party Liens") and (ii) subject to the Carve-Out (as defined below) and any Permitted Third-Party DIP Indebtedness (as defined below), superpriority claims (including a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code) to the DIP Agent, for the benefit of the DIP Secured Parties, having recourse to all pre-petition and post-petition property of the Debtors' estates, now owned or hereafter acquired, including, solely upon entry of the Final Order, proceeds of Avoidance Actions (as defined below), whether received by judgment, settlement or otherwise;

(4)     authorization for the Debtors' use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (but excluding any cash collateral subject to Pre-Petition Third-Party Liens) ("Cash Collateral") solely in accordance with the DIP Loan Documents (including, with respect to the proceeds of the DIP Facility Loans comprising Cash Collateral, the Approved Budget (as defined below) then in effect (the initial version of which is attached hereto as Exhibit B), subject to the Permitted Variance (as defined below)), and the

collection and application of Cash Collateral, in each case pursuant to the terms and conditions set forth in this Interim Order and the DIP Credit Agreement;

(5)    authorization to provide adequate protection of the liens and security interests (i) granted by TWCD and TWC (collectively, the "Pre-Petition Obligors") for the benefit of the pre-petition secured lenders holding loans (such lenders in such capacities, the "Pre-Petition Lenders") under that certain Second Amended and Restated Credit and Security Agreement, dated as of September 30, 2013 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "Pre-Petition Credit Agreement"), among TWCD, as Borrower, the Pre-Petition Lenders, and MUFG as Agent (in such capacity, the "Pre-Petition Agent") and (ii) securing the obligations of the Pre-Petition Obligors under the Pre-Petition Credit Agreement, the Pre-Petition Security Documents (as defined below) and all collateral and ancillary documents executed or delivered in connection therewith, including without limitation the Master Distribution Agreement and the Master Services Agreement (each as defined in the Pre-Petition Credit Agreement) (the "Pre-Petition Loan Documents"), as more fully set forth in this Interim Order;

(6)    subject to entry of a Final Order, the waiver by the Debtors of any right to surcharge the Pre-Petition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(7)    an emergency interim hearing (the "Interim Hearing") on the Motion for this Court to consider entry of this Interim Order, which, among other things, (i) authorizes TWC Holdings to obtain from the DIP Lenders under the DIP Facility up to $7,500,000 of DIP Facility Loans, on an interim basis, (ii) authorizes the Debtors' use of the Cash Collateral solely in accordance with the DIP Loan Documents (including, with respect to the proceeds of the DIP Facility Loans comprising Cash Collateral, the Approved Budget), subject to the Permitted

Variance, on an interim basis; (iii) grants the adequate protection in the relative priorities set forth herein; and (iv) grants the superpriority administrative claims as described herein;

(8)     the scheduling of a final hearing (the "Final Hearing") on the Motion no later than 35 days after the Petition Date, to consider entry of a Final Order granting the relief requested in the Motion on a final basis in form and substance acceptable to the DIP Agent (as to the DIP Facility) and the Pre-Petition Agent (as to the use of Cash Collateral);

(9)     modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the (i) Debtors, (ii) DIP Agent and DIP Lenders, and (iii) Pre-Petition Agent and Pre-Petition Lenders to implement the terms of this Interim Order; and

(10)     waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order.

The initial hearing on the Motion having been held by this Court on March [●], 2018; and this Court having found that, under the circumstances, due and sufficient notice of the Motion and Interim Hearing was provided by the Debtors as set forth in Paragraph [C] below, and this Court having considered all the pleadings filed with this Court; and having overruled all unresolved objections to the relief granted in this Interim Order; and upon the record made by the Debtors at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor:

**BASED ON THE FOREGOING AND THE RECORD MADE AT THE HEARINGS AND PURSUANT TO PAPERS FILED IN THESE CHAPTER 11 CASES, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:**

      A.    **Petition Date**. On March 19, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition (collectively, the "Petitions") with this Court commencing the Chapter 11 Cases. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

      B.    **Jurisdiction; Venue**.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 and 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(b) and 9014 and Local Rule 4001-2.  Venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    **Notice**.  The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on March [●], 2018, to certain parties-in-interest, including:  (i) the Office of the United States Trustee for the District of Delaware, (ii) the 30 largest non-insider unsecured creditors of the Debtors on a consolidated basis, (iii) MUFG, as DIP Agent and Pre-Petition Agent, (iv) Sidley Austin, LLP, as counsel to MUFG, (v) the Internal Revenue Service, (vi) the Securities and Exchange Commission and (vii) the United States Attorney for the District

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

of Delaware.  Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

        D.     **Debtors' Stipulations With Respect to Pre-Petition Obligations**. Subject to the limitations described below in Paragraph 15, the Debtors hereby admit, acknowledge, agree and stipulate that:

        (i)     As of the Petition Date, the Pre-Petition Obligors were truly and justly indebted, to the Pre-Petition Agent and the Pre-Petition Lenders (collectively, the "Pre-Petition Secured Parties"), without defense, counterclaim or offset of any kind, pursuant to the Pre-Petition Loan Documents in the aggregate principal amount of $156,411,347 in respect of the loans made under the pre-petition revolving credit facility (the "Pre-Petition Loans"), *plus* accrued and unpaid interest at the default rate with respect thereto and any additional fees, costs and expenses (including any fees and expenses of attorneys, financial advisors, and other professionals that are chargeable or reimbursable under the Pre-Petition Loan Documents) now or hereafter due under the Pre-Petition Credit Agreement and the other Pre-Petition Loan Documents (collectively, together with all other obligations of the Pre-Petition Obligors arising under the Pre-Petition Loan Documents (including, without limitation, the "Obligations" as defined in the Pre-Petition Credit Agreement and the Pre-Petition ), the "Pre-Petition Obligations").

        (ii)     pursuant to certain security agreements, blocked account, lockbox and pledged account control agreements, assignments, equity pledge agreements, escrow agreements, Pledgeholder Agreements (as defined in the Pre-Petition Credit Agreement), Laboratory Access Letters (as defined in the Pre-Petition Credit Agreement), and other

collateral documents and agreements (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, collectively, the "Pre-Petition Security Documents"), and the other Pre-Petition Loan Documents, TWCD granted to and/or for the benefit of the Pre-Petition Secured Parties first priority (subject only to Permitted Priority Liens (as defined below)), valid, perfected and enforceable security interests and liens (the "Pre-Petition Liens") in and on substantially all of TWCD's personal property, both tangible and intangible, including *inter alia*, all Transferred Assets (as defined in the Pre-Petition Credit Agreement), all goods, accounts, instruments, intercompany obligations, partnerships and joint venture interests, contract rights (including, without limitation, any rights of TWCD to demand and receive any committed but unfunded equity and the rights of TWCD under the Pre-Petition Loan Documents), documents, chattel paper, general intangibles, goodwill, equipment, machinery, inventory, investment property, copyrights, trademarks, trade names, insurance policies, insurance proceeds, cash, the Collateral Accounts (as defined in the Pre-Petition Credit Agreement), any Hedge Agreements (as defined in the Pre-Petition Credit Agreement), deposit accounts, all items on deposit in or otherwise held in or credited to any Collateral Account, money, commercial tort claims, letters of credit, letter of credit rights, and the proceeds of and recoveries received on account of the foregoing, all as more particularly described in the Pre-Petition Security Documents and other Pre-Petition Loan Documents (the "Pre-Petition Collateral");

(iii)    (a) the Pre-Petition Obligations constitute legal, valid and binding Obligations (as defined in the Pre-Petition Credit Agreement) of TWCD (and TWC under that certain Amended and Restated Guaranty, dated as of March 30, 2012, by TWC, as

Guarantor, in favor of and for the express benefit of the Pre-Petition Agent); (b) no offsets, defenses or counterclaims to the Pre-Petition Obligations exist; (c) no portion of the Pre-Petition Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Pre-Petition Loan Documents are valid and enforceable by the Pre-Petition Agent for the benefit of the Pre-Petition Secured Parties against each of the applicable Debtors; (e) the liens and security interests of the Pre-Petition Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Pre-Petition Collateral, having the priority set forth in the Pre-Petition Loan Documents and subject and subordinate only to (after giving effect to any applicable intercreditor or subordination agreement) Permitted Priority Liens;[4] (f) the Pre-Petition Obligations constitute allowed secured claims against the applicable Debtors' estates; and (g) no claim of or cause of action held by the Debtors exists against the Pre-Petition Agent, any of the Pre-Petition Lenders, or any of their respective agents, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Pre-Petition Loan Documents (or the transactions contemplated thereunder), the Pre-Petition Obligations or the Pre-Petition Liens, including without limitation, any right to assert any disgorgement or recovery; and

---

[4] Nothing shall prejudice the rights of any party-in-interest including, but not limited to, the Debtors, the Pre-Petition Agent and the Pre-Petition Lenders to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such liens and/or security interests.

