IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY<br>HOLDINGS LLC, *et al.*,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>Jointly Administered<br><br>Related Docket Nos. 8 and 190<br><br>Hearing Date:  May 8, 2018 at 11:30 a.m. |

**PRELIMINARY OBJECTION TO SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS TO LANTERN ENTERTAINMENT LLC**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (the "Debtors"), hereby submits the following preliminary objection (the "Objection") to the proposed sale of substantially all of the Debtors' assets (the "Sale") to Lantern Entertainment LLC ("Lantern").[2]  In support of the Objection, the Committee respectfully states as follows:

---

[1]  The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment of Executory Contract and Unexpired Leases and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 8] (the "Sale Motion").

**PRELIMINARY STATEMENT**

1. Prepetition, the Debtors' board and management (directed principally by Robert Weinstein) decided to sell the Debtor's consolidated businesses to Lantern on the terms and conditions set forth in the Stalking Horse Agreement without knowing the following:

    a. the estimated asset values for domestic and foreign film rights and which legal entities own the rights;

    b. the estimated asset values for TV rights and which legal entitiess own the rights;

    c. the estimated value for production assets, which legal entities own the rights, and the secured creditor(s) with an interest in those rights;

    d. the estimated value of the unencumbered home entertainment rights;

    e. the estimated value of the unencumbered development, merchandising, music, and derivative rights;

    f. the estimate of unsecured claims and at which entity or entities those claims reside;

    g. whether secured creditors who are proposed to be repaid/assumed from the sale have properly perfected their liens;

    h. the amounts of the priority secured claims owed to the "Guilds;" and

    i. the recovery to parties in the event of a liquidation.

2. If the Debtors had a single lender with a blanket lien on all assets, the lack of knowledge of these issues, while concerning, might be explicable. But here, because there are silos of assets that are subject to single lender liens and separate silos of assets *that are not subject to any liens as of the petition date*, without knowing the respective value of the assets, and in particular, the value of the unencumbered assets that are being cannibalized through the Sale, it is mystifying how the Debtors could have determined that the sale to Lantern was better than the alternatives, including an independent sale of the unencumbered assets.

2

3. In order to pay the freight of the Sale (including approximately $10 million of transactional financial advisory fees), the Debtors pledged previously unencumbered assets to the DIP Agent, including airline revenue, domestic home entertainment revenue, film and television development rights, music publishing rights, and merchandising rights (collectively, the "Unencumbered Assets").

4. Contemporaneously, the Debtor entered into the Stalking Horse Agreement which sells those Unencumbered Assets to Lantern along with avoidance actions without allocating any value thereto.  In light of substantial purchase price adjustments, in order to satisfy the minimum allocation of the cash purchase price in Section 2.7 of the Stalking Horse Agreement, Lantern must allocate the overwhelming majority of the value to the domestic film and television rights.  Specifically, pursuant to section 2.7 of the Stalking Horse Agreement, the Cash Purchase Price must first be allocated to previously encumbered collateral (*e.g.*, TWC Domestic Collateral and BAML Collateral), regardless of actual value.  In other words, the Stalking Horse Agreement requires that the Cash Purchase Price first be used to pay certain secured creditors in full before any portion of the Cash Purchase Price be allocated to the Unencumbered Assets, the avoidance actions that are being sold or the international distribution rights which are subject to a disputed lien.  Any cash that is available beyond the minimum allocation, is then almost fully absorbed to pay for the administrative expenses of these cases (including the substantial costs of the Sale) that are not funded by the DIP Loan.

5. The Committee realizes that there may be a robust Auction with active bidding. ***If such bids drive value to equity in the domestic film library and the Unencumbered Assets, the Committee, in its capacity as a Consultation Party, will take that factor into consideration in determining the highest or otherwise best offer at the Auction.*** However,

because any objection to the Sale had to be filed prior to the Bid Deadline, the Committee is asserting its preliminary concerns at this juncture.

6. In addition to the concerns raised above, the Committee objects to the Sale to the extent it purports to (a) transfer non-insider avoidance actions and (b) sell the Debtors' books and records (and the media upon which they are stored), including email and other recorded communications, without an appropriate provision being made to preserve and protect such books and records for future litigation. Finally, the Committee has an objection deadline of May 4, 2018 for objections to the form of Sale Order, and May 7, 2018 for allocation issues and any objections to a sale to any party other than Lantern and reserves its rights to supplement this objection in connection therewith.

## PRELIMINARY OBJECTION

7. On March 20, 2018, the Debtors filed the Sale Motion. As set forth more fully in the Sale Motion, the Debtors propose to sell substantially all of the Debtors' assets, subject to higher and better offers, to Lantern pursuant to the Stalking Horse Agreement for a pre-adjusted purchase price of $310 million in cash (the "Cash Purchase Price"), payment of certain cure amounts in connection with the assumption and assignment of executory contracts and unexpired leases, and the assumption of certain other liabilities.

8. On April 6, 2018, the Court entered an order [Docket No. 190] (the "Bid Procedures Order") approving the bid procedures contained in the Sale Motion. Pursuant to the Bid Procedures Order, the deadline for potential bidders to submit a qualifying bid for the Debtors' assets is April 30, 2018 at 5:00 p.m. (Eastern Time). The deadline for parties to object to the Sale to Lantern is April 30, 2018 at 4:00 p.m. (Eastern Time).

