# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, ET AL.,<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br>Case No. 18-10601 (MFW)<br><br>Jointly Administered |
| AMITYVILLE HORROR ENTERPRISES, LLC, CINDY LEE STOCK, NOEL LUTZ, GABRIELLE LUTZ AND MELISSA IRWIN,<br><br>　　　　　　　　　　　Plaintiffs,<br>　　-against-<br><br>THE WEINSTEIN COMPANY, LLC AND LANTERN ENTERTAINMENT LLC,<br><br>　　　　　　　　　　　Defendants. | Adversary Case No.: |

## COMPLAINT FOR DECLARATORY JUDGMENT

Amityville Horror Enterprises, LLC, Cindy Lee Stock, Noel Lutz, Gabrielle Lutz and Melissa Irwin (collectively "Amityville Enterprises"), by and through their undersigned attorneys, allege as follows:

1.　　This action relates to the motion picture rights to the story and events of "America's most haunted house," referred to as the Amityville Horror House, and the accounts of various paranormal experiences reported by George Lutz and the Lutz Family who lived there. These experiences were described in a book titled *The Amityville Horror* by Jay Anson, which was adapted into a successful 1979 motion picture, and have inspired a number of other books, films, and other works.

1

2.      Amityville Enterprises is the counterparty to option-purchase agreements with Dimensions Films, a division of defendant The Weinstein Company, LLC, which granted the Weinstein Company options for certain limited rights to motion picture or television productions based upon the story of the Amityville Horror House.

3.      The first of these agreements, a 2002 agreement with an entity called Barstu (together with its amendments and assignments, the "Barstu Agreement") was assigned to and assumed by the Weinstein Company in 2003. Under the terms of the Barstu Agreement, all rights to future television or film productions reverted to George Lutz (and Amityville Enterprises as heirs to his estate) in 2009. Following this reversion of rights in 2009, Amityville Enterprises entered into a separate option-purchase agreement with the Weinstein Company in 2011 (the "2011 Agreement").[1]

4.      The 2011 Agreement contains express language providing that, by its own terms and without action by any party, all rights to future productions based upon the Amityville Horror House would revert to Amityville Enterprises if the Weinstein Company failed to meet certain milestones towards production of a first film or any subsequent films.

5.      After a series of studio delays, in 2014 the Weinstein Company completed production of a motion picture titled *Amityville: The Awakening*. Principal photography of that film was completed by May 9, 2014, but despite its completion the Weinstein Company further delayed the film's release until October 2017, when it was released in limited theater showings and for online streaming.

6.      Under the terms of the 2011 Agreement, the Weinstein Company was required to commence principal photography on a "Subsequent Production" within 45 months of completion of principal photography of *Amityville: The Awakening* on May 9,

---

[1] Upon information and belief, the Debtors possess copies of the Barstu Agreement and the 2011 Agreement, as they have listed those documents in court papers described below. Since these agreements contain certain commercially sensitive information, Plaintiffs have not attached copies of those documents to the Complaint. Plaintiffs will provide copies to the Court after the parties have had an opportunity to address appropriate confidentiality protections.

2014, and if it failed to do so it would have "no further right to produce any Subsequent Production(s)" and all rights to future works would revert to Amityville Enterprises. That 45-month period ended on Friday, February 9, 2018, and, upon information and belief, the Weinstein Company had not begun principal photography on a follow-up film by that deadline.

7. On March 19, 2018, the Weinstein Company (along with a number of affiliate entities) filed a petition under Chapter 11 of the Bankruptcy Code; and on April 20, 2018, the Debtors filed a Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts (Dkt. No. 216) listing the Barstu Agreement and the 2011 Agreement as executory contracts that it intends to assume and assign to Defendant Lantern Entertainment LLC (the "Stalking Horse Buyer") or to another bidder in an auction process to be conducted on May 4, 2018 (*See* Dckt. No. 190).

