# EXHIBIT B

**Blackline**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------------x
                            :

In re:                         :    Chapter 11

THE WEINSTEIN COMPANY HOLDINGS   :    Case No. 18-10601 (MFW)
LLC, *et al.*,

                      :    Jointly Administered

Debtors.[1]             :

                      :    **Re: Docket Nos. 8, 190, 216, 282 & 482**

-------------------------------------------------------------x

## ORDER (I) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, ENCUMBRANCES AND OTHER INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated March 20, 2018 (the "**Motion**"),[2] of the above-captioned debtors and debtors in possession (each, a "**Debtor**" and collectively, the "**Debtors**"), pursuant to Bankruptcy Code sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking entry of, *inter alia*, (i) an order (the "**Bidding Procedures Order**") (a) approving the bidding procedures (the "**Bid Procedures**") pursuant to

---

[1]   The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2]   Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Motion or the APA, as applicable. Unless otherwise defined herein, terms used herein that are defined in Bankruptcy Code section 101 shall have the meaning ascribed thereto in Bankruptcy Code section 101.

which the Debtors will solicit and, in consultation with the Consultation Parties, select the highest or otherwise best offer for the sale (the "**Sale**") of all or substantially all or a portion of the Assets; (b) approving the Break-Up Fee and Expense Reimbursement provided by the Debtors to the Stalking Horse Bidder; (c) scheduling an auction (the "**Auction**"); (d) establishing procedures (the "**Assumption and Assignment Procedures**") for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (the executory contracts and unexpired leases that are proposed to be assumed and assigned pursuant to the APA (as defined below), the "**Assumed Contracts and Leases**"), including notice of proposed amounts necessary to cure any monetary defaults thereunder (the "**Cure Amounts**") as of the deadline to object to the Potential Assumption and Assignment Notice or the Supplemental Assumption and Assignment Notice, as applicable (the "**Assumption Objection Date**"); (e) scheduling a hearing (the "**Sale Hearing**") to approve the Sale; and (f) granting related relief; and (ii) an order (a) authorizing the Sale of the Assets free and clear of all liens, claims, encumbrances and other interests, (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases, and (c) granting related relief; and the Debtors having signed that certain Asset Purchase Agreement (as may be amended from time to time in accordance with the terms thereof and this Order, the "**APA**") contemplating the sale of substantially all of the Debtors' Assets (specifically as defined in the APA, the "**Purchased Assets**") to the purchaser named in the APA (the "**Purchaser**") free and clear of any Claims, as defined herein, but subject to certain Permitted Liens and Assumed Liabilities (each as defined in the APA) (the "**Sale Transaction**"); and the Court having entered the Bidding Procedures Order on April 6, 2018 [Docket No. 190]; and the Sale Hearing having been held on May 8, 2018, at which hearing the Court approved the Purchaser as the highest or otherwise best bidder for the

2

Purchased Assets, subject to submission of an agreed upon form of order approving the Sale Transaction; and the Court having reviewed and considered the relief sought in the Motion, the APA, all objections to the Motion (other than the Unresolved Contract Objections as defined herein), and the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of these Chapter 11 Cases and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

### THE COURT HEREBY FINDS THAT:[3]

### Jurisdiction and Venue

A.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

---

[3]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Statutory Predicates**

B.      The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 362, 363, 365, 503, and 507.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1.

**Final Order**

C.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

**Notice**

D.      On March 19, 2018 (the "**Petition Date**"), the Debtors commenced these chapter 11 cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

E.      As evidenced by the affidavits of service previously filed with this Court, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the APA and the Sale Transaction has been provided in accordance with Bankruptcy Code sections 102(1) and 363, Bankruptcy Rules 2002 and 9014, and Local Rules 2002-1 and 6004-1.  Notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the APA and the Sale Transaction has been provided in accordance with the Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the APA or the Sale Transaction is or shall be required.

4

F.      The Debtors published notice of the time and place of the proposed Auction, the time and place of the Sale Hearing, and the time for filing objections in (i) the national edition of *USA Today* on April 11, 2018 [Docket No. 205], and (ii) *Variety* in the April 10, 2018 issue [Docket No. 202].  Upon the request of the Committee and others, the Debtors changed the location of the Auction in accordance with the Bidding Procedures Order, and filed a *Notice of Change in Auction Location* on April 26, 2018 [Docket No. 435].  In addition to the Stalking Horse Bid, the Debtors received certain non-qualified bids, and received certain Qualified Bids in the form of credit bids for certain portions of the Assets (collectively, the "**Credit Bids**").  The Credit Bids did not provide for purchase prices that individually or, in the aggregate, equaled or exceeded the Minimum Initial Overbid Amount.  Therefore, in accordance with the Bidding Procedures and the Bidding Procedures Order, the Debtors, after consulting with the Consultation Parties, designated the Stalking Horse Bidder as the Successful Bidder and the Stalking Horse Bid as the Successful Bid [Docket No. 653].  Accordingly, the Debtors, after consulting with the consultation parties, canceled the Auction and published notice accordingly [Docket No. 653].

G.      In accordance with, and as provided by, the Bidding Procedures Order, (i) the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* was filed with the Bankruptcy Court on April 13, 2018 [Docket No. 216] (the "**Initial Assumption Notice**"), (ii) the *Notice of Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* was filed with the Bankruptcy Court on April 20, 2018 [Docket No. 282] (the "**First Supplemental Notice**"), and (iii) the *Notice of Second Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* was filed with the Bankruptcy Court on April

5

27, 2018 [Docket No. 482] (the "**Second Supplemental Notice**"), and served on each Counterparty to the Contracts and Leases via first class mail.

H.    The service of the Initial Assumption Notice, the First Supplemental Notice and the Second Supplemental Notice complied with the Bidding Procedures Order, was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of the assumption and assignment of the Assumed Contracts and Leases or establishing Cure Amounts.    Counterparties to the Assumed Contracts and Leases have had an adequate opportunity to object to and be heard regarding the proposed assumption and assignment and the associated Cure Amounts.

I.    The disclosures made by the Debtors concerning the APA, the Auction, the Sale Transaction, the Sale Hearing, and the Assumed Contracts and Leases were complete and adequate.

J.    A reasonable opportunity to object or be heard regarding the relief requested in the Motion was afforded to all parties in interest.

### Compliance with the Bidding Procedures Order

K.    As demonstrated by the evidence proffered or adduced at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order.  The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bid Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties.  Based upon the record of these proceedings, creditors, other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

L.      The Bid Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets.   The Debtors conducted the sale process without collusion and in accordance with the Bid Procedures.

M.      The Bidding Procedures Order is incorporated herein by reference.

N.      The Purchaser is the Successful Bidder, and the APA is the Successful Bid, for the Purchased Assets in accordance with the Bidding Procedures Order.   The Purchaser has complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA, and the Sale Transaction and the APA likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

### Business Judgment

O.      The APA, including the form and total consideration to be realized by the Debtors under the APA: (i) constitutes the highest or otherwise best offer received by the Debtors for the Purchased Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

P.      The Debtors' determination that the consideration provided by the Purchaser under the APA constitutes the highest or otherwise best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

Q.      Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of their obligations under the APA, including, but not limited to, the fact that: (i) the consideration provided by the Purchaser under the APA will provide a greater recovery for the Debtors' estates than would be provided by any other sale alternative, as evidenced by the

7

Debtors' extensive and active marketing of the Assets, on by-asset, by-segment and whole company bases; and (ii) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the APA, recoveries of creditors will be diminished.

