**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| The Weinstein Company Holdings LLC, *et al.*, | Case No. 18-10601 (MFW) |
| Debtors. | (Jointly Administered) |
| Directors Guild of America, Inc.; Screen Actors Guild-American Federation of Television and Radio Artists; and the Writers Guild Of America, West, Inc., | Adversary Proceeding No. _____ |
| Plaintiffs, | |
| v. | |
| MUFG Union Bank, N.A.; and UnionBanCal Equities, Inc., | |
| Defendants. | |

## COMPLAINT

Plaintiffs Directors Guild of America, Inc. ("**DGA**"), Screen Actors Guild-American Federation of Television and Radio Artists ("**SAG-AFTRA**"), and the Writers Guild Of America, West, Inc., ("**WGA**") (collectively, the "**Guilds**") as secured creditors in the applicable motion picture assets, and as plaintiffs in the above-captioned proceeding, hereby allege for their Complaint as follows:

## SUMMARY OF CLAIMS

1.    This action seeks to ensure that Residuals payments owed to directors, performers, and writers under Guild collective bargaining agreements are paid in the fullest

1

possible measure, pursuant to valid and perfected security interests held by each Guild in motion pictures ("**Guild-Secured Pictures**") produced or distributed by the Debtors (collectively, the "**Debtors**," or "**TWC**")  This action is necessary in order to preserve a disgorgement track established by Court order, as the Debtors and their primary lender – MUFG Union Bank, N.A. (which is also the DIP lender) ("**Union Bank**") – have agreed to an allocation of anticipated sale proceeds despite the lack of any valuation of Union Bank collateral relative to all other Debtor assets that are being sold, and present uncertainty concerning liquidation of Guild claims against the Debtors.  These issues jeopardize realization of Guild rights and interests in the anticipated sale proceeds, even though Guild liens generally are senior to the Union Bank secured position, and the collateral for each Guild lien includes *all* rights and proceeds in each Guild-Secured Picture, while the collateral of Union Bank is generally limited to rights and proceeds pertaining only to domestic exploitation of each such motion picture.

2.       Union Bank has recognized the existence of senior Guild liens relative to Union Bank collateral.  Section 2.7 of the applicable Asset Purchase Agreement ("**APA**")[1] allocates approximately $175 million from sale proceeds to Union Bank, and also establishes a priority position for Guild Residuals claims, estimated at approximately $8 million.  [D.I. 846-1, p. 11 of 176].[2]  However, total Guild-secured claims against the Debtors remain unliquidated;[3] upon

---

[1] The APA is appended to this Court's May 9, 2018 Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief (the "**Sale Order**") [D.I. 846].

[2]  The concept of this reserve is also referenced in Paragraph 10 of the Sale Order [D.I. 846, p. 23].

[3] The Guilds have audited certain Debtor titles for the period from July 1, 2008 through December 31, 2012, and the Guilds and Debtors have exchanged documents and requests for

information and belief, principal and interest on Guild-secured claims markedly exceeds the amount reserved through the APA and the Sale Order.

3.      The allocation of sale proceeds stated in APA Section 2.7 (the "**Section 2.7 Allocation**") imposes an unwarranted re-definition of "collateral" under each Guild lien.  The Guild portion of the Section 2.7 Allocation reflects Union Bank's estimate of Guild claims that pertain directly to the domestic rights that comprise Union Bank's collateral.  But there is no language in any Guild security agreement that limits recovery on Guild claims in this fashion.  When debt is owed under a senior Guild lien, it is payable as a secured claim, up to the entire value of the Guild collateral, which essentially is the value of the Guild-Secured Picture, in all markets and territories throughout the world.

4.      By attempting to limit the scope of Guild recovery to claims that pertain only to domestic film rights, the Section 2.7 Allocation impermissibly inverts the absolute priority rule, as an expression of relative priority doctrines under Article 9, Chapter 3 of the Uniform Commercial Code (the "**UCC**"), and the United States Copyright Act, 17 U.S.C. §§ 101-810 (the "**Copyright Act**").  For motion picture rights that comprise collateral common to Union Bank and to the Guilds (the "**Common Pictures**"), Guild claims relating to Common Pictures for which one or more Guilds are senior to Union Bank ("**Guild Senior Secured Claims**") should be satisfied in full before Union Bank can collect on value attributable to such pictures.

5.      The Section 2.7 Allocation also imposes an impermissible form of marshaling upon the Guilds, without the procedural safeguards associated with that doctrine.  The Section

---

production that are intended to identify and liquidate all Guild secured and unsecured claims.  As of the date of this filing, Guild requests for certain records critical to claim liquidation remain outstanding.  Subject to settlement privilege, the most recent estimate of Guild claims was presented, to counsel for the Debtors, the Unsecured Creditors Committee and Union Bank on May 29, 2018.

