IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| The Weinstein Company Holdings LLC, *et al.*, | ) ) | Case No. 18-10601 (MFW) (Jointly Administered) |
| | ) | |
| Debtors. | ) ) | **Obj. Deadline: July 9, 2018 @ 12:00 p.m.** **Hearing Date: July 11, 2018 @ 10:00a.m.** |
| | ) ) ) | **Ref. D.I. Nos. 1115, 1116, 1124, 1128 & 1129** |

**CLARIFICATION AND RESERVATION OF RIGHTS REGARDING DEBTORS' MOTION FOR AN ORDER APPROVING AMENDMENT TO ASSET PURCHASE AGREEMENT ENTERED INTO BY AND BETWEEN THE DEBTORS AND LANTERN ENTERTAINMENT LLC**

The Directors Guild of America, Inc., the Screen Actors Guild-American Federation of Television and Radio Artists, the Writers Guild of America, West, Inc. (collectively, the "**Guilds**"), their respective pension and health plans, and the Motion Picture Industry Pension and Health Plans (the "**MPIPHP**")(collectively, with the Guilds, the "**Union Entities**"), by and through their undersigned counsel, hereby file this Clarification and Reservation of Rights Regarding Debtors' Motion for an Order Approving Amendment to Asset Purchase Agreement Entered Into by and between the Debtors and Lantern Entertainment LLC [D.I. 1115].

**BACKGROUND**

1. Each Guild is the collective bargaining representative for directors, performers or writers, respectively, in the television and motion picture industry. A substantial portion of the compensation payable to Guild-represented employees comes in the form of "**Residuals**" – fees payable to such employees as product produced subject to Guild collective bargaining agreements is exploited in markets beyond the market of initial release. Each Guild pension and

health plan is a multiemployer ERISA fund, supported by contributions based on initial compensation and fringe payments calculated in the same fashion as Residuals. The MPIPHP provide pension and health benefits for "below the-line" employees engaged in various motion picture crafts and trades, and are largely funded by contributions analogous to Residuals. For most theatrical motion pictures ("**Motion Pictures**") produced under Guild collective bargaining agreements ("**Covered Motion Pictures**"),[1] one or more Guilds hold valid and perfected security interests, intended to secure performance of collective bargaining obligations, including payment of Residuals. Despite disputes concerning proper and timely Residuals payments, the Debtors nevertheless have annually paid several million dollars in Residuals to Guild-represented employees and to the pension and health plans.

2. On March 20, 2018, the above-captioned debtors ("**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**").

3. On May 9, 2018, the Debtors filed an Asset Purchase Agreement By and Among The Weinstein Company Holdings LLC, The Persons Listed on Schedule 1 Hereto, and Lantern Entertainment, LLC (the "**First Amended APA**"; *See,* D.I. 846-1), which pursuant to Section 6.1 "**Guild Matters**," requires that, *inter alia*, Lantern Entertainment LLC or its subsequent assignee or affiliated entity that acquires interest in the Motion Pictures (collectively, "**Purchaser**"), will assume, be bound by, and execute necessary agreements concerning post-closing obligations of each Union Entity's collective bargaining agreements, security agreements and related agreements arising from the Purchaser's exploitation of the "Guild Secured Titles

---

[1] The phrases "Motion Pictures" and "Covered Motion Pictures" generally refer to entertainment content produced for exploitation in any exhibition market, including, *inter alia*, theatrical, television, SVOD, etc.

that are Covered Titles" and subject to the sale.[2]  The First Amended APA also confirmed the post-closing continuation of Guild liens as "**Permitted Liens**" to secure performance of post-closing obligations.  [D.I. 8 Page 149 of 254].

4.	On May 2, 2018, the Guilds filed a limited objection concerning the First Amended APA ("**Limited Sale Objection**"; D.I. 686), providing the legal landscape related to "Guild Matters" and clarifying a potential ambiguity in the First Amended APA, noting that "[b]ased on discussions with the Purchaser's counsel, the Union Entities expect this ambiguity to be clarified before the Sale Hearing…"  *See*, Limited Sale Objection, p. 8.

