# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10601 MFW<br><br>Jointly Administered<br><br>**Related to Dkt. No. 1115** |

**RESPONSE OF VISIONA ROMANTICA, INC., ET AL., TO DEBTORS' MOTION FOR AN ORDER APPROVING AMENDMENT TO ASSET PURCHASE AGREEMENT ENTERED INTO BY AND BETWEEN THE DEBTORS AND LANTERN ENTERTAINMENT LLC AND RESERVATION OF RIGHTS**

Visiona Romantica, Inc. ("Visiona"), Jackboot, Inc. ("Jackboot"), Brown 26 Productions, LLC ("Brown 26"), Supercool Manchu Too, LLC ("Supercool"), L. Driver Productions, Inc. ("L. Driver"), Cine-Manic Productions, Inc. ("Cine-Manic"), and Quentin Tarantino ("Tarantino" and, together with the foregoing parties, the "Tarantino Parties"), by and through their undersigned counsel, hereby submit this response and reservation of rights (the "Response") to the *Debtors' Motion for an Order Approving Amendment to Asset Purchase Agreement Entered into by and between the Debtors and Lantern Entertainment LLC* (the "Motion") [D.I. 1115] filed by the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned, jointly administered bankruptcy cases (collectively, the "Chapter 11 Cases"). In support thereof, the Tarantino Parties state as follows:

---

[1] The last four (4) digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, NY 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four (4) digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

61464587.1

- 2 -

**PRELIMINARY STATEMENT**

1. On May 9, 2018, the Court entered an order (the "Sale Order") approving the sale (the "Sale") of substantially all of the Debtors' assets (collectively, the "Assets") to Lantern Entertainment LLC ("Lantern") pursuant to an Asset Purchase Agreement dated March 19, 2018 (as amended, supplemented or otherwise modified, the "APA" or "Agreement"). [D.I. 846]

2. The Tarantino Parties own certain assets affected by the proposed Sale, including, among others, the copyrights in the feature films titles Grindhouse/Death Proof (2007), Inglourious Basterds (2009), Django Unchained (2012), and The Hateful Eight (2015) (collectively, the "QT/TWC Films"). Pursuant to a series of agreements, the Tarantino Parties have licensed the Debtors to distribute the QT/TWC Films in certain defined territories. The Debtors, however, have failed to perform under the QT/TWC Agreements (defined below) and, at present, are in default of multiple obligations, including, without limitation, the obligation to pay the Tarantino Parties approximately $4,300,000 in unpaid royalties and participations. Notwithstanding the substantial and persistent defaults, the Debtors seek to assume and assign the QT/TWC Agreements as part of the Sale. Over the past two (2) months, the Tarantino Parties have attempted to work diligently with the Debtors and Lantern in an effort to determine the precise cure amount due upon assumption and whether to consent to assumption and assignment to Lantern, as required under section 365(c) of the title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtors and Lantern, however, have not reciprocated. Indeed, the Debtors and Lantern have failed to cure numerous non-monetary defaults, including the failure to provide accountings regarding Inglourious Basterds and Django Unchained, or even present an offer to cure the existing monetary defaults.

- 3 -

3.      By and through the Motion, the Debtors now seek approval of a purported settlement with Lantern pertaining to the parties' respective obligations under the APA to pay cure amounts and participations, which the Debtors and Lantern propose effectuating via a series of amendments to the APA (collectively, the "Amendments")—most notably, a $23,000,000 reduction of the purchase price for the Assets (the "Purchase Price"). [D.I. 1115]  In addition to the Purchase Price reduction, the Amendments seek to establish new procedures for the assumption and assignment of executory contracts and unexpired leases. [*Id.*]

