**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 18-10601 (MW) |
| THE WEINSTEIN COMPANY HOLDINGS | : |  |
| LLC, *et al.*[1] | : | Jointly Administered |
|  | : |  |
| Debtors. | : | **Re: Dkt. No. 1115** |
|  | : |  |

**OBJECTION OF CERTAIN CONTRACT COUNTERPARTIES
TO THE DEBTORS' MOTION FOR AN ORDER APPROVING
AMENDMENT TO ASSET PURCHASE AGREEMENT**

Wang Qin, Wang Hong, Vertigo Prime Inc., Good Fear Film, Inc., Roy Lee, Chris Bender,

22nd and Indiana Inc., Bradley Cooper, Fade to Black Productions, Inc., Tom Ford, Outerbanks

Entertainment, Inc., Kevin Williamson, Music For the People and Mark Wahlberg (collectively,

the "**Remaining Counterparties**"),[2] by and through their undersigned counsel, file this objection

(the "**Objection**") to the *Debtors' Motion For An Order Approving Amendment to Asset Purchase*

*Agreement Entered Into By And Between The Debtors And Lantern Entertainment LLC* [**Dkt. No.**

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] On May 2, 2018, the Remaining Counterparties, together with Amityville Horror Enterprises, LLC, Cindy Lee Stock, Noel Lutz, Gabrielle Lutz, Melissa Irwin, Tim Gunn Productions Inc. and Tim Gunn (the "**Settling Counterparties**"), filed an *Objection of Contract Counterparties to the Debtors' Sale Motion, Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases and Proposed Cure Thereof* [**Dkt No. 668**] (the "**Sale Objections**"). Since then, the Settling Counterparties have substantially resolved their disputes with the Debtors and this Objection is not being filed on their behalf. In addition, Wang Qin, Wang Hong, Vertigo Prime Inc., Good Fear Film, Inc., Roy Lee and Chris Bender are currently involved in settlement discussions with the Debtors and Lantern and are filing this Objection solely to preserve their rights.

1115] (the "**Motion to Amend**").[3]  In support of this Objection, the Remaining Counterparties respectfully represent as follows:

## PRELIMINARY STATEMENT

On March 20, 2018, the Debtors filed a motion seeking approval to sell substantially all of their assets, and assume and assign executory contracts and unexpired leases, to Lantern **[Dkt. No. 8]** (the "**Sale Motion**").  In response, the Remaining Counterparties, together with the Settling Parties (collectively, the "**Counterparties**"), filed the Sale Objections, objecting to the Sale for a number of substantive and procedural reasons, including that (i) the Sale Motion seeks to assume and assign contracts to which the Debtors are not party and which are not property of the Debtors' estates,[4] (ii) the Sale Motion does not include executory contracts with certain Counterparties to which the Debtors *are* parties; (iii) the APA violates this Court Bidding Procedures by permitting Lantern to renege on assumption of a contract if, *post-closing*, Lantern dislikes this Court's determination of the necessary cure amount or the terms for adequate assurance of future performance; and (iv) the APA fails to provide for the cure of  non-monetary defaults (such as audit rights) that are crucial to a determination of the Counterparties' monetary cure rights.

Without presenting any evidence in respect of the Sale Motion, and in the face of over 100 objections filed in connection therewith, on May 8th, the Debtors presented to this Court a proposed Sale Order that represented negotiated settlements of certain objections and a broad reservation of rights with respect to other objections.  On May 9th, this Court entered the Sale Order, but the Court expressly preserved all of the Counterparties' rights under the Sale Objections, the intention being

---

[3] All capitalized terms not otherwise defined herein shall have the same meaning herein as is ascribed to such terms in the Motion to Amend.

[4] On June 18, 2018, Bradley Cooper filed an objection [**Dkt. No. 1048**] to the *Debtors' Statement Regarding Contracts To Be Transferred Pursuant To The Asset Purchase Agreement With Lantern Entertainment LLC* [**Dkt. No. 1003**] and the exhibit attached to Mr. Cooper's objection make clear that his contract is with a non-Debtor party.

that the Sale Objections would be resolved (either consensually or judicially) before the closing of the Sale occurred. Originally, the hearing to consider the Sale Objections was scheduled to be heard on May 22, 2018, but the hearing has been adjourned several times and is currently scheduled to be heard on July 18th.

