# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 18-10601 (MW) |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*[1] | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Re: Docket Nos. 1187, 1115 & 1129** |
| | : | |

## OBJECTION OF CERTAIN CONTRACT COUNTERPARTIES TO THE REVISED SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT

Wang Qin, Wang Hong, Vertigo Prime Inc., Good Fear Film, Inc., Roy Lee, Chris Bender, 22nd and Indiana Inc., Bradley Cooper, Fade to Black Productions, Inc., Tom Ford, Outerbanks Entertainment, Inc., Kevin Williamson, Music For the People and Mark Wahlberg (collectively, the "**Remaining Counterparties**"),[2] by and through their undersigned counsel, file this objection (the "**Objection**") to the Revised Second Amendment to Asset Purchase Agreement filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") with this Court

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] On May 2, 2018, the Remaining Counterparties, together with Amityville Horror Enterprises, LLC, Cindy Lee Stock, Noel Lutz, Gabrielle Lutz, Melissa Irwin, Tim Gunn Productions Inc. and Tim Gunn (the "**Settling Counterparties**"), filed an *Objection of Contract Counterparties to the Debtors' Sale Motion, Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases and Proposed Cure Thereof* [**Dkt No. 668**] (the "**Sale Objections**"). Since then, the Settling Counterparties have substantially resolved their disputes with the Debtors and this Objection is not being filed on their behalf. In addition, Wang Qin, Wang Hong, Vertigo Prime Inc., Good Fear Film, Inc., Roy Lee and Chris Bender are currently involved in settlement discussions with the Debtors and Lantern and are filing this Objection solely to preserve their rights.

on July 9, 2018 [**Dkt. No. 1187**] (the "**Revised Second Amendment**").  In support of this Objection, the Remaining Counterparties respectfully represent as follows:

## OBJECTION

1.     On March 20, 2018, the Debtors filed a sale motion **[Dkt. No. 8]** seeking approval of proposed bidding procedures (the "**Bidding Procedures**") and the sale of substantially all of their assets (the "**Sale**") to Lantern Entertainment LLC ("**Lantern**"). By order dated April 6, 2018 **[Dkt. No. 190]** (the "**Bidding Procedures Order**"), this Court approved the Bidding Procedures and an auction process was held based on the approved procedures.  On May 2, 2018, the Remaining Counterparties filed the Sale Objections, because, among other reasons, the Sale and the Asset Purchase Agreement (the "**APA**") between the Debtors and Lantern violated the Bidding Procedures Order.  By order dated May 9, 2018 **[Dkt. No. 846]** (the "**Sale Order**"), this Court approved the Sale but expressly preserved all sale and assumption and assignment objections, including the Sale Objections, pending resolution at a hearing to be held two weeks later.  The hearing to resolve such objections has been adjourned to July 18, 2018.

2.     On June 27, 2018, the Debtors filed the *Debtors' Motion For An Order Approving Amendment To Asset Purchase Agreement Entered Into By And Between The Debtors And Lantern Entertainment LLC* [**Dkt. No. 1115**] (the "**Motion to Amend"**), seeking this Court's approval of an amendment to the APA (the "**Second Amendment**").  On July 9, 2018, the Remaining Counterparties filed the *Objection of Certain Contract Counterparties To The Debtors' Motion For An Order Approving Amendment To Asset Purchase Agreement* **[Dkt. No. 1177]** (the "**Amendment Objection**").  Several hours later, the Debtors filed the Revised Second Amendment, replacing the June 27th Second Amendment with the Revised Second Amendment.

3.     The Revised Second Amendment not only fails to remedy the problems with the APA set forth in the Sale Objections and the issues in the original Second Amendment as set forth

in the Amendment Objection, it actually *exacerbates* the Debtors' violation of the Bidding Procedures Order.

4. First, the Revised Second Amendment continues to ignore the requirements of Section 365(b) of the Bankruptcy Code, including the obligation as of the date of assumption to cure or provide adequate assurance of prompt cure of monetary[3] and non-monetary contract defaults. *See* 11 U.S.C. §365(b)(1)(C). The Remaining Counterparties believe that the Debtors are in default under their respective contracts for monetary and/or non-monetary obligations. The non-monetary obligations arise from contractual terms providing for an accounting or audit of amounts due under the Remaining Counterparties' contracts. Indeed, though prepetition, many of the payments to the Remaining Counterparties (whether for Participations or other amounts) were accompanied by such accountings or audit statements, unfortunately, for many months prior to the commencement of these chapter 11 cases, the Debtors stopped making payments and providing accountings to the Remaining Counterparties. Cure of the non-monetary obligations to provide such accountings is necessary for both parties to calculate the amounts due under such contracts, including cure amounts necessary to assume the contracts. The Debtors have not proposed how they will cure these non-monetary defaults as part of the Sale. *See* Sale Objections at ¶¶ 34 & 35. Without these reports, neither the Debtors nor the Remaining Counterparties can calculate the cure amounts necessary to assume and assign these contracts to Lantern.

