IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered) |

**SUPPLEMENTAL OPPOSITION OF EXECUTORY CONTRACT COUNTERPARTIES TO THE DEBTORS' MOTION FOR ORDER APPROVING AMENDMENT TO ASSET PURCHASE AGREEMENT WITH LANTERN ENTERTAINMENT LLC**

The contract counterparties listed on Exhibit A hereto (collectively, the "**Counterparties**") – comprising of prominent actors, directors, producers, and writers in the entertainment industry – hereby submit this Supplemental Opposition with respect to the *Debtors' Motion for an Order Approving Amendment to Asset Purchase Agreement Entered into by and Between the Debtors and Lantern Entertainment LLC* (the "**Motion**"), as supplemented by the *Notice of Filing of Revised Second Amendment to Asset Purchase Agreement* (the "**Revised Amendment**") [Docket 1187] and the *Declaration of Robert Del Genio in Support of Debtors' Motion for an Order Approving Amendment to Asset Purchase Agreement Entered into by and Between the Debtors and Lantern Entertainment LLC* (the "**Del Genio Declaration**") [Docket No. 1188].

Subsequent to the deadline to object to the Motion, the Debtors filed the Revised Amendment together with the Del Genio Declaration, each of which raises additional questions regarding the merits of the sale transaction, and the rationale for the $21 million price reduction.[1] Generally, the rationale for agreeing to Lantern's heavy-handed demands appears to be based

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Counterparties' Opposition to the Motion. [Docket No. 1176.]

1

solely on the fact that Lantern is the "only game in town," and that absent the Court approving the amendments to the APA, the only alternative is a Chapter 7 liquidation. While that argument has some facial merit, the Debtors and Lantern should not be permitted to enter into a deal that is inadequately described, inadequately noticed, and that likely will result in substantial litigation with the Counterparties. Specifically, the issues and questions raised by the Debtors' "eleventh hour" pleadings are as follows:

1. What was the rationale for the Debtors' agreement to reduce the purchase price by first $23 million, and then $21 million as a result of the Committee's efforts? While the Del Genio Declaration states that a price reduction "in the range of $46 million was a non-starter for the Debtors," Mr. Del Genio does not provide any rationale as to why a price reduction in the amount of $21 million is appropriate. Del Genio Declaration, ¶ 8.

2. What was the rationale for the agreement between Lantern and the Committee to "adopt a "cure floor" of $8.75 million, and what amount of that "cure floor" is anticipated to be placed in escrow at the time of closing? As acknowledged by the Debtors, and described more fully below, Lantern may not be required to place any funds in escrow at the time of closing.

3. What is the total amount of undisputed cure claims anticipated to be paid by Lantern?

4. What is the total amount of disputed cure claims (primarily consisting of participation amounts), that Lantern has agreed to "pay" in exchange for the $21 million price reduction?

5. What was Debtors' rationale for making changes to the APA that are

      unrelated to the price reduction, and that appear to impact prior orders of this Court?

6.    What are other undisclosed portions of the agreement among the Debtors, the Committee, and Lantern? For example, Mr. Del Genio states that the resolution with the Committee "also included certain non-economic matters, including cooperation and other agreements related to plan process matters." Del Genio Declaration, ¶ 11.

The questions raised with respect to item (2) above are particularly troubling in that the purported escrow of $8.75 million by Lantern appears to be nothing more than "smoke and mirrors" to justify what seems to be a bad deal. As described by Mr. Del Genio, one of the major disputes between the Debtors and Lantern involved who was responsible for paying the cure amounts consisting of participations owed to actors, directors, producers, writers, etc. "The Debtors have taken the position that the APA requires Lantern to pay all Cure Amounts. In contrast, Lantern has taken the position that, if any Cure Amounts consist of Participation that were due on Contracts before Closing, the APA provides that the Debtors, and not Lantern, must pay those Cure Amounts." Del Genio Declaration, ¶ 6.

If Lantern had agreed to use all, or some substantial portion of the price reduction to pay cure amounts consisting of participations due on contracts, the agreement to reduce the price would have been justified as substantial claims against the estate would be resolved. Instead, Lantern has agreed only that it will pay and/or escrow $8.75 million for <u>any</u> cure amounts, including cure amounts that Lantern indisputably was required to pay. And, it appears to be Lantern's continuing position that it would be entitled to exploit the Counterparties' films and images without paying them a dime. This position will result in massive litigation between the Debtors and the

Counterparties, as well as the potential assertion of millions of dollars of administrative and unsecured claims against the estates.

Moreover, the above issues all are exacerbated by the manner in which the Debtors have brought the Motion to this Court. The Debtors informed this Court that it required a hearing on shortened notice for the purpose of approving a purchase price reduction. However, the Motion included revisions that went well beyond the reduced purchase price, and included provisions that are prejudicial to the Counterparties, and that would require revisions to prior orders of the Court. Moreover, those revisions were not highlighted or discussed in any manner in the Motion, and until the day prior to the hearing, the Debtors did not provide a black-line of the APA for which they are now seeking approval. Additionally, two days prior to the hearing, and subsequent to the deadline to objection to the Motion, the Debtors submitted the Revised Amendment that included substantial revisions to the deal. While the Counterparties understand the exigencies of the circumstances, their rights, and the rights of other similarly situated are being impacted without appropriate notice, and without an appropriate opportunity to take discovery on the issues, and further respond to them.

Unless Lantern is ordered to pay for the cure of defaults under all agreements with the Counterparties and numerous others (which are required to be assumed and assigned if Lantern is planning to exploit the numerous film and TV titles it is purporting to acquire from the Debtors), the Court should not approve any concessions to Lantern.

Dated: July 10, 2018                     */s/ Christopher P. Simon*
                                         Christopher P. Simon (No. 3697)
                                         CROSS & SIMON, LLC
                                         1105 North Market Street, Suite 901
                                         Wilmington, DE 19801
                                         Telephone: (302) 777-4200
                                         csimon@crosslaw.com

-and-

Michael I. Gottfried
Roye Zur
LANDAU GOTTFRIED & BERGER LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 557-0050
mgottfried@lgbfirm.com
rzur@lgbfirm.com

Attorneys for the Counterparties listed in Exhibit A hereto