**Exhibit 1**

**SECOND AMENDMENT TO
ASSET PURCHASE AGREEMENT**

This Second Amendment to Asset Purchase Agreement (this "Amendment") is entered into as of July 9, 2018, by and among The Weinstein Company Holdings LLC, a Delaware limited liability company ("TWCH"), and Lantern Entertainment LLC, a Delaware limited liability company ("Buyer"). This Amendment supersedes the Second Amendment dated as of June 27, 2018 by and between TWCH and Buyer, in its entirety.

WHEREAS, Buyer, TWCH and certain subsidiaries of TWCH (TWCH and each such subsidiary, a "Seller Party" and, collectively, the "Seller Parties") entered into that certain Asset Purchase Agreement, dated March 19, 2018, as amended by the First Amendment to Asset Purchase Agreement, dated as of April 13, 2018 (as heretofore amended, the "Agreement"), pursuant to which the Seller Parties will sell to Buyer and Buyer will purchase from the Seller Parties all of the Purchased Assets and assume the Assumed Liabilities, pursuant to the Sale Order approving such sale, all in the manner and subject to the terms and conditions set forth in the Agreement (as amended by this Amendment) and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and the local rules for the Bankruptcy Court; and

WHEREAS, the Parties desire to amend the Agreement in accordance with the terms set forth in this Amendment.

NOW THEREFORE, in consideration of the mutual promises contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    Capitalized Terms.    All capitalized terms used herein shall have the same meanings ascribed to them in the Agreement, unless otherwise defined in this Amendment.

2.    Amendments to the Agreement.    Effective as of the Amendment Effective Date, the Agreement is hereby amended as follows:

(a)    The first sentence of Section 2.3 of the Agreement is hereby amended and restated in its entirety as follows:

"On the terms and subject to the conditions set forth in this Agreement, at the Closing, Buyer shall (a) assume from the Seller Parties and thereafter pay, perform or discharge when due those Liabilities of the Seller Parties arising out of the operation of the Purchased Assets (including the Assumed Contracts) for periods following the Closing Date, except for those Liabilities that are Excluded Liabilities and (b) subject to the following sentence, assume the Liabilities set forth on Schedule 2.3 (collectively, the Liabilities to be assumed pursuant to the foregoing clauses (a) and (b), the "Assumed Liabilities")."

(b)    The first sentence of Section 2.4 of the Agreement is hereby amended and restated in its entirety as follows:

"Notwithstanding any provision in this Agreement or any other writing to the contrary, other than the payment of Cure Amounts in accordance with <u>Section 2.8</u>, Buyer is assuming only the Assumed Liabilities and is not assuming any other Liability of any Seller Party of whatever nature, whether presently in existence or arising hereafter."

(c)     <u>Section 2.5</u> of the Agreement is hereby amended and restated in its entirety as follows:

"<u>Closing</u>.  On the terms and subject to the conditions set forth in this Agreement, the closing of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities (the "<u>Closing</u>") shall take place at the offices of Cravath, Swaine & Moore LLP at Worldwide Plaza, 825 Eighth Avenue, New York, New York commencing at 9:00 a.m. New York Time, on July 13, 2018, or at such other location, date or time as TWCH and Buyer may mutually agree in writing.  The date the Closing actually occurs is referred to in this Agreement as the "<u>Closing Date</u>"."

(d)     The reference to "$310,000,000" in <u>Section 2.7</u> of the Agreement is hereby deleted and replaced with the following:

"$289,000,000"

(e)     The fourth sentence of <u>Section 2.8(a)</u> of the Agreement is hereby amended and restated as follows:

"All executory Contracts of the Seller Parties that are listed on <u>Section 2.8(a)</u> of the Disclosure Schedule as of the Closing Date and which Buyer does not designate in writing for assumption shall not be considered Assumed Contracts or Purchased Assets and shall automatically be deemed "Excluded Contracts" (and for the avoidance of doubt, Buyer shall not be responsible for any related Cure Amounts related to any Excluded Contracts)."

