**<u>EXHIBIT A</u>**

**Document Requests and Deposition Topics**

## **DEFINITIONS**

The definitions of terms provided by the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, where applicable, are incorporated herein by reference.

As used herein, the term "communication" means all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in your actual or constructive control or custody of any of your current or former affiliates, representatives, advisors and counsel.  The term includes the provision, receipt, or exchange of any information or opinion, in any manner or form, including emails (and attachments) sent to or from any personal email accounts (*e.g.*, any Gmail or Hotmail accounts).

As used herein, the term "document" means all writings (including notes, correspondence, memoranda, reports, computer print-outs, journal entries, and emails), drawings, drafts, charts, photographs, tape or disc recordings (whether computer, sound or video), and all data compilations from which information can be obtained or translated, which are in your possession, custody or control or which are known to you.  Documents does not include the notes or memoranda of your attorneys made in connection with this case or correspondence between you and your attorney pertaining to this case to the extent such information remains protected by any applicable privilege.

As used herein, the he term "person" or "persons" means any individual, corporation, limited liability company, partnership, firm, association, governmental entity or

other organization recognizable at law, and its directors, officers, agents, representatives and employees.

As used herein, the term "electronically stored information" or "ESI" means, without limitation, all information contained on any email account (e.g., Gmail or Hotmail), any computing device owned, maintained, or otherwise controlled by you, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, or other information-storing electronic devices of you and your employees, or on associated external storage media, backup tapes, and other archival copies of same. Unless otherwise specified, documents, reports, and other ESI created using any version of Microsoft Word, Powerpoint, Excel, Visio, or Access, Word Perfect, Oracle, or any other Microsoft, Adobe, or other currently available "off-the-shelf" application shall be produced in native form; that is, the form in which the document is currently stored on whatever media it currently resides. The document should not be locked, resaved, restructures, "scrubbed" of unapparent or hidden content or any other data or metadata, but rather should be produced in a copy precisely reproducing its entire state as present in your systems. Unless otherwise specified, electronic mail (e-mail) should be produced in native form; that is, in whatever database and/or file/directory structures are used by your mail processing software. All metadata and other unapparent or hidden data related to mail messages shall be produced, including, but not limited to, any file attachments, message priority flags, message read/access timestamps, and, in the case of e-mail sent to distribution lists, information

2

on the membership of such lists at the time the e-mail was sent.

As used herein, the phrases "relating to" and "concerning" mean consisting of, referring to, reflecting or being legally, logically, or factually connected in any way with the subject matter.

As used herein, the term "identify" when referring to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this definition, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.  When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

As used herein, the term "including" shall mean "including but not limited to".

As used herein, the term "evidencing" shall mean describing, discussing, referring to, reflecting, relating to, concerning, constituting, regarding, bearing upon, supporting, summarizing, pertaining to, alluding to, depicting, summarizing, involving, embodying, containing, suggesting, mentioning, arising out of, in connection with, or having any logical or factual connection with the matter in question.

As used herein, the term "Debtors" refers to The Weinstein Company Holdings LLC; Avenging Eagle SPV, LLC; Branded Partners LLC; Check Hook LLC; CTHD 2 LLC; Cues TWC (ASCAP), LLC; Current War SPV, LLC; DRT Films, LLC; DRT Rights

Management LLC; FFPAD, LLC; HRK Films, LLC; InDirections LLC; InteliPartners LLC;

ISED, LLC; MarcoTwo, LLC; One Chance LLC; PA Entity 2017, LLC; Paddington 2, LLC; PS

Post LLC; Scream 2 TC Borrower, LLC; Small Screen Productions LLC; Small Screen Trades

LLC; Spy Kids TV Borrower, LLC; Team Players LLC; The Actors Group LLC; The Giver

SPV, LLC; The Weinstein Company LLC; Tulip Fever LLC; TWC Borrower 2016, LLC; TWC

