## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
                                                            :
In re:                                                      :   Chapter 11
                                                            :
The Weinstein Company Holdings LLC, *et al.*,               :   Case No. 18-10601 (MFW)
                                                            :
      Debtors.[2]                              :   (Jointly Administered)
                                                            :
                                                            :   **Obj. Deadline: August 29, 2018 at 4:00 p.m. (ET)**
                                                            :   **Hr'g Date:  September 5, 2018 at 11:30 a.m. (ET)**
------------------------------------------------------------x

### MOTION OF THE DEBTORS AND LANTERN ENTERTAINMENT, LLC PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF STIPULATION REGARDING THE ASSUMPTION AND ASSIGNMENT OF NETFLIX CONTRACTS

        The Weinstein Company Holdings LLC ("TWCH") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and Lantern Entertainment, LLC (together with its affiliates, "Lantern"), respectfully represent as follows in support of this motion (the "Motion"):

### Relief Requested

        1.      By this Motion, pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 9019 the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors and Lantern request entry of an order authorizing the Debtors to compromise and settle claims pursuant to that certain stipulation (the "Stipulation") between the Debtors, Lantern and Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. (collectively, "Netflix" and, together with the Debtors and Lantern, the "Parties").  A proposed form of order granting the relief requested herein on a final

---

[2] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837).  The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013.  Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein.  A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

basis is annexed hereto as **Exhibit A** (the "<u>Proposed Order</u>").  The Stipulation is annexed to the Proposed Order as **Exhibit 1**.

<u>**Jurisdiction**</u>

2.       The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtors and Lantern consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory bases for the relief requested herein are Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

<u>**Background**</u>

4.       Prior to the Petition Date (as defined below), the Debtors and Netflix entered into certain Netflix Contracts (as defined below) that provide for, among other things, the production, development, and/or licensing of film and television content for Netflix's online streaming services.

5.       On March 19, 2018 (the "<u>Petition Date</u>"), the Debtors commenced these voluntary Chapter 11 Cases in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

6.       On March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B)*

4

*Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve,*

*Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of*

*Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F)*

*Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets*

*Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption*

*and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief*

[Docket No. 8].

7.      On April 6, 2018, the Court entered the *Order (I) (A) Approving Bidding*

*Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse*

*Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of*

*the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale*

*Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related*

*Relief* (the "Bid Procedures Order") [Docket No. 190].

8.      On April 13, 2018, the Debtors filed the *Notice of Potential Assumption and*

*Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "April 13

Notice") [Docket No. 216], which attached an exhibit listing certain contracts and leases that the

Debtors may potentially assume and assign as part of the sale contemplated by the Bid

Procedures Order (the "Sale"), together with associated asserted cure amounts.  The April 13

Notice included certain contracts to which Netflix is a counter-party.

9.      On April 20, 2018, the Debtors filed the *Notice of Supplemental Potential*

*Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the

"April 20 Notice") [Docket No. 282], which attached an exhibit listing certain additional

contracts and leases that the Debtors may potentially assume and assign as part of the Sale,

RLF1 19856624V.1

together with associated asserted cure amounts.  The April 20 Notice included certain contracts to which Netflix is a counter-party.

10.     On April 27, 2018, the Debtors filed the *Notice of Second Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "April 27 Notice") [Docket No. 482], which attached an exhibit listing certain additional contracts and leases that the Debtors may potentially assume and assign as part of the Sale, together with associated asserted cure amounts.  The April 27 Notice included certain contracts to which Netflix is a counter-party.

11.     On April 30, 2018, Netflix filed its *Limited Objection and Reservation of Rights of Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. to Assumption and Assignment of Certain Contracts to the Stalking Horse Bidder* (the "Limited Objection") [Docket No. 517].

12.     On May 7, 2018, Netflix filed its *Supplemental Limited Objection and Reservation of Rights of Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. to Assumption and Assignment of Certain Contracts to the Stalking Horse Bidder* (the "Supplemental Objection" and, together with the Limited Objection, the "Netflix Objections") [Docket No. 819].

13.     On May 9, 2018, the Court entered its *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* (the "Sale Order") [Docket No. 846], which *inter alia* approved the sale of substantially all of the Debtors' assets to Lantern.

14.    On May 10, 2018, the Debtors filed the *Notice of Final List of Potentially*

*Assumed Contracts and Leases* (the "May 10 Notice") [Docket No. 860], which attached an

exhibit listing certain contracts and leases that the Debtors may potentially assume and assign as

part of the Sale, together with associated asserted cure amounts.  The May 10 Notice included

certain contracts to which Netflix is a counter-party.

15.    On July 11, 2018, the Court entered its *Order Approving Amendment to Asset*

*Purchase Agreement Entered Into By and Between the Debtors and Lantern Entertainment LLC*

[Docket No. 1220].

16.    The Sale transactions closed on July 13, 2018 [Docket No. 1247].

### The Settlement Stipulation

17.    In order to avoid the burden of expense associated with litigation related to the

Netflix Objections, the Parties engaged in good faith settlement negotiations and agreed upon the

terms set forth below to resolve all outstanding disputes relating to the Netflix Contracts.

