IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------- x
: 
In re : Chapter 11
:
THE WEINSTEIN COMPANY HOLDINGS : Case No. 18-10601 (MFW)
LLC, *et al.*, :
:
Debtors.[1] : Jointly Administered
:
: **Hearing Date: September 5, 2018 at 11:30 a m. (ET)**
: **Objection Deadline: August 29, 2018 at 4:00 p m. (ET)**
: **Related Doc. Nos. 1246, 1350**
:
---------------------------------------------------------------- x

### OBJECTION OF VIACOM INTERNATIONAL INC. TO SETTLEMENT AGREEMENT AMONG THE DEBTORS, LANTERN AND NETFLIX

Viacom International Inc. and its controlled affiliates (collectively, "Viacom"), by and through their undersigned counsel, hereby file this objection (this "Objection") to the *Motion of the Debtors and Lantern Entertainment, LLC Pursuant to Fed. R. Bankr. P. 9019 for Approval of Stipulation Regarding the Assumption and Assignment of Netflix Contracts* (the "Motion") [Docket No. 1350].[2] In support of this Objection, Viacom respectfully states as follows:

### PRELIMINARY STATEMENT

1. Viacom holds unsecured claims against the Debtors' estates in an aggregate amount in excess of $50 million, including claims for the misappropriation and conversion of $6 million that was specifically earmarked for certain specified production costs. As a result, Viacom holds the largest (or one of the largest) commercial claims against the estates and asserts

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

this Objection both as a secured creditor with a specific interest in the asset proposed to be abandoned by the Debtors and as an unsecured creditor that will be substantially harmed (along with all other unsecured creditors) by the proposed settlement stipulation (the "Stipulation") among the Debtors, Lantern Entertainment, LLC ("Lantern") and Netflix Global LLC, Netflix International B.V., Netflix Studios LLC and Netflix, Inc. (collectively, "Netflix").

2. An integral part of the Stipulation is the abandonment by the Debtors for no consideration of their rights under a contract with Netflix pursuant to which Netflix agreed to pay in excess of ▌▌▌▌▌▌ for certain rights to Season 3 of the television show "Scream". Viacom has a valid perfected security interest in the Debtors' rights under the Scream contract that secures in excess of $9 million on account of funds advanced by Viacom to the Debtors in December 2017 on an emergency basis to enable them to meet payroll and fund their share of production costs for Scream Season 3 prior to the chapter 11 filings.

3. Since Viacom would be entitled to receive the proceeds of the Scream contract to repay its secured claim, Lantern (and therefore the Debtors) had no incentive to require Netflix, as part of the settlement, to honor its obligations under the Scream contract. The Debtors (for the benefit of Lantern) therefore agreed to release Netflix from its obligations under the Scream contract and, in return, Netflix agreed to honor other contracts, the proceeds of which will go directly to Lantern.

4. The Debtors fail to disclose that approval of the settlement will (i) increase Viacom's unsecured claim against the Debtors' estates by more than $9 million, significantly diluting the claims of all unsecured creditors, and (ii) result in Lantern receiving millions of dollars in licensing fees from Netflix. The net result of the proposed settlement is a huge windfall for Lantern at the expense of Viacom, the Debtors' estates and unsecured creditors.

5. The Debtors have offered no good justification for the Stipulation and have woefully failed to carry their burden of demonstrating that the proposed settlement is in the best interests of the Debtors and their creditors. Accordingly, the Motion should be denied.

## BACKGROUND

### A. The Chapter 11 Cases

6. On March 19, 2018 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

7. The Debtors are continuing to operate and manage their properties and assets as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the chapter 11 cases.

8. On March 28, 2018, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors [Docket No. 122].

9. The factual background relating to the commencement of the chapter 11 cases is set forth in detail in the *Declaration of Robert Del Genio in Support of First Day Relief* [Docket No. 7].

### B. The Sale Process

10. On March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets*

3

*Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* seeking approval of key dates, times and procedures related to the sale of all or substantially all of their assets (the "Sale") to Lantern [Docket No. 8].

11. On April 6, 2018, the Court entered the *Order (I) (A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief* establishing, among other things, bidding procedures for the Sale and procedures for counterparties to object to the proposed assumption and assignment of contracts and leases in connection with the Sale [Docket No. 190].

