## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE WEINSTEIN COMPANY | ) | Case No.:  18-10601 (MFW) |
| HOLDINGS LLC, *et al.*, | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline:  August 29, 2018 at 4:00 p.m. (ET)** |
| Debtors. | ) | **Hearing Date:  September 5, 2018 at 11:30 a.m. (ET)** |
| | ) | |
| | ) | **RE:  D.I. 1350** |
| | ) | |

### OBJECTION OF PORTFOLIO FUNDING COMPANY LLC I TO THE MOTION OF THE DEBTORS AND LANTERN ENTERTAINMENT, LLC PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF STIPULATION REGARDING THE ASSUMPTION AND ASSIGNMENT OF NETFLIX CONTRACTS

Portfolio Funding Company LLC I ("***PFC***"), by and through its undersigned counsel, files this objection to the *Motion of the Debtors and Lantern Entertainment, LLC Pursuant to Fed. R. Bankr. P. 9019 for Approval of Stipulation Regarding the Assumption and Assignment of Netflix Contracts* [Docket No. 1350] (the "***Netflix 9019 Motion***").[1]  In support of its objection (this "***Objection***"), PFC respectfully states the following:

### PRELIMINARY STATEMENT

1.     PFC owns intellectual property rights (including, without limitation, copyrights) and other valuable rights in the 191 motion pictures listed on Exhibit A to this Objection (collectively, by whatever name any such motion picture is now or may hereafter become known, the "***PFC Pictures***").[2]  PFC is party to a complex set of licensing and other arrangements relating

---

[1] Capitalized terms used, but not defined, in this Objection shall have the meanings ascribed to such terms in the Netflix 9019 Motion.

[2] PFC's interests in certain of the PFC Pictures were acquired from third parties pursuant to a license of specified distribution rights granted for a limited duration.  However, even after the license period for a particular PFC Picture expires, PFC retains outstanding rights and claims with respect to such motion pictures.

to the PFC Pictures with Debtors The Weinstein Company LLC ("***TWC***") and Weinstein Global Film Corp. ("***WGFC***"), including, without limitation, under the Multi-Picture Distribution Services Agreement, dated as of July 29, 2010, between PFC and TWC (as amended, the "***2010 DSA***").  PFC's contractual and property rights are protected by, among other things, security interests granted to it by TWC and WGFC.

2.      By the Netflix 9019 Motion, TWC seeks to assume and assign the Netflix Contracts, which include purported rights to exploit the PFC Pictures, to Lantern.  However, any such assumption and assignment is improper to the extent that the Netflix Contracts convey rights to exploit any PFC Pictures or any other property interests or rights of PFC.  Under the 2010 DSA, among other things, PFC appointed TWC (subject to certain conditions and limitations, and for a specified period, which expired on January 29, 2015) as sales agent to negotiate and enter into, with PFC as owner and licensor, licenses for third-party licensees (such as Netflix) to exploit the PFC Pictures.  The 2010 DSA did not grant to TWC any license or rights to sub-license PFC's rights in the PFC Pictures.  Upon information and belief, TWC, inappropriately identifying itself as licensor, entered into purported license agreements with Netflix to exploit rights in the PFC Pictures that TWC did not possess.  PFC objects to the Netflix 9019 Motion because the Netflix Contracts, to the extent the rights assigned to Lantern purport to include rights to exploit PFC Pictures, are not property of TWC's estate, and are not subject to conveyance to Lantern (or, by extension, to Netflix).

3.      In addition, if the Debtors take the position that such rights <u>are</u> property of TWC's bankruptcy estate, both the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Third Circuit and District precedent require the Debtors to file an adversary proceeding to determine the nature and extent of their rights in the Netflix Contracts.  PFC objects to the Netflix

9019 Motion, as procedurally improper, to the extent it seeks a determination of the "validity, priority, or extent" of TWC's interest in the Netflix Contracts without providing PFC the due process protections afforded by an adversary proceeding conducted in accordance with the Bankruptcy Rules.

