**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,[1] | Case No. 18-10601 (MFW) |
| Debtors. | (Jointly Administered) |
| | Re D.I. 1372 |
| | **Hrg. Date: Sept. 25, 2018 at 3:00 p.m. (ET)** |
| | **Obj. Deadline: Aug. 31, 2018 at 4:00 p.m. (ET)** |

**HARVEY WEINSTEIN'S OBJECTION TO MOTION OF AI**
**INTERNATIONAL HOLDINGS (BVI) LTD. FOR RELIEF FROM**
**AUTOMATIC STAY AND RELATED RELIEF**

Harvey Weinstein, by and through his undersigned counsel, hereby responds (the "**Response**") to *Motion of AI International Holdings (BVI) Ltd. for Relief from Automatic Stay and Related Relief* [D.I. 1372] (the "**Stay Motion**"),[2] filed on August 16, 2018 by AI International Holdings (BVI) Ltd. ("**AI International**"). In support of this Objection, Mr. Weinstein respectfully represents as follows:

### RELEVANT BACKGROUND

1. On March 21, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On March 28, 2018, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**").

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] Capitalized terms used but not defined in this Response have the meaning given in the Stay Motion.

2.      Prior to the Petition Date, from the founding of the company until his purported termination[3] in October, 2017, Mr. Weinstein was TWC's co-founder and then-Co-Chairman. *See generally* D.I. 7 (First Day Dec.) at ¶¶ 7 and 31-36.

**A.      Mr. Weinstein's Attempts to Take Discovery Related to his Claims and Defenses**

3.      On April 20, 2018, Mr. Weinstein filed his *Motion for Entry of an Order Compelling Limited Discovery Under Rule 2004 of the Federal Rules of Bankruptcy Procedure* [D.I. 275] (the "**2004 Motion**").

4.      On May 8, 2018, this Court held a hearing (the "**May 8 Hearing**") on, among other things, the Debtors' proposed sale to Lantern, Mr. Weinstein's Sale Objection, and the 2004 Motion.  At the May 8 Hearing—and in light of the Debtors' representations regarding the assets subject to the sale and the agreed-upon modifications to the order approving the sale to Lantern—Mr.  Weinstein agreed not to press his objection to the sale.  As the Court is aware, certain of the e-mails produced under the 2004 Order have already proven to be instrumental in the ongoing investigations related to Mr. Weinstein's time with the Debtors.

5.      Notably, the court's ruling at the May 8 Hearing[4] did not provide for production of documents related to the second request in the in 2004 Motion, namely that the Debtors produce "All Documents representing the personal papers, files, letters, messages and effects belonging to Mr. Weinstein that are in the Debtors' possession, custody or control." 2004 Motion, at Ex. B.  As described above, this request was omitted from the 2004 Order as a result of Mr. Weinstein's understanding that the Debtors would voluntarily produce such documents, especially in light of the fact that they are relevant to Mr. Weinstein's understanding of his

---

[3]      Mr. Weinstein disputes the validity of his purported termination, which is the subject of a currently pending arbitration captioned *Harvey Weinstein v. The Weinstein Company Holdings LLC, et al.*, Ref. No. 1425024989.

[4]      Copies of relevant excerpts of the May 8 hearing are attached as Exhibit 1 and cited as "May 8 Tr., at [_]:[_]".

claims against the Debtors and the scope of his rights and interests *vis a vis* the assets proposed to be sold under the Sale Motion.  Indeed, at the May 8 Hearing, Debtors' counsel represented that Mr. Weinstein's personal effect had already been returned to him.  *See* May 8 Tr., at 84:5-7 ("As you know, we did return or send our papers. We did return the personal effects at Mr. Weinstein's counsel's request. We did that back in November and December.").  Nevertheless, upon information and belief, Mr. Weinstein still has not received a complete copy of his files.

6.    On July 31, 2018, the Committee filed own motion for discovery under Rule 2004, by which it seeks documents and testimony from David Glasser related to its "analysis of potential claims, including against Mr. Glasser **and Harvey Weinstein.**"  D.I. 1280, ¶ 16 (emphasis added).  Much of the information sought in these requests is directly related to Mr. Weinstein's personal finances and claims against and defenses related to the Debtors, Lantern, AI International and others.  This is the exact information he has sought from the Debtors for months.

**B.    The AI Loan**

7.    AI International is purportedly a secured creditor of certain of the Debtors, asserting an alleged claim of at least $46 million arising under a the Loan it made to Debtor TWC Borrower 2016 LLC ("**Borrower**") in September 2016.  Stay Motion, at ¶ 1.  AI International asserts that Mr. Weinstein guaranteed (the "**Guarantee**") the Loan.[5]  *Id.*  The Debtors, in turn, "have agreed to reimburse Mr. Weinstein if he is required to make payments on the [Loan]."  First Day Dec., at ¶ 24.

