## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re

THE WEINSTEIN COMPANY
HOLDINGS LLC, *et al.*,[1]

        Debtors.

Chapter 11

Case No. 18-10601 (MFW)

(Jointly Administered)

**Hrg. Date: 9/25/2018 at 3:00 p.m.**
**Obj. Deadline: 9/13/2018 at 4:00 p.m.**

### HARVEY WEINSTEIN'S MOTION FOR ENTRY OF AN ORDER COMPELLING DISCOVERY UNDER (I) RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND (II) THIS COURT'S PREVIOUS 2004 ORDER

Harvey Weinstein, by and through his undersigned counsel, hereby moves (the "**Motion**") this Court, pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the *Order Authorizing the Protocol for Production of Documents in Response to Harvey Weinstein's Motion Compelling Discovery Under Rule 2004 of the Federal Rules of Bankruptcy Procedure*, entered on June 5, 2018 [D.I. 976] (the "**2004 Order**"),  for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing and directing discovery from (i) the above-captioned debtors (the "**Debtors**") and (ii) Lantern Entertainment LLC ("**Lantern**") pursuant to the information and discovery requests

---

[1]     The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

attached hereto as **Exhibit B**.  In support of this Motion,[2] Mr. Weinstein respectfully represents as follows:

## PRELIMINARY STATEMENT

For months Mr. Weinstein has attempted to secure vital information related to these cases from the Debtors and their professionals on a consensual basis and without the assistance of the Court.   Nonetheless—and despite repeated promises to the contrary—Mr. Weinstein has received only minimal production of documents.  Now, Mr. Weinstein seeks through the Court those documents that are essential to his ability to investigate and analyze the acts of the Debtors and his rights to property that he owns, so that he may determine the full extent of his claims against the Debtors and ensure that his property has not been improperly transferred to Lantern. Additionally, and more important, as the Court is well aware, Mr. Weinstein requires access to his personal files from his time at TWC in order to defend himself from the numerous criminal and civil allegations currently asserted against him, the ongoing defense of which inures to the direct benefit of the Debtors and their estates and creditors.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2004, and Local Rule 2004-1.

---

[2]      In additional support of the relief requested by this Motion, Mr. Weinstein files the *Certification of Compliance with Local Rule 2004-1 in Connection with Harvey Weinstein's Motion for Entry of an Order Compelling Discovery Under Rule 2004 of the Federal Rules of  Bankruptcy Procedure and (II) This Court's Previous 2004 Order* (the "**Cousins Cert.**")

3.      Mr. Weinstein consents to the entry of a final order on this Motion to the extent it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments on the relief requested consistent with Article III of the United States Constitution.

## RELEVANT BACKGROUND

4.      On March 21, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Additionally, on the Petition Date, the Debtors filed a motion [D.I. 8] (the "**Sale Motion**"), by which the Debtors sought to establish certain bidding procedures and for approval of the Debtors' sale of substantially all of their assets.  Lantern was the stalking horse bidder in the proposed sale process.  On April, 6, 2018, the Court entered an order [D.I. 190] approving the bidding procedures, with certain modifications and setting the Auction for May 4, 2018 with the Bid Deadline on April 30, 2018.

5.      Prior to the Petition Date, from the founding of the company until his purported termination[3] in October, 2017, Mr. Weinstein was TWC's co-founder and then-Co-Chairman. *See generally* D.I. 7 (First Day Dec.) at ¶¶ 7 and 31-36.

6.      On March 28, 2018, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**").

7.      On April 20, 2018, Mr. Weinstein filed his *Motion for Entry of an Order Compelling Limited Discovery Under Rule 2004 of the Federal Rules of Bankruptcy Procedure* [D.I. 275] (the "**2004 Motion**").

8.      On April 30, 2018, in light of the Debtors' continued failure to produce his e-mails and personal files, Mr. Weinstein was compelled to file an objection to the Sale Motion

---

[3]      Mr. Weinstein disputes the validity of his purported termination, which is the subject of a currently pending arbitration captioned *Harvey Weinstein v. The Weinstein Company Holdings LLC, et al.*, Ref. No. 1425024989.

[D.I. 594] (the "**Sale Objection**"), in order to protect his rights and ensure that the sale proposed by the Debtors does not include any of Mr. Weinstein's property.

