## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*, | Case No. 18-10601 (MFW) |
| Debtors.[1] | (Jointly Administered) |
| | **Hr'g Date: September 25, 2018 at 3:00 p.m. (ET)** |
| | **Obj. Deadline: September 14, 2018 at 4:00 p.m. (ET)** |

------------------------------------------------------------x

### DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 365 AND FED. R. BANKR. P. 6006 FOR AUTHORITY TO REJECT AN UNEXPIRED REAL PROPERTY LEASE EFFECTIVE *NUNC PRO TUNC* TO AUGUST 31, 2018

The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request entry of an order, pursuant to sections 105(a) and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to reject an unexpired lease of non-residential real property effective *nunc pro tunc* to August 31, 2018 (the "**Rejection Date**"). In support of this motion (the "**Motion**"), the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

RLF1 19925335v.2

Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.       On March 19, 2018, each of the Debtors filed a voluntary petition with this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108. On March 28, 2018, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 cases (the "**Committee**"). As of this date, no trustee or examiner has been appointed in these Chapter 11 cases. The Debtors' Chapter 11 cases have been jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

3.       Additional information on the Debtors' business and capital structure, as well as a description of the events precipitating the filing of these Chapter 11 cases, is set forth in the *Declaration of Robert Del Genio in Support of First Day Relief* [Docket No. 7] (the "**First Day Declaration**").[2]

## THE SALE

4.       On March 20, 2018, the Debtors filed a motion [Docket No. 8] (the "**Sale Motion**") seeking approval of proposed bidding procedures (the "**Bidding Procedures**") and approval to sell

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the First Day Declaration.

substantially all of their assets to Lantern Entertainment LLC ("**Lantern**") or the party making the "highest or otherwise best" offer pursuant to the Bidding Procedures.

5. On April 6, 2018, the Court entered an order approving the Debtors' proposed Bidding Procedures and designating Lantern as the stalking horse bidder [Docket No. 190] (the "**Bidding Procedures Order**"). Under the Bidding Procedures Order, the deadline for submitting Qualified Bids (as defined in the Bidding Procedures Order) was April 30, 2018 (the "**Bid Deadline**").

6. By the Bid Deadline, the Debtors did not receive any Qualified Bids for substantially all of their assets other than Lantern's stalking horse bid. As a result, on May 1, 2018, the Debtors cancelled the auction that had been scheduled for May 4, 2018, and declared Lantern's bid the winning bid. *See* Docket No. 653.

7. On May 8, 2018, the Court approved the Sale Motion, and on May 9, 2018, the Court entered an order [Docket No. 846] (the "**Sale Order**") approving the Sale to Lantern and authorizing the Debtors to consummate the transactions contemplated under the APA (as defined in the Sale Order).

8. On June 27, 2018, as part of a settlement to resolve various disputes between the Debtors and Lantern, the Debtors filed a motion [Docket No. 1115] (the "**Motion to Amend**") seeking to amend the APA to, among other things, reduce the Purchase Price (as defined in the APA).

9. On July 11, 2018, the Court entered an order [Docket No. 1220] approving the Motion to Amend and authorizing the Debtors to consummate the transactions contemplated by the Amended APA (as defined therein).

10. On July 13, 2018, the Sale contemplated by the Amended APA was consummated. *See* Docket No. 1247. Since the consummation of the Sale, the Debtors no longer have an operating business. As a result, the Debtors, in consultation with the Committee, have been formulating a plan of liquidation so that any remaining assets can be liquidated and/or distributed for the benefit of creditors. As part of that process, the Debtors, in consultation with the Committee, have been reviewing their executory contracts and unexpired leases to determine whether such leases have any value to the Debtors' estates or should be rejected pursuant to section 365 of the Bankruptcy Code.

## THE LEASE

11. The Weinstein Company LLC, as tenant ("**TWC**"), and Douglas Emmett 2008, LLC, as landlord (the "**Landlord**"), are party to that certain lease, dated December 2, 2010 (as amended, the "**Lease**"), whereby TWC leases from the Landlord certain office space located at 9100 Wilshire Boulevard, Beverly Hills, California 90212 (the "**Leased Premises**").

12. After the closing of the Sale, Lantern informed the Debtors that it wished to remain on the Leased Premises and that it would pay the Debtors' rental obligations owing under the Lease while it remained on such premises.[3] Accordingly, on or around July 13, 2018, the Debtors and Lantern entered into a sublease for the Leased Premises (the "**Sublease**"). Pursuant to the Sublease, Lantern may terminate such sublease upon providing written notice to the Debtors.

13. Lantern has provided written notice to the Debtors that it wishes to terminate the Sublease and enter into a new lease with the Landlord, effective as of August 31, 2018 (the "**New**

---

[3] As set forth in the *Debtors' Motion to Extend the Time to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4)* [Docket No. 1248], this was one of the bases why the Debtors sought (and ultimately obtained) an extension of the deadline to assume or reject non-residential real property leases, including the Lease, through and including October 15, 2018.

