**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| The Weinstein Company Holdings LLC, *et al.*, | Case No. 18-10601 (MFW) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket Nos. 1350, 1416** |

**REPLY IN SUPPORT OF MOTION OF THE DEBTORS AND LANTERN ENTERTAINMENT, LLC PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF STIPULATION REGARDING THE ASSUMPTION AND ASSIGNMENT OF NETFLIX CONTRACTS**

The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") and Lantern Entertainment LLC (together with its affiliates, "**Lantern**") respectfully submit this reply (the "**Reply**") to the objection of Viacom International Inc. ("**Viacom**")[2] filed with respect to the *Motion of the Debtors and Lantern Entertainment, LLC Pursuant to Fed. R. Bankr. 9019 for Approval of Stipulation Regarding the*

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

[2] *Objection of Viacom International Inc. to Settlement Agreement Among the Debtors, Lantern and Netflix* [Docket No. 1416] (the "**Viacom Objection**").

*Assumption and Assignment of Netflix Contracts* [Docket No. 1350] (the "**Motion**")[3] and represent as follows:[4]

## PRELIMINARY STATEMENT

1. By the Motion, the Debtors and Lantern seek approval of a settlement of multiple disputes with Netflix regarding assumption and assignment of the Netflix Contracts. The proposed settlement with Netflix is the result of hard-fought, good faith and arm's length negotiations undertaken in furtherance of the Sale of substantially all of the Debtors' assets in accordance with the terms of the Sale Order. The alternative to the approval of the settlement embodied in the Stipulation would be costly and time-consuming litigation between the Debtors and Lantern, on the one hand, and Netflix, on the other hand, and the potential that an even higher amount of unsecured claims could be asserted against the Debtors' estates. Accordingly, the Stipulation should be approved, and the Viacom Objection should be overruled for the reasons set forth below.

2. First, while Viacom attempts to portray itself as an unsecured creditor concerned about the reasonableness of a proposed settlement, Viacom's true motivations are transparently parochial. In particular, Viacom is unhappy that the Stipulation provides that Netflix shall have no obligation to accept delivery of or pay any amount under any Netflix Contract with respect to Season 3 of the "Scream" television series—a television series in which Viacom has a financial

---

[3] Capitalized terms that are used herein and not otherwise defined shall have the meanings given to them in the Motion or the Objection (as defined herein), as applicable.

[4] On August 29, 2018, Portfolio Funding Company LLC I ("**PFC**") filed the *Objection of the Portfolio Funding Company LLC I to the Motion of the Debtors and Lantern Entertainment, LLC Pursuant to Fed. R. Bankr. 9019 for Approval of Stipulation Regarding the Assumption and Assignment of Netflix Contracts* [Docket No. 1419] (the "**PFC Objection**"). The parties are currently participating in ongoing discussions regarding a potential consensual resolution of the PFC Objection. In the event that a consensual resolution cannot be achieved, the Debtors and Lantern reserve all of their rights to reply to the objections raised by PFC in the PFC Objection.

interest as a result of funds it advanced to the Debtors in late 2017 and early 2018.[5] Instead of seeking approval of the Stipulation, Viacom appears to believe that the Debtors' estates should have rejected the settlement embodied in the Stipulation in favor of pursuing expensive and likely protracted litigation against Netflix (for the benefit of Viacom) relating to Netflix's termination of the output periods under the Netflix Contracts despite the fact that (i) the outcome of such litigation would be, at best, uncertain and (ii) pursuing litigation against a large, sophisticated party like Netflix would have significantly burdened the Debtors' estates. In addition, Viacom makes a misguided attempt to impugn the settlement with Netflix by alleging that Lantern was not incentivized to require Netflix to accept Season 3 of Scream because Viacom would have been entitled to all of the proceeds of the Scream agreement. Unsurprisingly, Viacom provides no support for its contention that the purchaser of a debtor's assets is required to take assignment of contracts that are of no value to the purchaser. Finally, despite its displeasure about the treatment of Season 3 of Scream, Viacom fails to note that Viacom's own conduct contributed to its predicament. As detailed in the Netflix Objections, [redacted]

3. Accordingly, the Debtors and Lantern request that the Court overrule the Viacom Objection and enter an order approving the Stipulation.

## <u>REPLY</u>

### I. The Stipulation Should be Approved under Bankruptcy Rule 9019

[5] *See* Viacom Objection ¶¶ 15-22.

[6] *See* Supplemental Objection ¶¶ 19-23.

4. The settlement embodied in the Stipulation satisfies the standards for approval under Bankruptcy Rule 9019. As an initial matter, to approve a settlement under Bankruptcy Rule 9019, bankruptcy courts need to be satisfied that a settlement is "fair, reasonable, and in the best interest of the estate." *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). The Court need not be convinced that the settlement is the best possible compromise. *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) (citing *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994)). Rather, the Court must conclude only that the settlement falls within the reasonable range of litigation possibilities. *Id.* The Court's role is not to conduct a "mini-trial" of the facts or the merits of the underlying dispute but to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Key3Media Grp.*, 336 B.R. at 92-93.

5. Here, the settlement embodied in the Stipulation falls well within the range of reasonableness, and is fair and in the best interests of the Debtors' estates. Accordingly, the Viacom Objection should be overruled, and the Stipulation should be approved.

