**<u>EXHIBIT B</u>**

**Reply**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>THE WEINSTEIN COMPANY<br>HOLDINGS LLC, *et al.*,[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered) |

**HARVEY WEINSTEIN'S REPLY TO OBJECTIONS TO AND IN SUPPORT OF
HIS MOTION FOR ENTRY OF AN ORDER COMPELLING DISCOVERY
UNDER (I) RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AND (II) THIS COURT'S PREVIOUS 2004 ORDER**

Harvey Weinstein, by and through his undersigned counsel, hereby replies (the "**Reply**")

in further support of his *Motion for Entry of an Order Compelling Discovery Under (I) Rule*

*2004 of the Federal Rules of Bankruptcy Procedure and (II) This Court's Previous 2004 Order*

[D.I. 1430], filed on August 30, 2018 (the "**Motion**") and in response to: (i) the *Debtors'*

*Objection to Harvey Weinstein's Rule 2004 Motion* [D.I. 1516] (the "**Debtors' Objection**"),

filed on September 21, 2018; and (ii) the *Limited Objection of Lantern Entertainment to Harvey*

*Weinstein's Rule 2004 Motion* [D.I. 1511] (the "**Lantern Objection**" and, together with the

Lantern Objection, the "**Objections**"), filed on September 21, 2018.   In response to the

Objections and in further support of the Motion, Mr. Weinstein respectfully represents as

follows:

---

[1]      The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

# REPLY

## A.    *Reply to Debtors' Objection*

1.    In the Debtors' Objection to the Motion, they make two primary arguments against the Motion: first, the Debtors argue that Mr. Weinstein cannot show "good cause" for the requested discovery (*see* Debtors' Objection, at ¶¶ 32-40); and, second, the Debtors argue that production of the requested discovery would be unduly burdensome (*see* Debtors' Objection, at ¶¶ 41-42).  To the contrary, "good cause" exists to order the Debtors to produce the discovery to Mr. Weinstein and the benefit to Mr. Weinstein outweighs any burden placed upon the Debtors.

2.    As a general proposition, Bankruptcy Courts in this district and others have recognized that "good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice."  *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016) (citing *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004)); *see also In re Drexel Burnham Lambert Grp., Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 1991) (moving party must show that the "requested documents are necessary to establishment of the moving party's claim or that denial of production cause undue hardship or injustice.").

3.    Contrary to the Debtors' assertion in their Objection, the relief now requested by the Motion does indeed have something "to do with [Mr.] Weinstein's need to 'defend himself from the numerous criminal and civil allegations currently asserted against him.'"  Debtors' Objection, at ¶ 33 (quoting Motion, at p. 2).  While Mr. Weinstein appreciates that the Debtors have complied with this Court's order by producing e-mails that the Court ordered them to produce,[2] upon information and belief, other essential files of Mr. Weinstein's that have yet to be

---

[2]    The Debtors' Objection alternately refers to having produced "all of the emails Weinstein has requested between himself and alleged victims" (Debtors' Objection, at ¶ 33) and the fact that "[t]hat production is ongoing"

produced (and that are the subject of the instant Motion) are known to contain similarly exculpatory information and cannot be secured elsewhere.  The fact that Mr. Weinstein already has certain of the Debtors' documents that are clearly exculpatory does not absolve the Debtors from producing further documents required by Mr. Weinstein.  *See Millennium Lab*, 562 B.R., at 627–28 ("The fact that the Trustee already has access to certain documents and information of the Debtors does not detract from the Trustee's testimony that the documents already in his purview are not sufficient to determine the scope of Trustee's viable claims.").

4.    Even if this was not the case and none of the documents requested by the Motion were required in order to limit Mr. Weinstein's alleged criminal and civil liability, Mr. Weinstein would still require the requested discovery to understand and assert his claims against the Debtors' estates and potentially against other third-parties *vis a vis* Mr. Weinstein and the Debtors.  This is clearly a proper purpose.  *See generally Millennium Lab,* 562 B.R. at 627; *Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 354 n.6 (3d Cir. 2007) (noting that Rule 2004 "allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate.").  Indeed, the Committee has filed (and the Debtors have not objected to) a motion seeking much of the same information from David Glasser, a former executive of the Debtors, that Mr. Weinstein now seeks from the Debtors.[3]

5.    Mr. Weinstein's requested discovery is meaningfully tied to the administration of the Debtors' bankruptcy estates, asserting his interests in the same, and the avoidance of potential liability to the Debtors that could cause the diminution of those estates.  On that basis, the Objections should be overruled.

