IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
: 
In re: : Chapter 11
: 
The Weinstein Company Holdings LLC, *et al.*, : Case No. 18-10601 (MFW)
: 
Debtors. : (Jointly Administered)
: 
: Re: Docket Nos. 1350, 1416
:
---------------------------------------------------------------x

**DECLARATION OF ROBERT A. DEL GENIO IN SUPPORT OF MOTION OF THE DEBTORS AND LANTERN ENTERTAINMENT, LLC PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF STIPULATION REGARDING THE ASSUMPTION AND ASSIGNMENT OF NETFLIX CONTRACTS**

I, Robert A. Del Genio, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am over 18 years of age and competent to testify. I am the Chief Restructuring Officer ("**CRO**") of The Weinstein Company Holdings LLC ("**TWCH**"), the direct or indirect owner of each of its subsidiaries (together with TWCH, the "**Debtors**" or the "**Company**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").[1]

2. I am a Senior Managing Director for Corporate Finance and Restructuring at FTI Consulting, Inc.. I was retained by the Company to act as a financial advisor to the Company on October 26, 2017; my retention was expanded to CRO on or about December 1, 2017. I have more than 30 years of experience in restructuring and mergers and acquisitions and

---

[1] A list of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

1

have advised companies, lenders, creditors, corporate boards, and equity sponsors across a diverse range of industries both domestically and internationally.

3.  I submit this declaration (the "**Declaration**") in further support of the *Motion of the Debtors and Lantern Entertainment, LLC Pursuant to Fed. R. Bankr. 9019 for Approval of Stipulation Regarding the Assumption and Assignment of Netflix Contracts* [Docket No. 1350] (the "**Motion**").[2]

4.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinion based upon my experience, and knowledge of the Debtors' operations and financial condition or information provided to me by the Debtors' employees. If I were called upon to testify, I could and would testify to each of the facts set forth herein.

5.  Prior to the commencement of these Chapter 11 Cases, the Debtors entered into certain contracts with Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. (collectively, "**Netflix**").

6.  The Debtors filed voluntary petitions for bankruptcy on March 19, 2018.

7.  On March 20, 2018, the Debtors filed their sale motion [Docket No. 8], seeking approval of, among other things, their proposed bidding procedures (the "**Bidding Procedures**") and the sale (the "**Sale**") of substantially all of their assets to Lantern Entertainment LLC ("**Lantern**") or the party making the "highest or otherwise best" offer pursuant to the Bidding Procedures.

8.  On April 6, 2018, the Court entered an order approving the Debtors' Bidding Procedures [Docket No. 190] (the "**Bid Procedures Order**"). Under the Bidding

---

[2] Capitalized terms that are used herein and not otherwise defined shall have the meanings given to them in the Motion or the *Objection of Viacom International Inc. to Settlement Agreement Among the Debtors, Lantern and Netflix* [Docket No. 1416] (the "**Viacom Objection**").

Procedures Order, the deadline for submitting Qualified Bids (as defined in the Bidding Procedures Order) was April 30, 2018 (the "**Bid Deadline**").

9. By the Bid Deadline, the Debtors did not receive any Qualified Bids for substantially all of their assets other than Lantern's stalking horse bid. As a result, on May 1, 2018, the Debtors cancelled the auction that had been scheduled for May 4, 2018, and declared Lantern's bid the winning bid.

10. Pursuant to the Bidding Procedures Order, the Debtors filed notices of potential assumption and assignment of executory contracts or unexpired leases and cure amounts [Docket Nos. 216, 282, 482, and 860] (collectively, the "**Assumption Notices**"), each of which identified one or more of the Netflix Contracts.

11. Netflix raised multiple grounds for objection to the Assumption Notices, and Netflix, Lantern and the Debtors engaged in business-level discussions in order to try to reach consensual resolution.

12. Netflix filed two objections in order to preserve its rights with respect to the Assumption Notices before the business understanding was memorialized. On April 30, 2018, Netflix filed its *Limited Objection and Reservation of Rights of Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. to Assumption and Assignment of Certain Contracts to the Stalking Horse Bidder* [Docket No. 517] (the "**Limited Objection**"), and on May 7, 2018, Netflix supplemented its Limited Objection [Docket No. 819] (the "**Supplemental Objection**" and, together with the Limited Objection, the "**Netflix Objections**").

13. For example, and relevant to the Viacom Objection, Netflix argued that it had no obligation to license or pay for Season 3 of the program Scream because certain

contingencies were not satisfied. Specifically, I have been informed that ███████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████

14. Netflix raised numerous additional arguments in the Netflix Objections. Netflix also argued that certain contracts had been terminated pre-petition based on the delivery of termination notices invoking "key man" provisions ███████████████████ ███████

15. Netflix also raised objections on the grounds that certain contracts were allegedly personal services contracts.

16. Netflix further argued that it retained the right to terminate based on the triggering of the "key man" provisions.

17. Netflix is a large and sophisticated party that has demonstrated a willingness and ability to defend its rights in bankruptcy proceedings aggressively. In these Chapter 11 Cases, specifically, Netflix has retained highly competent bankruptcy counsel. As a result, and given that Lantern had informed the Debtors that it wished to acquire the Netflix Contracts (which was Lantern's right under the approved Asset Purchase Agreement (as amended)), the Debtors had every reason to expect that Netflix would litigate the Netflix Objections with tenacity.

18. In contrast to the expense, delay, costs, and uncertainty of litigating the Netflix Objections, the Debtors considered the benefits to the creditors and the Debtors' estates of settling.

19. I understand, upon consultation with counsel, that it would be expensive to litigate the Netflix Objections, that the litigation would involve complex issues, that the issues would require fact-intensive discovery, and that the outcome was uncertain.

20. I was further informed that █████████████████████████████████████████████████████████████████████████████████████████████████████████

21. Based on all of these considerations, including concerns about the cost and delay of litigating the Netflix Objections and Lantern's ability to consummate the Sale if such objections were not resolved, the Debtors determined that it was in the best interests of their estates and creditors to reach a settlement with Netflix on the terms set forth in the Stipulation.

22. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: October 12, 2018
New York, New York

/s/ Robert A. Del Genio
Robert A. Del Genio