# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*, | : | Case No. 18-10601 (MFW) |
|  | : |  |
|  | : | Jointly Administered |
| Debtors.[1] | : |  |
|  | : | **Hearing Date: November 29, 2018 at 11:30 a.m.** |
|  | : | **Objections Due: November 7, 2018 at 4:00 p.m.** |

## MOTION OF J.C. PENNEY CORPORATION, INC. TO COMPEL ASSUMPTION OR REJECTION OF LICENSING AGREEMENT

J.C. Penney Corporation, Inc. ("JCP") hereby files this objection (the "Motion") to compel assumption and rejection of a JCP licensing agreement, and in support thereof respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and this proceeding is in this district pursuant to 28 U.S.C. §§1408 and 1409.

### BACKGROUND

2. On March 19, 2018 (the "Petition Date") Weinstein Television LLC ("Weinstein Television") and its affiliates (collectively, the "Debtors") filed their voluntary petitions for relief under title 11, chapter 11 of the U.S. Code (the "Bankruptcy Code"). On March 20, 2018, the Court entered an order providing for the joint administration of the Debtors' bankruptcy cases.

---

[1] The last four digits of The Weinstein Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

{01374811;v2}    1

3. Prior to the Petition Date, Weinstein Television and JCP (collectively, the "Parties") entered into an agreement dated February 24, 2017 (as amended, the "Licensing Agreement").[2]

4. Pursuant to the Licensing Agreement, the Parties licensed their respective intellectual property in conjunction with the production of the television show Project Runway. Specifically, Weinstein Television licensed its trademarks to JCP[3] and JCP licensed its trademarks to Weinstein Television.[4]

5. On the Petition Date, the Debtors filed their *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction For, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notice s of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 8] (the "Bidding Procedures Motion"). By the Bidding Procedures Motion, the Debtors sought to put into place procedures for the sale (the "Sale") of substantially all assets (the "Assets").

6. On April 6, 2018, the Court entered an order approving the Bidding Procedures Motion.

---

[2] Due to confidentiality agreements between the Parties, the Licensing Agreement has not been attached to this Motion. JCP understands that the Debtors are in possession of a current copy of the Licensing Agreement. However, JCP will provide a copy of the Licensing Agreement to counsel for the Debtors upon request made to counsel for JCP.
[3] Licensing Agreement at § 2.1.
[4] *Id.* at § 9; *see also* section 5.1 of the Integration Agreement, attached as Appendix C to the Licensing Agreement, whereby JCP's marks were licensed to Weinstein Television.

{01374811;v2}  2

7. On April 13, 2018, the Debtors filed a notice [Docket No. 216] (the "Notice"), which set forth executory contracts and leases, set forth on Exhibit 1 to the Notice, that the Debtors proposed to assume and assign as part of the Sale process. The Notice identified JCP in three separate places as follows:

|  | **DEBTOR(S)** | **CONTRACT COUNTERPARTY** | **DESCRIPTION OF CONTRACT OR LEASE** | **CURE** |
|---|---|---|---|---|
| 3999 | WEINSTEIN TELEVISION LLC | J.C. PENNEY CORPORATION INC. | AGREEMENT DTD 2/24/17 JCP TO DESIGN COLLECTIONS INSPIRED AND INFORMED BY THE SHOW | $0.00 |
| 4020 | WEINSTEIN TELEVISION LLC | JC [sic] PENNEY CORPORATION INC. | AGREEMENT DTD 2/24/2017 | $0.00 |
| 4021 | THE WEINSTEIN COMPANY LLC | JC [sic] PENNEY CORPORATION LLC | JCP SPONSORSHIP AGREEMENT DTD 2/24/2017 | $0.00 |

8. On April 30, 2018, JCP filed an objection to the Notice [Docket No. 515] (the "Objection") asserting that the Licensing Agreement was not assignable pursuant to Bankruptcy Code section 365(c)(1)(A).

9. On May 9, 2018, the Court entered an order [Docket No. 846] (the "Sale Order") approving the Sale of the Assets to Lantern Entertainment LLC ("Lantern"). Pursuant to the terms of the Sale Order, Lantern had the right to designate executory contracts and leases that will be included among the Assets sold.

10. The Sale closed on July 13, 2018. *See Notice of Closing of Sale to Lantern Entertainment LLC* [Docket No. 1247].

11. The Objection was not set for hearing pending discussions among respective counsel for JCP, the Debtors, Lantern, and the Official Committee of Unsecured Creditors to determine whether, in fact, Lantern would seek to have the Licensing Agreement assigned to it.

