**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------------------ x
: 
In re:                                                                : Chapter 11
                                                                      :
THE WEINSTEIN COMPANY HOLDINGS LLC, ET AL.,   : Case No. 18-10601 (MFW)
                                                                      :
        Debtors.[1]                                                   : (Jointly Administered)
                                                                      :
------------------------------------------------------------------------ x

**MOTION OF FIRST REPUBLIC BANK FOR ORDER GRANTING RELIEF FROM AUTOMATIC STAY FOR CAUSE AND GRANTING RELATED RELIEF**

First Republic Bank ("First Republic"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order, substantially in the form attached as **Exhibit A** hereto (the "Proposed Order"), pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4000-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") granting First Republic relief from the automatic stay for cause and allowing First Republic to exercise its remedies in connection with the Polaroid Collateral (as defined herein). In support of this Motion, First Republic respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      As described in the First Day Declaration,[2] as of the Petition Date the Debtors were obligated to First Republic under that certain Loan and Security Agreement, dated as of

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

April 14, 2017 (the "Polaroid Credit Agreement"), between First Republic, as lender, and Debtor TWC Polaroid SPV, LLC ("TWC Polaroid"), as borrower.[3]  As of October 31, 2018, the outstanding principal amount due under the Polaroid Credit Agreement will be $5,337,853, not including interest (including post-petition interest), fees, costs, and expenses of not less than $445,291 (collectively, and including any amounts accruing or arising after October 31, 2018, the "Polaroid Credit Agreement Indebtedness").

2.      The Polaroid Credit Agreement Indebtedness is secured by substantially all of the assets of TWC Polaroid, including (as of October 31, 2018) $1,172,087 million in cash currently held by First Republic (the "Cash Collateral") as well as all of the Debtors' right, title, and interest in and to the motion picture currently entitled "Polaroid" (the "Film"), including, without limitation, copyright interests, distribution agreements, and all rights to tax incentives related to the Polaroid motion picture (the "Project Collateral").[4]

3.      The Debtors have not requested First Republic's consent to use the Cash Collateral, nor have they petitioned the Court for such authority.  The Debtors have ceased operations and have no use for the Project Collateral, which now sits idle at TWC Polaroid, a special purpose vehicle.  First Republic is unaware of any efforts the Debtors have made to monetize the Project Collateral.

---

[2]  The "First Day Declaration" is the *Declaration of Robert Del Genio in Support of First Day Relief* [Docket No. 7].

[3]  *See* First Day Decl. ¶ 26(b).

[4]  *See* First Day Decl. ¶ 26(b).  The Polaroid Credit Agreement defines the Polaroid Collateral as "all of the assets of the Borrower, including all accounts, deposit accounts, including the Collection Account and the Production Bank Account, all equipment, the Preprint Materials, all general intangibles, including all Fundamental Agreement Rights, inventory, investment property, copyrights, letter of credit rights, chattel paper, documents, the Physical Properties, instruments and other negotiable collateral, supporting obligations, and all other personal property of the Borrower and the proceeds of the foregoing, in each case whether now owned or hereafter acquired or arising and regardless of where located and whether or not in possession of the Borrower exclusive of the Excluded Collateral and all proceeds derived from the Excluded Collateral."  *See* **Exhibit B**, Polaroid Credit Agreement, at 7.

4. Under the APA (as defined herein) approved by this Court on May 9, 2018, Lantern Entertainment LLC ("Lantern") did *not* assume certain project level debt of various Debtors, including the ***Polaroid Credit Agreement Indebtedness, nor did Lantern purchase*** the collateral securing such project level debt, including the Cash Collateral and the Project Collateral. The Cash Collateral and the Project Collateral remain property of TWC Polaroid's estate. ***Lantern has not reached an agreement with First Republic on the assumption of the Polaroid Credit Agreement Indebtedness or any acquisition of the Cash Collateral or Project Collateral***.

