## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : Case No. 18-10601 (MFW) |
|  | : |
| THE WEINSTEIN COMPANY HOLDINGS | : Jointly Administered |
| LLC, *et al.*[1] | : |
|  | : **Re:   Dkt. Nos. 1635 and 1574** |
|  | : |
| Debtors. | : **Objection Deadline:  November 2, 2018** |
|  | : **Hearing:  November 6, 2018 at 2:00 p.m.** |

## LIMITED RESPONSE OF VERTIGO PRIME, INC. AND GOOD FEAR FILM, INC. TO MOTION OF FIRST REPUBLIC BANK FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Vertigo Prime, Inc. f/s/o Roy Lee ("**Lee**") and Good Fear Film, Inc. f/s/o Chris Bender ("**Bender**" and together with Lee, collectively, the "**Producers**"), through their undersigned counsel, submit this limited response (the "**Response**") to *Motion of First Republic Bank For Order Granting Relief From Automatic Stay For Cause and Granting Related Relief* **[Dkt. No. 1635]** (the "**Motion**")[2] and respectfully represents as follows:

### BACKGROUND

1.       On March 19, 2018 (the "**Petition Date**"), The Weinstein Company LLC ("**TWC**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] All capitalized terms not otherwise defined herein shall have the same meaning herein as is ascribed to such terms in the Motion.

"**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

2.    Prior to the Petition Date, TWC and the Producers entered into that certain Producing Services Agreement, dated January 6, 2017, as amended on March 10, 2017 (together with the exhibits and amendments thereto, the "**Producing Services Agreement**"), pursuant to which the Producers agreed to provide producing services in connection with the motion picture entitled "Polaroid" (the "**Film**").

3.    On March 20, 2018, the Debtors filed a *Motion for Entry of Orders . . . (II)(A) Approving* Sale *of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* **[Dkt. No. 8]** (the "**Sale Motion**"), requesting, among other things, approval of the sale of substantially all of their assets to Lantern Entertainment LLC ("**Lantern**") pursuant to an Asset Purchase Agreement dated March 19, 2018 (as amended, the "**APA**").

4.    On May 9, 2018, the Court entered an *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* **[Dkt No. 846]** (the "**Sale Order**"), approving the sale of substantially all of the Debtors' assets to Lantern pursuant to the APA.  The Film was listed in the APA as a Purchased Asset. Annex I to APA **[Dkt. No. 846-1]** at p. 162.

5.    On October 4, 2018, after months of communications with Lantern and its counsel, the Debtors and their counsel (and the incurrence by the Producers of significant expenses)

regarding the Film and the Producing Services Agreement, the Producers, Lantern and the Debtors executed a Stipulation (the "**Polaroid Stipulation**") resolving the Producers, the Debtors and Lanterns' disputes with respect to the sale of the Film and assumption by Lantern of the Debtors' obligations under the Producing Services Agreement.  By order, dated October 9, 2018 **[Dkt. 1574]** (the "**Polaroid Order**"), this Court approved the Polaroid Stipulation.

6.      On October 30, 2018, First Republic Bank (the "**Bank**") filed the Motion seeking an order granting it relief from the automatic stay with respect to the Polaroid Collateral (as that term is defined in the Motion) and allowing it to exercise its rights and remedies, including foreclosure, with respect to the Cash Collateral and the Project Collateral.

## LIMITED RESPONSE

7.      The Producers take no position with respect to whether the Bank is entitled to relief from the automatic stay, except that the Producers reserve their rights as to whether the Project Collateral includes the Producing Services Agreement.

8.      The Producers do, however, respectfully submit that the Film and other Project Collateral, whether in the hands of TWC, Lantern, the Bank or a subsequent transferee, (collectively, "**Counterparties**") is subject to the Producers' rights in, and the counterparties' future obligations under, the Producing Services Agreement.  TWC can only transfer an interest in what it owns and how it owns it.  The purported transfer of a security interest in, and lien on, the Film by TWC to the Bank was subject to the Producers' rights with respect to the Film under the Producing Services Agreement, including, without limitation, as provided in the Producing Services Agreement, the following:

> a.  the right of the Producers to receive certain credits with respect to the Film;
>
> b.  the right of the Producers to receiver certain contingent and other compensation in connection with exploitation of the Film;

    c.  the right of the Producers to be covered under any errors and omissions insurance policy obtained in connection with the Film;

    d.  the right to be indemnified in connection with the Film; and

    e.  the right to be offered the first opportunity to provide producing services in connection with any sequels, remakes or television productions in connection with the Film.

9.    Pursuant to section 9-617 of the Uniform Commercial Code, a secured party's disposition of collateral after default transfers to a transferee "all of the *debtor's* rights in the collateral." UCC § 9-617(a)(1) (emphasis added). Because TWC owned the Film subject to the Producing Services Agreement and the Producers' rights therein, so too the Bank takes its collateral subject to the same rights and any subsequent transferee of the Bank will take the Film in the same manner.

10.    By filing this Response, the Producers respectfully request that, if this Court decides to enter an order granting the Bank relief from the automatic stay, such order make clear that the Bank's right to foreclose on the Project Collateral are and be subject to the Producing Services Agreement and the Producers' rights therein.

## RESERVATION OF RIGHTS

11.    The Producers reserve their rights and remedies with respect to any foreclosure or the exercise of any other remedy by the Bank respecting the Project Collateral (and proceeds thereof) to the extent it affects any of their rights under the Producing Services Agreement or otherwise.

12.    In addition, the Polaroid Stipulation assumes that Lantern bought the Film. During the course of negotiating the Polaroid Stipulation, neither Lantern nor the Debtors ever disclosed to the Producers or their counsel that they had failed to reach an agreement with the Bank regarding the indebtedness allegedly owed to the Bank with respect to the Film and that Lantern had not, in

fact, purchased the Film.  The Producers spent months of time, effort and expense responding to pleadings and negotiating the Polaroid Stipulation when the Debtors and Lantern knew, or should have known, that Lantern did not actually own the Film.  The Producers reserve their rights and remedies against the Debtors and Lantern, including any claims and actions for fraudulent inducement, and requests for administrative claims in connection with the Producing Services Agreement and the Film.

## **CONCLUSION**

For the reasons stated above, the Producers respectfully request that any order entered by this Court granting the relief requested in the Motion or otherwise granting the Bank relief from the automatic stay expressly find that the Film and other Project Collateral, including the proceeds thereof, are and be subject to the Producers' rights under the Producing Services Agreement.

Dated:  November 2, 2018
      Wilmington, Delaware

                    **VENABLE LLP**

                    By:     *Jamie L. Edmonson*
                    Jamie L. Edmonson (No. 4247)
                    1201 N. Market St.
                    Suite 1400
                    Wilmington, Delaware 19801
                    Tel: (302) 298-3535
                    Fax: (302) 298-3550
                    jledmonson@venable.com

                      -and-

                    Jeffrey S. Sabin, Esq.
                    1270 Avenue of the Americas
                    New York, New York 10020
                    Tel:  (212) 503-0672
                    jssabin@venable.com

                      -and-

Keith C. Owens, Esq.
2049 Century Park East
Suite 2300
Los Angeles, California 90067
Tel: (310) 229-0370
kcowens@venable.com

*Counsel to Vertigo Prime, Inc. f/s/o Roy Lee and
Good Fear Film, Inc. f/s/o Chris Bender*