## **EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>Jointly Administered |

### AMENDED STIPULATION REGARDING ASSUMPTION AND ASSIGNMENT OF NETFLIX CONTRACTS

The Weinstein Company Holdings LLC and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), Lantern Entertainment LLC (together with its affiliates, "Lantern"), ~~and~~ Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. (collectively, "Netflix"), and Portfolio Funding Company LLC I ("PFC" and, together with the Debtors ~~and~~, Lantern and Netflix, the "Parties")~~,~~ by and through their respective counsel, hereby enter into this stipulation (the "Stipulation") and stipulate and agree as follows:

WHEREAS, on March 19, 2018 (the "Petition Date"), the Debtors commenced these voluntary Chapter 11 Cases in the United States Bankruptcy Court for the District of Delaware (the "Court").

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

1

WHEREAS, on March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 8].

WHEREAS, on April 6, 2018, the Court entered the *Order (I) (A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief* (the "<u>Bid Procedures Order</u>") [Docket No. 190].

WHEREAS, on April 13, 2018, the Debtors filed the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "<u>April 13 Notice</u>") [Docket No. 216], which attached an exhibit listing certain contracts and leases that the Debtors may potentially assume and assign as part of the sale contemplated by the Bid Procedures Order (the "<u>Sale</u>"), together with associated asserted cure amounts.  The April 13 Notice included certain contracts to which Netflix is a counter-party.

WHEREAS, on April 20, 2018, the Debtors filed the *Notice of Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the

2

"April 20 Notice") [Docket No. 282], which attached an exhibit listing certain additional contracts and leases that the Debtors may potentially assume and assign as part of the Sale, together with associated asserted cure amounts. The April 20 Notice included certain contracts to which Netflix is a counter-party.

WHEREAS, on April 27, 2018, the Debtors filed the *Notice of Second Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "April 27 Notice") [Docket No. 482], which attached an exhibit listing certain additional contracts and leases that the Debtors may potentially assume and assign as part of the Sale, together with associated asserted cure amounts. The April 27 Notice included certain contracts to which Netflix is a counter-party.

WHEREAS, on April 30, 2018, Netflix filed its *Limited Objection and Reservation of Rights of Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. to Assumption and Assignment of Certain Contracts to the Stalking Horse Bidder* (the "Limited Objection") [Docket No. 517].

WHEREAS, on May 7, 2018, Netflix filed its *Supplemental Limited Objection and Reservation of Rights of Netflix Global LLC, Netflix International B.V., Netflix Studios LLC, and Netflix, Inc. to Assumption and Assignment of Certain Contracts to the Stalking Horse Bidder* (the "Supplemental Objection") [Docket No. 819].

WHEREAS, on May 9, 2018, the Court entered its *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related*

*Relief* (the "Sale Order") [Docket No. 846], which *inter alia* approved the sale of substantially all of the Debtors' assets to Lantern.

WHEREAS, on May 10, 2018, the Debtors filed the *Notice of Final List of Potentially Assumed Contracts and Leases* (the "May 10 Notice") [Docket No. 860], which attached an exhibit listing certain contracts and leases that the Debtors may potentially assume and assign as part of the Sale, together with associated asserted cure amounts. The May 10 Notice included certain contracts to which Netflix is a counter-party.

WHEREAS, on July 11, 2018, the Court entered its *Order Approving Amendment to Asset Purchase Agreement Entered Into By and Between the Debtors and Lantern Entertainment LLC* [Docket No. 1220].

WHEREAS, on July 13, 2018, the Sale closed [Docket No. 1247].

WHEREAS, (i) PFC claims to own intellectual property rights and other valuable rights in, among others, the motion pictures listed on Exhibit A attached hereto and (ii) such motion pictures were licensed by the Debtors to Netflix under the Netflix Contracts (as defined below) (motion pictures satisfying both the preceding conditions, by whatever name any such motion picture is now or may hereafter become known, are referred to herein as the "Netflix PFC Titles").

