### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
                                     :  Chapter 11
In re:                               :
                                     :  Case No. 18-10601 (MFW)
The Weinstein Company Holdings LLC, et al.,  :
                                     :  (Jointly Administered)
        Debtors.¹                    :
                                     :  Re: Docket No. 1540
                                     :
                                     :  Obj. Deadline: October 9, 2018²
                                     :  Hr'g Date: November 6, 2018 at 2:00 p.m. (ET)
------------------------------------------------------------x
```

### JOINT OBJECTION OF DEBTORS AND LANTERN ENTERTAINMENT LLC TO MOTION OF CERTAIN CONTRACT COUNTERPARTIES TO COMPEL ASSUMPTION OF EXECUTORY CONTRACTS

The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") and Lantern Entertainment LLC (together with its affiliates, "**Lantern**") respectfully submit this Joint Objection (the "**Objection**") to *Motion of Certain Contract Counterparties to Compel Assumption of Executory Contracts* [Docket No. 1540] (the "**Motion**")[3] and represent as follows:

### PRELIMINARY STATEMENT

1.      By the Motion, the Counterparties seek to force a decision on the Debtors and Lantern in a manner that is contrary to the Bankruptcy Code and this Court's prior rulings. Fundamentally, the Counterparties fail to identify any applicable authority that would support the

---

[1]   The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

[2]   Extended with the consent of the Counterparties (as defined herein) to November 5, 2018 at 10:00 a.m. (ET).

[3]   Capitalized terms that are used herein and not otherwise defined shall have the meanings given to them in the Motion.

extraordinary act of not only compelling the Debtors to assume certain contracts, but also requiring Lantern, in its capacity as the purchaser of the Debtors assets, to accept the assignment of such contracts against its will regardless of whether it wants to have the contracts assigned to it and regardless of the cure costs. The Counterparties point to no such authority because none exists.

2.       In addition to lacking any authority to support the relief requested in the Motion, the Counterparties also misconstrue this Court's prior rulings and orders. Putting aside their misinterpretation of the Bid Procedures Order, the APA, and the Sale Order, the Counterparties' arguments do not add up to an exemption from the Court-approved settlement that explicitly allows Lantern 120 days after July 11, 2018 (*i.e.*, by November 8, 2018) to make final determinations on whether to take assignment of the Debtors' executory contracts. Under that settlement, which was embodied in the second amendment to the APA (the "**Second Amendment**") that was approved by this Court, Lantern committed to close the transaction, and agreed to an outside date by which to designate contracts for assumption and assignment where there had previously been no such limitation. Only briefly alluded to in the Motion is the fact that the Counterparties raised the same arguments asserted in the Motion in the context of an objection to approval of the Second Amendment. At the hearing on the approval of the Second Amendment, the Court overruled the Counterparties' objection and correctly recognized that the designation of which contracts will be assumed and assigned to a purchaser routinely occurs post-closing.

3.       For the foregoing reasons and as more fully set forth in this Objection, the Debtors and Lantern respectfully request that the Court deny the Motion.

#50746788 v1

## BACKGROUND

4.    On March 19, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

5.    On March 20, 2018, the Debtors filed the Sale Motion [Docket No. 8], pursuant to which, among other things, the Debtors sought the Court's authority to sell substantially all of their assets and certain procedures related thereto.

6.    On April 6, 2018, the Court entered the Bid Procedures Order [Docket No. 190]. The Bid Procedures Order approved procedures relating to the assumption and assignment of contracts.  (Bid Procedures Order ¶ 23.)  These procedures included, among other things, that: (i) the Debtors file a list of contracts and leases, with cure amounts, that *may* be assumed and assigned in connection with the Sale (Bid Procedures Order ¶ 24); and (ii) parties objecting to a proposed assumption and assignment of their contract or leases, the Debtors' cure amounts, or the ability of the stalking horse bidder to provide adequate assurance of future performance do so by a certain date (Bid Procedures Order ¶ 25).  The Bid Procedures Order contemplated that disputes with respect to assumption and assignment might be resolved after the hearing on the sale, and set no deadline by which such disputes had to be resolved.  (Bid Procedures Order ¶ 26.)  Relevant to the present dispute is the following provision of the Bid Procedures Order:

> Unless otherwise provided in the Successful Bidder's Asset Purchase Agreement, at any time prior to prior to the Closing Date, the Successful Bidder may elect to amend the Contracts Schedule pursuant to Section 2.8(a) of the Asset Purchase Agreement.  Any Contract or Lease that remains on the Contracts Schedule as of such date *and which the Successful Bidder designates in writing for assumption*, shall be assumed by the Debtors and assigned to the Successful Bidder as part of the Sale …., subject to the resolution of any Assumption and Assignment Objection with respect to such contract or lease. All such Contracts that are not on the Assumed Contracts Schedule shall be deemed "Excluded Contracts" under the Asset Purchase Agreement.

