**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| | : Chapter 11 |
| In re: | : Case No. 18-10601 (MFW) |
| | : |
| THE WEINSTEIN COMPANY HOLDINGS | : Jointly Administered |
| LLC, *et al.*[1] | : |
| | : Re:    Dkt. Nos. 8, 607, 668, 860, 1003 |
| | :            1040, 1045, 1048, 1050, 1115, 1176 |
| | :            1177, 1203 and 1205 |
| Debtors. | : **Obj. Deadline:  December 10, 2018 at 4:00 p.m.** |
| | : **Hearing Date:  December 17, 2018 at 10:30 a.m.** |

**SUPPLEMENTAL OBJECTION AND JOINT MOTION OF SLP CONTRACT**
**COUNTERPARTIES TO CLARIFY SALE ORDER**

Bradley Cooper, 22nd and Indiana, Inc., Bruce Cohen, Bruce Cohen Productions, Robert De Niro, Canal Productions, Inc., David O. Russell and Kanzeon Corp. (collectively, the "**SLP Counterparties**"), each a counterparty with SLP Films, Inc. ("**SLP Films**"), a non-debtor film production company, to a contract[2] related to the motion picture *Silver Linings Playbook* (the "**Film**"), through their undersigned counsel, submit this Joint Motion to Clarify Sale Order and reserve their rights and remedies with respect to the use or distribution of the Film and their

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] The contracts (collectively, the "**SLP Contracts**") to which the SLP Counterparties are party and which are the subject of this Motion are: (i) Confidential Deal Memo and Certificate of Engagement, dated September 23, 2011, by and among Bradley Cooper, 22nd and Indiana, Inc. and SLP Films, Inc. (the "**Cooper Contracts**"); (ii) Letter Agreement, dated September 21, 2011, by and among Bruce Cohen Productions f/s/o Bruce Cohen and SLP Films, Inc. (the "**Cohen Contract**"); (iii) three (3) Confirmation Deal Memos, each dated September 23 2011, by and among Robert De Niro, Canal Productions, Inc. and SLP Films, Inc. (collectively, the "**De Niro Contracts**"); and (iv) Services Agreement Effective Date: 5/16/2011, by and among David O. Russell, Kanzeon Crop. and SLP Films, Inc. (the "**Russell Contract**"). The Weinstein Company LLC, one of the Debtors in these cases, signed a Guarantee dated September 23, 2011 (the "**Cooper Guarantee**"), pursuant to which TWC guaranteed SLP's obligations under the Cooper Contracts.  The Weinstein Guarantee is not an SLP Contract.

interests in the SLP Contracts.  In support of this Motion, the SLP Counterparties respectfully represent as follows:

**PRELIMINARY STATEMENT**

The SLP Counterparties are actors, directors and/or producers in the motion picture industry (or their representatives) and have each entered into an SLP Contract with SLP Films, a non-debtor film production company involved in the production of the Film.  Under the SLP Contracts, the SLP Counterparties agreed to, among other things, provide certain services to SLP Films in connection with the Film, and SLP Films agreed to pay the SLP Counterparties and perform certain non-monetary obligations in accordance with the terms of the SLP Contracts.  The SLP Contracts are not property of these estates nor are they subject to this Court's jurisdiction.  Nonetheless, the Debtors assert, without any authority, that when they sold substantially all of their assets to Lantern Entertainment LLC ("**Lantern**") free and clear of liens and claims, including their alleged copyright interest in the Film, the SLP Contracts were transferred to Lantern as part of the sale, *free and clear of any going forward payment obligations and non-monetary obligations contained in the contracts*.

