**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------------------- x
:
In re: : Chapter 11
:
THE WEINSTEIN COMPANY HOLDINGS LLC, ET AL., : Case No. 18-10601 (MFW)
:
          Debtors.[1] : (Jointly Administered)
:
------------------------------------------------------------------------- x

**FIRST REPUBLIC BANK'S MOTION FOR ORDER (I) VACATING DOCKET NUMBER 1574, (II) LIFTING STAY WITH RESPECT TO PRODUCING SERVICES AGREEMENT, AND (III) ENFORCING PRIOR ORDERS AND RULINGS**

First Republic Bank ("First Republic") hereby files this motion (the "Motion") for entry of an order, substantially in the form attached as **Exhibit A** hereto (the "Proposed Order"), (i) pursuant to rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), vacating the October 9, 2018 *Order Approving Stipulation Among the Debtors, Lantern Entertainment LLC, Vertigo Prime, Inc., and Good Fear Film, Inc.* [Docket No. 1574] (the "Stipulated Order"), (ii) pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and in furtherance to the relief sought in the *Motion of First Republic Bank for Order Granting Relief from Automatic Stay for Cause and Granting Related Relief* [Docket No. 1635] (the "Lift Stay Motion"),[2]

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given such terms in the Lift Stay Motion.

granting First Republic relief from the automatic stay with respect to the Producing Services Agreement (as defined herein), and (iii) enforcing the Sale Order and the Court's oral ruling on the Lift Stay Motion and directing Lantern to turn over to the Debtors or First Republic any and all Polaroid Collateral in its possession.  In support of this Motion, First Republic respectfully states as follows:

## PRELIMINARY STATEMENT

1. First Republic files this Motion in connection with the record of the November 6, 2018 hearing on its Lift Stay Motion (the "Hearing").  As discussed below, based on the record of the Hearing it is clear that First Republic has been prejudiced by (i) the mistaken entry of the Stipulated Order and (ii) Lantern's unexplained actions (in contravention of the Sale Order) to take control and possession of Polaroid Collateral (which collateral is also property of the Debtor).  Accordingly, First Republic seeks to vacate the Stipulated Order, and requests entry of an order directing Lantern to turn over to First Republic or the Debtors any Polaroid Collateral in its possession.

2. First Republic seeks to vacate the Stipulated Order—an order that, at the Hearing, the Debtors stated should be immediately vacated.  The Stipulated Order was mistakenly entered, through no fault of the Court, because the Lantern Certification (as defined herein) under which the Stipulated Order was submitted failed to apprise the Court of the rights of First Republic. The Stipulated Order was negotiated without the knowledge of First Republic and should not be allowed to stand at the cost of inequitably prejudicing the rights of First Republic with respect to the Project Collateral.

3. "Certifications of counsel are to be filed when . . . counsel agree on a matter and seek entry of an order by the court." *In re Just For Feet, Inc.*, 299 B.R. 343, 345 n.3 (Bankr. D.

Del. 2003). The certification of counsel process is designed to allow parties to reach consensus while minimizing court involvement in uncontested matters.

4.  The certification of counsel process is not designed to alter the substantive rights of parties that are not involved in the negotiation and resolution of the matter that is the subject of the certification. The Local Rules codify this principle and require any certification of counsel to (i) state whether all affected parties have reviewed or agreed to the proposed relief and (ii) be served on all affected parties. *See* Local Rule 9019-1(a).

5.  First Republic Bank was not a party to the Stipulated Order leading up to the Lantern Certification and was not involved in its drafting, nor was it even informed that negotiations regarding the Producing Services Agreement were occurring. Counsel to First Republic was not served with the Lantern Certification until after entry of the Stipulated Order.

6.  Moreover, the Stipulated Order affects the Exploitation of Title Rights (as such terms are used in the APA) related to the film "Polaroid." Significantly, these assets were not part of the sale to Lantern and were expressly carved out of the sale under paragraph 57 of the Sale Order, of which fact the parties that signed the Stipulated Order were (or should have been) aware. Indeed, at the time the Lantern Certification and the Stipulated Order were filed, Lantern and First Republic were negotiating the terms of a potential assumption by Lantern of the First Republic loan precisely to effectuate a transfer to Lantern of the Film and the Project Collateral.

