**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: TBD**<br>**Objection Deadline: TBD** |
|---|---|

**MOTION OF EXECUTORY CONTRACT COUNTERPARTIES FOR ORDER CONFIRMING THAT COUNTERPARTIES' AGREEMENTS HAVE BEEN DESIGNATED BY LANTERN FOR ASSUMPTION AND ASSIGNMENT**

The executory contract counterparties listed on Exhibit A hereto (collectively, the "**Counterparties**") – comprising prominent actors, directors, producers, and writers in the entertainment industry – respectfully request entry of an order confirming that (1) the Counterparties' agreements have been designated by Lantern Entertainment LLC ("**Lantern**") for assumption and assignment subject only to the resolution of cure amounts, or, in the alternative, that (2) Lantern has failed appropriately to designate the Counterparties' agreements for assumption and assignment to Lantern by the November 8, 2018 court-ordered deadline and may no longer unilaterally do so without the agreement of the Counterparties. In support of this motion (the "**Motion**"), the Counterparties respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. It is indisputable that by Order of this Court, on November 8, 2018, Lantern was required to finally and definitively to designate agreements to be assumed and assigned, subject only to resolution of cure disputes, if any. Counsel for The Weinstein Company LLC ("**TWC**") and its affiliated debtors (collectively, the "**Debtors**"), the Committee of Unsecured Creditors (the "**Committee**"), and Lantern itself confirmed that deadline to this Court on numerous occasions. Indeed, at the beginning of August 2018, Lantern filed a motion to "streamline" procedures

regarding the resolution of issues between Lantern and the Counterparties due to the requirement to make a final decision regarding assumption and assignment by no later than November 8, 2018. And when the Court declined to order such "streamlined" procedures, Lantern's counsel suggested that Lantern likely would need to file a motion on shortened notice to extend the November 8 deadline. Counsel for the Committee stated that the Committee would object to such extension, and the Court indicated that it would deal with a motion to extend if and when one is filed. Lantern did not request an extension of the deadline, and instead stated at a hearing on November 6, 2018 that "the world will know whether their contracts are being assumed or not and, to the extent they're being assumed, if there are disputes with respect to cure costs that can't be resolved, those, I'm sure, will be brought before Your Honor."

2. Unfortunately, on November 8, 2018, Lantern filed a schedule of contracts that makes it impossible for anyone to know whether the Counterparties' agreements definitively have been designated for assumption and assignment. While Lantern includes the Counterparties' agreements on the list of agreements to be assumed and assigned (as opposed to the list of "Excluded Contracts"), Lantern purports to give itself a free option to make the decision regarding assumption and assignment at some indeterminate time in the future, after the conclusion of certain litigation. In other words, rather than ask this Court for an extension of the November 8, 2018 deadline, Lantern is attempting to give the extension to itself (contrary to the terms of the Asset Purchase Agreement, and the Order of this Court).

3. While the films associated with the Counterparties' agreements have been exploited throughout the pendency of these cases (first by the Debtors, and now by Lantern), the Counterparties have not received <u>any</u> payments during the pendency of these cases as required by the agreements, either before or after the closing of the sale. The Counterparties reasonably relied

on the November 8, 2018 deadline as the date by which they would know definitively whether their agreements would be assumed and assigned. Regardless of the equivocal language included by Lantern in the designation notice, Lantern chose to include the Counterparties' agreements on the list of agreements to be assumed and assigned and should now be made to live with that decision. Indeed, Lantern had ample opportunity to address and resolve disputes regarding, among other things, the assignability of the contracts, the executory nature of the contracts at issue, the purported ability to sell the relevant pictures free and clear of the Counterparties' contractual and legal rights, prior to November 8, 2018. Lantern made a calculated decision not to take that opportunity. Certainly, Lantern should be held accountable for its decision to designate without any conditions all contracts that it intended to assume and assign by November 8, 2018, as provided for in the APA and orders of the Court, which the Counterparties and other parties in interest including the Committee relied on. Alternatively, if this Court concludes that the equivocal language prevented the Counterparties' agreements from having been designated for assumption and assignment, then the November 8, 2018 deadline should not retroactively be extended, and Lantern should not be permitted to assume and assign the Counterparties' agreements absent consent of the Counterparties. This Court should not countenance Lantern's dilatory actions and flagrant disregard of a deadline that was bargained for among the Debtors, the Committee, and Lantern, that was approved by this Court, and that Lantern has acknowledged multiple times over multiple hearings.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

5. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**BACKGROUND**

6. On March 19, 2018 (the "**Petition Date**"), the Debtors filed their respective voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware.

