**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------- x
In re:                             :  Chapter 11
                                   :
                                   :  Case No. 18-10601 (MFW)
THE WEINSTEIN COMPANY HOLDINGS     :
LLC, *et al.*,[1]                  :  (Jointly Administered)
                                   :
          Debtors.                 :  **Docket Ref. No. 1627**
---------------------------------- x

**OBJECTION OF BANK HAPOALIM B.M. TO MOTION OF**
**J.C. PENNEY CORPORATION, INC. TO COMPEL**
**ASSUMPTION OR REJECTION OF LICENSING AGREEMENT**

Bank Hapoalim B.M., an Israeli banking corporation authorized to do business in the United States ("Hapoalim"), by its counsel Herrick, Feinstein LLP and Womble Bond Dickinson (US) LLP, hereby files its objection to the motion (the "Motion") of J. C. Penney Corporation, Inc. ("JCP") to compel assumption or rejection of a licensing agreement between JCP and Weinstein Television LLC ("WTV") dated February 24, 2017 [Dkt. No. 1627], and in support of its objection, respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. JCP seeks to retain the benefit of its bargain with WTV – by selling clothing inspired by a (previously) WTV-produced brand of television shows, "Project Runway" – without actually *paying* for its right to do so. Despite being granted a license to produce and sell "Project Runway" clothing – which license has continued during this chapter 11 proceeding – JCP is in default of its obligation to make required guaranteed minimum royalty payments to WTV, and it appears JCP has no intention of making the five remaining guaranteed payments

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

under the parties' agreement (worth at least $2.16 million), despite the fact that JCP continues to sell and profit from clothing produced under the Agreement.

2.   JCP's Motion is premised on the fact that the Debtors are no longer producing the "Project Runway" family of shows. But JCP's motion should be denied because the license agreement it seeks to avoid is not an executory contract because WTV had no *obligation* to produce future seasons of the Project Runway shows. While future seasons were contemplated by the parties' agreement, production of such additional seasons were not required, and JCP has received the benefit of the agreement by selling "Project Runway"-branded merchandise. The agreement should instead be abandoned to the benefit of Hapoalim, which holds a perfected, first-priority security interest in all of the royalty proceeds payable by JCP, so that Hapoalim may enforce the agreement against JCP outside of this Court. Alternatively, even if this Court determines that the agreement is executory, it should direct JCP to perform under the Agreement through the date of assumption or rejection, *i.e.* by paying WTV the royalties to which it is entitled for the months that JCP has continued to sell the "Project Runway"-branded products.

### FACTUAL BACKGROUND OF WEINSTEIN TELEVISION – JC PENNEY PROJECT RUNWAY AGREEMENT

**License Agreement; Minimum Royalties**

3.   Project Runway is a reality television series that focuses on fashion design. The contestants compete to create clothes and are restricted by time, materials and theme. Their designs are judged by a panel, and one or more designers are typically eliminated from the show each week. During each season, contestants are progressively eliminated until only a few contestants remain. These finalists prepare a complete fashion collection for New York Fashion Week, which determines the winner (each a "Winner"). The original Project Runway show

produced several spinoffs, including Project Runway All-Stars and Project Runway: Junior (collectively, the "Shows").

4.      WTV was the producer of the Project Runway family of Shows prior to the commencement of the Debtors' chapter 11 proceedings, which then were broadcast on the Lifetime cable network ("Lifetime"). In May 2016, Lifetime agreed with The Weinstein Company ("TWC") to renew Project Runway for three seasons (16-18), Project Runway All Stars for seasons 6 and 7 and Project Runway: Junior season 2.

5.      Season 16 of Project Runway was produced and delivered to Lifetime during the third quarter of 2017. The first episode aired on August 17, 2017 and the final episode aired on November 16, 2017.  Project Runway All Stars season 6 was aired between January 4, 2018 and April 5, 2018 and Project Runway: Junior season 2 was aired between December 22, 2016 and February 23, 2017.

