IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*, | : | Case No. 18-10601 (MFW) |
| | : | |
| | : | Jointly Administered |
| Debtors.[1] | : | |
| | x | **Re: Docket Nos. 1627 and 1750** |

**REPLY OF J.C. PENNEY CORPORATION, INC. TO OBJECTION OF BANK HAPOALIM B.M. TO MOTION OF J.C. PENNEY CORPORATION, INC. TO COMPEL ASSUMPTION OR REJECTION OF LICENSE AGREEMENT**

J.C. Penney Corporation, Inc. ("JCP") hereby files this reply (the "Reply") to the *Objection of Bank Hapoalim B.M. to Motion of J.C. Penney Corporation, Inc. to Compel Assumption or Rejection of Licensing Agreement* [Docket No. 1750] (the "Objection") and in support thereof respectfully states as follows:

**SUPPLEMENTAL BACKGROUND**

1.      On October 24, 2018, JCP filed its *Motion to Compel Assumption or Rejection of Licensing Agreement* [Doc. No. 1627] (the "Motion"). By the Motion, JCP seeks an order of the Court compelling the rejection of the Licensing Agreement[2] between debtor Weinstein Television and JCP.

2.      Following the filing of the Motion, counsel for JCP negotiated with other parties in interest including the Debtors, the Official Committee of Unsecured Creditors, and Bank Hapoalim B.M. ("Hapoalim") to extend the objection deadline to November 20, 2018. On

---

[1] The last four digits of The Weinstein Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm/epiq11.com/twc.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

{01389029;v1 }                    Page 1

November 20, 2018, Hapoalim filed the Objection. Notably, no other party in interest has objected to the relief sought by JCP in the Motion.

3. By the Objection, Hapoalim makes two arguments: (1) the License Agreement is not an executory contract and therefore should be abandoned to Hapoalim, and (2) even if the License Agreement is executory, JCP is required to continue to perform until the later of rejection assumption/rejection or when JCP stops selling products under the License Agreement.

4. Hapoalim attached a copy of the Licensing Agreement to its Objection as Exhibit 1. The Licensing Agreement includes the Integration Agreement between JCP and Weinstein Television, which is Appendix C to the Licensing Agreement.

## REPLY

5. The facts in this matter are not in dispute. Hapoalim attached a true and correct copy of the Licensing Agreement to its Objection. Moreover, JCP does not dispute that it continued to sell products online under the Licensing Agreement post-petition and does not dispute that the 2018 second quarter payment under the Licensing Agreement has not been paid by JCP. As such, the Motion and Objection raise purely legal issues that can be resolved by the Court at the hearing on the Motion.

**A. Hapoalim Failed to Timely Raise the Executory Contract Issue**

6. On April 13, 2018, the Debtors filed the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [Doc. No. 216] (the "Notice of Assumption/Assignment") in conjunction with a sale of substantially all of the Debtors' assets (the "Sale"). A copy of the Notice of Assumption/Assignment is attached hereto as **Exhibit A**. The Notice of Assumption/Assignment identified the License Agreement as an executory contract proposed to be assumed and assigned as part of the Sale. The Notice of

Assumption/Assignment included a reservation of rights <u>by the Debtors</u> that they were not admitting whether the License Agreement was an executory contract. The Notice of Assumption/Assignment also stated, in bold, italicized, and capital letters that the failure to timely file an objection would result in deemed consent to the assumption and/or assignment of the contract.

7. On April 30, 2018, JCP filed an objection to the Notice of Assumption/Assignment, asserting that Bankruptcy Code section 365(c)(1)(A) prohibited the assumption and assignment of the License Agreement. *See* Doc. No. 515 (the "<u>JCP Assignment Objection</u>").

8. On April 26, 2018, Hapoalim filed on objection to the Notice of Assumption/Assignment [Doc. No. 444] (the "<u>Hapoalim Notice Objection</u>"). A copy of the Hapoalim Notice Objection is attached hereto as **Exhibit B**. By the Hapoalim Notice Objection, Hapoalim argued that assumption and assignment of the License Agreement required Hapoalim's consent under Bankruptcy Code section 365(c)(2). Hapoalim raised no issue with respect to whether the License Agreement is an executory contract.

9. On June 15, 2018, Hapoalim filed a supplemental objection to the Notice [Doc. No. 1020] (the "<u>Hapoalim Supplemental Notice Objection</u>"). A copy of the Hapoalim Supplemental Notice Objection is attached hereto as **Exhibit C**. By the Hapoalim Supplemental Notice Objection, Hapoalim noted a possible assignment of the License Agreement to Bravo Media, LLC and repeated its assertion that assumption and assignment of the License Agreement required its consent. Once again, Hapoalim raised no issue with respect to whether the License Agreement is an executory contract.

10. In the months following the filing of the Notice of Assumption/Assignment, JCP diligently followed up on the matter and eventually was advised that purchaser Lantern Entertainment LLC ("Lantern") had elected not to take assignment of the Licensing Agreement.

11. After months of asserting an interest in the Licensing Agreement, and asserting arguments under Bankruptcy Code section 365, Hapoalim is now taking the contrary position that section 365 does not apply at all because the Licensing Agreement is not an executory contract. The Court should not permit such an 11th-hour shift in position. The Notice of Assumption/Assignment was clear. Parties not raising objections consented to the assumption and assignment. While Hapoalim raised issues under section 365, it never raised the issue of section 365 not applying at all on the grounds that the Licensing Agreement is not executory. As such, the Court should rule that Hapoalim waived such argument.

