# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x : | Chapter 11 |
| In re: : | |
| : | Case No. 18-10601 (MFW) |
| THE WEINSTEIN COMPANY HOLDINGS : | |
| LLC, *et al..,*[1] : | (Jointly Administered) |
| : | |
| Debtors. : | **Docket Ref. Nos. 8, 190, & 216** |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |

**OBJECTION OF BANK HAPOALIM B.M.**
**TO ASSUMPTION AND ASSIGNMENT OF CONTRACTS**

Bank Hapoalim B.M., an Israeli banking corporation authorized to do business in the United States ("Hapoalim"), by its counsel Herrick, Feinstein LLP and Womble Bond Dickinson (US) LLP, hereby files its objection (the "Objection") to the proposed assumption and assignment by the above-captioned debtors (collectively, the "Debtors") of certain contracts in which Hapoalim has an interest, and in support of its Objection, respectfully represents as follows:

**BACKGROUND**

1.  The Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") on March 19, 2018 (the "Petition Date").

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

HF 12064705v.1

2.　　On the Petition Date, the Debtors filed a motion [Docket No. 8] (the "<u>Bidding Procedures Motion</u>")[2] with the Court seeking entry of the Bidding Procedures Order. On April 6, 2018, the Court entered the Bidding Procedures Order [Docket No. 190] that, among other things, approved (a) the Bidding Procedures pursuant to which the Debtors will solicit and select the highest and otherwise best offer for the sale (the "<u>Sale</u>") of substantially all or a portion of the Debtors' Assets, (b) the form and manner of notice related to the Sale, (c) the procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale, including notice of proposed cure amounts (the "<u>Assumption and Assignment Procedures</u>") and (d) scheduled the hearing (the "<u>Sale Hearing</u>") to enter an order approving the Sale to the Stalking Horse Bidder or such other Successful Bidder (the "<u>Sale Order</u>") for May 8, 2018 at 11:30 a.m. (Eastern Daylight Time).

3.　　Hapoalim is party to that certain Loan and Security Agreement dated April 26, 2017 (the "<u>Loan Agreement</u>") with WTV JCP Borrower 2017, LLC, a Delaware limited liability company ("<u>WTV</u>"), one of the Debtors herein, pursuant to which Hapoalim loaned to WTV the principal amount of $2,511,000. Part of the collateral package for the loan consists of the right to receive certain royalty payments payable to Weinstein Television LLC ("<u>Television</u>"), one of the Debtors herein, pursuant to that certain Agreement dated as of February 24, 2017 between Television and J. C. Penney Corporation (the "<u>J. C. Penney Agreement</u>"), which Television assigned to WTV pursuant to that certain Assignment dated April 26, 2017.

4.　　In connection with the execution and delivery of the Loan Agreement, Television assigned its rights under the J. C. Penney Agreement to WTV pursuant to that certain Assignment dated April 26, 2017.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion or the Bidding Procedures Order, as applicable.

HF 12064705v.1

5. Hapoalim perfected its security interest in the royalty payments payable pursuant to the J.C. Penney Agreement by filing a financing statement under the Uniform Commercial Code with the Secretary of State of Delaware on April 26, 2017.

6. The Bidding Procedures Motion and the Stalking Horse Agreement each provide that the Loan Agreement and the J.C. Penney Agreement are Assumed Liabilities to be assumed by the Stalking Horse or Successful Bidder (Bidding Procedures Motion at 13-14 and Stalking Horse Agreement at Schedule 2.3). The Debtors have also listed the J.C. Penney Agreement as an executory contract to be assumed and assigned to the Stalking Horse in the Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts filed on April 13, 2018 [Docket No. 216].

## ARGUMENT

**1. The Loan Agreement Cannot be Assumed and Assigned to the Stalking Horse Because it is a Financial Accommodation**

7. The Bankruptcy Code and the case law are clear that a loan agreement cannot be assumed and assigned, *even with the consent of the counterparty*, because it is a financial accommodation, which excludes it from being an executory contract. Section 365(c)(2) of the Bankruptcy Code provides:

> The trustee may not assume or assign any executory contract ... if —
>
> (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor

11 U.S.C. §365(c)(2).

8. The case law under section 365(c)(2) demonstrates that courts have interpreted the statute in accordance with its plain meaning. In the chapter 11 cases of *In re Sun Runner Marine, Inc.*, Transamerica Commercial Finance Corporation ("Transamerica") provided

3

prepetition floor plan financing to Sun Runner Marine, Inc. ("Sun Runner"), a boat manufacturer. In the chapter 11 case, Transamerica and Sun Runner proposed to assume the agreement pursuant to which Transamerica provided this financing, and Citibank, N.A. ("Citibank"), Sun Runner's primary pre-petition lender, objected.  See *Transamerica Commercial Fin. Corp. v. Citibank, N.A.(In re Citibank, N.A.)*, 945 F.2d 1089, 1090–91 (9th Cir. 1991).

