## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : Case No. 18-10601 (MFW) |
|  | : |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*[1] | : Jointly Administered |
|  | : |
|  | : **Re: Dkt. Nos. 1574, 1635, 1716, 1717 & 1719** |
|  | : |
| Debtors. | : **Obj. Deadline:  November 27, 2018 at 4:00 p.m.** |
|  | : **Hearing:  November 29, 2018 at 11:30 a.m.** |

## VERTIGO PRIME, INC. AND GOOD FEAR FILM, INC.'S
## (A) OBJECTION TO MOTION OF FIRST REPUBLIC BANK TO VACATE
## DOCKET NUMBER 1574 AND RELATED RELIEF AND
## (B) RESERVATION OF RIGHTS TO ASSERT COUNTERCLAIMS
## AGAINST DEBTORS FOR ADMINISTRATIVE EXPENSES

Vertigo Prime, Inc. f/s/o Roy Lee ("**Lee**") and Good Fear Film, Inc. f/s/o Chris Bender

("**Bender**" and together with Lee, collectively, the "**Producers**"), through their undersigned

counsel, submit this *Objection to Motion of First Republic Bank For Order (I) Vacating Docket

Number 1574, (II) Lifting Stay With Respect To Producing Services Agreement And (III) Enforcing

Prior Orders And Rulings And Counterclaim Against Debtors For Administrative Expenses* (the

"**Objection**") **[Dkt. No. 1716]** (the "**Motion to Vacate**")[2] and respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      The Producers do not object to this Court vacating the Stipulated Order, subject to

the Producers' reservation of rights to assert claims, including claims for fraudulent inducement,

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] All capitalized terms not otherwise defined herein shall have the same meaning herein as is ascribed to such terms in the Motion.

21746595-v3

misrepresentation and others) against the Debtors and/or Lantern with respect to the negotiation

and execution of the Polaroid Stipulation and entry of the Stipulated Order.  Rather, the Producers

object to First Republic's claim that this Court, at the November 6th hearing, lifted the stay with

respect to both Cash Collateral and Project Collateral.  The Producers believe that this Court,

subject to submission and consideration of an actual order (not as yet filed), ordered the stay to be

lifted only with respect to the Cash Collateral and not the Project Collateral (which includes the

Film and may include the Producing Services Agreement), because to do otherwise at this time,

before issues raised by the Producing Services Agreement have been adjudicated, would infringe

on the Producers' rights and protections.  The Court both acknowledged these issues and, as the

transcript of the hearing held on First Republic's Lift Stay Motion makes clear, indicated its view

that the stay should be lifted only as to assets in which the Producers could not possibly have an

interest, i.e., the Cash Collateral.

2.      Indeed, when First Republic circulated (but still has not filed) its proposed order,

the Producers objected to the stay being lifted on Project Collateral.  When no resolution on the

issue was reached, the Producers responded with written comments to the proposed order,

including reservation of the Producers' rights with respect to the Film under Federal copyright

law.  First Republic never responded to the Producers' comments, a copy of which is attached

hereto as **Exhibit A,** and instead, filed the Motion to Vacate.  To make matters worse, First

Republic seeks turnover of the Debtors' assets via the Motion to Vacate, even though it lacks

standing to seek turnover and any such action must be brought as an adversary proceeding.

3.      Finally, the Producers believe that both Lantern and the Debtors knew at the time

they were negotiating the Polaroid Stipulation and the Stipulated Order that Lantern did not own

the Film, had no right to negotiate resolution of the Producers' disputes regarding the Film and

could not undertake the Debtors' obligations under the Producing Services Agreement with respect to the Film. Nonetheless, for months, Lantern and the Debtors knowingly and intentionally represented to the Producers otherwise to the Producers' economic and legal detriment. In essence, Lantern and the Debtors fraudulently induced the Producers to negotiate and enter into the Polaroid Stipulation, spending significant legal fees in the process and in the ensuing First Republic motions. The Producers reserve their rights to assert claims against Lantern and the Debtors for the fees they incurred (and continue to incur) in negotiating and entering into the Polaroid Stipulation, seeking entry of the Stipulated Order and responding to the ensuing First Republic motions, which claims against the Debtors constitute administrative expense claims in the Debtors' cases.

