IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>Jointly Administered<br><br>**Hearing Date: Dec. 17, 2018 at 10:30 a.m.**<br>**Objections Due: Dec. 10, 2018 at 4:00 p.m.** |

## MOTION OF LIGHT CHASER ANIMATION TO COMPEL ASSUMPTION OF ITS LICENSING AGREEMENT

Light Chaser Animation ("Light Chaser") created a successful Mandarin-language animated film titled *Xiao Men Shen* (Little Door Gods). Light Chaser and The Weinstein Company LLC ("TWC") entered into a licensing agreement pursuant to which Light Chaser granted TWC rights to exploit the film in certain territories, along with various related intellectual property rights. Utilizing the license, TWC and co-creators dubbed *Little Door Gods* into English and shortened its run time to create a "revised version." *Little Door Gods* was expressly included in the assets the Debtors sold to Lantern Entertainment LLC ("Lantern") in the sale that closed on July 13, 2018. Consonant therewith, Light Chaser's licensing agreement has consistently been listed on the Debtors' schedules of proposed executory contracts to be assumed and assigned to Lantern. There has not been any dispute among the parties as to its character, status or associated cure amount. Light Chaser believes the Debtors have proceeded to transfer one or both versions of *Little Door Gods* to Lantern, and it continues to screen on Netflix.

However, on November 8, 2018, almost four months after the sale closed, Lantern filed a "Supplemental Notice of Filing of Assumed Contracts Pursuant to Sale Order" [Docket No. 1695] in which, for the first time, Lantern designated Light Chaser's agreement as an excluded

executory contract. As best as Light Chaser can discern from available information, the Debtors assumed and assigned to Lantern various agreements relating to the English edition of the film but Lantern is unlawfully attempting to sever and leave behind the uncured obligations that are predicate to its rights to the film. By this motion, Light Chaser seeks entry of an order pursuant to 11 U.S.C. § 362(d)(2) and Bankruptcy Rule 6006(a) compelling the Debtors to assume its licensing agreement.

1. The Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate to this motion is 11 U.S.C. § 362(d)(2). Bankruptcy Rule 6006(a) provides for the filing of this motion.

2. On or as of April 15, 2016, Light Chaser entered into a licensing agreement (the "Original License") with TWC under which Light Chaser granted TWC certain territorial distribution and related rights to the Mandarin language animated motion picture known as *Xiao Men Shen* or "*Little Door Gods*." Thereafter, TWC requested Light Chaser to enter into an amendment to the Original Licenses. TWC prepared an amendment dated as of August 28, 2017, which Light Chaser executed and returned. Light Chaser's copies of the Original License and amendment (as amended, the "Licensing Agreement") are annexed hereto as Exhibit A.

3. As anticipated in, and authorized by, the Licensing Agreement, the Debtors utilized the Licensing Agreement to co-create a revised version of Light Chaser's film that was re-voiced into English and edited for a shorter run time (the "Revised Version"). Pursuant to the Licensing Agreement, TWC granted to Light Chaser access to the Revised Version and rights to exploit it in certain territories. Upon information and belief, TWC released the Revised Version

on Netflix on or about September 1, 2017, where it continues to be screened on demand under the title *The Guardian Brothers*.

4.       On March 19, 2018 (the "Petition Date"), TWC and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.       On March 20, 2018, the Debtors filed a motion for entry of an order to approve, *inter alia*, bidding procedures for a proposed sale of the Debtors' assets and the assumption and assignment of executory contracts and unexpired leases. [Docket No. 8.] The proposed asset purchase agreement attached to the filing listed *Little Door Gods* as a "Covered Title" and a "Top Program" included in the assets to be sold. *Id.* at 242.

6.       On April 13, 2018, the Debtors filed a notice that set forth executory contracts that the Debtors proposed to assume and assign in connection with the proposed sale, along with their respective cure amounts. [Docket No. 216] The filing scheduled the Licensing Agreement, with a cure amount of $2,250,000.00. *Id.*, Ex. 1 at 380. Light Chaser did not dispute either the inclusion of the Licensing Agreement on the list of assignable executory contracts or the cure amount.[1] Nor have the Debtors ever denoted the Licensing Agreement as subject to any dispute.

7.       On April 23, 2018, the Debtors filed global notes regarding their schedules of assets and liabilities and statements of financial affairs [Docket No. 320], and scheduled the Licensing Agreement on Schedule G (executory contract and unexpired leases). *Id.* at 1817.

8.       On May 8, 2018, the Debtors filed a revised proposed form of sale order. [Docket No. 824] The proposed asset purchase agreement made a part of that filing continued to identify *Little Door Gods* as a Covered Title and Top Program. *Id.*, Ex. A at 206. On May 9, 2018, the

---

[1] The Licensing Agreement provides for a continuing cross-license of the Revised Version to Light Chaser, among other important terms, such that there can be no dispute that it is executory. *See In re Golden Books Family Entm't, Inc.*, 269 B.R. 300, 308-09 (Bankr. D. Del. 2001) (license agreements executory where each party had the "material duty of 'refraining from suing the other for infringement on any of the [intellectual property] covered by the license'") (quoting *In re Access Beyond Tech., Inc.*, 237 B.R. 32 (Bankr. D. Del. 1999)).

3

Court entered the "Order (I) Authorizing the Sale of All or Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief an order approving the sale of assets to Lantern" [Docket No. 846] (the "Sale Order").

