**Exhibit A**

**Proposed Order**

**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ------------------------------------------------------------ x | : | |
| In re: | : | Chapter 11 |
| | : | |
| The Weinstein Company Holdings LLC, *et al.*, | : | Case No. 18-10601 (MFW) |
| | : | |
| Debtors.¹ | : | (Jointly Administered) |
| | : | |
| | : | Re: Docket No. ___ |
| ------------------------------------------------------------ x | | |

**ORDER APPROVING SETTLEMENT AND MUTUAL RELEASE AGREEMENT
BETWEEN DEBTORS AND BUNIM/MURRAY PRODUCTIONS, LLC**

Upon the motion (the "**Motion**")² of the Debtors for entry of an order (this "Order"): approving the Settlement and Mutual Release Agreement between the Debtors and Bunim/Murray Productions LLC attached as **Exhibit 1** hereto (the "**Settlement Agreement**"), all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 1334 and 157 and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and it appearing that this Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Motion.

Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED to the extent set forth herein.

2. Bunim/Murray is hereby allowed an administrative expense claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code in the above-captioned chapter 11 cases in the amount of $605,000, which shall be payable as provided in the Settlement Agreement.

3. The Debtors are authorized to make the Settlement Payments to Bunim/Murray and to grant the releases to the Bunim/Murray Parties, all as set forth in (and subject to the conditions set forth in) the Settlement Agreement, and to otherwise perform all their obligations under the Settlement Agreement.

4. The Debtors and their officers and agents are authorized and directed to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate and fully execute the Settlement Agreement and effectuate its terms.

5. This Order shall be effective immediately notwithstanding any stay of effectiveness that would otherwise be imposed by any Federal Rule of Bankruptcy Procedure or

Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

      6.    This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order

# **EXHIBIT 1**

## **SETTLEMENT AGREEMENT**

# SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement ("Agreement") is hereby made by, between and among The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession ("TWC" or the "Debtors"), on the one hand, and Bunim/Murray Productions, LLC ("Bunim/Murray" and, together with the Debtors and their successors, as applicable, the "Parties"), on the other hand.

## RECITALS

WHEREAS, on March 19, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, prior to the Petition Date, TWC and Bunim/Murray entered into that certain *"Project Runway" and "Models" / Production Services Agreement* (as subsequently amended, the "Project Runway Production Services Agreement"), pursuant to which Bunim/Murray provided development and production services to The Weinstein Company LLC and later to Weinstein Television LLC in connection with the television show "Project Runway" (the "Program");

WHEREAS, the Debtors allege that in the ninety days prior to the Petition Date the Debtors made certain transfers to Bunim/Murray, including $240,000 paid on March 6, 2018, $134,000 paid on March 8, 2018, and $212,500 paid on March 19, 2018, and Bunim/Murray believes that it has defenses to Chapter 5 claims;

WHEREAS, on March 23, 2018, the Debtors delivered a letter dated March 22, 2018 (the "Pick-Up Letter") to Bunim/Murray, agreeing to lock Bunim/Murray to produce Season 17 of the Program;

WHEREAS, following its receipt of the Pick-Up Letter, Bunim/Murray provided production services for Season 17 of the Program;

WHEREAS, in connection with the marketing and sale of their assets post-petition, the Debtors filed notices [D.I. 216, 282, 482] identifying certain executory contracts with Bunim/Murray (including, but not limited to, the Project Runway Production Services Agreement) for potential assumption and assignment, and proposing cure amounts of $0.00 for these contracts;

WHEREAS, on May 2, 2018, Bunim/Murray filed an objection to the Debtors' proposed cure amounts, asserting estimated cure amounts totaling $924,278.00 arising from the Debtors' breaches of the subject agreements (the "Prepetition Unsecured Claim");

WHEREAS, on June 19, 2018, Bunim/Murray filed a request for allowance and payment of an administrative expense claim in the amount of $1,349,911.44 pursuant to section 503(b)(1)(A) of the Bankruptcy Code, on account of its production services fee and a lease

maintained in connection with the production of Season 17 of the Program [D.I. 1075] (the "Administrative Expense Request");

WHEREAS, on July 27, 2018, the Debtors filed an objection to the Administrative Expense Request [D.I. 1275] (the "Objection");

WHEREAS, the Parties have conducted discovery concerning the Administrative Expense Request and the Objection, and have engaged in good-faith, arm's-length settlement discussions in an attempt to reconcile their positions; and

WHEREAS, the Parties, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Claims and disputes between and among them, including the Prepetition Unsecured Claim, the Administrative Expense Request, and all Claims relating to the BMP Production Services Agreements or the Pick-Up Letter;

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the Bankruptcy Court, the Parties hereby agree as follows:

## AGREEMENT

1.  **Definitions.**  As used in this Agreement, the following terms shall have the meanings set forth below. Capitalized terms not defined below or herein shall have the meanings given to them in the Bankruptcy Code.

