## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------x
                                                          :
In re:                                                    :    Chapter 11
                                                          :
The Weinstein Company Holdings LLC, et al.,               :    Case No. 18-10601 (MFW)
                                                          :
        Debtors.¹                                         :    (Jointly Administered)
                                                          :
                                                          :    Proposed Obj. Deadline: January 9, 2019 at 4:00
                                                          :    p.m. (ET)
----------------------------------------------------------x    Proposed Hr'g Date:  January 14, 2019 at 11:30
                                                               a.m. (ET)
```

## MOTION OF THE DEBTORS AND LANTERN ENTERTAINMENT, LLC PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF (I) SETTLEMENT AGREEMENT REGARDING THE A&E TELEVISION NETWORKS AGREEMENTS AND (II) STIPULATION WITH PORTFOLIO FUNDING COMPANY LLC I

The Weinstein Company Holdings LLC ("TWCH") and its affiliated debtors and

debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the

"Chapter 11 Cases") and Lantern Entertainment, LLC (together with its affiliates, "Lantern"),

respectfully represent as follows in support of this motion (the "Motion"):

### Relief Requested

1.      By this Motion, pursuant to sections 105(a) and 363(b) of title 11 of the United

States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors and Lantern request entry

of an order authorizing the Debtors to compromise and settle claims pursuant to (i) that certain

settlement agreement (the "Settlement Agreement") between the Debtors, Lantern and A&E

---

¹ The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837).  The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013.  Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein.  A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

Television Networks, LLC and its related entities (collectively, "AETN" and, together with the Debtors and Lantern, the "Settlement Parties") and (ii) that certain stipulation (the "PFC/AETN Stipulation" and, together with the Settlement Agreement, the "AETN Settlement") among the Debtors, Lantern, AETN and Portfolio Funding Company LLC I ("PFC" and, together with the Debtors, Lantern and AETN, the "Stipulation Parties").  A proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit A** (the "Proposed Order"). The Settlement Agreement is annexed to the Proposed Order as **Annex 1**.  The PFC/AETN Stipulation is annexed to the Proposed Order as **Annex 2**.

### Jurisdiction

2.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors and Lantern consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief requested herein is Bankruptcy Code sections 105(a) and 363(b), as well as Bankruptcy Rule 9019.

## Background

**A.      The AETN Agreements and Related Disputes**

4.      Prior to the Petition Date (as defined below), the Debtors (and/or their related

entities) and AETN (and/or its related entities) entered into the following contracts (the "AETN

Agreements"):

> a.      The *Television Series Production and License Agreement Deal Memorandum* by and between Lifetime Entertainment Services ("Lifetime") and The Weinstein Company LLC ("**TWC**"), in connection with the television series "*Project Runway*" and certain derivative series, including, among others, "*Project Runway All-Stars*," dated as of February 7, 2008 (together with all amendments thereto, the "Project Runway Deal Memo");
>
> b.      The *Television Series License Agreement-Standard Terms and Conditions* by and between Lifetime and TWC, dated as of September 8, 2008 (together with all amendments thereto, the "Standard Terms" and, together with the Project Runway Deal Memo, the "Project Runway Agreement");
>
> c.      The *Motion Picture License Agreement Deal Memorandum*, by and between Lifetime and TWC, dated as of February 7, 2008 (together with all amendments thereto, the "Movie Agreement"); and
>
> d.      The *Assignment and Executive Producer Agreement* by and between AETN and TWC, in connection with the television series "*Six*," dated as of September 21, 2015 (the "Six Agreement").

5.      On January 10, 2018, AETN notified TWC of the termination of the Project

Runway Agreement and the Movie Agreement pursuant to Section 9(d) of the Standard Terms

(the "Termination Notice"), which Termination Notice stated that it terminated all obligations of

AETN with respect to future seasons of Project Runway (*e.g.*, Seasons 17 and 18), and any

seasons beyond Season 7 of Project Runway All-Stars.

