## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br>Jointly Administered |

## MOTION OF TELE MUNCHEN FOR THE EXPEDITED ENTRY OF AN ORDER: GRANTING RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1) *NUNC PRO TUNC* TO JANUARY 3, 2019 TO ALLOW PROVISION OF NOTICE OF TERMINATION AND TERMINATION OF ITS AGREEMENTS WITH THE DEBTORS

Tele Munchen Fernsch GmbH & Co. Produktionsgesellschaft ("Tele Munchen") hereby moves the Court (the "Motion") for the entry of an order, substantially in the form attached hereto, granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) *nunc pro tunc* to January 3, 2019 to allow immediate termination of its agreements with the above-captioned debtors and debtors in possession (the "Debtors"). In support of the Motion, Tele Munchen represents as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 362 and 365.

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

**BACKGROUND**

2.        Weinstein Global Film Corp. ("Weinstein Global"), one of the Debtors, and Tele Munchen are parties to several contracts under which Tele Munchen agreed to distribute *The Current War,* an unreleased Weinstein film, in Germany and other countries (collectively, the "CW Contracts").[2] The CW Contracts include the International Distribution Deal Memo, dated as of November 23, 2015 (the "Distribution Agreement"), between Weinstein Global and Tele Munchen (as amended by letter agreement dated as of December 10, 2016), which is attached hereto as **Exhibit 1**. Under the Distribution Agreement, Tele Munchen agreed to pay Weinstein Global the sum of $3,000,000 in periodic payments for the distribution rights to the film.

3.        The CW Contracts also include a Notice of Assignment, dated as of February 1, 2017 (the "Assignment"), between Tele Munchen, Weinstein Global, Film Finances, Inc., and MUFG Union Bank, N.A. ("Union Bank"), which is attached hereto as **Exhibit 2**. Under the Assignment, Weinstein Global assigned to Union Bank the right to receive Tele Munchen's payments under the Distribution Agreement.[3]

4.        Tele Munchen contends that the continuing scandal involving Harvey Weinstein's sordid, criminal behavior has destroyed the value of the film and the CW Contracts. Among other things, Tele Munchen believes that the CW Contracts are subject to rescission for, among other things, fraudulent inducement and failure of consideration.

5.        Nevertheless, the CW Contracts were designated for possible assumption and assignment by the Debtors in connection with the sale of substantially all their assets to Lantern Entertainment LLC ("Lantern"). In particular, the Debtors have filed two notices with lists of

---

[2]        As used in this Motion, "CW Contracts" also includes any other contracts that relate to *The Current War* and to which Tele Munchen and any of the Debtors are parties.

[3]        Tele Munchen understands that, in connection with the Debtors' sale of their assets, Union Bank may have assigned its interest to Sun Trust Bank and that Film Finances may no longer be involved in the transaction. But Tele Munchen has not received formal notice of these developments.

contracts and leases for "potential" assumption and assignment to Lantern. The first Notice was filed on April 13, with a list of contracts in an Exhibit 1 (the "First List"). On April 20, the Debtor filed a second notice, with a second Exhibit I (the "Second List"). The First List includes seven Weinstein Global contracts that identify Tele Munchen as the counterparty (## 7512-7518). The Second List includes another four contracts (## 15530-15533). While neither the Debors nor Lantern have ever identified the enumerated contracts by name or clarified the projects that they relate to, Tele Munchen assumes that some of them must relate to *The Current War*.

6.    On April 30, 2018, Tele Munchen filed its limited objection to the Debtors' bid procedures and sale motion [D.I. 574] (the "Objection"), which challenged the Debtors ability to assign the CW Contracts free and clear of Tele Munchen's rights and defenses under such agreements, including among other things, that the CW Contracts are subject to rescission for fraud and failure of consideration. As of the filing of this Motion, the Objection remains unresolved and is scheduled for the omnibus hearing on January 8, 2019, at 10:30 a.m.

7.    Because the Objection remains unresolved, the Debtors remain the counterparties to the CW Contracts.

8.    Under the Distribution Agreement, Weinstein Global was required to provide Tele Munchen with a notice of availability for certain "Initial Materials" relating to *The Current War* (the "Notice of Availability") no later than December 31, 2018 (the "Outside NOD Date")[4]. The "Initial Materials" include a print of the film "suitable for screening in theaters."[5]

9.    Within 10 days after receipt of the Notice of Availability, Tele Munchen was obligated to pay 75% of the $3 million fee to Weinstein Global. Under the Assignment, in turn,

---

[4]    *See* Distribution Agreement, p. 1 ("Term") (defining "Outside NOD Date").
[5]    *Id.* Exhibit 1 ("Delivery Materials"), item B.2.

3

the Notice of Availability triggered the "Bonded Delivery Procedures" set forth in Article 2 of Exhibit A to the Assignment. The Assignment further provided that once "Bonded Delivery" has been completed, Tele Munchen is obligated to pay $2,250,000 to Union Bank within ten days.[6] Bonded Delivery also triggers a number of other obligations of Tele Munchen under the CW Contracts.

