## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
                                                  :
In re:                                            :      Chapter 11
                                                  :
The Weinstein Company Holdings LLC, et al.,       :      Case No. 18-10601 (MFW)
                                                  :
              Debtors.                            :      (Jointly Administered)
                                                  :
                                                  :      Re: Docket Nos. 846, 1664, 1695, 1724, 1771
                                                  :      & 1939
                                                  :
------------------------------------------------- x
                                                  :
Lantern Entertainment LLC,                        :
                                                  :
              Plaintiff,                          :
                                                  :
                                                  :      Adv. Pro. No. 18-50924 (MFW)
   v.                                             :
                                                  :      Re: Adv. Pro. Docket Nos. 1, 6, 7, 8, 10, 11
                                                  :
Bruce Cohen Productions, and Bruce Cohen,         :
                                                  :
              Defendants.                         :
------------------------------------------------- x
```

**DECLARATION OF IRWIN REITER IN SUPPORT OMNIBUS OBJECTION OF
LANTERN ENTERTAINMENT LLC TO (I) SUPPLEMENTAL OBJECTION AND
JOINT MOTION OF SLP CONTRACT COUNTERPARTIES TO CLARIFY SALE
ORDER; (II) MOTION OF EXECUTORY CONTRACT COUNTERPARTIES FOR
ORDER CONFIRMING THAT COUNTERPARTIES' AGREEMENTS HAVE
BEEN DESIGNATED BY LANTERN FOR ASSUMPTION AND ASSIGNMENT; AND
(III) THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' (A) OBJECTION
TO SUPPLEMENTAL NOTICE OF FILING OF LIST OF ASSUMED
CONTRACTS PURSUANT TO SALE ORDER AND (B) JOINDER TO THE
MOTION OF EXECUTORY CONTRACT COUNTERPARTIES FOR ORDER
CONFIRMING THAT COUNTERPARTIES' AGREEMENTS HAVE BEEN
<u>DESIGNATED BY LANTERN FOR ASSUMPTION AND ASSIGNMENT</u>**

I, Irwin Reiter, pursuant to section 1746 of title 28 of the United States Code,

hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am over 18 and competent to testify. I am currently the Executive Vice President for Accounting and Financial Reporting for Lantern Entertainment LLC ("Lantern Entertainment"), the purchaser of substantially all of the assets of The Weinstein Company Holdings LLC ("TWC" and, collectively with its affiliated debtors and debtors in possession, the "Debtors"), in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). I held the same position within TWC prior to its filing for bankruptcy. I submit this declaration (the "Declaration") in support of the *Omnibus Objection of Lantern Entertainment LLC to (I) Supplemental Objection and Joint Motion of SLP Contract Counterparties to Clarify Sale Order; (II) Motion of Executory Contract Counterparties For Order Confirming That Counterparties' Agreements Have Been Designated by Lantern for Assumption and Assignment; and (III) The Official Committee of Unsecured Creditors' (A) Objection to Supplemental Notice of Filing of List of Assumed Contracts Pursuant to Sale Order and (B) Joinder to the Motion of Executory Contract Counterparties for Order Confirming That Counterparties' Agreements Have Been Designated by Lantern for Assumption and Assignment* (the "Objection"), which is being filed contemporaneously with this Declaration. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of relevant documents, my knowledge of the Debtors' operations and financial condition, based on discussions with other employees of Lantern Entertainment, or information provided to me. If I were called upon to testify, I could and would testify to each of the facts set forth herein.

2.      In my capacity as the supervisor of TWC's Participations Department, I had primary responsibility to review talent work-for-hire Talent Agreements[1] and related reports, such as the agreements entered into with the Talent Parties. As such, I am familiar with how

---

[1]      Capitalized terms not otherwise defined in this Declaration shall have the meaning given to them in the Objection.

TWC structured each film or television project, which is similar to how other studios in the industry structure their projects. Prior to working at TWC, I worked in a similar capacity at Miramax Film Corp. Based on my experience and my conversations with other former TWC employees, the following describes well-settled industry practice.

