# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re: :  Chapter 11
: 
: Case No. 18-10601 (MFW)
The Weinstein Company Holdings LLC, *et al.*, :
: (Jointly Administered)
Debtors.[1] :
: **Re: Docket No. 1930, 1933**
. **Obj. Deadline: Jan. 17, 2019 at 4:00 p.m. (ET)**
: **Hr'g Date: Jan. 28, 2018 at 11:30 a.m. (ET)**
---------------------------------------------------------------- x

## JOINT OBJECTION OF DEBTORS AND LANTERN ENTERTAINMENT LLC TO MOTION OF TELE MUNCHEN FOR THE EXPEDITED ENTRY OF AN ORDER: GRANTING RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1) *NUNC PRO TUNC* TO JANUARY 3, 2019 TO ALLOW PROVISION OF NOTICE OF TERMINATION AND TERMINATION OF ITS AGREEMENTS WITH THE DEBTORS

The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") and Lantern Entertainment LLC ("**Lantern**") respectfully submit this joint objection (the "**Objection**") to the *Motion of Tele Munchen for the Expedited Entry of an Order: Granting Relief from the Automatic Stay Under 11 U.S.C. § 362(d)(1) Nunc Pro Tunc to January 3, 2019 to Allow Provision of Notice of Termination and Termination of its Agreements with the Debtors* [Docket No. 1930] (the "**Motion**")[2] and represent as follows:

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

[2] Capitalized terms that are used herein and not otherwise defined shall have the meanings given to them in the Motion.

## PRELIMINARY STATEMENT[3]

1. By the Motion, Tele Munchen seeks relief from the automatic stay to deliver a notice of termination and to terminate the Tele Munchen Agreements despite the fact that (i) it is not permitted to terminate such agreements under a related NOA absent the consent of the Agent and the Completion Guarantor, (ii) the Debtors and the Completion Guarantor delivered the Notice of Availability to Tele Munchen several months before the Delivery Date, (iii) it has not sought to resolve the disputes relating to delivery of the film entitled "The Current War" (the "**Film**") through the Bonded Delivery Procedures and arbitration as required by the NOA, and (iv) other factors weigh against granting Tele Munchen relief from the automatic stay. For the reasons set forth below, Tele Munchen has failed to establish that cause exists to lift the automatic stay, and thus, the Motion should be denied.

2. First, Tele Munchen's contention that cause exists to lift the automatic stay on the grounds that it allegedly has a right to terminate the Tele Munchen Agreements because the Debtors are in breach of the Tele Munchen Agreements as a result of their failure to deliver the Film by the Delivery Date is without merit. As discussed in further detail below, under the terms of the NOA, Tele Munchen is not permitted to terminate the Distribution Agreement absent the consent of the Agent and the Completion Guarantor, and those parties have not consented to the termination of the Distribution Agreement. In addition, the Debtors and the Completion Guarantor delivered the Notice of Availability with respect to the Film to Tele Munchen in March 2018 and April 2018, respectively—in each case, several months before the Delivery Date of December 31, 2018. Moreover, while Tele Munchen asserts that it disputed certain cost items reflected in the materials order form referenced in the Notice of Availability, Tele

---

[3] Capitalized terms that are used in this preliminary statement and not otherwise defined shall have the meanings give them elsewhere in this Objection.

2

Munchen fails to acknowledge that (i) it did not provide either a Delivery Notice or an objection notice to the Debtors and the Completion Guarantor within the time period specified in the NOA and (ii) it has not sought to initiate arbitration to resolve any disputes relating to delivery of the Film as required by the terms of the NOA. Tele Munchen's Motion is an improper attempt to avoid the dispute resolution procedures contained in the NOA and to seek to terminate the Tele Munchen Agreements without any valid legal basis.

3. Second, if the Court were to grant Tele Munchen relief from the automatic stay, the Debtors and Lantern would be prejudiced. Based on the statements made in Tele Munchen's Motion, it appears likely that Tele Munchen would seek to assert a claim in the amount of at least $600,000 against the Debtors' estates. In addition, if the automatic stay is lifted and Tele Munchen is permitted to seek to terminate the Tele Munchen Agreements, Lantern could be deprived of valuable rights that it contracted to acquire (and for which consideration was paid) despite the fact that Tele Munchen currently has no right to terminate the Tele Munchen Agreements.

