**EXHIBIT E**

**Deposition Transcript Excerpts**

| Citation | Text |
|---|---|
| Jarvis Deposition Tr. at 41:20-23 | "Q: And in that call Opus, through one of those representatives, stated the terms that they wanted, correct." <br><br> "A: That is correct." |
| Jarvis Deposition Tr. at 49:1-3 | "Q: So at that point you believe we have an agreement?" <br><br> "A: Yes." |
| Jarvis Deposition Tr. at 50:13-20 | "Q: And therefore, at the time the email exchange on July 12 occurred where they said, 'Lantern is fine with your terms,' and there was an agreement, you understood that no finalized written document signed by all parties was going to be entered into before the close of business on Friday, July 13, correct?" <br><br> "A: That is correct." |
| Jarvis Deposition Tr. at 51:5-17 | "Q: The—Mr. Burke says to Mr. Zaks and to you and to your counsel, Ms. Hunt, 'yes, Lantern wants to proceed.' See that?" <br><br> "A: Yes." <br><br> "Q: And you received that email at that time?" <br><br> "A: I did, yes." <br><br> "Q: So as of Tuesday, July 17, 2018, after the bankruptcy closing, you understood that this was going to proceed and that Lantern was going to acquire the Waco debt, correct?" <br><br> "A: They're going to assume the Waco debt, correct." |
| Jarvis Deposition Tr. at 56: 3-25; 57:1-13 | "Q: We're on the email dated July 19, 2018 from Mr. Kinas to Ms. Grassgreen, and Mr. Kinas says (reading): <br><br> 'Now that the sale the Lantern has closed, Lantern and Opus are having preliminary discussions regarding the assumption of the debt on the Waco production loan.' <br><br> Did you read this about that time?" |

|  | "A: I did, yes."<br><br>"Q: And did you believe it was true that the sale to Lantern had closed?"<br><br>"A: Yes."<br><br>"Q: And you understood that there were discussions going on about how the assumption would be documented."<br><br>"A: That is correct."<br><br>"Q: And at that point in time, did it ever— was it ever discussed by anybody at Opus to your knowledge that there was no agreement with Lantern"<br><br>"A: Between ourselves and Lantern, did we ever discuss that there was no---"<br><br>"Q: Correct."<br><br>"A: No."<br><br>"Q: And did anybody at that time in Opus or your counsel, to the extent it's not an attorney-client privileged communication, say to you, you know, you have this oral agreement, but that's not enough?  And we're free to do whatever we want."<br><br>"A: No, I don't believe we had that discussion."<br><br>"Q: And was there ever a discussion at that point that we could – Opus contemplated taking the position that there was no agreement with Lantern as of July 18 and therefore Opus could get the loan assumed by somebody else and give the difference to the creditors' committee?"<br><br>"A: No, we had not had that discussion, no." |
|---|---|

| | |
|---|---|
| Jarvis Deposition Tr. at 87:1-7 | "A: Page 2, the 'Lantern is fine with your terms'?"<br><br>"Q: Right."<br><br>"A: Yes."<br><br>"Q: That's the writing that reflects the terms of the oral agreement you're describing?"<br><br>"A: That is correct." |
| Jarvis Deposition Tr. at 92:2-9 | "Q: Okay. And the goal was for Cravath to help move this along, along with Lantern, get the documents, you know, the assumption documents finalized, executed, and the assumption to take hold and take place, and you had in your mind that would be consistent with the agreement reached in July in particular on July 12, 2018 with Lantern."<br><br>"A: Yes." |
| Jarvis Deposition Tr. at 95:13-23; 96:1 | "Q: So on November 7 Mr. Kinas says (reading):<br><br>'Opus has continued liens on the assets of TWC Waco and Weinstein which were purchased by Lantern.'<br><br>Do you see that?"<br><br>"A: I do, yes."<br><br>"Q: So did you understand from that that what he was saying is that Lantern purchased the assets of TWC?"<br><br>"A: Yes, subject to our satisfaction."<br><br>"Q: He doesn't say that though?"<br><br>"A: He does not say that, no, correct."<br><br>"Q: And did you correct Mr. Kinas?"<br><br>"A: No." |

