IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
                                                             :    Case No. 18-10601 (MFW)
The Weinstein Company Holdings LLC, *et al*.,                :
                                                             :    (Jointly Administered)
Debtors.[1]                                                  :
                                                             :    **Re: D.I. No. 2110**
------------------------------------------------------------ x

**OBJECTION OF SPYGLASS MEDIA GROUP, LLC (f/k/a LANTERN
ENTERTAINMENT LLC) TO MOTION OF Y MOVIE, LLC, Y THEATRICAL, LLC,
YFE HOLDINGS, INC., OA3, LLC, AND RMF, LLC**

Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC) ("Spyglass"), by and through its undersigned counsel, DLA Piper LLP (US), hereby submits this objection (the "Objection") to the *Motion of Y Movie, LLC, Y Theatrical, LLC, YFE Holdings, Inc., OA3, LLC, and RMF, LLC* (collectively, "Yucaipa") *to (a) Enforce Sale Order, (b) Confirm Assumption of Liabilities By Lantern Entertainment LLC Pursuant to Asset Purchase Agreement, and (c) Compel Performance by Lantern Entertainment LLC Under Asset Purchase Agreement* [ECF No. 2110] (the "Motion") and respectfully states as follows:

**PRELIMINARY STATEMENT[2]**

1.  Spyglass (and this Court) have been forced to face a series of baseless attempts to deny Spyglass the primary benefit of purchasing assets through section 363 of the Bankruptcy Code, *i.e.*, the delivery of assets free and clear of claims. Yucaipa's Motion is yet another such

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] Capitalized terms used in the Preliminary Statement are defined elsewhere in the Objection.

EAST\165285057.7

attempt. Over the past several months, Spyglass has been forced to devote time, effort and funds to respond to these claims, all of which could have been more properly expended in turning around the business it acquired. Spyglass should be able to enjoy the benefit of the bargain it struck when it paid $289 million to purchase the Debtors' assets free and clear of all liens, claims and encumbrances (other than Permitted Liens, as defined in the APA). Yucaipa's Motion, which flies in the face of the very heart of that bargain, should not be countenanced.

2.  Yucaipa's argument is so convoluted that its attorneys felt compelled to submit a flow chart to articulate it. *See* Mot., Ex. F. Yucaipa essentially is arguing that its concededly non-executory Investment Agreements constitute Purchased Assets under the APA because of the way in which the definitions of Assumed Contracts, Title Rights, Excluded Contracts, Assumed Liabilities, Excluded Liabilities, Disputed Contracts, and Excluded Assets work together. Its argument is not only difficult to follow, it is just plain wrong.

3.  *First*, Yucaipa states no less than ten times in the Motion that "the Investment Agreements were non-executory when these Chapter 11 Cases . . . commenced."[3] At the same time, Yucaipa asserts that Spyglass assumed the Investment Agreements.[4] These arguments are not only contradictory, but also impossible under the language of the APA. Yucaipa ignores the fact that all Assumed Contracts were chosen from the list of Available Contracts, which, by definition, could only include executory contracts. Therefore, the Investment Agreements could never constitute Assumed Contracts.

4.  *Second,* the Investment Agreements also could never constitute Assumed Contracts under the APA because they are agreements to make a loan, or extend other debt financing or

---

[3] *See* Mot. ¶¶ 3, 64, 67, 72, 74, 78, 85 & 89.
[4] *Id.* ¶¶ Preamble, 3 & 92.

2

financial accommodations, that are not capable of assumption and assignment under section 365(c)(2) of the Bankruptcy Code.

5.      *Third*, as the Investment Agreements contain Liabilities arising under Contracts that are not Assumed Contracts, they are Excluded Liabilities under section 2.4(f) of the APA, and Spyglass did not purchase them.

6.      *Fourth*, the Investment Agreements between Yucaipa, as "Financier," and TWC, are debt instruments that constitute Excluded Liabilities under section 2.4(c) of the APA, and Spyglass did not purchase them. Indeed, there was no business justification for Spyglass, which purchased the Debtors' assets free and clear, to willingly take on TWC's debt obligations to Yucaipa.