(iv)    all of TWCD's cash, including any cash in all deposit accounts and collection accounts, wherever located, comprising proceeds of or otherwise arising from or relating to the Pre-Petition Collateral, constitutes Cash Collateral of the Pre-Petition Secured Parties.

E.    **Budget for DIP Facility**.  Attached hereto as Exhibit B is a cash-flow budget setting forth all projected unencumbered and unrestricted cash receipts and cash disbursements (by line item) on a weekly basis for the 18-week period commencing on the Petition Date (the "Initial Approved Budget").    The Initial Approved Budget may be modified or supplemented from time to time by additional budgets prepared by the Debtors and consented to in advance by the DIP Agent, the Majority DIP Lenders, the Pre-Petition Agent, and the Required Lenders, in their respective sole and absolute discretion, without subsequent notice to or order of the Court (each such additional budget, a "Supplemental Approved Budget" and together with the Initial Approved Budget, the "Approved Budget"); provided, however, that the Debtors shall provide a supplement to the Approved Budget every four calendar weeks as set forth in section 6.02(l) of the DIP Credit Agreement, and any such supplement, if approved by the DIP Agent and the Pre-Petition Agent shall become part of the Approved Budget without subsequent notice to or order of the Court.  The Initial Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Secured Parties to provide the DIP Facility and consent to this Interim Order and by the Pre-Petition Secured Parties to permit the use of the Cash Collateral and consent to this Interim Order.  The Debtors represent and warrant to the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders and this Court that the Initial Approved Budget includes and contains the Debtors' best estimate of all operational receipts that are unencumbered and unrestricted and all operational disbursements,

fees, costs and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the period covered by the Initial Approved Budget and that such operational disbursements, fees, costs and other expenses will be timely paid in the ordinary course of business solely pursuant to and in accordance with the Initial Approved Budget unless such operational disbursements, fees, costs and other expenses are not incurred or otherwise payable. The Debtors further represent that the Initial Approved Budget is achievable and will allow the Debtors to operate in the Chapter 11 Cases, sell substantially all of their assets, as authorized by the Court, and pay postpetition obligations as they come due. Pursuant to the terms of the DIP Credit Agreement, the Debtors shall provide on a weekly basis to the DIP Agent and the Pre-Petition Agent a report, in form and scope reasonably acceptable to the DIP Agent, comparing the actual disbursements and receipts of the Debtors for the preceding week with the disbursements and receipts contained in the Approved Budget, on a line-by-line basis, for the preceding one-week period and the preceding four-week period and include an explanation of any variances for each line item. The Debtors shall be permitted a variance between the Approved Budget and the actual cash flow without triggering the occurrence of an Event of Default (as defined in the DIP Credit Agreement) as follows: for any four-week rolling period, the Debtors' actual total disbursements, excluding disbursements with respect to professional and advisor fees, shall not exceed the budgeted total disbursements in the Approved Budget by more than $600,000, in the aggregate, which requirement shall be tested, initially, upon the completion of three calendar weeks following the Petition Date and, thereafter, on a weekly basis (the "Permitted Variance"). The Debtors shall operate solely in accordance with the Approved Budget and all disbursements of the Debtors shall be consistent with the provisions of the Approved Budget, subject to the Permitted Variance.

F.    **Immediate Need for Funding**.    Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the DIP Facility and authorized use of Cash Collateral.    As a result of the Debtors' financial condition, the use of Cash Collateral alone will be insufficient to meet the Debtors' immediate postpetition liquidity needs. The Debtors' ability to maintain business relationships with their vendors, suppliers and distributors, pay their employees, consummate the sale process described to the Court at the Interim Hearing and otherwise finance their operations prior to the consummation of such sale is essential to the Debtors' continued viability and to their ability to maximize the value of their assets.    In the absence of the DIP Facility and the authorization by this Court to use Cash Collateral, the Debtors' businesses and estates would suffer immediate and irreparable harm, including, without limitation, a cessation of substantially all of their operations.    The preservation, maintenance and enhancement of the going concern value of the Debtors are of the utmost significance and importance to a successful restructuring or going concern sale of assets of the Debtors under chapter 11 of the Bankruptcy Code.    Use of Cash Collateral and the DIP Facility will also permit the Debtors to preserve the enterprise value of their businesses pending the sale of their assets.

G.    **No Credit on More Favorable Terms**.    Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors are unable to obtain sufficient interim and long-term financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and the DIP Loan Documents, and are not able to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.    The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2)

and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement without the Debtors (i) granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, any Permitted Third-Party DIP Indebtedness and any Permitted Third-Party DIP Liens, (a) the DIP Superpriority Claims (as defined below) and (b) the DIP Liens (as defined below) in the DIP Collateral (as defined below), in each case under the terms and conditions set forth in this Interim Order and the DIP Loan Documents and (ii) providing the Pre-Petition Secured Parties the adequate protection as provided herein.

        H.    **Reasonable; Good Faith**.  The DIP Lenders have indicated a willingness to provide post-petition secured financing to the Debtors but solely on the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the DIP Facility to be provided by the DIP Lenders and the authorization to use the Cash Collateral to be provided by the Pre-Petition Agent, on behalf of the Pre-Petition Lenders, represents the best financing presently available to the Debtors.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (i) the terms and conditions of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Facility has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders and (iii) any credit extended, loans made and other financial accommodations extended to the Debtors by the DIP Lenders have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

I.     **Use of DIP Proceeds and Cash Collateral**.  An immediate and critical need exists for the Debtors to use the proceeds of the DIP Facility to continue to operate their businesses, pay wages, maintain business relationships with vendors, suppliers and distributors, and generally conduct their business affairs so as to avoid immediate and irreparable harm to their estates and the value of their assets and to use Cash Collateral to make adequate protection payments.

J.     **Consent by Pre-Petition Secured Parties**.  The Pre-Petition Secured Parties have consented to (i) the financing arrangements contemplated by this Interim Order and the DIP Loan Documents and (ii) Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in this Interim Order and the DIP Credit Agreement, and such consent is binding on all Pre-Petition Secured Parties.

K.     **Adequate Protection**.  The adequate protection provided to the Pre-Petition Secured Parties on account of any diminution in the value of such parties' respective interests in the Pre-Petition Collateral from and after the Petition Date, including, without limitation, resulting from the DIP Facility, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Pre-Petition Collateral in accordance with sections 361, 362 and 363 of the Bankruptcy Code.  The consent of the Pre-Petition Secured Parties to the priming of their liens by the DIP Liens (i) does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Pre-Petition Secured Parties that their respective interests in the Pre-Petition Collateral are adequately protected pursuant to this Interim Order or otherwise, and (ii) is conditioned upon entry of this Interim Order and does not and shall not be deemed to constitute consent to the priming of the Pre-Petition Liens other than pursuant to this Interim Order and the terms set forth herein.  The

14

adequate protection provided herein and other benefits and privileges contained herein are necessary in order to protect the Pre-Petition Secured Parties from the diminution in value of their Pre-Petition Collateral and obtain the foregoing consents and agreements. Nothing herein shall prevent the Pre-Petition Secured Parties from seeking additional adequate protection to the extent permitted by law.

L.      **Good Cause Shown; Best Interest**.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b).    Absent entry of this Interim Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and that entry of this Interim Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for either a successful reorganization or the sale of all or substantially all of their assets pursuant to any subsequent orders of this Court.