### A. The Sale Does Not Adequately Allocate Value to Unencumbered Assets and Avoidance Actions Should Not be Sold

9. Pursuant to the Bid Procedures Order, a qualified overbid must provide an "allocation of its cash consideration among the key Asset segments (e.g. the television business, the film library and the unreleased film portfolio) . . ." Bid Procedures Order, Ex. 1, p. 3. However, the Stalking Horse Agreement provided only a minimum allocation as set forth in section 2.7 of the Stalking Horse Agreement. Accordingly, Lantern's purchase price allocation by asset segment is currently unknown.[3] More troubling, however, is that this oversimplification of the allocation process fails to consider that certain of the Debtors' assets within these asset segments were unencumbered (*e.g.*, airline revenue, domestic home entertainment revenue, film and television development rights, music publishing rights, derivative rights, merchandising rights, foreign distribution rights, and the equity value in domestic distribution rights for unreleased films). To the extent the Sale purports to sell the Unencumbered Assets and avoidance actions, without allocating an appropriate portion of the purchase price to these assets, the Court should not approve the Sale.

10. The avoidance actions are valuable assets and should be monetized for the benefit of unsecured creditors. Rather than being sold, the avoidance actions should be preserved for unsecured creditors post-sale and dealt with through a post-confirmation litigation trust. Because absolutely no analysis has been done to quantify the value of these assets, they should not be sold at this time. On April 24, 2018, the Debtors filed the Statement of Financial Affairs of TWC [Docket No. 338] and disclosed transfers to creditors within 90 days of the petition date in excess of $20 million which include $7 million of potentially preferential

---

[3] In the event there is an Auction, the Committee reserves its right to object to the Sale to Lantern to the extent Lantern does not provide an appropriate allocation pursuant to the Bid Procedures Order during the Auction.

payments. In addition, the avoidance actions include other unidentified claims, such as fraudulent conveyances.

**B.     The Debtors' Books and Records Must be Preserved for Litigation Purposes**

11.     Pursuant to the Stalking Horse Agreement, Lantern is purchasing substantially all of the Debtors' assets, including, among other things, the Debtors' "computers, telephones and computer equipment" and "copies of the minute books, Organizational Documents, partnership records and other books and records . . . related to the Purchased Assets and Assumed Liabilities." Schedule 2.2 of Stalking Horse Agreement. Although Schedule 2.3 of the Stalking Horse Agreement purports to exclude certain assets, such as "minute books, Organizational Documents, and "other books and records" of the Debtors, it remains unclear whether Lantern is purchasing the Debtors' books and records or only copies thereof and whether or not "books and records" encompasses emails and other electronic communication.

12.     The unimpeded access to and proper retention of the Debtors' books and records (including email communications) is of vital interest to the Committee (and subsequent litigation trustee), as well as all other litigation parties. Accordingly, to the extent the Stalking Horse Agreement purports to transfer ownership of the Debtors' books and records, including emails, to Lantern, the Committee objects.

**C.     Sale Order**

13.     On April 27, 2018, the Debtors provided the Committee with the current draft of the proposed Sale Order. Pursuant to the Bid Procedures Order, the deadline to object to the Sale Order is April 30, 2018 at 4:00 p.m. (Eastern Time). At the request of the Committee and certain lenders, the Debtors extended this objection deadline as to the Committee and requesting lenders to May 4, 2018 at 12:00 p.m. (Eastern Time). The Committee will file a

6

DOCS_SF:96692.4

supplemental objection by this deadline to address any issues the Committee may have with the proposed Sale Order.

### D.     Reservation of Rights

15. The Committee is scheduled to take the deposition of the Debtors and Lantern on April 30, 2018 and May 2, 2018, respectively, in connection with the Sale. As described in the *Amended Notice of Deposition Upon Oral Examination of Designated Representative(s) of the Weinstein Company Holdings, LLC* [Docket No. 480], the Committee is investigating any connections between Harvey and Robert Weinstein and Lantern. To the extent Harvey or Robert Weinstein are determined to be involved with Lantern or the assets being purchased by Lantern pursuant to the Sale, the Committee will further object to the Sale on that basis. The Committee will conduct a similar investigation as to any Successful Bidder.

15. Accordingly, the Committee reserves its rights to supplement this Objection with the evidentiary record developed subsequent to the filing of this Objection.

*[Remainder of page intentionally left blank]*

Dated: April 30, 2018          PACHULSKI STANG ZIEHL & JONES LLP

        */s/ Colin R. Robinson*
James I. Stang (CA Bar No. 94435)
Robert J. Feinstein (NY Bar No. 1767805)
Debra I. Grassgreen (CA Bar No. 169978)
Bradford J. Sandler (DE Bar No. 4142)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone:   302-652-4100
Facsimile:    302-652-4400
E-mail:       jstang@pszjlaw.com
               rfeinstein@pszjlaw.com
               dgrassgreen@pszjlaw.com
               bsandler@pszjlaw.com
               crobinson@pszjlaw.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*