8. Through this action, Amityville Enterprises seeks a declaration that the conditions for the automatic reversion of rights under both the Barstu Agreement and the 2011 Agreement occurred and were satisfied before the filing of the Weinstein Company's bankruptcy petition on March 19, 2018, such that the rights reverted to Amityville Enterprises prior to the petition date, and, accordingly, are not property that can be sold, assigned, or transferred by the Weinstein Company or its bankruptcy estate.

**THE PARTIES**

9. Plaintiff Amityville Horror Enterprises, LLC is a limited liability company formed under the laws of Nevada, with its principal place of business in Las Vegas, Nevada.

10. Plaintiffs Cindy Lee Stock, Noel Lutz, Gabrielle Lutz and Melissa Irwin are heirs to the estate of George Lutz.

11. Defendant The Weinstein Company, LLC ("Weinstein Company") is a limited liability company formed under the laws of Delaware, with its principal place of business in New York, New York., and is one of the above-captioned Chapter 11 debtors. On March 19, 2018, the Weinstein Company filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

12. Defendant Lantern Entertainment LLC is a party to an Asset Purchase Agreement with the Debtor/Defendant the Weinstein Company and is the "Stalking Horse Bidder" for the Debtors' proposed auction of assets through the above-captioned Chapter 11 proceeding.

## JURISDICTION AND VENUE

13. Personal and subject matter jurisdiction exist pursuant to 28 U.S.C. §§ 157 and 1334 because the claims asserted in this Complaint are in or are related to the above-captioned bankruptcy proceeding pending before this Court.

14. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtor's bankruptcy proceeding is pending in this district.

15. Pursuant to Delaware Local Bankruptcy Rule 2008-1, Plaintiffs consent to the entry of a final order or judgment on this Complaint by the Bankruptcy Court.

## STATEMENT OF FACTS

16. The plaintiffs in this action (collectively "Amityville Enterprises") are the owners of copyrights and other intellectual property rights related to the story of the Amityville Horror House and the experiences of the Lutz family who lived there, which have been the subject of numerous books and motion pictures (the "Amityville Rights").

17. In 2002, George Lutz entered into the Barstu Agreement, an option agreement that contemplated the production of a sequel to the successful 1979 film also titled *The Amityville Horror*. In 2003, through a series of assignments and amendments, the Barstu Agreement was assumed by Dimension Films, a division of the Weinstein

Company, and was modified to contemplate the possible production of more than one film or a television series based upon the Amityville Rights. Separate from the Barstu Agreement, Noel Lutz entered into a consulting services agreement related to possible motion picture productions that was likewise assigned and assumed by the Weinstein Company.

18. The rights granted by Lutz to television or motion picture productions under the Barstu Agreement were time-limited and subject to reversion. Section 6.9 of an October 22, 2003 amendment to the Barstu Agreement expressly provides that "at all times following October 31, 2009, Lutz shall have the right to exploit the Sequel Rights for the financing production and distribution of any motion picture, television and/or other productions based in whole or in part on the Sequel Rights. . . ." Section 6.10 of the same amendment further specifies that and further provides that the Weinstein Company cannot release any motion picture pursuant to the Barstu Agreement after October 31, 2012, regardless of when that motion picture was produced.

19. After the reversion of rights to Lutz in October 2009, Amityville Enterprises entered into a subsequent Option-Purchase Agreement (the "2011 Agreement") with the Weinstein Company in contemplation of the development and production of a feature-length film based upon the Amityville Rights. The 2011 Agreement also supersedes and terminates the earlier consulting services agreement with Noel Lutz.

20. The terms of the 2011 Agreement provided the Weinstein Company the option, but not the obligation, to develop a film inspired by the Amityville Rights. Like the Barstu Agreement, this option was granted on limited time, use-it-or-lose terms: the Agreement established a deadline by which the Weinstein Company was required to exercise the option, and further required that "if [Weinstein] Company exercises the Option and fails to commence principal photography of the Picture within thirty-six (36) months from and after the date of exercise of the Option . . ., then all of the Rights

granted by [Amityville Enterprises] to [Weinstein] Company hereunder . . . shall automatically revert to [Amityville Enterprises]."