## Corporate Authority

R.      Subject to entry of this Order, each Debtor: (i) has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby; (ii) has all of the necessary corporate power and authority to consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of such Debtor's right, title and interest in the Assumed Contracts and Leases; (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases; and (iv) subject to entry of this Order, needs no consents or approvals, other than those expressly set forth in the APA or this Order, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases.

## Good Faith

S.      The sales process engaged in by the Debtors  was conducted in accordance with the Bid Procedures and the Bidding Procedures Order, and the negotiation of the APA was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n).

T.      The Debtors have complied, in good faith, in all respects with the Bidding Procedures Order and the Bid Procedures.  The Debtors and their management, board of directors, board of managers (or comparable governing authority), employees, agents, and representatives, and the Purchaser and its employees, agents, advisors and representatives, each actively participated in the bidding process and each acted in good faith.

U.      The Purchaser is a good faith purchaser within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision in respect of the Sale Transaction, each term of the APA (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  None of the Debtors or the Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code section 363(m).  The Debtors were free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtors' estates.  The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Purchaser would not consummate the Sale Transaction without such protections.

V.      The form and total consideration to be realized by the Debtors under the APA constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Purchased Assets.

W.      Neither the Purchaser nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of any of the Debtors, as that term is defined under Bankruptcy Code section 101(31).  No common identity of directors, managers, controlling shareholders, or members exists between the Debtors and the Purchaser.

### Transfer of Assumed Liabilities

X.      The transfer of the Assumed Liabilities pursuant to the terms of the APA and this Order is an integral part of the consideration provided under the APA and is in the best interests of the Debtors, their estates, and their creditors.

### No Fraudulent Transfer

Y.      The consideration provided by the Purchaser for the Purchased Assets pursuant to the APA: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession and the District of Columbia.

Z.      The APA was not entered into, and none of the Debtors or the Purchaser has entered into the APA or proposes to consummate the Sale Transaction, for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors, for any other purpose actionable under any statutory or common law fraudulent conveyance or fraudulent transfer law, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

### Free and Clear

AA.      The transfer of the Purchased Assets to the Purchaser (including the assignment of the Assumed Contracts and Leases) will be legal, valid, and effective transfers of the Purchased Assets, and will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of all claims, liens (including, without limitation, any statutory lien on real

RLF1 19296388v.2

and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), Excluded Liabilities (as defined in the APA and including, for the avoidance of doubt, Harassment Claims, as defined herein), interests, rights and encumbrances (other than the Permitted Liens and the Assumed Liabilities), including, without limitation, the following:  all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations asserted by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of tenants and subtenants (if any) under Bankruptcy Code section 365(h) or any similar statute, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases

11

(but, for the avoidance of doubt, in each case arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or insiders, the Purchased Assets, the ownership, sale or operation of the Purchased Assets prior to Closing or the transfer of the Purchased Assets to the Purchaser), and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories (all of the foregoing, including, without limitation, liens and liabilities, collectively being referred to in this Order as "**Claims**" and, as used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof). Notwithstanding any other provision in this Order, the sale of any intellectual property and/or intellectual property rights in the Purchased Assets is not free and clear of the rights pursuant to section 365(n) of the Bankruptcy Code of any non-Debtor licensee under an agreement that is not an "Assumed Contract".

BB.   The Sellers may transfer the Purchased Assets free and clear of all Claims including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied, with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets, subject to paragraphs 8, 9 and 10 herein and any claims and defenses the Debtors and their estates may possess with respect thereto.   Those (a) holders of Claims and (b) non-Debtor parties to the Assumed Contracts and Leases, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).

CC.    Pursuant to Section 2.7 of the APA, the Purchaser has allocated the Cash Purchase Price such that (i) the value of the Purchased Assets that comprise the TWC Domestic Collateral is greater than the sum of (a) the Pre-Petition Obligations (as defined in the Final DIP Order),[4] *plus* the DIP Obligations (as defined in the Final DIP Order), *plus* (c) the amount of all Guild Residuals secured by the TWC Domestic Collateral and accrued prior to the Petition Date (in the amount, as of the Execution Date, of approximately $8 million), *plus* (d) the amount of all interest accrued and unpaid after the Petition Date through the Closing Date on the amount described in the preceding clause (i)(c), *minus* (e) any principal payments on the amount described in the preceding clause (i)(c) made at any time after the Petition Date and through the Closing Date, and (ii) the value of the Purchased Assets that comprise the BAML Collateral is greater than the sum of (a) the BAML Debt (in the amount, as of the Execution Date, of approximately $18.5 million), *plus* (b) all Guild Residuals secured by the BAML Collateral and accrued prior to the Petition Date, if any, *plus* (c) the amount of all interest accrued and unpaid after the Petition Date through the Closing Date on the amounts described in the foregoing clauses (ii)(a) and (ii)(b), *minus* (d) any principal payment(s) on the amounts described in the preceding clauses (ii)(a) and (ii)(b) after the Petition Date through the Closing Date.

DD.    In accordance with paragraphs 19 and 28 of this Court's *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral of Pre-Petition Secured Entities, (II) Granting Adequate Protection to Pre-Petition Secured Entities, and (III) Granting Related Relief* [Docket No. 267] (the "**Final DIP Order**"), the consent of the DIP Secured Parties and the Pre-Petition Secured Parties to the Sale on the terms set forth herein

---

[4]    Each capitalized term used in this paragraph CC and paragraphs DD, 8, and 9, but not otherwise defined in the APA, the Motion or this Order shall have the meaning ascribed to it in the Final DIP Order (as defined below).

and in the APA is subject to the payment in full in cash of the DIP Obligations and the Pre-Petition Obligations, respectively, as set forth in paragraphs 8 and 9 below.

EE.     The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

FF.     The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases: (i) if the transfer of the Purchased Assets were not free and clear of all Claims; or (ii) if the Purchaser would, or in the future could, be liable for any such Claims.  The Purchaser will not consummate the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases, unless this Court expressly orders that none of the Purchaser, their respective affiliates, their respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims.

GG.     Not transferring the Purchased Assets free and clear of all Claims would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Claims and other interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

HH.     Neither the Purchaser nor any of its affiliates is a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Purchaser, any of its affiliates and any of the Debtors, and there is no continuity of enterprise between the

14

Purchaser, any of its affiliates and any of the Debtors.  Neither the Purchaser nor any of its affiliates are holding themselves out to the public as a continuation of any of the Debtors. Neither the Purchaser nor any of its affiliates is a successor to any of the Debtors or their estates, and none of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases amounts to a consolidation, merger, or *de facto* merger of the Purchaser or any of its affiliates with or into any of the Debtors.