2.7 Allocation artificially limits Guild rights in anticipated sale proceeds that Union Bank seeks

to shield for itself, thus forcing the Guilds to bear the risk that remaining sale proceeds allocable

to Guild-Secured Pictures can satisfy Guild secured claims.  But there has been no motion or

showing that marshaling can or should be imposed upon senior Guild interests.  There certainly

has been no predicate showing that this *de facto* marshaling does not or will not create prejudice

to senior Guild interests.  And this *de facto* marshaling is predicated on the fiction of bifurcating

Guild rights into two separate pots – claims pertaining to collateral common to the Guilds and

Union Bank and claims pertaining to all non-Union Bank collateral.  However, each Guild lien

creates a unitary pool of collateral – all rights and proceeds, in all markets and all territories –

available for satisfaction of all Guild claims on each Guild-Secured Picture.

6.      The Section 2.7 Allocation may have been intended to obviate valuation issues

that will consume time and estate resources.  Perhaps these issues can be negotiated in an

efficient manner, and the Guilds have encouraged other parties in interest toward structuring

consensual resolution on priority and allocation issues.  But such resolution is difficult without

first ascertaining the amount of sale proceeds that will be distributable, and quantifying secured

Guild claims,[4] and the Guilds have consistently reserved on the adequacy of the Section 2.7

Allocation.  The Court has noted some of the difficulties with the Section 2.7 Allocation.

Paragraph 10 of the Sale Order states, in pertinent part, that "[f]or the avoidance of doubt,

consistent with Section 2.7 of the APA, the amount reserved for payment of the Guild TWCD-

Secured Claims pursuant to the preceding sentence represents neither a limitation on the amount

---

[4] The Guilds repeatedly requested that Union Bank extend the challenge period to see if
further negotiation or future developments would obviate the need for this litigation.  The Guilds
are willing to stay this litigation pending development of information or processes that will
resolve the overarching issues of asset valuation and allocation.

of the Guild TWCD-Secured Claims nor an admission by the Debtors as to the amount of

secured status of the Guild Residuals."  Similarly, Paragraph 62 states, in pertinent part, that "the

allocation of the Cash Purchase Price set forth in section 2.7 of the APA shall not be binding on

any party in interest other than as between the Debtors and the Purchaser and shall not bind the

Court in determining the allocation of the remaining proceeds of the Sale Transaction."  [D.I.

846, pp. 23, 48 of 48].

7.     Paragraph 16 of the Court's Final Order on Post-Petition Financing (the "**Final

DIP Order**")[5] establishes an "Investigation Termination Date," seventy-five (75) days after the

Petition Date, by which non-debtor parties in interest can "investigate the validity, perfection and

enforceability of the Pre-Petition Liens and the Pre-Petition Obligations as well as the junior

liens held by UBE for itself and the other UBE Secured Parties, and to assert any other claims or

causes of action against the Pre-Petition Secured Parties or the UBE Secured Parties."  [D.I. 267,

p. 42 of 64].  By operation of Bankruptcy Rule 9006, the Investigation Termination Date falls on

June 4, 2018.  Given the facts and allegations stated herein, the Guilds have no choice but to file

this challenge in order to preserve the disgorgement track established by that Order relative to

Union Bank and UBE.[6]

## PARTIES

8.     Plaintiff DGA is organized as a California non-profit, mutual benefit corporation

with its principal place of business in Los Angeles, California.  The DGA is the collective

---

[5] Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing Pursuant
to 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) and (B) Utilize Cash
Collateral of Pre-Petition Secured Entities, (II) Granting Adequate Protection to Pre-Petition
Secured Entities, and (III) Granting Related Relief [D.I. 267, pp. 42-43, 55 of 64].

[6] The Guilds reserve all rights to amend this Complaint for any reason, to the fullest extent
permitted by law.

bargaining representative for directors and other members of directorial teams throughout the motion picture and television industries, and, in connection with applicable Guild-Secured Pictures, is a secured creditor in the above-captioned chapter 11 cases (collectively, the "**TWC Bankruptcy**"), concerning each of the above-caption debtors (collectively, the "**Debtors**" or "**TWC**").

9.      Plaintiff SAG-AFTRA is a Delaware unincorporated association with its principal place of business in Los Angeles, California.  SAG-AFTRA is the collective bargaining representative for, *inter alia*, performers throughout the motion picture and television industries, and, in connection with applicable Guild-Secured Pictures, is a secured creditor in the TWC Bankruptcy.

10.      Plaintiff WGA is a labor organization with its principal place of business in Los Angeles, California.  The WGA is the collective bargaining representative for writers throughout the motion picture and television industries, and, in connection with applicable Guild-Secured Pictures, is a secured creditor in the TWC Bankruptcy.