5.	On May 9, 2018, as anticipated, the Purchaser clarified the ambiguity and confirmed its intent to assume, be bound by, and execute necessary agreements concerning post-closing obligations of each Guild's collective bargaining agreements, post-closing continuation of Guild security agreements as Permitted Liens, and related agreements concerning the Purchaser's exploitation in ***all*** Covered Motion Pictures produced subject to Union Entity obligations.  This Court issued an order authorizing the sale of Debtors' assets, that confirmed these agreements and arguable modification of the First Amended APA (the "**Sale Order**").  *See* D.I. 846.  Paragraph AA of the Sale Order restates the post-closing continuation of the Permitted Liens [*Id.* at ¶ AA, pp. 10-11] and paragraph 12 of the Sale Order provides that:

> Notwithstanding anything to the contrary in the [First Amended APA], the Purchaser will be responsible for post-Closing Guild Residuals to the extent any Covered Title was produced subject to a Guild[3] collective bargaining agreement,

---

[2] All terms not defined herein are as defined in the First Amended APA or the Sale Order (as defined *infra*).

[3] The term "Guild" in the First Amended APA includes the MPIPHP, and is defined as "…any and all of the Screen Actors Guild, American Federation of Television and Radio Artists, American Federation of Musicians, Directors Guild of America, Writers Guild of America, British Equity, British Musicians Union, Alliance of Canadian Cinema Television and Radios

and at Closing or as soon as practicable thereafter (but in no event later than two weeks following the Closing) will deliver standard-form Guild assumption agreements, limited to post-Closing Guild obligations, and tailored to the circumstances of the Sale.

*Id.* ¶ 12.

## CLARIFICATION

6. Other than the Purchaser's confirmation that it will execute necessary Union Entity assumption agreements and purchase the assets subject to the ongoing operation of Guild security agreements, little has changed since the Limited Objection, and the Union Entities fully incorporate and restate the reservations presented therein. Obtaining Debtor information necessary to fully liquidate Guild claims continues to be difficult – although, perhaps, this is understandable as the Debtors focus on sale closure. In light of the circumstances surrounding the sale, the Union Entities have expressly reserved a possible motion to compel information related to liquidation of applicable secured and unsecured claims, pending the outcome of the sale.

7. In that regard, the Debtors, MUFG Union Bank, N.A. and UnionBanCal Equities, Inc. (collectively, "**Union Bank**"), and the Unsecured Creditors Committee have conducted preliminary discussions regarding the scope of the Union Entities' claims, and there have been informal discussions concerning allocation of sale proceeds among various creditor classes. The Guilds have also filed an adversary complaint against Union Bank concerning allocation of sale proceeds [*See,* D.I. 972] and based on discussions with Union Bank, understand that the status quo is being maintained among the parties, pending the closure of the sale. Through

---

Artists, Directors Guild of Canada, and all other applicable guilds, unions, trade associations or collectives." *See*, D.I. 846-1, p. 63, Exhibit A.

representations to this Court during the June 25, 2018 Status Conference, and discussions with applicable co-creditors, the Union Entities understand that questions regarding allocation of sale proceeds are similarly reserved for resolution following sale closure.

8.  Debtors' motion to amend the First Amended APA, D.I. 1115, and the second amendment to the APA, D.I. 1115-2 (collectively, the "**Price Adjustment Papers**"), state that the sale will be consummated "pursuant to the Sale Order approving such sale, all in the manner and subject to the terms and conditions set forth in the Agreement (as amended by this Amendment) and the Sale Order." *See*, D.I. 1115-2, p. 2. The Price Adjustment Papers make no effort to modify or revise paragraphs AA, 12, or any other paragraph of the Sale Order critical to various third-party creditor interests.[4] Accordingly, the plain text of the Price Adjustment Papers does not suggest that the proposed amendment directly impairs Union Entities' rights and interests, except to the extent that the adjustment in the purchase price may potentially impact all secured and unsecured creditors of the estate.