4.      The Tarantino Parties hereby object to these newly-proposed assumption and assignment procedures on several grounds.  First, the Amendments seek to authorize the assumption of the QT/TWC Agreements at the close of the Sale without (a) curing existing defaults or (b) obtaining the consent of the Tarantino Parties, which is required under section 365(c) of the Bankruptcy Code.  Second, the proposed procedures violate section 365 of the Bankruptcy Code by seeking to transfer the authority to assume and assign or reject executory contracts to Lantern.  Third, the Amendments to the APA are highly prejudicial to the Tarantino Parties.  Under the newly-proposed assumption and assignment procedures, the Debtors intend to vest Lantern with the right to determine if, and when, to comply with the requirements of section 365 of the Bankruptcy Code, which places a substantial burden on the Tarantino Parties due to the uncertainty of the future exploitation and the payment of revenues the Tarantino Parties may earn from the QT/TWC Films.

5.      Accordingly, the Tarantino Parties respectfully request that the Court deny the Motion in its entirety or, in the alternative, require the Debtors or Lantern to satisfy the requirements of section 365 of the Bankruptcy Code and definitively assume or reject the QT/TWC Agreements no later than thirty (30) calendar days following the Closing Date.

**BACKGROUND**

6.    Tarantino is an American screenwriter and director. Over the past decades, Tarantino has written, produced, directed, and starred in some of the most iconic and successful films released in the United States, including, without limitation, Reservoir Dogs (1992), Pulp Fiction (1994), Jackie Brown (1997), the Kill Bill franchise (2003-2004), Inglourious Basterds (2009), Django Unchained (2012), and The Hateful Eight (2015).

7.    Since the inception of the Debtors (together with their non-debtor affiliates, the "TWC Parties") in or about 2005, Tarantino has worked with the TWC Parties on four films—namely, Grindhouse/Death Proof (2007) ("Grindhouse" or "Death Proof"), Inglourious Basterds (2009) ("Inglourious"), Django Unchained (2012) ("Django"), and The Hateful Eight (2015) ("Hateful Eight").  In connection with the production of each of the QT/TWC Films, the Tarantino Parties entered into a series of agreements with the TWC Parties (the "QT/TWC Agreements") and, with respect to certain productions, financing and/or distribution partners of the TWC Parties, including, without limitation, agreements licensing to the TWC Parties and their financing partner(s) certain rights in the QT/TWC Films.

8.    On or about March 19, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code—thereby commencing the Chapter 11 Cases.  Shortly thereafter, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially all of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens,*

*Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "Sale Motion"). [D.I. 8] By and through the Sale Motion, the Debtors sought authority to assume and assign certain executory contracts and unexpired leases and to sell substantially all of their assets (i.e., the Assets), including, without limitation, the Debtors' rights under the assumed executory contracts and unexpired leases, to Lantern. [*Id.*]

9. In association with the Sale, the Debtors filed three (3) notices of potential assumption and assignment of executory contracts and unexpired leases (collectively, the "Assumption Notices"). [D.I. 216, 282, 860]. The Assumption Notices identified numerous QT/TWC Agreements as well as multiple agreements related to films written and directed by Tarantino for Miramax Film Corp. (together with its affiliates and successor(s), "Miramax")—namely, Pulp Fiction (1994) ("Pulp Fiction"), Jackie Brown (1997) ("Jackie Brown"), Kill Bill: Vol. 1 (2003) ("Kill Bill Vol. 1"), and Kill Bill: Vol. 2 (2004) ("Kill Bill Vol. 2" and, together with Kill Bill Vol. 1, "Kill Bill") (collectively, the "QT/Miramax Titles"). The Tarantino Parties filed timely responses and reservations of rights to each of the Assumption Notices (collectively, the "Assumption Notice Responses"), which are incorporated herein by reference. [D.I. 550, 713, 933]

10. By and through the Assumption Notice Responses, the Tarantino Parties objected to the assumption and assignment of the QT/TWC Agreements on the grounds that (a) the Debtors were in default and must cure the defaults prior to assumption and, furthermore, (b) the Debtors could not assume or assign the QT/TWC Agreements without the consent of the Tarantino Parties under applicable non-bankruptcy law by virtue of section 365(c) of the Bankruptcy Code. [D.I. 550, 713, 933]