The Counterparties have never been opposed to a sale to Lantern. Indeed, in May 2018, each of the Counterparties submitted written proposals to the Debtors and Lantern to consensually resolve their disputes and have reached out repeatedly to engage in settlement discussions. Two of the Counterparties have settled their disputes in principle and two others have had some contact with Lantern businesspeople, but it appears that Lantern has less regard for the talent in this industry than it does for distribution conglomerates. On several occasions, in response to inquiries by counsel to the Counterparties regarding the remaining settlement proposals, the Debtors or Lantern confirmed that the Sale would not close until after the Sale Objections were heard but have devoted virtually no time to address the Counterparties' concerns.

The Debtors now take the position in the Motion to Amend that the Sale must close by July 17th, *one day before the hearing on the reserved Sale Objections*, or else they will be in default under their DIP Financing and/or lose acquisition financing. The Debtors admit that if the DIP Lenders waive the default, the DIP Financing will mature on July 23rd, five days after the hearing on the Sale Objections. Given that the Sale Objections implicate portions of the APA and, if the Sale were to close before the Sale Objections were finally determined, the Sale Objections could become moot, it is imperative that the Sale Objections be heard before the Sale closes, either at the July 11th hearing on the Motion to Amend or shortly thereafter, but in any event, prior to the Closing.

**BACKGROUND**

1.       The Remaining Counterparties are producers, directors, performers and/or writers (or their successors, assigns, estates or representatives) in the television and motion picture industry. They each have entered into agreements with one or more of the Debtors and/or non-debtor entities. These agreements concern television, live stage or movie projects that were either (a) completed prior to the Petition Date, but under which the Counterparties remain entitled to future compensation, or (b) are in various stages of production, but under which certain obligations including compensation remain outstanding, or may become due in the future.

2.       The Debtors intend to sell substantially all of their assets, including executory contracts and unexpired leases, to Lantern pursuant to the APA.  In connection therewith, on April 6, 2018, this Court entered the Bidding Procedures Order, approving the Debtors' bidding process and establishing the procedures for assumption and assignment of executory contracts and unexpired leases.  The Bidding Procedures Order permits Lantern, prior to the Closing Date, to determine which executory contracts it wishes to assume, but "[a]ny Contract or Lease that remains on the Contract Schedule pursuant to Section 2.8(a) as of such [the Closing] date and which the Successful Bidder [Lantern] designates in writing for assumption, shall be assumed by the Debtors and assigned to the Successful Bidder [Lantern] as part of the Sale (the "Assumed Contracts Schedule"), subject to the resolution of any Assumption and Assignment Objection with respect to such contract or lease."  Bidding Procedures Order at ¶ 28.

3.       On May 2nd, the Counterparties filed the Sale Objections, because, among other things, (i) the Sale Motion sought to assume and assign contracts to which the Debtors are not party and which are not property of the Debtors' estates, (ii) the Sale Motion was incomplete as it did not include executory contracts with certain Counterparties to which the Debtors *are* parties;

(iii) the APA violated Bidding Procedures Order by permitting Lantern to renege on assumption of a contract that it had otherwise designated as an assumed contract if, *post-closing*, Lantern dislikes this Court's determination of the necessary cure amount; and (iv) the APA failed to provide for the cure of non-monetary defaults (such as audit rights) that are crucial to a determination of the Counterparties' monetary cure rights and which Section 365(b)(1) of the Bankruptcy Code requires be cured.[5]

4.    On May 8th, this Court approved the Sale to Lantern and entered the Sale Order the following day. Notwithstanding entry of the Sale Order, the Court expressly preserved the Sale Objections and provided that any findings or orders contained in the Sale Order were not binding on the Counterparties pending adjudication of the Sale Objections. Paragraph OO of the Sale Order provides:

> OO.    *Notwithstanding any other provision of this Order*, the rights of (I) non-Debtor parties asserting that certain of the Purchased Assets include property that is not property of the Debtors' estates that filed a timely objection that is adjourned to the Contract Assumption Hearing (as defined below), and (II) (A) non-Debtor parties to the Assumed Contracts and Leases, and/or (B) non-Debtor parties to contracts not listed on the Initial Assumption Notice and First Supplemental Notice but relating to the Purchased Assets, that either (i) filed objections, on any basis, to the proposed assumption, assignment, or Cure Amount, or the sale of a Purchased Asset, and including that the sale of such Purchased Asset does not provide for assumption of any post-Closing obligations related to such Purchased Asset, including any objections regarding whether the Debtors have complied with Bankruptcy Rule 6006 or otherwise relating to the Initial Assumption Notice and the First Supplemental Notice, or (ii) received, in accordance with the Bidding Procedures Order, the Second Supplemental Notice (clauses (I) and (II) collectively being referred to as the "Unresolved Contract Objections") are preserved and will be addressed at a hearing to take place on May 22, 2018 at 11:30 am (Eastern Daylight Time), or subsequent hearing(s) (the "Contract Assumption Hearing"). For the avoidance of doubt, this Court's findings herein with respect to adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) *and any other provision of this Order that may be affected by any Unresolved Contract Objection are not binding on the non-Debtor parties with Unresolved Contract Objections and all parties' rights with*

---

[5] In addition, Section 2.8(d) of the APA fails to meet the requirements of adequate assurance of future performance mandated by Section 365(b)(1)(C), because Lantern is obligated only to use "commercially reasonable efforts" to provide adequate assurance of future performance. *See* APA at § 2.8(d); 11 U.S.C. § 365(b)(1)(C).

*respect to the Unresolved Contract Objections are reserved for further adjudication by this Court.*

Sale Order at ¶ OO (emphasis added).

5.      Prior to the May 22nd Contract Assumption Hearing, each of the Counterparties submitted written settlement proposals to the Debtors and Lantern and offered to discuss a consensual resolution to the Sale Objections.  The Contract Assumption Hearing originally scheduled for May 22nd has been adjourned several times and is currently scheduled for July 18th. On a number of occasions during the period when the Contract Assumption Hearing was being adjourned, counsel to the Counterparties asked that Debtors' counsel and Lantern's counsel (i) respond to the Counterparties' written settlement proposals and (ii) confirm that the closing of the Sale would not occur before the Sale Objections were resolved.  As recently as mid-June, Lantern's counsel reassured counsel to the Counterparties that they were reviewing the settlement proposals, that they would respond shortly and that Lantern would not close until after the adjourned Contract Assumption Hearing was held.

6.      Determination of the Sale Objections before closing of the Sale is crucial for the following reasons:

        a.  Section 2.8(c) of the APA violates Section 28 of the Bidding Procedures Order and cannot be consummated unless amended.  The Bidding Procedures Order requires Lantern to decide no later than just prior to closing which executory contracts it intends to assume, regardless of whether they are, as of the Closing Date, contracts with respect to which the cure amount is disputed (a "**Disputed Contract**").  Section 2.8(c) of the APA, however, provides that any Disputed Contract will remain in limbo pending resolution of the cure amount, and, if Lantern does not like the cure amount resolution, it may decide not to assume contract.  This provision of the APA violates paragraph 28 of

the Bidding Procedures Order which decrees that "[a]ny Contract or Lease that remains on the Contract Schedule pursuant to Section 2.8(a) as of such [the Closing] date and which the Successful Bidder designates in writing for assumption, *shall be assumed by the Debtors and assigned to the Successful Bidder as part of the Sale. . .* , subject to the resolution of any Assumption and Assignment Objection with respect to such contract or lease."  Bidding Procedures Order at ¶ 28 (emphasis added).  If Section 2.8(e) of the APA is not amended, then closing of the APA will violate this Court's order and impose unnecessary expenses on the Counterparties who must respond to assumption and assignment pleadings without any assurance that their contracts are, in fact, going to be assumed and assigned.

b.    Section LL of the Sale Order provides that "nothing in this Order or the APA shall be deemed to . . . grant the Purchaser any rights, title or interest in or under any property (including, for the avoidance of doubt, any property that is identified as a Purchased Asset) that is not property of the Debtors' estates."  Sale Order at ¶ LL.  Yet, the Debtors have listed the movie *Silver Linings Playbook* as a Purchased Asset, despite the fact that the copyright to the movie is not owned by a Debtor and the contract between Bradley Cooper and SLP Films, Inc. (a non-Debtor entity) for services rendered by Bradley Cooper in connection with the movie is also not property of the estate.  Any purported sale of *Silver Linings Playbook* and any rights under the Bradley Cooper contract will be void if this Court finds in favor of the Counterparties on this sale objection.  Lantern could, however, impair rights and assets in which it may ultimately have no interest while resolution of the Sale Objections are pending.[6]