5. Second, the Debtors and Lantern seek, post-auction and post entry of the Sale Order, to materially alter the Bidding Procedures previously approved by this Court and on which all parties, including other bidders and the Remaining Counterparties, relied. Pursuant to the Bidding Procedures Order, just prior to closing the Sale, Lantern was obligated to finalize a list of

---

[3] The definition of Cure Amount in the APA is solely monetary.

contracts it wished to assume (defined in the Bidding Procedures Order as the "**Assumed Contracts Schedule**" and referred to in Section 2.8(a) of the APA), which contracts shall be assumed by the Debtors and assigned to Lantern as of the Closing Date, subject to (i) immediate cure for undisputed contracts and (ii) delayed cure upon resolution of contracts with respect to which a counterparty had filed an assignment and assumption objection (defined in Section 2.8(c) of the APA as a "**Disputed Contract**"). *See* Bidding Procedures Order at ¶ 28. In other words, Lantern was to commit, as of the Closing Date, to assume both undisputed and Disputed Contracts so long as they were on the Assumed Contracts Schedule.

6. Despite this court-dictated procedure, the last sentence of Section 2.8(c) of the APA gives Lantern the option, post-Closing, to either assume a Disputed Contract or, if resolution of the cure amounts needed to assume such Disputed Contract is not satisfactory to Lantern, change its mind and not assume the Disputed Contract, a consequence of which will increase unsecured claims against the Debtors. To make matters worse, the original Second Amendment adds a new Section 2.8(g) to the APA, giving *Lantern* (not the Debtors) the option, post-Closing, to assume or reject newly discovered executory contracts upon 14-days-notice to the contract counterparty under the auspices of the Sale Order, without the need to file a motion to assume or reject or satisfy any other legal or due process safeguards.[4] The provision comes over two months after the Debtors filed their Schedules of Assets and Liabilities and after months of due diligence performed by Lantern.

7. The Revised Second Amendment exacerbates the problem in two ways. First, it creates an Assumption Outside Date and a Contract Designation Outside Date that gives Lantern

---

[4] In fact, under analogous circumstances, Section 2.8(f) of the APA requires the Debtors and Lantern to seek authorization of the Bankruptcy Court for assumption and assignment of any executory contracts that the parties failed to identify pre-Closing to be assumed and assigned.

4

another four months to decide whether it will (i) assume or reject Disputed Contracts, (ii) assume or reject contracts not otherwise identified on the Assumed Contracts Schedule and (iii) assume or reject newly discovered executory contracts.  *See* Revised Second Amendment at §§ 2(f) and (p).  Second, though it creates a cash escrow pending resolution of cure disputes, presumably to be used to pay cure amounts necessary to assume Disputed Contracts once they are resolved, if the Remaining Counterparties are correct that Lantern is obligated as of the Closing Date to assume all Disputed Contracts listed on the Assumed Contract Schedule, then that "Closing Escrow Amount" is woefully insufficient.

8. The only way to remedy this inconsistency between the Bidding Procedures Order, the Sale Order, the APA and the Revised Second Amendment is to require Lantern to deposit in escrow the full amount of the monetary cure asserted by contract counterparties with respect to *all* contracts listed on the Assumed Contract Schedule.  Lantern will then have satisfied the requirement in Section 365(b)(1)(A) that it provide adequate assurance that it will promptly cure any monetary defaults existing with respect to the contracts listed on the Assumed Contract Schedule.  Upon Closing, the escrow amount needed to cure monetary defaults in those contracts on the Assumed Contract Schedule that are not Disputed Contracts would be immediately paid to the counterparties to such undisputed assumed contracts.  Thereafter, pending resolution of the Disputed Contracts, sufficient amounts would be released from escrow to cure monetary defaults in the Disputed Contracts, all of which would be deemed to have been assumed as of the Closing Date.  Any unused portions after all disputes are resolved would be returned to Lantern.  With respect to the cure of non-monetary defaults, the APA must clarify whether the Debtors or Lantern will be obligated to provide accounting and/or audit reports, and if so, how adequate assurance of prompt cure will be provided by the Debtors or Lantern.

9. For the foregoing reasons, the Remaining Counterparties respectfully request that this Court deny the Motion to Amend and require the Sale Objections be determined prior to any Closing of the Sale.

## CONCLUSION

For the reasons set forth herein, the Court should sustain the Objection.

Dated: July 10, 2018
      Wilmington, Delaware

**VENABLE LLP**

By: *Jamie L. Edmonson*

Jamie L. Edmonson (No. 4247)
1201 N. Market St.
Suite 1400
Wilmington, Delaware 19801
Tel: (302) 298-3535
Fax: (302) 298-3550
jledmonson@venable.com

and

Jeffrey S. Sabin, Esq.
1270 Avenue of the Americas
New York, New York 10020
Tel: (212) 503-0672
jssabin@venable.com

and

Keith C. Owens, Esq.
2049 Century Park East
Suite 2300
Los Angeles, California 90067
Tel: (310) 229-0370
kcowens@venable.com