(f)     <u>Section 2.8</u> of the Agreement is hereby amended by adding the following provisions:

"(g)     <u>Previously Omitted Contracts</u>.  If prior to or following Closing, it is discovered that an executory Contract should have been listed on <u>Schedule 2.8(a)</u> but was not listed on <u>Schedule 2.8(a)</u> (any such Contract, a "<u>Previously Omitted Contract</u>"), Buyer or the Seller Parties, as the case may be, shall promptly following the discovery thereof notify the Seller Parties or Buyer, as applicable, of such omission and Buyer shall provide written notice to the Seller Parties designating such Previously Omitted Contract as an "Assumed Contract" or an "Excluded Contract".  The Seller Parties shall, promptly following Buyer's written notice, serve a notice (the "<u>Previously Omitted Contract Notice</u>") on the counterparties

2

to any such Previously Omitted Contract designated as "Assumed" by Buyer, notifying such counterparties of the Cure Amounts with respect to such Previously Omitted Contract and Seller Parties' intention to assume and assign such Previously Omitted Contract in accordance with this Section 2.8. The Previously Omitted Contract Notice shall provide the counterparties to such Previously Omitted Contract with fourteen (14) Business Days to object, in writing to the Seller Parties and Buyer, to the Cure Amounts or the assumption of its Contract. If the counterparties, Seller Parties and Buyer are unable to reach a consensual resolution with respect to the objection, the Seller Parties will seek an expedited hearing before the Bankruptcy Court to determine the Cure Amounts and approve the assumption (it being understood and agreed that Buyer shall be responsible for the resolution of any such objection and Buyer shall cooperate with counsel to the Seller Parties on briefing and arguing all matters relating to any such objection). If no objection is served on the Seller Parties and Buyer, the Seller Parties shall (on behalf of Buyer) seek an order of the Bankruptcy Court fixing the Cure Amounts and approving the assumption of the Previously Omitted Contract, and no further order or approval shall be required.  Any Previously Omitted Contract that is assumed and assigned pursuant to this Section 2.8(g) shall be deemed an Assumed Contract and Buyer shall be liable for all Cure Amounts associated with such Assumed Contract and any Previously Omitted Contract that is not assumed and assigned pursuant to this Section 2.8(g) shall not be considered an Assumed Contract or Purchased Asset and shall be deemed Excluded Contracts.  Buyer shall promptly reimburse the Seller Parties by wire transfer of immediately available funds for any reasonable and documented out-of-pocket expenses (including reasonable legal fees and expenses; provided, however, that any such legal fees and expenses shall be reimbursed by TWCH to Buyer to the extent subsequently disallowed by the Bankruptcy Court) incurred by the Seller Parties in connection with any of the foregoing.

(h)     Cooperation.  The Seller Parties shall use reasonable best efforts to cooperate with and assist Buyer in determining and negotiating any Cure Amounts for Assumed Contracts.  The Seller Parties shall take, or cause to be taken, and cooperate with Buyer to take, or cause to be taken, all actions, do or cause to be done all things as may be reasonably requested by Buyer in order to determine and negotiate any Cure Amounts for Assumed Contracts.  The Parties acknowledge that neither the outcome of any such negotiation nor the final determination of the amount of any Cure Amount is a condition to the Closing.

(i)     Assumption Outside Date.   Notwithstanding anything in this Agreement or the Sale Order to the contrary, the Contract Designation Outside Date shall be the last date on which Buyer may (x) designate a Disputed Contract as an "Excluded Asset" pursuant to Section 2.8(c) (with any such Disputed Contract not so designated assumed by Buyer as

[[3857456]]

an "Assumed Contract" in accordance with the terms thereof), (y) assume a Contract that was not identified as an Assumed Contract as of the Closing pursuant to <u>Section 2.8(f)</u> (with any such Contract not so assumed constituting an "Excluded Contract" following such date) or (z) designate a Previously Omitted Contract as an "Assumed Contract" pursuant to <u>Section 2.8(g)</u> (with any such Previously Omitted Contract not so designated constituting an "Excluded Contract" following such date).  For the avoidance of doubt, nothing in this <u>Section 2.8(i)</u> shall in any way affect any other date set forth in this <u>Section 2.8</u>, including the dates set forth in <u>Section 2.8(a)</u>."

(g)     <u>Section 2.9</u> of the Agreement is hereby amended to add a new <u>clause (c)</u> to read as follows:

"(c)     At the Closing, Buyer shall deposit the Closing Escrow Amount in cash with the Escrow Agent."

(h)     A new <u>Section 2.11</u> is hereby added to the Agreement to read as follows:

"Section 2.11  <u>Closing Escrow Amount</u>.