Domestic LLC; TWC Fearless Borrower, LLC; TWC Library Songs (BMI), LLC; TWC Loop

LLC; TWC Mist, LLC; TWC Polaroid SPV, LLC; TWC Production-Acquisition Borrower 2016,

LLC; TWC Production, LLC; TWC Replenish Borrower, LLC; TWC Short Films, LLC; TWC

Untouchable SPV, LLC; TWC Waco SPV, LLC; Twenty O Five Holdings, LLC; W Acquisition

Company LLC; WC Film Completions, LLC; Weinstein Books, LLC; Weinstein Development

LLC; Weinstein Global Funding Corp.; Weinstein Global Film Corp.; Weinstein Productions

LLC; Weinstein Television LLC; WTV Guantanamo SPV, LLC; WTV JCP Borrower 2017,

LLC; WTV Kalief Browder Borrower, LLC; WTV Scream 3 SPV, LLC; and WTV Yellowstone

SPV, LLC.

   As used herein, the Term "<u>non-Debtor affiliates</u>" refers to any and all subsidiaries

of the Debtors' ultimate parent, The Weinstein Company Holdings LLC.

   As used herein, the term "<u>TWCH</u>" means The Weinstein Company Holdings

LLC, all of its past and present officers and employees, whether assigned to its principal offices

or any of its field or other locations, including all of its divisions, subsidiaries (whether or not

incorporated) and affiliated enterprises, and all of its headquarters, regional, zone and other

offices and its employees, and all agents, contractors, consultants, attorneys and law firms and

other persons engaged directly or indirectly (e.g. employee of a consultant) by or under the control of TWCH (including all business units and persons previously referred to)..

As used herein, the term "<u>Glasser</u>" refers to David Glasser.

As used herein, the term "<u>insurance policy</u>" means a policy or portion of a policy as well as any document evidencing the writing of, issuance of, terms of, underwriting of, premium for, payment under a policy, that does or may afford coverage for claims against the Debtors, whether issued to the Debtors or to any other person, including any policy designated as a liability policy, general liability policy, workers' compensation policy, "primary" liability policy, "excess" liability policy, "umbrella" policy, "follow form" policy, or "products liability" policy, and any part(s) of any such insurance policy, including any declarations pages, endorsements, riders, binders, policy jackets, standard forms, inserts, or any other item that is or could be construed to be a part of or related to the terms of such insurance policy.

The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; and the word "any" means "any and all"; the word "including" means "including without limitation."

## **INSTRUCTIONS**

If any portion of any document is responsive to any request, then the entire document must be produced. Documents shall be produced in the order in which they are found or kept in your files and shall not be shuffled or otherwise rearranged. Documents that are found stapled, clipped, or otherwise fastened or filed together shall be produced in such form.

All Documents that are stored electronically, i.e. ESI, must be produced according

to the following, unless otherwise agreed: (a) transmit electronic documents or ESI on a hard

drive, CDs, and/or DVDs, or let us know if you are amenable to an ftp site upload; (b) use .tiff

format for all documents; (c) if you are providing documents in .tiff format, please produce those

documents on Summation-ready CDs or DVDs in .tiff and text format; (d) if you are providing

documents in .tiff format, also produce a Summation load file; (e) however, if the conversion of

documents to .tiff format will introduce any delay into your production, produce the documents

in "as is" format (e.g., pst as pst, Microsoft Word as Microsoft Word, Excel as Excel); (f) if you

are producing emails and attachments in "as is" format, transmit those emails and their

attachments in Microsoft Outlook.pst format with a maximum of 2 GB per file; (g) if you are

producing emails and attachments in "as is" format, also name emails incrementally by custodian

(i.e., Custodian001.pst, Custodian002.pst).  Documents may be produced in paper format to the

extent they are stored in paper format.