Accordingly, on July 17, 2018, the Debtors filed the *Certification of Counsel Regarding Order*

*Approving Stipulation Regarding Assumption and Assignment of Netflix Contracts* (the

"Certification of Counsel") [Docket No. 1246], which provided a proposed order approving the

Stipulation, a true and correct copy of which was attached to the proposed order.  Thereafter, the

Debtors and Lantern received certain informal objections to the Certification of Counsel.

Accordingly, and at the request of certain of the parties that raised informal objections, the

Debtors and Lantern have filed this Motion for approval of the Stipulation.

18.    Material terms of the Stipulation include:[3]

i.    Netflix consents to the assumption by the Debtors and assignment to Lantern of
      the contracts to which Netflix is a party that are set forth in the April 13 Notice,

---

[3]    This summary of the Stipulation is qualified in its entirety by reference to the provisions of the Stipulation.

the April 20 Notice, the April 27 Notice, and the May 10 Notice (collectively, the "Netflix Contracts") in connection with the Sale and subject in all respects to the terms and conditions set forth in the Netflix Contracts and this Stipulation.

ii.     The Debtors and Lantern agree that all output periods and similar production or development periods under the Netflix Contracts have expired or are terminated as of no later than July 11, 2018, including, but not limited to, (a) the "Output Period" as defined in that certain License Agreement for Internet Transmission No. 4, dated as of August 12, 2013, by and between Netflix, Inc. and The Weinstein Company, LLC, as amended from time to time ("Output Agreement No. 4"); and (b) the "Output Period" as defined in that certain License Agreement for Internet Transmission, dated as of July 24, 2014, by and between Netflx, Inc. and The Weinstein Company LLC, as amended from time to time.  Netflix shall have no obligation to accept delivery or pay any amount under any Netflix Contract with respect to motion pictures, television shows, or any other content that as of July 11, 2018 had not been delivered by the Debtors and accepted by Netflix, including without limitation Season 3 of the "Scream" television series; *provided that* Netflix shall accept delivery of (a) Season 2 of the "Spy Kids" animated children's television series in accordance with the terms and conditions set forth in that certain License Agreement, dated as of April 11, 2016, by and between Netflix, Inc. and Weinstein Television LLC and (b) "Chronicles of an Escape" in accordance with the terms and conditions set forth in Amendment #2, dated as of October 3, 2012, and Amendment #9, dated as of ___, 2018, to that certain License Agreement for Internet Transmission No. 1, dated as of January 23, 2012.

iii.    Netflix agrees to waive that certain $326,000 audit claim in respect of that certain "Confidential Crouching Tiger Hidden Dragon:  The Green Legend Term Sheet," dated as of August 22, 2014, by and between Netflix Studios, LLC and CTHD2 LLC, as amended from time to time.

iv.     As set forth in it the Supplemental Objection, Netflix withheld $1,600,000 (the "Withheld Funds") from license fees otherwise due to the Debtors on account of the Peaky Blinders Dispute (as defined therein).  Upon (i) receipt by Netflix of a joint instruction from Lantern and Endemol Shine (as defined in the Supplemental Objection) or (ii) a final non-appealable unstayed order being entered by a Court of competent jurisdiction resolving the Peaky Blinders Dispute in favor of  the Debtors and/or Lantern, such that the agreement between the Debtors and Endemol Shine that Endemol Shine contends was terminated is assumed and assigned to Lantern and Endemol Shine receives all the license fees on account of Peaky Blinders, then Netflix shall remit the Withheld Funds to Lantern or pursuant to the terms of the joint instruction, as applicable, in each case, at the same time the next-scheduled payment of license fees otherwise due under the Netflix Contracts to Lantern and Lantern shall perform its obligations with respect to Peaky Blinders under the assumed and assigned Output Agreement No. 4, including without limitation Amendment #1.  In the event the Peaky Blinders Dispute is not resolved favorably to the Debtors and/or Lantern, as applicable,

then Netflix will cooperate with Lantern and Endemol Shine to determine the correct recipient of the Withheld Funds, it being understood that the purpose of the withholding was to protect Netflix from the risk of either being obligated to pay both Endemol Shine and the Debtors for the same license period or of not receiving the full benefit of the license to which it is entitled in consideration of the license fees it agreed to pay for such license.

v.      The Netflix Objections will be deemed withdrawn by Netflix upon the effective date of the Stipulation.

vi.     Netflix agreed to execute a Notice of Assignment and Irrevocable Instructions (attached to the Stipulation), and subsequently agreed that it would be effective provided the Stipulation was approved by the Court on or before September 6, 2018.

19.     The complete terms of the settlement are set out in the Stipulation annexed to the Proposed Order as Exhibit 1.

### Basis for Relief Requested

20.     Bankruptcy Rule 9019(a) provides, in relevant part, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *E.g.*, *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005).  The standard for approval of a proposed compromise is well established – a court should approve a compromise where it "is fair, reasonable, and in the interest of the estate." *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)); *see Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).