12. On May 9, 2018, the Court entered the *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* approving the Sale to Lantern [Docket No. 846].

13. On July 11, 2018, the Court entered the *Order Approving Amendment to Asset Purchase Agreement Entered Into By and Between the Debtors and Lantern Entertainment LLC* [Docket No. 1220] approving certain amendments to the documentation evidencing the Sale.

14. On July 13, 2018, the Sale was consummated [Docket No. 1247].

### C. Viacom's Security Interest in the Scream Agreement

15. Viacom International Inc. is a global media company. Through its Viacom Media Networks division ("VMN"), Viacom provides high-quality entertainment content, services and related branded products for consumers in targeted demographics attractive to advertisers, content distributors and retailers. VMN's key brands are Nickelodeon, Nick Jr., MTV, BET, Comedy Central and The Paramount Network f/k/a Spike TV. Viacom is (or was) a party to more than 50 agreements with Debtors Weinstein Television LLC ("WTV") and The Weinstein Company LLC ("TWC").

16. The Viacom agreements include certain production, license and distribution agreements for original scripted television series pursuant to which, among other things, WTV provided production services and VMN was the licensee of distribution and other exploitation rights. One such agreement is related to Scream. Specifically, VMN and On-Site Productions, Inc., a subsidiary of Viacom ("OSPI"), on the one hand, and WTV (as successor in interest to TWC), on the other hand, are parties to a certain letter agreement dated March 7, 2013 (as amended, the "Scream Agreement") pursuant to which WTV developed and produced Scream for the MTV network.

17. The Scream Agreement provides consecutive options for OSPI to order up to five seasons of Scream. Pursuant to the Scream Agreement, OSPI exercised options for three seasons of Scream. Scream Season 3 began production in 2017 and is scheduled to air in October 2018.

18. As is well documented, the Debtors began to experience cash flow issues in the fall of 2017, which resulted in WTV defaulting on its obligations to fund production of various television programs, including Scream.

19. At the Debtors' request, pursuant to a series of funding letters entered into between November 2017 and January 2018, VMN advanced more than $30 million in connection with the production of Scream Season 3 and the television programs entitled "Yellowstone" and "Waco" so that WTV could, among other things, make payroll and continue timely production of the shows. As security for repayment of the advances made by VMN on behalf of WTV, WTV pledged certain assets and rights to VMN.

20. With respect to Scream Season 3, VMN and OSPI, on the one hand, and WTV, on the other hand, entered into a certain letter agreement dated December 5, 2017 (the "Scream Funding Letter") pursuant to which VMN advanced over $8.9 million on behalf of WTV to Next Take Productions, Inc., the Scream production company, so that WTV could make payroll and buy out certain international distribution rights for Scream Season 3. WTV was obligated to repay the advances on or before December 30, 2017 (the "Maturity Date"). WTV failed to repay the obligations by the Maturity Date and the entire outstanding amount continues to accrue interest at the rate of 10% per annum plus VMN's reasonable costs and expenses (including attorney's fees) in accordance with the terms of the Scream Funding Letter. Accordingly, VMN's secured claim is currently well in excess of $9 million.

21. As security for repayment of the advances made by VMN on behalf of WTV and WTV's other obligations under the Scream Agreement and the Scream Funding Letter, WTV granted VMN a security interest in, among other things, all of WTV's right, title and interest in and to that certain Amendment No. 2 ("Amendment No. 2") to the License Agreement for Internet Transmission No. 4 (as amended, "Output Agreement No. 4") with Netflix for the international distribution of Scream Season 3. VMN duly perfected its security interest by filing a UCC-1 financing statement with the Delaware Secretary of State.

Case 18-10601-MFW    Doc 1416    Filed 08/29/18    Page 7 of 12

22. Amendment No. 2 requires Netflix to pay the Debtors a ▇▇▇ license fee for ▇▇▇ Scream Season 3 ▇▇▇, meaning that if Netflix were required to accept Scream Season 3, there would be ▇▇▇ ▇▇▇ (*See* Amendment No. 2 § 4.)



**D. The Netflix Objections**

23. On April 30, 2018, Netflix filed a *Limited Objection and Reservation of Rights of Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. to Assumption and Assignment of Certain Contracts to the Stalking Horse Bidder* (the "Initial Netflix Objection") [Docket No. 517].