4.      PFC also objects to the Netflix 9019 Motion because it seeks an order approving Lantern's assignment to SunTrust Bank ("**SunTrust**") of all revenues derived from the Netflix Contracts, without excluding revenues derived from the PFC Pictures.  PFC objects because the rights purportedly granted by TWC to Netflix to exploit the PFC Pictures are not property of TWC's bankruptcy estate, so Lantern, as assignee of TWC, has no property interest in such revenues generated under the purported license to assign to SunTrust.  Even if, assuming *arguendo*, the Court finds that TWC has a property interest in the PFC Rights purportedly licensed under the Netflix Contracts, PFC has a valid security interest in TWC's rights as licensor of the PFC Pictures (including, without limitation, the right to receive revenues from the exploitation of these PFC Pictures).  Accordingly, PFC is entitled to receive adequate protection on account of its security interest, and the Netflix Contracts must be assigned to Lantern subject to PFC's security interest in them.

5.      The Court should not approve the relief requested in the Netflix 9019 Motion if the foregoing matters are not addressed.

## BACKGROUND

A.      **Procedural History of the Chapter 11 Cases**

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7.      On March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets,*

*(B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 8] (the "**Sale Motion**").

8.      On April 6, 2018, the Court entered the Bid Procedures Order.

9.      On April 30, 2018, PFC filed the *Limited Objection and Reservation of Rights of Portfolio Funding Company LLC I to the [Sale Motion]* [Docket No. 604] (the "**PFC Sale Objection**.")

10.      On May 9, 2018, the Court entered the Sale Order.  PFC negotiated for the following specific language to be included in the Sale Order, which provided for, without limitation, a reservation of rights as to all matters raised in the PFC Sale Objection.

> Notwithstanding any other provision of this Order other than with respect to the TWC Domestic Collateral, the rights of PFC to assert, without limitation: (i) that any Purchased Assets, or any right, title or interest that the Debtors claim to have in any Purchased Assets (including, without limitation, any Assumed Contracts and Leases) are the property of PFC and not property of the Debtors' estates, (ii) *that the Sellers may not transfer any Purchased Assets (including, without limitation, any Assumed Contracts and Leases) free and clear of PFC's Claims or defenses, (iii) if this Court, following the Contract Assumption Hearing (as defined below) [sic.] orders the Purchased Assets (including, without limitation, any Assumed Contracts and Leases) to be sold free and clear of PFC's Claims or defenses, that (x) PFC is entitled to its allocable portion of the proceeds of the Sale Transaction*, (y) proceeds of the Sale Transaction have been allocated in a manner that does not ascribe an appropriate value to Purchased Assets that are secured by security interests in favor of PFC and (z) pending resolution of such allocation issues, the proceeds of the Sale Transaction should or must be held in escrow and (iv) any other basis for objection to the Sale, the Initial Assumption Notice, the First Supplemental Assumption Notice, the Second Supplemental Assumption Notice or the Assumed Contracts and Leases asserted in the objection filed by PFC [Docket No. 604] (collectively, the "**PFC Objections**") are preserved and shall be addressed at the Contract Assumption Hearing or

such later hearing date as PFC and the Debtors may agree. For the avoidance of doubt, this Court's findings herein with respect to (i) **the authority of the Sellers to transfer the Purchased Assets free and clear of all Claims including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied** and (ii) any other matter addressed in the PFC Objections are not binding on PFC and PFC's rights with respect to the PFC Objections are reserved.

Sale Order, ¶ 58 (emphasis added).

11.     On July 11, 2018, the Court entered its *Order Approving Amendment to Asset Purchase Agreement Entered Into By and Between the Debtors and Lantern Entertainment LLC* [Docket No. 1220].