8.    Prior to the Petition Date, on November 10, 2018, AI International commenced the action captioned *AI International v. TWC Borrower 2016, LLC, et al.*, Index No.

---

[5]    Another Debtor in these cases, Weinstein Company Holdings LLC ("**Weinstein Holdco**"), is also a purported guarantor of the Loan.

656864/2017 (N.Y. Sup. Ct.) (Hon. Salian Scarpulla) (the "**State Court Action**") against Mr. Weinstein, Borrower, and Weinstein Holdco seeking repayment of Borrower's obligations under the Loan. Stay Motion, at ¶¶ 3 and 17. As a result of the filing of these Bankruptcy Cases, the State Court Action has been stayed by the automatic stay as to Borrower and Weinstein Holdco since March 19, 2018. Stay Motion, at ¶¶ 4 and 15. Additionally, on April 3, 2018 the State Court approved a Stipulation staying the State Court Action as to Mr. Weinstein. Stay Motion, at ¶ 15. Under the terms of the Stipulation, AI International must file a notice with the State Court should it wish to terminate the Stipulation and proceed against Mr. Weinstein. *Id.*

9.     On June 2, 2018, AI International commenced an adversary proceeding against Union Bank and its affiliate seeking, among other things, a determination by this Court as to the appropriate allocation of the proceeds from the Lantern Sale. *See AI International Holdings, BVI, LTD v. MUFG Union Bank, N.A.*, *et al.*, Adv. Pro. No. 18-50486 (MFW) (the "**AI Allocation Action**"). Mr. Weinstein understands—and it is clear from an examination of the docket thereof—that the AI Allocation Action is only in its most nascent stages.

10.    Rather than permitting the AI Allocation Action to be resolved, on August 16, 2018, AI International filed the instant Stay Motion by which it seeks relief from the automatic stay to permit the State Court Action to proceed as to Mr. Weinstein, "so that the State Court may adjudicate AI International's claims against [Mr.] Weinstein and enter judgment as appropriate, and so that AI International may enforce any judgment entered against [Mr.] Weinstein by all available means." Stay Motion, at ¶ 5.

## OBJECTION

11.    Mr. Weinstein objects to the Stay Motion (1) because it is premature and unnecessary to proceed against Mr. Weinstein's alleged Guarantee of the Loan while the AI

Allocation is in its infancy and (2)—contrary to allegations made in the Stay Motion—the Debtors have a vested interest in the outcome of the State Court Action and permitting the State Court Action to proceed as to Mr. Weinstein will necessarily require the Debtors to be heavily involved.

1.      **It is Premature for AI International to Pursue the State Court Action Against Mr. Weinstein at this Time.**

12.      Until the AI Allocation Action is determined by a final order, Mr. Weinstein should not be compelled to litigate the State Court Action for what ultimately might be $0 of liability.

13.      Indeed, as noted in the complaint that initiates the AI Allocation Action, that dispute centers around the allocation of the nearly $310 million[6] in proceeds from the Lantern Sale as between, among others, the approximately $156 million alleged pre-petition secured claim of Union Bank, the DIP Loan in the amount of up to $25 million (for which Union Bank serves as administrative and collateral agent), the approximately $15.6 million alleged secured claim of Union Equities, and the approximately $46 million alleged secured claim of AI International.[7]  Based on the allegations of its own complaint, it is not clear why AI International would be in such a rush to litigate Mr. Weinstein's alleged Guarantee obligations.

14.      Put simply, the amount of proceeds from the Lantern Sale that are allocated to pay the Debtors' obligations under the Loan are likely to have a significant impact on the eventual amount of the alleged Guarantee obligations, if any remain.  Mr. Weinstein should not be forced

---

[6]      On July 11, 2018, the Court entered an order approving certain amendments to the asset purchase agreement in the Lantern sale that, among other modifications, reduced the cash consideration form $310,000,000 to $289,000,000.  *See* D.I. 1220.

[7]      The allegations of this paragraph are provided only to illustrate the potential impact of the AI Allocation Action on Mr. Weinstein's alleged Guarantee obligations.  They are drawn from those made by AI International in the operative complaint in the AI Allocation Action and the capitalized terms used in this paragraph have the meaning ascribed therein.  *See* Adv. Pro. No. 18-50486 (MFW), at D.I. 1, ¶¶ 16-21 and 28-29.

to litigate with AI International over an obligation that might ultimately not even exist.  AI International should wait for the resolution of the AI Allocation Action before proceeding with the State Court Action.  This is especially true given the potential negative impact of the State Court Action on the Debtors' estates, as discussed below.