9.      On May 8, 2018, this Court held a hearing (the "**May 8 Hearing**")[4] on, among other things, the Sale Motion, Mr. Weinstein's Sale Objection, and the 2004 Motion.  At the May 8 Hearing—and in light of the Debtors' representations regarding the assets subject to the Sale Motion and the agreed-upon modifications to the order approving the Sale Motion—Mr. Weinstein agreed not to press the Sale Objection. *See* Sale Tr., at 76:8-14.

10.     At the May 8 Hearing, the Court also approved the sale of substantially all of the Debtors' assets to Lantern.  However, the order approving the sale to Lantern expressly provided that the Debtor would not be transferring any assets that it does not own to Lantern.  *See* D.I. 846, at ¶ OO.

11.     Additionally, at the May 8 Hearing, the Court granted the 2004 Motion with respect to Mr. Weinstein's e-mails.  *See* Sale Tr., at 96:1-8.  Subsequent to the May 8 Hearing, and following extensive negotiations between Mr. Weinstein, the Debtors and the Committee, the 2004 Order was filed under certification of counsel and entered by the Court on June 5, 2018.

12.     Notably, the 2004 Order did not provide for production of documents related to the second request in the in 2004 Motion, namely that the Debtors produce "All Documents representing the personal papers, files, letters, messages and effects belonging to Mr. Weinstein that are in the Debtors' possession, custody or control." 2004 Motion, at Ex. B.  As described above, this request was omitted from the 2004 Order as a result of Mr. Weinstein's understanding that the Debtors would voluntarily produce such documents, especially in light of the fact that they are relevant to Mr. Weinstein's understanding of his claims against the Debtors

---

[4]      A true and correct copy of certain relevant portions of the transcript of the May 8 Hearing is attached as **Exhibit C**, it is cited in this motion as "**Sale Tr., at [__]**".

and the scope of his rights and interests *vis a vis* the assets proposed to be sold under the Sale Motion.   Indeed, at the May 8 Hearing, Debtors' counsel represented that Mr. Weinstein's personal effects had already been returned to him.  *See* May 8 Tr., at 84:5-7 ("As you know, we did return or send our papers. We did return the personal effects at Mr. Weinstein's counsel's request. We did that back in November and December.").   Nevertheless, upon information and belief, Mr. Weinstein still has not received a complete copy of his personal files and effects.

13.    Based on the understanding reached prior to the May 8 Hearing, Mr. Weinstein and the Debtors had an ongoing dialogue regarding Mr. Weinstein's informational requests.   On June 1, 2018, at the request of the Debtors, undersigned counsel sent a letter (the "**June 1 Letter**"), a copy of which is attached as **Exhibit D**, outlining Mr. Weinstein's specific requests in detail.

14.    Following the June 1 Letter, Debtors' counsel scheduled a conference call with Mr. Weinstein and his counsel for June 14, 2018.[5]  Mr. Weinstein understood that the call on June 14 was intended to include David Anderson, the Debtors' executive with personal knowledge of the collection and disposition of Mr. Weinstein's personal files and effects, following his termination by TWC.

15.    Approximately twenty minutes before the June 14 call, the Debtors' informed Mr. Weinstein, through counsel, that Mr. Anderson would not be participating in the call.   During that call, Mr. Weinstein and undersigned counsel inquired about the Debtors' possession of Mr. Weinstein's personal files and effects and requested copies of various business records related to the Excluded Activities and Rights identified in Schedule I to Mr. Weinstein's employment agreement, as well as his rights with respect to certain movies that he and his brother Robert Weinstein financed together (including, among others, Halloween, Scary Movie, Spy Kids and

---

[5]       A copy of the agenda of the June 14 call is attached as **Exhibit E**.

Scream and sequels, as well as projects that were included on Schedule I that were financed by Mr. Weinstein alone) (together, the "**Movie Rights**").

16.    The Debtors' counsel also confirmed that they would be "happy" to provide to Mr. Weinstein "Contracts related to the Excluded Projects" and "any contracts related to territorial distribution rights in favor of Mr. Harvey Weinstein with respect to the Excluded Projects or otherwise."    *See* Cousins Cert, at ¶ 9.  The Debtors' counsel further agreed that it would provide Mr. Weinstein with business records related to "Certain fees (including "distribution fees"), loan repayments, and bonuses that TWC or any other Debtor received in connection with the sale or distribution of any of the Excluded Projects (including sequels)."  *Id.*

17.    As a result of the Debtors' failure to participate in the promised dialogue in good faith, on June 15, 2018, Mr. Weinstein sent Debtors' counsel the letter attached as **Exhibit F**.