**Lease**").[4]  Accordingly, the Debtors are filing this Motion to reject the Lease effective *nunc pro tunc* to the Rejection Date.

## RELIEF REQUESTED

14. By this Motion, pursuant to sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, the Debtors request entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**"), authorizing the Debtors to reject the Lease for the Leased Premises, as set forth on <u>Exhibit 1</u> to the Proposed Order, effective *nunc pro tunc* to the Rejection Date.

## BASIS FOR RELIEF REQUESTED

### A.    The Debtors Are Exercising Sound Business Judgment in Rejecting the Lease

15. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The bankruptcy court should approve a debtor's rejection of an executory contract or unexpired lease if such rejection is an exercise of the debtor's sound business judgment, benefits its estate, and is not made in bad faith.  *See In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984) ("[t]he usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989) (affirming rejection of a service agreement as sound exercise of debtor's business judgment where bankruptcy court found rejection would benefit estate); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) ("[a] debtor's determination to reject an executory contract can only be overturned if the decision was the product of bad faith, whim or caprice.").  In applying the business judgment standard, bankruptcy courts

---

[4] Contemporaneously with Lantern's entry into the New Lease, the Debtors are entering into an agreement with Lantern to terminate the Sublease (the "**Sublease Termination Agreement**").

afford great deference to a debtor's decision to assume or reject leases. *See In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

16.    Here, rejecting the Lease constitutes an exercise of the Debtors' sound business judgment for at least three reasons.

17.    First, the Debtors no longer have an operating business and thus no longer have any need for the Lease. As a result, maintaining the Lease would require the Debtors to incur administrative expenses with no attendant benefit to the Debtors' estates. Second, if the Debtors do not reject the Lease on the terms set forth herein, the Landlord has informed Lantern that it will not enter into the New Lease. In such a circumstance, Lantern may be forced to vacate the Leased Premises, which, in light of Lantern terminating the Sublease, may leave the Debtors obligated to pay any occupancy rent and other rental obligations owing under the Lease as administrative expenses. Finally, rejecting the Lease pursuant to the terms of the Motion facilitates Lantern entering into the New Lease and any payments that Lantern makes pursuant to such lease will mitigate the Landlord's rejection damages claim for the benefit of the Debtors and their estates. Accordingly, for those reasons, the Debtors respectfully submit that rejecting the Lease is in their best interests and a sound exercise of their business judgment.

18.    The Debtors further request that, consistent with the limitations imposed by section 362 of the Bankruptcy Code and any other applicable law, if any of the Debtors have deposited amounts with the Landlord as a security deposit or pursuant to another similar arrangement, or if the Landlord owes any of the Debtors any amount pursuant to the Lease or other agreements between the same parties, the Landlord shall not be permitted to set off or otherwise use the

amounts from such deposit or other similar arrangement, or other amount owed to the Debtors, without the prior order of the Court. *See In re Sweet N Sour 7th Ave. Corp.*, 431 B.R. 63, 70-72 (Bankr. S.D.N.Y. 2010) (automatic stay prohibits landlord from exercising right to setoff on debtor's security deposit); *see also In re Communicall Cent., Inc.*, 106 B.R. 540, 545 (Bankr. N.D. Ill. 1989) (landlords are required to move for relief from the automatic stay to exercise right of setoff).

      **B.**    *Nunc Pro Tunc* **Relief is Appropriate**

    19.    Courts have authorized retroactive rejection of executory contracts and unexpired leases based on the equities of the circumstances. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *see also Thinking Machines Corp. v. Mellon Financial Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (finding that, "[i]n the section 365 context, this means that bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation").

    20.    In this case, the equities favor rejection of the Lease *nunc pro tunc* to the Rejection Date because, upon information and belief and based on communications with Lantern, the Landlord has consented to such rejection. However, in any event, the Landlord will not be prejudiced by such relief because, pursuant to the terms of the New Lease and the Sublease Termination Agreement, the Landlord will continue to receive any rental obligations owing under the Lease pending the Court's entry of an order approving this Motion. Accordingly, the Debtors respectfully submit that the equities weigh in favor of retroactive rejection.

## NOTICE

21. The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the DIP Agent and the Pre-Petition Agent; (iv) counsel to Lantern; (v) the New York Attorney General and the California Attorney General; (vi) the Office of the United States Attorney for the District of Delaware; (vii) the Landlord; and (viii) all parties that have requested service of notices pursuant to Bankruptcy Rule 2002. A copy of the Motion is also available on the Debtors' case website at http://dm.epiq11.com/twc.

## NO PRIOR MOTION

22. The Debtors have not made any prior motion for the relief sought in the Motion to this Court or any other.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:   August 31, 2018
         Wilmington, Delaware

/s/ David T. Queroli
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701

- and -

**CRAVATH, SWAINE & MOORE LLP**
Paul H. Zumbro (admitted *pro hac vice*)
George E. Zobitz (admitted *pro hac vice*)
Karin A. DeMasi (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for the Debtors and Debtors in Possession*