**A. The Viacom Objection Should be Overruled**

6. Viacom raises three flawed objections to the approval of the Stipulation. First, Viacom alleges that the Motion does not explain several terms of the proposed settlement. Viacom's objection is nothing more than an attempt to divert attention away from the facts surrounding the treatment of Season 3 of Scream—its true concern with respect to the Stipulation.[7] A review of the facts and circumstances relating to Season 3 of Scream demonstrates that Viacom's objection is not well founded. As detailed in the Netflix Objections, prior to the Petition Date, Netflix delivered a notice to the Debtors allegedly terminating the

[7] Viacom Objection ¶ 32.

output periods and any further obligations to license or pay for new content from the Debtors pursuant to the "key man" provision in such agreements. If this termination was valid, it relieved Netflix of any obligation to license or pay for Season 3 of Scream. In addition, even if the output periods were not validly terminated, Netflix has argued that [REDACTED] Finally, Netflix has also taken the position that even if the agreements relating to Scream were assumed and assigned to Lantern, Netflix would have a right to terminate any obligation to license Season 3 of Scream because [REDACTED] and (ii) upon closing, Netflix would have had the right to terminate based on the "key man" provision.

7. The "key man" provision contained in the applicable Netflix Contracts provides Netflix with the right to terminate the license period for Season 3 of Scream in the event that [REDACTED] which could significantly complicate their ability to successfully challenge Netflix's ability to terminate any obligation to license Season 3 of Scream based on the "key man" provision at closing. Thus, in light of the "key man" provision and [REDACTED]

[REDACTED] it was reasonable for the Debtors and Lantern to agree that Netflix would not be required to license or pay for Season 3 of Scream.

8. Second, Viacom contends that the Debtors have not identified sufficient benefits of the Stipulation to the Debtors' estates. In that regard, Viacom alleges that the Debtors have not explained why litigation with Netflix over the issues surrounding the assumption and assignment of the Netflix Contracts would be complex and protracted.[8] Viacom's feigned ignorance of the challenges posed by pursuing litigation against Netflix is unconvincing. In order to litigate the disputes with Netflix, the Debtors and Lantern would have needed to address several issues, including, among other things, whether (i) the prepetition termination was valid, (ii) the Netflix Contracts were personal services agreements and/or whether the "key man" provisions were enforceable and (iii) Netflix was required to license and pay for Season 3 of Scream. These issues are highly factual in nature and likely would have required extensive discovery to determine the validity of Netflix's position.[9] Moreover, Netflix is a large, sophisticated entity with highly competent bankruptcy counsel, and Netflix has demonstrated its willingness to aggressively defend its rights in chapter 11 proceedings.[10] Viacom also contends that Netflix's agreement to waive a $326,000 unsecured audit claim under the Stipulation is insufficient.[11] In doing so, Viacom ignores the fact that absent a settlement with Netflix that

---

[8] Viacom Objection ¶¶ 33-34.

[9] *See, e.g.*, *In re Planet Hollywood Int'l, Inc.*, 2000 WL 36118317 at *16-23 (D. Del. 2000) (engaging in thorough analysis of certain celebrity contracts to determine the nature, circumstance, and provisions of such contracts based on a well-developed record).

[10] For example, Netflix has been a highly active participant in the recent chapter 11 proceedings filed by Relativity Media, LLC in the United States Bankruptcy Court for the Southern District of New York. *See In re Relativity Media, LLC*, Case No. 18-11358 (Bankr. S.D.N.Y.).

[11] *See* Viacom Objection ¶ 33.

unsecured audit claim as well as potentially a number of other claims could have also been asserted against the Debtors' estates.

9. In asserting that the proposed settlement provides insufficient benefits to the Debtors' estates, Viacom also ignores the fact that the Debtors and Lantern agreed to the Stipulation in furtherance of the Sale in accordance with the terms of the Sale Order. As this Court has already determined, the Sale of the Debtors' assets to Lantern, and the assumption and assignment of the Debtors' executory contracts to Lantern, is in the best interests of the Debtors' estates.[12] In addition, as much as Viacom wishes otherwise, it cannot force Lantern to take an assignment it did not want to acquire or was unable to acquire under the circumstances.

10. Third, Viacom asserts that the Stipulation will result in Viacom losing its collateral and an increase in the size of the unsecured claims pool.[13] Viacom effectively argues that the Debtors should not be permitted to reject executory contracts (and that Lantern is not free to make determinations as to which contracts it will take under the Sale Order)—a puzzling position, to say the least. Moreover, Viacom fails to address the fact that, in the absence of a settlement, the amount of the unsecured claims that could have been asserted against the Debtors' estates may have been much higher.

[*Remainder of page intentionally blank*]

[12] *See* Sale Order ¶¶ O, MM.

[13] Viacom Objection ¶ 35.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors and Lantern respectfully request that the Court grant the Motion and grant such other and further relief as is just, proper and equitable.

Dated: September 20, 2018
Wilmington, Delaware

*/s/ Zachary I. Shapiro*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651 7700
Facsimile: (302) 651-7701

- and -

**CRAVATH, SWAINE & MOORE LLP**
Paul H. Zumbro (admitted *pro hac vice*)
George E. Zobitz (admitted *pro hac vice*)
Karin A. DeMasi (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for the Debtors*

*/s/ Evelyn J. Meltzer*
**PEPPER HAMILTON LLP**
David B. Stratton, Esq. (No. 960)
Evelyn J. Meltzer, Esq. (No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 777-6500
Email: stratton@pepperlaw.com
meltzere@pepperlaw.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Abid Qureshi, Esq. (admitted *pro hac vice*)
Meredith A. Lahaie, Esq. (admitted *pro hac vice*)
Michael S. Stamer, Esq. (admitted *pro hac vice*)
One Bryant Park
Bank of America Tower
New York, NY 10036
Email: aqureshi@akingump.com
mstamer@akingump.com
mlahaie@akingump.com

*Attorneys for Lantern Entertainment, LLC*