---

(*id.* at ¶ 34).  Mr. Weinstein reserves all rights regarding whether the Debtors have completed the production of e-mails previously ordered by the Court.

[3]    *See The Official Committee of Unsecured Creditors' Motion for an Order Pursuant to Bankruptcy Rule 2004 Directing Production of Documents and Materials and Appearance for Oral Examination* [D.I. 1280].

6.     The Debtors' arguments that the requested discovery does not demonstrate "good cause" because it is "premature" (*see* Debtors' Objection, at ¶¶ 35-36) is equally unavailing.  The Debtors are correct that if Mr. Weinstein were to file a proof or proofs of claim against the Debtors' estates and those claims were objected to, then Mr. Weinstein would be entitled to take discovery from the Debtors and others in that contested matter.  Nonetheless, Mr. Weinstein's unceremonious ouster and the Debtors' refusal both pre- and post-petition to cooperate with his informational requests or return to him complete copies of his personal files leaves him in an unusual position.  He simply requires the discovery to formulate his claims, ensure that they are asserted against the correct Debtor (or, possibly against Lantern to the extent any obligations of the Debtors to Mr. Weinstein are now Lantern's obligations as a result of the Sale), and ensure that his Excluded Property has not impermissibly been transferred to Lantern as a part of the Sale.

7.     The Debtors also ask the Court, even if it finds "good cause" for the requested discovery, to deny the Motion, because the relief requested is "unduly burdensome."  Specifically, the Debtors allege that "[t]he broad search terms [Mr.] Weinstein has demanded would yield 759,671 documents, or 1,093,446 including families," which the Debtors allege would require them to "review each of those documents for attorney-client privilege or attorney work product, and apply necessary redactions of such privileged or protected information."  Debtors' Objection, at ¶ 42.

8.     Based on this worst-case scenario, the Debtors throw any sense of nuance out the window and ask the Court to deny the Motion in its entirety.  Of course, the Debtors' worst-case scenario ignores the factual history preceding the Motion and the intended purpose of the search terms that Mr. Weinstein's counsel provided to the Debtors' counsel.

9.      As outlined in the Cousins Dec., in August, the Debtors' counsel at Cravath suggested that Mr. Weinstein's counsel coordinate any electronic discovery requests with the Debtors' co-counsel at Seyfarth.  *See* Cousins Dec., at ¶ 16.  Following that directive, on August 6, 2018, Mr. Weinstein's counsel held a teleconference with Seyfarth, and at Seyfarth's suggestion Mr. Weinstein's counsel prepared an initial set of proposed search terms that were shared with Seyfarth on August 21, 2018.  *Id.*  Just two days later, on August 23, 2018, Cravath (and not Seyfarth) sent an e-mail to Mr. Weinstein's counsel stating that the estate did not have the "funds or the authority to run those kinds of broad searches" and that "if [Mr. Weinstein] wants that kind of broad discovery, he has to proceed with a motion in the bankruptcy court." *See Id.*, at ¶ 17; and Motion, at Ex. I.

10.      In this context, the "burden" outlined in the Debtors' Objection is overstated and based solely upon the broadest possible interpretation of a first proposed set of search terms.  As is often the case in electronic discovery, search terms proposed by one party to another need to be fine-tuned and that adjustment is made to reduce the number of potentially responsive documents while still capturing the documents requested.

11.      Indeed, in the conversation with Seyfarth it appeared that the Debtors' and their counsel understood that a back and forth may be required before final search terms could be settled upon.  Mr. Weinstein and his counsel certainly understand this and, when the Court previously ordered production of e-mails, it required a similar negotiation to develop effective search terms.  This time Mr. Weinstein was not given a chance and the Debtors summarily rejected the first draft after only two days.

12.      The Debtors' concerns with the potential disclosure of privileged materials is equally overstated.  Here, there is no risk of the inadvertent production of documents which are

subject to the Debtors' attorney-client privilege or work product doctrine, because the previous 2004 Order expressly provides for the return of any such material under Fed. R. Evid. 502(d),[4] and Mr. Weinstein expects that an order granting the instant Motion could provide for similar protection. Moreover, as to the exculpatory materials that are present in the requested discovery, Mr. Weinstein is at a loss as to how any of the potentially exculpatory e-mails or other documents between him and a third-party could serve as the basis for the proper assertion of the attorney-client privilege or the work-product doctrine by TWC.