{01374811;v2 }    3

Following these discussions, it is JCP's understanding that Lantern has determined not to have the Licensing Agreement assigned to it.

## RELIEF REQUESTED AND BASIS THEREFOR

12.     By this Motion, JCP seeks an order, pursuant to Bankruptcy Code section 365(d)(2), compelling the Debtors' assumption or rejection of the Licensing Agreement.  Section 365(d)(2) provides that the Debtors are required to either assume or reject executory contracts "at any time before the confirmation of a plan but the court, on request of any party to such contract . . . may order the trustee to determine within a specified period of time whether to assume or reject such contract . . . ." 11 U.S.C. § 365(d)(2).   In passing this section, Congress intended to give bankruptcy courts the power to compel a debtor to make up its mind on whether to assume or reject an executory contract and thus to "prevent parties in contractual . . . relationships with the debtor from being left in doubt concerning their status vis-à-vis the estate." *In re Beker Indus. Corp.*, 64 B.R. 890, 898 (Bankr. S.D.N.Y. 1986), (quoting H. Rep. No. 95-595, 95th Congress, 1st Session, 348-49 (1977)).

13.     While courts have not developed a uniform approach for evaluating a section 365(d)(2) motion, the favored analysis considers among the following twelve factors:

      a.     The nature of the interests at stake;

      b.     The balance of hurt to the litigants if the motion is granted or denied;

      c.     The good to be achieved by compelling assumption or rejection;

      d.     The presence of other safeguards afforded to the litigants;

      e.     Whether compelling assumption or rejection so contradicts the intent of Congress that to do so would be arbitrary;

      f.     The debtor's failure to satisfy its post-petition obligations under the executory contract whose assumption or rejection is sought to be compelled;

  g.  The damage to the creditor beyond the compensation available under the Bankruptcy Code;

  h.  The importance of the contract to the debtor's business and successful reorganization;

  i.  Whether the debtor has had sufficient time to appraise its financial situation and determine how the executory contract fits into its plan of reorganization;

  j.  Whether the court must determine if an executory contract exists;

  k.  Whether the exclusivity period under section 1121(b) of the Bankruptcy Code has expired; and

  l.  Whether compelling assumption or rejection furthers the purpose of Chapter 11, i.e. the debtor's successful rehabilitation.

*In re Adelphia Comms. Corp.*, 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003) (citations omitted).

  14.  While section 365(d)(2) speaks of assumption or rejection, the post-Sale circumstances of this case dictate that the only realistic choice for the Debtors is to reject the Licensing Agreement. The balance of the equities weighs heavily in favor of an expeditious rejection of the Licensing Agreement. The Sale closing occurred more than three months ago and the Debtors are not reorganizing. Moreover, upon information and belief, the Assets sold to Lantern included the intellectual property related to the Project Runway television show. It not entirely clear what the status of such intellectual property is, given that Project Runway is not currently on the air. However, it is clear that the Licensing Agreement no longer makes economic sense for either party because: (1) the Debtors are no longer in the business of producing any television shows; and (2) the Debtors do not own the intellectual property that gives rise to the Licensing Agreement.

  15.  Pending rejection of the Licensing Agreement, there remains great uncertainty for JCP as to its post-Sale obligations. This includes whether amounts coming due under the Licensing Agreement remain payable, given the fact that neither party can perform under the

agreement as originally contemplated.  The solution for resolving such doubt is for the Court to enter an order requiring the Debtors to expeditiously make a decision of assuming or rejecting the Licensing Agreement.  In the event the Licensing Agreement is rejected (which is the only rational result), JCP requests that the rejection be effective as of the Petition Date.

WHEREFORE, JCP respectfully requests that the Court enter an order compelling the Debtors, within five days of the entry of the order, to assume or reject the Licensing Agreement, and granting JCP such other and further relief and is just and appropriate under the circumstances.

Dated:  October 24, 2018

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*
Gregory A. Taylor, Esq. (#4008)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
Telephone:  (302) 654-1888
Fax:  (302) 654-2067
Email: gtaylor@ashbygeddes.com

-and-

**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
Marcus Alan Helt
Jason B. Binford
2021 McKinney Avenue
Suite 1600
Dallas, TX  75201
Telephone: (219) 999-3000
Facsimile:  (214) 999-4667
Email: mhelt@foley.com
Email: jbinford@foley.com

*Counsel to J.C. Penney Corporation, Inc.*