5. Moreover, it now appears that Lantern is exercising control over, and may have held itself out as the owner of, the Film and its associated rights and interests. For example, 13 Films, a film and television international sales and finance company, has posted on its website that it has acquired the international distribution rights to the Film. That sales agent, presumably on authority or with direction from Lantern, has sent invoices to certain film distributors requesting payments related to the Film. Not only was this action conducted without First Republic's prior consent, Lantern neglected to inform First Republic that this collection activity was occurring. First Republic discovered this action occurred via communications with one of the distributors. While it is unclear if the invoices supplied by 13 Films request for the payments to be directed to Lantern, 13 Films, or First Republic, any such payments would be First Republic's collateral. Lantern's acts of ownership and control over First Republic's collateral (and over estate property) threaten the value of First Republic's collateral. Lantern is literally trying to sell First Republic's collateral without owning it.

6. Accordingly, and as further detailed below, cause exists to lift the stay under section 362(d)(1) of the Bankruptcy Code to permit First Republic to exercise its remedies with

respect to its collateral. First Republic will use commercially reasonable efforts to market its collateral for the highest and best price with any residual value (after payment of all of First Republic's secured obligations) being paid to the Debtors' estates, and will consult with the Debtors and the Official Committee of Unsecured Creditors (the "Committee") in marketing and selling its collateral. Accordingly, First Republic respectfully requests that the Court grant the Motion.

**RELEVANT BACKGROUND**

**I.  The Polaroid Credit Agreement and the Polaroid Collateral**

7.  First Republic, as lender, and TWC Polaroid, as borrower, are party to the Polaroid Credit Agreement, pursuant to which TWC Polaroid is indebted with respect to the Polaroid Credit Agreement Indebtedness. The Polaroid Credit Agreement is secured by properly perfected, first-priority, liens in substantially all of the assets of TWC Polaroid (the "Polaroid Collateral"), including the Cash Collateral and the Project Collateral.[5]

8.  TWC Polaroid defaulted on its obligations under the Polaroid Credit Agreement by, among other things, commencing a voluntary case under chapter 11 of the Bankruptcy Code.

9.  No party has contested the validity or priority of First Republic's security interests in the Polaroid Collateral.

**II.  Sale of Debtors' Assets**

10.  The Debtors commenced these chapter 11 cases on March 20, 2018 (the "Petition Date"), and filed a motion (the "Bidding Procedures Motion") seeking to sell substantially all of

---

[5]  In accordance with Local Bankruptcy Rule 4001-1(c), true and correct copies of the Polaroid Credit Agreement, the UCC-1 financing statement, and the Copyright Recordation are attached as **Exhibits B-D** hereto.

4

their assets to Lantern pursuant the terms of the asset and purchase agreement (the "APA") attached to the Bidding Procedures Motion, subject to higher and better offers.[6]

11. Section 2.3 of the APA, labeled Assumption of Liabilities, provided that Lantern would assume all liabilities arising out of any purchased assets, including Assumed Contracts (as defined in the APA), associated cure costs, and the liabilities listed in Schedule 2.3 of the APA. Schedule 2.3 specifically listed the First Republic Secured Loans (including the Polaroid Credit Agreement) as assumed liabilities.

12. On April 3, 2018, First Republic filed a limited objection and reservation of rights, noting that any assumption of the First Republic Secured Loans (including the Polaroid Credit Agreement), including the underlying debt and First Republic's other rights under the loan and security agreements, would require First Republic's express consent.[7] Because neither the Bidding Procedures Motion nor the APA described the terms on which Lantern proposed to assume the First Republic Secured Loans (including the Polaroid Credit Agreement) or the procedures or deadlines for obtaining First Republic's consent, First Republic reserved all rights in connection with the proposed assumption of the First Republic Secured Loans.

13. Addressing these, and similar arguments, the Court's Sale Order[8] provided that:

---

[6] *See Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially all of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E), Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 8].

[7] *See Reservation of Rights and Limited Objection of First Republic Bank in Connection with Proposed Bidding Procedures* [Docket No. 161]. First Republic raised similar issues in its objection to the sale of the Debtors' assets to Lantern. *See First Republic's Sale Objection in Connection with Stalking Horse Agreement* [Docket No. 556].

[8] The "Sale Order" is the *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 846].