WHEREAS, PFC has disputed that the Debtors had the right or authority to enter into the Netflix Contracts as licensor (as opposed to as sales agent for PFC) in relation to the Netflix PFC Titles.

WHEREAS, on or around March 8, 2018, PFC delivered to Netflix a notice (the "PFC Account Debtor Notice") that, among other things, (i) informed Netflix that PFC, not The Weinstein Company LLC ("TWC"), was the licensor (and TWC was acting in its capacity as

4

sales agent for PFC) with respect to the Netflix PFC Titles and (ii) instructed Netflix to make all license fee payments in respect of Netflix PFC Titles to a bank account designated by PFC therein.

WHEREAS, the ~~Debtors, Lantern, and Netflix~~Parties desire to enter into this Stipulation to provide for the terms and conditions pursuant to which Netflix will consent to the assumption and assignment of certain of its contracts with the Debtors in connection with the Sale.

**NOW, THEREFORE**, it is hereby stipulated and agreed to by and among the Parties:

1. The foregoing recitals are hereby fully incorporated into and made an express part of this Stipulation.

2. This Stipulation shall be effective upon its execution by the Parties hereto~~, the Closing of the Sale to Lantern,~~ and the entry by the Court of an Order approving this Stipulation (such date, the "Effective Date").

3. Netflix consents to the assumption by the Debtors and assignment to Lantern of the contracts to which Netflix is a party that are set forth in the April 13 Notice, the April 20 Notice, the April 27 Notice, and the May 10 Notice (collectively, the "Netflix Contracts") in connection with the Sale and subject in all respects to the terms and conditions set forth in the Netflix Contracts and this Stipulation.

4. The Debtors and Lantern acknowledge and agree that all output periods and similar production or development periods under the Netflix Contracts have expired or are terminated as of no later than July 11, 2018, including, but not limited to, (a) the "Output Period" as defined in that certain License Agreement for Internet Transmission No. 4, dated as of August 12, 2013, by and between Netflix, Inc. and ~~The Weinstein Company LLC~~TWC, as amended from time to time ("Output Agreement No. 4"); and (b) the "Output Period" as defined in that

certain License Agreement for Internet Transmission, dated as of July 24, 2014, by and between Netflix, Inc. and ~~The Weinstein Company LLC~~TWC, as amended from time to time.  Except as otherwise provided herein, Netflix shall have no obligation to accept delivery or pay any amount under any Netflix Contract with respect to motion pictures, television shows, or any other content that as of July 11, 2018 had not been delivered by the Debtors and accepted by Netflix, including, without limitation, Season 3 of the "Scream" television series; *provided that*, Netflix shall accept delivery of (a) Season 2 of the "Spy Kids" animated children's television series in accordance with the terms and conditions set forth in that certain License Agreement, dated as of April 11, 2016, by and between Netflix, Inc. and Weinstein Television LLC and (b) "Chronicles of an Escape" in accordance with the terms and conditions set forth in Amendment #2, dated as of October 3, 2012, and Amendment #9, dated as of ___, 2018, to that certain License Agreement for Internet Transmission No. 1, dated as of January 23, 2012.  Netflix hereby acknowledges that it has accepted delivery of all of the Netflix PFC Titles.

     5.     Netflix agrees to waive that certain $326,000 audit claim in respect of that certain "Confidential Crouching Tiger Hidden Dragon:  The Green Legend Term Sheet," dated as of August 22, 2014, by and between Netflix Studios, LLC and CTHD2 LLC, as amended from time to time (the "CTHD2 Term Sheet").  For the avoidance of doubt, except as set forth in the immediately-preceding sentence, nothing in this Stipulation, the Sale Order, the Asset Purchase Agreement governing the Sale, the April 13 Notice, the April 20 Notice, April 27 Notice, May 10 Notice, or any other order, document, or agreement relating to the assumption and assignment of the Netflix Contracts shall in any way affect (a) any payment obligations of Netflix or the Debtors/Lantern pursuant to the Netflix Contracts that may come due after the July 11, 2018 (including any obligations relating to prepetition time periods), which obligations shall be

assumed and paid by Lantern or paid by Netflix, as applicable, including, but not limited to, any amount due under paragraph 8(d) of that certain Amendment No. 2 to Term Sheet, dated as of April 25, 2016, which amends the CTHD2 Term Sheet or (b) any audit or similar rights and obligations under the Netflix Contracts and any associated payment, set off, or recoupment rights and obligations, including with respect to audits for time periods that occurred prior to July 11, 2018.