(Bid Procedures ¶ 28) (emphasis added).[4]

7.      Accordingly, pursuant to the Bid Procedures Order, the Debtors filed and served lists of contracts and leases that potentially would be assumed and assigned under Bankruptcy Code section 365 in connection with the sale (collectively, the "**Initial Assumption Lists**").[5] Each Initial Assumption List identified that the contracts detailed therein were only potentially subject to assumption and assignment.[6]

8.      On May 9, 2018, the Court entered the Sale Order [Docket No. 846], which, among other things: (i) approved the sale to Lantern as contemplated in that certain Asset Purchase Agreement dated March 19, 2018 (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**APA**"); and (ii) authorized (but did not direct) the assumption and assignment of the executory contracts and leases that were identified in the *Notice of Filing of Final List of Potentially Assumed Contracts and Leases* [Docket No. 860] (the "**Final Pre-Closing Assumption List**").

9.      The Sale Order and the APA expressly contemplate that disputes regarding assumption and assignment may be resolved and contracts may be assumed after the Closing Date.  First, the Sale Order provided that, on the Closing Date, *or as soon as reasonably practicable thereafter*, the Debtors were to file and serve a final notice identifying which

---

[4]    The APA sets forth a similar procedure (but which procedure must be considered in conjunction with other sections of the APA and this Court's subsequent orders): "Prior to the Closing Date, Buyer, in its sole discretion by written notice to the Seller Parties, shall designate in writing which Available Contracts … Buyer wishes to "assume" … and subject to the right of the Buyer, at any time prior to the Closing Date, Buyer may, in its sole discretion, determine not to "assume" any Available Contracts previously designated as an Assumed Contract. All executory Contracts of the Seller Parties that are listed on Section 2.8(a) of the Disclosure Schedule as of the Closing Date and which Buyer does not designate in writing for assumption shall not be considered Assumed Contracts or Purchased Assets and shall automatically be deemed 'Excluded Contracts.'"  APA § 2.8(a).

[5]    *See* Docket Nos. 216, 282, and 482.

[6]    Such notices were captioned as notices of potential assumption and assignment and stated, in a conspicuous manner, that "*[t]he presence of a Contract or Lease listed on Exhibit 1 attached hereto does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease or that such Contract or Lease will be assumed and assigned as part of the Sale*" (emphasis in original).  *Id.*

#50746788 v1

contracts or leases would be Assumed Contracts (as defined in the APA).  (Sale Order ¶ 32.) The foregoing list was filed on September 5, 2018 (as may be supplemented from time to time, the "**Assumed Contracts Schedule**") [Docket Nos. 1457, 1512].

10.    Next, the Sale Order provided that the Unresolved Contract Objections (as defined therein) would be heard at a *subsequent* hearing, and that "the pendency of a dispute relating to a particular Assumed Contract or Lease *shall not prevent or delay* the assumption and assignment of any other Assumed Contracts and Leases … or *the Closing*."  (Sale Order ¶ 31) (emphasis added).  The Sale Order further reserved Lantern's right after the Closing Date to designate any contract or lease not listed on the Assumed Contracts Schedule as an assumed contract.  (Sale Order ¶ 32.)