The Debtors' position is untenable for two reasons: (i) the Debtors can only sell what they own, and none of the Debtors are parties to the SLP Contracts, own any interest in the SLP Contracts or are assignees to the SLP Contracts and (ii) to the extent the Debtors sold the Film to Lantern, they did so subject to the terms of the SLP Contracts going forward, including the payment of all monetary obligations and satisfaction of all non-monetary obligations thereunder and the SLP Counterparties' rights and remedies therein.  The Sale Order (hereinafter defined) expressly held that the APA did not alter, modify, extend or enhance the Debtors' rights, title or interest to any purchased asset.  Therefore, if the Debtors owned an interest in the Film, such

interest could only be sold, conveyed and transferred to Lantern subject to Lantern's performance of all monetary and non-monetary obligations contained in the SLP Contracts.

The SLP Counterparties have filed several objections in these cases to preserve their rights in connection with the Lantern sale, all of which have been expressly preserved by this Court. [3] However, the Debtors and Lantern have continually and unilaterally adjourned adjudication of the SLP Counterparties' objections so that the SLP Counterparties are, months after the Lantern sale closed, still uncertain of their rights in the Film at the same time that Lantern is exploiting the Film for its own benefit.  A hearing on these issues was scheduled for November 6th, but Lantern has once again adjourned the hearing to the next omnibus hearing date, this time December 17th. Lantern's continued delay tactics have effectively permitted Lantern to exploit the Film for nearly four months while postponing indefinitely the Court's adjudication of Lantern's and the SLP Counterparties' respective rights and obligations under the SLP Contracts and applicable law.

Now that the sale of the Debtors' assets to Lantern has closed, the Court must address the issues raised by the SLP Counterparties' objections adjudicate the SLP Counterparties rights.  The Sale Order was not intended to give Lantern unfettered rights to exploit the Film while keeping the SLP Counterparties' rights handcuffed to a process that apparently has no end.[4]  Accordingly,

---

[3] In addition to their sale objections, the SLP Counterparties have filed objections to the assignment and assumption procedures in these cases and the Debtors' unsupported assertions that the SLP Contracts are not executory contracts **[Dkt. Nos. 1040, 1045, 1048, 1050 and 1496]** (collectively, the "**Assignment Objections**").  The SLP Counterparties reserve all of their rights with respect to their Assignment Objections (which have been preserved by order of this Court) and their belief that the SLP Contracts are executory and cannot be "sold" but must be assumed (with all existing defaults cured) and assigned pursuant to section 365 of the Bankruptcy Code.

[4] Lantern's counsel has informed counsel for the SLP Counterparties that, on or before November 8, 2018 (the deadline Lantern believes it has to designate contracts to be assumed and assigned), Lantern intends to designate the SLP Contracts (and most, if not all, other currently "disputed contracts") as contracts to be assumed and assigned, *subject* to a determination that the agreements are executory.  Lantern's gambit to have the SLP Contracts (together with other participation agreements and, if applicable, cure obligations) assumed and assigned not only is not permitted, but also would provide Lantern with an indefinite *de facto* extension of the Court-ordered deadline that is contrary to prior representations made to this Court by Lantern and the Debtors.  If this Court were to approve Lantern's newly thought up scheme to deal with its own dilatory behavior and inaccuracies in the Debtors' schedules and notices, the SLP Counterparties (as well as other counterparties to participation agreements) would receive no payments on millions of

this Motion seeks, among other things, clarification that the Sale Order did not sell the Film to Lantern free and clear of the SLP Counterparties' rights in, and SLP Films' obligations under, the non-debtor, executory SLP Contracts.

## BACKGROUND

1.     On March 19, 2018 (the "**Petition Date**"), The Weinstein Company LLC ("**TWC**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

2.     On March 20, 2018, the Debtors filed a *Motion for Entry of Orders . . . (II)(A) Approving* Sale *of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* **[Dkt. No. 8]** (the "**Sale Motion**"), requesting, among other things, approval of the sale of substantially all of their assets to Lantern pursuant to an Asset Purchase Agreement dated March 19, 2018 (as amended, the "**APA**").  In connection with the Sale Motion, the Court also approved certain procedures for the potential assumption and assignment of certain executory contracts, requiring the Debtors to file a notice specifying each of the contracts that may be assumed or assigned in connection with the sale.