7.  Simply put, the Lantern Certification led the Court to enter a stipulation to which not all of the relevant parties had agreed, in a manner that improperly and inequitably affects First Republic's rights in and to the Project Collateral. Accordingly, First Republic respectfully submits that the Stipulated Order should be vacated.

8.      In addition, First Republic described in the Lift Stay Motion and the related Supplemental Statement[3] certain actions taken by Lantern with respect to the Film. Despite repeated requests, Lantern has not provided to First Republic or to the Debtors the cash and physical assets related to the Film in Lantern's possession. Accordingly, First Republic also seeks an order directing Lantern to turn over any Polaroid Collateral in its possession, a request necessitated by the fact that, notwithstanding the clear record of the hearing, its own concession that it never purchased the Polaroid Collateral, and its promise to the Court that it would cooperate with the return of the Polaroid Collateral, Lantern has not done so.

## RELEVANT BACKGROUND[4]

### I. The Lift Stay Motion

9.      On October 30, 2018, First Republic filed the Lift Stay Motion to obtain possession of the Polaroid Collateral. As explained in the Lift Stay Motion and the Supplemental Statement, the Lift Stay Motion (and the Supplemental Statement) was precipitated by First Republic learning that despite the fact that Lantern had not purchased the Polaroid assets, including the Polaroid Collateral, Lantern had taken various actions to exercise control over, and hold itself out as the owner of, the motion picture currently entitled "Polaroid" (the "Film").

### II. The Lantern Certification and the Stipulated Order

10.      As explained in the Lift Stay Motion, Lantern's actions to exercise control over, and hold itself out as the owner of, the Film included negotiating and filing the *Certification of Counsel Regarding Stipulation Among the Debtors, Lantern Entertainment LLC, Vertigo Prime,*

---

[3]    The "Supplemental Statement" is the *Supplemental Statement of First Republic Bank in Connection with Motion for Order Granting Relief from Automatic Stay for Cause* [Docket No. 1647].

[4]    To avoid burdening the Court with unnecessarily lengthy pleadings, the facts and other background set forth in the Lift Stay Motion are hereby incorporated herein.

4

*Inc. and Good Fear Film, Inc.* [Docket No. 1567] (the "<u>Lantern Certification</u>"). The Lantern Certification was filed in connection with the Stipulated Order, which is an agreement among Lantern, the Debtors, and certain Producers with regards to a prepetition Producing Services Agreement between the Producers and the Debtors, pursuant to which the Producers agreed to provide producing services in connection with the Film. A copy of the Lantern Certification [Docket No. 1567] and the Stipulated Order [Docket No. 1574] are attached hereto as **Exhibit B** for the convenience of the Court.

11. The Stipulated Order purported to resolve certain objections filed by the Producers in connection with the APA and its treatment of the Producing Services Agreement. Pursuant to the Stipulated Order, Lantern, the Debtor, and the Producers agreed to treat the Producing Services Agreement—including the "results and proceeds of the Producers' services" under that agreement—as having been transferred to Lantern free and clear of any liens, claims, interests, or encumbrances ***pursuant to the Sale Order***.[5]

12. The Stipulated Order also provides that the parties thereto agreed that Lantern will honor a number of the Debtors' obligations to the Producers under the Producing Services Agreement.[6]

13. Although the Stipulated Order expressly deals with rights related to the Film and the Project Collateral, First Republic was never consulted about, or even made aware of, the negotiation of the Stipulated Order or the submission of the Lantern Certification or the underlying Stipulated Order.

---

[5] *See* Stipulated Order, ¶ 4 (emphasis added).

[6] *See* Stipulated Order, ¶ 5.

14. The Court entered the Stipulated Order on October 9, 2018.[7] On October 10, 2018, after entry of the Stipulated Order, Lantern served both the Lantern Certification and the Stipulated Order.[8]

### III. November 6, 2018 Hearing on Lift Stay Motion

15. None of the Debtors, Lantern or the Producers, or any other party, objected to First Republic's assertion in the Lift Stay Motion that the Project Collateral—including the Film—had not been purchased by Lantern under the APA or the Sale Order. Similarly, no party objected to the underlying relief requested in the Lift Stay Motion and First Republic's right to relief from the automatic stay.