7. On March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially all of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [D.I. 8] (the "**Sale Motion**").

8. Attached to the Sale Motion as Exhibit B was a form of Asset Purchase Agreement (as subsequently amended, the "**APA**") with Lantern. The APA provides that Lantern will acquire certain "Purchased Assets" in connection with the sale, including certain film titles listed in Annex 1 to the APA. The Counterparties are actors, directors, writers, and producers of certain of the films listed in Annex 1 to the APA.

9. On April 6, 2018, the Court entered the *Order (I) (A) Approving Bidding Procedures for Sale of Substantially All of The Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction For, And Hearing to Approve, Sale of Substantially All of The Debtors' Assets, (D) Approving Form and Manner of Notices Of Sale, Auction And Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief* (the

"**Bidding Procedures Order**") [D.I. 190].

10. The Bidding Procedures Order established a procedure for the potential assumption of certain executory contracts by the Debtors and the assignment of those contracts to the successful purchaser. Among other things, the Debtors were obligated to file a notice, the "Potential Assumption and Assignment Notice and Contracts Schedule," which "specifies (i) each of the Contracts and Leases that ***may be*** assumed and assigned in connection with the Sale, including the name of each Counterparty and (ii) the proposed Cure Amount with respect to each Contract and Lease." Bidding Procedures Order, ¶ 24 (emphasis added).

11. The Debtors have filed multiple notices addressing the ***potential*** assumption of executory contracts and the assignment of those assumed contracts to Lantern. [*See* D.I. Nos. 216, 282, 482, 860.]

12. On May 9, 2018, the Court entered its *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* (the "**Sale Order**") [D.I. 846].

13. Paragraph 29 of the Sale Order provides that the Debtors will assume "each of the Assumed Contracts and Leases identified on a notice that the Debtors ***will file*** with the Court within (1) Business Day after entry of [the Sale] Order . . . and assign the Assumed Contracts and Leases" to Lantern. Sale Order, ¶ 29 (emphasis added). Paragraph 35 of the Sale Order further provides that "[e]ach Assumed Contract and Lease constitutes ***an executory contract*** or unexpired lease under Bankruptcy Code section 365, and all requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to [Lantern] of the

Assumed Contracts and Leases have been, or will be, satisfied. . . ." *Id.*, ¶ 35 (emphasis added).

14. On May 10, 2018, the Debtors filed their *Notice of Filing of Final List of Potentially Assumed Contracts and Leases* (the "**Contract List**") [D.I. 860]. The Contract List contains numerous contracts with the Counterparties which, by their inclusion in the Final Contract List and pursuant to Paragraph 35 of the Sale Order, have been fully and conclusively designated as executory contracts.

15. On June 8, 2018, the Debtors filed the *Debtors' Statement Regarding Contracts to Be Transferred Pursuant to the Asset Purchase Agreement with Lantern Entertainment LLC* (the "**Statement**"). The Statement, which was not a noticed motion and was not contemplated or otherwise provided for under the APA or the Sale Order, "identifies certain non-executory contracts that are being removed from the assumed contracts schedule" under the APA. Attached as Exhibit A to the Statement is a list of contracts with the Counterparties that the Debtors allegedly have determined are not executory. Statement, ¶ 6. The Debtors also allege, without authority or specificity, that "[n]otwithstanding that the contracts . . . are not executory contracts and are not being assumed and assigned pursuant to Section 365 of the Bankruptcy Code, the Asset Purchase Agreement provides for the purchase, by Lantern, of any rights or assets transferred to the Debtors pursuant to such contracts." *Id.*, ¶ 7. The Statement was not authorized by any order of the Court.