6.      On October 5, 2017, The New York Times reported that dozens of women, including more than 60 women in the film industry, had accused Harvey Weinstein ("Weinstein") of sexual misconduct. On October 6, Weinstein announced that he would take an indefinite leave of absence from TWC. On October 8, TWC announced that Weinstein had been fired.

7.      Production of season 17 of Project Runway and Project Runway All Stars season 7 was delayed by the disruptions in the Debtors' business following the disclosures of alleged sexual misconduct by Harvey Weinstein. In the wake of those disclosures, Lifetime terminated its agreement with the Debtors prior to the commencement of the Debtors' chapter 11 cases. Lantern Entertainment LLC, the purchaser of the Debtors' assets, made a separate agreement to transfer the rights to the Project Runway Shows to the Bravo network.

**JCP's Rights to Design and Sell Products**

8. WTV entered into an agreement (the "Agreement") dated February 24, 2017 with JCP, a copy of which is annexed as Exhibit 1, under which JCP was granted an exclusive license to produce and sell clothing (the "Products") based upon or inspired by designs featured on the Shows. Because the license granted to JCP was exclusive, WTV had no ability to monetize the Project Runway intellectual property with other retailers.

9. Following the determination of the Winner for any Show, JCP was granted the exclusive right to work with that Winner to develop a "Winner Collection" based upon that designer's styles. But although WTV promised to use provide JCP with access to each Show's Winner, the Agreement is clear that the GMR payments (as hereinafter defined) are due whether or not the Winner agrees to work with JCP to develop a Winner Collection.

10. JCP had a similar right to produce an "Elite Collection" based upon designs featured in one or more of the Shows. Any designer whose designs were selected for inclusion in the Elite Collection is referred to as an "Elite Contestant." But even if an Elite Contestant did not perform some or all his or her obligations with respect to any Elite Collection, JCP nevertheless remained obligated to make the GMR payments.

11. JCP's right to develop and sell Products was not limited to designs based upon the work of any Winner or any Elite Collection. While JCP also had the right to develop and sell Products based upon prior seasons of the Shows, and it could develop and sell Products that were not connected to any Winner or any other contestant's designs, but would simply be branded as the "Project Runway Collection". In fact, as of the date hereof, the J.C. Penney website continues to sell Project Runway Products, demonstrating that JCP continues to benefit

from the Agreement. Annexed as Exhibit 2 are screenshots from the J.C. Penney website captured on November 20, 2018.

12. Set forth below is a recitation of the principal obligations of WTV (the "WTV Obligations") under the Agreement:

- WTV grants an exclusive license to JCP for Project Runway seasons 16 and 17, Project Runway All Stars seasons 6 and 7, and Project Runway: Junior season 3 to use the Shows' trademarks and related intellectual property in connection with the manufacture sale, advertising and promotion of the Products.

- WTV agrees to use commercially reasonable efforts to acquire rights to "Winner's Property" of prior and future winners for JCP's use.

- WTV agrees that none of the shows will utilize a competitor of JCP in connection with the "Accessories Wall" or as the sponsor of an in-episode "JCP Challenge."

- WTV must require each contestant to sign a Contestant Agreement pursuant to which such contestant agrees to provide services to JCP.

- WTV agrees to provide show designs to JCP to enable JCP to design a commercially reasonable number of styles of products.

- WTV agrees to market and promote each "Winner Collection" on-air in WTV's discretion on the next season.

- WTV agrees for Project Runway seasons 16 and 17 and Project Runway All Stars season 7, and (if ordered) Project Runway All Stars season 8 and Project Runway: Junior season 4 that JCP will (i) be the wall accessory partner for all episodes and (ii) sponsor of up to 1 individual challenge during those seasons.

- WTV agrees to provide JCP with 10 invitations to attend any Project Runway physical runway show during the term.

- WTV has several other obligations with respect to JCP's integrations in Project Runway season 16 and 17 and Project Runway All Stars season six and 7, including, but not limited to, featuring JCP's fashion accessories in all episodes of such seasons, designing and creating a JCP-themed accessory wall to be referred to in each episode, on-air references to JCP in connection with the prize announcements of each episode, JCP will be the exclusive fashion sponsor of one design challenge in each season.