**B.    The Licensing Agreement is Clearly an Executory Contract Under Applicable Law**

12. Even if Hapoalim is permitted to make a late-course correction and raise the executory contract issue, Hapoalim's position is contrary to the application of Third Circuit law to the undisputed facts. Whether an agreement is executory is determined as of the petition date. *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 240 (3d Cir. 1995). With very limited exceptions,[3] trademark licenses are considered executory based on the fact that parties to a trademark license have the on-going material obligation to use the marks (or to forbear from using the marks) in the specific manner set forth in the license. *See In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) ("The Debtors' agreement to forebear from using HQ Proprietary Marks in the exclusive Franchise territories is an ongoing material obligation as of the petition date. . . As long as the royalty payments are made and the operation standards are met, the

---

[3] The Third Circuit has held that a trademark license is not executory when it is a perpetual, exclusive, royalty-free license granted in conjunction with a pre-petition asset sale. *See In re Exide Techs.*, 607 F.3d 957, 965 (3d Cir. 2010). Those clearly are not the facts before the Court in this matter.

Debtors must permit the Franchisees' use of the marks. This is an executory contract."); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 121 (Bankr. D. Del. 2015) (holding that prior case law finding that copyright and patent license are executory also applies to trademark licenses); *In re Chipwich, Inc.*, 54 B.R. 427, 430 (Bankr. S.D.N.Y. 1985) (finding a trademark license executory under the same reasoning as the *HQ Global* case).

13. In this case, Weinstein Television granted JCP an exclusive license to use Weinstein Television's marks in relation to the sale of "Licensed Products." *See* Licensing Agreement at § 2.1. As of the Petition Date, Weinstein Television was under the material obligation to refrain from using the licensed marks in ways contrary to the agreement. Specifically, Weinstein Television was prohibited from putting the marks on any products other than the Licensed Products. Just as in the *HQ Global* case, that obligation makes the Licensing Agreement executory and subject to rejection by the Debtors.

14. In addition, because the Licensing Agreement is subject to rejection, Hapoalim's abandonment arguments are not relevant. The law clearly provides that, as to executory contracts, a debtor has a binary choice: assumption or rejection, based on the debtor's business judgment. *In re Physiotherapy Holdings, Inc.*, 538 B.R. 225, 237 (D. Del. 2015); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008). The Debtors in this case have exercised such business judgment by choosing not to object to the relief sought in the Motion. Moreover, introducing the issue of abandonment unnecessarily complicates this matter because it would in effect be an assignment of the Licensing Agreement from Weinstein Television to Hapoalim. As set forth in the JCP Assignment Objection, such an assignment is not permitted under Bankruptcy Code section 365(c)(1)(A).

**C.      JCP's Post-Petition Payments Are Not Relevant to the Matter Before the Court**

15.     In its Objection, Hapoalim attempts to make an issue of the fact that JCP continued making payments under the License Agreement post-petition and that JCP has failed to make a recent payment.  In response, JCP makes the following clear: JCP had no desire to continue selling the Licensed Products post-petition.[4]  However, JCP was well aware that removing the Licensed Products from its website not only would have been a breach of the Licensing Agreement, it would also have been a violation of the automatic stay.  As such, JCP preserved its rights via the JCP Notice Objection and dutifully waited for Lantern's determination of whether it would, in fact, seek assignment.  Once the Sale closed and Lantern made its intention clear, JCP immediately contacted Debtors' counsel and thereafter filed its Motion.  Those facts (the Sale closing and Lantern's determination) materially changed the circumstances of this matter and support the relief sought by JCP.  As set forth in the Motion, JCP currently is party to a Licensing Agreement where the other party (Weinstein Television) has ongoing material duties, but is no longer operating or in the business related to the agreement.  That is an untenable situation.  Moreover, from the Debtors' perspective (the proper perspective) there is no reason to allow for the continued accrual of fees under the agreement because such amounts in no way benefit the estate.

16.     The only rational solution to this issue is rejection, which will allow for JCP to sell off the remaining Licensed Products pursuant to the sell-off terms set forth in the Licensing Agreement.  *See* Licensing Agreement at § 10.1.

17.     In addition, as to the recent payment coming due under the Licensing Agreement, JCP withheld such amounts pending resolution of this matter and how the closing of the Sale and the rejection order may affect the accrual of post-Sale administrative expense obligations that

---

[4] By agreement between JCP and Weinstein Television, the products are only sold online.

demonstrably provided no benefit to the estate. The Court's grant of JCP's Motion will have no effect on any separate determination that such amounts are, or are not, payable as an administrative expense. To put it another way, that matter is not relevant because the parties' rights are preserved and entry of an order granting the Motion will not affect such rights in any way.

WHEREFORE, JCP respectfully requests that the Court enter an order: (i) overruling the Objection; (ii) granting the Motion; and (iii) granting JCP such other and further relief and is just and appropriate under the circumstances.

Dated: November 26, 2018                **ASHBY & GEDDES, P.A.**

*/s/     Gregory A. Taylor*
Gregory A. Taylor, Esq. (#4008)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
Telephone:  (302) 654-1888
Fax:  (302) 654-2067
Email: gtaylor@ashbygeddes.com

-and-

**FOLEY GARDERE**
**FOLEY & LARDNER LLP**
Marcus Alan Helt
Jason B. Binford
2021 McKinney Avenue
Suite 1600
Dallas, TX  75201
Telephone: (219) 999-3000
Facsimile:  (214) 999-4667
Email: mhelt@foley.com
Email: jbinford@foley.com

*Counsel to J.C. Penney Corporation, Inc.*