9. Over Citibank's objection, the bankruptcy court approved the assumption as the assumption of an executory contract under section 365.  As a condition of the assumption and pursuant to the section 365(b)(1)(A), the bankruptcy court ordered Sun Runner to cure all monetary defaults owed to Transamerica, which totaled approximately $130,000. Citibank appealed to the Ninth Circuit Bankruptcy Appellate Panel (the "BAP").

10. The BAP reversed the bankruptcy court in a published opinion *Citibank, N.A. v. Transamerica Commercial Fin. Corp.(In re Transamerica Commercial Fin. Corp.)*, 116 B.R. 712 (B.A.P. 9th Cir. 1990).  The BAP held that: (a) the floor planning agreement was not an executory contract and thus was not assumable under section 365; (b) even if the floor planning agreement was an executory contract, it was a financial accommodation and its assumption was barred by section 365(c)(2); and (c) Transamerica's consent did not abrogate the bar to assumption under section 365(c)(2).

11. In the appeal to the Ninth Circuit, Transamerica argued that even if the floor planning agreement was a financial accommodation contract, § 365(c)(2) should not prohibit its assumption when both the debtor and the other contracting party consented to its assumption. Transamerica argued that § 365(c)(2) protected unwilling lenders from the debtor's assumption of a financial accommodation contract, but should not thwart the assumption of such a contract if

4

the lender and the debtor (or trustee) both wish the contract to be enforced. The Ninth Circuit rejected Transamerica's argument and affirmed the BAP, holding that "The agreement is one of 'financial accommodation,' and as such is not assumable under section 365 of the Bankruptcy Code". 945 F.2d at 1092, whether or not the lender party to such agreement consents.

12. With respect to the cure payment received by Transamerica, the *Sun Runner* court explained one of the policy reasons that underlies the prohibition on assumption of financial accommodation contracts:

> This benefit to the lender would be at the expense of the other unsecured creditors, such as Citibank in this case, because it would diminish the estate assets available to satisfy their claims. Thus the § 365(c)(2) prohibition against the assumption of financial accommodation contracts protects all unsecured creditors, not just the lender, and the lender's consent alone is not sufficient to abrogate it.

945 F.2d at 1093.

13. Delaware case law is consistent. In *In Chase Manhattan Bank v. Iridium Africa Corp.*, 197 F. Supp. 2d 120 (D. Del. 2002), the court held that a debtor's obligation to issue additional membership interests under its limited liability company agreement could not be assumed because it was a financial accommodation contract, stating: "When both the lender and the debtor consent to the assumption of a prepetition financial accommodation, such assumption is still barred by the Bankruptcy Code." *Id.* at 134 (citing *In re Sun Runner* in support of its ruling).

14. The plain language of §365(c)(2) and the case law clearly establish that the proposal by the Debtors and the Stalking Horse to have the Stalking Horse assume the J. C. Penney Agreement and assume the Loan Agreement cannot be approved by this Court, *whether*

5

*or not Hapoalim consents*, which it does not.[3]  Accordingly, this Court should not approve the portions of the Sale Motion and the Stalking Horse Agreement that seek to effect these impermissible transactions.

---

[3] The Debtors could argue that, notwithstanding the fact that the royalties payable pursuant to the J.C. Penney Agreement have been assigned to Hapoalim, they could assume and assign the J.C. Penney Agreement to the Stalking Horse without the corresponding assumption of the Loan Agreement. But any such attempt to strip Hapoalim of its collateral would necessarily fail because neither the Debtors nor the Stalking Horse would have adequately protected Hapoalim's security interest in that collateral under that scenario.

**CONCLUSION**

For the foregoing reasons, Hapoalim respectfully requests that this Court (i) deny approval of the Sale Motion and the Stalking Horse Agreement to the extent that each seeks to (1) assume and assign the J. C. Penney Agreement to the Stalking Horse, and (2) permit the Stalking Horse to assume the Loan Agreement, and (ii) grant such further relief as the Court deems just and proper.

Dated: April 26, 2018

                                                Respectfully submitted,

                                                WOMBLE BOND DICKINSON (US) LLP

                                                By: /s/ Matthew P. Ward
                                                Matthew P. Ward (Del. Bar No. 4471)
                                                222 Delaware Avenue, Suite 1501
                                                Wilmington, DE 19801
                                                Telephone: (302) 252-4320
                                                Facsimile: (302) 252-4330
                                                Email: matthew.ward@wbd-us.com

                                                          and

                                                HERRICK, FEINSTEIN LLP
                                                Stephen B. Selbst
                                                2 Park Avenue
                                                New York, NY 10036
                                                Telephone: (212) 592-1400
                                                Facsimile: (212) 592-1500
                                                Email: sselbst@herrick.com

                                                *Counsel to Bank Hapoalim*

HF 12064705v.1