4.      The Producers respectfully submit that the best way to resolve First Republic's Lift Stay Motion, disputes as to any order entered with respect to the Lift Stay Motion, the Motion to Vacate (and action to turnover embedded therein) and any counterclaims and/or crossclaims that may be asserted in connection with the Polaroid Stipulation should be combined in a single hearing so that all of the issues raised by the sale and/or exploitation of the Film can be resolved at the same time. Until these issues are resolved, First Republic should not be entitled to market or exploit the Project Collateral[3].

## BACKGROUND

5.      The facts underlying the background of the Debtors' cases are set forth in the Motion to Vacate.

6.      Prior to the Petition Date, TWC and the Producers entered into that certain Producing Services Agreement, dated January 6, 2017, as amended on March 10, 2017 (together

---

[3] As stated at the Hearing, the Producers consent to the lifting of the automatic stay with respect to the Cash Collateral.

21746595-v3

with the exhibits and amendments thereto, the "**Producing Services Agreement**"), pursuant to which the Producers agreed to provide producing services in connection with the motion picture entitled "Polaroid" (the "**Film**").

7.      On March 20, 2018, pursuant to a sale order **[Dkt No. 846]** (the "**Sale Order**"), this Court approved the sale of substantially all of the Debtors' assets to Lantern Entertainment LLC ("**Lantern**"), including the Film.  On October 4, 2018, after months of communications with Lantern and the Debtors, counsel to the Debtors, Lantern and the Producers executed a Stipulation (the "**Polaroid Stipulation**") resolving the parties' disputes with respect to the sale of the Film and assumption by Lantern of the Debtors' obligations under the Producing Services Agreement. By order, dated October 9, 2018 **[Dkt. 1574]** (the "**Polaroid Order**"), this Court approved the Polaroid Stipulation.

8.      On October 30, 2018, First Republic Bank ("**First Republic**") filed a motion (the "**Lift Stay Motion**") seeking an order granting it relief from the automatic stay with respect to the Polaroid Collateral and allowing it to exercise its rights and remedies, including foreclosure, with respect to the Cash Collateral and the Project Collateral.

9.      A hearing (the "**Hearing**") was held before this Court on November 6, 2018 to consider the Motion.  At the Hearing, the Producers counsel explained that there were a number of questions regarding the Producing Services Agreement, such as whether it constituted Project Collateral, what rights and obligations under the Producing Services Agreement necessarily flowed with the sale of the Film and became the obligations of any third-party purchaser and what redress the Producers had against the Debtors and/or Lantern with respect to negotiation and execution of the Polaroid Stipulation.  The Producers submitted that these unresolved issues

prevented First Republic from foreclosing on the Project Collateral or marketing the Project Collateral in any way. The Court agreed. *See* Hr'g Tr. 106:7-15, Nov. 6, 2018.

10.     At the Court's request, the Producers did consent to a lifting of the stay with respect to those assets "to which [the Producers'] interests could not possibly attach." See Hr'g Tr. at 106:23-25; 107: 1-2. The only Polaroid Collateral to which the Producers' interests could not possibly attach is the Cash Collateral, and counsel to the Producers' made clear at the Hearing that the Producers consented to a lifting of the stay with respect to the Cash Collateral. *See* Hr'g Tr. 103: 16-22.

11.     The Court agreed that there were issues concerning the Producing Services Agreement that needed to be resolved, including which court was responsible for resolving those issues, and the Court expressed an unwillingness to grant all of the relief requested by First Republic until those issues were resolved. *See* Hr'g Tr. at 104: 8-14; 106:13-15.

12.     At the end of the Hearing, this Court instructed First Republic to submit a proposed order that granted the relief requested in the Lift Stay Motion subject to a prohibition against marketing the Project Collateral in a manner that assumes or suggests the dispute concerning the Producers' rights in the Film have been determined. *See* Hr'g Tr. at 110: 7–16.