9. On May 10, 2018, pursuant to paragraph 29 of the Sale Order, the Debtors filed a Notice of Filing of Final List of Potentially Assumed Contracts and Leases, along with their respective cure amounts [Docket No. 860] (the "Final List"). Also pursuant to the Sale Order, each of the contracts on the list "constitutes an executory contract or unexpired lease under the Bankruptcy Code section 365[.]" *Id.* at ¶ 35.[2]

10. On July 10, 2018, the Debtors filed a conformed copy of asset purchase agreement reflecting certain amendments [Docket No. 1202-1]. *Little Door Gods* remained a Covered Title and Top Program expressly included in the sale assets. *Id.*, Ex. A at 89. The Debtors represented that the sale closed on July 13, 2018. *See* Docket No. 1247.

11. Four months after the sale closed, on November 8, 2018, Lantern filed a "Supplemental Notice of Filing of Assumed Contracts Pursuant to Sale Order" [Docket No. 1695] (the "November 8 Notice"). Therein, the Licensing Agreement was, for the first time ever, designated as an excluded contract, despite the film having been expressly included in the sale assets as a "Covered Title" and "Top Program" and Lantern having purported to obtain rights to the Revised Version. After the surprising exclusion of the Licensing Agreement in the November 8 Notice, Light Chaser's professionals commenced to investigate how that can be

---

[2] On June 8, 2018, the Debtors filed the "Debtors Statement Regarding Contracts to be Transferred Pursuant to the Asset Purchase Agreement with Lantern Entertainment LLC" [Docket No. 1003] in which the Debtors purported to remove 147 contracts from the Final List on the grounds that they are not executory. While it is unclear that the Debtors had the right to do this as to the affected contracts, the Licensing Agreement was *not* included on that list.

4

reconciled with the inclusion of *Little Door Gods* in the sale assets and the continuing screening of the Revised Version on Netflix.  Although Light Chaser may require certain limited discovery to complete its investigation, what it has come to understand is that the Debtors and Lantern unlawfully have purported to effectuate a transfer of Light Chaser's film without paying for it by assuming and assigning contracts connected to the Revised Version while leaving behind the predicate Licensing Agreement.  Attempts to communicate about the situation with respective counsel for the Debtors and Lantern were received cordially but resulted in no meaningful or substantive response.  Regrettably, Light Chaser must now turn to the Court to address Lantern's abuse of the sale procedures.

        12.     Section 365(d)(2) of the Bankruptcy Code provides:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

Congress intended this provision to prevent parties in contractual or lease relationships with a debtor from being left in doubt concerning their status.  *Univ. Med. Ctr. V. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992).  While the statute provides for a court to order a period of time for a debtor to assume *or* reject, rejection is not a possible option for TWC under the circumstances here.  TWC cannot surrender its right under the Licensing Agreement after assuming and assigning to Lantern the agreements relating to the Revised Version.

        13.     It is axiomatic and indisputable that a party cannot assume the benefits of an executory contract without also assuming the burdens.  *N.L.R.B. v. Bildisco*, 465 U.S. 513, 531-32 (1984) ("Should the debtor-in-possession elect to assume the executory contract. . . it assumes the contract *cum onere*. . .") (citation omitted); *Huron Consulting Servs. v. Physiotherapy*

5

*Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) ("Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder.") (citation omitted); *see In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008) ("If the debtor decides to assume a lease . . . it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed. . . . If he receives the benefits he must adopt the burdens.") (citations omitted) (Walrath, J.).

14. The Debtors received, and the estate benefited from, Lantern's cash payment for *Little Door Gods*. But absent assumption of the Licensing Agreement the Debtors would have had nothing to sell. Neither the Debtors nor Lantern can have the benefits of the Licensing Agreement without the burdens, which include an undisputed monetary cure obligations and a cross-license of the Revised Version back to Light Chaser. Yet, that is exactly what they have attempted to accomplish by transferring *Little Door Gods* and (we believe) *some* of the associated agreements to Lantern, then months later purporting to leave behind and uncured the Licensing Agreement that is the source of the rights sold to Lantern.

15. The Licensing Agreement is not a miscellaneous asset that may have been overlooked; *Little Door Gods* was expressly designated a Covered Title and Top Program in all of the iterations of the sale agreement dating back to last March. As such, a portion of the cash the estate obtained from the Lantern sale was expressly on account of Light Chaser's film, which was sold in the exercise of the Debtors' "reasonable," "valid," "sound" and "prudent" business judgment. *See* Sale Order at ¶¶ O, Q, MM. The Licensing Agreement has not been among the contracts that have been subject to dispute; neither the Debtors and Lantern on one hand, nor Light Chaser on the other, have ever challenged the character or status of the agreement or the cure amount due. Light Chaser believes that as a result of the course of conduct above, and

particularly the sale to Lantern of rights licensed by Light Chaser, the Debtors properly should be deemed to have undertaken to assume the Licensing Agreement, and now should be compelled to do so formally. Lantern may not continue to enjoy the benefits of Light Chaser's intellectual property without payment of the associated costs.

For the foregoing reasons, Light Chaser requests the Court to enter an order directing the Debtors immediately to assume the Licensing Agreement, and grant such other and further relief in favor of Light Chaser as may be proper. Light Chaser reserves all of its rights to assert any and all claims or seek other relief relating to the post-petition use of its intellectual property.

Dated: Wilmington, Delaware
November 29, 2018

**HOGAN ♦ MCDANIEL**

/s/Garvan F. McDaniel
Garvan F. McDaniel (DE No. 4167)
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
gfmcdaniel@dkhogan.com

Robert M. Novick (pro hac vice motion pending)
Adam L. Shiff (pro hac vice motion pending)
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
rnovick@kasowitz.com
ashiff@kasowitz.com

*Attorneys for Light Chaser Animation*