    1.1. "Avoidance Actions" means any and all rights to recover or avoid transfers or liens under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action.

    1.2. "Bunim/Murray Parties" means collectively Bunim/Murray and each of its past, present and future parents, subsidiaries, affiliates, and divisions, each of their respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

    1.3. "BMP Production Services Agreements" mean, collectively, the (i) Project Runway Production Services Agreement; (ii) *"Project Allstars" Production Services Agreement*, by and between TWC and Bunim/Murray (as subsequently amended); and (iii) *"Under the Gunn" Production Services Agreement*, by and between TWC and Bunim/Murray.

2

1.4. "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.5. "Chapter 11 Cases" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, styled as The Weinstein Company Holdings LLC, *et al.*, under Case No. 18-10601 (MFW), currently pending in the Bankruptcy Court.

1.6. "Creditor" means any Person that is the Holder of a Claim against any of the Debtors.

1.7. "Debtor Parties" means collectively the Debtors and: (i) each of the past, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies of the Debtors, and each of their respective predecessors, successors and assigns; and (ii) any and all past and present employees, officers, directors, shareholders, staff, members, boards, administrators, agents, attorneys, and representatives, in their capacity as such.

1.8. "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

1.9. "Execution Date" means the date on which the Agreement is executed by all of the Parties.

1.10. "Final Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such an appeal or review has been taken, (i) it has been resolved and no longer remains pending, or (ii) an appeal or review has been taken timely but such order has not been stayed and the Debtors and Bunim/Murray have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Agreement.

1.11. "Holder" means the beneficial holder of any Claim.

1.12. "Person" means an individual or Entity, including any corporation, corporation sole, partnership, association, limited liability company, proprietorship, joint venture, trust, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

1.13. "UST" means the Office of the United States Trustee for the District of Delaware.

2. **The Approval Motion and Order.** Not later than three (3) days after the Execution Date, the Debtors shall file a motion (the "Approval Motion") that seeks the entry of an order in substantially the form attached as Exhibit A to this Agreement, with only such modifications as are acceptable to Bunim/Murray and the Debtors, entered by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and/or under such

3

other provisions as the Bankruptcy Court may order, approving this Agreement and authorizing the Parties to undertake the settlement and the transactions contemplated by this Agreement (the "Approval Order").

2.1. The Debtors shall provide written notice of the Approval Motion to (i) counsel for the Official Committee of Unsecured Creditors appointed by the UST in the Chapter 11 Cases, as such committee may be reconstituted from time to time (the "Creditors Committee"); (ii) the UST; (iii) counsel for Lantern Entertainment LLC; and (iv) all Persons who have filed notices of appearance in the Chapter 11 Cases.

2.2. If any Person files an objection to the Approval Motion, the Debtors shall take all reasonable steps to defend against any objection, appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order. Bunim/Murray will cooperate with the Debtors, including making all appropriate submissions.

3. **Effectiveness.** This Agreement shall become effective upon the date of entry of the Approval Order (the "Effective Date").

4. **Settlement Payments.** The Approval Order shall provide for the allowance of an administrative expense claim in the Chapter 11 Cases for Bunim/Murray in the total amount of six hundred five thousand dollars ($605,000) (the "Allowed Administrative Claim"), which shall be payable in two installments (each, a "Settlement Payment") as provided in this paragraph. On or before December 28, 2018, the Debtors shall pay Bunim/Murray one hundred fifty thousand dollars ($150,000) in immediately available funds, pursuant to wire instructions to be provided by Bunim/Murray. The Debtors (or their successor) shall also pay Bunim/Murray four hundred fifty-five thousand dollars ($455,000) in immediately available funds, pursuant to wire instructions to be provided by Bunim/Murray, and such further payment shall be made on the effective date of the chapter 11 plan that is confirmed in the Chapter 11 Cases (or, if no plan is confirmed, then at the time that other allowed administrative claims against the Debtors are paid). The Allowed Administrative Claim and the Settlement Payments are in (i) full compromise and settlement of the Claims set forth in the Administrative Expense Request and any other Claims that Bunim/Murray may have against the Debtors (including, without limitation, any Claims that may arise in connection with the rejection and termination of the BMP Production Services Agreements pursuant to this Agreement) and (ii) consideration for the mutual releases between the Debtor Parties and Bunim/Murray under this Agreement. Time is of the essence with respect to payment of the Settlement Payments.