6.      On March 19, 2018 (the "Petition Date"), the Debtors commenced these voluntary

Chapter 11 Cases in the United States Bankruptcy Court for the District of Delaware (the

"Court").

7.    On March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 8].

8.    On April 6, 2018, the Court entered the *Order (I) (A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief* (the "Bid Procedures Order") [Docket No. 190].

9.    On April 13, 2018, the Debtors filed the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the "April 13 Notice") [Docket No. 216], which attached an exhibit listing certain contracts and leases that the Debtors could potentially assume and assign as part of the sale contemplated by the Bid Procedures Order (the "Sale"), together with the associated asserted cure amounts.  The April 13 Notice included certain contracts to which AETN is a counter-party.

10.    On April 20, 2018, the Debtors filed the *Notice of Supplemental Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the

"April 20 Notice") [Docket No. 282], which attached an exhibit listing certain additional

contracts and leases that the Debtors could potentially assume and assign as part of the Sale,

together with the associated asserted cure amounts.  The April 20 Notice included certain

contracts to which AETN is a counter-party.

11.     On April 27, 2018, the Debtors filed the *Notice of Second Supplemental Potential*

*Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* (the

"April 27 Notice") [Docket No. 482], which attached an exhibit listing certain additional

contracts and leases that the Debtors could potentially assume and assign as part of the Sale,

together with the associated asserted cure amounts.  The April 27 Notice included certain

contracts to which AETN is a counter-party.

12.     On April 30, 2018, AETN filed an objection to the Debtors' proposed assumption

of the Project Runway Agreement and the Movie Agreement and assignment to Lantern [Docket

No. 526] (the "Objection"), which objection AETN supplemented on May 7, 2018 [Docket No.

802] (the "May Supplement"), and on June 12, 2018 [Docket No. 1006] (the "June Supplement"

and collectively with the Objection and the May Supplement, the "AETN Objections").

13.     On May 9, 2018, the Court entered the *Order (I) Authorizing the Sale of All or*

*Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests,*

*Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related*

*Relief* [Docket No. 846] (the "Sale Order") which, *inter alia*, approved the sale of substantially

all of the Debtors' assets to Lantern with contract issues to be determined at a later time,

including those issues raised in the AETN Objections.

14.     On May 10, 2018, the Debtors filed the *Notice of Final List of Potentially Assumed Contracts and Leases* (the "May 10 Notice") [Docket No. 860], which attached an exhibit listing certain contracts and leases that the Debtors could potentially assume and assign as part of the Sale, together with the associated asserted cure amounts.  The May 10 Notice included certain contracts to which AETN is a counter-party.

15.     On June 18, 2018, the Debtors filed their reply to the AETN Objections [Docket No. 1038] (the "Reply").

16.     In connection with the AETN Objections and the Debtors' Reply, the Debtors and AETN engaged in document and deposition discovery.

17.     On July 11, 2018, the Court entered its *Order Approving Amendment to Asset Purchase Agreement Entered Into By and Between the Debtors and Lantern Entertainment LLC* [Docket No. 1220].  The sale transactions closed on July 13, 2018 [Docket No. 1247].

18.     On November 8, 2018, Lantern filed the *Supplemental Notice of Filing of Assumed Contracts Pursuant to Sale Order* (the "November 8 Notice") [Docket No. 1695], which attached an exhibit listing certain contracts and leases that the Debtors would assume and assign as part of the Sale (together with the associated asserted cure amounts), subject, in certain cases, to the resolution of certain disputes.  The November 8 Notice included certain contracts to which AETN is a counter-party.

**B.     The PFC Letter and Related Disputes**

19.     Prior to the Petition Date, PFC, on the one hand, and TWC and Weinstein Global Film Corp., on the other hand, entered into several agreements, including, among others the Multi-Pictures Distribution Services Agreement, by and between PFC and TWC, dated as of July 29, 2010 (together with all amendments thereto, the "PFC DSA").