10. Thus, Weinstein Global's delivery of the Notice of Availability by the Outside NOD Date—December 31, 2108—was a condition precedent to Tele Munchen's payment obligations under both the Distribution Agreement and the Assignment.

11. As of the filing of this Motion, the Outside NOD Date has passed, and the Debtors have not provided the Notice of Availability. As explained below, the Debtors failure to deliver a timely Notice of Availability has resulted in a failure of this condition precedent, which entitles Tele Munchen to terminate the CW Contracts.

12. The Distribution Agreement provides that if Weinstein Global fails to deliver the Notice of Availability by the Outside NOD Date, Tele Munchen may terminate the Distribution Agreement. Tele Munchen must advise Weinstein Global of its intention to do so within ten days (that is, within ten days of December 31, 2018—or no later than January 10, 2019).

13. But for the automatic stay imposed by 11 U.S.C.§ 362, Tele Munchen would send an unconditional notice of termination to Weinstein Global immediately.

---

[6]    *See* Distribution Agreement, p. 2 "(Payment and Allocation of Guarantee") (75% of $3 million guarantee due within 10 days after delivery of "initial Materials"); Assignment p.1, Recital B(3) ($2,250,000 due within 10 days of Bonded Delivery; *id.* Exhibit 2 ("Bonded Delivery" means, in part, delivery of Notice of Availability to Distributor of specified materials).

14.     The effect of terminating the Distribution Agreement is to cancel all of Tele Munchen's rights and obligations with respect to *The Current War* and to entitle Tele Munchen to a return of all funds previously paid to Weinstein Global.[7]

15.     The Debtors may contend that they duly sent to Tele Munchen a Notice of Availability, dated March 19, 2018 (the "March NOA"). But that contention is meritless for at least two reasons. First, the March NOA included several cost items not provided for in any of the CW Contracts or in the past practice between Tele Munchen and the Debtors. Tele Munchen promptly advised the Debtors of those defects in the March NOA.

16.     Second, and more important, *Tele Munchen has been advised that portions of The Current War have been re-shot and re-edited.* In other words, *The Current War* in its final form is not available today. It follows that any "Notice of Availability," sent ten months ago and purporting to make available a print "suitable for digital screening in theaters," could not possibly be effective.

17.     As more fully explained in the Objection, Tele Munchen would never have entered into the CW Contracts if it had known of the looming Harvey Weinstein scandal. Tele Munchen believes that it was fraudulently induced to enter into the CW Contracts and that, because the scandal has eviscerated the value of films bearing the Weinstein name, there has been a complete failure of consideration. But those arguments aside, the Debtors' inability to deliver a timely Notice of Availability relieves Tele Munchen of its obligations under the CW Contracts. Tele Munchen bargained for a fixed deadline by which the Notice of Availability would be delivered and has now been deprived of the benefit of that bargain. Thus, immediate

---

[7]     Distribution Agreement, Exhibit 2, 1(B). Tele Munchen paid $600,000 to Weinstein Global before the Harvey Weinstein scandal broke.

IMPAC 6035194v.2

relief from the automatic stay is appropriate to permit Tele Munchen to terminate the CW

Contracts, in accordance with the terms of the Distribution Agreement.

## RELIEF REQUESTED

18.    This Motion seeks the entry of an order granting relief from the automatic stay

under 11 U.S.C. § 362(d)(1) *nunc pro tunc* to January 3, 2019 so that Tele Munchen can

immediately give notice of termination to the Debtors pursuant to the CW Contracts and to

terminate the CW Contracts.  Further, to the extent relief from the automatic stay is required to

permit Tele Munchen to send a notice of termination of the CW Contracts to any other party,

including Union Bank or Lantern, Tele Munchen also seeks relief from the automatic stay to

send such notices.

## BASIS FOR RELIEF

A.    **Tele Munchen Is Entitled to Relief from the Automatic Stay to Terminate the CW Contracts Under § 362(d).**

19.    Section 362(d)(1) provides that a court shall, upon request of a party in interest

and after notice and a hearing, grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1).

"Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause

based on the totality of the circumstances in each particular case." *Baldino v. Wilson (In re*

*Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (citation omitted).

20.    "It is well settled that the Bankruptcy Code neither enlarges the rights of a debtor

under a contract, nor prevents the termination of a contract by its own terms." *In re Carroll*, 903

F.2d 1266, 1271 (9th Cir. 1990) (quotation and citation omitted); *accord Folger Adam Sec., Inc.*

*v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 267 (3d Cir. 2000) (noting the "fundamental

principle of the Code that the estate succeeds only to the nature and rights of the property interest

that the debtor possessed pre-petition") (quotation and citation omitted).

IMPAC 6035194v.2

21.    Moreover, in determining whether cause exists to grant relief from the stay, courts have considered the legislative history of Section 362, which provides, in pertinent part, that "[g]enerally, proceedings . . . involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Rabin*, 53 B.R. 529, 530-531 (Bankr. D.N.J. 1985) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., p. 34344 (1977)).