3.    With respect to TWC's projects, TWC typically would establish one or more special purpose vehicles for each project. TWC would do so for a variety of reasons, including (a) for tax purposes, (b) to provide structure to the financing of the film, (c) to keep films separated to avoid cross-collateralization and accounting issues, (d) to provide uniformity for administration and ownership, (e) limit the liability of the owner of the film, and (f) for labor reasons, such as the separation of union and non-union workers. Each special purpose vehicle would maintain its own books, have its own assets and liabilities, and have separate taxing, accounting, and production lending. In my experience, this process is employed throughout the industry to keep separate the production-related activities from the acquisition- and distribution-related activities and to maintain the independence and autonomy of each separate production.

4.    Along with the creation of each set of special purpose entities, the entities would enter into a series of agreements that, in the end, would result in TWC taking title of the particular film for which the special purpose entity was created. Taking *Silver Linings Playbook* ("<u>SLP</u>") as an example, TWC used or formed the following special purpose entities: Team Players, LLC, SLPTWC Films, LLC, and SLP Films, Inc. Further, with respect to SLP, the following agreements were entered into to govern the production, distribution, and exploitation of the film.

      a.    *Letter Agreement* dated as of May 24, 2007, between The Weinstein Company LLC ("TWC") and Matthew Quick ("Quick") with respect to the option to purchase any and all rights of whatsoever kind and nature solely and exclusively

3

in and to the book written by Quick entitled "The Silver Linings Playbook" ("Book"), subject to certain reserved rights ("Letter Agreement"). A true and correct copy of the Letter Agreement is attached hereto as Exhibit 1.

b. Letter dated June 30, 2009 extending the "Option Period" under the Letter Agreement. A true and correct copy of this letter is attached hereto as Exhibit 2.

c. Letter dated December 22, 2010 evidencing payment of the "Purchase Price" under the Letter Agreement. A true and correct copy of this letter is attached hereto as Exhibit 3.

d. *Writing Agreement* dated as of October 16, 2007, between Team Players LLC ("TP") and Kanzeon Corp. ("Lender") f/s/o Russell (collectively, Lender and Russell may hereinafter be referred to as "Writer") for Writer's writing services in connection with the Picture based on the Book, with a signed Certificate of Authorship. A true and correct copy of the Writing Agreement is attached hereto as Exhibit 4.

e. *One Picture Theatrical Motion Picture License Agreement* dated as of September 13, 2011, between TP and TWC with respect to the license of certain rights in and to the Picture (the "TP License Agreement"). A true and correct copy of the TP License Agreement is attached hereto as Exhibit 5.

f. *One Picture Theatrical Motion Picture License Agreement* dated as of September 14, 2011, between TWC and SLPTWC Films, LLC ("SLPTWC") with respect to the license of certain rights in and to the Picture. A true and correct copy of this agreement is attached hereto as Exhibit 6.

g. *Exclusive License Agreement* dated as of September 14, 2011 between Weinstein Global Film Corp. and SLPTWC (the "Foreign License Back Agreement"). Under the Foreign License Back Agreement, SLPTWC Films, LLC licenses all foreign rights to exploit SLP to Weinstein Global Film Corp. A true and correct copy of the Foreign License Back Agreement is attached hereto as Exhibit 7.

h. *Exclusive License Agreement* dated as of September 14, 2011 between SLPTWC Films, LLC and TWC (the "Domestic License Back Agreement"). Under the Domestic License Back Agreement, SLPTWC Films, LLC licenses all domestic rights to exploit SLP to TWC. A true and correct copy of the Domestic License Back Agreement is attached as Exhibit 8.

i. *Production Services Agreement* dated as of September 15, 2011 between SLPTWC and SLP Films, Inc. (the "Production Services Agreement"). A true and correct copy of this agreement is attached hereto as Exhibit 9.

5.    The chain of title for SLP can be summarized as follows:

- **Step 1:**  TWC acquires the rights to a particular piece of art, for example, a novel or screenplay.  With respect to SLP, this was accomplished through the Letter Agreement.  *See* <u>Exhibits 1 through 3</u>.