4. Finally, Tele Munchen has not established that it would suffer any hardship if relief from the automatic stay is not granted, or that it is likely to succeed in terminating the Tele Munchen Agreements. To the extent that Tele Munchen wishes to dispute whether the Film was delivered by the Delivery Date, it will continue to have the right to initiate arbitration proceedings under the terms of the NOA. The Debtors and Lantern submit, however, that Tele Munchen will not be able to establish that it has a right to terminate the Tele Munchen Agreements. The Debtors delivered a Notice of Availability in March 2018, and to the extent that delivery of the Film has not been completed, it is a consequence of Tele Munchen's own actions.

5. For the foregoing reasons and as more fully set forth in this Objection, the Debtors and Lantern respectfully request that the Court deny the Motion.

## BACKGROUND

### A. The Tele Munchen Agreements and Delivery of the Film

6. On or about November 23, 2015, Debtor Weinstein Global Film Corp. ("**WGFC**") and Tele Munchen entered into that certain International Distribution Deal Memo (as amended on December 10, 2016, the "**Distribution Agreement**"), pursuant to which Tele Munchen agreed to distribute the Film in Germany and certain other countries.[4] Under the terms of the Distribution Agreement, WGFC was obligated to provide a notice of availability of "Initial Materials" to Tele Munchen by no later than December 31, 2018 (the "**Delivery Date**").[5]

7. On or about February 1, 2017, WGFC, Tele Munchen, Film Finances, Inc. (the "**Completion Guarantor**") and MUFG Union Bank, N.A. (the "**Agent**") entered into a Notice of Assignment (the "**NOA**"),[6] pursuant to which WGFC assigned to the Agent the right to receive payments made by Tele Munchen to WGFC under the Distribution Agreement.[7] In addition, the NOA established certain (i) "**Bonded Delivery Procedures**" (as defined in the NOA) with respect to the Film[8] and (ii) triggers and conditions with respect to the payment obligations of Tele Munchen relating to the Film.[9] As between the Distribution Agreement and the NOA, the

---

[4] A copy of the Distribution Agreement is attached hereto as **Exhibit 1**.

[5] *See* Distribution Agreement, p. 1 ("Licensor's notice of availability to [Tele Munchen] for the "Initial Materials" ... shall occur no later than December 31, 2018.").

[6] A copy of the NOA is attached hereto as **Exhibit 2**.

[7] In connection with the sale of the Debtors' assets to Lantern, Union Bank assigned its interest in the NOA to Sun Trust Bank.

[8] *See* Exhibit A to NOA.

[9] *See* Exhibit A to NOA at B.1 – 3.

NOA is controlling for the duration of the NOA.[10]

8. Under section 2.17 of the NOA, Tele Munchen is not permitted to terminate the Distribution Agreement while the NOA remains valid, absent the consent of the Agent and the Completion Guarantor. The Agent and the Completion Guarantor have not consented to the termination of the Distribution Agreement.

9. As set forth in Exhibit A to the NOA, the Bonded Delivery Procedures provide that either WGFC or the Completion Guarantor were required to send a notice of availability to Tele Munchen by no later than the Delivery Date, subject to certain potential extensions.[11] In the event of a dispute as to whether a notice of availability had been effected, WGFC or Tele Munchen were required to give the Completion Guarantor notice of such dispute, and thereafter, the Completion Guarantor had the right to provide Tele Munchen with a notice of availability.[12]

10. On March 19, 2018, WGFC delivered a notice of availability (the "**WGFC Notice of Availibility**") to Tele Munchen in accordance with the terms of the Tele Munchen Agreements and the NOA.[13] Following delivery of the Notice of Availability, Tele Munchen sought to dispute certain costs reflected in the materials order form referenced in the WGFC Notice of Availability.[14]

11. On April 9, 2018, as a result of the issues raised by Tele Munchen with respect to the WGFC Notice of Availability, the Completion Guarantor also delivered a notice of