| | |
|---|---|
| Jarvis Deposition Tr. at 96:2-7 | "Q: And are you aware of any writing from anybody on the Opus side after Exhibit 20 clarifying or somehow modifying Mr. Kinas's statement that Opus has continuing liens on the assets of TWC Waco and Weinstein which were not purchased by Lantern?"<br><br>"A: No." |
| Darsa Deposition Tr. at 25:15-25 | "Q: What was the oral agreement on July 12th that was subsequently confirmed in writing? Tell me the terms of that agreement."<br><br>"A: Sure. The agreement was that Opus Bank was okay to get the loan assigned—the Opus loan assigned to Lantern Entertainment under the condition that Lantern Entertainment would make the loan current. And by making the loan current, it means paying off the accrued interest, its [de]fault interest, and the legal fees." |
| Darsa Deposition Tr. at 30:21-25, 31:1-25, 32:1-25 | "Q: So now I am asking for what is the written agreement of July 18, 2018?"<br><br>"A: So the writing agreement—and I am going to repeat myself, but the writing agreement is that Opus bank is okay to have Lantern Entertainment as a credit [counterparty]. In other words, you have the loan assigned from the previous borrower to Lantern Entertainment under the condition that Lantern Entertainment makes the loan current and pays the $250,000. So yes, it is written here."<br><br>"Q: So we have—by 'written here,' you are referring to an email from Mr. Burke on behalf of Lantern that was sent Thursday, July 12, 2019 at 6:40 p.m. that says 'Lantern is fine with your terms,' right?"<br><br>"A: Correct."<br><br>"Q: And by 'written here,' you also mean another email from Mr. Burke that was sent on Friday, July 13, 2018 at 12:12 a.m. saying |

| | |
|---|---|
| | 'Please advise when the docs will be ready. Also please send invoice for 250 K payment.'<br><br>Is there an email included as part of Exhibit 5 where Opus bank says 'We have a deal' or something to that effect?"<br><br>"A: So in general, when someone disagrees with someone else in email, they will state it. And you have the answer from Andrew Jarvis from July 13th that basically provides the detail on the $250,000 payment." |
| Darsa Deposition Tr. at 45:2-14 | "Q: As of July 12, 2018, did you know how much was owed to Opus Bank?"<br><br>"A: Yes."<br><br>"Q: How much was owed?"<br><br>"A: $5.4 million."<br><br>"Q: How did you find that out?"<br><br>"A: So first of all, if you look at the bankruptcy, at the APA from March 21, there is the definition for the project level debt, and Waco is included. The Opus Bank loan is included, and it is included for $5.4 million. So it was everywhere, and we knew that the principal was $5.4 million." |
| Darsa Deposition Tr. at 51:3-13 | "A: So on July 12th, we had the agreement from Opus to get the loan assigned, which was key. They needed to agree to have Lantern Entertainment as a counter-party. That was the one thing that matters.<br><br>They said, 'Yes, we are fine financing Lantern Entertainment on that loan.' And they said, 'But you need to make it current.' That is the agreement we had on July 12th. And that is really what we needed. Then we needed to move and implement the July 12th agreement." |
| Darsa Deposition Tr. at 52:20-25, 53:1-3 | "A: So the agreement was that the Opus Bank loan would be assigned to Lantern—well, could be assigned to Lantern Entertainment |

| | |
|---|---|
| | and so that Opus Bank would be okay to have Lantern Entertainment as a counter-party, to the extent that the loan was made current on the past-due interest and on the legal fees that were also past due on that day." |
| Darsa Deposition Tr. at 55:12-16 | "A: Lantern agreed with lender to become obligor of the debt related to the Waco project, not to negotiate. That was really—the point of the agreement was to have that agreed and then to move into finalizing the documentation." |
| Darsa Deposition Tr. at 68:10-13[40] | "A: We had an agreement from Opus Bank to get the loan assigned under the condition that we pay the $250,000, and so we intended to implement that agreement." |

---

[40] *See also* Jarvis Deposition Tr. at 48:4-25, 73:11-14, 80:7-15, 86:11-20, 93:6-13, 108:5-12.