7.      In sum, notwithstanding the complexity of Yucaipa's argument, it is simply and easily refuted for the reasons set forth in this Objection. The Motion is nothing more than Yucaipa's effort to bootstrap the Court's rulings in the Talent Order regarding the non-executory nature of certain contracts to force Spyglass to pay amounts it does not owe. The Talent Order is not applicable to the Investment Agreements, which are Excluded Liabilities under the APA. The Motion should be denied.

## BACKGROUND

8.      On March 19, 2018 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed these chapter 11 cases to consummate a sale of substantially all of their assets under section 363 of title 11 of the United States Code (the "Bankruptcy Code"). *See* D.I. 7, ¶ 4. The Debtors filed a bid procedures and sale motion [D.I. No. 8] on the Petition Date, with Spyglass serving as the stalking horse bidder for substantially all of the Debtors' assets.

3

9.      Spyglass's offer remained the highest and best offer received by the Debtors for their assets even after the post-petition sale process. *See* D.I. No. 653.

10.     This Court approved the sale of substantially all of the Debtors' assets (the "Sale") to Spyglass on May 9, 2018 [D.I. 846] (the "Sale Order") for $289 million pursuant to that certain *Asset Purchase Agreement by and Among The Weinstein Company Holdings LLC, the Persons Listed on Schedule 1 Hereto and Lantern Entertainment LLC*, dated as of March 19, 2018 [D.I. 1201] (as subsequently amended, the "APA").

11.     Prior to the Petition Date, certain of the Debtors were party to various financing agreements with Yucaipa (collectively, the "Investment Agreements") relating to a number of the Debtors' film projects.[5]

12.     The Investment Agreements are largely identical contracts by which Yucaipa, defined as "Financier," agreed to contribute a certain amount of money to various films being produced by Debtor The Weinstein Company LLC ("TWC") or its affiliate, in exchange for a portion of the gross receipts earned by TWC upon exploitation of such films.[6] ███████████████████████████████████████████████████████████[7] The contracts further provide:

---

[5]     The Investment Agreements are attached to the *Declaration of Robert P. Bermingham in Support of Investment Counterparties' Motion to (A) Enforce Sale Order, (B) Confirm Assumption of Liabilities by Lantern Entertainment LLC Pursuant to Asset Purchase Agreement, and (C) Compel Performance by Lantern Entertainment LLC Under Asset Purchase Agreement* [ECF Nos. 2111 (sealed) & 2112] (the "Bermingham Declaration") and pertain to the following films: *The Upside; August Osage County; Crouching Tiger Hidden Dragon; Lawless; Mandela – Long Walk to Freedom; Our Idiot Brother; Philomena; Quartet; The Details; The Giver; The Iron Lady; and The Sapphires* (collectively, the "Films").

[6]     While the Investment Agreements are largely identical, not all terms are contained in each agreement. Attached as **Exhibit A** hereto is a chart identifying the applicable debt characteristics of each Investment Agreement. For ease of reference, Spyglass cites to the *Quartet* agreement attached as Exhibit H-1 to the Bermingham Declaration, unless otherwise indicated. *See* Bermingham Decl., Ex. H-1 ¶¶ Preamble & 1-2, 4.

[7]     *Id.* ¶ 3.



13.     Yucaipa states that, as of the Petition Date, it did not have any material performance obligations left to perform under the Investment Agreements because it had paid all required amounts.[12] As such, the Investment Agreements are non-executory contracts.[13]

14.     Although the Investment Agreements initially were listed on assumption schedule filed in connection with the Sale Order, Spyglass subsequently listed certain of them as Excluded

---

[8]     *Id.* ¶ 5.

[9]     *Id.* ¶ 9.

[10]    *Id.* ¶ 11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Bermingham Decl., Ex. A-1 ¶¶ 2(d) & 2(e), Ex. M at 1 (Omnibus Amendment).

[11]    Bermingham Decl., Ex. H-1 ¶ 11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ , *see, e.g.*, Ex. G-3 ¶ 4 (*Philomena*) & Ex. J-2 ¶ 4 (*The Giver*), and ▮▮▮▮▮▮▮▮▮ , *see* Ex. G-3 ¶ 5 & Ex. A thereto (*Philomena*); Ex. J-2 ¶ 5 & Ex. A thereto (*The Giver*).