M.      **No Liability to Third Parties**.  The Debtors stipulate and the Court finds that in making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in accepting the Interim Approved Budget or any future Supplemental Approved Budget or in taking any other actions permitted by this Interim Order or the DIP Loan Documents, none of the DIP Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

N.      **Section 552**.  In light of the subordination of their liens and super-priority administrative claims (i) in the case of the DIP Secured Parties, to the Carve-Out, the Pre-

Petition Third-Party Liens and any Permitted Third-Party DIP Liens and (ii) in the case of the Pre-Petition Secured Parties to the Carve-Out and the DIP Liens, each of the DIP Secured Parties and the Pre-Petition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply to any of the DIP Secured Parties or the Pre-Petition Secured Parties with respect to the proceeds, products, rents, issues or profits of any of the DIP Collateral or the Pre-Petition Collateral, and no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the DIP Collateral or the Pre-Petition Collateral under section 552(b) of the Bankruptcy Code. Subject to and immediately upon entry of the Final Order, the Debtors shall be deemed to have irrevocably waived, and to have agreed not to assert, any claim or right under sections 552 or 726 of the Bankruptcy Code seeking to avoid the imposition of the DIP Liens, Pre-Petition Liens or the Adequate Protection Liens on any property acquired by any of the Debtors or any of their estates.

O.    **Findings Regarding Corporate Authority**.  Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

P.    **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

16

1. **Approval of Interim Order**. The Motion is approved on the terms and conditions set forth in this Interim Order. Any objections to the relief granted in this Interim Order that have not previously been withdrawn are hereby overruled. This Interim Order shall become effective immediately upon its entry.

2. **Approval of DIP Loan Documents; Authority Thereunder**. The Debtors are hereby authorized to enter into the DIP Loan Documents, including the DIP Credit Agreement, and such additional documents, instruments and agreements as may be required or requested by the DIP Agent and the DIP Lenders to implement the terms or effectuate the purposes of this Interim Order. The Debtors are authorized to comply with and perform all of the terms and conditions contained in the DIP Loan Documents, and directed to repay amounts borrowed, together with interest and fees thereon (including, without limitation, the fees in section 2.07 of the DIP Credit Agreement), as well as any other outstanding DIP Obligations to the DIP Lenders in accordance with and subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order.

3. **Authorization to Borrow DIP Facility Loans and Use Cash Collateral**. Upon finalizing and executing the DIP Credit Agreement and the other DIP Loan Documents, the DIP Borrowers are immediately authorized to borrow from the DIP Lenders, and the Guarantors are immediately authorized to guaranty, initial borrowings under the DIP Facility of up to an aggregate principal amount of $7,500,000 of DIP Facility Loans, subject to and in accordance with the terms of this Interim Order and the DIP Credit Agreement. The Debtors are authorized to use the proceeds of the DIP Facility Loans and the Cash Collateral solely in accordance with the terms of the DIP Loan Documents (including, with respect to the proceeds of the DIP Facility Loans comprising Cash Collateral, the Approved Budget) and this Interim

Order.  Authorization to use the Proceeds of the DIP Facility Loans and the Cash Collateral will terminate upon the earliest to occur of (a) the Scheduled Termination Date (as defined in the DIP Credit Agreement); (b) the date of acceleration of the DIP Loans or termination of the commitments under the DIP Credit Agreement pursuant to an Event of Default; (c) the date of termination of the commitments under the DIP Credit Agreement in accordance with Section 2.04 thereof; (d) the first business day on which this Interim Order expires by its terms or is terminated, unless the Final Order has been entered and become effective prior thereto; (e) conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Agent and the "Required Lenders" under the DIP Credit Agreement (the "Majority DIP Lenders"); (f) dismissal of any of the Chapter 11 Cases, unless otherwise consented to in writing by the DIP Agent and the Majority DIP Lenders; (g) the date of consummation of the sale of substantially all assets of the Borrowers and the Guarantors or the sale of substantially all assets of the Borrowers and the Guarantors comprising Pre-Petition Collateral; and (h) the effective date of any Debtor's plan of reorganization or liquidation confirmed in the Chapter 11 Cases (the "Termination Date"), unless extended pursuant to the terms of the DIP Credit Agreement.

    4.  **Collections and Disbursements.** From the Petition Date until the DIP Obligations have been paid in full in cash, all cash receipts, Cash Collateral and all proceeds from the sale or other disposition of, or other revenue of any kind attributable to, any DIP Collateral that is now in, or shall hereafter come into, the possession or control of any of the Debtors, or to which any of the Debtors is now or shall hereafter become entitled shall be (i) subject to the DIP Liens and the Adequate Protection Liens (and shall be treated in accordance with this Interim Order and the DIP Credit Agreement) and (ii) to the extent related to or arising

from or in connection with Pre-Petition Collateral, promptly deposited only into the Collection Account. All such amounts arising from or in connection with the Pre-Petition Collateral shall be applied to the payment of outstanding DIP Obligations in accordance with the DIP Credit Agreement; provided, however, that, subject to the DIP Agent's right, at the direction of the Majority DIP Lenders, to revoke in writing its consent to such application (as set forth in the Credit Agreement) and subject to disgorgement to the extent of a final and non-appealable Challenge, on each Settlement Date (as defined below) 50% (or, at the election of the Majority DIP Lenders, a greater percentage) of all amounts on deposit in the Collection Account shall be applied, as adequate protection, to repayment of the Pre-Petition Obligations in accordance with the Pre-Petition Loan Documents and this Interim Order.

5.      **Perfection in Cash.**  Subject to the Carve Out and the other provisions of this Interim Order, all financial institutions with which the Debtors maintain accounts containing Cash Collateral are authorized and directed to comply with any request of the DIP Agent to turn over to the DIP Agent all Cash Collateral therein without offset or deduction of any kind. The DIP Agent shall enjoy the benefit of (i) all deposit account control agreements, escrow agreements (including the Escrow Agreement (as defined in the Pre-Petition Credit Agreement)), Pledgeholder Agreements, and Laboratory Access Letters to which the Pre-Petition Agent is a party and (ii) subject and subordinate to the rights of the holders of any Third-Party Pre-Petition Liens and any Permitted Third-Party DIP Liens, all other deposit account control agreements, escrow agreements, Pledgeholder Agreements, and laboratory access letters to which any Debtor is a party.  Notwithstanding and without minimizing the force of the foregoing, the Debtors are authorized and directed to enter into, and cause the financial institutions servicing the Debtors' deposit accounts to enter into, such deposit account control agreements and other collateral

agreements with the DIP Agent and such financial institutions as the DIP Agent may require, or alternatively, the DIP Agent shall be entitled to enjoy the benefit of all control agreements to which the Debtor is a party, as set forth above, without the need to enter into any such new agreements.

6. **Interest on DIP Facility Loans**.    The rate of interest to be charged for the DIP Facility Loans and any other extensions of credit to the Debtors pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.

7. **Payment of DIP Fees and Expenses**.    The Debtors are authorized and directed to pay (i) all fees when due under the DIP Credit Agreement (including, without limitation, any fees provided for under section 2.07 of the DIP Credit Agreement) in the amounts set forth in the DIP Credit Agreement and (ii) all costs, expenses and any other fees or other amounts payable under the terms of the DIP Loan Documents and all other reasonable, documented, out-of-pocket costs and expenses of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents (including, without limitation, the reasonable, out-of-pocket fees, costs and expenses of Sidley Austin LLP ("Sidley"), Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), Houlihan Lokey, and any other legal counsel, financial advisors and third-party appraisers, advisors and consultants advising the DIP Secured Parties), whether incurred before or after the Petition Date.  Subject to the review procedures set forth below, none of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Copies of any invoices of legal counsel, including Sidley and Young Conaway, with respect to such fees, expenses and costs shall be provided (redacted,

as necessary, to protect any applicable privilege) to the U.S. Trustee, which shall have ten (10) days from the date of such notice within which to object in writing to such payment.  In addition, the Debtors are hereby authorized and directed to indemnify the DIP Agent and the other DIP Secured Parties (and each of their respective directors, officers, employees, agents, representatives, attorneys, consultants, advisors and controlling persons) against any liability arising in connection with the DIP Loan Documents, to the extent set forth in the DIP Loan Documents; provided, however, that in the event any of the DIP Secured Parties seeks payment from the Debtors pursuant to such right of indemnification, such party or parties shall file a notice in the Chapter 11 Cases indicating that they are seeking payment pursuant to such right. All such unpaid fees, costs, expenses and indemnities of the DIP Agent and DIP Lenders shall (i) constitute DIP Obligations, (ii) be secured by the DIP Collateral, and (iii) be afforded all of the priorities and protections afforded to DIP Obligations under this Interim Order and the DIP Loan Documents.