21.     The Weinstein Company exercised its option, and in or around May 2011 the co-founder of the Weinstein Company, Bob Weinstein, announced that an Amityville Horror motion picture was under development. However the Weinstein Company repeatedly delayed the development of this project, and it was not until early 2014 that the Weinstein Company began filming a motion picture titled *Amityville: The Awakening*.

22.     Principal filming of *Amityville: The Awakening* concluded on May 9, 2014. But the Weinstein Company further delayed the release of the picture for years, until on September 21, 2017 it announced that *Amityville: The Awakening* would be released for free through the Google Play video streaming service and would have a limited, one-day theatrical release in just ten theaters on October 28th. Media sources report that the total box office revenue for *Amityville: The Awakening* was less than eight hundred dollars. In contrast, the 1979 adaptation of Jay Anson's book *The Amityville Horror* grossed over $86 million, and was for decades the most successful independent film ever made.

23.     In addition to granting the Weinstein Company rights to produce *Amityville: The Awakening*, the 2011 Agreement provided the Weinstein Company with the option, but not the obligation, to produce follow-up films to *Amityville: The Awakening*. However, like the initial option, this was use-it-or-lose it. Paragraph 6 of the 2011 Agreement sets forth a "Subsequent Production Deadline" and requires that unless the Weinstein Company commenced filming a subsequent Amityville production within the *earlier* of (a) thirty-six months from the initial commercial release of *Amityville: The Awakening*, or (b) forty-five months from the completion of principle photography of that picture, then the Weinstein Company "shall have no further right to produce any Subsequent Production(s) based on the Rights granted [in the Agreement]."

24. Although the Weinstein Company did not commercially release *Amityville: The Awakening* until October 2017, it completed principal photography of the picture on May 9, 2014; accordingly, the Subsequent Production Deadline occurred forty-five months later on February 9, 2018.

25. Paragraph 6 of the 2011 Agreement permitted the Weinstein Company to extend the Subsequent Production Deadline, providing the "[Weinstein] Company shall have the right to extend each Subsequent Production Deadline for twelve (12) months (the "First Subsequent Production Extension"), by giving [Amityville Enterprises] written notice of such extension prior to each Subsequent Production Deadline and paying to [Amityville Enterprises] within ten (10) business days following such notice the sum of One Hundred Twenty-Five Thousand Dollars ($125,000)."

26. As of February 9, 2018, Weinstein Enterprises had not given written notice of its desire to extend the Subsequent Production Deadline, nor paid the required $125,000 sum. And, upon information and belief, the Weinstein Company has not begun principal photography on a subsequent production. As such, the Subsequent Production Deadline has passed, and pursuant to Paragraph 6 of the 2011 Agreement, any rights to future "motion picture, television, and/or other production based on the Rights" reverted back to Amityville Enterprises.

27. Paragraph 5 of the 2011 Agreement governs this reversion of rights, and provides that in the event of a reversion:

> all of the Rights granted by Owner to Company hereunder (*i.e.*, for the avoidance of doubt, such reversion shall not include any rights that Company may otherwise have in connection with the Picture and any rights to any and all screenplay(s) or other materials written or created by or on behalf of Company or acquired by Company or any other rights which Company may own or control [collectively, "Company Rights and Materials"], all of which [as between Company and Owner] are and at all times shall be owned and/or controlled by Company and shall remain the property of Company) shall automatically revert to Owner. For the avoidance of doubt, any reversion hereunder shall only occur with respect

to the Rights granted herein and no reversion shall have any effect on Company Rights and Materials.