II.    Without limiting the generality of the foregoing, none of the Purchaser, its affiliates, its and their respective present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the APA.

**Validity of Transfer**

JJ.    The consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the APA.

15

KK.     Subject to paragraphs LL and 56, the Debtors' right, title and interest in the Purchased Assets constitute property of the Debtors' estates and good title thereto is vested in the Debtors' estates within the meaning of Bankruptcy Code section 541(a).  The Debtors are the sole and lawful owners of the Debtors' right, title and interest in the Purchased Assets, and no other person has any ownership right, title, or interest therein.

LL.     Notwithstanding anything set forth herein or in the APA and notwithstanding the inclusion of any Contract or Lease in the Contract Notice or the Assumed Contracts Schedule, nothing in this Order or the APA shall be deemed to otherwise alter, modify, extend or enhance the Debtors' rights, title or interest to or under any Purchased Asset or to grant the Purchaser any rights, title or interest in or under any property (including, for the avoidance of doubt, any property that is identified as a Purchased Asset) that is not property of the Debtors' estates.

## Assumed Contracts and Leases

MM.     The assumption and assignment of the Assumed Contracts and Leases pursuant to the terms of this Order and the APA is integral to the transactions contemplated by the APA and is in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

NN.     Pursuant to the terms of the APA and this Order, on or after the Closing Date, as applicable pursuant to the terms of this Order, the Purchaser will have, except as otherwise provided in the APA or this Order, or as otherwise expressly agreed to between the Purchaser and such Counterparty:  (i)  cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assumed Contracts and Leases, within the meaning of Bankruptcy Code section 365(b)(1)(A);  (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to

16

such party resulting from a monetary default existing as of and including the Closing Date under any of the Assumed Contracts and Leases, within the meaning of Bankruptcy Code section 365(b)(1)(B); and (iii) provided adequate assurance of its future performance under the Assumed Contracts and Leases within the meaning of Bankruptcy Code sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

OO.    Notwithstanding any other provision of this Order, the rights of (I) non-Debtor parties asserting that certain of the Purchased Assets include property that is not property of the Debtors' estates that filed a timely objection that is adjourned to the Contract Assumption Hearing (as defined below), and (II) (A) non-Debtor parties to the Assumed Contracts and Leases, and/or (B) non-Debtor parties to contracts not listed on the Initial Assumption Notice and First Supplemental Notice but relating to the Purchased Assets, that either (i) filed objections, on any basis, to the proposed assumption, assignment, or Cure Amount, or the sale of a Purchased Asset, and including that the sale of such Purchased Asset does not provide for assumption of any post-Closing obligations related to such Purchased Asset, including any objections regarding whether the Debtors have complied with Bankruptcy Rule 6006 or otherwise relating to the Initial Assumption Notice and the First Supplemental Notice, or (ii) received, in accordance with the Bidding Procedures Order, the Second Supplemental Notice (clauses (I) and (II) collectively being referred to as the "**Unresolved Contract Objections**") are preserved and will be addressed at a hearing to take place on May 22, 2018 at 11:30 am (Eastern Daylight Time), or subsequent hearing(s) (the "**Contract Assumption Hearing**").    For the avoidance of doubt, this Court's findings herein with respect to adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) and any other provision of this Order that may be affected by

17

any Unresolved Contract Objection are not binding on the non-Debtor parties with Unresolved Contract Objections and all parties' rights with respect to the Unresolved Contract Objections are reserved for further adjudication by this Court.

**Compelling Circumstances for an Immediate Sale**

PP.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases occur within the time constraints set forth in the APA.  Time is of the essence in consummating the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases.

QQ.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.    The Motion is granted as provided herein, and entry into and performance under, and in respect of, the APA attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases is authorized and approved.

2.    Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, adjourned or resolved, and all reservation of rights

18

included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein.

3.      This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

**Approval of the APA**

4.      The APA, all ancillary documents, the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases, and all the terms and conditions thereof, are approved in all respects.  The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

5.      The Debtors and their respective officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or requested by the Purchaser to perform, consummate, implement and close the Sale Transaction, including, without limitation: (a) the sale to the Purchaser of all Purchased Assets, in accordance with the terms and conditions set forth in the APA and this Order; and (b) executing, acknowledging and delivering such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying and confirming to the Purchaser, or reducing to possession, the Purchased Assets.  The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required or reasonably contemplated to be paid by the Debtors in order to consummate the transactions contemplated by the APA or perform their obligations under the

19

APA.  Any amounts that become payable by the Debtors to the Purchaser pursuant to the Bidding

Procedures Order and/or the APA (and related agreements executed in connection therewith),

shall: (i) constitute allowed administrative expenses of the Debtors' estates under Bankruptcy

Code sections 503(b)(1) and 507(a)(2); (ii) be treated with such priority if any Chapter 11 Case is

converted to a case under chapter 7 of the Bankruptcy Code; and (iii) not be discharged,

modified or otherwise affected by any reorganization plan for the Debtors, except by written

agreement with the Purchaser (such agreement to be provided in the Purchaser's sole discretion).

6.      All persons and entities are prohibited and enjoined from taking any action to

prevent, adversely affect or interfere with, or which would be inconsistent with, the ability of the

Debtors to transfer the Purchased Assets to the Purchaser in accordance with the APA and this

Order.

7.      The sale of the Purchased Assets to the Purchaser under the APA constitutes a

transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and

laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in

which the Purchased Assets are located, and the sale of the Purchased Assets to the Purchasers

may not be avoided under any statutory or common law fraudulent conveyance and fraudulent

transfer theories whether under the Bankruptcy Code or under the laws of the United States, any

state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction

with laws substantially similar to the foregoing.

8.      Notwithstanding anything to the contrary in the APA or herein, on the Closing

Date, the Debtors shall, and are hereby authorized and directed to, pay, or cause to be paid by the

Purchaser at Closing from the Cash Purchase Price (as defined in the APA), in full in cash any

and all outstanding DIP Obligations and Pre-Petition Obligations (including, without limitation,

RLF1 19296388v.2

default interest, fees and expenses (which include, without limitation, the Exit Fee, the Agent Fee and the Backstop Fee (each as defined in the DIP Credit Agreement), and all professional fees, costs and expenses), and all other amounts owing under the Final DIP Order and the DIP Loan Documents and the Pre-Petition Loan Documents, respectively) in accordance with payoff letters to be provided by the DIP Agent and the Pre-Petition Agent to the Debtors, with copies to the Committee, prior to the Closing (each, a "**Payoff Letter**"); *provided*, that for the avoidance of doubt and notwithstanding anything to the contrary in this Order, the Purchaser has no liability or obligation with respect to the DIP Obligations or the Pre-Petition Obligations; *provided*, *further* that the DIP Agent and the Pre-Petition Agent shall reasonably cooperate with the Debtors and the Purchaser to evidence the release, as of the Closing Date (as defined in the APA) of all liens recorded to secure the DIP Obligations and the Pre-Petition Obligations.  Upon receipt by the DIP Agent (or such other parties entitled to receive payments on account of the DIP Obligations) of the indefeasible payment in full in cash of all DIP Obligations, all ongoing commitments under the DIP Credit Agreement shall be canceled and terminated.  The DIP Agent is hereby authorized to distribute the amount received by the DIP Agent, which amount shall be deemed indefeasible, to the DIP Lenders in accordance with the terms of the DIP Loan Documents.  The Pre-Petition Agent is hereby authorized to distribute the amount received by the Pre-Petition Agent, which amount shall be deemed indefeasible following the Investigation Termination Date (subject to the immediately succeeding sentence), to the Pre-Petition Lenders in accordance with the terms of the Pre-Petition Loan Documents.  Notwithstanding the foregoing, any amounts paid to the Pre-Petition Agent and, as applicable, distributed to the Pre-Petition Lenders pursuant to the terms of this Order and the Final DIP Order, shall be subject to disgorgement to the extent any Challenge asserted in accordance with the terms of the Final DIP Order is ultimately