11.      The Guilds have standing to bring this action under 11 U.S.C. § 1109(b).

12.      Upon information and belief, Defendant MUFG Union Bank, N.A. (formerly Union Bank, N.A.) is a national banking association chartered under the laws of the United States of America with its headquarters in the city of San Francisco in the state of California, and is an insured, federal depository institution as those terms are defined in section 3 of the Federal Deposit Insurance Act.  Upon information and belief, Union Bank is the administrative agent and letter of credit issuer on behalf of a syndicate of lenders including itself and other banks, for the benefit of The Weinstein Company Holdings, LLC ("**TWCH**") and its affiliates, including but not limited to TWC Domestic, LLC ("**TWCD**").

13.     Upon information and belief, Defendant UnionBanCal Equities, Inc. ("**UBE**") is a corporation organized under the laws of California with its headquarters in the city of San Francisco in the state of California, and is a related entity to MUFG Union Bank, N.A.  Upon information and belief, UBE and Union Bank share common collateral in Debtor assets, with UBE holding a junior lien.

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 157 and § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408-1409.  This matter is a core proceeding under 28 U.S.C. § 157 and arises out of, and is related to, the TWC Bankruptcy, which is administered pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

## FACTUAL BACKGROUND

### Guild Liens in TWC Film Rights

15.     Each Guild holds valid and perfected security interests in certain motion picture rights produced or distributed by the Debtors.  Each such security interest is taken at the time principal photography of a given motion picture is commenced, and is granted by the entity (or entities) that own the rights to produce or distribute the given motion picture.  The "Secured Obligations" include performance of obligations under each applicable Guild collective bargaining agreement, particularly payment of "Residuals" to Guild-represented employees as the motion picture is exploited in various markets after release in the initial intended market.

16.     Under each Guild security agreement, as exemplified in the standard form attached as Exhibit "A" hereto, each applicable Guild is granted a first-priority security interest in collateral that includes:

> All rights, title, and interest of Grantor throughout the universe in the Picture and all allied, ancillary, and subsidiary rights, and all properties and things of value pertaining to the Picture, whether now existing or hereafter made, acquired, or produced, including, without limitation, all screenplays, motion picture photoplays, and all other tangible and intangible manifestations of any copyrightable interest relating to the Picture, and all existing or hereafter acquired rights, title, interest, and property of Grantor described in Paragraphs (i) through (xx) below [which include "Copyright Licenses," "General Intangibles," "Proceeds," etc.] to the extent they relate to the Picture or the Picture's production or exploitation . . . .

[Ex. A, p. 4 of 27; (*also see* Ex. A, pp. 23-27)].  Guild collateral thus includes all rights and proceeds, in all markets and territories "throughout the universe."  There is no temporal, geographic or market-specific limitation to the Guild collateral.

17.    Exhibit B, attached hereto, details Guild liens in Common Pictures; particular motion pictures produced or distributed by the Debtors, which comprise collateral common to the Guilds and to Union Bank.  Exhibit B also demonstrates proof of lien perfection by each Guild, through filings with the United States Copyright Office (the "**Copyright Office**") pursuant to 17 U.S.C. § 205, and through UCC-1 and UCC-3 filing statements pursuant to UCC Article 9.[7]  One or more Guilds also hold security interests in motion pictures produced or distributed by the Debtors that, upon information and belief, are not collateral for Union Bank.

**Union Bank Liens in Guild-Secured Pictures**

18.    Upon information and belief, pursuant to that certain Second Amended and Restated Credit and Security Agreement dated as of September 30, 2013 among TWCD, the lenders referred to therein, and Union Bank (the "**Union Bank Credit Agreement**"), Union Bank was granted a lien in certain motion picture rights that already were encumbered by Guild security interests.  With respect to motion pictures produced or licensed to TWC on or after

---

[7] Exhibit B is provisional, and subject to revision as further information becomes available.

September 30, 2013, the Guilds and Union Bank each have taken measures to perfect their respective security interests in such accretive motion picture rights. The Guilds allege that under either the Copyright Act, *see* 17 U.S.C. § 205(d), or UCC Article 9, Chapter 3, they are senior to Union Bank in the majority of the Common Pictures.

19.     However, analysis of relative priority for Common Pictures is only the first step of intercreditor analysis as between Union Bank and the Guilds. Upon information and belief, the Debtors did not grant Union Bank a security interest in all rights and proceeds for each Common Picture. Instead, Union Bank holds security interests pertaining only to domestic film rights: *i.e.*, Union Bank is not generally secured in rights and proceeds relating to exploitation of Common Pictures outside of North America.[8] In contrast, there is no such territorial limitation in the collateral base for Guild security interests. Upon information and belief, this differential in collateral value may be substantial. By way of example, data recently published by the Motion Picture Association of America (the "**MPAA**") indicates that less than 37% of the value of theatrical motion pictures produced by MPAA members comes from domestic exploitation.[9]

20.     Upon information and belief, Union Bank collateral for certain Common Pictures is even further diminished through exclusion of rights and proceeds pertaining to the home entertainment market (*e.g.*, DVD usage). There is no such market limitation in the collateral base for Guild security interests, as each Guild is secured in all rights and proceeds, in all markets.