## RESERVATION OF RIGHTS

9.  As stated in the Limited Objection, the Union Entities do not object to the principle of a sale process structured to maximize the return to Debtors' creditors, balanced by the salient fact that Debtors' primary asset rights in Motion Pictures and contracts for exploitation of those Motion Pictures exist primarily through the creative efforts of directors,

---

[4] The Sale Order contains several other provisions critical to the interests of the Union Entities and other creditors, secured and unsecured, and which do not appear the subject of any modification. For example, Paragraph 9 of the Sale Order provides that: "Notwithstanding the foregoing, any amounts paid to the Pre-Petition Agent…shall be subject to disgorgement to the extent any Challenge asserted in accordance with the terms of the Final DIP Order is ultimately sustained by the Court." *Id.* ¶ 9. In another example, the Sale Order provides for the ongoing maintenance of essential Debtor books and records. *Id.* ¶ 20. It is paramount that the balance reached in the Sale Order is maintained, notwithstanding the approval of the Price Adjustment Papers.

performers, writers and "below-the-line" personnel employed in the production of those Motion Pictures. Assuming no change by the Debtors or Purchaser in Post-Closing Union Entity rights, as specified in the First Amended APA and Sale Order, or with respect to sale allocation issues, then no objection should be prompted here. However, the Union Entities reserve all rights and remedies in connection with the Price Adjustment Papers, primarily because critical issues related to Union Entity claims liquidation and allocation of sale proceeds remain unresolved. The following list of reserved items is not exclusive.

10. To the extent Bankruptcy Code section 363(e) requires provision of adequate protection when requested by a party with a property interest in property that a debtor seeks to sell, the Guilds reserve all rights to seek such protection, notwithstanding the current inability to measure the value of such interests, either as a matter of Guild claim liquidation or valuation of the encumbered asset.

11. The Union Entities reserve all rights in connection with preserving access to Debtors' books and records that pass from the Debtors to any purchaser of Debtors' assets. Difficulties to date with Debtor data cannot be compounded by a sale that further distances the Union Entities from information required to fully liquidate secured and unsecured claims.

12. The Union Entities reserve all rights in connection with allocation of sale proceeds, including, but not limited to, pursuit of an escrow arrangement until competing secured and unsecured claims in various bundles of Debtors' property are resolved. For each Motion Picture in which they hold a perfected lien, Guild collateral includes all rights and proceeds, from all markets and territories throughout the world. [*See* D.I. 219-2, pp. 10, 29-33 of 54]. The Guilds also appear to be the senior lienor in much of Guild collateral. Payments to secured creditors must be proportionate with the value of their collateral, their claims, and their

respective priority of claims in common collateral. To the extent creditors seek to use the sale proceeds to receive priority-violating payments, such efforts should be rebuffed. *See In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) (holding that parties cannot use a 11 U.S.C. § 363(b) sale to circumvent Chapter 11's procedural protections, including the absolute priority rule); *cf. Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983-84, 986 (2017) (rejecting the debtor's attempt to violate ordinary priority rules outside a Chapter 11 plan because "[t]he priority system applicable to [post-petition] distributions has long been considered fundamental to the Bankruptcy Code's operation").

13. The Union Entities reserve all rights in connection with modification of the terms of the proposed order regarding the Price Adjustment Papers, which must be circulated among parties-in-interest or lodged with the Bankruptcy Court in a manner providing adequate notice.

14. The Union Entities further reserve: (a) the right to file further or supplemental objections; (b) all of their rights, claims, defenses and remedies, including, but not limited to, rights to modify or supplement this Clarification and Reservation of Rights, (c) their rights to seek discovery; and (d) their rights to be heard and present evidence in connection with Price Adjustment Papers and any subsequent allocation of sale proceeds.

WHEREFORE, the Union Entities reserve all rights with respect to the Price Adjustment Papers, and respectfully request that the Court (a) only approve any request consistent with Union Entity rights as stated in this Clarification and Reservation of Rights, and (b) grant such other relief as the Court deems just and proper.

Dated: July 9, 2018                                  LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*
Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE 19801
(302) 472-7420
(302) 792-7420 Fax
skaufman@skaufmanlaw.com

and

Joseph A. Kohanski
David E. Ahdoot
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, CA 91203
(818) 973-3200 (telephone)
(818) 973-3201 (facsimile)
jkohanski@bushgottlieb.com

Attorneys for Directors Guild of America, Inc., Screen Actors Guild-American Federation of Television and Radio Artists, the Writers Guild of America, West, Inc., Directors Guild of America, Inc.-Producer Pension and Health Plans, Screen Actors Guild-Producers Pension & Health Plans, Writers Guild Pension Plan and Industry Health Fund, and the Motion Picture Industry Pension and Health Plans