- 5 -

11. On May 9, 2018, the Court entered an order granting the Sale Motion and approving the Sale to Lantern per the terms of the APA (the "Sale Order") [D.I. 846]. The Sale Order, however, did not finally determine the assumption or assignment of certain executory contracts, including the QT/TWC Agreements. Indeed, paragraphs OO and 61 of the Sale Order expressly provide that the entry of the Sale Order shall not affect the rights of any party that filed a timely objection or response to the Assumption Notices (e.g., the Tarantino Parties), which are preserved and shall be addressed at a final hearing (the "Assumption Hearing") regarding the assumption and assignment of executory contracts and unexpired leases. [D.I. 846, pp. 17, 47] The Debtors have unilaterally adjourned the Assumption Hearing on multiple occasions. The Assumption Hearing is presently scheduled for July 18, 2018, at 11:30 a.m. (ET)—five (5) days after the proposed Closing Date for the Sale. [D.I. 1089 & 1115-2, at p. 7]

12. On June 27, 2018, the Debtors filed the Motion. By and through the Motion, the Debtors seek approval of a purported settlement with Lantern pertaining to the parties' respective obligations under the APA to pay cure amounts and pre-closing participations, which the Debtors and Lantern propose effectuating via a series of Amendments to the APA—most notably, a $23,000,000 reduction of the Purchase Price for the Assets. [*see, generally*, D.I. 1115] In addition to the Purchase Price reduction, the Amendments seek to establish a procedure for post-closing assumption and assignment of executory contracts and unexpired leases. The Amendments also provide that the Sale shall close on or about July 13, 2018—two (2) days after the scheduled hearing on the Motion. [*Id.*]

13. As of the filing of this Response, the Debtors remain in default under the QT/TWC Agreements. Among other things, the Debtors have failed to provide accounting reports for Inglourious or Django and have failed to cure the monetary defaults under any of the

QT/TWC Agreements—defaults the Tarantino Parties estimate to be approximately $4,300,000. [D.I. 550, 713, 933]   Notwithstanding, the QT/TWC Agreements are identified on the Assumption Notices for assumption and assignment to Lantern effective on the Closing Date pursuant to Section 2.1 of the APA.

**ARGUMENT**

**A.     The Amendments Violate Section 365 of the Bankruptcy Code**

14.     Pursuant to sections 365(b)(1) and (f) of the Bankruptcy Code, a debtor in possession cannot assume or assign an executory contract or unexpired lease "unless, *__at the time of assumption of such contact or lease__*, the trustee—(A) cures, or provides adequate assurance that the trustee will promptly cure, [any existing] default . . . ." 11 U.S.C. §§ 365(b)(1) & (f) (emphasis added).  Additionally, pursuant to section 365(c), "[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor . . . if—(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor . . . ; and (B) such party does not consent to such assumption or assignment . . . ." 11 U.S.C. § 365(c).  The proposed Amendments violate these provisions of section 365 of the Bankruptcy Code.

15.     First, the proposed Amendments violate the provisions of section 365(c)(1) of the Bankruptcy Code.  Under prevailing law, the Debtors may not assume or assign the QT/TWC Agreements absent the consent of the Tarantino Parties.  *See* 11 U.S.C. § 365(c)(1) ("The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of

rights or delegation of duties; and (B) such party does not consent to such assumption or assignment . . . ."); *See In re Golden Books Family Entm't, Inc.*, 269 B.R. 300, 309 (Bankr. D. Del. 2001). Notwithstanding, under the APA, as amended, the Debtors seek to close the Sale on the Closing Date (i.e., July 13, 2018) and assume and assign all "Assumed Contracts" to Lantern, including the QT/TWC Agreements. At present, the Tarantino Parties have not consented to the assumption or assignment of the QT/TWC Agreements. Unless and until such consent is granted, the Debtors may not assume or assign the QT/TWC Agreements.