---

[6] Even if this Court were to find that Bradley Cooper's contract with SLP Films, Inc. and the copyright to *Silver Linings Playbook* were both assigned to a Debtor entity pre-petition and, therefore, property of the estates subject to

c.  The APA does not provide that the Debtors or Lantern will cure *non-monetary* defaults that existed on the Petition Date as a condition to assumption of certain executory contracts as required by Section 365(b) of the Bankruptcy Code.  Section 365(b)(1) provides that before a trustee or debtor-in-possession may assume an executory contract, it must cure, or provide adequate assurance that it will promptly cure, all monetary and non-monetary defaults. 11 U.S.C. § 365(b)(1)(A).  Here, the Debtors have failed to produce to the Counterparties accounting reports that are required under their contracts and that are necessary for the Counterparties (and this Court) to calculate the cure amounts owed to the Counterparties.  This failure is a non-monetary default which must be cured not only to comply with Section 365(b)(1)(A), but also to properly determine the cure amounts that are due to the Counterparties as part of the Sale.

d.  Finally, the Second Amendment also creates a new problem that did not exist in the original APA.  Section 2.8(f) of the Second Amendment creates a new Section 2.8(g) to the APA that provides that newly discovered executory contracts previously omitted from the contract schedule referred to in Section 2.8(a) of the APA can be assumed or rejected via the Sale Order on 14-days' notice to the non-Debtor counterparty.  There is no legal or equitable basis for permitting the Debtors to avoid the procedural requirements of seeking assumption under Section 365(b) by the filing of a motion and instead grant it unfettered authority post-closing to assume newly discovered executory contracts that were never part of the Sale Motion notice procedure under the auspices of the Sale Order.  If a new contract is discovered over two months after the Debtors filed their Schedules of

---

the Sale, the definition of "Assumed Liabilities" in the APA includes "Liabilities of the Seller Parties arising out of the operation of the Purchased Assets (including Assumed Contracts) for periods following the Closing Date," in which case Lantern would be required to assume all Participation obligations with respect to Bradley Cooper's contract going post-Closing.

Assets and Liabilities and after the hearing to consider the Sale was held and the Sale Order was entered, then the Debtors should be required to bring a new motion to assume such a contract and bear the burden of proof in connection therewith. Due process is not served by extending the reach of the Sale Order to contracts that were clearly not subject to the process by which the Sale Order was entered.

7.      Despite the practical and logical reasons for disposition of the Sale Objections prior to closing of the Sale, the Debtors now take the position in the Motion to Amend that the Sale must close by July 17th, *one day before the hearing on the Sale Objections*. The Debtors contend that, if they do not close by July 17th, they will be in default under their DIP Financing, but they also admit that, if the DIP Lenders waive the default, the Debtors will have until July 23rd to close the Sale before their DIP Financing matures. So, either the Sale Objections should be heard on July 11th as part of this Objection, well before the DIP Financing default deadline, or the Debtors should obtain an advance waiver from the DIP Lenders and close the Sale after July 18th but prior to the maturity of the DIP Financing. In no event, however, should the Debtors be permitted to close the Sale while the Sale Objections are pending and risk either rendering the Sale Objections moot or impairing rights and property in which Lantern may ultimately have no interest. Otherwise, the preservation of rights expressly provided by this Court in the Sale Order will have been circumvented by the Debtors and rendered meaningless.

## CONCLUSION

For the reasons set forth herein, the Court should sustain the Objection.

Dated: July 9, 2018
      Wilmington, Delaware

**VENABLE LLP**


By:      *Jamie L. Edmonson*
           Jamie L. Edmonson (No. 4247)
           1201 N. Market St.
           Suite 1400
           Wilmington, Delaware 19801
           Tel: (302) 298-3535
           Fax: (302) 298-3550
           jledmonson@venable.com


           -and-

           Jeffrey S. Sabin, Esq.
           1270 Avenue of the Americas
           New York, New York 10020
           Tel:  (212) 503-0672
           jssabin@venable.com


           -and-

           Keith C. Owens, Esq.
           2049 Century Park East
           Suite 2300
           Los Angeles, California 90067
           Tel: (310) 229-0370
           kcowens@venable.com