(a)     If the Closing Escrow Amount is greater than zero, then on or prior to the Closing Date, Buyer, TWCH and the Escrow Agent shall enter into an escrow agreement, in substantially the form of the Escrow Agreement (except as expressly provided herein) (the "<u>Closing Escrow Agreement</u>"), pursuant to which Buyer shall deposit the Closing Escrow Amount in cash with the Escrow Agent to be held in accordance with the terms of the Closing Escrow Agreement.

(b)     On the Contract Designation Outside Date (or such earlier date on which the Cure Face Amount of Contracts (other than, if applicable, the Wanda Contract) that have been assumed by Buyer as "Assumed Contracts" after the Closing Date and on or prior to the Contract Designation Outside Date shall equal or exceed the Closing Escrow Amount), each of Buyer and TWCH shall duly execute and deliver to one another, and the Escrow Agent, joint instructions to the Escrow Agent instructing the Escrow Agent to pay to (i) Buyer, the Closing Escrow Buyer Release Amount, if any, and (ii) the Seller Parties, the Closing Escrow Seller Parties Release Amount, if any, in each case by wire transfer of immediately available funds in accordance with the Closing Escrow Agreement.

(c)     Until the Closing Escrow Amount shall have been released to Buyer and/or Seller Parties, as applicable, in accordance with <u>Section 2.11(b)</u>, the Seller Parties shall afford Buyer (and its representatives and advisors) reasonable access to all books and records used to prepare, or otherwise relevant to the calculation of, the Cure Face Amounts that are under control of or in the possession of Seller Parties (or their respective representatives and advisors), in each case subject to the limitations set forth in Section 5.4 of the Agreement."

[[38857456]]

(i)    Section 2.10(a)(ii) of the Agreement is hereby deleted in its entirety and replaced with "[Reserved]".

(j)    Section 11.1(b) of the Agreement is hereby amended and restated in its entirety as follows:

"by TWCH if (i) TWCH has given notice to Buyer in writing that it is ready, willing and able to consummate the Transactions in accordance with the terms of the Agreement and this Amendment and (ii) Buyer fails to consummate the Transactions on or before July 14, 2018 (the "End Date"); provided, however, that the right to terminate this Agreement under this Section 11.1(b) shall not be available to TWCH if its or any other Seller Party's breach or failure to fulfill any obligation under this Agreement has been the cause of, or resulted in, the failure of the Closing to be consummated by the End Date;"

(k)    Section 11.1(c) of the Agreement is hereby deleted in its entirety and replaced with "[Reserved]".

(l)    Section 11.1(f) of the Agreement is hereby deleted in its entirety and replaced with "[Reserved]".

(m)    Section 12.3(a) of the Agreement is hereby amended and restated in its entirety as follows:

In the event that, prior to the Closing, Buyer has complied in all respects with all agreements, obligations and covenants to be performed by or on its behalf through the date of termination of this Agreement and this Agreement is validly terminated pursuant to Section 11.1(a), Section 11.1(e) or Section 11.1(g), then TWCH shall promptly, and in any event within two (2) Business Days of Buyer's request, duly execute and deliver to Buyer and the Escrow Agent an authorization instructing the Escrow Agent to disburse (in accordance with the terms and conditions of the Escrow Agreement) to Buyer the Escrow Amount.

(n)    The reference to "Section 11.1(d)" in the first sentence of Section 12.3(b) of the Agreement is hereby deleted and replaced with the following:

"Section 11.1(b) or Section 11.1(d)"

(o)    The reference to "Section 11.1(d)" in the first sentence of Section 12.4(b) of the Agreement is hereby deleted and replaced with the following:

"Section 11.1(b) or Section 11.1(d)"

(p)    Exhibit A of the Agreement is hereby amended by inserting the following new definitions in proper alphabetical order:

[[3857456]]

"Closing Escrow Amount" means the amount, if any, by which (x) $8,750,000 exceeds (y) the Cure Face Amount of all Contracts (other than, if applicable, the Wanda Contract) that are assumed by Buyer as an "Assumed Contract" as of the Closing Date.

"Closing Escrow Buyer Release Amount" means the amount, if any, by which (x) the Closing Escrow Amount exceeds (y) the Closing Escrow Seller Parties Release Amount.