   If any documents called for by any request herein has been destroyed, lost,

discarded, or otherwise not capable of being produced, at the time that documents are produced,

identify such document; identify any person who has possession, custody, or control of the

document; indicate the paragraph(s) of this request to which such document relates; and set forth

the circumstances under which the document was destroyed or discarded or as an explanation of

why the document is not capable of being produced.

   For each document withheld by reason of a claim of privilege, work product, or

other ground of non-production, provide a list identifying such document together with:  (a) the

date of the document; (b) the identity of the author or preparer; (c) the identity of each person

who was sent or furnished with the document or who received or had possession or custody of the document; (d) a brief description of the document, including identification of any attachments or appendices; (e) a statement of the basis of the claim of privilege; and (f) the paragraph of this request to which the document is responsive.  In the case of document concerning a meeting or conversation, identify all participants in the meeting or conversation.

If any document or portion of a document is provided in a language other than English, the document should be accompanied by a translation to English.

This request shall be deemed continuing in character, so as to require further and supplemental production if additional documents are obtained or become accessible after the time of initial production.

## **DOCUMENT/MATERIAL REQUESTS AND DEPOSITION TOPICS**

(1) DEBTORS' ASSETS AND CONTRACTS

a) All documents, communications, notices, modifications, amendments and terminations concerning any contracts between the Debtors and non-Debtor parties within 10 years prior to the Petition Date, including any such documents, communications, notices, modifications, amendments and terminations relating to Viacom, A&E, Lifetime, Paramount, Netflix or the motion picture In the Heights.

b) All communications between David Glasser and/or 101 Studios and any person since October 2017 concerning the Debtors' rights in any development projects or existing titles, including *Yellowstone, In the Heights, Untitled Richard Pryor Project, Mila 18; Artemis Fowl; Perfect Strangers; Guantanamo; Mob Wives; August Snow; Beau Sejour; Elvis; Untitled David O. Russell Project;* and *The Upside*.

c) All documents and communications concerning any contracts, deal memos, understandings and agreements (formal or informal) between David Glasser and/or 101 Studios and Viacom (or any person or entity related to Viacom), including with respect to the project *Yellowstone*.

d)  All documents and communications concerning any contracts, deal memos, understandings and agreements (formal or informal) between David Glasser and/or 101 Studios and any person in the media and entertainment industries within four years of the Petition Date.

e)  All communications between David Glasser and/or 101 Studios and any person within four years of the Petition Date concerning employment, partnerships, joint ventures or the Debtors' assets or contracts.

f)  All communications between David Glasser and/or 101 Studios and Viacom (or any person or entity related to Viacom), including concerning employment, partnerships, joint ventures, the sale of any assets of the Debtors or the assumption and assignment of any contracts of the Debtors.

g)  All communications since October 2017 between David Glasser and/or 101 Studios and any non-debtor parties to contracts with any Debtor, including any such communications with Viacom, A&E, Lifetime, Paramount or Netflix.

h)  All communications between David Glasser and/or 101 Studios, on one hand, and Ron Burkle and/or The Yucapia Companies, on the other hand, including any communications concerning the sale of any assets of the Debtors or the assumption and assignment of any contracts of the Debtors.

i)  All communications between David Glasser and/or 101 Studios and Bob Yari, including any communications concerning the sale of any assets of the Debtors or the assumption and assignment of any contracts of the Debtors.

j)  All communications between David Glasser and/or 101 Studios and Sean Rad, including any communications concerning the sale of any assets of the Debtors or the assumption and assignment of any contracts of the Debtors.

k)  All communications between David Glasser and/or 101 Studios and Marvin Peart, including any communications concerning the sale of any assets of the Debtors or the assumption and assignment of any contracts of the Debtors.

l)  All communications between David Glasser and/or 101 Studios and any person since October 2017, concerning any of the Debtors' contracts or assets, including with any representative of United Talent Agency, Creative Artists Agency or William Morris Endeavor Entertainment.