21.     When considering the best interest of the estate, the court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.  In striking this balance, the court should consider: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3)

9

Case 18-10601-MFW    Doc 1350    Filed 08/13/18    Page 8 of 11

the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors. *Id.*

22.      The court does not have to be convinced that the settlement is the best possible compromise; rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). A court will normally accept the judgment of the movant as long as a legitimate business justification exists. *E.g.*, *Martin*, 91 F.3d at 395.

23.      The compromise embodied in the Stipulation falls well within the range of reasonableness. The Stipulation allows the Debtors to avoid the associated costs of litigating the Netflix Objections, as well as its risks and distractions that would accompany such litigation, and assume and assign the Netflix Contracts to Lantern on a commercially reasonable basis. The Debtors believe that such litigation would be complex and protracted, and that the expense of such litigation would reduce the amount of the assets that could otherwise be distributed by the Debtors' estates to their creditors. Moreover, pursuant to the terms of the Stipulation, Netflix has agreed to waive certain audit claims that might otherwise be asserted against the Debtors' estates.   Accordingly, the Debtors believe that the terms of the Stipulation are fair, equitable, and in the best interest of the Debtors' estates and should therefore be approved by the Court.

24.      To the extent that Bankruptcy Code section 363 is implicated in connection with the compromise embodied in the Stipulation, the Debtors seek authority to execute and perform the obligations thereunder. The Debtors submit that the terms of the Stipulation have a sound business purpose and represent the exercise of sound business judgment for the reasons set forth herein. Accordingly, any actions required to effectuate the terms of the Stipulation should be authorized and approved pursuant to Bankruptcy Code section 363(b). *See In re Lionel Corp.*,

RLF1 19856624V.1

722 F. 2d 1063, 1071 (2d Cir. 1983); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

25.     Finally, authorizing the Debtors to enter into and effectuate the terms of the Stipulation is well within the equitable powers of this Court.  *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); *see also Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

26.     Accordingly, the Stipulation should be approved under Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

**<u>Notice</u>**

27.     The Debtors and Lantern will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the DIP Agent and the Pre-Petition Agent; (iv) counsel to Lantern; (v) the New York Attorney General and the California Attorney General; (vi) the Office of the United States Attorney for the District of Delaware; (vii) counsel to Netflix; and (viii) all parties that have requested service of notices pursuant to Bankruptcy Rule 2002.  Accordingly, the Debtors and Lantern submit that no other or further notice is necessary.  A copy of the Motion is also available on the Debtors' case website at http://dm.epiq11.com/twc. The Debtors and Lantern respectfully submit that such notice is sufficient under the circumstances.

11

## **No Prior Request**

28.     No previous request for the relief sought herein has been made by the Debtors and

Lantern to this or any other court.

[Remainder of page intentionally blank]

## Conclusion

WHEREFORE the Debtors and Lantern respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just, proper and equitable.

Dated: August 13, 2018
        Wilmington, Delaware

| | |
|---|---|
| */s/ David T. Queroli* | */s/ Meredith A. Lahaie* |
| **RICHARDS, LAYTON & FINGER, P.A.** | **PEPPER HAMILTON LLP** |
| Mark D. Collins (No. 2981) | David B. Stratton, Esq. (No. 960) |
| Russell C. Silberglied (No. 3462) | Evelyn J. Meltzer, Esq. (No. 4581) |
| Paul N. Heath (No. 3704) | Hercules Plaza, Suite 5100 |
| Zachary I. Shapiro (No. 5103) | 1313 N. Market Street |
| Brett M. Haywood (No. 6166) | Wilmington, DE 19801 |
| David T. Queroli (No. 6318) | Telephone: (302) 777-6500 |
| One Rodney Square | Email: stratton@pepperlaw.com |
| 920 North King Street |        meltzere@pepperlaw.com |
| Wilmington, DE 19801 | |
| Telephone:    (302) 651 7700 | |
| Facsimile:     (302) 651-7701 | |
| | |
| **- and -** | - and - |
| | |
| **CRAVATH, SWAINE & MOORE LLP** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| Paul H. Zumbro (admitted *pro hac vice*) | Abid Qureshi, Esq. (admitted *pro hac vice*) |
| George E. Zobitz (admitted *pro hac vice*) | Meredith A. Lahaie, Esq. (admitted *pro hac vice*) |
| Karin A. DeMasi (admitted *pro hac vice*) | Michael S. Stamer, Esq. (admitted *pro hac vice*) |
| Worldwide Plaza | One Bryant Park |
| 825 Eighth Avenue | Bank Of America Tower |
| New York, NY 10019 | New York, NY 10036 |
| Telephone: (212) 474-1000 | Email: aqureshi@akingump.com |
| Facsimile: (212) 474-3700 |        mstamer@akingump.com |
| |        mlahaie@akingump.com |
| *Attorneys for the Debtors and Debtors in Possession* | |
| | *Attorneys for Lantern Entertainment, LLC* |