24. In the Initial Netflix Objection, Netflix argued, among other things, that Netflix delivered notices to the Debtors validly terminating the output periods under certain Netflix Contracts (including Output Agreement No. 4) based on "key man" provisions tied to Harvey Weinstein and Robert Weinstein prior to the Petition Date. (Initial Netflix Objection ¶¶ 12–13.) Netflix also asserted that such Netflix Contracts are personal services contracts that are not subject to assumption or assignment to Lantern under section 365(c) of the Bankruptcy Code. (*Id.* ¶ 15.)

25. On May 7, 2018, Netflix filed its *Supplemental Limited Objection and Reservation of Rights of Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. to Assumption and Assignment of Certain Contracts to the Stalking Horse Bidder* (the "Supplemental Netflix Objection" and, together with the Initial Netflix Objection, the "Netflix Objections") [Docket No. 819].

7

### E. The Certificate of Counsel and Settlement with Netflix

26. On July 17, 2018, the Debtors filed the *Certification of Counsel Regarding Order Approving Stipulation Regarding Assumption and Assignment of Netflix Contracts* (the "Certification"), which sought entry of an order approving the Stipulation among the Debtors, Lantern and Netflix [Docket No. 1246].

27. In relevant part, the Stipulation provides that, in exchange for Netflix consenting to the assignment of the Netflix Contracts to Lantern and waiving a $326,000 unsecured audit claim related to one of the Netflix Contracts, the Debtors and Lantern agreed that all output periods under the Netflix Contracts (including Output Agreement No. 4) terminated as of July 11, 2018, and, as a result, that Netflix is not required to accept delivery or pay amounts under any Netflix Contract with respect to any content that had not been delivered to and accepted by Netflix prior to July 11, 2018 (with certain exceptions). The most significant content affected is Scream Season 3. Section 4 of the Settlement Agreement provides, in pertinent part:

> Netflix shall have no obligation to accept delivery or pay any amount under any Netflix Contract with respect to motion pictures, television shows, or any other content that as of July 11, 2018 had not been delivered by the Debtors and accepted by Netflix, ***including, without limitation, Season 3 of the "Scream" television series***; *provided that*, Netflix shall accept delivery of (a) Season 2 of the "Spy Kids" animated children's television series . . . and (b) "Chronicles of an Escape" . . . .

((Stipulation ¶ 4) (emphasis added).)

28. The Certification was a procedurally improper and a substantively deficient attempt by the parties to obtain approval of the Stipulation without providing the Court or any interested parties the relevant facts or providing a factual record against which the Court and the

other parties in interest could evaluate the reasonableness of the proposed settlement.[3] Indeed, based on the Certification, no party could have been aware that approval of the settlement would result in over $9 million in additional unsecured claims against the Debtors' estates without any corresponding benefit.

29. On July 18, 2018, Viacom's counsel contacted the Debtors' counsel and informed the Debtors that Viacom was evaluating the Stipulation and asked them to withdraw the Certification and file a proper motion, with an opportunity for Viacom to object. Following discussions among the parties, the Debtors and Lantern filed the Motion on August 13, 2018.

## ARGUMENT

30. Bankruptcy Rule 9019 provides that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). To be approved, the Court must find that a proposed settlement is in the best interests of the debtor's estate and its creditors and is fair and reasonable. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). As demonstrated below, the Stipulation is neither in the best interests of the Debtors' estates or their creditors, nor is it fair or reasonable.

31. The Motion makes the conclusory assertions that the Stipulation is "fair, equitable, and in the best interest of the Debtors' estates" and has "a sound business purpose and represent[s] the exercise of sound business judgment" without disclosing any meaningful information on the economics or the implications of the settlement. (Motion ¶¶ 23–24.)

---

[3] And even if it were proper to seek approval of a settlement by way of Certification of Counsel, the Certification filed here failed to comply with the local rules which require that a Certification of Counsel "state whether the revised or agreed form of order has been reviewed and approved by all the parties affected by the order." Del. Bankr. L.R. 9019-1(a). The Debtors' counsel could not make that representation because they provided no advance notice to Viacom—a party the Debtors knew held a security interest in collateral impaired by the Stipulation.