12.     The Sale transactions closed on July 13, 2018 [Docket No. 1247].

13.     On July 13, 2018, SunTrust, LE Film Distribution LLC ("***LE Film***"), an affiliate of Lantern and borrower under Lantern's credit agreement with SunTrust, and Netflix signed a Notice of Assignment and Irrevocable Instructions (the "***SunTrust NOA***"), pursuant to which, subject to certain exceptions, LE Film assigned to SunTrust its right to receive all monies from time to time owing or due from Netflix to LE Film under the Netflix Contracts.  The SunTrust NOA shall remain valid if the Stipulation is approved by the Court not later than September 6, 2018.  Netflix 9019 Motion, ¶ 18(vi); Stipulation, ¶ 6.

14.     On July 17, 2018, counsel for the Debtors filed the *Certification of Counsel Regarding Order Approving Stipulation Regarding Assumption and Assignment of Netflix Contracts* [Docket No. 1346].  The Debtors and Lantern filed the Netflix 9019 Motion only after PFC, among others, raised informal objections to the Stipulation.

**B.**     **The PFC Agreements with the Debtors and the Netflix Contracts[3]**

15.     Under the 2010 DSA, among other things, PFC appointed TWC (subject to certain conditions and limitations, and for a specified period, which expired on January 29, 2015) as sales agent (not distributor or sub-licensor) to negotiate and enter into, on behalf of PFC, sub-licenses with third party licensees for PFC Pictures.  Under Paragraph 5.b(i) of the 2010 DSA, TWC agreed that, with respect to license agreements entered into on or after the date of the 2010 DSA ("***Post-2010 License Agreements***"), it "shall (and shall cause each other applicable TWC Agent) to draft prospective License Agreements so that (A) [PFC] (or a Licensing Intermediary) is identified as the Licensor and (B) the applicable TWC Agent is identified therein solely in its capacity as agent for such Licensor."

16.     To secure TWC's obligations to PFC under, relating to, or in connection with, among other things, any Post-2010 License Agreement for which TWC served as licensee or direct licensor (the "***Applicable Licenses***"), TWC granted PFC a valid continuing security interest in and copyright mortgage upon, among other things, its interest in the Applicable Licenses (to the extent relating to PFC Pictures) and the proceeds thereof (the "***License Collateral***").

17.     TWC (together with WGFC) granted such security interests and copyright mortgages to PFC pursuant to (a) the Amended and Restated Security Agreement and Mortgage of Copyright, dated as of October 20, 2010, among TWC and WGFC, as grantors, and PFC, as secured party (the "***PFC Security Agreement/Copyright Mortgage***") and (b) the Amended and Restated Copyright Mortgage and Assignment; Power of Attorney, also dated as of October 20,

---

[3] A more detailed discussion of PFC's rights in the PFC Pictures and of PFC's relationship with the Debtors is set forth in the PFC Sale Objection.  Both the PFC Sale Objection and this Objection merely summarize certain of the relevant documents and contractual arrangements between PFC, on the one hand, and TWC and WGFC, on the other hand.  Such summaries are qualified in their entirety by the actual terms of the relevant documents and applicable filings relating thereto.

2010, executed by TWC and WGFC in favor of PFC (the "***PFC Copyright Mortgage/Assignment;***

***POA***" and, together with the PFC Security Agreement/Copyright Mortgage, the "***PFC License***

***Collateral Security Documents***").  Copies of the two PFC License Collateral Security Documents

and the UCC-1 forms are attached to this Objection as Exhibits B, C and D, respectively.

18.     On or around January 23, 2012, TWC and Netflix entered into License Agreement

for Internet Transmission No. 1 ("***License No. 1***").  On October 23, 2012, TWC and Netflix entered

into Amendment No. 1 to License No. 1 ("***Amendment No. 1***"), pursuant to which TWC

(inappropriately identifying itself as licensor and not as sales agent for PFC) purported to grant

Netflix the right to exploit 18 PFC Pictures upon the terms set forth in License No. 1 (as amended

by Amendment No. 1).  Upon information and belief, TWC (again, inappropriately identifying

itself as licensor and not as sales agent) purported to grant Netflix the right to exploit PFC Pictures

under other amendments to License No. 1 and under other Netflix Contracts.[4]