**2.      Permitting AI International to Proceed Against Mr. Weinstein will Prejudice the Debtors' Estates.**

15.      AI International's Stay Motion casually states that "[n]o prejudice to the debtors would result from granting the [Stay] Motion…" because, "AI International is not seeking relief from stay to pursue the Borrower, Weinstein Holdco or any other Debtor."  Stay Motion, ¶ 25; *see also id.*, at ¶ 6.  This statement, however, ignores the obvious realities of these cases and the entanglement of the Debtors' and Mr. Weinstein's defenses to the Guarantee and the Loan.

16.      Indeed, the Guarantee expressly provides that "[n]otwithstanding anything to the contrary contained herein, the Guarantor does not waive, and shall be entitled to assert, any defense available to the Borrower under the express terms and conditions of the Note." Stay Motion, Ex. 2, at § 2.  It is very likely that several of the defenses that Mr. Weinstein might assert to in the State Court Action would also be substantive defenses of the Debtors' against their alleged obligation under the Loan.

17.      In addition to the overlapping defenses to the Guarantee and the Loan, Mr. Weinstein may have indemnity and contribution claims against the Debtors for any fraud associated with the Loan. And, as discussed above, the Debtors have agreed to reimburse him for any payments he makes on account of the Guarantee.  *See* First Day Dec., at ¶ 24.

18.      If AI International were to proceed against Mr. Weinstein in the State Court Action, without the Debtors' active involvement, they run the risk of being collaterally estopped by any factual findings that result to the potential detriment of the Debtors and their estates.  *In*

*re Am. Film Techs., Inc.*, 175 B.R. 847, 855 (Bankr. D. Del. 1994) (extending the automatic stay to former officers of the debtor as co-defendants with the debtor because given "the identity of subject matter, issues and parties involved" the debtor was "expose[d] it to collateral estoppel prejudice"); *In re Adelphia Commc'ns Corp.*, 302 B.R. 439, 451 (Bankr. S.D.N.Y. 2003) (extending stay to officers who were co-defendants with debtor because "there is the potential threat of the debtor being collaterally estopped from asserting defenses if an adverse judgment is entered against the non-debtors.") (citations omitted).

19.    Thus, it is not the case, as AI International asserts in the Stay Motion, that "AI International does not need the participation or presence of either the Borrower or Weinstein Holdco in order to prosecute its claims against [Mr.] Weinstein."  Stay Motion, ¶ 25.  Instead, the Debtors will be required to actively participate in the State Court Action (while simultaneously actively participating in the AI Allocation Action), which will deplete significant estate resources.

20.    Moreover, AI International states in its Stay Motion that it "does not anticipate the need for discovery or depositions from any Debtor, and in any event would seek further relief by separate motion if such a need arose."  Stay Motion, ¶ 25.  Given the overlapping nature of the defenses to the Loan and the Guaranty, it is highly likely that Mr. Weinstein or AI International will be required to seek discovery from the Debtor related to the State Court Action.  Indeed, the discovery that Mr. Weinstein has sought for weeks is potentially relevant to his defenses to Loan and the Guarantee and, among other discovery, it is likely that he will need to seek further responses from the Debtors in connection with the State Court Action.

21.    Given the Debtors' likely involvement in the State Court Action, and the possibility of findings of r*es judicata* or collateral estoppel if they do not involve themselves

there is potential prejudice to the estate if the Court grants the relief sought by the Stay Motion.

Inviting that prejudice is especially unnecessary in this case given that, as discussed above,

proceeding against Mr. Weinstein at this juncture is entirely premature.

## CONCLUSION

WHEREFORE, Mr. Weinstein respectfully requests that this Court sustain this Objection

and deny the Stay Motion.

Dated: August 30, 2018
       Wilmington, Delaware

                             **BAYARD, P.A.**

                             */s/ Scott D. Cousins*
                             Scott D. Cousins (No. 3079)
                             Justin R. Alberto (No. 5126)
                             Daniel N. Brogan (No. 5723)
                             600 N. King Street, Suite 400
                             Wilmington, DE 19801
                             Telephone: (302) 655-5000
                             Facsimile: (302) 658-6395
                             scousins@bayardlaw.com
                             jalberto@bayardlaw.com
                             dbrogan@bayardlaw.com

                             *Counsel for Harvey Weinstein*