18.    On July 20, 2018, Mr. Weinstein's counsel held a meet and confer teleconference with Debtors' counsel regarding an additional follow-up inquiry related to the informational requests.  Prior to that call, Mr. Weinstein's counsel wrote to Debtors' counsel noting the Mr. Weinstein is "concerned that we haven't heard back anything since the June 14th call."  A copy of the July 20 email is attached as **Exhibit G**.

19.    Remarkably, on August 2, 2018, Debtors' counsel advised undersigned counsel in a teleconference that the majority of information Mr. Weinstein had been seeking for months *should instead be sought from Lantern*—not from the Debtors—as a result of the closing of the Sale.  Mr. Weinstein understands that Lantern may have acquired certain interests from the Debtors related to the Excluded Activities and Rights, as well as certain rights with respect to the Movie Rights.  Thus, on August 3, 2018, Mr. Weinstein's counsel sent the letter attached as

**Exhibit H** to Lantern's counsel requesting the same information that Mr. Weinstein has been requesting for months from the Debtors.

20.     On August 23, 2018 Debtor's counsel sent the email attached as **Exhibit I**, which stated that "[t]he estate does not have the funds or authority to run those kinds of broad searches for your client's benefit.  If he wants that kind of broad discovery, he has to proceed with a motion in the bankruptcy court."  Ex. I.

21.     Subsequently, in a phone call on August 27, 2018, Lantern's counsel indicated that Lantern did not have any information to pass along in response to the August 3 letter, citing the fact that Lantern has "an enormous number of fish to fry that people are trying to deal with" resulting in a "triage issue."

22.     In light of the failure of the Debtors and Lantern to provide Mr. Weinstein with the information that is vital to his ability to understand and assert his rights, claims and interests in the Debtors, he is now compelled to file this Motion.

### RELIEF REQUESTED

23.     By this Motion, Mr. Weinstein respectfully requests entry of an order, under Bankruptcy Rule 2004, compelling the Debtors and Lantern to produce information and documents responsive to the requests attached hereto as Exhibit B.

### BASIS FOR RELIEF

**A.     Applicable Legal Standard**

24.     Under Bankruptcy Rule 2004, "[o]n motion of any party in interest, the Court may order the examination of any entity" which may include the production of documents.  FED. R. BANKR. P. 2004(a).  A "party in interest" expressly includes a creditor.  *See* 11 U.S.C. § 1109(b) (expressly including "creditor" as a "party interest"); *see also In re Valley Forge Plaza*

*Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (noting that while a debtor may invoke Rule 2004, the rule is "creditor and trustee oriented").

25.    Bankruptcy Rule 2004 permits a party in interest to seek both document and oral discovery related to, among other things, "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b); *see also In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016); *In re E.W. Resort Dev. V, L.P., L.L.L.P.*, No. 10–10452 (BLS), 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014); *Air Line Pilots Ass'n., Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

26.    In addition, "the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." FED. R. BANKR. P. 2004(b).

27.    A Bankruptcy Rule 2004 examination process thus "allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate." *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 354 n.6 (3d Cir. 2007). "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (internal citations omitted); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (inquiry into liability of a debtor and into any matter that may affect the administrative of the estate "comfortably falls within the allowed

limits under Rule 2004"); *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (purpose of Bankruptcy Rule 2004 is to "determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors").

28.     Finally, "good cause" for conducting a 2004 examination has been found to include situations where the requested discovery "is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice…." *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (citation omitted).

29.     The scope of a Bankruptcy Rule 2004 examination in Delaware is broader than the wide-ranging discovery permitted under the Federal Rules of Civil Procedure (the "**Federal Rules**").  *See In re Millennium Lab Holdings II*, 562 B.R. at 626 ("Rule 2004 . . . has been likened to a fishing expedition and an inquisition" (internal quotation marks omitted)); *In re Countrywide Home Loans*, 384 B.R. at 400 (same); *Jacobson v. Jacobson (In re Lev)*, 2008 WL 207523, at *3 (Bankr. D.N.J. 2008); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *In re Valley Forge*, 109 B.R. at 674.