13.     On the other hand, and in contrast to the manageable burden imposed upon the Debtors and their estates,[5] the ongoing harm to Mr. Weinstein of permitting the Debtors to withhold his personal files is significant. Thus, under the facts here and weighing the burdens placed on each party, the Court should grant the requested production. *See In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008) (considering the "totality of circumstances" and requiring balancing test to ensure that the intrusiveness to the examinee is not greater than the benefit to the party seeking discovery); *In re Eagle-Picher Indus., Inc*, 169 B.R. 130, 134–35 (Bankr. S.D. Ohio 1994) (applying balancing test to burdens of 2004 motion).

---

[4]     *See* D.I. 976, at ¶ 11 ("Inadvertent Production. Nothing herein shall be deemed to waive any privilege of the Debtors. The Parties acknowledge and agree that the Debtors do not agree or intend to produce any privileged information by virtue of this Protocol Order. In the event the Debtors inadvertently produce privileged information in the Production, the Debtors shall promptly notify the Recipients of such inadvertent production and Recipients agree to immediately return or destroy all copies of such privileged document to Debtors and further agree not to use the document for any purpose whatsoever. The Parties further agree that the inadvertent production of any privileged information hereunder shall not constitute a waiver of any applicable privilege, including but not limited to the attorney-client privilege, attorney work-product protection or any other privilege or protection recognized by law. Recipients expressly agree not to make any argument in any forum or any matter that a privilege or protection has been waived as a result of the Production.").

[5]     Debtors' counsel have managed, through June 2018 alone, to accrue in excess of $10 million in fees and expenses. *See* D.I. 1522 (certification of counsel requesting order approving interim fee applications of the Debtors' professionals). Even at the Debtors' grandiose descriptions, it is unlikely that the requested production could meaningfully impact the enormous professional fees already being incurred by the Debtors. *See* Exh. I to Motion ("[t]he estate does not have the funds or authority to run those kinds of broad searches for your client's benefit. If he wants that kind of broad discovery, he has to proceed with a motion in the bankruptcy court."). Mr. Weinstein should not be required to fund the Debtors' professionals simply to get discovery that he has a legitimate basis to seek.

14.    Indeed, Mr. Weinstein's collective criminal and civil defense counsel believe that the Debtors' continued refusal to permit Mr. Weinstein access to his personal files has significantly impinged his ability to effectively defend himself from the allegations levied against him and is a continuing deprivation of and manifest injustice to his due-process rights. That is a significant burden.

15.    The Debtors also ask that "[i]f the Court grants Weinstein the discovery he seeks, or any portion of it, Weinstein should be ordered to pay all costs associated with that discovery in accordance with this Court's prior 2004 Order."  Debtors' Objection, at ¶ 44.  This request should be denied.

16.    First, while the prior 2004 order does contain a cost-shifting mechanism, that order arose in a different context than the Motion that is currently before the court and related to discovery of a completely different nature than the discovery Mr. Weinstein now seeks. Specifically, the cost-shifting provisions in the prior 2004 order were included as a settlement agreement by Mr. Weinstein in order to expedite the production of e-mails vital to his defense of the civil and criminal allegations levied against him.

17.    The context of this Motion is completely different.  It would be odd to force Mr. Weinstein to reimburse the Debtors for discovery related to amounts the Debtors owe to him and which Debtors' counsel committed to voluntarily produce without a Court order.

18.    Tellingly, the Debtors cite no cases for the novel proposition that a creditor should be compelled to pay a debtor to discover information sufficient to determine that creditor's claims against the estate.  To be sure, while the Debtors assert that Mr. Weinstein is seeking "precisely the same discovery that the Court declined to grant him at the May 8 hearing," Debtors' Objection, at ¶ 31, as described more fully in Mr. Weinstein's Motion, this request was

omitted from the 2004 Order as a result of the commitment of Debtors' counsel to voluntarily produce such documents, especially in light of the fact that they are relevant to Mr. Weinstein's understanding of his claims against the Debtors and the scope of his rights and interests *vis a vis* the assets proposed to be sold under the Sale Motion.  *See* Motion at ¶ 12.  Mr. Weinstein's counsel repeatedly tried to get the voluntary cooperation of Debtors' counsel through at least ten meet and confer communications, only to be told now that the "Court declined to authorize Weinstein to obtain that discovery on May 8, and Weinstein's second attempt to obtain the same discovery similarly should be denied."  Debtors' Objection, at ¶ 31.