5

> Notwithstanding any provision of the APA or any other provision of this Order to the contrary, the Purchased Assets shall not include any Covered Title or related Title Rights or tax credits solely to the extent such Covered Title or related Title Rights or tax credits relate to project level debt identified on Schedule 2.3 to the APA that is outstanding as of the Closing Date, unless, at or prior to the Closing, a written agreement is reached between the Purchaser and the applicable agents or lenders in respect of such project level debt.

Sale Order ¶ 57.

14. In other words, the Sale Order specifically provided that Lantern would not purchase any "Covered Title or related Title Rights" unless it was able to reach agreement, no later than the closing date, with the respective lender regarding the debt associated with any specific project identified in Schedule 2.3 to the APA—including the Polaroid Credit Agreement.[9]

15. The Debtors' sale to Lantern of substantially all of their assets closed on July 13, 2018,[10] without Lantern and First Republic reaching any agreement with respect to the Polaroid Credit Agreement Indebtedness. Accordingly, pursuant to paragraph 57 of the Sale Order, the Polaroid Collateral was not sold to Lantern and remains property of TWC Polaroid's estate.[11]

---

[9] A copy of Schedule 2.3 listing the First Republic Projects and the First Republic Secured Loans, as filed on the docket, is attached as **Exhibit E** hereto.

[10] *See Notice of Closing of Sale to Lantern Entertainment LLC* [Docket No. 1247].

[11] On July 11, 2018, the Court entered the *Order Approving Amendment to Asset Purchase Agreement Entered Into By and Between the Debtors and Lantern Entertainment LLC* [Docket No. 1220] (the "Second Amendment Order"), approving an amendment to the APA and giving Lantern 120 days from the date of entry of the order in which to resolve issues related to the assumption and assignment of executory contracts. The 120 day period approved by the Second Amendment Order expires on November 8, 2018. Paragraph 57 of the Sale Order explicitly governs over any provision of the APA, including as it may have been amended, and nothing in the Second Amendment Order indicates that paragraph 57 was being altered. Accordingly, First Republic believes that this 120 day period does not apply to the First Republic Collateral. Nonetheless, because certain executory contracts are included in the First Republic Collateral and because it was trying to negotiate a consensual resolution with Lantern, First Republic was willing to refrain from litigating its right to stay relief within the 120 period. However, Lantern's post-closing actions have changed these circumstances and necessitated the instant motion.

### III. Lantern's Post-Closing Actions Asserting Ownership of First Republic Collateral

16. Despite the fact that it did not purchase the Polaroid assets, including the Cash Collateral and the Project Collateral, since the closing date Lantern has held itself out to be, and acted as, the owner of these assets.

17. On October 4, 2018, Lantern filed the *Certification of Counsel Regarding Stipulation Among the Debtors, Lantern Entertainment LLC, Vertigo Prime, Inc. and Good Fear Film, Inc.* [Docket No. 1567] (the "Lantern CoC"). The Lantern CoC was filed in connection with a stipulation entered into between Lantern, the Debtors, and certain Producers (as defined in the Lantern CoC) with regards to a Producing Services Agreement (as defined in the Lantern CoC) between the Producers and the Debtors, pursuant to which the Producers agreed to provide producing services in connection with the Film. The Court entered an order approving the Lantern CoC on October 9, 2018.[12]

18. The Lantern CoC purported to resolve certain objections filed by the Producers in connection with the APA and its treatment of the Producing Services Agreement. Pursuant to the Lantern CoC, Lantern, the Debtor, and the Producers agree to treat the Producing Services Agreement—including the "results and proceeds of the Producers' services" under that agreement—as having been transferred to Lantern free and clear of any liens, claims, interests, or encumbrances.[13]

19. Notwithstanding Lantern's use of this Court's "certification of counsel" procedures, First Republic was not consulted in connection with the Lantern CoC and believes that the Lantern CoC, as well as any assignment or other transfer to Lantern in connection

---

[12] *See Order Approving Stipulation among the Debtors, Lantern Entertainment LLC Vertigo Prime, Inc. and Good Fear Film, Inc.*, Docket No. 1574.