6. The Netflix Contracts shall be assumed and assigned together to a single entity, LE Film Distribution LLC.  Netflix agrees to execute a Notice of Assignment and Irrevocable Instructions substantially in the form attached hereto (the "NOA"); *provided*, that notwithstanding anything to the contrary in the NOA, the NOA shall remain valid if this Stipulation is approved by the Court by not later than ~~September 6, 2018~~November 8, 2018; and *provided further* that the NOA shall not apply to any PFC Netflix License Fees (as defined below), which shall be paid as set forth in paragraph 10 of this Stipulation.

7. With respect to each Netflix Contract assumed and assigned in connection with the Sale pursuant to this Stipulation, such assumption and assignment shall be deemed to include all amendments, license and other agreements, and other ancillary documents related to each such assumed and assigned Netflix Contract.

8. As set forth in it the Supplemental Objection, Netflix withheld approximately $1,600,000 (the "Withheld Funds") from license fees otherwise due to the Debtors under Output Agreement No. 4 on account of the Peaky Blinders Dispute (as defined therein).  Upon (i) receipt by Netflix of a joint instruction from Lantern and Endemol Shine (as defined in the Supplemental Objection) or (ii) a final non-appealable unstayed order being entered by a Court of competent jurisdiction resolving the Peaky Blinders Dispute in favor of the Debtors and/or

Lantern, such that the agreement between the Debtors and Endemol Shine that Endemol Shine contends was terminated is assumed and assigned to Lantern and Endemol Shine receives all the license fees owed to it on account of Peaky Blinders, then Netflix shall remit the Withheld Funds to Lantern or pursuant to the terms of the joint instruction, as applicable, in each case, at the same time the next-scheduled payment of license fees otherwise due under the Netflix Contracts to Lantern and Lantern shall perform its obligations with respect to Peaky Blinders under the assumed and assigned Output Agreement No. 4, including without limitation Amendment #1. In the event the Peaky Blinders Dispute is not resolved favorably to the Debtors and/or Lantern, as applicable, then Netflix will cooperate in good faith with Lantern and Endemol Shine to determine the correct recipient of the Withheld Funds, it being understood that the purpose of the withholding was to protect Netflix from the risk of either being obligated to pay both Endemol Shine and the Debtors for the same license period or of not receiving the full benefit of the license to which it is entitled in consideration of the license fees it agreed to pay for such license.

9. Upon the occurrence of the Effective Date, the Limited Objection and the Supplemental Objection shall be deemed to be withdrawn by Netflix.

10. This paragraph 10 applies to the Netflix PFC Titles.

(a) PFC consents to the assumption and assignment of the Netflix Contracts subject to the limitations set forth in this paragraph 10 of this Stipulation with respect to the Netflix PFC Titles and, subject to payment by Netflix of the PFC Netflix License Fees in accordance with paragraph 10(b) of this Stipulation, agrees not to disturb or interfere in any way with Netflix's rights with respect to the Netflix PFC Titles under the Netflix Contracts, including, without limitation, by licensing the Netflix PFC Titles to any third party in manner

that would constitute a violation of the Netflix Contracts or interfere with the full enjoyment by Netflix of its rights under the Netflix Contracts.