11.    Finally, with respect to any dispute (arising either before or after the Closing Date) regarding the assumption and assignment of contracts, the Sale Order provided an option to Lantern to the extent the dispute was not resolved to its satisfaction.  (Sale Order ¶ 33.) Specifically, the Sale Order provided that: "In the event that after the Closing Date any such dispute is not resolved to the Purchaser's satisfaction, the Purchaser may determine that such Contract or Lease subject to dispute is not an Assumed Contract and, instead, shall be an Excluded Contract (as defined in the APA); upon such determination, the Purchaser shall have no liability whatsoever to the Counterparty to such Contract or Lease that may arise prior to or after the Closing Date."  (*Id*.)  This provision of the Sale Order mirrors the procedure contemplated under application section of the APA.[7]

---

[7]    Specifically, the APA provides that: "In the event that a dispute regarding the Cure Amount with respect to an Assumed Contract has not been resolved *as of the Closing Date*, the Parties shall nonetheless remain obligated to consummate the Transactions.  Upon an Order determining any Cure Amount regarding any Disputed Contract after the Closing, Buyer shall have the option to (x) pay the Cure Amount with respect to such Disputed Contract and assume the Disputed Contract as an "Assumed Contract" or (y) designate the Disputed Contract as an "Excluded Asset", in which case, for the avoidance of doubt, Buyer shall not assume the Disputed Contract and shall not be responsible for the associated Cure Cost."  APA § 2.8(c) (emphasis added)

12.     On July 11, 2018, the Court approved the Second Amendment (the "**APA Amendment Order**"), which set forth the terms of the settlement among the Debtors, Lantern, and the Committee that enabled the sale transaction to close and set an outside date for the designation of contracts to be assumed and assigned to Lantern.  The sale to Lantern closed on July 13, 2018 [Docket No. 1247] (the "**Closing Date**").

13.     Counsel for the Counterparties appeared at the hearing on the APA Amendment Order to prosecute the Counterparties' objections to the Second Amendment.[8]  After counsel for the Counterparties conducted a cross-examination of the Debtors' witness and delivered argument, Judge Sontchi overruled the Counterparties' objections.  Specifically, Judge Sontchi stated as follows:

> THE COURT: All right. Thank you.  I am going to overrule the objections. The vast majority of which I believe really deal with issues that were already dealt with in the previous order and are not modified in an adverse way in the current order. ***There may have been an understanding or hope that these cure objections would be dealt with prior to closing. That hasn't occurred. That wasn't required in the previous order. That order was a final order. No appeals were taken. It's been final for almost two months.***
>
> So, I think that many of these arguments that were made in the objections were -- are by law of the case or a waiver. So, we are where we are with that. Again, even if they were valid for today's purposes I would overrule them because ***this is rather standard that the closing will occur prior to executory contracts being definitely determined, whether they're assumed or assigned and what the cure amounts will be. We routinely preserve those arguments for post-closing.***

July 11, 2018, Hr'g Tr. 51:10-52:3 (emphasis added).

14.     Finally, the APA contains at least two other provisions which expressly contemplate that the assumption and assignment of contracts may occur post-closing.  Specifically, the APA provides in relevant part that:

- "At any time after the Closing, the Seller Parties and Buyer may (but shall have no obligation to) mutually agree to seek authorization from the

---

[8]     *See* Docket Nos. 1177, 1203.

#50746788 v1

Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code, to assume and assign a Contract that was not identified as an Assumed Contract as of Closing; provided that Buyer will be solely responsible to pay the Cure Amount required to assume such Contract." APA § 2.8(f).

- "Notwithstanding anything in this Agreement or the Sale Order to the contrary, the Contract Designation Outside Date shall be the last date on which Buyer may (x) designate a Disputed Contract as an "Excluded Asset" pursuant to Section 2.8(c) (with any such Disputed Contract not so designated assumed by Buyer as an "Assumed Contract" in accordance with the terms thereof), (y) assume a Contract that was not identified as an Assumed Contract as of the Closing pursuant to Section 2.8(f) (with any such Contract not so assumed constituting an "Excluded Contract" following such date) or (z) designate a Previously Omitted Contract as an "Assumed Contract" pursuant to Section 2.8(g) (with any such Previously Omitted Contract not so designated constituting an "Excluded Contract" following such date). For the avoidance of doubt, nothing in this Section 2.8(i) shall in any way affect any other date set forth in this Section 2.8, including the dates set forth in Section 2.8(a)." APA § 2.8(i).