3.     Certain of the SLP Counterparties filed objections to the Sale Motion **[Dkt. Nos. 607 and 668]** (collectively, the "**Sale Objections**"), asserting that, among other things, the SLP

---

dollars of both pre and post-closing participation amounts due to them, while Lantern continues to exploit the related films.  The SLP Counterparties reserve all rights related to these issues, and they intend to file further pleadings if Lantern proceeds with the course of action described by its counsel.

Contracts were, and remain today, between non-debtor parties only and, thus, were and are not property of the Debtors' estates.

4.      On May 9, 2018, the Court entered an *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* **[Dkt No. 846]** (the "**Sale Order**"), approving the sale of substantially all of the Debtors' assets to Lantern pursuant to the APA.

5.      The Sale Order expressly preserved all parties' rights and remedies with respect to objections filed to the Sale Order, including the Sale Objections, and objections filed to assumption and assignment of executory contracts, which were not addressed or resolved at the Sale Order hearing.  Sale Order at ¶ 61 ("Notwithstanding any other provision of this Order, the rights of (I) non-Debtor parties asserting that certain of the Purchased Assets include property that is not property of the Debtors' estates that filed a timely objection . . . are preserved and will be addressed at the Contract Assumption Hearing.").[5]  In addition, the Sale Order provided that the interests sold to Lantern would not be altered or enhanced by the sale such that Lantern was acquiring only what the Debtors owned, in the manner, and to the extent, held by the Debtors.  Sale Order at ¶ LL ("[N]othing in this Order or the APA shall be deemed to otherwise alter, modify, extend or enhance the Debtors' rights title or interest in or under any Purchased Asset or to grant the Purchaser any rights, title or interest in or under any property . . . that is not property of the Debtors' estates.").

6.      To facilitate the assumption and assignment process, paragraph 29 of the Sale Order provided that the Debtors will assume "each of the Assumed Contracts and Leases identified on a

---

[5] The Debtors and Lantern have repeatedly adjourned the Contract Assumption Hearing.

notice that the Debtors will file with the Court within (1) Business Day after entry of [the Sale] Order . . . and assign the Assumed Contracts and Leases" to Lantern. Sale Order at ¶ 29. Accordingly, on May 10, 2018, the Debtors filed their *Notice of Filing of Final List of Potentially Assumed Contracts and Leases* **[Dkt. No. 860]** (the "**Final Contract List**"). The Final Contract List included each of the SLP Contracts with respective cure amounts listed and incorrectly identifying as counterparties SLP Films *and* TWC.

7.      On May 25, 2018, in response to Cooper's Sale Objection and discovery requests, Cravath Swain & Moore ("**Cravath**"), Debtors' counsel, delivered to Cooper's counsel, by email, a set of contracts attributed by the Debtors to Cooper. The only contracts included in the email for Cooper were executed and unexecuted copies of the Cooper Contracts and the Weinstein Guarantee. A copy of the Cravath email as it pertains to Cooper with redacted copies of the attached contracts is attached hereto as **Exhibit A**. Given Cravath's email, it did not then, and still does not, appear that the Cooper Contracts have been assigned to the Debtors. Similarly, counsel for De Niro, Russell and Cohen asked the Debtors to provide a chain of title showing their ownership of the rights associated with *Silver Linings Playbook*, but the Debtors failed to do so. In fact, the only documents provided by the Debtors to counsel for De Niro, Russell and Cohen showed that a non-debtor entity, SLPTWC Films, LLC, is the holder of the copyright associated with the film. A copy of the Cravath e-mail sent in response to counsel's request to provide chain of title is attached hereto as **Exhibit B**, and the relevant contracts separately will be filed under seal. None of the documents provided by the Debtors to counsel for De Niro, Russell, and Cohen demonstrates that TWC held the rights to the contracts with De Niro, Russell and Cohen at the time of the sale.