16. The Producers filed the *Limited Response of Vertigo Prime, Inc., and Good Fear Film, Inc., to Motion of First Republic Bank for Order Granting Relief from the Automatic Stay* [Docket No. 1649] (the "Limited Response"). The Limited Response stated that the Producers (i) agreed to the stipulation believing that Lantern had purchased the Film and (ii) took no position regarding First Republic's right to relief from the automatic stay, but reserved their rights as to whether the Project Collateral includes the Producing Services Agreement.[9] In particular, the Limited Response requested that any order granting the Lift Stay Motion make clear that First Republic's right to foreclose on the Project Collateral "be subject to the Producing Services Agreement and the Producers' rights therein."[10]

---

[7] *See Order Approving Stipulation among the Debtors, Lantern Entertainment LLC Vertigo Prime, Inc. and Good Fear Film, Inc*., Docket No. 1574.

[8] *See Certificate of Service*, Docket No. 1587. First Republic has consented to electronic service in these cases. *See* Docket No. 115.

[9] Limited Response ¶¶ 12, 7. The Producers have stated that they may assert claims, including fraudulent inducement, against the Debtors and Lantern in connection with the Producers' mistaken belief that the Film had been transferred to Lantern pursuant to the Sale Order. *See* Limited Response ¶ 12. First Republic takes no position with respect to any such claims.

[10] Limited Response ¶ 10.

6

17. The Limited Response did not dispute the validity of First Republic's liens in the Polaroid Collateral. This is consistent with the UCC-1 financing statement filed in connection with First Republic's liens, which was attached to the Lift Stay Motion as Exhibit C and which states that First Republic's collateral includes "all of the Debtor's rights, and interest, if any, in and to all personal property assets of the Debtors whether now owned or hereafter acquired, and whether or not in the possession of the debtor, and the proceeds and products, whether tangible or intangible thereof, exclusive of the Excluded Collateral."[11]

18. Similarly, the copyright mortgage granted to First Republic, and filed with the Lift Stay Motion as Exhibit D, states that First Republic holds a mortgage in all assets of the Debtor (other than the Excluded Collateral).

19. At the Hearing on the Lift Stay Motion, (i) the Court heard argument regarding the Producers' asserted interest in the Producing Services Agreement and (ii) counsel for the Debtors acknowledged the Certification and Stipulated Order were not submitted on notice, and that the Stipulated Order should be vacated, and First Republic apprised the Court of its concerns with respect to the procedural improprieties affecting the Stipulated Order.

    a. <u>Argument Regarding Producing Services Agreement</u>

20. The Producers stated that they did not know whether the Producing Services Agreement "is or is not collateral."[12] Separately, the Producers also argued that, by virtue of the Stipulated Order, the Court had already ruled that the any transfer of the Producing Services Agreement must be subject to the Producers' interests.[13]

---

[11] *See* Lift Stay Mot., Ex. C. The Producing Services Agreement is not included in the definition of Excluded Collateral.

[12] *See* Hr'g Tr. at 101:24-25, Nov. 6, 2018. A copy of the transcript of the November 6, 2018 hearing is attached hereto as **Exhibit C**.

[13] *See* Hr'g Tr. at 96:5-15.

21.     In response, First Republic argued that whether a foreclosure (or other transfer) of the Project Collateral should be subject to the Producers' alleged rights—including whether the Producing Services Agreement is part of the Project Collateral and whether the rights of the Producers, if any, therein would could be impaired or otherwise effected by a foreclosure—is a dispute between two non-debtor parties that need not be adjudicated by this Court.

22.     To that end, First Republic stated that while it was willing to have relief from the stay conditioned on or subject to the determination of those rights, it did not concede that the stay relief should be subject to those asserted rights without, or regardless of, any such determination.[14]

b.  Statements Regarding Stipulated Order

23.     As stated above, the Producers relied, at least in part, on the Court's entry of the Stipulated Order.  The Stipulated Order was negotiated on the premise that Lantern had or would acquire the Film, which the record confirms is not the case.  Indeed, at the Hearing, counsel for the Debtors stated that it was "the debtors' position that we should immediately vacate that order"[15] and that the Debtors did not believe that the Court, in considering the Lift Stay Motion, should take the Stipulated Order into account.[16]

24.     Ultimately, the Court concluded that the Stipulated Order "muddied the waters" with regard to the Producers' rights under the Producing Services Agreement and First Republic's rights in and to the Project Collateral (including the Film), and the Court should decide whether the Stipulated Order should have been entered before allowing First Republic to

---

[14]  *See* Hr'g Tr. at 94:18-95:10.
[15]  *See* Hr'g Tr. at 99:2-3.
[16]  *See* Hr'g Tr. at 98:5-8.