16. On June 27, 2018, the Debtors filed the *Motion for an Order Approving Amendment to Asset Purchase Agreement Entered into by and Between the Debtors and Lantern Entertainment LLC* [D.I. 1115] (the "**Motion to Amend APA**"), in which Lantern sought a price reduction of $23 million purportedly to allow Lantern to pay cure amounts owing to various executory contract counterparties, including the Counterparties.[1]

[1] Based on subsequent negotiation with the Committee, Lantern agreed to seek a $21 million price reduction.

17. On June 28, 2018, the Debtors filed an executed copy of the Second Amendment to the APA [D.I. 1129].

18. On July 9, 2018, the Debtors filed the Notice of Filing of Revised Second Amendment to Asset Purchase Agreement [D.I. 1187].

19. On July 10, 2018, the Debtors filed the Notice of Filing of Conformed Copy of Asset Purchase Agreement Reflecting Modifications Set Forth in Revised Second Amendment [D.I. 1202] (the "Notice of Conformed APA").

20. Also, on July 10, 2018, the Debtors filed an omnibus reply to various objections filed to the Debtors' Motion to Amend APA. [D.I. 1207.] In the reply, the Debtors argued that "[c]ontrary to the positions taken by the Objectors, the Revised Second Amendment at worst, consistent with the APA and the Sale Order, preserves all of their rights and, in fact, as a result of hard fought negotiations between the Debtors, Lantern and the Committee, provides additional benefit in the form of, among other things, the guaranteed cure floor, the outside date for assuming and assigning contracts and the certainty of close." [D.I. 1207, □ 7.]

21. On July 11, 2018, the Court entered an *Order Approving Amendment to Asset Purchase Agreement Entered into by and Between the Debtors and Lantern Entertainment LLC* [D.I. 1220] (the "**APA Amendment Order**").

22. The sale to Lantern closed on July 13, 2018. [D.I. 1247.]

23. The APA defines "Disputed Contract" as an Assumed Contract with regard to which there has been an "objection by the non-debtor Contract counterparty to the Cure Amount asserted by the [Debtors] . . . ." APA, § 2.8(c)

24. Section 2.8(i) of the APA provides:

> Assumption Outside Date. Notwithstanding anything in this Agreement or the Sale Order to the contrary, the Contract Designation Outside Date shall be the last

> date on which Buyer may (x) designate a Disputed Contract as an "Excluded Asset" pursuant to Section 2.8(c) (with any such Disputed Contract not so designated assumed by Buyer as an "Assumed Contract" in accordance with the terms thereof), (y) assume a Contract that was not identified as an Assumed Contract as of the Closing pursuant to Section 2.8(f) (with any such Contract not so assumed constituting an "Excluded Contract" following such date) or (z) designate a Previously Omitted Contract as an "Assumed Contract" pursuant to Section 2.8(g) (with any such Previously Omitted Contract not so designated constituting an "Excluded Contract" following such date). For the avoidance of doubt, nothing in this Section 2.8(i) shall in any way affect any other date set forth in this Section 2.8, including the dates set forth in Section 2.8(a).

D.I. 1202-1, APA, § 2.8(i).

25. The APA defines "Contract Designation Outside Date" as the date that is the 120th day following entry of the Amendment Order. **Accordingly, the APA required Lantern to decide whether to assume or exclude all contracts by November 8, 2018**.

26. On August 1, 2018, Lantern filed a *Motion for Order Establishing Streamlined Procedures to Resolve Objections to the Potential Assignment of Certain Executory Contracts and Unexpired Leases to Lantern Entertainment LLC* [D.I. 1282] (the "**Procedures Motion**"). In the Procedures Motion, Lantern argued that "[n]otwithstanding the numerous issues raised by the Assignment Objections, *Lantern has a very small period of time, a mere 120 days from July 11, 2018 (i.e. November 8, 2018) to resolve the Assignment Objections and decide whether to assume or exclude each Unresolved Contract. Because Lantern is required to assume or exclude the Unresolved Contracts by November 8, 2018*, Lantern needs to be able to quickly understand the issues in dispute, attempt to resolve those disputes and, where consensual resolution cannot be achieved, promptly have a hearing on the Assignment Objection." Procedures Motion, □ 19 (emphasis added).