13. On information and belief, with respect to season 16 of Project Runway and Project Runway All Stars season 6, WTV duly performed the WTV Obligations.

14.    JCP is required to pay a royalty of six percent (6%) of the net sales of the Products during the term of the Agreement, subject to a guaranteed minimum royalty of $1.8 million per year (the "GMR"). The Agreement, which has a two-year term that terminates on August 3, 2019, sets forth two royalty periods, each consisting of 12 fiscal months for JCP, each of which begins at the commencement of JCP's fiscal third quarter.

15.    Set forth below is the schedule for the GMR payments to be made by JCP during the first year of the term of the Agreement:

- Payment 1 in the amount of $360,000, was paid on the effective date of the Agreement;
- Payment 2 in the amount of $360,000, which was based on JCP's fiscal third quarter sales (7/30/2017 – 10/28/2017 selling period), was due on December 12, 2017 and was timely paid;
- Payment 3 in the amount of $360,000, which was based on JCP's fiscal fourth quarter sales (10/29/2017 – 2/3/2018 selling period), was due on March 13, 2018, and was paid;
- Payment 4 in the amount of $360,000, which was based on JCP's fiscal first quarter (2/4/2018 – 5/5/2018 selling period), was due on June 19, 2018, and has been paid; and
- Payment 5 in the amount of $360,000, which was based on JCP's fiscal second quarter (5/6/2018 – 8/4/2018 selling period), was due on September 18, 2018, ***and has not been paid***, nor has JCP issued a royalty statement for that fiscal quarter, as required under the Agreement.

16.    During the second year of the Agreement, payments would again be based on JCP's fiscal quarters, with the first fiscal quarter being the selling period from August 5, 2018-November 3, 2018. For the second year of the Agreement, JCP was obligated to make four quarterly payments of $450,000.

17.    It bears noting that during this the first year of the Agreement, JCP would still be selling (and is selling today) Products that were designed by JCP prior to when Project Runway season 17 would have aired if Lifetime had not terminated its production agreement with WTV.

The earliest that JCP would have seen the clothes in Project Runway season 17 would have been September 2018, and JCP would not have been able to design, produce and sell Products based on Project Runway season 17 before JCP's first fiscal quarter of 2019.

18. When the parties entered into the Agreement, they also entered into another agreement, styled the Network Integration Agreement (the "Integration Agreement"), dated February 24, 2017, (*see* Exhibit 1 at p. 23), which addressed how JCP Products would be integrated with and promoted on the Shows. In Section 9 of the Integration Agreement, the parties recognized that Lifetime (referred to below as "Network") might not choose to air the Shows, and that if the Shows did not air, it would not be an event of default under the Agreement: "Nothing in this Agreement obligates Network [Lifetime] to exhibit the Series or to otherwise use or exploit the Series or any part thereof of to exhibit or otherwise use any footage related to the JCP Integrations, and any decision to do is in the sole and exclusive discretion of Network."

19. Indeed, the Agreement makes clear that JCP is obligated to pay the GMR regardless of the extent by which WTV performs under the Agreement. *See, e.g.,* Exhibit 1 § 10.1 (providing that following expiration or termination of the Agreement, JCP remains liable for royalty payments thereunder); *see also* §§ 2.2 ("provided, however, that JCP shall have no right to terminate this Agreement, or to withhold the GMR and/or any additional Royalties owed to and/or accrued by WTV hereunder in the event that such winner fails to fulfill his or her applicable obligations, nor shall such failure be considered or deemed a breach by WTV of this Agreement"); *see also* §§ 3.1.2, 3.2, 3.3, 4.2.3 of Exhibit 1.