13.     On November 12, 2018, First Republic circulated a form of proposed order to, among other parties, counsel to the Producers. The Producers disagreed with First Republic's interpretation of the Court's direction and believed that the order should lift the stay only with respect to the Cash Collateral and informed First Republic's counsel accordingly. No resolution of the difference in interpretation was reach and, so, the Producers' counsel returned the proposed order to Republic Bank the following day with a handful of comments, including a reservation of

21746595-v3

rights in various places with respect to Federal copyright law.  A copy of the Producers' comments to the proposed order is attached hereto as **Exhibit A**.

14.     First Republic never responded to the Producers' comments.  Instead, on November 16, 2018, the bank filed the Motion to Vacate as well as a motion shortening time for service of the Motion to Vacate.  In response, on November 17th, the Producers filed a letter (the "**Letter**") with this Court objecting to the motion shortening time and setting forth a description of the Producers' concerns if the stay were lifted with respect to the Project Collateral.  A copy of the Letter is attached hereto as **Exhibit B**.[4]  .

## **OBJECTION**

**The Stay Should Only Be Lifted With Respect to Cash Collateral, Not Project Collateral**

15.     As the Producers explained in the Letter, the crux of the Producers' objection to First Republic's proposed lift stay order and the request for turnover of the Film and other Project Collateral is that First Republic will likely attempt to sell the Film stripped of the continuing and future obligations to the Producers under the Producing Services Agreement, which include obligations to pay profit participations and bonuses in the future based on the performance of the Film, to accord credit to the Producers in connection with the Film, to protect and indemnify the Producers from third party claims and to include the Producers in any sequels and remakes.

16.     Incorporated into the Film is material contributed by the Producers, which material is subject to separate copyright protection under Federal copyright law, apart from the copyright in the Film itself.  The Debtors (specifically The Weinstein Company ("**TWC**")) acquired the copyright in the Producers' contributions pursuant to the terms of, and subject to the rights and obligations contained in, the Producing Services Agreement.  Thus, when TWC granted a security

---

[4]  The Court did enter an *ex parte* order granting the shortened time for service of notice of the Motion to Vacate

21746595-v3

interest in Film to First Republic (which presumably included an interest in all elements and materials comprising the Film), it could only grant an interest in the copyright in Producers' contributions under the Producing Services Agreement in the manner in which it held them, i.e., subject to TWC's obligations under thereunder. If First Republic seeks to exercise any rights in the Film pursuant to the instrument granting it a security interest, and/or seeks to foreclose on the Film and sell or exploit it in any manner, it must do so as would TWC, with and subject to the Producing Services Agreement (and any and all other agreements in connection with the Film that grant rights in material comprising the film such as the performer agreements granting rights iin the individual actors' performances). Otherwise, without all of the instruments granting all of the rights from all parties contributing material to the Film, First Republic does not possess the necessary rights granted to TWC and cannot exploit the Film, and any copying of the Film or exploitation of the Film would amount to a copyright infringement.

17.    The right to bring an infringement claim, however, rests with the Debtors as the owner of the copyright in Producers' contributions. If First Republic attempts to sell the Film separate from the Producing Services Agreement and the rights granted thereunder, without a declaration that they are inexorably intertwined, the Producers would be unable to assert a claim against the third party purchaser in state court because of a lack of standing, and the only redress the Producers may have would be against the Debtors.

18.    The Producers believe that this Court did not lift the stay with respect to the Project Collateral, which includes the Film, and lifted the stay only with respect to the Cash Collateral (in which the Producers have no interest). This Court recognized that the Producing Services Agreement is inextricably connected to the Film and that, by lifting the stay on the Film, the

21746595-v3

Producers' rights might be irreparably harmed.  First Republic's proposed order is, thus, not reflective of this Court's instructions at the Hearing.

19.    If, however, this Court finds that the stay should be lifted with respect to the Project Collateral as well, then the Producers' comments to First Republic's proposed order, as reflected on **Exhibit A** attached hereto, should be included in order to protect the Producers' rights under Federal copyright law.