5. **Mutual Releases**

5.1. Releases by the Debtors. On the Effective Date, Debtors hereby fully, finally, and completely remise, release, acquit, and forever discharge the Bunim/Murray Parties from any and all Claims, complaints, rights, manner of action or actions, Avoidance Actions, causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money, controversies, damages, accounts and liabilities of every kind and nature whatsoever of the Debtors and their bankruptcy estates, whether at law or in equity, arising from the beginning of time until the Execution Date, whether liquidated or

4

unliquidated, fixed or contingent, matured or unmatured, known or unknown, or foreseen or unforeseen.

      5.2.    <u>Releases by Bunim/Murray</u>.  On the Effective Date (but subject to the condition subsequent of the timely receipt of the Settlement Payments), Bunim/Murray hereby fully, finally, and completely remises, releases, acquits, and forever discharges the Debtor Parties from any and all Claims, complaints, rights, manner of action or actions, causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money, controversies, damages, accounts and liabilities of every kind and nature whatsoever of Bunim/Murray, whether at law or in equity, arising from the beginning of time until the Execution Date, whether liquidated or unliquidated, fixed or contingent, matured or un-matured, known or unknown, or foreseen or unforeseen.

      5.3.    For the avoidance of doubt, this Section 5 is not intended to, and shall not be construed to, release, waive, relinquish, discharge or otherwise affect the Parties' rights and obligations under this Agreement.

    6.    **Termination.**  On the Effective Date, the BMP Production Services Agreements shall be deemed terminated and no longer in force and effect and shall be deemed to be rejected by the Debtors pursuant to section 365 of the Bankruptcy Code.

    7.    **Representations and Warranties of the Parties.**  Each Party represents and warrants to each other Party that:  (i) it is duly authorized to execute and deliver this Agreement and perform its obligations hereunder; (ii) no Claim (including, but not limited to, Avoidance Actions) waived or released pursuant to this Agreement has been assigned or otherwise transferred (including, but not limited to, in connection with the sale of the Debtors' assets to Lantern Entertainment LLC and its assigns); (iii) each believes it to be in that Party's best interests to settle the matters encompassed by this Agreement, as provided in this Agreement; (iv) no promise, agreement, inducement, representation, or warranties have been offered to any Party except as expressly provided in this Agreement; (v) this Agreement is not in violation of or in conflict with any other agreement of any Party; (vi) this Agreement is executed voluntarily with full knowledge of the consequences and implications of the terms and obligations contained herein; (vii) each Party has been represented by counsel of that Party's choice throughout the negotiations that preceded the execution of this Agreement, and in connection with the preparation and execution of this Agreement; (viii) each Party has carefully and thoroughly reviewed this Agreement in its entirety and has resolved all questions concerning the meaning, legal nature, and binding effect of this Agreement with counsel of each Party's choosing; and (ix) this Agreement is contractual and not merely recital, and that each Party has read, understands, and fully agrees to the terms of this Agreement.

    8.    **Miscellaneous**

      8.1.    In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

8.2. The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.

8.3. The Parties shall cooperate with each other in connection with obtaining Bankruptcy Court approval of this Agreement, with such cooperation including consulting with each other upon reasonable request concerning the status of the Chapter 11 Cases, the Approval Motion and the Approval Order (including providing drafts of such documents as soon as reasonably practicable prior to any submission to the Bankruptcy Court).

8.4. This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

8.5. This Agreement may be modified only by a written amendment signed by the Parties, and no waiver of any provision of this Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party. The waiver by any Party of any of the provisions of this Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach.

8.6. By entering into this Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Agreement. No part of this Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Agreement. All actions taken and statements made by the Parties or by their representatives, relating to this Agreement or participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

8.7. This Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession of liability, culpability, or wrongdoing. All related discussions, negotiations, and all prior drafts of this Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 8.7, in an action or proceeding to enforce the terms of this Agreement.

8.8. This Agreement shall be binding on the Parties, their successors, assigns, transferees, any subsequent chapter 7 trustee appointed in the Chapter 11 Cases upon or after conversion to a case under chapter 7 of the Bankruptcy Code, and any other Persons who have asserted or seek to assert Claims on behalf of or against the Debtors' estates.