20.    On or about March 8, 2018, PFC delivered that certain Notice to Licensee

Account Debtor, dated as of March 8, 2018 (the "PFC Letter"), to AETN, pursuant to which PFC

instructed AETN to make all payments relating to certain films listed on Schedule 1A to the PFC

Letter (collectively, the "PFC Films") to an account designated by PFC, to the extent any such

PFC Films were licensed to AETN under the Movie Agreement.

21.    On March 14, 2018, AETN responded in writing to the PFC Letter.

### The AETN Settlement Agreement

22.    In order to avoid the burden and expense associated with litigating the AETN

Objections, the Settlement Parties engaged in good faith settlement negotiations and agreed upon

the terms set forth below to resolve all outstanding disputes arising from and/or related to (a) the

Termination Notice, including the termination of the Project Runway Agreement, (b) the Movie

Agreement and (c) the Six Agreement, including the "key-man" provision set forth therein.

Accordingly, the Debtors and Lantern have filed this Motion for approval of the Settlement

Agreement.

23.    The material terms of the Settlement Agreement are set forth in the chart below:[2]

| Project Runway Agreement | • The Settlement Parties agree and acknowledge that the Project Runway Agreement was terminated on January 10, 2018, and that no Party will contest such termination.  TWC agrees that it will not seek to assume or reject, nor will it seek to assume and assign, the Project Runway Agreement to any party, and AETN agrees it will not assert any rejection damages with respect to the Project Runway Agreement.<br><br>• The Settlement Parties agree and acknowledge that AETN has no obligations, outstanding or otherwise, with respect to future seasons of Project Runway and Project Runway All-Stars. The Settlement Parties further agree that, notwithstanding the termination of the Project Runway Agreement, AETN retains its existing contract rights under the Project Runway Agreement to its past seasons of Project Runway, past seasons of Project Runway All-Stars, Season 7 of Project Runway All-Stars (which has already been produced), and all other past derivative works (including any existing exploitation or digital rights with respect to such past works) (the "Legacy Rights"). |
|---|---|

---

[2] This summary of the Settlement Agreement is qualified in its entirety by reference to the provisions of the Settlement Agreement.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

| | |
|---|---|
| **Movie Agreement** | • The Settlement Parties agree and acknowledge that the Movie Agreement remains in full force and effect notwithstanding the Termination Notice, and the Settlement Parties must comply with their obligations under the Movie Agreement, as modified and amended by the Settlement Agreement (the "<u>Modified Movie Agreement</u>").<br><br>• AETN consents to the assumption and assignment of the Movie Agreement as set forth in the Assumption Notices, subject to the terms and conditions of the Settlement Agreement.<br><br>• The Settlement Parties further agree that the Movie Agreement will be modified and amended by the Settlement Agreement to:<br><br>    a. Replace the exclusive license granted in favor of AETN in the Movie Agreement with a non-exclusive license granted in favor of AETN;<br><br>    b. Waive any and all payment obligations under the Movie Agreement;<br><br>    c. For the avoidance of doubt, the Settlement Parties agree and acknowledge that Lantern will provide, and AETN has the right to air, all movies that AETN has licensed under the Movie Agreement during their specified windows on a non-exclusive basis, with the exception of Jane Got a Gun; and<br><br>    d. AETN will have no further financial obligations to any party under the Movie Agreement. |