22.    Here, cause exists to grant Tele Munchen relief from the stay to immediately terminate the CW Contracts because the Debtors are in material and substantial breach due to their failure to satisfy a condition precedent under the CW Contracts. This breach has occurred postpetition.

23.    As explained in *Folger Adam Sec., supra,* the estates' rights under the CW Contracts are no greater than the pre-petition Debtors. Pre-petition, the Debtors were obligated to deliver a valid Notice of Availability no later than December 31, 2018. Nothing in the Bankruptcy Code extends that deadline post-petition, or absolves the Debtors' failure to meet it. Absent the automatic stay, Tele Munchen would have an absolute right to send a notice of termination to the Debtors. The Court should lift the automatic stay to permit Tele Munchen to send that notice immediately, and for the reasons set forth below, to make it effective *nunc pro tunc*.

24.    In light of the continuing prejudice to Tele Munchen, it is respectfully requested that the stay of any order granting this Motion under Fed. R. Bankr. P. 4001(a)(3) be waived.

**B.    Relief from the Automatic Stay Should Be Granted *Nunc Pro Tunc* to January 3, 2019.**

25.    Tele Munchen intends to send a termination notice to the Debtors contemporaneously with the filing of this Motion.[8]  To ensure that any untimely Notice of Availability does not undo the effectiveness of the termination notices that Tele Munchen intends to send, the relief requested in this Motion should be granted *nunc pro tunc* to the day that it is filed.

26.    Although this Motion does not arise in the context of the rejection of a lease pursuant to section 365(c), the case law permitting nunc pro tunc rejection of leases provides helpful guidance to the relief sought here.   In particular, courts have authorized retroactive rejection of executory contracts and unexpired leases based on the equities of the circumstances. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr D Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *In re Fleming Cos*, 304 B.R. 85, 96 (Bankr D Del. 2003) (stating that rejection has been allowed *nunc pro tunc* to the date of the motion or the date the premises were surrendered).   *See also Thinking Machines Corp. v. Mellon Financial Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (finding that, "[i]n the section 365 context, this means that bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation").

27.    Moreover, courts that have permitted retroactive rejection generally have permitted rejection of an executory contract or unexpired lease to be effective as of the date on which the nondebtor party to the executory contract or unexpired lease was given definitive

---

[8]    The termination notice will state that it is subject to the Court's approval of this Motion.

notice of the debtor's intent to reject. *See, e.g.*, *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006); *In re Loewen Group Intl, Inc.*, Case No. 99-1244 (NW) (Bankr. D. Del. Aug. 18, 2000) (authorizing rejection of a nonresidential real property lease effective as of the date of the filing of the rejection motion); *In re Imperial Home Decor Group, Inc.*, Case No. 00-19 (MFW) (Bankr. D. Del. Feb. 25, 2000) (authorizing rejection *nunc pro tunc* of car lease as of the date the car was returned to the lessor).

28.    The Debtors are receiving unequivocal notice of Tele Munchen's intention to terminate the CW Contracts, both through the Motion and through the notices of termination to be provided therewith.  More importantly, the Debtors failure to satisfy the condition precedent of providing a timely Notice of Availability was solely within their control.  If the order is not given *nunc pro tunc* effect, arguably any termination notice subsequently sent by Tele Munchen would not be timely (that is, not within ten days after the Outside NOD Date).  Thus, the equities here overwhelming favor granting the Motion on a *nunc pro tunc* basis.

## NOTICE

29.    Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the Debtors; (iii) counsel for Lantern; (iv) counsel for the Official Committee of Unsecured Creditors; (v) counsel for the DIP Lenders; (vi) counsel for Union Bank; and (vii) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedures.  Tele Munchen respectfully submits no other or further notice need be provided.

IMPAC 6035194v.2

**WHEREFORE**, Tele Munchen respectfully requests that the Court enter an order, substantially in the form attached hereto, (i) granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) *nunc pro tunc* to January 3, 2019 so Tele Munchen can give notice of termination of the CW Contracts to the Debtors and terminate the CW Contracts, (ii) to the extent necessary, granting relief from the automatic stay under 11 U.S.C. § 362(d)(1) *nunc pro tunc* to January 3, 2019 so Tele Munchen can give notice of termination of the CW Contracts to any other entity and (ii) granting Tele Munchen such other and further relief as is just and proper.

Dated: January 3, 2019
      Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*/s/ Jeremy W. Ryan*
Jeremy W. Ryan (DE Bar No. 4057)
R. Stephen McNeill (DE Bar No. 5210)
D. Ryan Slaugh (DE Bar No. 6325)
1313 N. Market Street, Sixth Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
      rmcneill@potteranderson.com
      rslaugh@potteranderson.com

-and-

**VALLE MAKOFF LLP**
Jeffrey B. Valle, Esq.
Peter Clapp, Esq.
11911 San Vicente Blvd., Suite 324
Los Angeles, CA 90049
Telephone: (310) 476-0300
Email: jvalle@vallemakoff.com

*Counsel to Tele Munchen Fernsch GmbH & Co.*
*Produktionsgesellschaft*

IMPAC 6035194v.2