- **Step 2:**  TWC uses one or more existing (or forms new) special purpose vehicles for a specific project.  In the case of SLP—Team Players LLC, SLPTWC Films LLP, and SLP Films, Inc.

- **Step 3:**  TWC's special purpose vehicle enters into an agreement with a party to write the script related to the film or project.  For SLP, Team Players LLC contracted with Kanzeon Corp. for the services of David O. Russell to author the script for the film.  *See* <u>Exhibit 4</u>.

- **Step 4:**  TWC enters into one or more license agreements that provides the special purpose vehicle the "right to produce, distribute and otherwise exploit" the production at issue, but that "[a]ll other rights in and to the Underlying Literary Material are hereby reserved by [TWC as] Licensor." *See* <u>Exhibits 5 & 6</u>.  In the case of SLP, Team Players, LLC entered into the TP License Agreement, where Team Players, LLC licensed to TWC the rights to produce, distribute and exploit SLP on September 13, 2011.  *See* <u>Exhibit 5</u>.  The next day, on September 14, 2011, TWC granted SLPTWC Films, LLC a more extensive license.  *See* <u>Exhibit 6</u>.  This license covers all distribution and exploitation of SLP.

- **Step 5:**  Also on September 14, 2011, SLPTWC Films, LLC grants an exclusive license for SLP to a TWC affiliate, Weinstein Global Film Corp. ("<u>WGFC</u>")—a Debtor in these cases—that governs the foreign distribution and exploitation of SLP.  *See* <u>Exhibit 7</u>.  In addition, SLPTWC Films, LLC grants an exclusive license for SLP to TWC—a Debtor in these cases—that governs the domestic distribution and exploitation of SLP.  *See* <u>Exhibit 8</u>.  In sum, TWC and WGFC, two Debtors in these Chapter 11 Cases, have exclusive, permanent licenses for the foreign and domestic distribution of SLP.

- **Step 6:**  TWC enters into a production services agreement with the special purpose vehicle, which provides for the return or reversion of the rights granted under the license back to TWC.  For SLP, SLPTWC Films, LLC (as "Producer") entered into the Production Services Agreement with SLP Films, Inc. (as "Contractor").  *See* <u>Exhibit 9</u>.  Similar to the Talent Agreements, the Production Services Agreement is a "work for hire" agreement, with the Producer and all successor and assigns owning all elements and components of the film.  *See id.* at § 2.1.  The Production Services Agreement is also the agreement through which the funding for

5

the film is funneled and which governs the production of the film as a whole.

- **Step 7:** The special purpose entities enter into talent agreements with various parties, including directors, actors, producers, and the like. For SLP, SLP Films, Inc., which was a mere "Contractor" under the Production Services Agreement, entered into those agreements. *See* Talent Agreements attached to Objection as Exhibit B.

- **Step 8:** The film is produced, distributed, and exploited. With respect to SLP, the film was first distributed in 2012.

- **Step 9:** After a period, typically two or three years, the special purpose vehicles are dissolved unless there is a reason to keep the entities open; e.g., for tax purposes.[2]

- **Step 10:** SLPTWC Films, LLC holds all rights to the films, including those held by SLP Films, Inc., its "Contractor" under the Production Services Agreement. SLPTWC Films, LLC licensed those rights to Debtors TWC and WGFC through the Domestic License Back Agreement the Foreign License Back Agreement, respectively. Therefore, the Debtors held all rights to SLP on the Petition Date.

6.    TWC undertook the same or a substantially similar process with respect to the other films at issue.

7.    The films relevant to the Talent Party Motions and the Summary Judgment Pleadings were completed and distributed between five and seven years ago, and the special purpose entities created for each of those films were dissolved. Upon dissolution, consistent with the process described above, all rights were taken back or transferred to Debtor TWC or another Debtor or Debtor-Affiliate.

---

[2]    SLPTWC Films, LLC and SLP Films, Inc., both entities were dissolved. *See* Exhibit 10.

6

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

January 7, 2019

Irwin Reiter

7