---

[10] See NOA ¶ 10.1.
[11] The Debtors and Lantern reserve the right to argue that the Delivery Date should be extended under the terms of the NOA.
[12] See Exhibit A to NOA § 2.1(A)(a).
[13] A copy of the WGFC Notice of Availability is attached hereto as **Exhibit 3**.
[14] More recently, Tele Munchen has also sought to assert the existence of certain other disputes relating to the Notice of Availability (as defined below) and delivery of the Film, including that the Film has been purportedly re-shot and re-edited, and thus, the Notice of Availability was not effective. See Motion ¶ 16.

availability (the "**CG Notice of Availability**" and, together with the WGFC Notice of Availability, the "**Notice of Availability**").[15]

12. On May 8, 2018, in order to address the issues raised by Tele Munchen regarding the cost items in the materials order form, the Completion Guarantor sent a letter to Tele Munchen offering to have the Film materials delivered to Tele Munchen upon payment of whatever amount Tele Munchen believed was reasonable.[16] Thereafter, on July 18, 2018, the Completion Guarantor sent an additional letter to Tele Munchen indicating that the Completion Guarantor had taken certain other actions to facilitate delivery of the Film to Tele Munchen, including having the materials manufactured and QC'd (as contemplated by the NOA), and requested that Tele Munchen advise the Completion Guarantor of where the materials should be sent.[17] Tele Munchen did not respond to the May 8 Letter or the June 18 Letter.

13. Under section 2.3(b) of Exhibit A to the NOA, Bonded Delivery was deemed to have occurred if Tele Munchen failed to give either a "Delivery Notice" (as defined in the NOA) or an objection notice within a specified period of time.[18] Notwithstanding the issues raised by Tele Munchen regarding certain cost items and delivery of the Film, Tele Munchen did not deliver either a Delivery Notice or an objection notice.

14. In addition, under section 6 of the NOA and section 2.4 of Exhibit A to the NOA, certain disputes relating to the Film and Tele Munchen's distribution rights, including disputes regarding delivery of the Film to Tele Munchen, are subject to mandatory binding arbitration.[19] As of the date of the filing of this Objection, Tele Munchen has not submitted an arbitration

---

[15] A copy of the CG Notice of Availability is attached hereto as **Exhibit 4**.

[16] *See* Letter to Jeffrey B. Valle, dated as of May 8, 2018, attached hereto as **Exhibit 6** (the "**May 8 Letter**").

[17] *See* Letter to Jeffrey B. Valle, dated as of June 18, 2018, attached hereto as **Exhibit 5** (the "**June 18 Letter**").

[18] *See* Exhibit A to NOA § 2.3(b).

[19] *See* NOA § 6; Exhibit A to NOA § 2.4.

demand with respect to the alleged disputes regarding the Notice of Availability and delivery of the Film.

### B. The Sale and the Tele Munchen Agreements

15. On March 19, 2018 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

16. On March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 8] (the "**Sale Motion**"). Pursuant to the Sale Motion, the Debtors sought, among other things, the Court's approval of their proposed bid procedures and authorization to sell substantially all of their assets.

17. On April 6, 2018, the Court entered the bid procedures order [Docket No. 190] (the "**Bid Procedures Order**"). Pursuant to the Bid Procedures Order, the Debtors filed and served lists of contracts and leases that would potentially be assumed and assigned under Bankruptcy Code section 365 in connection with the sale of the Debtors' assets (collectively, the "**Assumption Lists**").[20] The Distribution Agreement and certain related agreements (collectively, the "**Tele Munchen Agreements**") were listed on each of the Assumption Lists.

---

[20] *See* Docket Nos. 216, 282, and 860.