[12]    *See* Mot. ¶¶ 22, 72, 73; Bermingham Decl. ¶¶ 5, 8, 10, 15, 19, 25, 27, 29, 33, 36 & 38.

[13]    *See* Mot. ¶¶ 3, 64, 67, 72, 74, 78, 85, 89.

Contracts on its final contract designation list [ECF No. 1695] filed on November 8, 2018 (the "November 8th Notice") in an abundance of caution.

15.     On January 14, 2019, this Court determined in an unrelated matter that, among other things, a certain talent contract was not executory and Spyglass had purchased the Debtors' rights to the contract under section 363 of the Bankruptcy Code. The order implementing that bench ruling was entered on January 23, 2019 [D.I. No. 2013] (the "Talent Order").

16.     On February 20, 2019, Yucaipa filed the Motion.

**OBJECTION**

**I. Spyglass Did Not Purchase the Investment Agreements and Is Not Responsible for Payments to Yucaipa Thereunder.**

    **A.     The Investment Agreements are not Purchased Assets.**

        (i)     *The Investment Agreements are not Assumed Contracts.*

17.     Yucaipa's argument hinges upon the fact that its admittedly non-executory Investment Agreements were included on the list of contracts to be assumed and assigned that was filed before the closing of the Sale. "Therefore," because all Assumed Contracts are Purchased Assets, "each Investment Agreement was explicitly identified as a Purchased Asset." Mot. ¶ 8. This argument fails from the outset, however, because Assumed Contracts must be executory.

18.     Section 2.8(a) of the APA, entitled "Available Contracts," defines "Available Contracts" as the "list [set forth on section 2.8(a) of the Disclosure Schedules to the APA] of all *executory* Contracts relating to the Business or the Purchased Assets to which one or more of Seller Parties are party" (emphasis added). The same section specifies that "Buyer . . . shall designate in writing *which Available Contracts from Section 2.8(a) of the Disclosure Schedule . . .* that Buyer wishes to 'assume' (the 'Assumed Contracts')." *Id.* (emphasis added). It is clear from the APA

that in order for an agreement to be an Available Contract, and therefore an Assumed Contract, it must be executory.[14]

19. Yucaipa admits that each of the Investment Agreements was non-executory as of the Petition Date,[15] which occurred almost two months before the Sale was approved by the Court and four months before the Sale closed. Under section 365 of the Bankruptcy Code, a debtor is permitted only to assume executory contracts and unexpired leases.[16] Because the Investment Agreements were not executory as of the Petition Date, they were not "available" to serve as Available Contracts subject to assumption and assignment as Assumed Contracts under the APA.[17] Further, a purchaser of a debtor's assets may also assume a debtor's liabilities. When a purchaser makes such a commitment, it is clearly delineated in the purchase agreement as "assumed liabilities." The Assumed Liabilities (as defined in the APA) in this instance are no different. Spyglass did not expressly assume the liabilities under the Investment Agreements pursuant to the APA.

---

[14] The fact that the word "executory" was added as part of the Second Amendment to the APA is of no moment. Paragraph 9 of the Second Amendment to the APA expressly provides that no third party may rely on anything in the amendment as an admission "as to the correct interpretation of any provision of the [APA] (including any provision that is amended hereby [*i.e*., section 2.8(a)])" or that Spyglass "has breached or failed to perform or comply with any of its covenants or agreements" in the APA. *See* Mot., Ex. D (Second Amendment to APA).

[15] *See* Mot. ¶ 3 ("[Yucaipa] fully satisfied [its] obligations under the Investment Agreements prior to the Petition Date, thereby rendering the Investment Agreements non-executory when these Chapter 11 Cases . . . commenced.").

[16] 11 U.S.C. § 365(a) ("[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."); *In re Exide Techs.*, 378 B.R. 762, 765 (Bankr. D. Del. 2007) ("Section 365 allows debtors to assume or reject an executory contract, but provides no such option for a non-executory contract.").