        8.    **Validity of DIP Loan Documents**.  Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtors, enforceable against each Debtor in accordance with the terms thereof for all purposes during the Chapter 11 Cases, in any subsequently converted case of any Debtor under chapter 7 of the Bankruptcy Code, or after dismissal of any of the Chapter 11 Cases.  Any DIP Facility Loans advanced under the DIP Credit Agreement pursuant to the Interim DIP Order will be made only to fund post-petition administrative expenses, the Debtors' working capital, and the Debtors' sale efforts to the extent permitted under the DIP Credit Agreement, and to pay such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement, this Interim Order and any other

orders of this Court, including, without limitation, the fees, costs, expenses and indemnities described in Paragraph 7 hereof, all subject to and solely in accordance with the Approved Budget.  No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

9.     **DIP Superpriority Claims**.  In accordance with Bankruptcy Code section 364(c)(1), the DIP Obligations shall constitute superpriority administrative expense claims (the "DIP Superpriority Claims") against each of the Debtors with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to, and upon entry of, the Final Order), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that the DIP Superpriority Claims shall be subject to the Carve-Out and any Permitted Third-Party DIP Indebtedness.  The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, including, subject to and upon entry of

22

the Final Order, proceeds of the Avoidance Actions.  Except as set forth in this Interim Order and the Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

          10.    **DIP Priming Liens**.  As security for the DIP Obligations, the DIP Agent on behalf and for the benefit of the DIP Secured Parties is hereby granted (effective upon the date of this Interim Order, without the necessity of the execution by the Debtors or the filing or recordation of security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise) valid, binding and fully perfected, security interests in and liens upon (the "DIP Liens") all present and after-acquired property of the Debtors of any nature whatsoever (including, without limitation, "Collateral," as defined in the DIP Credit Agreement) and all cash and cash equivalents contained in any account maintained by any of the Debtors, and, subject to entry of a Final Order, all proceeds of Avoidance Actions of the Debtors or their estates (collectively with all proceeds and products of any or all of the foregoing, the "DIP Collateral"), subject only to any Permitted Third-Party DIP Liens and the payment of the Carve-Out, which shall consist of:

          (a)    Liens Priming Pre-Petition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected, first priority, senior priming liens upon and security interest in all of the Debtors' right, title and interest in, to, and under all DIP Collateral that is subject to Pre-Petition Liens, subject and subordinate only to any liens on the Pre-Petition Collateral (other than the Pre-Petition Liens) that (a) are valid, enforceable and nonavoidable as of the Petition Date, (b) under applicable law, are senior to, and have not been subordinated to, the Pre-Petition Liens, and (c) are not subject to avoidance, reduction, allowance

disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (each, a "Permitted Priority Lien").

(b)     Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a junior, perfected "silent second" lien and security interest upon all of the Debtors' right, title and interest in, to and under all DIP Collateral (other than the DIP Collateral described in Subparagraphs (a) or (c) of this Paragraph 10, as to which the liens and security interests in favor of the DIP Agent will be as described in such Subparagraphs), whether now existing or hereafter acquired, that is subject to (i) any Pre-Petition Third-Party Lien that was validly perfected prior to the Petition Date, or is validly perfected subsequent to the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code, and is not subject to section 552(a) of the Bankruptcy Code or (ii) any Permitted Third-Party DIP Liens.

(c)     First Priority Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a continuing, enforceable, first priority, fully-perfected lien and security interest upon all of the Debtors' right, title and interest in, to, and under all DIP Collateral that was not, as of the Petition Date, encumbered by a validly perfected, enforceable, and nonavoidable security interest or lien (collectively, the "Unencumbered Property"), subject and subordinate only to any Permitted Third-Party DIP Liens.  Subject only to and effective upon entry of the Final Order, Unencumbered Property shall also include the proceeds of estate causes of action under Chapter 5 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code, whether now existing or hereafter acquired or arising and whether pursuant to federal law or applicable state law, and all proceeds thereof, recoveries related thereto, and property

24

received thereby, whether by judgment, settlement, or otherwise (collectively, "Avoidance Actions").

(d)    Liens Senior to Certain Other Liens.  The DIP Liens and the Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoidable for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any intercompany or affiliate liens of the Debtors or liens, if any, granted to insiders of the Debtors.

11.    **Pre-Petition Secured Parties' Adequate Protection**.    Until the indefeasible repayment in full in cash of the Pre-Petition Obligations, the Pre-Petition Secured Parties are entitled to adequate protection of their interests in the Pre-Petition Collateral on account of the diminution in the value thereof as a result of (a) the provisions of this Interim Order granting priming liens on such Pre-Petition Collateral to the DIP Agent for the benefit of the DIP Secured Parties; (b) the authorization of the use of Cash Collateral and other Prepetition Collateral; (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; and/or (d) otherwise, pursuant to sections 361(a), 363(c) and 364(d)(1) of the Bankruptcy Code.  The Pre-Petition Agent, on behalf and for the benefit of the Pre-Petition Lenders, is hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)    Payment of Pre-Petition Interest.  Upon closing of the DIP Facility, the Debtors are authorized and directed to pay, from the proceeds of the DIP Loans, all accrued and unpaid pre-petition interest owing under the Pre-Petition Credit Agreement as of the closing of the DIP Facility, calculated at the non-default rate (provided, for the avoidance of doubt, that default interest has and shall continue

to accrue pursuant to the terms of the Pre-Petition Credit Agreement notwithstanding the payment, as adequate protection, of pre-petition interest at the non-default rate).

(b)    <u>Payment of Pre-Petition Secured Parties' Fees and Expenses</u>.  The Debtors are authorized and directed to pay, from the proceeds of the DIP Loans, and in accordance with the Pre-Petition Loan Documents, the reasonable, documented, pre-petition and post-petition fees, costs and expenses incurred or accrued by the Pre-Petition Secured Parties in connection with any and all aspects of the Chapter 11 Cases, including without limitation (i) the fees and disbursements of counsel, appraisers, financial advisors and other professionals hired by or on behalf of the Pre-Petition Agent or the Pre-Petition Lenders (including Sidley Austin LLP, Young Conaway Stargatt & Taylor, LLP, and Houlihan Lokey), promptly upon receipt of written invoices therefor (<u>provided</u> that copies of any invoices of legal counsel, redacted, as necessary, to protect any applicable privilege, shall be provided to the U.S. Trustee and counsel to any Committee (as defined below), and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment) and (ii) subject to entry of the Final Order, the costs and expenses of enforcing the Adequate Protection Liens and Pre-Petition Liens via a credit bid for all or part of the Debtors' assets.

(c)     <u>Monthly Adequate Protection Payments</u>.   On the last Friday of

each month (each, a "<u>Settlement Date</u>"), the DIP Agent shall apply

all amounts on deposit in the Collection Account (as defined in the

Pre-Petition Credit Agreement) at such time (i) 50% (or, at the

election of the Majority DIP Lenders, a lesser percentage) to the

repayment of outstanding DIP Obligations in accordance with the

provisions of the DIP Credit Agreement and this Interim Order,

and (ii) 50% (or, at the election of the Majority DIP Lenders, a

greater percentage) to the repayment of outstanding Pre-Petition

Obligations as set forth in subparagraphs (A) and (B) of this

Paragraph 11(c) (such repayment described in clause (ii), the

"<u>Monthly Adequate Protection Payment</u>"); <u>provided</u>, <u>however</u>, that

the payment of the Monthly Adequate Protection Payment shall be

subject to (x) the DIP Agent's right, at the direction of the Majority

DIP Lenders, to revoke in writing its consent to such application

(as further set forth in the DIP Credit Agreement), such that 100%

of the amounts on deposit in the Collection Account shall be

applied to the outstanding DIP Obligations and (y) disgorgement to

the extent of a final and non-appealable Challenge.  At least four

(4) calendar days prior to each Settlement Date, the DIP Agent

shall deliver to the Debtors (by email or otherwise, directly or

through counsel) a Settlement Report (as defined in the DIP Credit

Agreement) for the corresponding calendar month reflecting the

amounts on deposit in the Collection Account and the amounts to be applied therefrom to the DIP Obligations and the Pre-Petition Obligations, respectively, and (ii) at least one (1) calendar day prior to such Settlement Date, each of the Pre-Petition Agent and TWCD shall provide their written consent to such Settlement Report (and, as to TWCD, a confirmatory Borrowing Base Certificate (as defined in the Pre-Petition Credit Agreement)), as more fully set forth in the DIP Credit Agreement; provided, however, that the failure of TWCD to (x) provide such written consent to such Settlement Report on or prior to the Settlement Date, or (y) deliver a confirmatory Borrowing Base Certificate, in each case, shall not prohibit the application of all amounts on deposit in the Collection Account in accordance with Section 2.03(b) of the DIP Credit Agreement.  On each Settlement Date, the Pre-Petition Agent shall apply the Monthly Adequate Protection Payment, if any, to the Pre-Petition Obligations, pursuant to the terms of, and as more fully set forth in, the Pre-Petition Credit Agreement, including, without limitation, to the following:

> (A)    payment of all fees and expenses not otherwise paid pursuant to paragraph 11(b) hereof;
>
> (B)    payment of all accrued and unpaid post-petition interest owing under the Pre-Petition Credit Agreement,

calculated at the non-default rate (<u>provided</u>, for the avoidance of doubt, that default interest has and shall continue to accrue pursuant to the terms of the Pre-Petition Credit Agreement notwithstanding the payment, as adequate protection, of postpetition interest at the non-default rate); and

(C)    repayment of outstanding principal amounts of the Pre-Petition Loans and any other Pre-Petition Obligations.

For the avoidance of doubt, nothing in this Paragraph 11 shall affect or limit the obligation of the Debtors to pay the fees, costs and expenses incurred by the DIP Secured Parties as provided in the DIP Loan Documents.

(d)    <u>Adequate Protection Liens</u>.  Valid, enforceable, unavoidable and fully perfected replacement liens and security interests in all DIP Collateral (the "<u>Adequate Protection Liens</u>"), which shall be (i) junior only to the DIP Liens, the Pre-Petition Third-Party Liens and any Permitted Third-Party DIP Liens, (ii) senior to the Pre-Petition Liens, and (iii) subject to the Carve-Out.  The Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Cases.  Except as otherwise set forth in this Paragraph 11 or otherwise in this Interim Order, the Adequate Protection Liens shall not be subordinated to or be made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise.  The Adequate Protection Liens shall be deemed to be perfected automatically upon the entry of this Interim Order, without the need for (x) filing any UCC-1 financing statement, state or federal notice, or

other similar instrument or document in any state or public record or office, (y) taking possession or control of any collateral, or (z) further action of any kind (including entry into any security agreements, pledge agreements, control agreements, lockbox agreements, escrow agreements, Pledgeholder Agreements or laboratory access letters); provided, however, that, upon the request of the Pre-Petition Agent, the Debtors shall enter into any such agreement, and, if the Pre-Petition Agent determines, in its sole discretion, to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.  Without limiting the foregoing, but subject and subordinate to the rights of the DIP Secured Parties and the holders of any Third-Party Pre-Petition Liens and any Permitted Third-Party DIP Liens, in respect of the Adequate Protection Liens, the Pre-Petition Agent shall enjoy the benefit of all deposit account control agreements, escrow agreements, Pledgeholder Agreements, and laboratory access letters to which any Debtor is a party.

(e)    Adequate Protection Super Priority Claims.   To the extent the Adequate Protection Liens do not adequately protect against the diminution in value of the Pre-Petition Collateral, the Pre-Petition Agent, on behalf and for the benefit of the Pre-Petition Secured Parties, is hereby granted superpriority administrative expense claims (the "Adequate Protection Superpriority Claims") under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates, including, subject to and upon entry of the Final Order, proceeds of Avoidance Actions, which Adequate Protection Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the

Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114, or otherwise and including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code; provided, however, that at all times while such claim is in full force and effect pursuant to this Interim Order, Adequate Protection Superpriority Claims shall be junior in all respects to the DIP Superpriority Claims, the claims secured by Pre-Petition Third-Party Liens, any Permitted Third-Party DIP Indebtedness and the Carve-Out;

(f)    Financial Reporting.  The Debtors shall provide the Pre-Petition Agent with the financial and other reporting as described in the DIP Credit Agreement; and

(g)    Right to Seek Additional Adequate Protection.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Pre-Petition Agent or the other Pre-Petition Secured Parties to seek additional forms of adequate protection at any time.

12.    **No Waiver of Pre-Petition Credit Agreement Provisions; Reservation of Rights**.  Except as otherwise specifically provided in this Interim Order, nothing contained in this Interim Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Pre-Petition Credit Agreements by the Pre-Petition Secured Parties, including, but not limited to, the incurrence or issuance of any indebtedness by the Debtors, the incurrence of any lien in connection therewith or the making of any payment by the Debtors.

13.    **Rights of Access and Information**.  Without limiting the rights of access and information afforded the DIP Secured Parties under the DIP Loan Documents, the Debtors

shall be, and hereby are, required to afford the representatives, agents, employees, attorneys, financial advisors, and investment bankers of the DIP Secured Parties reasonable access to the Debtors' premises and their books and records in accordance with the DIP Loan Documents and the Pre-Petition Security Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may reasonably be requested. The DIP Secured Parties may participate in any such visit or inspection at the expense of the Debtors as set forth in the DIP Loan Documents. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Secured Parties all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.

14. **Carve-Out**. Upon the delivery (by email or otherwise) by the DIP Agent of written notice to the Debtors, the Debtors' bankruptcy counsel, the United States Trustee, and lead counsel for the Committee of the occurrence and continuance of an Event of Default (the "Carve-Out Trigger"), the DIP Liens, DIP Superpriority Claims, Adequate Protection Superpriority Claims, Adequate Protection Liens, and Pre-Petition Liens shall be subject to the payment of: (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United State Code (plus any applicable interest at the statutory rate) for the period up to the occurrence of a Carve-Out Trigger (as defined below), (ii) the, documented and unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Trigger by each person or firm retained by the Debtors and the Committee as an estate professional (collectively, the "Professionals") for the benefit of such Professional and payable under sections 330 and 331 of the Bankruptcy Code, to

the extent allowed by an order of this Court (whether allowed prior to or after the occurrence of the Carve-Out Trigger), subject to the terms of this Interim Order and any other orders entered by this Court (including limits imposed on use of the proceeds of the DIP Facility Loans and Cash Collateral for payment of fees and expenses incurred in connection with the investigation, assertion and/or prosecutions of claims and defenses against any of the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders) in an amount not to exceed the respective line item amounts set forth for such Professional for the applicable period prior to the Carve-Out Trigger in the Approved Budget; and (iii) up to a maximum amount of [$250,000] of unpaid documented fees, costs and expenses accrued or incurred by Professionals following the occurrence of the Carve-Out Trigger, payable under sections 330 and 331 of the Bankruptcy Code and subsequently allowed by order of this Court (and, if applicable, in compliance with the Approved Budget (subject to the Permitted Variance)) (collectively, the "Carve-Out"); provided, however, that no portion of the Carve-Out, DIP Facility, DIP Collateral, Pre-Petition Collateral or Cash Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or any Committee, in connection with (a) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Secured Parties or the Pre-Petition Secured Parties, including, without limitation, (i) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Loan Documents, DIP Obligations, DIP Superpriority Claims or DIP Liens in respect thereof, (ii) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Pre-Petition Loan Documents, Pre-Petition Obligations, Adequate Protection Superpriority Claims or the Adequate Protection Liens of the Pre-Petition Secured Parties in respect thereof or (iii) asserting

any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Agent's or DIP Lenders' assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Loan Documents or this Interim Order; provided, further, however, that no more than $50,000 of the proceeds of the DIP Facility or any proceeds of the DIP Collateral shall be made available, in the aggregate, to any Committee appointed in these Chapter 11 Cases to fund a reasonable investigation in respect of the stipulations set forth in Paragraph D of this Interim Order (and its subparagraphs). So long as a Carve-Out Trigger has not occurred: (i) the Debtors shall be permitted to pay, subject to and solely in accordance with the Approved Budget, administrative expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable; and (ii) such payments shall not be applied to reduce the Carve-Out (to the extent such payments are ultimately permitted by the Court); provided, however, that following a Carve-Out Trigger any amounts actually paid to Professionals by any means will reduce the Carve-Out on a dollar-for-dollar basis. Notwithstanding the foregoing, nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, any Committee, the U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts incurred or requested. Furthermore, none of the Carve-Out, DIP Collateral, Pre-Petition Collateral, Cash Collateral or any proceeds of the DIP Facility shall be used to prevent, hinder or delay the DIP Secured Parties from enforcing or realizing upon the DIP Collateral once an Event of Default has been determined by the Court to have occurred and to be continuing under the DIP Loan Documents or this Interim Order.