28. Under this provision, while the Weinstein Company remains able to use the Amityville Rights in connection with *Amityville: The Awakening* (subject to the payment of royalties, participation rights, and other terms and restrictions of the Agreement), the rights to any future film, television, or other productions inspired by the Amityville Rights automatically reverted to Amityville Enterprises as soon as the Subsequent Production Deadline passed on February 9, 2018—without any required action by any party.

29. On March 19, 2018—more than a month after the Subsequent Production Deadline and automatic revision of rights under the 2011 Agreement—the Weinstein Company and a number of its affiliates filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

30. On March 20, 2018, the Debtors filed their Motion for Entry of Orders (I)(A)Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief (*See* Dckt, No. 8, the "Sale Motion"). Exhibit B of the Sale Motion lists the Barstu Agreement and the 2011 Agreement as assets to be sold pursuant to the Stalking Horse Agreement.

31. Thereafter, Amityville Enterprises received Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts, indicating that Defendant Lantern Entertainment, as the "stalking horse" bidder

8

in an auction by the Weinstein Company's bankruptcy estate, might seek to purchase and assume the 2011 Agreement as well as the Barstu Agreement (and its related assignment and amendment agreements).

32. Additionally, on April 23rd, 2018 Defendant filed Bankruptcy Schedules identifying the Barstu Agreement and its amendments and assignments, and the 2011 Agreement as assets of the Weinstein Company and executory contracts it may assume and assign to Lantern Entertainment or another successful bidder.

33. Because any rights to future productions based upon or derived from the Amityville Rights have reverted to Amityville Entertainment, those rights are not assets of the bankruptcy estate that can be sold, assumed, or assigned.

34. The inclusion of the Barstu Agreement and the 2011Agreement in the Sale Motion disrupts and impairs Amityville Enterprises ability to market those rights to future productions. This harm outweighs any harm to the Defendants in granting the requested relief.

35. Amityville Enterprises has notified the Weinstein Company, though its counsel, that the Rights to Subsequent Productions (as defined by the Agreement) have reverted, and has sought confirmation from the Debtor and from Lantern Entertainment that those Rights are not assets of the estate. To date, the Debtor and Lantern Entertainment have failed to provide such confirmation, creating an actual and justiciable controversy between the parties.

## PRAYER FOR RELIEF

### Declaratory Judgment

36. Amityville Enterprises incorporates paragraphs 1-35 above as set forth herein.

37. Amityville Enterprises requests a declaratory judgment under Sections 105(a), 363, 541 of the Bankruptcy Code, 11 U.S.C. §§ 105(a), 363(b)(1) and 541;

Bankruptcy Rules 7001(1), 7001(7) and 7001(9); 28 U.S.C. § 2201; and pursuant to the laws of California that:

a) The Weinstein Company has no rights to make any motion picture, television, or other production pursuant to the Barstu Agreement, as all such rights have reverted to the estate of George Lutz;

b) the "Rights" to all "Subsequent Productions," as those terms are defined in the 2011 Agreement, have reverted to Amityville Enterprises; and

c) the foregoing rights are not assets of any of the Debtors under section 541 of the Bankruptcy Code, and cannot be assumed or assigned as part of the Sale Agreement.

Dated: May 2, 2018
Wilmington, Delaware

**VENABLE LLP**

 _/s/ Jamie L. Edmonson_
Jamie L. Edmonson (No. 4247)
Daniel A. O'Brien (No. 4897)
1201 North Market Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 298-3535
Facsimile: (302) 298-3550
jledmonson@venable.com
dao'brien@venable.com

and

Jeffrey S. Sabin
Kostas D. Katsiris
John C. Vazquez
Rockefeller Center,
1270 Avenue of the Americas,
New York, NY 10012

*Attorneys for Plaintiffs Amityville Horror Enterprises, LLC, Cindy Lee Stock, Noel Lutz, Gabrielle Lutz and Melissa Irwin.*