21

sustained by the Court.[5]   For the avoidance of doubt, the DIP Agent and the Pre-Petition Agent are hereby granted relief from the automatic stay with respect to any and all actions needed to facilitate, enforce or otherwise effect the provisions of this Order.

9.      On the Closing Date, the Debtors shall, and are hereby authorized and directed to, deposit, or cause the Purchaser to deposit, from the Cash Purchase Price (as defined in the APA), into the Collections Account (i) a reserve of all estimated legal fees and expenses of Professionals for the DIP Secured Parties and the Pre-Petition Secured Parties accrued and incurred as of the Closing Date and (ii) such additional amounts as agreed upon by the Debtors and the Committee to be held in reserve for payment of all fees and expenses of Professionals for the DIP Secured Parties and the Pre-Petition Secured Parties accrued and incurred after the Closing Date, and payment of such fees and expenses identified in (i) and (ii) above to legal counsel shall be subject to the notice procedures set forth in the Final DIP Order; *provided*, that for the avoidance of doubt and notwithstanding anything to the contrary in this Order, the Purchaser has no liability or obligation with respect to the fees and expenses of Professionals for the DIP Secured Parties and the Pre-Petition Secured Parties accrued and incurred as of the Closing Date and any other obligations to be paid in accordance with this paragraph other than those incurred in connection with terminating liens and assigning collateral.  For the avoidance of doubt, nothing in this Order limits or may be deemed to limit the Debtors' obligation to pay the fees and expenses of Professionals for the DIP Secured Parties and the Pre-Petition Secured Parties pursuant to the DIP Loan Documents, the Pre-Petition Loan Documents and the Final DIP Order, and the amounts reserved for such payments pursuant to the preceding sentence do

---

[5]    For the avoidance of doubt, pursuant to that certain *Stipulation With MUFG Union Bank, N.A., as Pre-Petition Agent, and UnionBanCal Equities, Inc., as Junior Administrative Agent, Determining Certain Committee Rights Pursuant to Final DIP Order*, dated April 26, 2018 [Docket No. 476] (the "**Challenge Stipulation**"), the Committee's Investigation Termination Date has occurred and the Committee has waived its right to assert a Challenge subject to the terms and conditions set forth in the Challenge Stipulation.

not represent or effect any limitation on the amount of such fees and expenses or the Debtors' obligation to pay such fees and expenses in excess of the amounts reserved.  Any and all such amounts paid to Professionals for the DIP Secured Parties and the Pre-Petition Secured Parties are hereby approved in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

10.     On the Closing Date, the Debtors shall establish a reserve, and shall deposit cash in the amount of $8,000,000 from the proceeds of the sale of the TWC Domestic Collateral to be held for use in the satisfaction of any Guild Residuals secured by the TWC Domestic Collateral (the "**Guild TWCD-Secured Claims**") upon the allowance of the Guild TWCD-Secured Claims. For the avoidance of doubt, consistent with Section 2.7 of the APA, the amount reserved for payment of the Guild TWCD-Secured Claims pursuant to the preceding sentence represents neither a limitation on the amount of the Guild TWCD-Secured Claims nor an admission by the Debtors as to the amount or secured status of the Guild Residuals.

11.     Pursuant to the terms of that certain amended and restated engagement letter, dated as of March 30, 2018 (the "**Engagement Letter**"), by and between the Debtors and Moelis & Company LLC ("**Moelis**"), the Debtors shall pay the Sale Transaction Fee (as defined in the Engagement Letter) and the Financing Transaction Fee (as defined in the Engagement Letter and as modified by the order [Docket No. 413] approving Moelis' retention) (each, a "**Transaction Fee**") to Moelis from the proceeds of the Sale Transaction at Closing (in each case, subject to disgorgement to the extent the Court does not approve Moelis' fee application seeking approval of the applicable Transaction Fee or to the extent the estates are administratively insolvent and Moelis has not received a carve-out or subordination from the Debtors' secured lenders).

## Transfer of the Purchased Assets Free and Clear

12.     Pursuant to Bankruptcy Code sections 105(a) and 363(f), the Purchased Assets shall be sold free and clear of all Claims (other than Permitted Liens and Assumed Liabilities, each as defined in the APA), with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  Notwithstanding anything to the contrary in the APA, the Purchaser will be responsible for post-Closing Guild Residuals to the extent any Covered Title was produced subject to a Guild collective bargaining agreement, and at Closing or as soon as practicable thereafter (but in no event later than two weeks following the Closing) will deliver standard-form Guild assumption agreements, limited to post-Closing Guild obligations, and tailored to the circumstances of the Sale.

13.     At Closing, all of the Debtors' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Purchaser (or any assignee of the Purchaser in accordance with the APA) pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f) free and clear of any and all Claims, with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Purchased Assets, subject to paragraphs 8, 9 and 10 herein and any claims and defenses the Debtors and their estates may possess with respect thereto.  Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Purchaser with good and marketable title to, the Purchased Assets.  All persons or entities, presently or on or after the Closing Date, in possession of some or all of the Debtors' right, title and interest in the Purchased Assets, other than cash security deposits held by the

Guilds for unpaid Guild Residuals, are directed to surrender possession of such right, title or interest in the Purchased Assets to the Purchaser or its designees on the Closing Date or at such time thereafter as the Purchaser may request.

14.      This Order is and shall be binding upon and shall authorize the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the APA.   The Purchased Assets are sold free and clear of any reclamation rights.

15.      Except as otherwise expressly provided in the APA or this Order, all entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, insiders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other entities holding Claims against the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors, insiders, affiliates, their respective current or former directors, officers, employees or agents, the Purchased Assets, the ownership, sale or operation of the Purchased Assets prior to Closing or the transfer of the Purchased Assets to the Purchaser, are

hereby forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing any cause of action or any process or other act or seeking to collect, offset, or recover on account, whether in law or equity, in any judicial, administrative, arbitral or other proceeding, of any Claims against the Purchaser, its successors or assigns, their property or the Purchased Assets, including, but not limited to, any (a) Claims arising under, out of, in connection with or in any way relating to the Debtors, the Debtors' predecessors, insiders, affiliates, their respective current or former directors, officers, employees or agents, the Purchaser, the Purchased Assets, the ownership, sale or operation of the Purchased Assets prior to and including the Closing Date or (b) successor or transferee liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Purchaser, its successors or assigns, assets or properties; (iii) creating, perfecting, or enforcing any Claim against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff (unless asserted prepetition) or right of subrogation of any kind against any obligation due to the Purchaser or its successors or assigns; or (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with this Order or other orders of this Court, or agreements or actions contemplated or taken in respect of this Order and such other orders.  Following the Closing, no holder of any Claim shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim, or based on any action the Debtors may take in the Chapter 11 Cases.