---

[8]   In fact, materials available to the Guilds are ambiguous as to whether Union Bank rights in Common Pictures actually or consistently included Canadian rights and proceeds.

[9] *See* MPAA, *2017 THEME Report* 7, 11 (2018), https://www.mpaa.org/wp-content/uploads/2018/04/MPAA-THEME-Report-2017_Final.pdf.

**Competing Guild and Union Bank Claims in Pre-Petition Collateral**

21.     Upon information and belief, the Union Bank Credit Agreement provided for creation and maintenance of an account intended to pay Residuals and profit participants entitled to compensation for the exhibition of the content developed, produced, and/or distributed by TWC (the "**P&R Account**").  Upon information and belief, TWC was required to provide Union Bank with periodic reports reflecting the portion of proceeds from corresponding collections that should be reserved for payment of Residuals and profit participations.  Upon information and belief, any such reports either were understated with respect to the amount of Residuals owed to the Guilds, or simply were not provided to Union Bank.

22.     The Guilds had audited TWC titles, on a sample basis, for the period from July 1, 2008 through December 31, 2012, and identified over $12 million in unpaid Residuals, only for the audit sample titles.  Commencing with an audit entry letter dated February 12, 2016, the Guilds had sought audit access with respect to Residuals claims from January 1, 2013 through December 31, 2016, but TWC refused to provide audit access.

23.     While quantification of Guild claims remains in process, based on incomplete information provided by the Debtors since initiation of the TWC Bankruptcy, the Guilds presently estimate secured claims, from July 1, 2008 through July 20, 2018, to be markedly in excess of the $8 million reserve created under the Section 2.7 Allocation, not including contractual interest or late payment liquidated damages.[10]  Upon information and belief, most of these claims comprise Guild Senior Secured Claims.

---

[10] The Debtors and Guilds currently dispute liquidation of Guild claims; issues include factual disputes and interpretive issues under each Guild collective bargaining agreement.   Each Guild has initiated their applicable grievance process, leading to binding labor arbitration under each Guild collective bargaining agreement.

24.    Upon information and belief, notwithstanding contractual and other legal obligations to the contrary, Union Bank continued to sweep pre-petition proceeds and failed to reserve adequate funds for Guild Residuals in the P&R Account.  The amounts swept by Union Bank – within the 90 days, or within the year preceding March 19, 2018, the petition date for TWC Bankruptcy (the "**TWC Petition Date**") – are unknown.

### Competing Guild and Union Bank Claims in Post-Petition Collateral

25.    Upon information and belief, as of the TWC Petition Date, the Debtors owed $156.4 million to Union Bank.  Upon information and belief, this amount is net of pre-petition cash sweeps in favor of Union Bank.  Upon information and belief, post-petition sweeps in favor of Union Bank may have also occurred.

26.    Pursuant to the Sale Order, Lantern Entertainment, LLC ("**Lantern**" or "**Buyer**") has agreed to purchase all applicable assets of TWCH for $310 million, plus certain assumed obligations, but subject to certain adjustments downward.  Upon information and belief, and notwithstanding complications pertaining to multiple cure objections filed by dozens of TWC counterparties that may further reduce proceeds from sale pursuant to Section 2.9 of the APA, if total sale proceeds to the TWC estate equal no more than $310 million ("**Presumed Sale Proceeds**"), and if Union Bank is permitted to collect $175 million from such sale proceeds (the "**Union Bank Post-Sale Payments**"), then only $135 million is left for division among all creditors other than Union Bank.  Upon information and belief, the actual distributable amount may prove less than half of that projected figure.

27.    The Section 2.7 Allocation posits that up to $8 million be reserved for Guild-

secured claims, beyond all amounts payable to Union Bank from Presumed Sale Proceeds.[11]
While the Section 2.7 Allocation thus impliedly recognizes Guild secured interests senior to the
secured claims of Union Bank, it also pays Presumed Sale Proceeds to Union Bank, even when
Guild Senior Secured Claims may go unpaid to the extent that they are not satisfied through
remaining Presumed Sale Proceeds.  Despite the potential cushion provided by the difference
between $175 million and up to $310 million, there is absolutely no assurance that any ultimate
"cushion" will approach that presumed sum, nor that collateral beyond Common Pictures will be
sufficient to satisfy senior – or junior – Guild-secured claims.  And many substantial valuation
issues loom, including: valuation of the Union Bank collateral – limited, as it is, to domestic
rights – as a subset of the Debtors' worldwide theatrical motion picture business for pictures
within the Union Bank collateral; valuation of the Union Bank collateral relative to Debtors'
theatrical motion pictures excluded from the Union Bank collateral; valuation of Union Bank
collateral as a subset of overall Debtor value; valuation of Union Bank collateral relative to
Guild collateral; and valuation of Union Bank collateral relative to the collateral for other
creditors in this case.  Through the Section 2.7 Allocation, Union Bank therefore seeks to collect
the bulk of sale proceeds, despite the limitations of its collateral relative to other assets or
business units subject to sale.  But if the ultimate value of the Union Bank collateral is
insufficient to cover the total of Guild Senior Secured Claims and Union Bank claims, then the
Guilds, as senior creditors, are denied the value of senior secured positions, when Union Bank
should instead be viewed as undersecured in that same measure.