16. Second, the proposed Amendments violate the provisions of section 365 of the Bankruptcy Code. Under section 365 of the Bankruptcy Code, the Debtors may not assume or assign the QT/TWC Agreements unless and until the Debtors cure all defaults. 11 U.S.C. §§ 365(b) and (f). As set forth in the Assumption Notice Responses, the Debtors have defaulted under the QT/TWC Agreements in numerous ways, including, without limitation, by failing to (i) provide timely accountings, (ii) participate in periodic audits, and (iii) pay royalties and participations due to the Tarantino Parties, among other parties. Notwithstanding the existence of undisputed defaults, the Debtors seek to close the Sale on the Closing Date (i.e., July 13, 2018) and assume and assign all "Assumed Contracts" to Lantern, including the QT/TWC Agreements. The Debtors, however, are precluded from assuming or assigning the QT/TWC Agreements unless and until the Debtors cure *all* defaults.

17. Finally, pursuant to the proposed Amendments, the Debtors improperly abdicate their duties and responsibilities in the context of assuming and assigning executory contracts. 11 U.S.C. § 365(a) (a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."); *see In re Network Access Solutions, Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) (the decision to assume or assign an executory

- 8 -
61464587.1

contract must be supported by the *debtor's* sound business judgment); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) (same).  Indeed, under the procedures proposed in the Amendments, the Debtors purport to vest *Lantern* with the authority to make any determinations regarding the assumption and assignment of executory contracts *at any time*, even following the closing of the Sale.  The Debtors owe fiduciary duties to creditors of their estate, including the counterparties to executory contracts and unexpired leases.  The Debtors may not simply abandon these duties through the substitution of Lantern's business judgment.  *Id.*; *see, e.g.*, *In re Cochise College Park*, 703 F.2d 1339, 1357 (9th Cir. 1983) ("A bankruptcy or reorganization trustee is a fiduciary of each creditor of the estate, including anyone who is a party to an executory contract with the bankrupt." (*citing Wolf v. Weinstein*, 372 U.S. 633, 650, 10 L. Ed. 2d 33, 83 S. Ct. 969 (1963))).

**B**     **The Amendments are Highly Prejudicial, Cause Undue Irreparable Harm, and are Grossly Unfair to the Tarantino Parties**

18.     Under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may not approve a compromise unless the proposed "compromise is fair, reasonable, and in the interest of the estate."  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998).  The Amendments do not constitute a fair or reasonable settlement with respect to the Tarantino Parties.  More precisely, for the past four (4) months, the Tarantino Parties have been involuntarily subjected to the Chapter 11 Cases, which, in effect, have held the valuable rights owned by the Tarantino Parties hostage (despite persistent and substantial defaults by the Debtors) while the Debtors have continued to enjoy the benefits of their rights under the QT/TWC Agreements.  Now, by and through the Amendments, the Debtors seek to establish a procedure by which the Debtors and Lantern could indefinitely delay the finality to which the Tarantino Parties are entitled.  [D.I. 1115-2]

19. Such a procedure not only violates section 365 of the Bankruptcy Code, it would be highly prejudicial to the Tarantino Parties. The Tarantino Parties are entitled to a prompt and unambiguous determination regarding the treatment of the QT/TWC Agreements under section 365 of the Bankruptcy Code. The Amendments, however, seek to eviscerate this entitlement by authorizing Lantern to designate any executory contract as an "Assumed Contract" and thereby assume and assign (to itself) the subject contract at any time following the close of the Sale. Saddling involuntary participants in these Chapter 11 Cases with onerous procedures that contravene the unambiguous provisions of the Bankruptcy Code is unreasonable—especially given that these Amendments only serve to amplify the implications of Lantern's dereliction and delay in consummating the Sale.