"Closing Escrow Seller Parties Release Amount" means the amount, if any, by which (x) the Closing Escrow Amount exceeds (y) the Cure Face Amount of any Contracts (other than, if applicable, the Wanda Contract) that are assumed by Buyer as an "Assumed Contract" after the Closing Date and on or prior to the Contract Designation Outside Date. For the avoidance of doubt, if the Closing Escrow Seller Parties Release Amount is zero or a negative number, the Seller Parties shall not be entitled to any of the Closing Escrow Amount.

"Contract Designation Outside Date" means the date that is the 120th day following the Second Amendment Effective Date.

"Cure Face Amount" means, with respect to any Assumed Contract (other than, if applicable, the Wanda Contract), the face amount of claims arising under such Assumed Contract that (i) Buyer shall have paid as a Cure Amount with respect to such Assumed Contract and/or (ii) the contract counterparty has waived, as determined by reference to the Seller Parties' books and records maintained in a manner consistent with the policies and practices of the Seller Parties prior to the Closing or as otherwise determined by the Bankruptcy Court or agreement between the Parties.

"Second Amendment Effective Date" has the meaning assigned to the term "Amendment Effective Date" in the Second Amendment to Asset Purchase Agreement, dated as of July 9, 2018, by and among TWCH and Buyer.

"Wanda Contract" means the Financing and Distribution Agreement, dated as of January 28, 2014 (as amended, supplemented or otherwise modified from time to time), by and between The Weinstein Company LLC and Wanda Pictures (Hong Kong) Co., Ltd.

(q)     Clause (k) of Schedule 2.1 of the Agreement is hereby amended and restated in its entirety as follows:

"all claims and Actions of Seller Parties arising under Sections 544, 547, 548, 549, and 550 of the United States Bankruptcy Code relating to the Purchased Assets which any Seller Party has or may have against any customers, clients, vendors and contract counterparties of any Seller Party (the "Purchased Actions"); provided, however, that any claims or Actions of Seller Parties arising under Sections 544, 547, 548, 549, and 550 of the United States Bankruptcy Code relating to the Projects "Paddington 2" and "The War With Grandpa" shall not constitute "Purchased Actions"; and"

[[3857456]]

(r)    Clause (h) of <u>Schedule 2.2</u> of the Agreement is hereby amended and restated in its entirety as follows:

"all executory Contracts that are not Assumed Contracts including (i) all Employment Contracts and all other employment, severance or similar Contracts with any employee or service provider of the Seller Parties and (ii) all Contracts set forth in <u>Schedule 2.2(h)</u> (collectively, the "<u>Excluded Contracts</u>")"

3.    <u>Cure Amounts</u>. The Parties hereby acknowledge and agree that, notwithstanding anything in the Agreement to the contrary, all Cure Amounts (including, for the avoidance of doubt, any Cure Amounts that would otherwise constitute Participations or other Excluded Liabilities) required under Section 365 of the Bankruptcy Code to assume all Assumed Contracts pursuant to <u>Section 2.8</u> of the Agreement shall be paid by Buyer in accordance with <u>Section 2.8</u> of the Agreement (it being understood and agreed that, notwithstanding anything in the Agreement or any other writing to the contrary, the Seller Parties shall have no obligation to pay any Cure Amounts).

4.    <u>Expense Reimbursement</u>.

(a)    Regardless of whether the Amendment Effective Date occurs, in the event that either (i) the Transactions are consummated or (ii) the Agreement is terminated by TWCH pursuant to <u>Section 11.1(b)</u> or <u>Section 11.1(d)</u> of the Agreement (the "<u>Trigger Date</u>"), Buyer shall be obligated to pay to TWCH the Reimbursable Expenses Amount. No later than twenty (20) Business Days after the Trigger Date, TWCH shall deliver to Buyer TWCH's good faith calculation of the Reimbursable Expenses Amount. The calculation of the Reimbursable Expenses Amount shall be based upon the books and records of the Seller Parties, maintained in a manner consistent with the policies and practices of the Seller Parties prior to the Closing and shall in any event be prepared in accordance with the illustrative calculations set forth on <u>Annex I</u> to <u>Exhibit A</u>. Until the Reimbursable Expenses Amount is finally determined pursuant to this <u>Section 4</u>, the Seller Parties shall afford Buyer (and its representatives and advisors) reasonable access to all books and records and all personnel used to prepare, or otherwise relevant to the calculation of, the Reimbursable Expenses Amount that are under control of or in the possession of Seller Parties (or their respective representatives and advisors), in each case subject to the limitations set forth in Section 5.4 of the Agreement.