(2) TRANSFERS FROM DEBTORS

m) All documents and communications concerning any transfers from Debtors within 10 years prior to the Petition Date, including money, real property and personal property.

n) All documents and communications concerning any transfers from Debtors to David Glasser, including expense reimbursements, advances, loans, and bonuses.

o) All documents and communications concerning any transfers from Debtors to any relative of David Glasser (*e.g.*, Richard Glasser), including expense reimbursements, advances, loans, and bonuses.

p) All documents and communications concerning any transactions or expenses charged by David Glasser (or by anyone on David Glasser's behalf) to any Debtor account, including any purchases made using any Debtor credit card.

q) All documents and communications concerning any transfers from Debtors to any person since October 2017, including any transfers authorized by David Glasser or David Hutkin.

r) All documents and communications concerning any transfers from Debtors to Harvey Weinstein, including expense reimbursements, advances, loans, and bonuses.

s) All documents and communications concerning any transfers from Debtors to Robert Weinstein, including expense reimbursements, advances, loans, and bonuses.

t) All documents and communications concerning the personal use of proceeds from any of the Debtors' loans, lines of credit, revolvers, or other similar instrument by David Glasser, Harvey Weinstein, and Robert Weinstein not otherwise identified in requests (m), (n), (p), and (q) above.

u) All documents and communications concerning any loans from Debtors to any current or former employee of the Debtors or current or former Representative of the Board of Representatives.

v) All documents and communications concerning any of the Debtors' monies that were used by and for the personal benefit of David Glasser, Harvey Weinstein, and Robert Weinstein that were subsequently repaid to the Debtors.

w) All documents related to or detailing participation rights (or other interests) held or owed to David Glasser, Harvey Weinstein, and Robert Weinstein.

### (3) EMPLOYMENT WITH DEBTORS AND ROLE AS PRESIDENT / COO

x)  All documents and communications concerning the Debtors' hiring and employment of David Glasser, including the termination of David Glasser's employment.

y)  All documents and communications concerning David Glasser's employment agreements with the Debtors, including the negotiation of such agreements.

z)  All documents and communications concerning any of the Debtors' books and records relating to David Glasser, including David Glasser's employment and personnel files.

aa) All documents and communications concerning David Glasser's notice of termination of his employment on or around July 2015 and subsequent decision on or around September 2015 to continue his employment at The Weinstein Company, including all communications between David Glasser and DreamWorks.

bb) All communications between David Glasser and Roy Ageloff

cc) All documents of the Debtors in David Glasser's possession, custody or control, including any documents (originals or copies) constituting all or any portion of Harvey Weinstein's personnel or employee file.

dd) All communications since October 2017, between David Glasser and any current or former employee of the Debtors.

ee) All communications since October 2017 between David Glasser and any current or former Representative of the Board of Representatives of the Debtors.

ff)  All communications since October 2017 between David Glasser and any person concerning any current or former Representative of the Board of Representatives of the Debtors.

gg) All documents and communications concerning Harvey Weinstein's employment agreements with the Debtors, including the negotiation of such agreements.

hh) All documents and communications concerning the Debtors' books and records relating to Harvey Weinstein, including Harvey Weinstein's employment and personnel files.

ii)  All documents and communications concerning Robert Weinstein's employment agreements with the Debtors, including the negotiation of such agreements.

10

jj) All documents and communications concerning the Debtors' books and records relating to Robert Weinstein, including Robert Weinstein's employment and personnel files.

kk) All documents and communications concerning insurance and risk management structures, including all insurance policies, insurance applications and claims submitted to the Debtors' insurers (including the Debtors' Directors and Officers insurance policies, employment practice liability insurance policies and general liability policies).

ll) All documents and communications concerning claims of David Glasser against the Debtors.