32. In particular, the Motion lacks any explanation whatsoever with respect to (i) why certain programs, such as Spy Kids and Chronicles of an Escape, are being picked up by Netflix while others, such as Scream Season 3, are being rejected, (ii) whether Netflix is continuing to license, accept delivery of, and/or pay fees for any content under Output Agreement No. 4 other than in connection with Scream Season 3, (iii) whether Netflix has agreed to waive "key man" provisions in any contracts assigned to Lantern (including Output Agreement No. 4),[4] (iv) whether any parties assert security interests in the Debtors' rights under the contracts being assigned to, or rejected by, Netflix as part of the proposed settlement, (v) the aggregate amount of unsecured claims that will be created as a result of the proposed settlement, or (vi) the actual monetary benefits obtained by Lantern as a result of the proposed settlement (including the value of the license fee payments for Spy Kids and Chronicles of an Escape).

33. In support of the Stipulation, the Debtors offer only that the proposed settlement will enable them to avoid the cost of litigating the Netflix Objections and that Netflix has agreed to waive a $326,000 unsecured audit claim. The Debtors summarily characterize the potential litigation with Netflix as "complex and protracted" and argue that the cost of the ligation would reduce the estates' assets. (Motion ¶ 23.) However, the Debtors do not explain why the dispute is complex or why they believe the dispute will be protracted. Further, the audit claim being waived by Netflix is a cure cost which would otherwise be payable by Lantern (not the Debtors), and therefore the waiver of the claim inures to the benefit of Lantern (not the Debtors' estates). (*See* Stipulation ¶¶ 3, 5.)

34. The Debtors offer no other justification to support their "business judgment" and fail to disclose to the Court the adverse effect that the Stipulation, if approved, will have on the

---

[4] The Initial Netflix Objection indicates that at least two Netflix Contracts (including Output Agreement No. 4) contained "key man" provisions tied to Harvey Weinstein and Robert Weinstein. (Initial Netflix Objection ¶¶ 13–14.)

Debtors' estates. In fact, approval of the Stipulation will result in claims against the Debtors' estates that will dwarf the unsubstantiated projected expense of litigation with Netflix and the audit claim to be waived by Netflix.

35.	If the Stipulation is approved, Viacom will lose the benefit of more than ▮▮▮ ▮▮▮ in collateral securing the Debtors' obligations under the Scream Agreement and the Scream Funding Letter, significantly increasing Viacom's unsecured claims against the Debtors' estates. Meanwhile, the estates receive no additional consideration and are saddled with a new unsecured claim in excess of $9 million. As a result, the entire unsecured creditor pool will be materially diluted.

36.	While the Debtors and unsecured creditors receive nothing of value and are harmed by the additional unsecured claim against the estates, Lantern secures an unspecified amount of receivables related to license fees for content accepted by Netflix prior to July 11, 2018.[5] It costs Lantern virtually nothing to secure this income stream because the primary consideration it is using to pay for the settlement consists of the Scream Season 3 contract rights and corresponding cash flow that was previously pledged to Viacom.

37.	Based on the foregoing, the Debtors have failed to carry their burden of establishing that the Stipulation should be approved, and the Motion should, therefore, be denied.

**RESERVATION OF RIGHTS**

38.	Viacom reserves the right to file a further or supplemental objection on any basis. Viacom reserves the right to be heard and to present evidence at any hearing on the Stipulation, including by way of declaration or witness testimony.

---

[5]	Lantern may additionally benefit from a $1.6 million receivable related to the Peaky Blinder Dispute upon the resolution thereof. (*See* Stipulation ¶ 8.)

11

## CONCLUSION

WHEREFORE, Viacom respectfully requests that the Court (i) deny approval of the Stipulation and (ii) grant such other relief as is just

Dated: Wilmington, Delaware
August 29, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Matthew B. Harvey*

Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
Matthew B. Harvey (No. 5186)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 65 b8-3989
Email:  dabbott@mnat.com
    dbutz@mnat.com
    mharvey@mnat.com

-and-

LUSKIN, STERN & EISLER LLP
Michael Luskin*
Richard Stern*
Stephan E. Hornung*
Eleven Times Square
New York, New York 10036
Telephone:  (212) 597-8200
Facsimile:  (212) 974-3205
Email:  luskin@lsellp.com
    stern@lsellp.com
    hornung@lsellp.com

*admitted *pro hac vice*

*Counsel for Viacom International Inc. and its Affiliates*