19.     In accordance with its collection rights as a secured creditor under Section 9607(a)

of the New York Uniform Commercial Code, PFC sent Netflix a notice (the "***PFC Account Debtor***

***Notice***") that (a) instructed Netflix to make all license fee payments in respect of PFC Pictures to

a bank account designated by PFC and (b) informed Netflix that PFC is entitled to enforce the

obligations of Netflix and the rights of TWC with respect to, among other things, receipts owed

for Netflix exploiting PFC Pictures under the Netflix Contracts.  A copy of the PFC Account

Debtor Notice is attached to this Objection as Exhibit E.

---

[4] PFC has requested, on multiple occasions, that Lantern provide to PFC copies of the Netflix Contracts that PFC
does not have in its possession, but so far PFC has not received copies of these contracts.  Thus, additional PFC
Pictures may be subject to the same objections as contained herein, and other objections.

**OBJECTION**

A.    **TWC May Not, With Respect to PFC Pictures, Assume the Netflix Contracts and Assign them to Lantern Because the Netflix Contracts are Not Property of TWC's Estate.**

20.    To the extent the Netflix Contracts purport to license rights to exploit PFC Pictures, the Netflix Contracts are not property of TWC's estate and may neither be assumed by the Debtors nor assigned to Lantern.  The plain language of the 2010 DSA clearly confirms that TWC had no right to grant licenses to exploit the PFC Pictures.

21.    A debtor may only sell property of the estate, not property of another party in interest.  "As a general rule, if property is in the debtor's hands as agent, the property or proceeds therefrom are not treated as property of the debtor's estate."  *Rine & Rine Auctioneers v. Douglas Cty. Bank & Tr. Co. (In re Rine & Rine Auctioneers)*, 74 F.3d 854, 857 (8th Cir. 1996); *see also Torkelsen v. Maggio (In re Guild & Gallery Plus)*, 72 F.3d 1171, 1180 (3d Cir. 1996) (painting held by debtor as bailee was not property of the estate).

22.    Under Paragraph 2 of the 2010 DSA, TWC was appointed as "sales agent," not PFC's licensee, sub-licensor or distributor, with respect to Post-2010 License Agreements.  Under Paragraph 5.b(i) of the 2010 DSA, TWC was required to draft Post-2010 License Agreements so that "[PFC] is identified therein as the Licensor and … [TWC] is identified therein solely in its capacity as agent for [PFC]."

23.    The Netflix Contracts are Post-2010 License Agreements because they were executed after the effective date of the 2010 DSA.  Under the terms of the 2010 DSA, TWC was, at most, a sales agent for PFC with respect to the PFC Pictures purportedly licensed to Netflix under the Netflix Contracts.  Therefore, the Netflix Contracts, to the extent they purport to contain

licenses from TWC to Netflix to exploit PFC Pictures, are not property of TWC's estate and may not be assumed by the Debtors or assigned to Lantern.

**B.**     **TWC Must File an Adversary Proceeding to Determine the Nature and Extent of its Rights in the Netflix Contracts.**

24.     If TWC takes the position that it does have a property interest in the PFC Pictures purportedly licensed to Netflix under the Netflix Contracts, it must file an adversary proceeding to determine those rights, because a debtor cannot sell what it <u>may</u> not own without commencing and prosecuting an adversary proceeding. A contested matter, such as the one initiated by the Netflix 9019 Motion, is procedurally improper.

25.     Rule 7001(2) of the Bankruptcy Rules provides that an "adversary proceeding" includes "a proceeding to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). Courts in this district have held that "[a] bankruptcy court may not allow the sale of property as property of the estate without first determining whether the property is property of the estate." *In re Whitehall Jewelers Holdings, Inc.*, 2008 Bankr. LEXIS 2120, at *9 (Bankr. D. Del. July 28, 2008). *See also SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 239 (3d Cir. 2007) (creditor's lien may not be invalidated without commencing an adversary proceeding under Bankruptcy Rule 7001, which was mandatory and established a right to a specific process that had to be afforded); *ASICS Am. Corp. v. Sports Auth. Holdings, Inc. (In re Sports Auth. Holdings, Inc.)*, 2016 U.S. Dist. LEXIS 69542, at *4 (D. Del. May 27, 2016) (debtor's filing of adversary proceeding to establish property rights in consignment goods consistent with Third Circuit precedent).