30.     Bankruptcy Rule 2004 discovery is subject to fewer objections on grounds of relevance than discovery issued in connection with a contested matter or adversary proceeding. *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).  Unlike discovery under the Federal Rules, discovery under Bankruptcy Rule 2004 can be used as a "pre-litigation discovery device" and permits examination of any party without the requirement of an adversary proceeding or contested matter.  *See In re Wilson*, 413 B.R. 330, 336 (Bankr. E.D. La. 2009); *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Bankruptcy Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").

**B.**    **The Requested Discovery is Required, Among Other Reasons, to Protect Mr. Weinstein's Due Process Rights and to Permit him to Evaluate and Prepare his Claims Against the Debtors**

31.    An order compelling the requested discovery under Bankruptcy Rule 2004 is both necessary and appropriate in these circumstances to permit Mr. Weinstein to analyze his claims against the Debtors and potential claims against third parties including Lantern.  Mr. Weinstein will eventually be required to file a proof of claim against the Debtors; however, because the Debtors have generally refused to provide full and complete information in response to these requests, Mr. Weinstein is currently unable to adequately prepare that proof of claim. The documents requested by Mr. Weinstein are essential to his ability to investigate and analyze the acts of the Debtors and his rights *vis a vis* property that he owns to which the Debtors are denying him access, so that he may determine the full extent of his claims against the Debtors. Finally, the Debtors' refusal to produce this information prevents Mr. Weinstein from ensuring that property that is owned by him—and not by the Debtors—has not been sold or transferred to Lantern.

32.    Additionally, as the Court is well aware from the 2004 Motion and from the record of the hearing at which it granted that motion, Mr. Weinstein requires access to his personal files from his time at TWC in order to defend himself from the numerous criminal and civil allegations currently asserted against him.  As the Court recognized at the May 8 Hearing, part of the justification for entry of the 2004 Order was to streamline what might otherwise be a piecemeal discovery process as parties in multiple jurisdictions seek discovery from the Debtors that they could not get from Mr. Weinstein.  *See* Sale Tr., at 81:11-17; 96:25-97:4.

33.    Thus, the proposed narrow document requests attached as Exhibit B will continue the process begun with entry of the 2004 Motion, which has likely already saved significant

expense that might otherwise be borne by the Debtors' estates, and the production of the documents related to his proof of claim fall plainly within the ambit of Rule 2004.

## LOCAL RULE 2004-1 CERTIFICATION

34.     As discussed above and outlined in detail in the Cousins Cert., the Debtors and Lantern have already been provided informally with the requested discovery and Mr. Weinstein's counsel has sent the Debtors and Lantern, through their counsel, multiple written requests for the discovery requested by this Motion and the Debtors have participated in multiple teleconferences related to same.   Most of the requested discovery has not been produced. Consequently, Mr. Weinstein is now compelled to seek this Court's permission to proceed with additional discovery pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 to compel the Debtors to produce the requested narrow discovery.

## NOTICE

35.     Notice of this Motion has been provided to (a) counsel to the Debtors, (b) counsel to Lantern, (c) the Office of the United States Trustee for the District of Delaware, (d) counsel to the Committee, and (e) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested herein, Mr. Weinstein respectfully submits that no other or further notice is required.

## RESERVATION OF RIGHTS

36.     Mr. Weinstein reserves the right to apply to this Court for further relief, as warranted, seeking additional discovery in connection with the matters described herein or matters relating thereto pursuant to Bankruptcy Rule 2004, Bankruptcy Rule 9016, or other applicable law.

## CONCLUSION

WHEREFORE, Mr. Weinstein respectfully requests that this Court enter an order, substantially in the form of the Proposed Order, granting the relief requested herein and granting such other and further relief as it deems just and proper.

Dated: August 30, 2018
       Wilmington, Delaware

**BAYARD, P.A.**

*/s/ Scott D. Cousins*
Scott D. Cousins (No. 3079)
Justin R. Alberto (No. 5126)
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
scousins@bayardlaw.com
jalberto@bayardlaw.com
dbrogan@bayardlaw.com

*Counsel for Harvey Weinstein*