19.    Second, beyond  the logical disconnect of compelling Mr. Weinstein to pay the Debtors for information required to determine amounts owed to him by the Debtors, under the "bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015) (citing *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 252–253, 130 S. Ct. 2149, 176 L.Ed.2d 998 (2010)).  And, courts have "recognized departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees under selected statutes.'" *Id.* (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 260, 95 S. Ct. 1612, 44 L.Ed.2d 141 (1975)).  Bankruptcy Rule 2004 provides no such "specific" or "explicit" provision for the allowance of the Debtors' attorneys' fees.  *See generally* Fed. R. Bankr. P. 2004.

20.    The cost of responding to the discovery requests of their creditors is one of the costs of the Debtors' decision to file a case under chapter 11.  There is no basis here for a departure from the bedrock principal that a party should pay its own attorneys' fees.

**B.**     ***Reply to Lantern Objection***

21.     The general thrust of the Lantern Objection is that Mr. Weinstein should seek the discovery requested in the Motion from the Debtors, rather than from Lantern.  *See, e.g.* Lantern Objection, at ¶ 2.  Mr. Weinstein agrees.  As discussed above, in the Motion, and in the Cousins Cert., for months Mr. Weinstein has sought the discovery requested from the Debtors—without involving Lantern—only to be strung along by repeated delays from the Debtors.

22.     Mr. Weinstein only included Lantern in the relief sought by the Motion in light of the Debtors direction on August 2, 2018—despite not previously raising the issue during months of discussion regarding the discovery request—that he seek the discovery instead from Lantern.

23.     As Lantern argues in the Lantern Objection, Mr. Weinstein believes that the direction to seek discovery from Lantern was an effort by the Debtors to deflect the costs of the discovery onto Lantern.  To the extent that the information requested by the Motion is in the Debtors' possession,[6] it should be produced to Mr. Weinstein by the Debtors.

24.     Additionally, and unlike the Debtors, if Lantern were forced to produce documents to Mr. Weinstein that could more easily be obtained from the Debtors, it is likely that Lantern could request the reimbursement of its costs as a non-party to the claims between Mr. Weinstein and the Debtors.  This is especially so given that any documents related to Mr. Weinstein's requests that Lantern might possess would have been required to be retained by the Debtor under the Sale Order.

25.     Lantern also asserts similar broad "good cause" and "undue burden" arguments as the Debtors.  *See,* generally Lantern Objection, at ¶¶ 5-11.  For the reasons discussed above in response to the Debtors' Objection, to the extent Mr. Weinstein seeks documents from Lantern,

---

[6]     Mr. Weinstein reserves all rights to require that any responsive documents which are in Lantern's possession but not in the Debtors' possession be produced to him by Lantern.

these arguments should be overruled. Moreover, to the extent Lantern is in possession of responsive documents that are not in the possession or control of the Debtors, the searches for those documents could be specific and narrowly tailored, further mitigating any burden on Lantern.

## RESERVATION OF RIGHTS

26.     Mr. Weinstein reserves the right to apply to this Court for further relief, as warranted, seeking additional discovery in connection with the matters described herein or matters relating thereto pursuant to Bankruptcy Rule 2004, Bankruptcy Rule 9016, or other applicable law.

## CONCLUSION

WHEREFORE, Mr. Weinstein respectfully requests that this Court: (i) overrule the Objections and enter an order granting the 2004 Motion and (ii) grant such other and further relief as it deems just and proper.

Dated: September 24, 2018
      Wilmington, Delaware

                                     **BAYARD, P.A.**

                                     */s/ Scott D. Cousins*
                                     Scott D. Cousins (No. 3079)
                                     Justin R. Alberto (No. 5126)
                                     Daniel N. Brogan (No. 5723)
                                     600 N. King Street, Suite 400
                                     Wilmington, DE 19801
                                     Telephone: (302) 655-5000
                                     Facsimile: (302) 658-6395
                                     scousins@bayardlaw.com
                                     jalberto@bayardlaw.com
                                     dbrogan@bayardlaw.com

                                     *Counsel for Harvey Weinstein*