[13] *See* Lantern CoC, Stipulation ¶ 4.

therewith, was procedurally improper and/or a violation of the automatic stay, and should be voided or found void.[14]

20. Significantly, even though substantially all assets related to the Film remain (i) property of the TWC Polaroid estate and (ii) First Republic's collateral, it has come to First Republic's attention that Lantern has entered into an agreement or arrangement with 13 Films to act as sales agent for the Film.[15] Moreover, 13 Films, presumably with authority from Lantern, has sent invoices to certain film distributors requesting payments related to the Film, which payments would, among other things, constitute First Republic's Cash Collateral or Project Collateral. First Republic also understands that Lantern has entered into, or is negotiating, a license agreement with Netflix related to the Film.[16] First Republic has not been provided with any details about these agreements. In fact, First Republic learned about the arrangement with 13 Films not from Lantern, but from a press report in a film industry publication.

## RELIEF REQUESTED

21. First Republic seeks entry of an order granting relief for cause from the automatic stay of section 362 of the Bankruptcy Code and allowing First Republic to exercise all rights to the Polaroid Collateral as provided by the Polaroid Credit Agreement and any related documents and agreements.

---

[14] Local Rule 9019-1(a) requires that any certification of counsel "must state whether the revised or agreed form of order has been reviewed and approved by all the parties affected by the order." The Lantern CoC contained no such statement and, indeed, was not discussed with First Republic prior to its filing. Moreover, Local Rule 9019-1(a) further requires that any certification of counsel "shall be served on all affected parties." However, Lantern, according to its own affidavit of service, did not serve the Lantern CoC until October 10, 2018—the day after the order granting the Lantern CoC was entered. *See Certificate of Service*, Docket No. 1587.

[15] First Republic has not seen a copy of this agreement. However, First Republic notes that, as of the date hereof, 13 Films' website displays Polaroid as one of its current "Projects." *See* 13 Films, http://www.13films.net/projects/ (last visited October 30, 2018).

[16] *See* Netflix Deal Developing For 'Polaroid' – Toronto, Deadline: Hollywood (Sept. 6, 2018), https://deadline.com/2018/09/netflix-acquires-polaroid-weinstein-horror-film-toronto-international-film-festival-1202458584/ (stating that Netflix will acquire rights to the Polaroid film, and will be "taking the title" from Lantern).

8

## JURISDICTION AND VENUE

22. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 157. The Motion is a core proceeding within the meaning of 28 U.S.C. 157(b)(2)(G). The statutory bases for the relief requested herein include section 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4000-1. Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

## BASIS FOR RELIEF REQUESTED

23. Section 362(d)(1) of the Bankruptcy Code requires the court to grant relief from the automatic stay "for cause, including the lack of adequate protection." Courts in this district have held that a movant bears the initial burden of putting forth a prima facie case for "cause" after which the debtor must then rebut the case. *In re Scarborough-St. James Corp.*, 535 B.R. 60 (Bankr. D. Del. 2015). A movant makes a prima facie case that it lacks adequate protection under section 362(d)(1) by showing "a quantitative decline in value of a property." *In re Garcia*, 584 B.R. 483, 488 (Bankr S.D.N.Y. 2018); *see also Matter of Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992) (courts require a movant seeking adequate protection "to show a decline in value of its collateral"). The Polaroid Collateral—especially the Project Collateral—is declining in value, and will continue to decline in value, while it sits, idle and unmonetized, in what is now no more than an empty special purpose vehicle.

24. This decline in value is accelerated by Lantern's post-closing actions. There can be no more direct threat to the value of First Republic's collateral, and its ability to realize that value, than Lantern's entry into an agreement with 13 Films for 13 Films to act, on Lantern's behalf, as the sales agent in connection with the Film. Similarly, issuing invoices and collecting

9

funds that should become Cash Collateral would result in a direct and immediate decrease in the value of First Republic's collateral.