(b) Netflix, for its part, irrevocably agrees to pay all license fees with respect to the Netflix PFC Titles that first become due on or after September 1, 2018 under the Netflix Contracts ("PFC Netflix License Fees") by wire transfer to (i) the PFC bank account identified in paragraph 2(a)(i) of the PFC Account Debtor Notice, (ii) until TWC rejects the Multi-Picture Distribution Services Agreement, dated as of July 29, 2010, and amended on October 20, 2010, between TWC and PFC (the "DSA"), such other account as PFC may designate in writing from time to time to Netflix, with a courtesy copy of the notice to TWC, (iii) upon the rejection of the DSA by TWC, to such other account as PFC may designate in writing from time to time to Netflix or (iv) such other account designated by order of the Court (each, a "PFC Collection Account"), as such payments become due under the Netflix Contracts, without any offset, recoupment or other reduction or defense based on any claim or other right asserted by Netflix with respect to any other motion picture that is not the subject of such claim or asserted right, all of which claims and other rights are hereby waived by Netflix for the benefit of PFC, the Debtors and each of their respective successors and assigns.

(c) Lantern (i) consents to the provisions of paragraphs 10(a) and (b) of this Stipulation, and (ii) shall pay, within ten days following the Effective Date, by wire transfer to the PFC Collection Account, an amount equal to US$244,362.75 (which represents the amount of PFC Netflix License Fees that Netflix paid to Lantern during the months of August and September 2018). Lantern acknowledges that Netflix neither has nor had any liability or obligation to Lantern with respect to the PFC Netflix License Fees that Netflix paid to Lantern during the months of August and September 2018. PFC acknowledges and agrees that, upon

payment of such amount by Lantern to the PFC Collection Account, and except as otherwise provided in paragraph 10(f) of this Stipulation, PFC shall not be entitled to assert any claims, rights of setoff or rights of equitable recoupment against Lantern with respect to any PFC Netflix License Fees or any other amounts related to the Netflix Contracts.

(d) Notwithstanding anything to the contrary contained herein or in the Netflix Contracts, Netflix, the Debtors and Lantern acknowledge and agree that (i) Lantern does not have any interest in, or rights with respect to, the Netflix PFC Titles, (ii) Lantern shall not acquire any interest in or rights with respect to the Netflix PFC Titles as a result of the assumption and assignment of the Netflix Contracts, and (iii) with respect to the Netflix PFC Titles, Netflix shall owe to PFC all obligations that Netflix owes to the "Distributor" under the terms of the Netflix Contracts arising or coming due from and after the Effective Date (as amended by this Stipulation).

(e) Netflix shall, from time to time following the Effective Date, provide to PFC such information as PFC reasonably requests with respect to payments of PFC Netflix License Fees that first became due for payment on or before the Effective Date. PFC and Netflix agree that PFC reserves the right to seek payment from Netflix of any PFC Netflix License Fees that first became due for payment before August 1, 2018 that Netflix did not pay to, or at the direction of, the Debtors (other than PFC Netflix License Fees that Netflix did not pay to, or at the direction of, the Debtors because Netflix offset such PFC Netflix License Fees before the Petition Date against amounts allegedly owed by the Debtors to Netflix).

(f) The arrangements described in this paragraph 10 are without prejudice to the rights and claims of the Debtors or Lantern, on the one hand, and PFC, on the other hand, *inter se* with regard to all matters other than the assumption and assignment of the Netflix

<u>Contracts.  Notwithstanding anything to the contrary in this Stipulation, in relation to the Netflix Contracts, the Netflix PFC Titles and the PFC Netflix License Fees, (i) the Debtors, Lantern and PFC reserve their rights, including, without limitation, rights of setoff and rights of equitable recoupment, with respect to the "Excluded Receipts," "Distribution Fees" and "Distribution Receipts" (each as defined in the DSA) (*provided*, that, if (a) the DSA and the related agreements between PFC and the Debtors are not assumed by the Debtors and assigned to Lantern and (b) Lantern irrevocably disclaims any right, title and interest in and to any "Distribution Fees," "Distribution Expenses," and license fees relating to the PFC Titles, PFC shall have no right to assert any such claims or rights with respect to "Distribution Fees" and "Distribution Expenses" against Lantern or any license fees owed to Lantern), (ii) PFC reserves the right to seek payment from the Debtors or Lantern of any PFC Netflix License Fees that have been, or are in the future, paid to the Debtors or Lantern, and that are not (or were not) remitted by the Debtors or Lantern, as the case may be, to the PFC Collection Account and (iii) the Debtors and Lantern reserve their respective rights to seek payment from PFC of any license fees under Netflix Contracts owed to the Debtors or Lantern, as applicable (other than, for the avoidance of doubt, PFC Netflix License Fees), that have been, or are in the future, paid to PFC (including to the PFC Collection Account or the Collection Account (as defined in that certain Amended and Restated Master Account Agreement dated as of January 24, 2012 among PFC, TWC and the other parties thereto)), and that are not, or have not been, remitted to the Debtors or Lantern, as applicable.  Notwithstanding any other term of this Stipulation, including, without limitation, paragraph 11, nothing in this Stipulation shall affect or derogate from the provisions of this Stipulation that relate to the Netflix PFC Titles.</u>