15.     Accordingly, with respect to "Disputed Contracts", such as the Counterparties', this Court's orders and the APA allow for the final designation by Lantern of the Debtors' contracts and (if applicable) the assumption to occur post-closing.

## OBJECTION

## I.    THE COUNTERPARTIES FAIL TO STATE GROUNDS UPON WHICH THE COURT CAN GRANT THE RELIEF REQUESTED

16.     The Counterparties seek entry of an order compelling the Debtors to assume the contracts and assign them to Lantern, subject to resolution of any cure disputes. (Motion ¶ 16.) The basis for this relief is that the Debtors' removal of contracts that were listed on the Final Pre-Closing Assumption List from the Assumed Contracts Schedule purportedly violates the procedures set forth in the Bid Procedures Order. (Motion ¶ 18.) Therefore, according to the Counterparties, the Debtors should be compelled to assume those contracts and assign them to Lantern. This argument fails.

#50746788 v1

17.     *First*, the Counterparties cite to no authority by which the Court can compel the Debtors to assume an agreement *and* force Lantern to accept such an assignment.  *Second*, even if such authority existed and the Court could order the relief requested, the Court already has overruled the Counterparties' arguments.

### A.     No Authority Exists Under the Bankruptcy Code to Compel the Debtors to Assume and Lantern Accept the Assignment of the Contracts

18.     As a matter of law, the relief requested by the Motion cannot be granted. Numerous courts have held that debtors cannot be forced to assume executory contracts.  *See Gray v. W. Envtl. Servs. & Testing, Inc. (In re Dehon, Inc.)*, 352 B.R. 546, 565 (Bankr. D. Mass. 2006) ("Nothing in the Code suggests that the court has the power to force the assumption of a contract against the will of the trustee or debtor-in-possession."); *see also Sundial Asphalt Co., Inc. v. V.P.C. Inv. Corp. (In re Sundial Asphalt Co., Inc.)*, 147 B.R. 72, 80 (Bankr. E.D.N.Y. 1992) ("The Court finds nothing in the statute or the Bankruptcy Rules providing for rejection or assumption of an executory contract by any party other than the trustee or debtor in possession, and finds no authorization for the court making such an election *sua sponte*, although whatever election is made by the trustee is subject to the court's approval."); *In re III Enter., Inc. V*, 163 B.R. 453, 467 (Bankr. E.D. Pa. 1994) *aff'd sub nom. Pueblo Chem., Inc. v. III Enter. Inc. V*, 169 B.R. 551 (E.D. Pa. 1994) ("Our research has uncovered no cases which hold that a party to an executory contract can force the debtor to assume any such contract."); *In re Hendrickson*, 2005 WL 3670876, at *3 (Bankr. N.D. Tex. May 24, 2005) ("A nondebtor party to an executory contract simply does not have the statutory authority to force assumption of the contract."); *In re G. Force Inv., Inc.*, 442 B.R. 646, 648-49 (Bankr. N.D. Ohio 2010) ("No creditor or other party in interest can force the estate to assume or reject an executory contract or lease under § 365.") (*citing In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 39 (Bankr. D. Kan. 2001)).

#50746788 v1

Accordingly, if the Counterparties are seeking to have this Court compel the Debtors to assume the contracts, that request should be denied.[9]

19.     Finally, the Counterparties brush over a critical step in the process of achieving its desired result of requiring Lantern to take certain contracts: assignment of the contracts.  The Counterparties cite to no authority under which the Court could force the Debtors to assign the contracts to Lantern, or force Lantern to take an assignment of those contracts.  This is consistent with the concept that assumption and assignment are voluntary contractual matters between the debtor and an assignee.  Thus, even if the Counterparties could find a way to have the contracts deemed assumed or force the Debtors to assume them, the gambit ends there.  There has never been any doubt that the Debtors and Lantern must comply with Bankruptcy Code section 365 when assuming and assigning any contract, regardless of whether that happens before or after the Closing Date.[10]

### B.     The Court Already Has Overruled the Counterparties' Arguments

20.     Even if the Counterparties could point to authority that permits this Court to compel the Debtors to assume a contract and assign it to Lantern, this Court has already overruled the Counterparties' arguments.  In its objections to the APA Amendment Order, the Counterparties raised the same issues.[11]  At the hearing on the APA Amendment Order, Lantern left no doubt that it would address the disputed contracts post-closing (a remark that was left unquestioned by the Court or other parties).