8.      On June 8, 2018, the Debtors filed the *Debtors' Statement Regarding Contracts To Be Transferred Pursuant To The Asset Purchase Agreement With Lantern Entertainment LLC* **[Dkt. No. 1003]** (the "**Statement**"), pursuant to which the Debtors, for the first time, removed contracts from the Final Contract List, including each of the SLP Contracts, claiming that they were not executory. Statement at ¶ 6.  The Debtors also alleged, without any authority, that notwithstanding that the contracts were not being assumed and assigned, "the Asset Purchase Agreement provides for the purchase, by Lantern, of any rights or assets transferred to the Debtors pursuant to such contracts."  Statement at ¶ 7.

9.      In response, on June 18, 2018, each of the SLP Counterparties filed objections to the Statement **[Dkt. Nos. 1040, 1045, 1048, 1050 and 1387]** (collectively, the "**Assignment Objections**"), asserting that, among other things, the SLP Contracts were with non-debtors and not property of the Debtors' estates and, in any event, were executory contracts.  Therefore, the Debtors could not "sell" the SLP Contracts to Lantern, because the Debtors do not own them, or, in the alternative, the Debtors must assume and assign the SLP Contracts pursuant to section 365 of the Bankruptcy Code.  The Debtors and Lantern have repeatedly adjourned resolution of the Assignment Objections.

10.     On June 27, 2018, the Debtors filed a *Motion for an Order Approving Amendment to Asset Purchase Agreement* filed on June 27, 2018 **[Dkt. No. 1115]** ("**Motion to Amend**") seeking approval of certain amendments to the APA, including a $21 million reduction in Lantern's purchase price purportedly to compensate Lantern for having to pay cure amounts owing to various contract counterparties, including the SLP Counterparties.

11.     The SLP Counterparties filed objections to the Motion to Amend to, among other things, preserve their rights to assert the Sale Objections despite the anticipated closing of the sale

to Lantern. **[Dkt. Nos. 1176, 1177, 1203 and 1205]** (collectively, the "**Amended Sale Objections**" and, together with the Sale Objections and the Assignment Objections, the "**Objections**").

12.     On July 11, 2018, the Court entered an order **[Dkt. No.1220]** (the "**Amended Sale Order**") approving the amendments to the APA and continuing to preserve the rights of parties who had filed unresolved objections to the Lantern sale and the assignment and assumption of contracts related to the sale.  Amended Sale Order at ¶ 4 ("The rights of counterparties objecting to the Motion [to Amend] (the "Objecting Parties") are reserved as provided by the Sale Order, and nothing in the Second Amendment and the APA amended pursuant thereto will prejudice, affect in any manner, or act as a waiver of any Objecting Parties' rights, arguments, and remedies . . .").

13.     At the July 11th hearing to consider the Motion to Amend, the Court cautioned Lantern that, by closing on the purchase of any assets subject to rights associated with unresolved contract objections, it was assuming the risk that the purchase might violate certain contract rights and might subject Lantern to contract liabilities and state law claims in connection therewith.  *See* Tr. of July 11, 2018 H'rg at pp. 52-53 ("[I]f Lantern is taking the assets it's buying and assuming the risk associated with those assets.  So if there's a risk [sic] that buy something that somehow it violates the contracts that they bought that asset without taking on other liabilities under some sort of other contract and there's a state law reason to proceed against Lantern, they're not getting a release here.").  A copy of the relevant pages of the July 11th hearing transcript is attached hereto as **Exhibit C**.

14.     On July 13, 2018, the sale of substantially all of the Debtors' assets to Lantern closed (the "**Closing**").

15.     Subsequent to the Closing, concerned that Lantern was exploiting the Film and using Cooper's name and likeness before the Objections had been adjudicated, on August 20, 2018, Cooper's counsel delivered a letter (the "**August Letter**") to Lantern's counsel, Kevin Eide, reiterating that the Cooper Contracts were non-debtor contracts and that there was no evidence that they had been assigned to a Debtor entity.  Cooper's counsel requested, among other things, confirmation that Lantern was not exploiting and did not intend to exploit the Film pending resolution of the Objections.  No response was ever received regarding the August Letter.  A copy of the August Letter is attached here to as **Exhibit D**.