8

"proceed as to assets that are affected by that order."[17] To that end, the Court advised that it would consider a motion, filed by First Republic, to vacate the Stipulated Order.[18]

25. Finally, and consistent with the Court's ruling and the Producers' agreement to an order lifting the stay with respect to the Polaroid Collateral to which their alleged interests "could not possibly attach,"[19] the Court granted the Lift Stay Motion "other than with respect to the [Producing Services Agreement]."[20]

## RELIEF REQUESTED

26. First Republic seeks entry of an order, substantially in the form of the Proposed Order, (i) vacating the Stipulated Order, (ii) lifting the automatic stay with respect to the Producing Services Agreement, subject to whatever rights the Producers may have in or under the Producing Services Agreement under applicable non-bankruptcy law, and (iii) enforcing the Sale Order and the Court's oral ruling on the Lift Stay Motion and directing Lantern to turn over to [the Debtors or] First Republic any and all Polaroid Collateral in its possession.

## JURISDICTION AND VENUE

27. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 157. The Motion is a core proceeding within the meaning of 28 U.S.C. 157(b)(2)(G). The statutory bases for the relief requested herein include section 362(d)(1) of the Bankruptcy Code, Bankruptcy Rules 4001 and 9024, and Local Rule 4001-1. Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

---

[17] *See* Hr'g Tr. at 108:17-21.

[18] *See* Hr'g Tr. at 109:21-110:1.

[19] *See* Hr'g Tr. at 106:23-106:2.

[20] *See* Hr'g Tr. at 110:2-5.

28. First Republic consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**BASIS FOR RELIEF REQUESTED**

**I.    Stipulated Order Should Be Vacated**

29. Rule 60 of the Federal Rules of Civil Procedure, made applicable to this Motion by Bankruptcy Rule 9024, governs relief from a judgment or order, and allows the Court to correct "a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record", or where the judgment or order in question was entered due to "mistake" or is found to be "void." *See* Fed. R. Civ. Proc. 60(a) and (b)(1) and (4). Additionally, a court may grant relief under Rule 60 for "any other reason that justifies relief." *See* Fed. R. Civ. Proc. 60(b)(6).

30. Courts have held that an improperly entered order, or one entered without proper notice of the underlying relief, justifies vacating the order under Bankruptcy Rule 9024. *See, e.g.*, *In re United Artists Theatre Co.*, ("a judgment obtained without proper notice is void," and movant entitled to relief under Rule 60(b)(4)); *see also In re Macquarrie*, 2016 WL 6647741 No. 6:14-BK-13112-KSJ, 2016 WL 6647741, at *2 (Bankr. M.D. Fla. Nov. 9, 2016) (subsequent history omitted) (Rule 60(b)(6) relief warranted where service was improper).

31. Similarly, in *In re Luxeyard, Inc.*, 556 B.R. 627, 630 (Bankr. D. Del. 2016), Judge Silverstein vacated an order entered in reliance on a misleading certification of counsel. In that case, certain creditors who had filed an involuntary petition filed a certification of counsel in which they requested the court enter an order for relief because the debtor had not responded to the petition. However, the certificate of counsel failed to mention that the debtor asserted that

the petition was filed in bad faith and that the debtor intended to defend against the petition. *Id.* Ultimately, the court vacated the order for relief. *Id.*[21]

32. Similarly, Local Rule 9019-1(a) requires that any certification of counsel "must state whether the revised or agreed form of order has been reviewed and approved by all the parties affected by the order." Local Rule 9019-1(a) further requires that any certification of counsel "shall be served on all affected parties."

33. Notwithstanding these requirements, the Lantern Certification contained no statement that it had been reviewed and approved by *all* the affected parties. Indeed, the Stipulated Order attached to the Lantern Certification was not discussed or shared with First Republic prior to its filing.

34. Moreover, as evident from the affidavit of service filed by Lantern, the Lantern Certification was served only after the Stipulated Order had been entered.

35. Finally, First Republic submits that the principles of equity amply justify vacating the Stipulated Order. Similar to the Producers, certain guilds filed a reservation of rights in connection with their asserted rights in the Polaroid Collateral.[22] First Republic was able to successfully negotiate a resolution of the guilds' concerns, approved by the Court, pursuant to which relief from the automatic stay would not preclude the guilds from asserting their alleged rights in another forum. First Republic proposes to treat the Producing Services Agreement no differently.