27. At the August 23, 2018 hearing on Lantern's Procedures Motion, Lantern repeatedly admitted that the November 8 deadline is a hard deadline. In response to the Court's

observation that Lantern may lose the ability to assume contracts if it does not determine, by November 8, that it need not do so, Lantern's counsel stated: "That's correct, Your Honor. I think the issue of whether those contracts need to be assumed and assigned ought to be decided prior to November 8th." Aug. 23, 2018 Hr'g Tr., at 56:11-15. Lantern's counsel also stated that Lantern would move to continue the deadline. *See id.* at 58:14-24 (MR. STRATTON: We think that where we are now will permit the committee to understand the issue they wanted to understand by that November 8th deadline. We think it would make sense for Your Honor to issue an order to show cause to see whether the committee, the debtors or us, and we don't obviously." THE COURT: I'm not going to issue an order to show cause. **If you want to file a motion . . . seeking an extension of that deadline I think that's the more proper way**.") (emphasis added).

28. At a hearing on November 6, 2018 (only two days prior to the November 8, 2018 deadline), Lantern argued that the Court should deny a motion to compel assumption and assignment of agreements filed by certain contract counterparties, which are not among the moving parties herein, specifically because Lantern had until November 8, 2018 to designate those agreements that it would want assumed and assigned. Lantern affirmatively represented to the Court that, on November 8, 2018, "**the world will know whether their contracts are being assumed or not and, to the extent they're being assumed, if there are disputes with respect to cure costs that can't be resolved, those, I'm sure, will be brought before Your Honor**." *See* Nov. 6, 2018 Hr'g Tr., at 78:10-12 (emphasis added); *see also id.* at 78:25-79:2 (MR. QURESHI: "My understanding, Your Honor, is that November 8th is the deadline by which [Lantern] must finally indicate what [it is] assuming and what [it is] leaving behind.").

29. On November 8, 2018, Lantern filed its *Supplemental Notice of Filing of List of Assumed Contracts Pursuant to Sale Order [Docket No. 846]* [D.I. 1695] (the "**<u>Final Contract</u>**

**List**”). The Final Contract List purports to contain the following categories of contracts:

> (i) certain contracts are being added to the Assumed Contracts Schedule (the “**Supplemental Contracts**”), (ii) certain contracts, which were previously omitted from the Contract Notice (the “**Previously Omitted Contracts**”), are being added to the Assumed Contracts Schedule (iii) certain contracts are being added to the Assumed Contracts Schedule, pending resolution of certain litigation before the Court (the “**Disputed Talent Party Contracts**”), (iv) certain contracts are being added to the Assumed Contracts Schedule, pending resolution of outstanding objections or litigation (the “**Disputed Other Contracts**” and together with the Disputed Talent Party Contracts, the “**Disputed Contracts**”) and (v) certain Disputed Contracts (as defined in the Initial APA) are being deemed Excluded Assets.

Final Contract List, □ 7.

30. The Final Contract List includes the Counterparties’ contracts in a list entitled “DISPUTED CONTRACTS TO BE ASSUMED, SUBJECT TO OUTCOME OF LITIGATION”, and includes equivocal language with respect to the required designation. [*See* D.I. 1695 n.3 (“The Purchaser anticipates that the resolution of the Cohen Dispute will confirm the Purchaser’s interest in the contract at issue in the Cohen Dispute . . . . The Purchaser reserves its right to assume the Disputed Talent Party Contracts in the event the Purchaser does not already own the rights to the Disputed Talent Party Contracts.”).]

31. On October 17, 2018, Lantern filed a Complaint against two of the Counterparties, Bruce Cohen Productions and Bruce Cohen, commencing Adv. No. 18-50924 (MFW). Lantern’s Complaint seeks declaratory relief that: (a) Mr. Cohen’s agreement is nonexecutory and (b) Mr. Cohen’s agreement was assigned to Lantern free and clear of any claims pursuant to Section 363 of the Bankruptcy Code.

32. On October 18, 2018, approximately 3 weeks prior to the November 8, 2018 deadline for Lantern to finally and conclusively designate contracts to be assumed and assigned, Lantern filed *Plaintiff’s Motion for Summary Judgement to Determine the Nonexecutory Nature of a Contract* (the “**Summary Judgment Motion**”).