**Bank Hapoalim Loan**

20.     Hapoalim made a loan in the principal amount of $2,511,000 to WTV JCP Borrower 2017 ("Borrower"), one of the Debtors herein, pursuant to a Loan and Security Agreement dated April 26, 2017, a copy of which is annexed hereto as Exhibit 3. Part of the collateral package for Hapoalim's loan consists of an assignment of WTV's right to receive royalties pursuant to the Agreement. WTV assigned its rights in and to such royalties to Borrower pursuant to an assignment agreement dated April 26, 2017, a copy of which is annexed hereto as Exhibit 4.  Hapoalim perfected its interest in the royalties payable by JCP pursuant to the Agreement by filing a UCC-1 financing statement with the Delaware Secretary of State on April 26, 2017, a copy of which is annexed hereto as Exhibit 5.  As of the date hereof, the principal amount owed to Hapoalim is approximately $1,565,000. In addition, Hapoalim is entitled to interest, which accrues at the daily rate of approximately $250 per day, and to its costs of enforcement, including attorneys' fees and expenses.

## ARGUMENT

**I.    THE AGREEMENT IS NOT AN EXECUTORY CONTRACT, THUS JCP'S MOTION SHOULD BE DENIED, AND THE AGREEMENT SHOULD BE ABANDONED TO HAPOALIM**

   **A.    WTV Has Performed Under the Agreement, Thus the Agreement is Not Executory and Cannot be Rejected by the Debtors**

21.     The Agreement is not an "executory contract" under Section 365, and thus cannot be assumed or rejected by the Debtors.  The Agreement is only "executory" as to JCP, which has a continuing obligation to pay royalties to WTV; WTV has performed under the Agreement by producing season 16 of Project Runway and season 6 of Project Runway All Stars, and JCP has received the benefit of such performance.

22. It is well-accepted that an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re Columbia Gas System Inc.*, 50 F.3d 233, 239 (3d Cir. 1995). "Thus, unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365." *Id.*

23. Here, JCP argues that because additional seasons of the Shows will not be produced by WTV, the Agreement is "so far unperformed" so as to be "executory." Not so. Although JCP certainly has the continuing obligation to make royalty payments under the Agreement, the Integration Agreement illustrates that it was merely *contemplated* that additional seasons would be produced, and WTV was under no *obligation* to do so. (And as demonstrated by the terms of the Agreement, notwithstanding WTV's failure to deliver on particular occurrences contemplated by the Agreement, JCP remains liable for the GMR, *see* Exhibit 1 § 10.1, *see supra* ¶ 19.) Rather, JCP had, through the Agreement, contracted for the use of the "Project Runway" brand name, which had been developed over the last decade, and the ability to (likely, but not certainly) sell tie-in Products to future seasons of the Shows. "Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur." *Id.* at 241. Even though particular Show seasons were not produced, JCP still received the benefit of the Agreement by selling Products bearing the bargained-for trademarks. Indeed, despite the fact that additional seasons have not been produced, JCP continues to sell the Show-branded Products today. *See* Exhibit 2. Until recently, JCP had acknowledged this continuing benefit by making the GMR payments required by the Agreement, even during the pendency of this chapter 11 proceeding, but JCP failed to make the $360,000 payment due September 18, 2018.

24. A licensing agreement in which the only apparent breach is the failure to make royalty payments is not an executory contract. *See, e.g., In re Waste Systems International, Inc.*, 280 B.R. 824 (Bankr. D. Del. 2002); *In re Stein and Day Incorporated*, 81 B.R. 263 (Bankr. S.D.N.Y. 1988). JCP has not argued that any "obligations" separate from producing the Show are sufficiently "material" to turn the Agreement into an executory contract – indeed, they are not. *In re Waste Systems International, Inc.*, 280 B.R. at 827; *In re Stein and Day Incorporated*, 81 B.R. at 266.

25. Accordingly, JCP's motion should be denied.

### B. The Agreement Should Be Abandoned So Hapoalim May Pursue State Law Rights Against JCP

26. Hapoalim agrees, however, that the Debtors should take action with respect to the Agreement – the Agreement should be abandoned to Hapoalim. 11 U.S.C. § 554; *In re Columbia Gas System Inc.*, 50 F.3d at 239 ("if the debtor has fully performed, the performance owed by the nonbankruptcy is an asset of the bankruptcy estate and should be analyzed as such, not as an executory contract. Rejection of the contract at this point is no different from abandonment of property of the estate, an action taken only when the property is 'burdensome to the estate or . . . is of inconsequential value and benefit to the estate''").