**The Request For Turnover of the Debtors' Assets Is Improper**

20.    As a technical matter, the Producers respectfully submit that First Republic's request in the Motion to Vacate seeking turnover from Lantern of the Debtors' assets relating to the Film is improper.  Under section 542(a) of the Bankruptcy Code, only the trustee or debtor-in-possession has standing to seek turnover of the Debtors' assets. *Official Committee of Unsecured Creditors v. Cablevision Sys. Corp. (In re Valley Media, Inc.)*, 2003 Bankr. LEXIS 940 (Bankr. D. Del. Aug. 14, 2003) (creditors committee did not have indedpendent standing to sue to recover property under section 542(a) without first satisfying *Cybergenics II* standard).  First Republic lacks independent standing to seek turnover of the Project Collateral from Lantern and has not demonstrated that it has satisfied the standards under *Cybergenics II* for obtaining permission to usurp the Debtors' role in seeking turnover of the Debtors' assets (i.e., the Debtors' refusal to bring such a suit and the Debtors' consent to First Republic bringing such a suit).

21.    In addition, Bankruptcy Rule 7001(a)(1) provides that a proceeding to recover money or property is an adversary proceeding, not a contested matter brought by motion.  Fed. R. Bank. P 7001(a)(1).

**The Producers Counterclaims Against the Debtors and Lantern Are Preserved**

22.      In Delaware, fraud in the inducement of a contract is considered an intentional tort not otherwise barred by the economic loss rule (which generally holds purely economic losses are not tort claims). *See Bisk Educ. Inc. v. Aspect Software, Inc. (In re Aspect Software Parent, Inc.)*, 578 B.R. 718,727 (Bankr. D. Del. 2017) (Fraud in the inducement is an independent tort and is not barred by the economic loss rule); *ABRY Partners V LP v. F&W Acquisition LLC*, 891 A.2d 1032, n.46 (courts recognize a fraud in the inducement claim as a tort claim separate from any contract claim seeking to avoid the agreement).   Damages resulting from fraud in the inducement are administrative expenses to the extent the injury was sustained post-petition.  *See In re Res. Tech. Corp.*, 662, F.3d 472, 476 (7th Cir. 2011) (Tort liability is an expense of doing business and debtors that continue to operate under chapter 11 must give tort victims priority access to their assets); *see, also DPWN Holdings (USA) Inc. v. United Air Lines, Inc.* 246 F. Supp.3d 680 (E.D.N.Y. 2017) (allowing post-petition tort claim to have administrative expense priority where (i) the debt arises from a transaction with the debtor in possession, (ii) was ordinarily incident to operation of the business and (iii) fairness dictates that the claim receive administrative priority).

23.      The Producers believe that both Lantern and the Debtors knew at the time they were negotiating the Polaroid Stipulation and the Stipulated Order that Lantern did not own the Film, had no right to negotiate resolution of the Producers' disputes regarding the Film and could not undertake the Debtors' obligations under the Producing Services Agreement with respect to the Film.  Nonetheless, for months, Lantern and the Debtors knowingly and intentionally represented to the Producers otherwise to the Producers' economic and legal detriment.   Lantern and the Debtors fraudulently induced the Producers to negotiate and enter into the Polaroid Stipulation,

spending significant legal fees in the process and continuing to do so in connection with the First Republic Lift Stay Motion and Motion to Vacate.

24.    The Producers reserve their rights to assert claims against Lantern and the Debtors for the fees they incurred in negotiating and entering into the Polaroid Stipulation and seeking entry of the Stipulated Order, which claims against the Debtors constitute administrative expense claims in the Debtors' cases.

## CONCLUSION

For the reasons set forth herein, the Court should sustain the objection and grant all other relief that the Court deems just and proper.

Dated:  November 27, 2018
          Wilmington, Delaware

**VENABLE LLP**

*/s/ Jamie L. Edmonson*

Jamie L. Edmonson (No. 4247)
1201 N. Market St.
Suite 1400
Wilmington, Delaware 19801
Tel: (302) 298-3535
Fax: (302) 298-3550
jledmonson@venable.com

-and-

Jeffrey S. Sabin, Esq.
1270 Avenue of the Americas
New York, New York 10020
Tel:  (212) 503-0672
jssabin@venable.com

-and-

21746595-v3

Keith C. Owens, Esq.
2049 Century Park East
Suite 2300
Los Angeles, California 90067
Tel: (310) 229-0370
kcowens@venable.com

21746595-v3