8.9. Neither this Agreement nor the rights and obligations set forth in this Agreement shall be assigned without the prior written consent of the other Parties.

8.10.    Section titles and/or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

8.11.    All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

If to the Debtors:

> Richards Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> Attention: Paul N. Heath
> Facsimile:  (302) 651-7701
> Email: Heath@rlf.com

If to Bunim/Murray:

> Bunim/Murray Productions, LLC
> 1015 Grandview Ave.
> Glendale, California 91201
> Attention: Gil Goldschein
> Facsimile: (818) 756-5140
> Email: gilgoldschein@bunim-murray.com

> With a copy to:

> Drinker Biddle & Reath LLP
> 1177 Avenue of the Americas
> New York, New York 10036-2714
> Attention: Michael P. Pompeo
> Facsimile: (212) 248-3141
> Email: michael.pompeo@dbr.com

8.12.    This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.  This Agreement may be executed and delivered by facsimile or other electronic image, which facsimile or other electronic image counterparts shall be deemed to be originals.

8.13.    All of the Persons included in the definition of Bunim/Murray Parties or Debtor Parties are intended beneficiaries of this Agreement.  Except as set forth in the preceding sentence or otherwise set forth in this Agreement, there are no third-party beneficiaries of this Agreement.

    8.14. The Debtors and Bunim/Murray shall be responsible for their own fees and costs incurred in connection with the Chapter 11 Cases, this Agreement, and the implementation of this Agreement.

    8.15. The following rules of construction shall apply to this Agreement:

    8.15.1. Unless the context of this Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

    8.15.2. References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Agreement.

    8.15.3. The wording of this Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution. The wording of this Agreement shall not be construed in favor of or against any Person.

    8.15.4. The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Agreement when the stated intent is not achieved.

    8.15.5. If any provision of this Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning that renders it valid and enforceable.

    8.15.6. This Agreement and any Claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the Bankruptcy Code and, to the extent not preempted by the foregoing, the laws of the State of Delaware (without regard to the principle of conflicts of law thereof that would result in the application of law of another jurisdiction).

    8.15.7. The Bankruptcy Court shall retain jurisdiction to resolve any dispute arising out of or relating to this Agreement.

*[Remainder of page left blank intentionally]*

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of the Debtors (as defined herein)**

By: _/s/ Robert Del Genio_

Date: December 18, 2018

Witness: _____

**On behalf of Bunim/Murray (as defined herein)**

By: _____

Date: _____

Witness: _____

9

RLF1 20436632v.3

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of the Debtors (as defined herein)**

By: _____

Date: _____

Witness: _____

**On behalf of Bunim/Murray (as defined herein)**

By: _____*[signature]*_____

Date: __12/18/18__

Witness: _____*[signature]*_____

9

# EXHIBIT A

**Form of Approval Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>The Weinstein Company Holdings LLC, *et al.*,[1]<br><br>   Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. __** |

**ORDER APPROVING SETTLEMENT AND MUTUAL RELEASE AGREEMENT
BETWEEN DEBTORS AND BUNIM/MURRAY PRODUCTIONS, LLC**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**"): approving the Settlement and Mutual Release Agreement between the Debtors and Bunim/Murray Productions LLC attached as Exhibit 1 hereto (the "**Settlement Agreement**"), all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 1334 and 157 and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and it appearing that this Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing, and all the

---

[1]   The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of this information may be obtained on the website of the Debtors claims and noticing agent at http://dm.epiq11.com/twc.

[2]   Capitalized terms used but not defined in this Order have the meanings used in the Motion.

proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is GRANTED to the extent set forth herein.

2. The Settlement Agreement, attached hereto as Exhibit 1, is approved.

3. Bunim/Murray is hereby allowed an administrative expense claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code in the above-captioned chapter 11 cases in the amount of $605,000, which shall be payable as provided in the Settlement Agreement.

4. The Debtors are authorized to make the Settlement Payments to Bunim/Murray and to grant the releases to the Bunim/Murray Parties, all as set forth in (and subject to the conditions set forth in) the Settlement Agreement, and to otherwise perform all their obligations under the Settlement Agreement.

5. The Debtors and their officers and agents are authorized and directed to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate and fully execute the Settlement Agreement and effectuate its terms.

6. This Order shall be effective immediately notwithstanding any stay of effectiveness that would otherwise be imposed by any Federal Rule of Bankruptcy Procedure or Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

7. This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

# **EXHIBIT 1**

**Settlement Agreement**