| **Six Agreement** | • The Settlement Parties agree and acknowledge that the Six Agreement remains in full force and effect.<br><br>• AETN consents to the assumption and assignment of the Six Agreement as set forth in the Assumption Notices, subject to the terms and conditions of this Settlement Agreement.<br><br>• The Settlement Parties further agree and acknowledge that the "Series Fee" referenced in Section 3 of the Six Agreement is expressly predicated on the fulfillment of Section 4 of the Six Agreement, "Executive Producing Services & Exclusivity," which states that "the services of Harvey Weinstein, Robert Weinstein and David Glasser" be "furnish[ed]" in connection with Six. The Settlement Parties further agree and acknowledge that Messrs. Harvey Weinstein, Robert Weinstein, and David Glasser will not "furnish" any "executive producing services" in connection with Six. The Settlement Parties further agree and acknowledge that to the extent AETN produces any additional "Series Years" of Six, AETN will not pay an executive producer "Services Fee." Accordingly, the Six Agreement will be modified and amended by the Settlement Agreement to eliminate the "Series Fee" set forth in Section 3, and the terms of the Six Agreement shall otherwise remain unchanged. |
| **Settlement Payment Amount** | • As consideration for the resolution of any and all disputes between the Debtors, Lantern and AETN, AETN will make a one-time payment (the "<u>Settlement Payment</u>") to Lantern or its designee, subject to the Conditions Precedent set forth below. |
| **Conditions Precedent to Settlement Payment** | • AETN's obligation to make the Settlement Payment is subject to the fulfillment of each of the following conditions (collectively, the "<u>Conditions Precedent</u>"):<br><br>• The delivery by the Debtors or Lantern to AETN of:<br><br>    ○ A signed notice from MUFG Union Bank, N.A., f/k/a Union Bank, N.A. ("<u>MUFG</u>") terminating the Notice of Assignment and Irrevocable Instructions dated as of May 16, 2016 (together with all amendments thereto, the "<u>2016 Union Direction Letter</u>");<br>    ○ A signed notice from MUFG Union Bank, N.A., f/k/a Union Bank, N.A. terminating the |

|  |  |
|---|---|
|  | Direction to Pay dated as of May 24, 2017 (together with all amendments thereto, the "2017 Union Direction Letter" and, together with the 2016 Union Direction Letter, the "Union Direction Letters");<br><br>o A signed notice from Bank of America, N.A. ("BAML") terminating the Notice of Assignment and Irrevocable Instructions (together with all amendments thereto, the "BAML Direction Letter"). In its place, the Debtors will provide a signed notice to AETN indicating to whom future royalty payments relating to the Legacy Rights should be made, if any;<br><br>o A signed notice from Portfolio Funding Company LLC I ("PFC") voiding the Notice to Licensee Account Debtor dated as of March 8, 2018 (the "PFC Letter") and acknowledging that no payment is due to it from AETN with respect to the Movie Agreement;<br><br>o The Bankruptcy Court order approving the Settlement Agreement becoming final and non-appealable; and<br><br>o The assumption, or the assumption and assignment, of the Movie Agreement (as modified by the terms of the Settlement Agreement) in connection with the Sale or any order of the Bankruptcy Court.<br><br>• The Debtors or Lantern may satisfy the first three Conditions Precedent referenced above with such other written documentation evidencing the termination of the Union Direction Letters and the BAML Direction Letter, or, alternatively, with proof of the repayment of the Debtors' obligations to MUFG and/or BAML, in a form that is acceptable to AETN.<br><br>• AETN may, at its sole option and in its sole discretion, waive one or more of the Conditions Precedent set forth above.<br><br>• AETN will pay the Settlement Payment to Lantern within three (3) business days after the date on which all Conditions Precedent are satisfied or AETN has provided written notice of a waiver of any remaining unsatisfied Conditions Precedent. |