7

18. On April 30, 2018, Tele Munchen filed its limited objection to the Sale Motion [Docket No. 574] (the "**Limited Objection**"). By the Limited Objection, Tele Munchen asserted that (i) the scandal involving Harvey Weinstein's misconduct destroyed the value of the Film and the Tele Munchen Agreements, and (ii) as a result, the Tele Munchen Agreements are voidable under various theories, including fraudulent inducement and failure of consideration.[21] Tele Munchen further asserted that, if the Debtors assume the Tele Munchen Agreements and assign such agreements to Lantern in connection with the Sale, Lantern should take the Tele Munchen Agreements subject to the rights, claims and defenses of Tele Munchen.[22]

19. On May 9, 2018, the Court entered an order [Docket No. 846] (the "**Sale Order**"), approving the sale to Lantern as contemplated in that certain Asset Purchase Agreement, dated as of March 19, 2018, by and among the Debtors and Lantern (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**APA**").

20. On July 11, 2018, the Court approved the second amendment to the APA (the "**Second Amendment**"), which set forth the terms of the settlement among the Debtors, Lantern, and the Committee that enabled the sale transaction to close. The sale to Lantern closed on July 13, 2018 [Docket No. 1247].

21. On November 8, 2018, Lantern filed the *Supplemental Notice of Filing of List of Assumed Contracts Pursuant to Sale Order [Docket No. 846]* [Docket No. 1695] (the "**Final Assumption List**"), which identified certain contracts being added to the list of contracts to be assumed and assigned to Lantern in connection with the sale of the Debtors' assets. The Tele Munchen Agreements were listed on the Final Assumption List.

---

[21] *See* Limited Objection ¶¶ 4-8, 13-16.
[22] *See* Limited Objection ¶¶ 16, 17-24.

22. On January 3, 2019, Tele Munchen filed the Motion seeking relief from the automatic stay to give notice of termination of the Tele Munchen Agreements to the Debtors and to terminate the Tele Munchen Agreements.

## OBJECTION

### I. TELE MUNCHEN HAS NOT MET THE STANDARD FOR RELIEF FROM THE AUTOMATIC STAY

23. Tele Munchen has not established that cause exists to lift the automatic stay under Bankruptcy Code section 362(d). The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *In re Aleris Int'l, Inc.*, 456 B.R. 35, 46 (Bankr. D. Del. 2011) (internal quotations and citations omitted). A court may "grant relief from the stay ... for cause." 11 U.S.C. § 362(d)(1). Whether there is "cause" for relief is evaluated based on the totality of the circumstances. *In re Aleris Int'l*, 456 B.R. at 47. Here, Tele Munchen has failed to demonstrate adequate cause for relief from the automatic stay, and thus, the Motion should be denied for at least four reasons.

24. First, as its sole basis for asserting that cause exists to lift the automatic stay, Tele Munchen asserts that it has a right to terminate the Tele Munchen Agreements because the Debtors allegedly are in breach of such agreements as a result of their failure to deliver the Film to Tele Munchen by the Delivery Date. This assertion must be rejected. As an initial matter, under section 2.17 of the NOA, Tele Munchen is not permitted to terminate the Distribution Agreement, absent the consent of the Agent and the Completion Guarantor. The Agent and the Completion Guarantor have not consented to the termination of the Distribution Agreement. Accordingly, Tele Munchen is not permitted to deliver a notice of termination of the Distribution Agreement or to terminate the Distribution Agreement under the terms of the NOA. In addition, as discussed above, the Debtors and the Completion Guarantor delivered the Notice of

Availability to Tele Munchen in March 2018 and April 2018, respectively—in each case, several months prior to the Delivery Date. After Tele Munchen sought to dispute certain cost items contained in the Notice of Availability, Tele Munchen failed to respond to offers to resolve the concerns that it raised with respect to certain costs relating to delivery of the Film, including the offer made by the Completion Guarantor. In addition, Tele Munchen failed to provide the Debtors and the Completion Guarantor with either a Delivery Notice or an objection notice within the time period specified in the NOA. Tele Munchen should not be permitted to argue that the Debtors failed to deliver the Film by the Delivery Date when any such failure was a consequence of Tele Munchen's attempts to prevent delivery.[23] Finally, under the terms of the NOA, any disputes relating to the delivery of the Film are subject to resolution through mandatory binding arbitration.[24] To date, Tele Munchen has not delivered an arbitration demand. Instead, Tele Munchen has filed the Motion in an attempt to sidestep the dispute resolution mechanisms under the NOA and evade its obligations under the NOA and the Tele Munchen Agreements. In short, unless the Agent and the Completion Guarantor consent and/or an arbitrator determines that the Debtors did not validly deliver the Film prior to the Delivery Date, Tele Munchen has no right to terminate the Tele Munchen Agreements, and the relief requested by the Motion should be denied.