[17] Ironically, Yucaipa relies on the same "executory" language to contend that its Investment Agreements cannot be Excluded Contracts, and therefore Excluded Assets, because they are non-executory. *See* Mot. ¶¶ 10-12, 17 (citing section 2.8(a) of the APA, which provides in relevant part that "[a]ll executory Contracts of the Seller Parties that are listed on Section 2.8(a) of the Disclosure Schedule [i.e., Available Contracts] as of the Closing Date and which Buyer does not designate in writing for assumption shall not be considered Assumed Contracts or Purchased Assets and shall automatically be deemed 'Excluded Contracts' . . ."). Nevertheless, in an abundance of caution, Spyglass listed certain of the Investment Agreements as Excluded Contracts on the November 8th Notice.

      (ii)    *The Investment Agreements do not constitute Title Rights.*

20. Yucaipa argues further that the Investment Agreements also constitute "Title Rights" under the APA, because the definition of Title Rights includes "the Assumed Contracts and all other contract rights with respect to each Covered Title" under the APA.[18] However, as discussed above, since the Investment Agreements are not Assumed Contracts, they are not Title Rights.[19] Indeed, Yucaipa has no interest in the Covered Titles beyond its financial investment.

**B.    The Investment Agreements Are Not Capable of Assumption and Assignment to Spyglass Under Section 365(c)(2) of the Bankruptcy Code.**

21. Even assuming the Investment Agreements were executory (which Yucaipa concedes they are not), the Investment Agreements would constitute contracts to make a loan or extend financial accommodations to TWC (or, in a couple of cases, its affiliates) with respect to each applicable Film. As such, they are not capable of being assumed and assigned to Spyglass and are not Assumed Contracts.

22. Section 365(c)(2) of the Bankruptcy Code prohibits a debtor from assuming and assigning an executory contract "if such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." Thus, "there is no way that a debtor can assume [a financing] agreement." *Watts v. Pa. Housing Fin. Co.* (*In re Watts*), 876 F.2d 1090, 1095 (3d Cir. 1989).

23. Courts narrowly construe the terms "loan," "debt financing," and "financial accommodation." *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 392 (Bankr. D. Del. 2011).

---

[18]    *See* APA, Ex. A-13.

[19]    As discussed in section C(i) below, there also can be no argument that the Investment Agreements are "contract rights" purchased by Spyglass. To the contrary, only obligations allegedly owed to Yucaipa remain under the Investment Agreements, and those obligations are Excluded Liabilities for which Spyglass is not responsible.

The term "financial accommodations" refers to "'the extension of money or credit to accommodate another.'" *Id.* (quoting *Nat'l Bank v. Thomas B. Hamilton Co.* (*In re Thomas B. Hamilton Co.*), 969 F.2d 1013, 1019 (11th Cir. 1992)). According to the legislative history of this provision, the "[c]haracterization of contracts to make a loan, or extend other debt financing or financial accommodations, is limited to the extension of cash or a line of credit and is not intended to embrace ordinary leases or contracts to provide goods or services with payments to be made over time." *In re Best Prod. Co., Inc.*, 210 B.R. 714, 717 (Bankr. E.D. Va. 1997) (quoting 124 Cong. Rec. H11089 (daily ed. Sep. 28, 1978) (statement of Rep. Edwards)).

24. Courts look to the contract as a whole, not specific clauses, to determine whether a contract is a financial accommodation. *See In re United Airlines, Inc.*, 368 F.3d 720, 724 (7th Cir. 2004). Therefore, the test is whether the principal purpose of the contract is to "to extend financing to or guarantee the financial obligations of the debtor." *Sportsman's Warehouse*, 457 B.R. at 393 (quoting *In re Thomas B. Hamilton Co.*, 969 F.2d at 1019)). A contract for which the "extension of credit is only incidental to or a part of a larger arrangement involving the debtor" will not be treated under 365(c)(2) of the Bankruptcy Code. *In re Thomas B. Hamilton Co.*, 969 F.2d at 1019. Furthermore, "in nearly every instance where a financial accommodation has been found to exist, the debtor has been directly or secondarily liable for the debt incurred." *Best Prod.*, 210 B.R. at 717.