15. **Investigation Rights**. The official committee of creditors holding unsecured claims appointed in these Chapter 11 Cases, if any, pursuant to section 1102 of the Bankruptcy Code (the "Committee") shall have until the earlier of sixty (60) days from the date of the Committee's appointment or seventy-five (75) days from the Petition Date, and all other non-debtor parties-in-interest (including a trustee, if appointed or elected prior to the Investigation Termination Date, as defined herein) shall have seventy-five (75) days from the Petition Date (each, as applicable, the "Investigation Termination Date") to investigate the validity, perfection and enforceability of the Pre-Petition Liens and the Pre-Petition Obligations, and to assert any other claims or causes of action against the Pre-Petition Secured Parties. Any Committee or other non-debtor party-in-interest hereafter granted authority and standing by this Court may file and prosecute an objection or claim related thereto (each, a "Challenge"), and shall have only until the applicable Investigation Termination Date to file such objection or claim (or otherwise initiate an appropriate action on behalf of the Debtors' estates) setting forth the basis of any such challenge, claim or cause of action; provided, however, that nothing contained in the DIP Loan Documents or this Interim Order shall be deemed to confer standing on any Committee or any other party-in-interest to commence a challenge. If a Challenge is not filed on or before the Investigation Termination Date, then, without further action by any party or any further order of this Court: (a) the agreements, acknowledgements and stipulations contained in Paragraph D of this Interim Order and its subparagraphs shall be deemed to be immediately and irrevocably binding on the Debtors and the Debtors' estates, the Committee and all parties-in-interest and any and all successors-in-interest thereto shall thereafter be forever barred from bringing any Challenge; (b) the liens and security interests of the Pre-Petition Secured Parties shall be deemed to constitute valid, binding, enforceable and perfected liens and security

35

interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Pre-Petition Obligations shall be deemed to be finally allowed claims for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, in the amounts set forth in Paragraph D and its subparagraphs and shall not be subject to challenge by any party-in-interest as to validity, priority or otherwise; and (d) the Debtors shall be deemed to have released, waived and discharged each of the Pre-Petition Secured Parties (whether in their prepetition or postpetition capacity), together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Pre-Petition Obligations or their prepetition relationship with such Debtor or any affiliate thereof relating to any of the Pre-Petition Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority, or enforceability of the Pre-Petition Liens or the Pre-Petition Obligations, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action. The Pre-Petition Agent shall cooperate in all reasonable requests for information in order to assist the Committee in its investigation under this Paragraph 15. Notwithstanding anything to the contrary herein: (a) if any such Challenge is timely commenced, the stipulations contained in Paragraph D of this Interim Order and its subparagraphs shall nonetheless remain binding on all parties-in-interest and preclusive except with respect to the party asserting the Challenge and to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (b) the Pre-Petition Secured Parties reserve all of their rights to contest on any grounds any Challenge. For the avoidance of doubt, any trustee appointed or elected in these cases shall, until the Investigation Termination Date (and thereafter, if a Challenge is commenced on or prior to the Investigation

Termination Date) for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph with respect to a Challenge (whether commenced by such trustee or commenced by any other party-in-interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Order.

16.    **Protection of DIP Lenders' Rights**.    So long as there are any DIP Facility Loans or DIP Obligations outstanding or the DIP Lenders have any outstanding commitments under the DIP Credit Agreement, the Pre-Petition Secured Parties (i) shall not take any action to foreclose upon or recover in connection with their respective liens and security interests, other agreements, or operation of law of this Interim Order, or otherwise exercise remedies against any DIP Collateral, except to the extent authorized herein or by any other order of this Court, (ii) shall be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents, (iii) shall not file any further financing statements, trademark filings, copyright filings, patent filings, mortgages, notices of lien or similar instruments, enter into any control agreement, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Agent files financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date and (iv) shall not seek to terminate or modify the use of Cash Collateral.

17.    **Permitted Third-Party DIP Indebtedness**.    Notwithstanding any other provision of this Order, the Debtors shall be entitled, solely in accordance with the provisions of

the DIP Credit Agreement, to seek authority to incur and incur additional senior secured, superpriority debtor-in-possession indebtedness in an aggregate principal amount not to exceed $10,000,000, which indebtedness may have superpriority administrative claim status ("Permitted Third-Party DIP Indebtedness") and may be secured solely by security interests in and liens on any Permitted Third-Party DIP Collateral (as defined below), which such security interest or liens may have priority over any liens on Permitted Third-Party DIP Collateral securing the DIP Obligations ("Permitted Third-Party DIP Liens").   The term "Permitted Third-Party DIP Collateral" means all of Weinstein Television LLC's right, title and interest in, to and under all personal property and other assets, whether now owned by or owing to, or hereafter acquired by or arising in favor of, Weinstein Television LLC (including under any trade name or derivations thereof), and whether owned or consigned by or tow, or leased from or to, Weinstein Television LLC, and regardless of where located.

18.   **Asset Dispositions**.   Subject to authorization from the Court (and, as applicable, Paragraph 14 of this Interim Order) and satisfaction of Pre-Petition Third-Party Liens, the Debtors shall immediately pay, or cause to be paid, to the DIP Agent for application to the DIP Obligations, all of the proceeds of any sale, lease or other disposition of any DIP Collateral (an "Asset Disposition") to the extent required by and in the order set forth in the DIP Credit Agreement, as a condition to approval of such Asset Disposition, and shall comply with all other provisions in the DIP Loan Documents and this Interim Order in connection with any such Asset Disposition; provided, that any such proceeds, to the extent related to or arising from or in connection with Pre-Petition Collateral, shall promptly be deposited into the Collection Account and be subject to the provisions of Paragraph 11(c) hereof.   All proceeds of any Asset Disposition shall be applied in accordance with the terms and conditions of the DIP Credit Agreement.

19.   **Further Assurances**.  The Debtors shall execute and deliver to the DIP Agent, the DIP Lenders, the Pre-Petition Agent, and the Pre-Petition Lenders all such agreements, financing statements, instruments and other documents as the DIP Agent, DIP Lenders, Pre-Petition Agent, and Pre-Petition Lenders may reasonably request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens granted pursuant hereto.  Further, the Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, escrow agreements, Pledgeholder Agreements, laboratory access letters, and financing statements), and to pay all fees and expenses that may be required or necessary for the Debtors' performance under the DIP Loan Documents, including, without limitation, (i) the execution of the DIP Loan Documents and (ii) the payment of the fees, costs and other expenses described in the DIP Loan Documents as such become due.

20.   **506(c) Waiver**.  Upon the entry of the Final Order, the Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Secured Parties or the Pre-Petition Secured Parties (collectively, "Secured Lending Entities") upon the DIP Collateral or the Pre-Petition Collateral (as applicable). Subject to the entry of a Final Order, In no event shall the Secured Lending Entities be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral or the Pre-Petition Collateral (as applicable).