16.    The Debtors are authorized to execute such documents as may be necessary to release any Claims of any kind against the Purchased Assets as such Claims may have been

recorded or may otherwise exist.  If any person or entity that has filed financing statements, *lis pendens* or other documents or agreements evidencing Claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims that the person or entity has with respect to the Purchased Assets: (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets; (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims against the Purchaser and the applicable Purchased Assets; and (c) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Claims with respect to the Purchased Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Claims shall be self-executing, and none of the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

17.    To the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors (to the extent of the Debtors' right, title and interest therein) with respect to the Purchased Assets, and all such licenses, permits,

27

registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser with respect to the Purchased Assets as of the Closing Date.

18.    If, on or after the Closing Date, any Licensee of any of the Purchased Assets is required, by agreement, contract or applicable law, to make royalty or similar payments to the Sellers on account of any Purchased Asset, such Licensee shall instead make any such payments to the Purchaser directly.

19.    No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

20.    In accordance with the APA, the Debtors' books and records, including all data, emails and documents in the Debtors' possession, shall constitute "Excluded Assets" (as defined in the APA), and the Purchaser shall receive copies of all such books and records, solely to the extent related to the Purchased Assets and Assumed Liabilities, available and in the possession and control of the Debtors and not subject to attorney-client privilege or other privilege from disclosure.  Prior to the Closing, the Debtors shall use reasonable efforts to copy all electronic data that resides on physical assets that are to be transferred to the Purchaser at Closing as part of the Purchased Assets; provided, however, that if the Debtors have not finished copying all such electronic data as of the time when the Debtors and Purchaser are otherwise ready, willing and able to consummate the Sale Transaction, the Debtors and the Purchaser shall be authorized to

28

consummate the Sale Transaction despite such copying not having been completed and the Debtors, with the cooperation of the Purchaser, shall work to complete the copying as soon as reasonably practicable thereafter; *provided*, *however*, that the Purchaser shall not modify, destroy, or delete any such electronic data, including, specifically, deleted files, metadata, and mirror images of servers or the like, or the physical assets that house such electronic data, until the Debtors and the Purchaser have certified to the Committee, in writing, that the copying referenced in this paragraph has been completed and the Committee has confirmed in writing that the estates are in receipt of all relevant electronically-stored information or copies thereof. To the extent the copying of electronic data referenced in this paragraph has not been completed prior to Closing, the Debtors shall provide a written certification to the Committee, with the Committee having had a reasonable opportunity to confirm such certification, detailing the electronic data that has been copied and the remaining copying of electronic data that has yet to be completed.

## No Successor or Transferee Liability

21.    Upon the Closing Date, except as provided in the APA or in paragraph 43 of this Order, the entry of this Order and the Closing under the APA shall mean that neither the Purchaser nor its affiliates, as a result of any action taken in connection with the APA, the consummation of the Sale Transaction, or the transfer or operation of the Purchased Assets, shall be deemed to: (a) be a legal successor or successor employer to the Debtors, or otherwise be deemed a successor to the Debtors, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto* or otherwise, merged or consolidated with or into the Debtors; or (c) be an alter ego or a mere

continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**"), the WARN Act (29 U.S.C. §§ 2101 *et seq*.) ("**WARN**"), Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq*. (the "**NLRA**") or (y) in respect of (i) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (ii) any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), (iii) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine; or (iv) any liabilities under any federal, state, or local law, ordinance, statute, or regulation which arises out of or relates to any actual or alleged sexual misconduct, nonconsensual interactions, harassment (including sexual harassment), uninvited or unwelcome conduct, predatory conduct, inappropriate conduct, degrading conduct, coercive or intimidating behavior, humiliation, tort, hostile work environment, sexual assault, sexual misconduct, rape, intentional infliction of emotional distress, negligent infliction of emotional distress, battery, assault, gender violence, false imprisonment, sexual abuse, negligent hiring, negligent

supervision, negligent retention, failure to prevent harassment, discrimination based on sex or gender or any similar or related actions, whether based on intentional or negligent conduct, including but not limited to allegations of failure to prevent or remedy, failure to disclose, or efforts or conspiracy to prevent the disclosure of or cover up, any of the preceding, against Debtors or any of their affiliates or any other independent contractor or any other person who renders services for, or provides goods to, any of the Debtors (collectively, "**Harassment Claims**").

22. Without limiting the generality of the foregoing, and except as otherwise provided in the APA and this Order, neither the Purchaser nor any of its affiliates shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Purchased Assets or (b) any Claims against the Debtors or any of their predecessors, insiders or affiliates or their respective current or former directors, officers, employees or agents. By virtue of the Purchasers' purchase of the Purchased Assets, neither the Purchaser nor any of its affiliates shall have any liability whatsoever with respect to the Debtors' (or their predecessors', insiders' or affiliates' or their respective current or former directors, officers, employees or agents) respective businesses or operations or any of the Debtors' (or their predecessors', insiders' or affiliates' or their respective current or former directors, officers, employees or agents) obligations based, in whole or part, directly or indirectly, on any theory of successor, transferee or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental (including, but not limited to, CERCLA), successor or transferee liability, *de facto* merger or substantial continuity, discrimination, labor and employment (including, but not limited to, WARN), any law applicable to the Harassment Claims, or products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or

unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any

taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the

operation of the Purchased Assets prior to the Closing.  The Purchaser would not have acquired

the Purchased Assets but for the foregoing protections against potential claims based upon

"successor liability" theories.

23.    None of the Purchaser or its affiliates, successors, assigns, equity holders,

employees or professionals shall have or incur any liability to, or be subject to any action by any

of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the

negotiation, investigation, preparation, execution or delivery of the APA or the entry into and

consummation of the sale of the Purchased Assets, except as expressly provided in the APA and

this Order.

24.    Except as otherwise expressly provided in this Order or the APA, nothing shall

require the Purchaser or any of its affiliates to: (a) continue or maintain in effect, or assume any

liability in respect of, any employee, collective bargaining agreement, pension, welfare, fringe

benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are

a party or have any responsibility therefor including, without limitation, medical, welfare and

pension benefits payable after retirement or other termination of employment; or (b) assume any

responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in

respect of the funding, investment or administration of any employee benefit plan, arrangement

or agreement (including but not limited to pension plans) or the termination of any such plan,

arrangement or agreement.

25.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the APA and the Sale Transaction.