---

[11]   This $8 million does not cap Guild secured claim recoveries from the Union Bank
collateral.  *See* Paragraph 10 of the Sale Order [D.I. 846, p. 23 of 48]

## COUNT I
### Declaratory Judgment – Violation of the Absolute Priority Rule
### (Against Union Bank)

28.    The Guilds incorporate by reference the allegations contained in paragraphs 1 through 27 of the Complaint.

29.    This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and 11 U.S.C. § 105.

30.    As alleged herein, one or more Guilds holds perfected, valid, and enforceable liens in certain Guild-Secured Pictures, which secure the performance of certain obligations pursuant to each Guild Basic Agreement.

31.    Based on a diligent review of the records of the Copyright Office, and certain exchanges of information among applicable secured creditors in the TWC Bankruptcy, each Guild security interest is, in most instances, and pursuant to 17 U.S.C. § 205(d), senior to any security interest of Union Bank in common collateral.

32.    Upon information and belief, pursuant to the Section 2.7 Allocation, Union Bank will be taking the Union Bank Post-Sale Payments from the Debtors' estate.

33.    Upon information and belief, and as a result of the Union Bank Post-Sale Payments, the Guilds may be rendered undersecured in the Guild-Secured Pictures and will not be able to recover their claims, up to the value of their collateral, on secured Residuals claims in Guild-Secured Pictures.

34.    To the extent they hold senior secured claims in Guild-Secured Pictures, by operation of the "absolute priority rule" and the scope of collateral for each Guild lien, the Guilds claim that for each such picture they are entitled to payment of claims in full, or up to the value of each collateralized Guild-Secured Picture.

35.     Upon information and belief, Union Bank claims that regardless of Guild senior secured positions in all rights and proceeds from each Guild-Secured Picture, it is entitled to the Union Bank Post-Sale Payments, even if such payments ignore the total Guild debt applicable to each such Guild-Secured Picture.

36.     As such, a genuine and actual justiciable controversy presently exists between the Guilds and Union Bank with regard to whether Union Bank is entitled to the Union Bank Post-Sale Payments, or whether Union Bank must disgorge those payments, pursuant to Paragraph 28 of the Final DIP Order, until senior Guild claims in Guild-Secured Pictures are satisfied.

37.     A declaration that the Guilds hold valid, senior, and enforceable security interests in applicable Guild-Secured Pictures, and therefore are entitled to payment in full prior to recovery by junior creditors, will not constitute an advisory opinion.

38.     A complete and final determination of whether Union Bank must disgorge such Union Bank Post-Sale Payments is not readily obtainable in another action or proceeding.

**COUNT II**
**Declaratory Judgment – Violation of the Absolute Priority Rule**
**(Against UBE)**

39.     The Guilds incorporate by reference the allegations contained in paragraphs 1 through 38 of the Complaint.

40.     This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and 11 U.S.C. § 105.

41.     As alleged herein, one or more Guilds holds perfected, valid, and enforceable liens in certain Guild-Secured Pictures, which secure the performance of certain obligations pursuant to each Guild Basic Agreement.

42.     Based on a diligent review of the records of the Copyright Office, and certain exchanges of information among applicable secured creditors in the TWC Bankruptcy, each Guild security interest is, in most instances, and pursuant to 17 U.S.C. § 205(d), senior to any security interest of UBE in common collateral.

43.     Upon information and belief, and as a result of the Union Bank Post-Sale Payments, the Guilds may be rendered undersecured in the Guild-Secured Pictures and will not be able to recover their claims, up to the value of their collateral, on secured Residuals claims in Guild-Secured Pictures.

44.     To the extent they hold senior secured claims in Guild-Secured Pictures, by operation of the absolute priority rule and the scope of collateral for each Guild lien, the Guilds claim that for each such picture they are entitled to payment of claims in full, or up to the value of each collateralized Guild-Secured Picture.

45.     Upon information and belief, UBE claims that regardless of Guild senior secured positions in all rights and proceeds from each Guild-Secured Picture, it is entitled to the Union Bank Post-Sale Payments, even if such payments ignore the total Guild debt applicable to each such Guild-Secured Picture.

46.     As such, a genuine and actual justiciable controversy presently exists between the Guilds and UBE with regard to whether UBE is entitled to the Union Bank Post-Sale Payments, or whether UBE must disgorge those payments, pursuant to Paragraph 28 of the Final DIP Order, until senior Guild claims in Guild-Secured Pictures are satisfied.

47.     A declaration that the Guilds hold valid, senior, and enforceable security interests in applicable Guild-Secured Pictures, and therefore are entitled to payment in full prior to recovery by junior creditors, will not constitute an advisory opinion.