20. Additionally, the Amendments may irreparably harm the Tarantino Parties. Indeed, the Tarantino Parties derive their revenues from the exploitation of motion pictures and the associated copyrights. At present, the Debtors hold valuable rights related to the QT/TWC Films—namely, the right to distribute the pictures. The Debtors, however, have continually failed to comport with the terms of the QT/TWC Agreements. More precisely, the Debtors have failed to provide timely accountings on numerous occasions, which are the principal source of information regarding the performance and expected revenues of the QT/TWC Films, or pay the royalties and participations due under the QT/TWC Agreements. Due to the Chapter 11 Cases, the Tarantino Parties are unable to assert their rights under the QT/TWC Agreements in an effort to ameliorate the harms caused by the Debtors' numerous breaches of the QT/TWC Agreements until the QT/TWC Agreements are assumed or rejected. Accordingly, any delay in the assumption or assignment of the QT/TWC Agreements is highly prejudicial to the Tarantino Parties and their rights in the QT/TWC Films.

21. Based on the foregoing, the Tarantino Parties respectfully submit that the Court must deny approval of the Amendments as proposed.

## RESERVATION OF RIGHTS

22. The Tarantino Parties expressly reserve the right to amend or supplement this Response and to assert any other rights, objections, and remedies under and relating to any agreements by and between the Tarantino Parties, and/or their affiliates, and the TWC Parties, the Bankruptcy Code, or other applicable law, including, without limitation, the rights to raise additional arguments or objections concerning the proposed treatment or disposition of any agreements by and between the Tarantino Parties, and/or their affiliates, and the TWC Parties and any resulting or related claims, and to interpose amended or further responses at a later date, as may be warranted by attendant facts and circumstances. The Tarantino Parties expressly reserve any and all arguments, objections, reservation of rights, or remedies asserted or sought through the Assumption Notice Responses, or any of them, and further assert that the Amendments have no bearing on and do not resolve the objections raised in the Assumption Notice Responses and, moreover, do not relieve or release the Debtors of their obligations in association with the assumption or assignment of the QT/TWC Agreements, or any of them; all rights and protections provided under section 365 of the Bankruptcy Code, and any and all applicable rules or law being expressly reserved.

## CONCLUSION

23. WHEREFORE, the Tarantino Parties respectfully request that the Court enter an order (a) sustaining the objections contained herein in their entirety, (b)(1) denying the Motion with respect to any proposed Amendments purporting to authorize the Debtors or Lantern to fail to comply with the provisions of section 365 of the Bankruptcy Code, including, without

limitation, paragraph 2(f) of the Amendments, after the Closing Date or, (2) if the Court is inclined to grant the Debtors or Lantern some amount of time following the Closing Date in which to comply with the provisions of section 365 of the Bankruptcy Code, fixing such time period to a term of no more than thirty (30) calendar days following the Closing Date, and (c) granting any further or additional relief the Court deems just and proper.

| | |
|---|---|
| Dated: July 9, 2018<br>Wilmington, Delaware | */s/ Laurel D. Roglen*<br>Matthew G. Summers (No. 5533)<br>Laurel D. Roglen (No. 5759)<br>BALLARD SPAHR LLP<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 252-4428<br>Facsimile: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>       roglenl@ballardspahr.com<br><br>-and-<br><br>Howard J. Weg*<br>Michael T. Delaney*<br>ROBINS KAPLAN LLP<br>2049 Century Park East<br>Suite 3400<br>Los Angeles, CA 90067<br>Telephone: 310 552 0130<br>Facsimile: 310 229 5800<br>Email: hweg@robinskaplan.com<br>       mdelaney@robinskaplan.com<br>(*Admitted *pro hac vice*)<br><br>*Attorneys for Visiona Romantica, Inc., Jackboot, Inc., Brown 26 Productions, LLC, Supercool Manchu Too, LLC, L. Driver Productions, Inc., Cine-Manic Productions, Inc., and Quentin Tarantino* |