(b)    The calculation of the Reimbursable Expenses Amount shall be final and binding on the Parties unless Buyer shall, prior to five (5) Business Days following the delivery of the calculation of Reimbursable Expenses Amount, deliver to Seller Parties written notice of disagreement with such calculation (a "<u>Dispute Notice</u>"), which Dispute Notice shall describe the nature of any such disagreement in reasonable detail. If the Seller Parties and Buyer are unable to resolve all disagreements with respect to the calculation of Reimbursable Expenses Amount within ten (10) Business Days of receipt by the Seller Parties of a Dispute Notice with respect to such calculation, or such longer period as may be agreed by the Seller Parties and Buyer, then, within five (5) Business

Days after the end of such period, the Seller Parties and Buyer shall jointly submit the dispute to the Bankruptcy Court for resolution.

(c)     Upon final resolution of the calculation of the Reimbursable Expense Amount, Buyer shall within two (2) Business Days after such final determination, pay to TWCH, by wire transfer of immediately available funds to an account designated in writing by TWCH, an amount in cash equal to the Reimbursable Expenses Amount.

(d)     As used in this Amendment, "Reimbursable Expenses" means any costs, fees and expenses incurred by any Seller Party as a result of the Seller Parties' continued operation of the Business during the period beginning on June 30, 2018 and ending on the Trigger Date, as outlined on Exhibit A. For the avoidance of doubt, none of the following shall be included in the Reimbursable Expenses Amount: (v) any costs, fees and expenses (including all legal, investment banking, brokerage, finder's, financial advisory or similar fees or commissions) which are payable in connection with the Closing, (x) any severance, separation pay, or other payments or benefits payable to any Seller Party Employee on account of any termination of such Seller Party Employee's employment on or before the Trigger Date, (w) any costs, fees and expenses related to the Bankruptcy Cases (including all legal, investment banking, brokerage, finder's, financial advisory or similar fees or commissions), (y) except as set forth in item 4 of Exhibit A, any costs, fees and expenses related to Excluded Assets or Excluded Liabilities and (z) any repayments of principal on any outstanding loans.

(e)     As used in this Amendment, "Reimbursable Expenses Amount" means the aggregate amount of the Reimbursable Expenses.

(f)     Any amounts payable pursuant to this Section 4 shall be in addition to, and not in lieu of or a deduction to, the amounts payable by Buyer at the Closing pursuant to Section 2.7 and Section 2.9 of the Agreement.

5.     Equity Contribution.  As of the date of this Amendment, Buyer has been capitalized with $99,500,000.00, which amount is held by Buyer in immediately available funds in a deposit account in Buyer's name.  From the date of this Amendment until the earlier of (i) the Closing, (ii) the indefeasible payment in full by Buyer of the Reimbursable Expenses Amount pursuant to Section 4 of this Amendment or (iii) the date of termination of the Agreement (other than any termination pursuant to Section 11.1(b) or Section 11.1(d)), Buyer shall not be permitted to make or pay any returns of capital or other payments to (or for the benefit of) any Affiliate or any holder of any equity interests of Buyer or make any other payments except in connection with the consummation of the Transactions.

6.     Acknowledgement.  The Parties hereby acknowledge and agree that, effective as of the Amendment Effective Date, all of the closing conditions set forth in Article VIII, Article IX and Article X of the Agreement shall be deemed to have been satisfied or hereby irrevocably waived (it being understood and agreed that the Parties' obligations to consummate the Transactions are not conditioned upon the resolution or outcome of any pending objection to the Transactions or the Sale Order).  Notwithstanding the foregoing, the Seller Parties agree and acknowledge that the Seller Parties shall perform or comply in all material respects with all

[[3857456]]

obligations, agreements and covenants required under the Agreement and this Amendment to be performed or complied with by any of them at or prior to Closing (except for such obligations, agreements and covenants that by their nature may only be performed at the Closing, but subject to the performance of such obligations, covenants and agreements).