## (4) ABUSE ALLEGATIONS

mm)  All documents and communications concerning the allegations set forth in the cases entitled:

o   People of the State of New York v. Harvey Weinstein (New York Supreme Court, Criminal Term, Case No. 02335-2018)

o   State of New York v. The Weinstein Company LLC, The Weinstein Company Holdings LLC, Harvey Weinstein and Robert Weinstein (New York Supreme Court, Index No. 450293/2018);

o   Louisette Geiss, Katherine Kendall, Zoe Brock, Sarah Ann Thomas (aka Sarah Ann Masse), Melissa Sagemiller and Nannette Klatt v. The Weinstein Company Holdings, LLC, Miramax, LLC, Miramax Film NY, LLC, Harvey Weinstein, Robert Weinstein, Dirk Ziff, Tim Sanroff, Marc Lasry, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, Paul Tuddor Jones, Jeff Sackman, James Dolan, Miramax Does 1-10 and John Does 1-50 (US District Court for the Southern District of New York, Case No 7-CV-09554);

o   Kadian Noble v. Harvey Weinstein, Bob Weinstein and The Weinstein Company, LLC (US District Court for the Southern District of New York, Case No. 1:17-cv-09260);

o   Sandeep Rehal v. Harvey Weinstein, The Weinstein Company LLC, The Weinstein Company Holdings LLC, Robert Weinstein and Frank Gill (New York Supreme Court, Index No. 151738/2018;

o   Alexandra Canosa v. Dirk Ziff, Tim Sarnoff, Marc Lasry, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, the Weinstein Company Holdings, LLC, Harvey Weinstein and Robert Weinstein New York Supreme Court, Index No. 161254/2018);

o Jane Doe v. The Weinstein Company LLC, The Weinstein Company Holdings LLC and Harvey Weinstein (Los Angeles County Superior Court. Case No. BC683411);

o Dominque Huett v. The Weinstein Company LLC (Los Angeles County Superior Court BC680869);

o Federal Insurance Company, Chubb Indemnity Insurance Company, Vigilant Insurance Company, Pacific Indemnity Company and Great Northern Insurance Company v. Harvey Weinstein;

o ABC v. The Weinstein Company (UK) Ltd., The Weinstein Company LLC, Harvey Weinstein (High Court of Justice, Queen's Bench Division, Claim No. HQ17P04249);

o Carroll v. The Weinstein Company LLC, The Weinstein Company (UK) Ltd., Harvey Weinstein, Robert Weinstein, David Glasser, Lance Maerov, Richard Koenigsberg, Tarak Ben Ammar, Dirk Ziff, Tim Sarnoff, Marc Lasry, Paul Tudor Jones, Jeff Sackman, James Dolan (Central London Employment Tribunal);

o Tensor Law P.C. o/b/o Paz de la Huerta v. Michael F. Rubin, Harvey Weinstein, The Weinstein Company LLC, K2 Intelligence LLC, Linda Fairstein, BC Strategy UK LTD, and Does 1-50 (C.D. Cal., Case No. 2:18-cv-01490); and

nn) All documents and communications concerning any transfers or agreements between any person associated with the Debtors (including any employee, advisor or Representative of the Board of Representatives of the Debtors) and any person arising from allegations of sexual or non-sexual abuse, harassment, sexual or non-sexual assault or physical or emotional injury, including any non-disclosure agreements or settlement agreements with any alleged victims of such misconduct.

oo) All documents and communications concerning any transfers between the Debtors and any person arising from allegations of sexual or non-sexual abuse, harassment, sexual or non-sexual assault or physical or emotional injury.

pp) All communications between David Glasser and any person concerning any investigation, including any internal, civil or governmental investigation, arising from the allegations against Harvey Weinstein.

qq) All communications between David Glasser and any person concerning the investigation and lawsuit of the Attorney General of the State of New York arising from the allegations against Harvey Weinstein, including during February 2018.

rr) All communications between David Glasser and any private security agency, including with Black Cube and Kroll.

ss) All documents and communications concerning the Debtors' code of conduct and any alleged violations thereof.

tt) All documents and communications concerning any complaint or allegation of misconduct of any kind throughout David Glasser's employment with the Debtors, including such communications with any human resources personnel, current or former employee or current or former Representative of the Board of Representatives.