26.     PFC acknowledges that under Bankruptcy Rules 6006(a) and 9014, a dispute ***respecting the assumption and assignment of executory contracts*** is a contested matter to be determined by motion, not adversary proceeding (emphasis added). 10 COLLIER ON

BANKRUPTCY ¶ 6006.01[6] (16th ed. 2011) (citing *In re Wallace*, 122 B.R. 222, 226 (Bankr. D.N.J. 1990)).  Here, however, Bankruptcy Rules 6006(a) and 9014 do not apply.  PFC, by this Objection, does not object to the 9019 Netflix Motion on assignment and assumption grounds, such as the executory or non-executory nature of the Netflix Contracts, cure amounts or adequate assurance of future performance.

27.    PFC objects on the fundamental basis that the Netflix Contracts, to the extent relating to PFC Pictures, are not property of the estate.  These questions may be resolved only by adversary proceeding.  *See In re Our Alchemy, LLC, No. 16-11596(KG), 2017 Bankr. LEXIS 879*, at *6 (Bankr. D. Del. Mar. 31, 2017) (whether debtor licensee's rejection of film license agreement was a material breach that terminated the license, such that license could not be assumed and assigned by the debtor, required a determination of rights in property that required filing of an adversary proceeding).

28.    Indeed, at the hearing held on August 23, 2018 with respect to Lantern's motion for approval of certain streamlined procedures relating to executory contract disputes [Docket No. 1282], counsel for Lantern acknowledged the distinction between assignment and assumption questions and property ownership questions:

> One of the objectors are [sic.] contending that they are not a party to a contract. It's really receding to determine whether certain contracts are executory or non-executory or whether certain contracts were terminated prepetition.

> In the cases cited by the Gottfried counterparties do not warrant a different result. And that's really the <u>SLW Cap LLC case versus Mansaray-Ruffin</u>. That case really concerns avoidance of liens which are afforded special status in bankruptcy ***and also the <u>Whitehall Jewelers Holdings </u> case which concert [sic.] a dispute over the objecting party's ownership of consigned goods.***

> And these are really not the issues that are presented here. ***Issues of executory versus non-executory that's routinely decided by bankruptcy courts in contested matters*** and we've cited several cases in our reply brief to this point. That's the <u>In re Exide Tech</u> case. Also, <u>In re HQ Global Holdings</u>.

Aug. 23, 2018 Hr'g Tr. 14:3-19 (emphasis added).[5]

29.     Accordingly, by Lantern's own acknowledgment, determination of the rights of PFC and TWC (and, by extension, Lantern) in the Netflix Contracts, which concern a dispute over the objecting party's ownership of an asset, may be resolved only through an adversary proceeding filed by TWC.

**C.    The SunTrust NOA Does Not Apply to the PFC Pictures Because They are Not Property of TWC's Estate.**

30.     Under the SunTrust NOA, LE Film purports to assign to SunTrust the right to collect all revenues received with respect to Netflix Contracts.  This includes revenue derived from the exploitation of PFC Pictures.

31.     For the reasons set forth above, TWC had no right under the 2010 DSA to license PFC Pictures to Netflix as licensor and, consequently, the Netflix Contracts are not property of TWC's estate, to the extent they purport to license PFC Pictures to Netflix.  Therefore, LE Film, as assignee of TWC's rights under the Netflix Contracts, has no property interest in revenues derived from the exploitation of PFC Pictures under the Netflix Contracts to assign to SunTrust. Accordingly, the SunTrust NOA is invalid as to the PFC Pictures.