25. Moreover, even without evidence of a decline in value of a creditor's collateral, "it is well established that a creditor can meet its initial burden" with respect to showing cause under section 362(d)(1) "by introducing evidence of the debtor's failure to make post-petition installment payments on a secured debt." *In re Epic Capital Corp.*, 290 B.R. 514, 526 (Bankr. D. Del. 2003) (lifting stay under section 362(d)(1) for cause even where there was "no evidence demonstrating that the value of the Collateral [was] deteriorating") (internal references omitted). Because First Republic is not receiving payments on the Polaroid Credit Agreement Indebtedness, cause exists to lift the stay under section 362(d)(1).

26. Further, lack of adequate protection is only one example of "cause" under section 362(d)(1). The Third Circuit has explained that to determine whether "cause" for stay relief exists, courts should consider the "totality of the circumstances in each particular case," and that to establish cause the movant must show that the "balance of hardships from not obtaining relief tips significantly in its favor." *In re Aleris Int'l, Inc.*, 456 B.R. 35, 47 (Bankr. D. Del. 2011) (quoting *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)). Bankruptcy courts in this district use a three prong balancing test to apply this rule, and consider whether (1) any great prejudice to either the bankruptcy estate or the debtor will result from lifting the stay, (2) the hardship to the movant considerably outweighs the hardship to the debtor if the stay is lifted, and (3) it is probable that the creditor will prevail on the merits of its case against the debtor. *Id.*

27. As discussed above, First Republic is receiving no payments on the Polaroid Credit Agreement Indebtedness. The Debtors, on the other hand, will suffer no prejudice from lifting the automatic stay either with respect to the Cash Collateral, which has been held by First

Republic since the Petition Date, or with respect to the Project Collateral, which was not included in the sale to Lantern and, instead, sits idle in an inactive entity. *First Republic will market the Polaroid Collateral and turn any excess proceeds, above the amount of the Polaroid Credit Agreement Indebtedness, to the Debtors' estates and will consult with the Debtors and the Committee on the marketing process*. Accordingly, the prejudice to First Republic significantly outweighs the (non-existent) prejudice to the Debtors of allowing First Republic to exercise remedies against the Polaroid Collateral. Finally, as demonstrated by the loan documentation attached hereto, the Polaroid Credit Agreement is a valid, first-priority, properly perfected secured loan secured by the Polaroid Collateral—which has not been contested by any party in interest. Accordingly, it is probable that First Republic will prevail on the merits of its claims against the Debtors.

## CONCLUSION

28. As discussed above, First Republic is entitled to relief from the automatic stay because the value of the Polaroid Collateral is declining and First Republic is receiving no adequate protection payments, or indeed any post-petition payments on its secured claim. This decline in the value of the Polaroid Collateral is both worsened and accelerated by Lantern's (illegal) attempts to sell the Polaroid Collateral. Moreover, failing to lift the automatic stay would prejudice First Republic, while granting the requested relief would not prejudice the Debtors.

## WAIVER OF BANKRUPTCY RULE 4001(A)(3)

29. Bankruptcy Rule 4001(a)(3) provides that any order lifting the automatic stay is stayed for 14 days "after the entry of the order, unless the court orders otherwise." First

Republic respectfully submits that in light of the harm it will suffer from the continuing decline in its collateral, there is cause to waive this 14-day stay.

## **NO PRIOR REQUEST**

30. First Republic Bank has made no prior request for the relief requested herein to this or to any other court.

WHEREFORE, First Republic respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto, (i) lifting the automatic stay to allow First Republic to exercise its rights against the Polaroid Collateral and (ii) granting such other and further relief as the Court finds just and proper.

Dated:  October 30, 2018                                **ASHBY & GEDDES, P.A.**

*/s/ William P. Bowden*
William P. Bowden, Esq. (#2553)
Katharina Earle, Esq. (#6348)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone:  (302) 654-1888
Facsimile:  (302) 654-2067

-and-

**PAUL HASTINGS LLP**

Andrew V. Tenzer, Esq.
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile:  (212) 230-7699
andrewtenzer@paulhastings.com

Susan Z. Williams, Esq.
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile:  (310) 620-5899
susanwilliams@paulhastings.com

*Counsel for First Republic Bank*