(g) With respect to the remaining payment (the "Remaining Amendment #3 Payment") required to be made by Netflix under that certain Amendment #3 to the License Agreement for Internet Transmission No. 2, entered into as of March 11, 2016 (the "Amendment #3"), Netflix shall pay (i) USD$156,862.69 of the Remaining Amendment #3 Payment to PFC, by wire transfer to the PFC Collection Account, on account of PFC Netflix License Fees owed with respect to the Netflix PFC Titles licensed to Netflix under Amendment #3 and (ii) the remainder of the Remaining Amendment #3 Payment to Lantern.

(h) The respective obligations of Lantern, the Debtors and PFC to Netflix arising under this Stipulation shall be several and not joint.

11. Notwithstanding any other term in this Stipulation, to the extent the Netflix Contracts pertain to motion pictures that are the subject of the *Limited Objection of Interested Parties Studiocanal S.A.S., Gaumont S.A., Wild Bunch, S.A., Delta Last Legion Ltd., Quinta Communications S.A. and Orange Studio (formerly Studio 37) to (A) Proposed Cure Amounts and (B) Assumption of Executory Contracts, and Reservation of Rights* [Docket No. 597] (each, a "Subject Picture"), the assumption by Debtors of such Netflix Contracts and the assignment of such Netflix Contracts to Lantern are hereby conditioned upon either (i) approval by the Court of a stipulation providing for the assumption by the Debtors and the assignment to Lantern of the underlying license agreement granting rights to the applicable Subject Picture to Debtors, or any of them; or (ii) a further Order of this Court entered with Interested Parties' consent or in response to a noticed motion that is served on Interested Parties upon the filing of such noticed motion.

~~10~~12. The Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Stipulation.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the Parties hereby have caused this Stipulation to be duly executed.

Date:  ~~August 13~~<u>November 2</u>, 2018
       Wilmington, Delaware

| LAW OFFICE OF CURTIS A. HEHN | RICHARDS, LAYTON & FINGER, P.A. |
|---|---|
| /s/ ~~*Thomas E*~~<u>*Curtis A*</u>. ~~*Patterson*~~<u>*Hehn*</u> | /s/ *Zachary I. Shapiro* |
| Curtis A. Hehn (DE Bar No. 4264) | Mark D. Collins (No. 2981) |
| 1007 N. Orange Street, 4th Floor | Paul N. Heath (No. 3704) |
| Wilmington, DE 19801 | Zachary I. Shapiro (No. 5103) |
| Telephone: (302) 294-2591 | Brett M. Haywood (No. 6166) |
| Cell: (302) 757-3491 | David T. Queroli (No. 6318) |
| Facscimile: (302) 351-7214 | One Rodney Square |
| Email: curtishehn@comcast.net | 920 North King Street |
|  | Wilmington, Delaware 19801 |
|  | Telephone: (302) 651-7700 |
| and | Facsimile: (302) 651-7701 |
|  |  |
| KLEE, TUCHIN, BOGDANOFF & STERN LLP | and |
| Thomas E. Patterson (admitted *pro hac vice*) | CRAVATH, SWAINE & MOORE LLP |
| Julian I. Gurule (admitted *pro hac vice*) | Paul H. Zumbro (admitted *pro hac vice*) |
| 1999 Avenue of the Stars | George E. Zobitz (admitted *pro hac vice*) |
| Thirty-Ninth Floor | Karin A. DeMasi (admitted *pro hac vice*) |
| Los Angeles, CA 90067-6049 | Worldwide Plaza |
| Telephone: (310) 407-4000 | 825 Eighth ~~Plaza~~<u>Avenue</u> |
| Facsimile: (310) 407-9090 | New York, New York 10019 |
| Email: tpatterson@ktbslaw.com | Telephone: (212) 474-1000 |
| Email: jgurule@ktbslaw.com | Facsimile: (212) 474-3700 |
| *Attorneys for Netflix* | *Attorneys for the Debtors and Debtors in Possession* |