---

[9]   Furthermore, Bankruptcy Code section 365(d)(2) provides that an executory contract or unexpired lease may be assumed or rejected at any time prior to confirmation of a plan, "but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time *whether to assume or reject* such contract or lease." 11 U.S.C. § 365(d)(2) (emphasis added).  In short, the statute itself contemplates potential limitations on the applicable period of time, but nonetheless preserves the a debtor's choice to assume or reject.

[10]   *See, e.g.*, Sale Order ¶ OO (preserving parties' rights to object to the assumption and assignment of their contracts); July 11, 2018 Hr'g Tr. 52:15-16 ("[I]f it's an assumption, it's going to be cured.").

[11]   *See* Docket No. 1177, ¶ 6(a); Docket No. 1203, ¶ 5-7.

#50746788 v1

> MS. LAHAIE: [J]ust so that we're all clear it is Lantern's intention to only assume those contracts at closing that are not subject to objection. And then, obviously, as we negotiate as part of the settlement, there will be a 120 day process post-closing during which we will be able to resolve objections to the assumption and assignments of additional contracts, and assume and assign those additional contracts at that time, but we have no intention of assuming any contracts that are subject to outstanding objections.
> […]

July 11, 2018 Hr'g Tr. 25:3-12.

21.      Immediately following this statement by counsel to Lantern, counsel for the Counterparties was heard.  Strikingly, given that Lantern had just announced its intention to deal with disputed contracts after the Closing Date, counsel to the Counterparties dropped the objections that the APA and/or Sale Order violate the terms of the Bid Procedures Order and therefore, the Debtors should be compelled to assume and assign their contracts immediately:

> THE COURT: All right. Any objectors wish to be heard?  Mr. Sabin.
>
> MR. SABIN: Jeff Sabin, again, from Venable on behalf of various talented clients.  Your Honor, in light of the proposed modification language added to Section 4 of the proposed order *and in light of the statement that, effectively, Lantern has said it will not. It does not have an intention, but I assume that means it will not as of closing have assumed and assigned to it any of the executory contracts that are subject to dispute.*  We're really down to two issues in my view. […]

July 11, 2018 25:24-26:11 (emphasis added).

22.      Following some back-and-forth with the Court, counsel to the Counterparties identified its remaining issue as clarifying who bore the risk of infringing on the rights of talent parties prior to an assumption and that the Counterparties' rights to that effect were preserved. July 11, 2018 Hr'g Tr. 26:11-18, 27:22-28:11.   Presumably, given the further costs the Counterparties say they have incurred for protecting their rights, the Counterparties would have

#50746788 v1

pressed their objection at that point if a favorable ruling would mean an immediate assumption and cure of their contracts.

23.     Regardless, as the Court recognized in its ruling, the objections as to when the Debtors had to assume and assign a contract were meritless.

> THE COURT: All right. Thank you. I am going to overrule the objections. The vast majority of which I believe really deal with issues that were already dealt with in the previous order and are not modified in an adverse way in the current order. *There may have been an understanding or hope that these cure objections would be dealt with prior to closing. That hasn't occurred. That wasn't required in the previous order. That order was a final order. No appeals were taken. It's been final for almost two months.*
>
> So, I think that many of these arguments that were made in the objections were -- are by law of the case or a waiver. So, we are where we are with that. Again, even if they were valid for today's purposes I would overrule them because *this is rather standard that the closing will occur prior to executory contracts being definitely determined, whether they're assumed or assigned and what the cure amounts will be. We routinely preserve those arguments for post-closing.*

July 11, 2018 Hr'g Tr. 51:10-52:3 (emphasis added).

24.     Judge Sontchi's ruling only makes sense if, in fact, he was overruling the objections made by the Counterparties ("even if they were valid for today's purposes") that the assumption and assignment of their contracts must occur prior to the Closing Date.