16.     Faced with similar concerns regarding Lantern's exploitation of the Film, on July 17, 2018, counsel for De Niro, Russell and Cohen sent a letter to Lantern's counsel, Meredith Lahaie (the "**July Letter**"), demanding that Lantern confirm that it would take no action to exploit certain films, including the Film, pending a determination of Lantern's rights, if any, to the use and exploitation of the films and confirming that all funds received by Lantern resulting from third-party licensing agreements for the films, including the Film, be placed in escrow, with any accounting to be provided to the Counterparties.  A copy of the July Letter is attached hereto as **Exhibit E**.  On August 9, 2018, Ms. Galit Knotz, another of Lantern's counsel, responded, in part, to the July Letter stating: "With respect to your inquiry regarding film exploitation, we're not aware of any authority requiring us to cease such exploitation pending a determination of our rights by the Bankruptcy Court."

17.     Since Closing, the Debtors have continued to unilaterally adjourn resolution of the Sale and Assignment Objections.   An omnibus hearing on these issues was scheduled for

November 6, 2018 at 2:00 p.m. before the Court, but the Debtors and Lantern have once again adjourned the hearing to the next omnibus hearing date in December.[6]

**RELIEF REQUESTED**

18.     The Court retained jurisdiction in the Sale Order to "interpret . . . the terms and provisions of this Sale Order."  Sale Order at ¶ 66.  By this Motion, the SLP Counterparties seek an order (a) pursuant to paragraph 66 of the Sale Order and section 105(a) of the Bankruptcy Code, clarifying the Sale Order and the Amended Sale Order to make clear that the SLP Counterparties' rights and remedies with respect to the SLP Contracts and the Objections are preserved, even after the Designation Deadline, including all rights and remedies the SLP Counterparties may have under applicable federal, state or common law, with respect to Lantern's exploitation of the Film without the SLP Counterparties' consent and without performing obligations due and owing to the SLP Counterparties; (b) scheduling a hearing to adjudicate the Objections and directing the Debtors and Lantern to demonstrate, if capable, that each of the SLP Contracts constitute property of the Debtors' estates pursuant to Section 541 of the Bankruptcy Code and (c) finding that, if the SLP Contracts are deemed property of these estates and were sold to Lantern pursuant to the APA, then Lantern must nonetheless perform the monetary and non-monetary obligations inherent in the SLP Contracts going forward.

---

[6] According to Lantern, section 2.8(i) of the APA, as amended, provides that November 8, 2018 (120 days after Closing) is the last date (the "**Designation Deadline**") by which Lantern may designate a disputed executory contract as an "Excluded Asset," assume a contract that was not identified as an "Assumed Contract" under the APA on closing or designate a previously omitted contract as an "Assumed Contract" under the APA.  *See* Motion For Order Establishing Streamlined Procedures To Resolve Objections To The Potential Assignment of Certain Executory Contracts And Unexpired Leases To Lantern Entertainment LLC **[Dkt. No. 1282]** at ¶ 15.  Occurrence of the Designation Deadline should not impact on the SLP Counterparties' rights to pursue their Objections and obtain the relief they request therein, particularly as the SLP Counterparties have been trying to resolve their objections for months..