---

[21] In its bench ruling, the court noted that the debtor had made statements "sufficient to put the petitions creditors on notice that [the debtor] intended to contest the involuntary filing," but, nonetheless, the "contested nature of the petition was not specifically noted in the certification of counsel." *See* Hr'g Tr. at 10:3-6, Jan. 16, 2015, *In re Luxeyard, Inc.*, No. 14-12170 (LSS) (Bankr. D. Del. 2014 [Docket No. 57]. A transcript of Judge Silverstein's bench ruling is attached hereto as **Exhibit D**.

[22] *See* [Docket No. 1656].

11

36.     Indeed, the Court explained that the entry of the Stipulated Order—which "muddied the waters" with respect to the alleged rights asserted by the Producers—was the only difference between the treatment of the guilds' reservation of rights and the Producers' Limited Response.[23] The logical conclusion from the Court's comments at the Hearing is that the Court—if not for the Stipulated Order—would have overruled the Limited Response and lifted the automatic stay with respect to the Producing Services Agreement and left the Producers to assert their alleged rights in another forum. Accordingly, entry of the Stipulated Order has prejudiced First Republic. Indeed, by holding itself out as the putative owner of the Film, and by transferring the Producing Services Agreement without First Republic's knowledge or consent, the parties (including Lantern) (i) have created confusion in the marketplace as to who owns the Film, (ii) potentially cost First Republic deals that would have yielded value for it – and the estate – related to the Film, (iii) placed First Republic's collateral in the hands of Lantern even though Lantern did not (and does not) own the Film, and (iv) delayed First Republic's ability to address the purported rights of the Producers under the Producing Services Agreement, whether by negotiation, exercise of secured creditor remedies or litigation in a non-bankruptcy forum.

37.     For the foregoing reasons First Republic respectfully submits that the Stipulated Order should be vacated pursuant to any of subsections (a) and (b)(4) and (b)(6) of Rule 60 of the Federal Rules of Civil Procedure.

**II.     Automatic Stay Should Be Lifted With Respect to Producing Services Agreement**

38.     As explained above, the Court's reluctance to lift the stay with respect to all Polaroid Collateral, including the Producing Services Agreement, stemmed from the Court's

---

[23]  *See* Hr'g Tr. at 108:6-21.

12

concern that the Stipulated Order "muddied the waters" with regards to the Producers' rights under the Producing Services Agreement.

39. Indeed, the Court explained that "to be clear" if the Court were to vacate the Stipulated Order, the Court would be "out of it at that point," as the Court is not "looking to decide the rights of two non-debtor parties."

40. For the reasons discussed above, the Court should grant First Republic's request and vacate the Stipulated Order. Once the Stipulated Order is vacated the Court can, and should, lift the automatic stay so that the Court can be "out of" this dispute between First Republic and the Producers.

### III. Lift Stay Motion Should Be Granted With Respect To Producing Services Agreement Even if Stipulated Order Is Not Vacated

41. Alternatively, First Republic submits that the automatic stay should be lifted with respect to the Producing Services Agreement even if the Stipulated Order is not vacated. The Stipulated Order provides that the parties thereto agreed to "treat" the Producing Services Agreement as having been transferred, pursuant to the Sale Order, to Lantern free and clear of any liens, claims, interests, or encumbrances.[24]

42. Because First Republic is not a party to the Stipulated Order, *First Republic* has never agreed to treat the Producing Services Agreement as having been transferred to Lantern or that any such (nonexistent) transfer was free and clear of First Republic's liens. Moreover, Lantern is not contesting the fact that it did not acquire the Film.

43. Finally, for the avoidance of doubt, First Republic is not asking that the Court make any ruling with respect to what rights the Producers may or may not have in the Producing Services Agreement and whether those rights may be affected by First Republic's exercise of its

---

[24] Stipulated Order ¶ 4.

13

legal remedies. As proposed by First Republic at the Hearing, these issues will be determined in accordance with applicable non-bankruptcy law by the appropriate court.