33. Lantern did not file an adversary proceeding against any other Counterparty. Nor does Lantern argue that the resolution of litigation regarding Mr. Cohen's agreement is in any way dispositive of the disputes of any of the other Counterparties. In fact, it is not.[2]

**RELIEF REQUESTED**

34. By this Motion, the Counterparties request entry of an order confirming that (1) the Counterparties' agreements have been designated by Lantern for assumption and assignment subject only to the resolution of cure amounts, or, in the alternative, that (2) Lantern has failed appropriately to designate the Counterparties' agreements for assumption and assignment to Lantern by the November 8, 2018 court-ordered deadline and may no longer unilaterally do so without the agreement of the Counterparties.

**ARGUMENT**

**A. The Court Should Confirm That the Counterparties' Agreements Have Been Designated for Assumption and Assignment to Lantern**

35. The APA required Lantern to designate, by no later than November 8, 2018, whether a particular contract is an Assumed Contract or an Excluded Contract. The Final Contract List is the schedule by which Lantern has designated all such contracts – *i.e.*, it contains lists of "Assumed Contracts" and "Excluded Contracts." The Counterparties' agreements are not listed in the "Excluded Contracts" schedule attached to the Final Contract List, but rather in a schedule of "Assumed Contracts." As such, the Counterparties' agreements have been designated for assumption and assignment.

[2] Lantern's speculation that resolution of the so-called Cohen Dispute may confirm its interest with respect to the assumption of the Counterparties' agreements is both beside the point and illusory. First, if Lantern believed that it was necessary to resolve the Cohen Dispute prior to the November 8 deadline, Lantern could have moved to extend that deadline as it previously suggested to this Court. Lantern never did so. Second, the Cohen Dispute will not be dispositive of anything other than the issues directly related to the Cohen agreement (Lantern previously admitted that each agreement is "unique"). Third, it is likely that the Cohen Dispute will not be resolved by summary judgment, and in any event could be subject to lengthy appeals by either of the parties.

36. While Lantern purports to preserve a right to decide at some point in the future whether to assume or not to assume the Counterparties' agreements based on the outcome of only one litigation against one Counterparty, neither the APA nor any orders of this Court permits Lantern to do so. Indeed, Section 2.8(i) of the APA makes clear that the "Contract Designation Outside Date" – *i.e.*, November 8, 2018 – is a hard deadline by which Lantern may designate a contract either as "assumed" or "excluded." In other words, there are only two options – assume or designate as an excluded asset. It does not permit Lantern to hedge its bets by stating that it "may" assume certain contracts if the Court determines – sometime in the future – that Lantern should have assumed the agreements if it wanted to acquire the rights thereunder.

37. That Lantern was required to decide, without equivocation, whether to assume the Counterparties' agreements by November 8 is made clear by Lantern's own representations to the Court. As the Court will recall, the Procedures Motion was predicated on Lantern's stated need to know, by November 8, 2018, whether it must assume the Counterparties' agreements under Section 365 in order to obtain the rights under those agreements. In the Procedures Motion, Lantern repeatedly stated that it "is required to decide whether to assume or exclude [the contracts] by November 8, 2018. *See* Procedures Motion, □ 16; *see also id.*, □ 19 ("Lantern has a very small period of time [*i.e.*, until November 8, 2018] to . . . decide whether to assume or exclude each Unresolved Contract. . . . Lantern is required to assume or exclude the Unresolved Contracts by November 8, 2018 . . . ."). Lantern made the same representation to the Court at the hearing on the Procedures Motion. Aug. 23, 2018 Hr'g Tr., at 56:11-15 ("That's correct, Your Honor. I think the issue of whether those contracts need to be assumed and assigned ought to be decided prior to November 8th.").