27. Here, it is undisputed that Hapoalim has a perfected, first-priority lien in the royalties payable under the Agreement. Any proceeds from the Agreement inure to the benefit of Hapoalim, not the Debtors' estate. *See In re Boogaard*, 89 B.R. 397 (Bankr. D. Del. 1988). Assuming that any future payments would merely be in the amount of the GMR (as JCP has yet to pay any royalties above such amount), there would be sufficient proceeds to fully satisfy Hapoalim's obligation, and the remaining royalties would benefit the estate or its other creditors.

In the event Hapoalim collected royalties in excess of the amount necessary to retire its debt, it would account for such proceeds to the Debtors' estate.

28. Therefore, the Agreement is of "inconsequential value and benefit" to the estate by virtue of Hapoalim's lien, and the Agreement should be abandoned to Hapoalim, and claims concerning JCP's breach of the Agreement can be litigated in state court.

## II. IF THE AGREEMENT IS AN EXECUTORY CONTRACT, JCP MUST PERFORM UNTIL IT IS ASSUMED OR REJECTED, OR AS LONG AS JCP SELLS THE PRODUCTS, WHICHEVER PERIOD IS LONGER

29. It is apparent that by this motion, JCP seeks to receive the benefit of the Agreement – selling the Products – for free, merely as a result of the filing of this chapter 11 proceeding. Indeed, although JCP continues to sell the Products, it has not paid for its ability to do so for any sales after May 6, 2018. JCP has given no indication that it intends to pay for the second year of the Agreement, despite the fact that it continues to sell the Products and is still obligated to pay the GMR to WTV, *see* Exhibit 1 § 10.1.

30. Contrary to JCP's summary claims, there is no "great uncertainty for JCP" as to "whether amounts coming due under the [] Agreement remain payable" pending a decision on assumption or rejection of the Agreement. Even if the Agreement is an executory contract, until an order is entered assuming or rejecting the Agreement, JCP has no excuse to not perform under the Agreement, and cites no authority justifying its failure to pay the required royalty payments.

31. As JCP has continued to receive the benefits of the Agreement throughout the pendency of this chapter 11 proceeding, and indeed appears to continue to reap the benefits and use the bargained-for intellectual property, if the Agreement is ultimately rejected, the rejection should be effective as of the date such order is entered (rather than the Petition Date, which JCP suggests), and JCP be directed to pay the royalties (including GMRs) attributable to such fiscal

quarters that JCP has continued to sell the Products in. Exhibit 1 § 10.1. Indeed, Section 10.1 of the Agreement expressly provides that while JCP continues to sell Products following a termination of the Agreement, "such sales shall be made subject to the provisions of this Agreement, including the accounting for and the payment of the Royalties thereon pursuant to Section 6."

32.  Moreover, if, as Hapoalim expects, JCP continues to sell the Products beyond entry of an order of assumption or rejection, JCP must continue to pay royalties until the expiration of the Agreement, as originally contemplated by the Agreement. *See* 11 U.S.C. § 365(n)(1)(B)-(n)(2); *In re Cellnet Data Systems, Inc.*, 327 F.3d 242 (3d Cir. 2003). Thus, even if the Debtors are directed to reject the Agreement, JCP must continue to perform under the Agreement through the actual date of rejection, and if JCP continues to sell the Products under the license granted by the Agreement beyond such date, JCP must likewise continue to perform and pay such royalties required by the Agreement.

## CONCLUSION

33.  For the reasons presented herein, JCP's motion should be denied.

Dated:  November 20, 2018

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

/s/ Morgan L. Patterson
Matthew P. Ward (Del. Bar No. 4471)
Morgan L. Patterson (Del. Bar No. 5388)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email:  matthew.ward@wbd-us.com
Email:  morgan.patterson@wbd-us.com

and

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
2 Park Avenue
New York, NY 10036
Telephone:  (212) 592-1400
Facsimile:  (212) 592-1500
Email:  sselbst@herrick.com

*Counsel to Bank Hapoalim B.M.*