| **Release** | • Upon the effectiveness of the Settlement Agreement and payment of the Settlement Payment as set forth therein, (i) TWC and AETN and (ii) Lantern, in each case for themselves and their past, present and future agents, representatives, employees, officers, directors, affiliates, subsidiaries, partners, predecessors and successors in interest, attorneys, heirs, executors, representatives, successors and assigns, for and in consideration of the agreements set forth in the Settlement Agreement, agree and thereby do fully mutually release and forever discharge each other and any past, present, or future agents, representatives, employees, officers, directors, affiliates, subsidiaries, partners, predecessors and successors in interest, attorneys, heirs, executors, representatives, successors and assigns, and all persons acting for, by, through, under or in concert with any of them, from any and all claims, liabilities, demands, obligations, actions, causes of action, damages, costs, expenses, agreements, suits, debts, sums of money, grievances, defenses, controversies and compensations of any nature whatsoever arising from, relating to, based upon, by reason of, or in any way involving, in whole or in part: (a) the Project Runway Agreement; (b) the Movie Agreement; (c) the Six Agreement; (d) the Union Direction Letters; (e) the BAML Direction Letter, or (f) the PFC Letter; *provided, however*, that the foregoing shall not release or discharge any obligations going forward under the Modified Movie Agreement and, from and after the date of the assumption and assignment of the Six Agreement, the Six Agreement (as modified by the terms of the Settlement Agreement).<br><br>• Further, AETN and its related entities will have no obligations to MUFG, BAML, and/or PFC arising under or related to the Project Runway Agreement, the Movie Agreement, the Modified Movie Agreement, the Six Agreement, the Union Direction Letters, the BAML Direction Letter, and/or the PFC Letter; provided that the foregoing shall not be construed to |

| | |
|---|---|
| | provide AETN with any right of indemnification or recovery against the Debtors or Lantern. |
| **Effectiveness of Settlement** | • The Settlement Agreement will be effective upon the later to occur of (a) execution by the Settlement Parties and (b) entry of an order approving the Settlement Agreement by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. |

24.     The complete terms of the settlement are set out in the Settlement Agreement annexed to the Proposed Order as **Annex 1**.

### The PFC/AETN Stipulation

25.     In order to avoid the burden and expense associated with litigating any disputes relating to the Settlement Payment, the PFC Letter and/or the Modified Movie Agreement, the Stipulation Parties engaged in good faith settlement negotiations and agreed upon the terms set forth below to resolve all such disputes.  Accordingly, the Debtors and Lantern have filed this Motion for approval of the PFC/AETN Stipulation.

26.     The material terms of the PFC/AETN Stipulation are set forth in the chart below:[3]

| | |
|---|---|
| **Effectiveness of Stipulation** | • The PFC/AETN Stipulation shall be effective upon the last to occur of (i) its execution by the Stipulation Parties, (ii) the entry by the Court of an order approving this PFC/AETN Stipulation, (iii) the delivery by PFC to AETN and Lantern of an irrevocable notice (in form and substance reasonably acceptable to AETN, the "PFC Notice") confirming (a) the termination of the PFC Letter; and (b) AETN having no obligations either presently or hereinafter to PFC under or related to both the Movie Agreement and the Modified Movie Agreement, and (iv) the receipt by PFC of the PFC Payment, as defined in Paragraph 3 below, from Lantern (such date, the "Stipulation Effective Date"). |
| **PFC Payment** | • Within 10 days after the last to occur of (i) approval of the Settlement Agreement by the Court, (ii) receipt by Lantern of the Settlement Payment and (iii) delivery by PFC to AETN and Lantern of the PFC Notice, Lantern shall pay to PFC an amount equal to $575,000 (the "PFC Payment") in full and final satisfaction of any and all claims of PFC with respect to amounts allegedly owed to PFC on account of PFC Films licensed to AETN under the Movie Agreement and/or the Modified Movie Agreement. |

---

[3] This summary of the PFC/AETN Stipulation is qualified in its entirety by reference to the provisions of the PFC/AETN Stipulation.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the PFC/AETN Stipulation.