25. Second, if the Court were to grant the relief requested by the Motion, the Debtors and Lantern would be prejudiced. In the Motion, Tele Munchen asserts that the termination of

---

[23] Furthermore, Tele Munchen's contention that the Debtors could not have delivered the Film in March 2018 because it has been re-shot and re-edited since that time is without merit. The additional work that has been done on the Film relates solely to a typical "director's cut" and has not impacted the Notice of Availability or delivery. The Film was in final form at the time the Debtors and the Completion Guarantor delivered the Notice of Availability and remains available in that form.

[24] *See Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1157 (3d Cir. 1989) (enforcing arbitration clause with respect to certain non-core matters); *Official Comm. of Unsecured Creditors v. Kemeny (In re TEU Holdings, Inc.)*, 287 B.R. 26, 36-37 (Bankr. D. Del. 2002) (same).

the Distribution Agreement would entitle Tele Munchen to the return of approximately $600,000 that Tele Munchen previously paid to WGFC with respect to the Film.[25] While the Debtors reject any assertion that they would be required to return such funds, the Debtors anticipate that Tele Munchen would file a claim against the Debtors' estates for such amount or otherwise seek to recover such funds from the Debtors' estates if it is granted relief from the automatic stay to deliver a notice of termination of the Tele Munchen Agreements and to terminate such agreements. In addition, if the Court were to grant the relief requested by Tele Munchen, Lantern could be deprived of valuable contract rights that it expected to acquire despite the fact that Tele Munchen does not currently have any right to terminate the Tele Munchen Agreements.

26. Third, Tele Munchen has not shown that it would suffer any hardship if it is not granted relief from the automatic stay. If Tele Munchen believes that the Film was not delivered by the Delivery Date, it will still have the right to submit an arbitration demand in accordance with the terms of the NOA in order to resolve any disputes among the parties regarding the delivery of the Film and/or its right to terminate the Tele Munchen Agreements.

27. Finally, the Debtors and Lantern submit that Tele Munchen is unlikely to succeed on the merits if it seeks to dispute delivery of the Film and/or to terminate the Tele Munchen Agreements. The Debtors and the Completion Guarantor delivered the Notice of Availability to Tele Munchen in March 2018 and April 2018, respectively, and to the extent that delivery of the Film has not been completed, it is a consequence of Tele Munchen's efforts to prevent delivery.

28. Based on the foregoing, Tele Munchen has failed to satisfy its burden of demonstrating that cause exists to lift the automatic stay under Bankruptcy Code section 362(d). Accordingly, the Motion should be denied.

---

[25] *See* Motion ¶ 14.

11

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors and Lantern respectfully request that the Court deny the Motion and grant such other and further relief as is just, proper and equitable.

Dated:  January 17, 2019
        Wilmington, Delaware

/s/ Zachary I. Shapiro
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651 7700
Facsimile:    (302) 651-7701

- and -

**CRAVATH, SWAINE & MOORE LLP**
Paul H. Zumbro (admitted *pro hac vice*)
George E. Zobitz (admitted *pro hac vice*)
Karin A. DeMasi (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for the Debtors*

/s/ Evelyn J. Meltzer
**PEPPER HAMILTON LLP**
David B. Stratton, Esq. (No. 960)
Evelyn J. Meltzer, Esq. (No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 777-6500
Email: stratton@pepperlaw.com
       meltzere@pepperlaw.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Meredith A. Lahaie, Esq. (admitted *pro hac vice*)
Michael S. Stamer, Esq. (admitted *pro hac vice*)
One Bryant Park
Bank Of America Tower
New York, NY 10036
Email: mlahaie@akingump.com
       mstamer@akingump.com

*Attorneys for Lantern Entertainment, LLC*