25. Taking a look at the Investment Agreements in question, Yucaipa, as Financier, is contributing a substantial amount to TWC toward each respective Film's budget. Under each Investment Agreement, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

██████████████████████████████████████████████████

████████████████████████████████████████

26. The Investment Agreements each constitute a financial accommodation in both form and substance under section 365(c)(2) of the Bankruptcy Code. The principal purpose of each Investment Agreement was to extend financing to assist in the production of the Films, clearly intending to benefit the Debtors. The extension of this financing is not incidental to the contracts, but rather is the primary purpose, ████████████████████████████████████████████

████████████████████████████████████████████

27. Accordingly, the Investment Agreements could never constitute Assumed Contracts for the additional reason that they are agreements to make a loan, or extend other debt financing or financial accommodations, that are not capable of assumption and assignment under section 365(c)(2) of the Bankruptcy Code.

### C. The Investment Agreements Are Excluded Liabilities Under the APA.

(i) *The Investment Agreements contain Liabilities arising under a Contract that is not an Assumed Contract.*

28. Yucaipa contends that Spyglass assumed all post-closing liabilities arising out of every Assumed Contract, including the Investment Agreements, under section 2.3 of the APA, entitled "Assumption of Liabilities."[20] The Investment Agreements are not Assumed Liabilities, however.

---

[20] Section 2.3 of the APA provides, in relevant part, that "Buyer shall (a) assume from the Seller Parties and thereafter pay, perform or discharge when due those Liabilities of the Seller Parties arising out of the operation of the Purchased Assets (including the Assumed Contracts) for periods following the Closing Date, except for those Liabilities that are Excluded Liabilities."

10

29. Section 2.4(f) of the APA specifically lists as Excluded Liabilities "all Liabilities[21] arising under [a] Contract[22] that is not Assumed Contract." Because the Investment Agreements are not Assumed Contracts, any obligations arising thereunder also were not assumed by Spyglass.[23]

       (ii)    *The Investment Agreements Are Debt Instruments.*

30. Section 2.4(c) of the APA lists as Excluded Liabilities "any indebtedness for borrowed money, bank loans or facilities or any other debt instruments."

31. As discussed above, the Investment Agreements are loan agreements between Yucaipa, as Financier, and TWC. The agreements provide for the repayment of Financier's loan through a portion of the gross receipts received by TWC from each applicable film ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Spyglass did not intend to take on TWC's debt obligations to Yucaipa and specifically excluded them under section 2.4(c) of the APA.

*[Remainder of page intentionally left blank.]*

---

[21] "Liabilities" is defined as "all claims, demands, expenses, commitments and obligations (whether accrued or not, known or unknown, disclosed or undisclosed, matured or unmatured, fixed or contingent, asserted or unasserted, liquidated or unliquidated, arising prior to, at or after the commencement of any bankruptcy proceeding) of or against the Seller Parties or any of the Purchased Assets." APA, Ex. A-8.

[22] "Contract" is defined as "any written contract, lease, license, agreement, arrangement, understanding, commitment, instrument, guarantee, undertaking, bid or proposal." APA, Ex. A-4.

[23] This is different from the Talent Order, which reiterates, consistent with section 2.4(j) of the APA, that post-closing Participations generally are payable under Purchased Assets to the talent parties (subject to the terms of the APA).

## **CONCLUSION**

**WHEREFORE**, Spyglass respectfully requests that the Court enter an order denying the Motion and granting such other relief as may be just and appropriate.

Dated: March 19, 2019
Wilmington, Delaware

 */s/ R. Craig Martin*
R. Craig Martin (DE No. 5032)
Maris J. Kandestin (DE No. 5294)
DLA PIPER LLP (US)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email: craig.martin@dlapiper.com
          maris.kandestin@dlapiper.com

 - and -

Thomas R. Califano (admitted *pro hac vice*)
Rachel Ehrlich Albanese (admitted *pro hac vice*)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 335-4500
Facsimile: (212) 335-4501
Email: thomas.califano@dlapiper.com
          rachel.albanese@dlapiper.com

*Counsel to Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC)*