21.   **Restrictions on Granting Post-Petition Liens**.  Other than the Carve-Out and the Permitted Third-Party DIP Indebtedness, or as otherwise provided in this Interim Order

or the DIP Credit Agreement or otherwise consented to by the DIP Lenders, no claim having a priority superior or *pari passu* with those granted by this Interim Order to the DIP Secured Lending Entities shall be granted or permitted by any order of this Court heretofore or hereafter entered in the Chapter 11 Cases, while (i) any portion of the DIP Facility (or refinancing thereof), any DIP Facility Loan, or any other DIP Obligations are outstanding or (ii) the DIP Lenders have any outstanding DIP Facility Loan commitment under the DIP Credit Agreement. Except as expressly permitted by the DIP Loan Documents, the Debtors will not, at any time during the Chapter 11 Cases, grant mortgages, security interests or liens in the DIP Collateral (or any portion thereof) to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

22.    **Automatic Effectiveness of Liens**.    Automatically upon entry of this Interim Order, the DIP Liens and the Adequate Protection Liens shall be deemed to be valid, perfected, enforceable, nonavoidable and effective by operation of law, and not subject to challenge as of the Petition Date, without the need for (x) filing any UCC-1 financing statements, security agreements, vehicle lien applications, filings with the U.S. Patent and Trademark Office, the United States Copyright Office, or the Library of Congress, state or federal notice, or any other similar instrument or document in any state or public record or office, (y) taking possession or control of any collateral, or (z) further action of any kind (including execution of any security agreements, pledge agreements, control agreements, lockbox agreements, escrow agreements, Pledgeholder Agreements or laboratory access letters); provided, however, that, upon the request of the DIP Agent or the Pre-Petition Agent, as applicable, the Debtors shall enter into any such agreement, and, if the DIP Agent or the Pre-Petition Agent, as applicable, determines, in its sole discretion, to file any financing statements, notice of liens or similar instruments, the Debtors

will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings. All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except the Pre-Petition Liens, the Third-Party Pre-Petition Liens, and the Adequate Protection Liens. If the DIP Agent or the Pre-Petition Agent hereafter requests that the Debtors execute and deliver to the DIP Agent or the Pre-Petition Agent financing statements, security agreements, collateral assignments, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, as applicable, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, collateral assignments, instruments, and documents, and the DIP Agent or the Pre-Petition Agent is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

23. **Automatic Stay**. As provided herein, subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Secured Parties to exercise, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions, so long as the DIP Agent has provided five (5) calendar days' prior written notice to the Debtors following the applicable cure period in the DIP Credit Agreement, their bankruptcy counsel, counsel to the Committee, counsel to the respective Secured Lending Entities and the U.S. Trustee: (a) immediately terminate the Debtors' authority

41

to use Cash Collateral and cease making any advances or issuing any letters of credit under the DIP Facility and to cease authorizing the use thereof; (b) declare all DIP Obligations to be immediately due and payable; (c) charge the default rate of interest provided for under the DIP Credit Agreement; (d) freeze monies or balances in the Debtors' accounts; (e) immediately set off any and all amounts in accounts maintained by the Debtors with the DIP Agent or any of the DIP Secured Parties against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of any of the DIP Secured Parties for application towards the DIP Obligations; and (f) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations. Following the giving of written notice by the DIP Agent of the occurrence of an Event of Default, the Debtors and any Committee in the Chapter 11 Cases shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default has occurred. The rights and remedies of the DIP Agent and DIP Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Secured Parties may have under the DIP Loan Documents or otherwise. The Debtors shall cooperate fully with the DIP Agent and the DIP Secured Parties in their exercise of rights and remedies, whether against the DIP Collateral or otherwise. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

24. **Additional Events of Default**. In addition to the Events of Default set forth in the DIP Credit Agreement, it shall be an Event of Default under the DIP Credit

Agreement and this Interim Order entitling the DIP Agent to exercise the remedies under the DIP

Credit Agreement and the Interim Order if the Debtors shall fail to do any of the following:

(a)     file a motion, on the Petition Date, under Section 363 of the

Bankruptcy Code (a "Sale Motion") to sell all or substantially all of the Debtors' assets in

one transaction or a series of transactions to a purchaser or purchasers under purchase

agreement(s), in form and substance acceptable to the DIP Agent and the requisite DIP

Lenders, subject to the receipt of  higher and better bids, together with a motion ("Bid

Procedures Motion") for approval of bidding procedures (the "Bidding Procedures"), in

each case, in form and substance acceptable to the DIP Agent and the requisite DIP

Lenders;

(b)     obtain Bankruptcy Court approval, pursuant to an order (the

"Bidding Procedures Order") in form and substance acceptable to the DIP Agent, of the

Bidding Procedures no later than 35 days after filing the Sale Motion and the Bid

Procedures Motion;

(c)     conduct, subject to the Bidding Procedures Motion, an auction in

accordance with the Bidding Procedures (the "Auction") no later than 60 days after entry

of the Bidding Procedures Order;

(d)     obtain an order from the Bankruptcy Court (the "Sale Order"), in

form and substance acceptable to the DIP Agent and the DIP Lenders, authorizing the

sale of the assets of the Debtors (the "Asset Sale(s)") no later than 10 business days after

completion of the Auction;

(e)     consummate the Asset Sale(s) by no later than 125 days after the

Petition Date (clauses (a) through (e), collectively, the "Sale Process Covenants");

(f)        if the Debtors elect not to proceed with a sale of substantially all of their assets or do not receive any acceptable bids for the sale of substantially all of their assets, the Debtors shall nonetheless proceed with a sale, subject to the DIP Agent's and the Pre-Petition Agent's credit bid rights under section 363(k) of the Bankruptcy Code and all other applicable laws, of all of the Pre-Petition Collateral in a manner that complies with the foregoing deadlines (as may be extended by the DIP Agent and the Pre-Petition Agent, in their reasonable discretion) and the other provisions of the Sale Process Covenants, with the sole modification thereto being the scope of the assets being auctioned and sold; and

(g)        subject to entry of the Final Order, (i) commence, within ten (10) business days of receipt of a written request by the DIP Agent (each a "Request for Collection Proceeding") one or more adversary proceedings against any third party identified in the Request for Collection Proceeding (each, a "Delinquent Party") who has failed to make material payment when due to the Debtors of monies comprising Pre-Petition Collateral by filing one or more complaints, in form and substance reasonably acceptable to the DIP Agent and the Pre-Petition Agent, demanding payment by the Delinquent Parties of all delinquent amounts owed by the Delinquent Parties to the Debtors pursuant to the Debtors' agreements with such parties, with the costs associated with the Collection Proceedings to be funded using the proceeds of the DIP Facility Loans; (ii) continue to prosecute and use their respective best efforts to collect all amounts due to the Debtors' estates from the Delinquent Parties; and (iii) consult with the DIP Agent and the Pre-Petition Agent in respect of any pleadings to be filed by the Debtors in the Collection Proceedings prior to filing such pleadings.  For the avoidance

of doubt, all recoveries obtained by the Debtors in any Collection Proceeding constituting a recovery of a receivable attributable to the Pre-Petition Collateral under the Pre-Petition Loan Documents shall be applied by the Debtors to repayment of the Pre-Petition Obligations.

25. **Credit Bid**.

(a)    The DIP Agent, at the direction of the Majority DIP Lenders (as defined in the DIP Credit Agreement), shall have the right to credit bid up to the full amount of all outstanding DIP Obligations in any sale of the DIP Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

(b)    Subject to section 363(k) of the Bankruptcy Code, the Pre-Petition Agent, at the direction of the Requisite Lenders (as defined in the Pre-Petition Credit Agreement), shall have the right to credit bid up to the full amount of any remaining Pre-Petition Obligations in any sale of DIP Collateral or Pre-Petition Collateral, as applicable, subject to the satisfaction of all DIP Obligations and all obligations secured by Third-Party Pre-Petition Liens and any Additional Permitted DIP Liens on such assets, or as otherwise consented to by the DIP Lenders and such other holders of ~~Third-Party~~ Third-Party Pre-Petition Liens and Additional Permitted DIP Liens, as applicable, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

45

26.    **Binding Effect**.  To the extent permitted by law and subject to Paragraph 14, the provisions of this Interim Order shall be binding upon and inure to the benefit of the Secured Lending Entities, the Debtors, any Committee appointed in these Chapter 11 Cases, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors).  To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Interim Order.

27.    **Survival**.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not satisfied in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Chapter 11 Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the DIP Superpriority Claims and the DIP Liens in the DIP Collateral granted pursuant to this Interim Order and the DIP Loan Documents (and with respect to the entry of any order as set forth in (ii) or (iii) herein, the Adequate Protection Liens and Adequate Protection Superpriority Claims) shall continue in full force and effect notwithstanding the entry of any such order.  Such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Loan Documents, and to

the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash and discharged. In no event shall any plan of reorganization or liquidation be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents.

28. **Reallocation.** For the avoidance of doubt, in the event that it is determined by this Court that the Pre-Petition Secured Parties did not maintain valid, perfected and enforceable liens on the Pre-Petition Collateral, the Court reserves the right to reallocate any payments made to the Pre-Petition Secured Parties and modify any liens and claims granted pursuant to this Order, including the grant of adequate protection to the Pre-Petition Secured Parties.

29. **Modifications of DIP Loan Documents** The Debtors, DIP Agent and DIP Secured Parties are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any non-material modifications (including without limitation, any change in the number or composition of the DIP Lenders) of the DIP Loan Documents without further Order of this Court; provided, however, that notice of any non-material modification or amendment to the DIP Loan Documents shall be provided to counsel to any Committee, to the U.S. Trustee, and to the Pre-Petition Agent, each of whom shall have three (3) days from the date of such notice within which to object in writing to such modification or amendment. If any Committee or the U.S. Trustee timely objects to any non-material modification or amendment to the DIP Loan Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

30. **Limits on Lender Liability**. Nothing in this Interim Order, any of the DIP Loan Documents, or any other documents related thereto shall in any way be construed or

interpreted to impose or allow the imposition upon the DIP Secured Parties or the Pre-Petition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases. The DIP Secured Parties shall not, solely by reason of having made loans under the DIP Facility, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or, *subject to the Final Order* "owner or operator", with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute). Nothing in this Interim Order or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or any of the Pre-Petition Lenders of any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors.

31. **Insurance Policies**. The Debtors are hereby authorized and directed to use their reasonable best efforts to seek to have the DIP Agent and DIP Secured Parties named, as expeditiously as reasonably practicable, as additional insureds and loss payees, as applicable, on each insurance policy maintained now or in the future by any of the Debtors which in any way relates to the DIP Collateral. Notwithstanding the foregoing, the Debtors are authorized and directed to take any actions that the DIP Agent shall request, in its sole and absolute discretion, to have the DIP Agent, on behalf of the DIP Secured Parties, added as an additional insured and loss payee on each insurance policy.

32. **Restriction on Use of DIP Lenders' Funds**. The proceeds of the DIP Facility shall be used exclusively for the working capital of the Debtors, subject to and solely in accordance with the Approved Budget. Except as expressly set forth herein, including in

Paragraph 15 above, none of the Debtors shall be permitted to use the proceeds of the DIP Facility Loans: (a) for the payment of interest and principal with respect to any indebtedness that is subordinated to the DIP Facility (including the Adequate Protection Obligations) except as expressly set forth herein, (b) to finance in any way any adversary action, suit, arbitration, proceeding, application, motion, other litigation, examination or investigation of any type relating to or in connection with the DIP Loan Documents, including, without limitation, any challenges to the Pre-Petition Obligations, or the validity, perfection, priority, or enforceability of any Pre-Petition Lien securing such claims or any payment made thereunder, (c) to finance in any way any action, suit, arbitration, proceeding, application, motion, other litigation, examination or investigation of any type adverse to the interests of the DIP Secured Parties or their rights and remedies under the DIP Credit Agreement, the other DIP Loan Documents, this Interim Order or the Final Order without the prior written consent of the DIP Agent, (d) to make any distribution under a plan of reorganization or liquidation in any Chapter 11 Case without the prior written consent of the DIP Agent, and (e) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Agent.  Notwithstanding anything herein to the contrary, for so long as the Debtors are authorized to use the Pre-Petition Secured Parties' Cash Collateral with the consent of the Pre-Petition Secured Parties, no Cash Collateral of the Pre-Petition Secured Parties may be used directly or indirectly by any of the Debtors, any Committee or any other person or entity to object to or contest in any manner the Pre-Petition Obligations or Pre-Petition Liens, or to assert or prosecute any actions, claims or causes of action against any of the Pre-Petition Secured Parties without the consent of the applicable Pre-Petition Secured Parties.

33.     **Release of Claims and Defenses**.    Each Debtor hereby releases and discharges each of the DIP Secured Parties, in their capacity as such, together with their respective affiliates, agents, attorneys, officers, directors and employees (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the DIP Loan Documents or any loans under the DIP Facility, any aspect of the relationship between the Debtors, on the one hand, and any or all of the Released Parties, on the other hand, relating to any of DIP Loan Documents or any transaction contemplated thereby or any other acts or omissions by any or all of the Released Parties in connection with the DIP Facility or any of the DIP Loan Documents or their prepetition relationship with such Debtor or any affiliate thereof relating to any of the DIP Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action (collectively, the "Claims and Defenses").

34.     **Protection Under Section 364(e)**.    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the validity or enforceability of any DIP Obligation, DIP Lien, Adequate Protection Superpriority Claim, or Adequate Protection Lien, or any other claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents or Adequate Protection Obligations incurred prior to the actual receipt by the DIP Agent or the Pre-Petition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay.    Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations, or Adequate Protection Obligations owing to the  Pre-Petition Secured Parties by the Debtors prior to the actual receipt

by the DIP Agent or Pre-Petition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the Pre-Petition Secured Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and Adequate Protection Obligations owing to the Pre-Petition Secured Parties.

35.    **Effect of Dismissal of Chapter 11 Cases**.  If the Chapter 11 Cases are dismissed, converted or substantively consolidated, such dismissal, conversion or substantive consolidation of these Chapter 11 Cases shall not affect the rights of the Secured Lending Entities under their respective DIP Loan Documents, Pre-Petition Loan Documents or this Interim Order, and all of the respective rights and remedies thereunder of the Secured Lending Entities shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, or substantively consolidated.  If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (i) the DIP Liens and DIP Superpriority Claims granted to and conferred upon the DIP Agent and DIP Secured Parties and the protections afforded to the DIP Agent and the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens, DIP Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties); (ii) those Pre-Petition Liens, Adequate Protection Liens and Adequate Protection Superpriority Claims granted to and conferred upon the Pre-Petition

Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Pre-Petition Indebtedness shall have been paid and satisfied in full (and that such Adequate Protection Liens, Adequate Protection Superpriority Claims, and other adequate protection granted to or conferred on the Pre-Petition Secured Parties shall, notwithstanding such dismissal, remain binding on all interested parties); and (iii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, the Pre-Petition Liens, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims referred to herein.

36.    **Discharge**. The DIP Obligations and the Adequate Protection Obligations provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan, unless each of the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders, as applicable, has agreed in writing.

37.    **Findings of Fact and Conclusions of Law**.    This Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the execution thereof.

38.    **Choice of Law; Jurisdiction**.    The DIP Facility and the DIP Loan Documents (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, including, without limitation, Sections 5-1401 and 5-1402 of the New York General Obligations Law, and,

to the extent applicable, the Bankruptcy Code. The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or the DIP Loan Documents.

39.    **Authorized Signatories**. The signature of any Authorized Officer (as defined in the Debtor's corporate resolutions filed with the Petition) or Debtors' attorneys, appearing on any one or more of the DIP Loan Documents shall be sufficient to bind the Debtors. No board of directors or other approval shall be necessary.

40.    **Order Effective**. This Interim Order shall be effective as of the date of the signature by the Court.

41.    **No Requirement to Accept Title to Collateral**. The Secured Lending Entities shall not be obligated to accept title to any portion of the Pre-Petition Collateral or DIP Collateral in payment of the indebtedness owed to such party by the Debtors, in lieu of payment in cash or cash equivalents, nor shall any of the Secured Lending Entities be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the Secured Lending Entities.

42.    **Controlling Effect of Interim Order**. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, any prepetition agreement or any DIP Loan Document, the provisions of this Interim Order shall control.

43.     **Final Hearing**.  A final hearing on the Motion shall be heard before this Court on April 19, 2018 at 2:00 p.m. in Courtroom 4 at the United States Bankruptcy Court, 824 Market Street, Wilmington, DE 19801.  Any objections shall be filed with the Bankruptcy Court on or before April 12, 2018 at 4:00 p.m. and served upon counsel for the Debtors and the Pre-Petition Secured Parties.

Dated: March 20 2018

The Honorable Mary F. Walrath
United States Bankruptcy Judge