26.     The proceeds of the Sale Transaction remaining after the payments expressly authorized by this Order shall be segregated and shall not be used absent further order of the Court.

### Good Faith; Arm's Length Sale

27.     The APA has been negotiated and executed, and the Sale Transaction contemplated by the APA is and has been undertaken, by Debtors, the Purchaser and their respective representatives, at arm's length, without collusion and in "good faith," as that term is defined in Bankruptcy Code section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the APA, and shall not permit the unwinding of the Sale Transaction. The Purchaser is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and, as such, is entitled to the full protections of Bankruptcy Code section 363(m).

28.     None of the Debtors or the Purchaser has engaged in any conduct that would cause or permit the APA or the Sale Transaction to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n). The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable, and the Sale Transaction may not be avoided under Bankruptcy Code section 363(n).

RLF1 19296388v.2

**Assumption and Assignment of the Assumed Contracts and Leases**

29.    Except as otherwise expressly provided in the APA or this Order, upon the Closing Date, pursuant to Bankruptcy Code sections 105(a), 363, and 365, the Debtors are authorized to (a) assume each of the Assumed Contracts and Leases identified on a notice that the Debtors will file with the Court within (1) Business Day after entry of this Order (the "**Contract Notice**") (which amends and supersedes the respective Contracts Schedule attached to the Initial Assumption Notice, the First Supplemental Notice and the Second Supplemental Notice) and assign the Assumed Contracts and Leases to the Purchaser free and clear of all Claims, and (b) execute and deliver to the Purchaser such documents or other instruments as may be reasonably requested by Purchaser to assign and transfer the Assumed Contracts and Leases to the Purchaser.

30.    The Cure Amounts (as they are listed on the Contract Notice), if any, and, if applicable, the Additional Cure Amounts (as defined below), if any, are the sole amounts necessary to be paid upon assumption and assignment of the Assumed Contracts and Leases under Bankruptcy Code sections 365(b)(1)(A) and (B) and 365(f)(2)(A).  All Cure Amounts (as they are listed on the Contract  Notice), if any, and if applicable, Additional Cure Amounts, if any, shall be paid in accordance with the APA.  Upon the payment of the Cure Amounts (as they are listed on the Contract Notice), if any, and, if applicable, Additional Cure Amounts, if any, the Assumed Contracts and Leases shall remain in full force and effect, and no default shall exist under the Assumed Contracts and Leases nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Amounts (as they are listed on the Contract Notice), if any, and, if applicable, Additional Cure Amounts, if any, shall not be subject to further dispute or audit, including, without limitation, any

34

based on performance prior to the Closing Date, irrespective of whether such Assumed Contract and Lease contains an audit clause.  After the payment of the Cure Amounts (as they are listed on the Contract Notice), if any, and, if applicable, the Additional Cure Amounts, if any, with respect to the Assumed Contracts, none of the Debtors or the Purchaser shall have any further liabilities to the counterparties to the Assumed Contracts and Leases other than the Purchaser's obligations under the Assumed Contracts and Leases that accrue and become due and payable on or after the Closing Date.

31.    Notwithstanding any other provision of this Order, the Unresolved Contract Objections shall be heard at the Contract Assumption Hearing.  The pendency of a dispute relating to a particular Assumed Contract or Lease shall not prevent or delay the assumption and assignment of any other Assumed Contracts and Leases (unless otherwise determined by the Purchaser) or the Closing.  The adjournment of the Unresolved Contract Objections to be heard at the Contract Assumption Hearing, all of which were adjourned with the consent of the Purchaser, shall not, in and of itself, result in the failure to satisfy section 7.3(b) of the APA.  The Purchaser and the Debtors shall reasonably cooperate with one another regarding the prosecution of any litigation relating to final determination of Cure Amounts and the assignability of the contracts related to the Unresolved Contract Objections.

32.    On the Closing Date or as soon as reasonably practicable thereafter, the Debtors shall file and serve a notice (the "**Final Cure Notice**"), which identifies which Assumed Contracts and Leases are Assumed Contracts (as defined in the APA) (the "**Assumed Contracts Schedule**") and the Cure Amount, if any, which amount shall include the Cure Amount listed on the Contract Notice attached hereto plus any cure amounts that may become due and payable from the applicable Assumption Objection Date (as defined in the Bidding Procedures Order)

35

through and including the Closing Date (the "**Additional Cure Amount**").  To the extent a Counterparty to such Assumed Contract disagrees with such proposed Additional Cure Amount, such Assumed Contract shall be deemed a Disputed Contract (as defined in the APA) and such Counterparty must file an objection (a "**Final Cure Objection**") with the Court by **no later than ten (10) calendar days after the date of service of the Assumed Contracts Schedule** (the "**Final Cure Objection Deadline**").  All such objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, and (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Additional Cure Amounts the Counterparty believes is required to cure defaults under the relevant Contract or Lease that arose between the applicable Assumption Objection Date and the Closing Date.  Any Counterparty whose Contract or Lease is identified on the Assumed Contracts Schedule that fails to file a Final Cure Objection by the Final Cure Objection Deadline shall be estopped from asserting or claiming any Additional Cure Amounts against the Debtors or the Purchaser that is greater than the Additional Cure Amount set forth on the Assumed Contracts Schedule.  Notwithstanding the foregoing, starting one (1) Business Day after the Final Cure Objection Deadline, the Debtors may assume any Disputed Contract and assign such Disputed Contract to the Purchaser free and clear of all Claims if, prior to such assumption and assignment, the Purchaser deposits into a segregated account cash equal to the lesser of (i) the Cure Amount and, if applicable, any Additional Cure Amount that the Counterparty asserts is due and owing and (ii) such other amount as is agreed to between the Purchaser and such Counterparty.  Any Disputed Contract that is assumed and assigned pursuant to the preceding sentence shall be deemed to be an Assumed Contract, subject to paragraph 31 below.  Further, the Purchaser reserves the right after the Closing Date to determine that any Contract or Lease not listed on the Assumed Contracts Schedule shall be an

36

Assumed Contract, subject to satisfaction of the cure and adequate assurance of future performance requirements for assumption and assignment.

33.      In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or cure of any Assumed Contract or Disputed Contract, any applicable cure payments with respect to such Contract or Lease shall be made following the entry of an order resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Debtors, the Purchaser and such Counterparty).  In the event that after the Closing Date any such dispute is not resolved to the Purchaser's satisfaction, the Purchaser may determine that such Contract or Lease subject to dispute is not an Assumed Contract and, instead, shall be an Excluded Contract (as defined in the APA); upon such determination, the Purchaser shall have no liability whatsoever to the Counterparty to such Contract or Lease that may arise prior to or after the Closing Date.

34.      Any provisions in any Assumed Contract and Lease that prohibit or condition the Debtors' assignment of such Assumed Contract and Lease, or upon the Debtors' assignment of such Assumed Contract and Lease allow the party to such Assumed Contract and Lease to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition, constitute unenforceable anti-assignment provisions that are void and of no force and effect; *provided*, *however* that, for the avoidance of doubt, Unresolved Contract Objections with respect to the foregoing are preserved and shall be heard at the Contract Assumption Hearing.