48.     A complete and final determination of whether UBE must disgorge such Union

Bank Post-Sale Payments is not readily obtainable in another action or proceeding.

**COUNT III**
**Declaratory Judgment – Marshaling Without Due Process**
**(Union Bank)**

49.     The Guilds incorporate by reference the allegations contained in paragraphs 1

through 48 of the Complaint.

50.     This claim for relief arises under the Federal Declaratory Judgment Act, 28

U.S.C. § 2201, and 11 U.SC. § 105.

51.     As alleged herein, one or more Guilds holds perfected, valid, and enforceable

liens in certain Guild-Secured Pictures, which secure the performance of certain obligations

pursuant to each Guild Basic Agreement.

52.     Based on a diligent review of the records of the Copyright Office, and certain

exchanges of information among applicable secured creditors in the TWC Bankruptcy, each

Guild security interest is, in most instances, and pursuant to 17 U.S.C. § 205(d), senior to any

security interest of Union Bank in common collateral.

53.     Upon information and belief, pursuant to the Section 2.7 Allocation, Union Bank

will be taking payments from the Debtors' estate in the form of Union Bank Post-Sale Payments.

54.     As a result of the Union Bank Post-Sale Payments, by forcing the Guilds to seek

satisfaction of senior secured claims from non-Union Bank collateral, while otherwise ignoring

the extent to which Union Bank collateral is junior to the entirety of Guild-secured claims and

Guild collateral pertaining to each Common Picture, Union Bank will in effect have imposed the

doctrine of marshaling upon the Guilds.

55.     Union Bank has not moved the Court, or instituted an adversary proceeding, for

16

an order or judgment authorizing imposition of marshaling on the Guilds.  Absent such an order, including findings that all elements of the marshaling doctrine have been shown and satisfied, the Guilds cannot be compelled to accept reduced payment on senior secured claims from collateral common to the Guilds and Union Bank.

56.     As such, a genuine and actual justiciable controversy presently exists between the Guilds and Union Bank with regard to whether Union Bank is entitled to the Union Bank Post-Sale Payments, or whether Union Bank must disgorge those payments, pursuant to Paragraph 28 of the Final DIP Order, until senior Guild claims in Guild-Secured Pictures are satisfied.

57.     A declaration that the Guilds hold valid, senior, and enforceable security interests in applicable Guild-Secured Pictures, and that the Guilds cannot be compelled to marshal assets without an applicable court order and therefore are entitled to payment in full prior to recovery by junior creditors, will not constitute an advisory opinion.

58.     A complete and final determination of whether Union Bank must disgorge such Union Bank Post-Sale Payments is not readily obtainable in another action or proceeding.

**COUNT IV**
**Declaratory Judgment – Marshaling Without Due Process**
**(Against UBE)**

59.     The Guilds incorporate by reference the allegations contained in paragraphs 1 through 58 of the Complaint.

60.     This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and 11 U.S.C. § 105.

61.     As alleged herein, one or more Guilds holds perfected, valid, and enforceable liens in certain Guild-Secured Pictures, which secure the performance of certain obligations pursuant to each Guild Basic Agreement.

62.     Based on a diligent review of the records of the Copyright Office, and certain exchanges of information among applicable secured creditors in the TWC Bankruptcy, each Guild security interest is, in most instances, and pursuant to 17 U.S.C. § 205(d), senior to any security interest of UBE in common collateral.

63.     Upon information and belief, pursuant to the Section 2.7 Allocation, UBE will be taking payments from the Debtors' estate in the form of Union Bank Post-Sale Payments.

64.     As a result of the Union Bank Post-Sale Payments, by forcing the Guilds to seek satisfaction of senior secured claims from non-UBE collateral, while otherwise ignoring the extent to which UBE collateral is junior to the entirety of Guild-secured claims and Guild collateral pertaining to each Common Picture, UBE will in effect have imposed the doctrine of marshaling upon the Guilds.

65.     UBE has not moved the Court, or instituted an adversary proceeding, for an order or judgment authorizing imposition of marshaling on the Guilds.  Absent such an order, including findings that all elements of the marshaling doctrine have been shown and satisfied, the Guilds cannot be compelled to accept reduced payment on senior secured claims from collateral common to the Guilds and UBE.

66.     As such, a genuine and actual justiciable controversy presently exists between the Guilds and UBE with regard to whether UBE is entitled to the Union Bank Post-Sale Payments, or whether UBE must disgorge those payments, pursuant to Paragraph 28 of the Final DIP Order, until senior Guild claims in Guild-Secured Pictures are satisfied.

67.     A declaration that the Guilds hold valid, senior, and enforceable security interests in applicable Guild-Secured Pictures, and that the Guilds cannot be compelled to marshal assets without an applicable court order and therefore are entitled to payment in full prior to recovery

by junior creditors, will not constitute an advisory opinion.