7.    Bankruptcy Court Approval.  The Seller Parties shall use their reasonable best efforts to seek entry of an Order (the "Amendment Order"), in form and substance reasonably acceptable to the Seller Parties and Buyer (it being acknowledged by the Parties that the form of Amendment Order attached as Exhibit B hereto is reasonably satisfactory to them), which shall, among other things, approve the execution and delivery by the Seller Parties of this Amendment and the performance by the Seller Parties of their respective obligations under this Amendment. Buyer agrees that it will use its reasonable best efforts to take such actions as are reasonably requested by the Seller Parties to assist in obtaining Bankruptcy Court approval of the Amendment Order.  As of the date on which the Bankruptcy Court shall have entered the Amendment Order (such date, the "Amendment Effective Date"), the Agreement shall hereby be deemed to be amended so that any reference therein to the Agreement shall mean a reference to the Agreement as amended by this Amendment; provided, however, that the Execution Date or words of like import shall refer to March 19, 2018.

8.    No Waiver.  In the event that the Closing does not occur, regardless of whether the Amendment Effective Date has occurred, the Parties hereby expressly preserve all claims of any nature whatsoever that may have existed prior to the execution of this Amendment, whether pursuant to the Agreement or applicable Law or otherwise.

9.    No Admission. Nothing in this Amendment shall be construed as an admission in any Action (whether commenced by any Seller Party, Buyer, any of their respective Affiliates or any third party) (a) as to the correct interpretation of any provision of the Agreement (including any provision of the Agreement that is amended hereby), (b) that any Party has breached any of its representations or warranties or has breached or failed to perform or comply with any of its covenants or agreements in the Agreement, (c) that any items (i) are material or (ii) individually or in the aggregate, would be reasonably likely to have a Material Adverse Effect or (d) of any liability or wrongdoing.  This Amendment shall not be introduced by any Party, and shall not be admissible for any purpose, in any such Action except in an Action to enforce its terms.

10.    Effect. Except to the extent expressly amended herein, the Agreement is hereby ratified and confirmed in all respects and will remain unmodified and in full force and effect.

11.    Counterparts. This Amendment may be executed in one or more counterparts, which may be delivered by facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Signatures on Following Page]*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed on the day and year first above written.

**BUYER:**

LANTERN ENTERTAINMENT LLC

By: _____

Name: *L. Andy Mitchell*

Title: *Authorized Signatures*

THE WEINSTEIN COMPANY HOLDINGS LLC

By: _____

Name:

Title:

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed on the day and year first above written.

**BUYER:**

LANTERN ENTERTAINMENT LLC

By: _____
Name:
Title:

THE WEINSTEIN COMPANY HOLDINGS LLC

By: *Robert A. Del Genio*
Name: ROBERT A. DEL GENIO
Title: CRO

## EXHIBIT A

The following items are to be included in the calculation of Reimbursable Expense Amount.

1.      Personnel costs (including payroll, benefits and payroll taxes)*

2.      Rent and Utilities*

3.      IT Infrastructure (including 3rd party consultants and software and hardware licensing fees)

4.      Amounts payable to third party contractors or consultants (which amounts were mutually agreed upon between TWCH and Buyer in advance of June 30, 2018 and which third party contractors or consultants will be allowable reimbursable expenses)*

5.      Interest accruing on any debt of the Seller Parties that is not an Assumed Liability and which the Seller Parties are currently obligated to pay in cash*

6.      Other expenses that would be expected to be incurred by Buyer post-closing and to be mutually agreed upon by the Parties (e.g. office supplies, shipping)*

7.      Any other costs or expenses in an amount not to exceed $50,000 per week*

* Expenses of the types marked with an asterisk above must be pre-approved by Buyer (such approval not to be unreasonably withheld, conditioned or delayed).  TWCH will provide notice to Buyer of such expense and Buyer shall have two (2) Business Days to approve such expense as a Reimbursable Expense.

A draft budget of the Reimbursable Expenses Amount is set forth below.  The draft budget has been prepared for illustrative purposes only and shall not be deemed to be an estimate of or a limitation of the Reimbursable Expenses Amount:

**Lantern Entertainment LLC**
TWC Reimbursable Expenses Budget (through July 14, 2018)
*($ 000's)*

|  | EST 7-Jul | FCST 14-Jul | FCST TOTAL |
|---|---|---|---|
| Expense Budget |  |  |  |
| Personnel Costs | - | 462 | 462 |
| Rent and Utilities | 148 | 15 | 163 |
| IT Infrastructure | 104 | 33 | 137 |
| 3rd Party Contractors | 32 | 18 | 51 |
| Other Opex | 52 | 274 | 325 |
| Debt Interest Expense | 264 | 264 | 527 |
| Other | — | — | — |
| **Total** | $ 650 | $ 1,065 | $ 1,666 |