(5) OTHER

uu) Documents sufficient to indicate all entities related to, controlled by, or affiliated with David Glasser.

# **EXHIBIT B**

**Certification of Compliance with Local Rule 2004-1**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS LLC., *et al.*, [1] | Case No. 18-10601 (MFW) |
| | Jointly Administered |
| Debtors. | |

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1 IN CONNECTION WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING PRODUCTION OF DOCUMENTS AND MATERIALS**

I, Colin R. Robinson, hereby certify as follows:

1.      I submit this certification as counsel to the Official Committee of Unsecured Creditors (the "Committee") in accordance with Rule 2004-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") in connection with the above-captioned motion (the "Motion") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]   The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

2.      Prior to the filing of the Motion, on July 20, 2018, counsel to the Committee, Alan J. Kornfeld and Steven W. Golden, conferred with Eve Wagner, who advised that she was counsel to David Glasser in other matters, but could not yet confirm whether she was representing Mr. Glasser with respect to the Motion.  Prior to this conversation, on July 18, 2018, Committee counsel sent the proposed document requests and deposition to topics to Ms. Wagner by email.  During the July 20 conversation, Mr. Kornfeld informed Ms. Wagner that the Committee would file the Motion on Monday, July 23, 2018, and invited further meet and confers with Mr. Glasser's counsel.

3.      Subsequent to the July 20 conversation, Ms. Wagner sent a follow up e-mail, stating that Mr. Glasser objected to the Committee filing the Motion.  Ms. Wagner asserted that the July 20 conversation had not been a "meet and confer."  Ms. Wagner further stated that she had not been retained by Mr. Glasser as counsel with respect to the Motion.  Committee counsel responded to Ms. Wagner by email on July 21, 2018, and assert that the July 20 conversation did constitute an attempt to meet and confer in good faith with the only known counsel to Mr. Glasser.  Ms. Wagner was further informed that the Committee would wait to file the Motion until Tuesday, July 24, 2018.  Ms. Wagner was invited to have whoever was representing Mr. Glasser in connection with the Motion, or Mr. Glasser himself if he was not represented, contact Committee counsel for a further meet and confer.

4.      On the evening of July 23, 2018, Lewis Landau sent a reply email stating that he had been retained to represent Mr. Glasser with respect to the Motion.  In his email, Mr. Landau made various baseless accusations concerning the Committee's intentions behind filing

the Motion and the Committee's good faith in engaging in the meet and confer process.  Mr.

Kornfeld replied to Mr. Landau's email on July 23, 2018, expressing the Committee's

disagreement with the points he raised and inviting a further discussion to consensually resolve

the relief sought in the Motion the next day.

5.     A follow-up telephonic conversation took place with Mr. Landau on the

morning of July 24, 2018.  On the call, Mr. Landau stated that he was unaware how many, if any,

documents requested by the Motion that Mr. Glasser had in his possession.  Mr. Kornfeld asked

Mr. Landau how long he proposed for Mr. Glasser to have to produce the documents requested

by the Motion, to which Mr. Landau responded six months.  Mr. Kornfeld explained that such

lengthy period of time was not acceptable to the Committee, but that the Committee remained

willing to work with Mr. Glasser on a reasonable production schedule that was proportionate to

the amount of responsive documents in his possession.  Mr. Kornfeld explained to Mr. Landau

that the Committee intended to move forward with filing the Motion, to which he strenuously

objected, taking the position (with which the Committee disagrees) that the Committee did not

attempt to meet and confer with counsel to Mr. Glasser.  Mr. Kornfeld informed Mr. Glasser that

we welcomed further discussions concerning the Motion at any time.