**D.    If the Court Determines that the Netflix Contracts are Property of TWC's Estate, PFC is Entitled to Adequate Protection of Its Security Interest in the Netflix Contracts**

32.     If contrary to the position set forth above, the Court determines that the Netflix Contracts are property of TWC's estate, including with respect to the PFC Pictures purportedly licensed under the Netflix Contracts, (a) PFC is entitled to adequate protection on account of its security interest in the License Collateral and (b) the Netflix Contracts must be assigned to Lantern subject to PFC's security interests in the License Collateral, which have priority over any security

---

[5] An excerpt of the August 23, 2018 hearing transcript extract is attached to this Objection as <u>Exhibit F</u>.

interest of SunTrust.

33.     Under section 363(e) of the Bankruptcy Code, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court…***shall*** prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e) (emphasis added).  This includes where a debtor's motion is couched in the language of assumption and assignment under section 365 of the Bankruptcy Code but, in fact, impinges on the interests of others in the subject property, such as PFC's security interests in TWC's rights in the Netflix Contracts.  *See In Re Magness*, 972 F.2d 689, 697 (6th Cir. 1992) (trustee's purported assignment of debtor's golf club membership under section 365 that overrode the rights and privileges of other members was use, sale, or lease of property that could be prohibited or conditioned in light of the other members' interest in the property).  PFC objects to the Netflix 9019 Motion because revenues from the Netflix Contracts that pertain to PFC Pictures, in respect of which PFC has a valid security interest, could be diverted to SunTrust pursuant to the SunTrust NOA.

## RESERVATION OF RIGHTS

34.     PFC reserves the right to file a further or supplemental objection on any basis.  PFC further reserves its rights, claims, defenses, and remedies, including, without limitation, all of the rights and protections granted to or reserved to PFC under the Sale Order, the right to amend, modify, or supplement this Objection, to seek discovery, and the right to be heard and to present evidence at any hearing on the Netflix 9019 Motion, including, without limitation, by way of declaration or witness testimony.   PFC also reserves its rights against Netflix, Lantern and any other third party for the inappropriate exploitation of the PFC Pictures and with respect to any other matter.

## **CONCLUSION**

35.     PFC objects to the Netflix 9019 Motion (a) to the extent that TWC purports to assume and assign to Lantern rights to the PFC Pictures purportedly licensed to Netflix under the Netflix Contracts, because such rights are not property of TWC's estate, (b) if TWC takes the position that it does have a property interest in such rights, because TWC must file an adversary proceeding, not a motion, to determine the nature and extent of its rights versus those of PFC, (c) to the extent that the Debtors, Lantern and Netflix purport to include revenues derived from the exploitation of PFC Pictures under the Netflix Contracts in the SunTrust NOA, and (d) if the Court approves the Netflix 9019 Motion, to the extent it does so without providing adequate protection to PFC and providing that the Netflix Contracts are assigned to Lantern subject to PFC's security interest in such License Collateral, with priority over any security interest of SunTrust.

WHEREFORE, PFC reserves its rights with respect to the Netflix 9019 Motion and requests that the Court (a) approve the Netflix 9019 Motion only if it grants the relief requested in this Objection and (b) grant such other relief as the Court deems just and proper.

[*Remainder of page left intentionally blank*]

Dated: August 29, 2018
      Wilmington, Delaware

Respectfully submitted,

**WHITEFORD, TAYLOR & PRESTON LLC**

*/s/ Christopher M. Samis*
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
The Renaissance Centre, Suite 500
405 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 353-4144
Facsimile:  (302) 661-9750
Email: csamis@wtplaw.com
      kgood@wtplaw.com
      astulman@wtplaw.com

  -and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**

David P. Simonds (admitted *pro hac vice*)
Edward J. McNeilly (admitted *pro hac vice*)
1999 Avenue of the Stars
Suite 600
Los Angeles, California 90067
Telephone: (310) 229-1000
Facsimile: (310) 229-1001
Email: dsimonds@akingump.com
      emcneilly@akingump.com

*Counsel to Portfolio Funding Company LLC I*