[*Signature Pages Continue on Following Page*]

| | |
|---|---|
| PEPPER HAMILTON LLP | WHITEFORD PRESTON & TAYLOR LLC |
| ~~/s/ Meredith A. Lahaie~~ <br> /s/ Evelyn J. Meltzer | /s/Christopher M. Samis |
| David B. Stratton, Esq. <br> David M. Fournier, Esq. <br> Evelyn J. Meltzer, Esq. <br> Hercules Plaza, Suite 5100 <br> 1313 N. Market Street <br> Wilmington, DE 19801 <br> Email: stratton@pepperlaw.com; <br> Email:  fournierd@pepperlaw.com; <br> Email:  meltzere@pepperlaw.com | Christopher M. Samis (No. 4909) <br> L. Katherine Good (No. 5101) <br> Aaron H. Stulman (No. 5807) <br> The Renaissance Center, Suite 500 <br> 405 North King Street <br> Wilmington, DE 19801 <br> Telephone: (302) 353-4144 <br> Facsimile:  (302) 661-9750 <br> Email: csamis@wtplaw.com; <br> Email:  kgood@wtplaw.com; <br> Email:  astulman@wtplaw.com |
| and | and |
| AKIN GUMP STRAUSS HAUER & FELD LLP <br> Abid Qureshi, Esq. <br> Stephen B. Kuhn, Esq. <br> Meredith A. Lahaie, Esq. <br> Michael S. Stamer, Esq. <br> One Bryant Park <br> Bank Of America Tower <br> New York, NY 10036 <br> Email: aqureshi@akingump.com; <br> mstamer@akingump.com; <br> skuhn@akingump.com; <br> mlahaie@akingump.com; <br> nmoss@akingump.com <br><br> *Attorneys for Lantern Entertainment~~,~~ LLC* | AKIN GUMP STRAUSS HAUER & FELD LLP <br> David P. Simonds (admitted *pro hac vice*) <br> Edward J. McNeilly (admitted *pro hac vice*) <br> 1999 Avenue of the Stars <br> Suite 600 <br> Los Angeles, California 90067 <br> Telephone: (310) 229-1000 <br> Facsimile: (310) 229-1001 <br> Email: dsimonds@akingump.com <br> Email: emcneilly@akingump.com <br><br> Deborah J. Newman (admitted *pro hac vice*) <br> One Bryant Park <br> Bank Of America Tower <br> New York, NY 10036 <br> Telephone: (212) 872-1000 <br> Facsimile: (212) 872-1002 <br> Email: djnewman@akingump.com <br><br> *Attorneys for Portfolio Funding Company LLC I* |

| Summary report: Litéra® Change-Pro TDC 10.0.0.42 Document comparison done on 11/2/2018 9:34:47 PM | |
|---|---|
| **Style name:** PH Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://PHDMS/ACTIVE/50742579/1 | |
| **Description:** TWC - Original Netflix Stipulation re Assumption and Assignment (Docket No. 1350) | |
| **Modified DMS:** iw://PHDMS/ACTIVE/50742570/1 | |
| **Description:** TWC - Amended Netflix Stipulation re Assumption and Assignment 4829-0561.._ | |
| **Changes:** | |
| Add | 65 |
| Delete | 20 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 3 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 88 |