## II.    THE COUNTERPARTIES MISCONSTRUE THIS COURT'S PRIOR ORDERS

25.     The crux of the Counterparties' argument is that the Bid Procedures Order controls over the subsequently-entered Sale Order and APA Amendment Order with respect to the Counterparties. (Motion ¶ 24.) This is so, according to the Counterparties, because they: "argue[d] that a decision with respect to which contracts were being assumed and assigned as part of the Sale was required to be made prior to the Closing Date …; that Lantern is required to assume any contracts that remained on the assumption schedule as of the Closing Date, regardless of a pending dispute …; and that section 2.8(c) of the APA violates the Bid Procedures Order by allowing Lantern to remove contracts from the assumption schedule post-

closing…" (Motion ¶ 13.) Such arguments are only possible through a strained interpretation of the APA and the orders entered by this Court.[12]

26.     First, as a general matter, the Bid Procedures Order described the process the Debtors would follow to identify executory contracts that they "may" assume and assign. (Bid Procedures Order ¶ 23.) Nothing in the Bid Procedures Order, however, actually *approved* the assumption and assignment of any executory contract identified by the Debtors for possible assumption and assignment. The relief that the Counterparties request only follows if the Bid Procedures Order in fact approved the assumption and assignment of contracts,[13] but it self-evidently did not. The Third Circuit requires that an executory contract cannot be assumed without final approval by the Bankruptcy Court. *See Univ. Med. Ctr. V. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065 (3d Cir. 1992) ("In order to insure that a debtor has the opportunity to assess the advantages and disadvantages of assuming a contract, assumption must be approved. It cannot be presumed."). Rather, it was the Sale Order that approved the assumption and assignment of executory contracts and, thus, it is the Sale Order that controls in these circumstances.

27.     Second, the Bid Procedures Order, in fact, contemplated that later events may cause contracts to be assumed post-closing. The Bid Procedures Order noted that, should a counterparty file an objection to assumption and assignment, the objection would be heard at the

---

[12]  To the extent the Counterparties also are suggesting that they relied on the Bid Procedures Order, any such reliance would be manifestly unreasonable. The Counterparties have been active participants in these chapter 11 cases and are fully aware of this Court's subsequent orders.

[13]  The Counterparties' reasoning in the Motion is no model of clarity on this point. Compelled assumption of their contracts does not follow from the Counterparties' objection that, essentially, the APA and Sale Order violate the Bid Procedures Order. The Debtors' authority to assume and assign executory contracts did not occur until entry of the Sale Order and approval of the APA, which explicitly contemplate that, for example, (i) assumption and assignment objections "shall not prevent or delay" the closing (Sale Order ¶ 31) and (ii) after the Closing Date, Lantern may decide not to assume a contract subject to dispute (Sale Order ¶ 33). Even if the Sale Order or APA somehow violate the terms of the Bid Procedures Order (which they do not), the remedy the Counterparties propose does not match whatever harm the Counterparties may have incurred.

#50746788 v1

"Sale Hearing *or such later date that the Debtors, in consultation with the Successful Bidder, shall determine in their discretion.*" (Bid Procedures Order ¶ 26.) Significantly, there was no time limit on when such date could be (*i.e.*, whether that subsequent hearing could in fact occur post-closing).

28. Third, the Counterparties contend that "any argument that the Bid Procedures Order does not require a pre-closing decision with respect to which contracts are to be assumed and assigned is irreconcilably inconsistent with the terms of the APA." (Motion ¶ 25.) This is patently false. Paragraph 28 of the Bid Procedures Order provided that: "*Unless otherwise provided* in the Successful Bidder's Asset Purchase Agreement, at any time prior to the Closing Date, the Successful Bidder may elect to amend the Contracts Schedule pursuant to Section 2.8(a) … Any Contract or Lease that remains on the Contracts Schedule *as of such date* and which the Successful Bidder *designates in writing for assumption*, shall be assumed by the Debtors …" (emphasis added). First, such contracts would only be assigned if they were first designated in writing by Lantern. Second, paragraph 32 of the Sale Order clearly contemplates that Lantern need not determine which contracts it would like to assume until on or after the Closing Date. Indeed, in their Motion, the Counterparties ignore section 2.8(i) of the APA (which section was added pursuant to the APA Amendment Order), which sets an outside date of November 8, 2018 for when contracts may be designated by Lantern for assumption.[14]

---

[14] Specifically, the APA provides that: "Notwithstanding anything in this Agreement or Sale Order to the contrary, the Contract Designation Date shall be the last date on which Buyer may (x) designate a Disputed Contract as an "Excluded Asset" pursuant to Section 2.8(c) (with any such Disputed Contract not so designated assumed by Buyer as an "Assumed Contract" in accordance with the terms thereof), (y) assume a Contract that was not identified as an Assumed Contract as of the Closing pursuant to Section 2.8(f) (with any such Contract not so assumed constituting an "Excluded Contract" following such date) or (z) designate a Previously Omitted Contract as an "Assumed Contract" pursuant to Section 2.8(g) (with any such Previously Omitted Contract not so designated constituting an "Excluded Contract" following such date). For the avoidance of doubt, nothing in this Section 2.8(i) shall in any way affect any other date set forth in this Section 2.8, including the dates set forth in Section 2.8(a)." APA § 2.8(i).

29.   Finally, it is not even clear that the reservation of rights provided in the Sale Order includes the Counterparties' objection that the Sale Order and/or APA violates the Bid Procedures Order.  Consistent with the applicable grounds for objection under Bankruptcy Code section 365(b), the procedures outlined in the Bid Procedures Order specified that "[a]ny Counterparty may object to the proposed assumption or assignment of its Contract or Lease, the Debtors' proposed Cure Amounts, if any, or the ability of the Stalking Horse Bidder to provide adequate assurance of future performance."  (Bid Procedures Order ¶ 25.)  Accordingly, the Counterparties' Sale Objection objected to the assumption and assignment of their contracts because of, among other things, uncertainty over Lantern's ability to provide adequate assurance of future performance and the payment of the cure amount.  In support of this objection, the Counterparties argued that "the escape-hatch provided by Section 2.8(c) of the Stalking Horse Agreement and … the Stalking Horse Agreement's violation of paragraph 28 of the Bidding Procedures Order, all strongly suggest that the Debtors have no intention of curing either monetary or non-monetary defaults that exist under the Counterparties' Contracts. As such, *this Court should not permit the Debtors to assume and assign the Contracts until such time as they notify the Counterparties of the proper cure amounts* along with audit reports, an accounting or other supporting evidence, and further evidence their intention and ability to promptly cure all monetary and non-monetary defaults in accordance with section 365(b)(1) of the Bankruptcy Code."  (Sale Objection ¶ 40) (emphasis added).

30.   In short, while the Counterparties used section 2.8(c) of the APA as an example, its objection in fact went towards the Debtors' and Lantern's ability to cure defaults.  That objection, of course, is preserved.  But it stretches credulity to suggest, by means of an artificial reading of the APA, this Court's orders, and routine process in sale transactions, the

14

Counterparties have somehow preserved an argument that requires their contracts be forced upon the Debtors and Lantern, all without any basis in the Bankruptcy Code.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors and Lantern respectfully request that the Court deny the Motion and grant such other and further relief as is just, proper and equitable.

Dated:      November 5, 2018
            Wilmington, Delaware

/s/ Zachary I. Shapiro

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:    (302) 651 7700
Facsimile:    (302) 651-7701

- and -

**CRAVATH, SWAINE & MOORE LLP**
Paul H. Zumbro (admitted *pro hac vice*)
George E. Zobitz (admitted *pro hac vice*)
Karin A. DeMasi (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for the Debtors and Debtors in Possession*

/s/ Evelyn J. Meltzer

**PEPPER HAMILTON LLP**
David B. Stratton, Esq. (No. 960)
Evelyn J. Meltzer, Esq. (No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 777-6500
Email: stratton@pepperlaw.com
          meltzere@pepperlaw.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Meredith A. Lahaie, Esq. (admitted *pro hac vice*)
Michael S. Stamer, Esq. (admitted *pro hac vice*)
Abid Qureshi, Esq. (admitted *pro hac vice*)
One Bryant Park
Bank Of America Tower
New York, NY 10036
Email: mlahaie@akingump.com
          mstamer@akingump.com
          aqureshi@akingump.com

*Attorneys for Lantern Entertainment, LLC*

#50746788 v1