**The SLP Contracts Are Not Property Of The Debtors' Estates**

19.     This Court has the power to adjudicate matters regarding property of the Debtors'
estates only and does not have jurisdiction to order the sale or the assumption and assignment or
rejection of contracts to which the Debtors are not a party.  The Debtors cannot transfer property
that they do not own. *See* 11 U.S.C. §§ 363(b) and (f) and 365(a) ("The trustee, after notice and a
hearing, may use, sell or lease, other than in the ordinary course of business, *property of the estate.*
. .;" "The trustee may sell property *under subsection (b)* . . . free and clear of any interest in such
property . . .;" "the trustee, subject to the court's approval, may assume or reject any executory
contract or unexpired lease *of the debtor.*") (emphasis added).  *See In re Mariner Post-Acute
Network*, 267 B.R. 46, 49 (Bankr. D. Del. 2001) ("[E]ven if the [bankruptcy court order] conveyed
the [funds] to the [secured lenders], it did so only to the extent that they constituted property of the
estate."); *In re Custom Coals Laurel*, 258 B.R. 597, 604 n.13 (Bankr. W.D. Pa. 2001) ("Debtor
could only convey to [assignee] what interest Debtor had."); 3 L. King. COLLIER ON
BANKRUPTCY ¶ 363.06 (16th ed. 2018) ("[T]he court may not authorize a sale free and clear of
property that is not property of the estate.").

20.     Pursuant to section 541 of the Bankruptcy Code, property of the estate is property
in which a debtor has a legal or equitable interest as of the commencement of the case.  11 U.S.C.
§ 541(a).  The burden of proof is on the Debtors.  *In re TMT Procurement Corp.*, 764 F.3d 512,
523 (5th Cir 2014) ("The party seeking to include property in the estate bears the burden of showing
that the item is property of the estate."), citing *In re Klein-Swanson*, 488 B.R. 628, 633 (B.A.P. 8th
Cir. 2013).

21.     Here, the Debtors have not met their burden of demonstrating that the SLP
Contracts are today or were property of the Debtors' estates as of the commencement of the

Debtors' cases.  On their face, the SLP Contracts were entered into with a non-debtor entity, SLP Films, and are presumptively not property of these estates.  Despite repeated inquiries, neither the Debtors nor Lantern have provided any evidence or other indication that the SLP Contracts were assigned to the Debtors.  In fact, in an adversary proceeding against Cohen, Lantern has filed a motion for summary judgment that attempts to address this issue but fails entirely to provide competent evidence of any such assignment to the Debtors (the evidence submitted by Lantern consists of a declaration by former employee of the Debtors who recites his "understanding" of the facts in conclusory fashion).  As such, the SLP Contracts are not property of these estates, the Debtors have no rights or interests in the SLP Contracts to sell to Lantern, and whatever rights they have with respect to the Film may not be sold to Lantern free and clear of the SLP Counterparties' rights and interests in the SLP Contracts.

**Even if the SLP Contracts are Deemed Property of the Estates, Lantern Is Bound By the Contractual Payment and Non-Payment Obligations Going Forward**

22.    Even if this Court determines that the SLP Contracts are property of the Debtors' estates, the Debtors can only transfer rights to Lantern to the extent, and in the manner, they own such rights.  If the SLP Contracts are executory as alleged by the SLP Counterparties, the only way in which the SLP Contracts could be transferred to Lantern is through an assumption and assignment pursuant to Section 365 of the Bankruptcy Code.  While this Motion does not deal with the issue of whether the SLP Contracts are executory, the SLP Counterparties reserve all rights with respect to that issue.[7]

---

[7] Indeed, the Sale Order provides that "[e]ach Assumed Contract and Lease constitutes an executory contract," and defines "Assumed Contracts and Leases" as those contracts and leases which will be "identified on a notice that the Debtors will file with the Court within (1) Business Day after entry of [the] Order . . . " (i.e., the Final Contract List). Sale Order at ¶ 29. The SLP Contracts were listed on the Final Contract List.  As such, the Sale Order has already deemed the SLP Contracts to be executory contracts.

23.     As this Court provided in the Sale Order, "nothing in this Order or the APA shall be deemed to otherwise alter, modify, extend or enhance the Debtors' rights, title or interest to or under any Purchased Asset. . ." Sale Order at ¶ LL.  Therefore, if the Debtors were obligated to make contingent payments to the SLP Counterparties for exploitation of the Film, so too is Lantern obligated to pay the SLP Counterparties' share of receipts from the its exploitation of the Film. Lantern cannot buy what the Debtors do not own, and to the extent the Debtors owned anything under the SLP Contracts, they were not unfettered contractual rights.  Under the principle of *cum onere*, Lantern buys the Debtors' interests in the SLP Contracts subject to all  obligations owed on and after Closing to the SLP Counterparties under those contracts.  *DB Structured Prods. v. Am. Home Mortg. Holdings, Inc. (In re Am. Home Mortg. Holdings, Inc.)*, 402 B.R. 87, 98 (Bankr. D. Del. 2009) citing *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 264 (3d Cir. 2000) ("As is evident from *Folger Adam*, the *cum onere* principle applies equally to the transfer of rights and obligations under a non-executory contract pursuant to § 363 of the Bankruptcy Code as to the assumption and assignment of contracts and leases pursuant to § 365.").

24.     SLP Films' interests in the SLP Contracts are subject to, and defined by, certain monetary and non-monetary obligations to the SLP Counterparties, regardless of who currently owns those interests.  Section 363(f) of the Bankruptcy Code may authorize the transfer of a contract free and clear of claims and interests that exist at the time of the sale, but it does not rewrite the contract simply because it is in the hands of a new contract counterparty.

## RESERVATION OF RIGHTS

25.     The SLP Counterparties reserve their rights and remedies under federal, state and common law with respect to the SLP Contracts and Lanterns continued exploitation of the Film to

the extent that such exploitation relates to, or impacts, the SLP Counterparties' rights, remedies, claims and interests in the SLP Contracts.

26.    The Objections previously filed by the SLP Counterparties are incorporated herein by reference.

WHEREFORE, the SLP Counterparties respectfully request that this Court enter an order (i) pursuant to section 105(a) of the Bankruptcy Code, clarifying the Sale Order and the Amended Sale Order to make clear that the SLP Counterparties' rights, remedies, claims and interests with respect to the SLP Contracts and the Objections are preserved, even after the Designation Deadline, including all rights, remedies, claims and interests that the SLP Counterparties may have under applicable federal, state or common law, with respect to Lantern's exploitation of the Film without the SLP Counterparties' consent and without performing obligations due and owing to the SLP Counterparties; (ii) scheduling a hearing to adjudicate the Objections and directing the Debtors and Lantern to demonstrate, if capable, that each of the SLP Contracts constitute property of the Debtors' estates pursuant to Section 541 of the Bankruptcy Code; (iii) finding that, if the SLP Contracts are deemed property of these estates and were sold to Lantern pursuant to the APA, Lantern must nonetheless perform the payment and non-payment obligations inherent in the SLP Contracts going forward; and (iv) granting such other and further relief as is just and proper.

Dated: November 5, 2018
       Wilmington, Delaware

                                        **VENABLE LLP**

                                        By:      *Jamie L. Edmonson*
                                        Jamie L. Edmonson (No. 4247)
                                        1201 N. Market St.
                                        Suite 1400
                                        Wilmington, Delaware 19801
                                        Tel: (302) 298-3535
                                        Fax: (302) 298-3550
                                        jledmonson@venable.com

-and-

Jeffrey S. Sabin, Esq.
1270 Avenue of the Americas
New York, New York 10020
Tel:  (212) 503-0672
jssabin@venable.com

-and-

Keith C. Owens, Esq.
2049 Century Park East
Suite 2300
Los Angeles, California 90067
Tel: (310) 229-0370
kcowens@venable.com

*Counsel to Bradley Cooper and 22nd and Indiana, Inc.*

-and-

**CROSS & SIMON, LLC**

By:      *Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 N. Market St.
Suite 901
Wilmington, Delaware 19801
Tel: (302) 777-4200
csimon@crosslaw.com

-and-

**LANDAU GOTTFRIED & BERGER LLP**
Michael J Gottfried
Roye Zur
1801 Century Park East
Suite 700
Los Angeles, California 90067
Tel:  (310) 557-0050
mgottfried@lgbfirm.com
rzur@lgbfirm.com

*Counsel to Bruce Cohen, Bruce Cohen Productions,
Robert DeNiro, Canal Productions, Inc., David O.
Russell and Kanzeon Corp.*