### IV.     Lantern Must Turn Over Polaroid Collateral In Its Possession

44.     The Film and its related assets, including the Polaroid Collateral, were indisputably not part of the sale to Lantern and were expressly carved out of the sale under paragraph 57 of the Sale Order. In fact, Lantern concedes that it did not obtain any rights to or interest in the Film or the Polaroid Collateral under the APA and the Sale Order. Notwithstanding these undisputed facts, Lantern has refused to turn over the Film or the Polaroid Collateral in its possession, or even provide any explanation of—in violation of the express language of Sale Order—how it came to be in possession of the Film or any Polaroid Collateral or where such collateral is currently located.

45.     Lantern's possession of the Polaroid Collateral is not only contrary to the Sale Order—it is also a violation of the Court's oral ruling granting the Lift Stay Motion.[25] As stated above, at the conclusion of the Hearing the Court confirmed that the Lift Stay Motion was granted other than with respect to the Producing Services Agreement. Moreover, counsel to Lantern stated on the record that Lantern would cooperate with the return of the Polaroid Collateral.

46.     Notwithstanding this representation to the Court, Lantern's promises of cooperation have proven empty. Since the Hearing, Lantern has refused to turn over the funds and the physical materials it has wrongfully obtained. Most recently, on November 9, 2018, counsel for First Republic emailed counsel for Lantern requesting information regarding Lantern's actions in connection with the Polaroid Collateral (the "<u>Preliminary Requested</u>

---

[25]     First Republic notes that Lantern's possession and control over property of the estate, and its continued refusal to relinquish such control, is also a knowing and willful violation of the automatic stay.

Information"), and advised Lantern that First Republic would seek Court intervention if a consensual resolution could not be reached by November 13, 2018.[26] This request has gone unanswered.

47. Finally, Lantern's refusal to comply with the express provision of the Sale Order, this Court's oral ruling, and its own statements at the Hearing do not harm only First Republic, but also the Debtors and their estates.  As noted in the Lift Stay Motion, any value in the Polaroid Collateral in excess of First Republic's claim will benefit the Debtors and their estates, and First Republic has agreed to consult with the Debtors and the Committee on the marketing process.  The importance, and potential value to the Debtors, of Lantern's compliance with this Court's orders and ruling is particularly glaring in connection with the Cash Collateral Lantern is holding, as application of the Cash Collateral to First Republic's claim will result in a dollar for dollar reduction of the claim, making it more likely that the marketing process of the Film and the Polaroid Collateral will generate funds in excess of First Republic's claim.

## WAIVER OF BANKRUPTCY RULE 4001(A)(3)

48. Bankruptcy Rule 4001(a)(3) provides that any order lifting the automatic stay is stayed for 14 days "after the entry of the order, unless the court orders otherwise."  First Republic respectfully submits that in light of the harm it will suffer from the continuing decline in its collateral, there is cause to waive this 14-day stay.

## NO PRIOR REQUEST

49. First Republic Bank has made no prior request for the relief requested herein to this or to any other court.[27]

---

[26] A copy of this email is attached hereto as **Exhibit E**.
[27] The Lift Stay Motion requested relief from the automatic stay with respect to all Polaroid Collateral, which First Republic asserted, and continues to assert, includes the Producing Services Agreement.

15

WHEREFORE, First Republic respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto, (i) vacating the Stipulated Order, (ii) lifting the automatic stay with respect to the Producing Services Agreement, (iii) requiring that Lantern turn over to the Debtors or to First Republic any and all Polaroid Collateral in its possession, and (iv) granting such other and further relief as the Court finds just and proper.

| | |
|---|---|
| Dated:  November 15, 2018 | **ASHBY & GEDDES, P.A.**<br><br>*/s/ Ricardo Palacio*<br>William P. Bowden, Esq. (#2553)<br>Ricardo Palacio, Esq. (#3765)<br>Katharina Earle, Esq. (#6348)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Telephone:  (302) 654-1888<br>Facsimile:  (302) 654-2067<br><br>-and-<br><br>**PAUL HASTINGS LLP**<br><br>Andrew V. Tenzer, Esq.<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 318-6000<br>Facsimile:  (212) 230-7699<br>andrewtenzer@paulhastings.com<br><br>Susan Z. Williams, Esq.<br>1999 Avenue of the Stars<br>Los Angeles, CA 90067<br>Telephone: (310) 620-5700<br>Facsimile:  (310) 620-5899<br>susanwilliams@paulhastings.com<br><br>*Counsel for First Republic Bank* |