38. When it became clear that the Court would not order expedited procedures that

would allow Lantern to seek a comfort determination that it need not assume the Counterparties' agreements before the November 8, 2018 deadline, Lantern's counsel indicated that it would seek to extend that deadline. *See* Aug. 23, 2018 Hr'g Tr., at 52:21-53:3 (MS. LEADER: "Lantern doesn't have the ability to change the November 8th date or even with the agreement of the parties. So, if Your Honor deems appropriate Your Honor could issue an order to show cause why that November 8th deadline shouldn't be moved to a couple months or a few months till the end of January. We would certainly not oppose that."); *id.* at 58:14-24 (MR. STRATTON: "We think that where we are now will permit the committee to understand the issue they wanted to understand by that November 8th deadline. We think it would make sense for Your Honor to issue an order to show cause to see whether the committee, the debtors or us, and we don't obviously." THE COURT: "I'm not going to issue an order to show cause. If you want to file a motion . . . seeking an extension of that deadline I think that's the more proper way."); *id.* at 59:3-14 (MR. STRATTON: "So, Your Honor, I think maybe that's the way to approach it. We're happy to do that. We'll talk internally and see if that's something we should file and if so, I think we probably will, we'll get it filed promptly and ask that it be heard on shortened notice because that date is really the driver of this entire problem. You called it a procedural[] mess. I'm not going to sit here and argue. I'm not in the habit of arguing with Your Honor in the first place, but it is. It's not necessarily our making, but we're trying to fix it. So, maybe we can deal with [the November 8] date, even add a couple of months.").

39. Lantern did not file a motion seeking an extension of the November 8th deadline either on shortened notice or otherwise.

40. Similarly, as recently as November 6, 2018, Lantern affirmatively represented to the Court that, on November 8, 2018, "the world will know whether their contracts are being

assumed or not." *See* Nov. 6, 2018 Hr'g Tr., at 78:10-12; *see also id.* at 78:25-79:2 (MR. QURESHI: "My understanding, Your Honor, is that November 8th is the deadline by which [Lantern] must finally indicate what [it is] assuming and what [it is] leaving behind.").[3]

41. Having sat on its hands for three months since the August 23 hearing on the Procedures Motion, Lantern appears to have decided to ignore the November 8 deadline altogether. To the extent that Lantern's position is that the November 8 deadline was a "soft" deadline by which Lantern was required merely to show its "interest" in various contracts as opposed to definitively and unequivocally designate them for assumption and assignment, Lantern is precluded from taking that position.

42. First, Lantern's numerous statements regarding the November 8 deadline constitute judicial admissions that Lantern is precluded from controverting at this stage. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("[J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible."); *Keller v. U.S.*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are 'not evidence at all but rather have the effect of withdrawing a fact from contention.'") (citations omitted).

43. Second, judicial estoppel also precludes Lantern from reversing its position and

[3] Counsel for the Unsecured Creditors' Committee also made clear at the November 6, 2018 hearing that the November 8 deadline was a "hard" deadline. Nov. 6, 2018 Hr'g Tr., at 87:16-88:4 (MR. ROBINSON: "I rise for either myself and my colleague on the phone, Jason Rosell, rise for a clarification as to the November 8th deadline. Just to make clear, Your Honor, that's the date to designate and exclude a contract. Lantern has to assume contracts not previously identified as assumed contracts by November 8. I just want to make that clear on the record, Your Honor." THE COURT: "Say that again?" MR. ROBINSON: "Your Honor, I have the language of the sale in front of me. November 8th is a hard date to assume contracts, not previously identified. We just want to make sure that was clear on the record."). Lantern's counsel did not dispute the statement made by counsel for the Committee.

claiming that the November 8 deadline was a "soft" deadline that did not require Lantern to definitively and unequivocally designate contracts for assumption and assignment. As the Court will recall, Lantern obtained a substantial benefit – *i.e.*, a reduction of $21 million in the purchase price under the APA – in consideration for, among other things, the imposition of the November 8 deadline. Having obtained that benefit, Lantern is now precluded from arguing that the deadline actually was no deadline at all. *See*, *e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996); *Vision Metals, Inc. v. SMS DEMAG, Inc. (In re Vision Metals, Inc.)*, 325 B.R. 138 (Bankr. D. Del. 2005) ("Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment. . . . A litigant is required to be consistent in his conduct. He may not maintain a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction.") (citations and quotations omitted).

44. In sum, Section 2.8(i) of the APA required Lantern to either (1) designate contracts for assumption and assignment (subject to resolution of objections filed by the applicable contract counterparties to the cure amounts); or (2) designate contracts as "excluded" contracts or assets. The APA does not give Lantern the option of equivocating or designating contracts for "potential" assumption and assignment. For that reason, the Court should disregard as ineffective the equivocation language included in the Final Contract List.

45. Lantern's argument that its Summary Judgment Motion against Mr. Cohen somehow will resolve the issue of whether contracts with the remaining Counterparties are executory is a red herring that exemplifies the expression "too little, too late." First, Lantern filed

the Summary Judgment Motion only three weeks prior to the November 8 deadline, knowing full well that it would need to make the designation prior to any ruling on that motion. Second, even if this Court was to rule on whether Mr. Cohen's agreement is executory in the context of the Summary Judgment Motion, such ruling would not be dispositive as to agreements with any other Counterparty as each of the numerous agreements (by Lantern's own admission) is unique. Third, any adverse ruling against Mr. Cohen likely would be subject to appeal. In summary, the resolution of issues raised by Lantern will not simply be disposed of by the Summary Judgment Motion, and it could take years for these issues to be fully resolved. In the meantime, Lantern continues to exploit the films that are the subject of these agreements, without making any payments to the Counterparties. Clearly, it was not the intent of the Committee to negotiate an open-ended deadline for the designation of agreements, and it would be highly prejudicial to the Counterparties if Lantern is allowed to provide itself with a unilateral extension of that deadline based on issues that should have been resolved early in these cases. For that reason, the Court should disregard Lantern's equivocal language.

46. Accordingly, because the Counterparties' contracts were not designated as "excluded" contracts, and instead appeared on a list of contracts to be assumed, the Court should confirm that the Counterparties' contracts have been designated to be assumed and assigned, subject only to resolution of the cure objections filed by the Counterparties.

**B. In the Alternative, the Court Should Confirm that Lantern No Longer Has the Unilateral Ability to Designate the Counterparties' Agreements for Assumption and Assignment Absent the Counterparties' Consent**

47. As explained above, the November 8 deadline was a "hard" deadline by which Lantern was required either to designate contracts for assumption and assignment or designate contracts as "excluded." That deadline has now passed. Accordingly, in the event that the Court determines that Lantern's equivocation language resulted in Lantern not affirmatively designating

the Counterparties' agreements for assumption and assignment, the Court should confirm that the deadline for Lantern to do so has now passed, and that Lantern no longer has the unilateral ability to do so without the Counterparties' consent.

**NOTICE**

48. Notice of this Motion has been provided to: (i) the Debtors; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) Lantern; and (v) all parties that have requested service of notices pursuant to Bankruptcy Rule 2002. The Counterparties respectfully submit that such notice is adequate and that no other or further notice need be provided.

**NO PRIOR REQUEST**

49. No other or prior motion for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Counterparties respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit B**, (1) confirming that (a) the Counterparties' agreements have been designated by Lantern for assumption and assignment subject only to the resolution of cure amounts, or, in the alternative, that (b) Lantern has failed appropriately to designate the Counterparties' agreements for assumption and assignment to Lantern by the November 8, 2018 court-ordered deadline and may no longer unilaterally do so without the agreement of the Counterparties; and (2) granting such other further relief as is just and proper.

Dated: November 16, 2018

CROSS & SIMON, LLC

*/s/ Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 777-4200
csimon@crosslaw.com

- and -

LANDAU GOTTFRIED & BERGER LLP
Michael I. Gottfried
Roye Zur
1801 Century Park East, Suite 700
Los Angeles, CA 90067
mgottfried@lgbfirm.com
rzur@lgbfirm.com

*Attorneys for Certain of the Counterparties Listed on Exhibit A hereto*

JEFFER MANGELS BUTLER & MITCHELL LLP
Thomas M. Geher
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567
Email: tgeher@jmbm.com

*Attorneys for Jennifer Lawrence and Floffin, Inc.*

VENABLE LLP
Jeffrey S. Sabin, Esq.
1270 Avenue of the Americas
New York, New York 10020
Tel: (212) 503-0672
jssabin@venable.com

-and-

Keith C. Owens, Esq.
2049 Century Park East
Suite 2300
Los Angeles, California 90067
Tel: (310) 229-0370
kcowens@venable.com

*Attorneys for Bradley Cooper and 22nd and Indiana, Inc.*