| Waiver of Certain Claims | ● The Debtors irrevocably disclaim any right, title and interest in and to (i) the PFC Payment and (ii) "Distribution Fees," "Distribution Expenses" or "Acquisition Costs" (each as defined in the PFC DSA), if any, arising out of or in connection with the PFC Payment or the Modified Movie Agreement (collectively, the "Debtor PFC DSA Claims"). |
|---|---|
| Releases | ● Upon the Stipulation Effective Date, each Stipulation Party, for itself and its past, present and future agents, representatives, employees, officers, directors, affiliates, subsidiaries, partners, predecessors and successors in interest, attorneys, heirs, executors, representatives, successors and assigns, for and in consideration of the agreements set forth in this Stipulation, agrees and hereby does fully release and forever discharge each other Stipulation Party (in the case of AETN, including, for the avoidance of doubt, Lifetime) and any of their respective past, present, or future agents, representatives, employees, officers, directors, affiliates, subsidiaries, partners, predecessors and successors in interest, attorneys, heirs, executors, representatives, successors and assigns, and all persons acting for, by, through, under or in concert with any of them from any and all claims, liabilities, demands, obligations, actions, causes of action, damages, costs, expenses, agreements, suits, debts, sums of money, grievances, defenses, controversies and compensations of any nature whatsoever arising from, relating to, based upon, by reason of, or in any way involving, in whole or in part:  (a) the Movie Agreement; (b) the PFC Letter; (c) the PFC Payment and (d) the Debtor PFC DSA Claims. Notwithstanding the above, but subject to the next sentence of this Stipulation, the Parties recognize that the Modified Movie Agreement remains in full force and effect and nothing herein releases or discharges any Stipulation Party from claims, liabilities, demands, obligations, actions, causes of action, damages, costs, expenses, agreements, suits, debts, sums of money, grievances, defenses, controversies and compensations under the Modified Movie Agreement that arise after the Stipulation Effective Date.  The Parties acknowledge that PFC is not a party to the Modified Movie Agreement and PFC shall have no obligations under, or liabilities in respect of, the Modified Movie Agreement, whether before, on or after the Effective Date. Notwithstanding the preceding sentence, PFC consents to the rights of AETN under the Modified Movie Agreement to show, and PFC will not impede Lantern from permitting AETN to show, on a non-exclusive basis, the PFC Films set forth on Exhibit 1 to the PFC/AETN Stipulation during the respective windows set forth on Exhibit 1 to the PFC/AETN Stipulation.  Each of AETN and, to the best of its knowledge, Lantern confirms that Exhibit 2 to the PFC/AETN Stipulation lists all amendments to the Movie Agreement that relate to or affect any PFC Film in any manner whatsoever. |

27.     The complete terms of the settlement are set out in the PFC/AETN Stipulation

annexed to the Proposed Order as **Annex 2**.

## **Basis for Relief Requested**

28.     Bankruptcy Rule 9019(a) provides, in relevant part, "[o]n motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R.

Bankr. P. 9019(a).  "[T]he authority to approve a compromise settlement is within the sound

discretion of the bankruptcy court."  *E.g.*, *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr.

D. Del. 2005).  The standard for approval of a proposed compromise is well established – a court

should approve a compromise where it "is fair, reasonable, and in the interest of the estate." *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)); *see Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).

29.     When considering the best interest of the estate, the court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.  In striking this balance, the court should consider:  (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors.  *Id.*

30.     The court does not have to be convinced that the settlement is the best possible compromise; rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  A court will normally accept the judgment of the movant as long as a legitimate business justification exists. *E.g.*, *Martin*, 91 F.3d at 395.

31.     The compromise embodied in the AETN Settlement falls well within the range of reasonableness.  The AETN Settlement allows the Debtors to avoid the associated costs of litigating the AETN Objections or any issues disputed relating to the Settlement Payment, the PFC Letter and/or the Modified Movie Agreement, as well as the risks and distractions that would accompany such litigation.  The Debtors believe that a trial of these issues would be complex and the outcome uncertain.  Further, the expense of such a trial would reduce the assets that could otherwise be distributed by the Debtors' estates to their creditors.  Accordingly, the

Debtors believe that the terms of the AETN Settlement are fair, equitable, and in the best interest of the Debtors' estates and should therefore be approved by the Court.

32.    To the extent that Bankruptcy Code section 363 is implicated in the compromise embodied in the AETN Settlement, the Debtors seek authority to execute the Settlement Agreement and perform the obligations thereunder pursuant to section 363(b) of the Bankruptcy Code.  The Debtors submit that the terms of the AETN Settlement have a sound business purpose and represent the exercise of sound business judgment for the reasons set forth herein. Accordingly, any actions required to effectuate the terms of the AETN Settlement should be authorized and approved pursuant to Bankruptcy Code section 363(b).  *See In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2d Cir. 1983); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

33.    Finally, authorizing the Debtors to enter into and effectuate the terms of the AETN Settlement is well within the equitable powers of this Court.  *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); *see also Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

34.    Accordingly, the AETN Settlement should be approved under Bankruptcy Rule 9019 and sections 105(a) and 363(b) of the Bankruptcy Code.

**Notice**

35.     The Debtors and Lantern will provide notice of this Motion to: (i) the Office of

the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel

to the DIP Agent and the Pre-Petition Agent; (iv) counsel to PFC; (v) counsel to MUFG; (vi)

counsel to BAML; (vii) the New York Attorney General and the California Attorney General;

(viii) the Office of the United States Attorney for the District of Delaware; (ix) counsel to

AETN; and (x) all parties that have requested service of notices pursuant to Bankruptcy Rule

2002.  Accordingly, the Debtors and Lantern submit that no other or further notice is necessary.

A copy of the Motion is also available on the Debtors' case website at http://dm.epiq11.com/twc.

The Debtors and Lantern respectfully submit that such notice is sufficient under the

circumstances.

36.     No previous request for the relief sought herein has been made by the Debtors and

Lantern to this or any other court.

[*Remainder of page intentionally blank*]

14

## Conclusion

WHEREFORE the Debtors and Lantern respectfully request entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem just,

proper and equitable.

Dated:  December 28, 2018
   Wilmington, Delaware

| | |
|---|---|
| */s/ Zachary I. Shapiro* | */s/ David B. Stratton* |
| **RICHARDS, LAYTON & FINGER, P.A.** | **PEPPER HAMILTON LLP** |
| Mark D. Collins (No. 2981) | David B. Stratton, Esq. (No. 960) |
| Russell C. Silberglied (No. 3462) | Evelyn J. Meltzer, Esq. (No. 4581) |
| Paul N. Heath (No. 3704) | Hercules Plaza, Suite 5100 |
| Zachary I. Shapiro (No. 5103) | 1313 N. Market Street |
| Brett M. Haywood (No. 6166) | Wilmington, DE 19801 |
| David T. Queroli (No. 6318) | Telephone: (302) 777-6500 |
| One Rodney Square | Email: stratton@pepperlaw.com |
| 920 North King Street |    meltzere@pepperlaw.com |
| Wilmington, DE  19801 | |
| Telephone: (302) 651 7700 | |
| Facsimile: (302) 651-7701 | |
| | |
| - and - | - and - |
| | |
| **CRAVATH, SWAINE & MOORE LLP** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| Paul H. Zumbro (admitted *pro hac vice*) | Abid Qureshi, Esq. (admitted *pro hac vice*) |
| George E. Zobitz (admitted *pro hac vice*) | Meredith A. Lahaie, Esq. (admitted *pro hac vice*) |
| Karin A. DeMasi (admitted *pro hac vice*) | Michael S. Stamer, Esq. (admitted *pro hac vice*) |
| Worldwide Plaza | One Bryant Park |
| 825 Eighth Avenue | Bank Of America Tower |
| New York, NY 10019 | New York, NY 10036 |
| Telephone: (212) 474-1000 | Email: aqureshi@akingump.com |
| Facsimile: (212) 474-3700 |    mstamer@akingump.com |
| |    mlahaie@akingump.com |
| *Attorneys for the Debtors* | |
| | *Attorneys for Lantern Entertainment, LLC* |