35.      Each Assumed Contract and Lease constitutes an executory contract or unexpired lease under Bankruptcy Code section 365, and all requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Purchaser of

the Assumed Contracts and Leases have been, or will be, satisfied.   Upon the Purchaser's assumption of the Assumed Contracts and Leases in accordance with the terms hereof, pursuant to Bankruptcy Code sections 363 and 365, (a) the Purchaser shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the Assumed Contracts and Leases, (b) the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and Leases, and (c) the Debtors shall be relieved, pursuant to Bankruptcy Code section 365(k), from any further liability under the Assumed Contracts and Leases.

36.     The Purchaser has demonstrated adequate assurance of future performance under the Assumed Contracts and Leases within the meaning of Bankruptcy Code sections 365(b)(1)(C)  and 365(f)(2)(B).

37.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtors or the Purchaser as a result of the assumption, assignment and sale of the Assumed Contracts and Leases.   The validity of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases, shall not be affected by any dispute between any of the Debtors or their affiliates and another party to an Assumed Contract and Lease regarding the payment of any amount.   Upon assignment to the Purchaser, the Assumed Contracts and Leases shall be valid and binding, in full force and effect and enforceable by the Purchaser in accordance with their respective terms to the extent of the Debtors' right, title and interest in the Assumed Contracts and Leases prior to such assignment.

38.     Subject to paragraphs 33 and 34 hereof, pursuant to Bankruptcy Code sections 105(a), 363, and 365, all counterparties to the Assumed Contracts and Leases are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any

assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts and Leases existing as of and including the Closing Date under the APA or arising by reason of the consummation of transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases.  Any party that may have had the right to consent to the assignment of an Assumed Contract and Lease is deemed to have consented to such assignment for purposes of Bankruptcy Code sections 365(c)(1)(B) and 365(e)(2)(A)(ii) and otherwise if such party failed to file a timely objection to the assumption and assignment of such Assumed Contract and Lease in accordance with the Bidding Procedures Order and paragraphs 33 and 34 hereof.

39.    All counterparties to the Assumed Contracts and Leases shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Debtors or the Purchaser for, any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other entity to effectuate the applicable transfers in connection with the Sale of the Purchased Assets.

40.    Notwithstanding anything to the contrary in the APA, personally identifiable information will not be considered Purchased Assets.

41.    Notwithstanding anything to the contrary in the APA, any and all claims that the Debtors have, or may have, against Portfolio Funding Company LLC I ("**PFC**") or any Affiliate of PFC for contribution, reimbursement, indemnity or otherwise for the payment of any pre-Closing obligations to any Guild, whether made prior to, at or after the Closing Date shall be an Excluded Asset.

**Related Relief**

42.    Each and every federal, state and governmental agency or department, and any other entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the APA.    For the avoidance of doubt, Bankruptcy Code section 1146(a) shall not apply to the Sale Transaction.

43.    Nothing in this Order or the APA releases, nullifies, or enjoins the enforcement of any liability (including, but not limited to, for reclamation and mitigation and any associated long-term protection requirements) by a governmental unit under police and regulatory statutes and regulations that any entity would be subject to as the owner or operator of real property that is sold or transferred pursuant to this Order; *provided*, *however*, that the Purchaser shall not be liable for penalties for days of violation on or prior to the consummation of the Sale Transaction. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.    For the avoidance of doubt, (i) none of the findings set forth in paragraphs W and FF of this Order shall apply to any of the Debtors' current or former directors, officers, affiliates, managers, shareholders, members, agents, insiders, or employees, regardless of whether any such persons are at Closing, or thereafter, employed by, or otherwise become affiliated with, the Purchaser, and (ii) any claims and causes of action against such persons arising from or related to conduct before the Closing shall not be limited, altered or otherwise affected by the findings in paragraphs W and FF or by this Order (provided, that any claims or causes of action shall be asserted only against such persons and no such claims or causes of action shall be asserted against the Purchaser, its subsidiaries or its other affiliates or its

40

or their property (including, without limitation, the Purchased Assets)); *provided*, that the foregoing does not apply to paragraphs 27 and 28 of this Order relating to "Good Faith; Arm's Length Sale".

44. No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Purchased Assets.

45. The Debtors and their estates hereby waive any and all actions related to, and hereby release, the Purchaser and its property (including, without limitation, the Purchased Assets) from any and all Claims or causes of action of any kind, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or nonmaterial, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, related to or arising out of the Chapter 11 Cases, the formulation, preparation, negotiation, execution, delivery, implementation or consummation of the transactions contemplated by the APA, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts and Leases, or any other contract, instrument, release, agreement, settlement or document created, modified, amended, terminated or entered into in connection with the APA, except to the extent specifically assumed or established under the APA or this Order. For the avoidance of doubt, nothing in this paragraph shall release the Purchaser of any of its obligations under the APA and/or this Order.

46. Notwithstanding anything to the contrary in this Order or the APA, the Purchased Actions shall be limited to all claims and Actions of the Seller Parties arising under Bankruptcy

41

Code sections 544(b), 547, 548, 549, and 550 relating to the Purchased Assets which any Seller Party (as defined in the APA) has or may have against any customers, clients, vendors and contract counterparties of the Seller Parties that will continue to have a relationship with the Purchaser (or its subsidiaries or affiliates) in connection with the operation of the Purchased Assets after the Closing Date.

47.     In consideration for the resolution of the Committee's objection to entry of this Order, except with respect to any customer, client, vendor, contract counterparty or any other person against which a Purchased Action may be asserted that takes any action in violation of the terms of this Order or the APA or that would otherwise frustrate the implementation of the Sale Transaction or the operation of the Purchased Assets after the Closing Date, the Purchaser has agreed that it will not pursue, prosecute or otherwise assert any of the Purchased Actions, and such Purchased Actions otherwise shall be deemed to have been immediately and forever waived as of the Closing Date.

48.     Notwithstanding the Recitals or any other provision of this Order, except for the Purchaser and those persons and entities directly or indirectly in control of the Purchaser as of the date of this Order, the status of any other entity or person (including but not limited to the Purchaser's present, contemplated or future:     affiliates, officers, directors, managers, shareholders, members, representatives, successors or assigns) as an "insider" of the Debtors is unaffected by this Order.

49.     To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Cases related to the Motion, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

RLF1 19296388v.2

50.    This Order and the APA shall be binding in all respects upon all pre-petition and post-petition holders of Claims, all interest holders of the Debtors, all non-debtor parties to the Assumed Contracts and Leases, the official committee of unsecured creditors appointed by the U.S. Trustee on March 28, 2018, all insiders, successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of the Debtors' cases to those under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the APA and Sale Transaction shall not be subject to rejection or avoidance under any circumstances.  If any order under Bankruptcy Code section 1112 is entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that this Order and the rights granted to the Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the Debtors may only terminate, reject or avoid the APA and the Sale Transaction in accordance with the terms of this Order and the APA.

51.    This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction, including any and all disputes with any Counterparty to any Contract or Lease of the Debtors (including, without limitation, disputes with respect to assumption and assignment of any Assumed Contracts and Leases or any cure disputes) and any party that has, or asserts, possession, control or other rights in respect of any of the Debtors' assets; *provided*, *however*, that, in the event the Court abstains from exercising or declines to exercise such jurisdiction with

43

respect to the APA, the Bidding Procedures Order, or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. This Court retains jurisdiction to compel delivery of the Debtors' right, title and interest in the Purchased Assets, to protect the Purchaser and its assets, including the Debtors' right, title and interest in the Purchased Assets, against any Claims and successor and transferee liability and to enter orders, as appropriate, pursuant to Bankruptcy Code sections 105(a) or 363 (or other applicable provisions) necessary to transfer the Debtors' right, title and interest in the Purchased Assets to the Purchaser.

52.     At any time prior to the Closing Date, the Purchaser may terminate the APA pursuant to the terms thereof without any penalty or liability to the Debtors, their estates or their creditors and other parties in interest, other than as set forth in the APA.

53.     The APA and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof upon notice reasonably in advance to the Consultation Parties, without further order of the Court; *provided*, *however*, that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

54.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this

44

Order; and (c) the Debtors and the Purchaser may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

55.    The Purchaser shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code section 362 to give any notice permitted by the APA or to enforce any of its remedies under the APA or any other Sale-related document.  The automatic stay imposed by Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence; *provided however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

56.    No rights under any of the Assumed Contracts and Leases that have expired in accordance with their terms prior to the Closing constitute property of the Debtors' estates or will be transferred to the Purchaser in connection with the Sale Transaction or otherwise.

57.    Notwithstanding any provision of the APA or any other provision of this Order to the contrary, the Purchased Assets shall not include any Covered Title or related Title Rights or tax credits solely to the extent such Covered Title or related Title Rights or tax credits relate to project level debt identified on Schedule 2.3 to the APA that is outstanding as of the Closing Date, unless, at or prior to the Closing, a written agreement is reached between the Purchaser and the applicable agents or lenders in respect of such project level debt.

58.    Notwithstanding any other provision of this Order other than with respect to the TWC Domestic Collateral, the rights of PFC to assert, without limitation: (i) that any Purchased Assets, or any right, title or interest that the Debtors claim to have in any Purchased Assets (including, without limitation, any Assumed Contracts and Leases) are the property of PFC and not property of the Debtors' estates, (ii) that the Sellers may not transfer any Purchased Assets (including, without limitation, any Assumed Contracts and Leases) free and clear of PFC's

Claims or defenses, (iii) if this Court, following the Contract Assumption Hearing (as defined below) orders the Purchased Assets (including, without limitation, any Assumed Contracts and Leases) to be sold free and clear of PFC's Claims or defenses, that (x) PFC is entitled to its allocable portion of the proceeds of the Sale Transaction, (y) proceeds of the Sale Transaction have been allocated in a manner that does not ascribe an appropriate value to Purchased Assets that are secured by security interests in favor of PFC and (z) pending resolution of such allocation issues, the proceeds of the Sale Transaction should or must be held in escrow and (iv) any other basis for objection to the Sale, the Initial Assumption Notice, the First Supplemental Assumption Notice, the Second Supplemental Assumption Notice or the Assumed Contracts and Leases asserted in the objection filed by PFC [Docket No. 604] (collectively, the "**PFC Objections**") are preserved and shall be addressed at the Contract Assumption Hearing or such later hearing date as PFC and the Debtors may agree.  For the avoidance of doubt, this Court's findings herein with respect to (i) the authority of the Sellers to transfer the Purchased Assets free and clear of all Claims including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied and (ii) any other matter addressed in the PFC Objections are not binding on PFC and PFC's rights with respect to the PFC Objections are reserved.

59. Notwithstanding any provision of the APA or any other provision of this Order to the contrary, the Purchased Assets shall not include any Covered Title or the related Title Rights or tax credits solely to the extent such Covered Title or the related Title Rights or tax credits is subject to a completion guarantee that is outstanding as of the Closing Date and for which a potential claim may be made thereunder, unless, at or prior to the Closing, a written agreement is

46

~~reached between the Purchaser and the applicable completion guarantor or the Purchaser waives any claims thereunder.~~

59.    [Reserved]

60.    Notwithstanding anything to the contrary in the APA or this Order, the license agreement (the "**HM Agreement**") between Hotel Mumbai Pty Ltd. ("**HMPL**") and The Weinstein Company LLC is removed from the definition of Assumed Contracts and from Annex 1 to the APA pending further order of the Court or resolution by the parties.  For the avoidance of doubt, the Court's findings and rulings herein with respect to Assumed Contracts and the Motion are not binding on HMPL pending further order of the Court or resolution by the parties. HMPL's rights with respect to the HM Agreement, the motion for preliminary injunction and its objection to the Motion are preserved. The hearing on HMPL's motion for preliminary injunction and the hearing on HMPL's objection to the Motion are continued to the same date and time as the Contract Assumption Hearing.

61.    Notwithstanding any other provision of this Order, the rights of (I) non-Debtor parties asserting that certain of the Purchased Assets include property that is not property of the Debtors' estates that filed a timely objection that is adjourned to the Contract Assumption Hearing (as defined below), and (II) (A) non-Debtor parties to the Assumed Contracts and Leases, and/or (B) non-Debtor parties to contracts not listed on the Initial Assumption Notice and First Supplemental Notice but relating to the Purchased Assets, that either (i) filed objections, on any basis, to the proposed assumption, assignment, or Cure Amount, or the sale of a Purchased Asset, and including that the sale of such Purchased Asset does not provide for assumption of any post-Closing obligations related to such Purchased Asset, including any objections regarding whether the Debtors have complied with Bankruptcy Rule 6006 or otherwise relating to the

47

Initial Assumption Notice and the First Supplemental Notice, or (ii) received, in accordance with the Bidding Procedures Order, the Second Supplemental Notice are preserved and will be addressed at the Contract Assumption Hearing. For the avoidance of doubt, this Court's findings herein with respect to adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) and any other provision of this Order that may be affected by any Unresolved Contract Objection are not binding on the non-Debtor parties with Unresolved Contract Objections and all parties' rights with respect to the Unresolved Contract Objections are reserved for further adjudication by this Court.

62.     Notwithstanding paragraph CC of this Order and except as expressly set forth in section 2.7(i) of the APA, the Final DIP Order or this Order, the allocation of the Cash Purchase Price set forth in section 2.7 of the APA shall not be binding on any party in interest other than as between the Debtors and the Purchaser and shall not bind the Court in determining the allocation of the remaining proceeds of the Sale Transaction.

63.     The provisions of this Order are non-severable and mutually dependent.

64.     The requirements set forth in Bankruptcy Rule 6004 and Local Bankruptcy Rule 6004-1 have been satisfied or otherwise deemed waived.

65.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

66.     This Court retains jurisdiction to interpret, implement, and enforce the terms and provisions of this Sale Order.

Wilmington, Delaware
Date: May ___, 2018

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

48

**Exhibit 1**

**APA**