68.     A complete and final determination of whether UBE must disgorge such Union

Bank Post-Sale Payments is not readily obtainable in another action or proceeding.

**COUNT V**
**Declaratory Judgment – Marshaling Without Showing No Prejudice to Senior**
**Creditor Interests**
**(Against Union Bank)**

69.     The Guilds incorporate by reference the allegations contained in paragraphs 1

through 68 of the Complaint.

70.     This claim for relief arises under the Federal Declaratory Judgment Act, 28

U.S.C. § 2201, and 11 U.S.C. § 105.

71.     As alleged herein, one or more Guilds holds perfected, valid, and enforceable

liens in certain Guild-Secured Pictures, which secure the performance of certain obligations

pursuant to each Guild Basic Agreement.

72.     Based on a diligent review of the records of the Copyright Office, and certain

exchanges of information among applicable secured creditors in the TWC Bankruptcy, each

Guild security interest is, in most instances, and pursuant to 17 U.S.C. § 205(d), senior to any

security interest of Union Bank in common collateral.

73.     Upon information and belief, pursuant to the Section 2.7 Allocation, Union Bank

will be taking payments from the Debtors' estate in the form of Union Bank Post-Sale Payments.

74.     As a result of the Union Bank Post-Sale Payments, by forcing the Guilds to seek

satisfaction of senior secured claims from non-Union Bank collateral, while otherwise ignoring

the extent to which Union Bank collateral is junior to the entirety of Guild-secured claims and

Guild collateral pertaining to each Common Picture, Union Bank will in effect have imposed the

doctrine of marshaling upon the Guilds, without a showing that there is no prejudice to senior

19

secured creditor interests of the Guilds in connection with Guild claims, and without a judicial

finding to this effect.

75.     On information and belief, the Guilds will be prejudiced as senior secured

creditors, as a result of the Union-Bank Post-Sale Payments.

76.     As such, a genuine and actual justiciable controversy presently exists between the

Guilds and Union Bank with regard to whether Union Bank is entitled to the Union Bank Post-

Sale Payments, or whether Union Bank must disgorge those payments, pursuant to Paragraph 28

of the Final DIP Order, until senior Guild claims in Guild-Secured Pictures are satisfied.

77.     A declaration that the Guilds hold valid, senior, and enforceable security interests

in applicable Guild-Secured Pictures, and cannot be compelled to marshal assets without a

showing and applicable court order demonstrating that there will be no prejudice to senior

secured creditor interests of the Guilds in connection with Guild claims and therefore are entitled

to payment in full prior to recovery by junior creditors, will not constitute an advisory opinion.

78.     A complete and final determination of whether Union Bank must disgorge such

Union Bank Post-Sale Payments is not readily obtainable in another action or proceeding.

### COUNT VI
**Declaratory Judgment – Marshaling Without Showing No Prejudice to Senior
Creditor Interests
(Against UBE)**

79.     The Guilds incorporate by reference the allegations contained in paragraphs 1

through 78 of the Complaint.

80.     This claim for relief arises under the Federal Declaratory Judgment Act, 28

U.S.C. § 2201, and 11 U.S.C. § 105.

81.     As alleged herein, one or more Guilds holds perfected, valid, and enforceable

liens in certain Guild-Secured Pictures, which secure the performance of certain obligations

pursuant to each Guild Basic Agreement.

82.    Based on a diligent review of the records of the Copyright Office, and certain exchanges of information among applicable secured creditors in the TWC Bankruptcy, each Guild security interest is, in most instances, and pursuant to 17 U.S.C. § 205(d), senior to any security interest of UBE in common collateral.

83.    Upon information and belief, pursuant to the Section 2.7 Allocation, UBE will be taking payments from the Debtors' estate in the form of Union Bank Post-Sale Payments.

84.    As a result of the Union Bank Post-Sale Payments, by forcing the Guilds to seek satisfaction of senior secured claims from non-UBE collateral, while otherwise ignoring the extent to which UBE collateral is junior to the entirety of Guild-secured claims and Guild collateral pertaining to each Common Picture, UBE will in effect have imposed the doctrine of marshaling upon the Guilds, without a showing that there is no prejudice to senior secured creditor interests of the Guilds in connection with Guild claims, and without a judicial finding to this effect.

85.    On information and belief, the Guilds will be prejudiced as senior secured creditors, as a result of the Union-Bank Post-Sale Payments.

86.    As such, a genuine and actual justiciable controversy presently exists between the Guilds and UBE with regard to whether UBE is entitled to the Union Bank Post-Sale Payments, or whether UBE must disgorge those payments, pursuant to Paragraph 28 of the Final DIP Order, until senior Guild claims in Guild-Secured Pictures are satisfied.

87.    A declaration that the Guilds hold valid, senior, and enforceable security interests in applicable Guild-Secured Pictures, and cannot be compelled to marshal assets without a showing and applicable court order demonstrating that there will be no prejudice to senior

secured creditor interests of the Guilds in connection with Guild claims and therefore are entitled to payment in full prior to recovery by junior creditors, will not constitute an advisory opinion.

88.     A complete and final determination of whether UBE must disgorge such Union Bank Post-Sale Payments is not readily obtainable in another action or proceeding.

## COUNT VII
### Determination of the Extent of the Lien Claimed
### by Union Bank

89.     The Guilds incorporate by reference the allegations contained in paragraphs 1 through 88 of the Complaint.

90.     This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, 11 U.S.C. § 105 and § 506, and Federal Rule of Bankruptcy Procedure 7001(2).

91.     Under 11 U.S.C. § 506(a), Union Bank's claim is secured only "to the extent of the value of such creditor's interest in the estate's interest in such property."

92.     The Guilds are entitled to a determination of the extent to which the assets of TWC that were included in the sale were subject to the lien claimed by Union Bank.

93.     The Guilds are entitled to a determination of whether, and to what extent, the value of the Union Bank collateral is sufficient to cover the full amount of Union Bank's purported secured claim, and in light of the Guilds' senior liens in most or all of the Common Pictures.

94.     To the extent that Union Bank is undersecured under § 506(a), Union Bank should not be permitted to collect the unsecured portion of its claim out of the Presumptive Sale Proceeds in violation of the absolute priority rule.  *See supra* Count I, ¶¶ 28-38.

## COUNT VIII
### Determination of the Extent of the Lien Claimed
### by UBE

95.     The Guilds incorporate by reference the allegations contained in paragraphs 1 through 94 of the Complaint.

96.     This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, 11 U.S.C. § 105 and § 506, and Federal Rule of Bankruptcy Procedure 7001(2).

97.     Under 11 U.S.C. § 506(a), UBE's claim is secured only "to the extent of the value of such creditor's interest in the estate's interest in such property."

98.     The Guilds are entitled to a determination of the extent to which the assets of TWC that were included in the sale were subject to the lien claimed by UBE.

99.     The Guilds are entitled to a determination of whether, and to what extent, the value of the UBE collateral is sufficient to cover the full amount of UBE's purported secured claim, and in light of the Guilds' senior liens in most or all of the Common Pictures.

100.    To the extent that UBE is undersecured under § 506(a), UBE should not be permitted to collect the unsecured portion of its claim out of the Presumptive Sale Proceeds in violation of the absolute priority rule.  *See supra* Count II, ¶¶ 38-48.

## PRAYER FOR RELIEF

**WHEREFORE** the Guilds respectfully requests that this Court enter judgment in its favor and grant the following relief:

(1)     A judgment in favor of the Guilds on all claims set forth herein;

(2)     Declaratory Judgment of the Court decreeing that the Guilds hold valid, senior, and enforceable security interests in applicable Guild-Secured Pictures, and therefore Union

Bank and UBE must disgorge all sale proceeds received in violation of the absolute priority rule, subject to proof at trial;

(3)     Declaratory Judgment of the Court decreeing that the Guilds cannot be compelled to marshal assets without an applicable court order or judgment, and therefore Union Bank and UBE must disgorge all sale proceeds received by virtue of their violations of the marshaling doctrines, subject to proof at trial;

(4)     Declaratory Judgment of the Court valuing the collateral securing the Union Bank and UBE claims, in consideration of the relative priority of the Guild liens in the Common Pictures, and thereby determining the secured status of Union Bank's and UBE's claims under 11 U.S.C. § 506(a).

(5)     Declaratory Judgment of the Court disallowing the claims of Union Bank and UBE as secured claims to the extent such claims exceed the value of their respective liens on property of the estate in the TWC Bankruptcy.

(6)     All reasonable attorney's fees incurred by the Guilds in enforcing its security interests, as specified in each security agreement associated with a Guild-Secured Picture, subject to proof at trial;

(7)     Costs of this suit, as provided for by Federal Rule of Bankruptcy Procedure 7054; and

(8)     Such other and further legal and equitable relief as this Court deems just and proper.

DATED:  June 4, 2018                        LAW OFFICE OF SUSAN E. KAUFMAN, LLC

                                            */s/ Susan E. Kaufman*
                                            Susan E. Kaufman, (DSB# 3381)
                                            919 North Market Street, Suite 460
                                            Wilmington, DE 19801
                                            (302) 472-7420
                                            (302) 792-7420 Fax
                                            skaufman@skaufmanlaw.com

                                            and


                                            Joseph A. Kohanski
                                            David E. Ahdoot
                                            BUSH GOTTLIEB, A Law Corporation
                                            801 North Brand Boulevard, Suite 950
                                            Glendale, CA 91203
                                            (818) 973-3200 (telephone)
                                            (818) 973-3201 (facsimile)
                                            jkohanski@bushgottlieb.com

                                            Attorneys for Directors Guild of America, Inc.,
                                            Screen Actors Guild-American Federation of
                                            Television and Radio Artists, the Writers Guild of
                                            America, West, Inc.