6.     After the July 24, 2018 meet and confer call, Mr. Kornfeld sent a follow

up e-mail to Mr. Landau stating that the Committee would appreciate knowing whether Mr.

Glasser has any responsive documents to produce and further reiterating that six months was not

an acceptable period of time for production.  Mr. Kornfeld subsequently called Mr. Landau and

informed him that the Committee would not file the Motion until July 31, 2018, so it could be set

for hearing on August 14, 2018, and suggested that the Committee and Mr. Glasser attempt to come to a consensual resolution. Upon information and belief, Mr. Landau agreed to talk with his client and respond to the Committee within several days.

7.      On July 29, 2018, having not heard from Mr. Landau, Mr. Kornfeld sent an email to Mr. Landau, attaching the revised documents and deposition topics and proposing production of documents within four weeks of the entry of an order on the Motion. Mr. Kornfeld also invited a further telephone call on July 30. Mr. Landau responded to the email on July 30, 2018 by continuing to object to the Committee's filing of the Motion and stating that he was unable to confer on July 30. Mr. Landau reiterated that his client contended that the Committee had not complied with the Local Rules' meet and confer requirement. On July 30, 2018, Steven W. Golden replied to Mr. Landau's email, requesting a time to confer further on July 31.

8.      Mr. Landau replied to the July 30 email on July 31, 2018, in which he made baseless accusations of deception and continued to state that the Committee had not met the requirements of Local Rule 2004-1. Moreover, Mr. Landau did not respond to requests for a further meet-and-confer telephone call as requested.

9.      In sum, the Committee's attempted meet and confer process with Mr. Glasser's counsel took place over the course of thirteen (13) days, with Mr. Landau having been involved as counsel to Mr. Glasser for at least eight (8) of those days. Throughout this process, Committee counsel repeatedly requested from Mr. Glasser's counsel information including (a) whether Mr. Glasser had any responsive documents in his possession; (b) if so, an estimated volume of responsive documents; and (c) if so, a proposed timeline for production of such

documents.  Despite these repeated requests, which took place over the course of nearly two

weeks, Mr. Landau never provided any responses thereto.

Dated: July 31, 2018

By:    */s/ Colin R. Robinson*_____
      Colin R. Robinson

# **EXHIBIT C**

## **Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*, [1] | Case No. 18-10601 (MFW) |
| Debtors. | Jointly Administered **Ref. Docket No. ___** |

**ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING**
**PRODUCTION OF DOCUMENTS AND MATERIALS**
**AND APPEARANCE FOR ORAL EXAMINATION**

Upon consideration of *The Official Committee Of Unsecured Creditors' Motion for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents and Materials* (the "Motion")[2] and any responses thereto; and after a hearing on the Motion; and upon the record thereof; and after due deliberation thereon; and good and sufficient cause existing therefor, it is hereby

**ORDERED** that:

1.    The Motion is granted as set forth herein.

2.    David Glasser is directed to produce all documents to the Committee relating to the topics set forth on the Document Requests attached to the Motion as Exhibit A within thirty (30) days of entry of this Order and shall deliver such documents or other responses to the

---

[1]    The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2]    Capitalized terms not defined herein shall have the meanings set forth in the Motion.

attention of Alan J. Kornfeld and Steven W. Golden, in the manner provided for in Exhibit A to the Motion.

3.     Mr. Glasser shall appear for oral examination regarding the topics set forth in the in Exhibit A to the Motion, such examination to take place at the offices of Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, Suite 1300, Los Angeles, California 90067, or other location on a date set by Committee's counsel.

4.     The Committee's rights are reserved to request additional discovery and/or examination in connection with this matter, including, without limitation, requests based on any information that may be revealed as a result of the examination authorized pursuant to this Order.

5.     This Court retains jurisdiction to resolve any disputes arising under or related to this Order, including any discovery disputes that may arise between or among the parties, and to interpret, implement and enforce the provisions of this Order.

Dated: _____, 2018

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE