IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*, | : | Case No. 18-10601 (MFW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |
| | : | Hearing Date: June 4, 2019 at 2:00 p.m. (ET) |
| | | Obj. Deadline: May 28, 2019 at 4:00 p.m. (ET) |

------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER (I) CONVERTING
THEIR CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF
THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request entry of an order, pursuant to section 1112(a) of the Bankruptcy Code, Rule 1017(f) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") converting their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2. On March 19, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108.  On March 28, 2018, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases (the "**Committee**").  As of this date, no trustee or examiner has been appointed in these chapter 11 cases.  The Debtors' chapter 11 cases have been jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

3. On March 20, 2018, the Court entered an order [Docket No. 70] authorizing the Debtors to Retain Epiq Bankruptcy Solutions, LLC ("**Epiq**") as claims and noticing agent.

4. Additional information on the Debtors' business and capital structure, as well as a description of the events precipitating the filing of these cases, is set forth in the *Declaration of Robert Del Genio in Support of First Day Relief* [Docket No. 7] (the "**First Day Declaration**").[2]

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the First Day Declaration.

## SPECIFIC BACKGROUND

### A.    Prepetition Allegations and Aftermath

5.    As set forth more fully in the First Day Declaration, in October 2017, media reports were published detailing alleged sexual harassment, assault and other alleged misconduct by the Debtors' co-founder and then co-chairman, Harvey Weinstein ("**Mr. Weinstein**"). Mr. Weinstein's employment with the Debtors was terminated on October 8, 2017, and he resigned from the Debtors' Board of Representatives (the "**Board**") on October 17, 2017.

6.    The revelations of October 2017 resulted in severe harm to the Debtors' businesses. As detailed in the First Day Declaration, (i) the Debtors' business relationships immediately soured and even long-time partners refused to do business with the Debtors; (ii) more than half of the Board resigned; (iii) approximately 25% of the Debtors full-time employees left; and (iv) the Debtors became the subject of numerous lawsuits.

7.    From October 2017 through March 2018, the Company engaged in a series of failed, public attempts to complete an out-of-court sale or reorganization. After those efforts proved unsuccessful, on March 19, 2018, the Company filed for bankruptcy protection.

### B.    The Sale to Lantern

8.    That same day the Debtors filed for bankruptcy protection, the Debtors entered into an Asset Purchase Agreement (the "**APA**") for the sale of substantially all of the Debtors' assets to Lantern Entertainment LLC ("**Lantern**"), an affiliate of Lantern Capital.[3]

---

[3] On March 19, 2019, Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC) filed the *Notice of Legal Name Change* [Docket No. 2201] identifying that Lantern changed its name with the Secretary of State for the State of Delaware to Spyglass Media Group, LLC. References to Lantern are now references to Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC) ("**Spyglass**").

9. On March 20, 2018, the Debtors filed a motion [Docket No. 8] (the "**Sale Motion**") seeking approval to sell substantially all of their assets to Lantern or the party making the "highest or otherwise best" offer.

10. On April 6, 2018, the Court entered an order approving the Debtors' proposed bidding procedures and designating Lantern as the stalking horse bidder [Docket No. 190] (the "**Bidding Procedures Order**"). Under the Bidding Procedures Order, the deadline for submitting Qualified Bids (as defined in the Bidding Procedures Order) was April 30, 2018.

11. By the bid deadline, the Debtors did not receive any other Qualified Bids for the sale of substantially all of their assets other than Lantern's stalking horse bid. As a result, on May 1, 2018, the Debtors cancelled the auction that had been scheduled for May 4, 2018, and declared Lantern's bid the winning bid. *See* Docket No. 653. Because Lantern's bid was the only Qualified Bid received by the bid deadline (other than certain credit bids for specific subsets of the Debtors' assets), the Debtors did not designate a backup bid.

12. On May 8, 2018, the Court approved the Sale Motion, and on May 9, 2018, the Court entered an order [Docket No. 846] (the "**Sale Order**") approving the sale of substantially all of the Debtors' assets (the "**Sale**") to Lantern.

C. **The APA Amendment**

13. Shortly after the Court entered the Sale Order, disputes arose between the Debtors and Lantern regarding certain terms of the APA. In addition, Lantern contended that the Debtors had breached various representations and warranties in the APA in material respects and accordingly that the closing conditions set forth in the APA had not been satisfied (and could not be satisfied). Lantern asserted that those alleged breaches constituted a "Material Adverse Effect" under the APA, excusing Lantern from closing the transactions. The Debtors advised the

Committee and the lenders under the Debtors' postpetition financing agreement (the "**DIP Lenders**") regarding the dispute.

14. For several weeks, the Debtors worked to resolve the dispute with Lantern consensually. On June 1, 2018, counsel for the Debtors sent an email to Lantern attaching a draft complaint and advised Lantern, as well as the Committee and the DIP Lenders, that the Debtors intended promptly to initiate an adversary proceeding against Lantern to force Lantern to close on the terms of the APA. After consultation with the Committee and the DIP Lenders, however, neither of whom supported filing the complaint at that time, the Debtors agreed not to file the complaint at that time and instead to continue discussions with Lantern in an effort to reach a consensual resolution.

15. As time passed, however, Lantern still refused to close without the Debtors making significant concessions. On June 20, 2018, following several rounds of negotiations, the parties arrived at a settlement agreement involving, among other things, a $23 million reduction in the purchase price. An important factor in the Debtors' decision to enter into the settlement was the need to ensure closing prior to the expiration of the parties' financing commitments, which was imminent and likely would have had the result that the transaction could *never* close and the Debtors would have been forced into liquidation.

16. On June 27, 2018, the Debtors filed a motion [Docket No. 1115] (the "**Motion to Amend**") seeking to amend the APA (as defined in the Motion to Amend) to, among other things, reduce the Cash Purchase Price (as defined in the APA), which the Court approved on July 11, 2018 [Docket No. 1220]. On July 13, 2018, the Sale closed (the "**Closing Date**"). *See* Docket No. 1247. On the Closing Date, the Debtors ceased business operations.

D.  **The Committee Settlement**

17.     In connection with resolving objections raised by the Committee to the Motion to Amend, the Debtors and the Committee agreed to, among other things, certain terms and conditions regarding the go forward administration of the Debtors' bankruptcy cases. Specifically, the Debtors and the Committee agreed that the Debtors would not seek to extend their exclusivity periods to file and solicit a chapter 11 plan, that the Board would be reconstituted, and that the Committee would take the lead role in formulating and drafting a chapter 11 plan.

18.     In accordance with that agreement, on the Closing Date, all members of the Board resigned other than Ivona Smith, who had joined the Board in April 2018 at the request of the Committee. Additionally, on August 7, 2018, two new, Committee-selected directors were appointed to the Board. At a meeting the same week, and in additional conversations thereafter, the Committee advised the Debtors that it would promptly work to formulate and draft a plan.

E.  **The Mediation Process**

19.     An important consideration in the formulation of a plan, however, was the treatment of two groups of legal claims: (a) claims asserted by individuals against the Debtors and certain of their former directors and officers (the "**Former Directors and Officers**") arising out of Mr. Weinstein's alleged misconduct (the "**Harassment Claims**"); and (b) claims the Debtors may have against the parties including (but not limited to) Former Directors and Officers (the "**D&O Claims**").

20.     After the Sale closed, the Committee informed the Debtors that they had conducted an investigation and analysis of the D&O Claims. The Debtors had not conducted their own independent investigation or analysis of such claims, principally because (a) until the

Closing Date, the Debtors had been primarily focused on consummating the Sale; and (b) except for Ms. Smith, all of the Debtors' Board members through the Closing Date had served on the Board prepetition.

21. After discussions with the Committee, and in consideration of the Committee's prior investigation and evaluation of the D&O Claims and the agreement between the Debtors and the Committee regarding the division of responsibilities for the post-Sale administration of the cases, including the Committee's lead role in formulating a chapter 11 plan, the Debtors agreed to confer standing to the Committee to investigate and, if the Committee deemed it appropriate, pursue and/or settle the D&O Claims. Accordingly, on November 6, 2018, the Debtors and the Committee filed a joint motion to confer such standing to the Committee [Docket No. 1668] (the "**Standing Motion**").

22. The Committee advised the Debtors that, in the Committee's judgment and based upon its investigation and analysis, it was advisable to pursue a global, mediated resolution of the D&O Claims together with the Harassment Claims. As has been publicly reported, throughout these chapter 11 cases, confidential mediation proceedings (the "**Mediation**") have taken place regarding, among other things, the Harassment Claims and the D&O Claims. Consistent with the Standing Motion, the Committee's representatives pursued a resolution of the D&O Claims in the Mediation on behalf of the estate. In the ten months following the closing of the Sale to Lantern, the parties to the Mediation have convened in-person group sessions on no fewer than five dates and have conducted extensive discussions and negotiations by telephone. To date, the Mediation has failed to produce a resolution.

23. While the Mediation was ongoing, the Debtors and the Committee adjourned the hearing on the Standing Motion for several months. On January 16, 2019, the Debtors advised

the parties to the Mediation that the estate was running out of funds and that, accordingly, the Debtors soon would be forced to withdraw their delegation of authority to the Committee and pursue a different course. On February 5, 2019, certain holders of Harassment Claims advised the parties that they had terminated their participation in the Mediation. On April 23, 2019, the Debtors withdrew the Standing Motion. *See* Docket No. 2322.

### F.     The D&O Claims

24.     As of the date hereof, the Debtors believe that the D&O Claims are among the few remaining assets of their estates that have significant potential value. The Debtors believe that putting themselves or their successor(s) in a position to pursue the D&O Claims is in their estates' and creditors' best interests. Accordingly, on May 1, 2019, the Debtors filed the *Debtors' Application Pursuant to 11 U.S.C. §§ 327(e) and 328(a) to Retain and Employ Bernstein Litowitz Berger & Grossmann, LLP as Special Litigation Counsel to the Debtors* Nunc Pro Tunc *to May 1, 2019* [Docket No. 2337] seeking to employ Bernstein Litowitz Berger & Grossmann LLP ("**BLBG**") under a contingency-fee arrangement, to continue to investigate, advise and consult on the D&O Claims, and, if requested by the Debtors or any successor in interest, to prosecute and/or settle such claims.

### G.     The Path Forward

25.     With no remaining operating business and mounting administrative costs, the Debtors have considered the alternatives for concluding these bankruptcy cases. But for the routine maintenance of the Debtors' chapter 11 cases, the Debtors believe that the primary remaining task for their estates is resolving the D&O Claims. Accordingly, and as referenced above, the Debtors have sought this Court's approval to retain BLBG, whom the Debtors believe is highly qualified to assist the Debtors and/or any chapter 7 trustee appointed in the chapter 7

cases to advise and consult on, and if so requested, prosecute and/or settle the D&O Claims. As the Debtors' principal remaining task is the pursuit of potential litigation, the Debtors believe that such task can be accomplished by a chapter 7 trustee and that the estates can do so without the expense and cost of a chapter 11 plan process.

26. Accordingly, after extensive review and analysis conducted by the Debtors and their professionals and advisors, in consultation with the Committee, the Debtors have determined that (i) the administrative costs associated with remaining in chapter 11 outweigh the benefits received therefrom, to the detriment of their estates and creditors, and (ii) conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code represents the value maximizing path forward for the Debtors' and their estates.

## RELIEF REQUESTED

27. By this Motion, pursuant to section 1112(a) of the Bankruptcy Code, Bankruptcy Rule 1017(f), and Local Rule 2002-1(f), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A**, converting the Debtors chapter 11 cases to cases under chapter 7 of the Bankruptcy Code effective as of the date an order is entered approving the conversion (the "**Conversion Date**").

28. The Debtors further request that the Court enter an order approving the following Procedures for the conversion of the Debtors' chapter 11 cases (the "**Conversion Procedures**"):

> (a) **Professional Fees.** To the extent applicable, professionals retained in the chapter 11 cases (excluding professionals retained in the ordinary course of business pursuant to the *Order Authorizing the Debtors to Employ and Compensate Professionals Utilized in the Ordinary Course of Business, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 253]) shall submit final fee applications (the "**Final Fee Applications**") in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and orders of this Court by no later than 14 days after the Conversion Date (the "**Final Fee Application Deadline**"). The Court will schedule a

hearing, at the Court's convenience, on such Final Fee Applications on or before the date that is 28 days after the Final Fee Application Deadline. All approved amounts owed for professionals' fees and expenses shall be paid (x) first, from each professional's retainer, to the extent such retainers exist; and thereafter (y) from the Debtors' chapter 7 estates.

(b) **The Committee**. On the Conversion Date, the Committee shall be immediately dissolved, and all professionals retained by the Committee shall be immediately discharged, with no further action required by the Debtors or the Committee.

(c) **Books and Records.** As soon as reasonably practicable, but in no event more than fourteen (14) days after the assumption of duties by the chapter 7 trustee, the Debtors shall turn over to the chapter 7 trustee the books and records of the Debtors in the Debtors' possession and control, as required by Bankruptcy Rule 1019(4). For purposes hereof, the Debtors may provide copies (including electronic copies) of such books and records to the chapter 7 trustee, or instructions for locating and accessing such books and records, and may retain copies of such books and records to the extent necessary to complete the reports required herein.

(d) **Lists and Schedules**. To the extent not already filed with the Court, within 14 days of the Conversion Date, the Debtors shall file the statements and schedules required by Bankruptcy Rules 1019(1)(A) and 1007(b).

(e) **Schedule of Unpaid Debts.** Within 14 days of the Conversion Date, the Debtors shall file a schedule of unpaid debts incurred after commencement of the Debtors' chapter 11 cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019(5).

(f) **Final Report**. Within thirty (30) days after the Conversion Date, the Debtors shall file and transmit to the chapter 7 trustee a final report and account in accordance with Bankruptcy Rule 1019(5)(A).

(g) **Claims**. Within 14 days of the Conversion Date, Epiq shall (i) forward to the Clerk of this Court an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF; (iii) docket a final claims register in the Debtors' chapter 11 cases; and (iv) box and transport all original claims to the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, PA

19154 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

**BASIS FOR RELIEF REQUESTED**

29. Section 1112(a) of the Bankruptcy Code provides that a debtor may convert a case to chapter 7 as a matter of right. *See* H.R. Rep. No. 95-595, 1st Sess. 405 (1977) ("Subdivision (a) gives the debtor an absolute right to convert a voluntarily commenced chapter 11 case in which the debtor remains in possession to a liquidation case."); S. Rep. No 95-989, 95th Cong., 2d Sess. 117 (1978) (same); *see also Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142 (5th Cir. 1988) (noting that "a debtor has the absolute right to convert [its] Chapter 11 case to a Chapter 7 case"); Sept. 27, 2017 Hr'g Tr. at 35:12-15, *In re Constellation Enters. LLC*, Case No. 16-11213 (CSS) (Bankr. D. Del. Sept. 27, 2017) ("I find and rule that the debtors have an absolute right to convert these [chapter 11] cases."). There are only three circumstances where a debtor is precluded from exercising that right: (a) the debtor is not a debtor in possession; (b) the case was originally commenced as an involuntary case under chapter 11; or (c) the case was converted to a case under chapter 11 other than at the debtor's request. 11 U.S.C. § 1112(a). None of those exceptions is applicable in this case. Therefore, the Debtors are entitled, as an absolute right, to convert these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

30. In addition, conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code is in the best interests of the Debtors' estates for at least three reasons. <u>First</u>, the Debtors have concluded that there is no longer enough liquidity in the estates to confirm a chapter 11 plan. The Debtors believe that continued delay will only further exhaust the limited assets of the Debtors' estates and increase the risk of unpaid administrative expense claims. <u>Second</u>, as noted above, the Debtors' sold substantially all of their assets and no longer maintain

an operating business that requires the benefits afforded by chapter 11. But for the routine case maintenance required to remain in chapter 11, the Debtors have no other material administrative tasks left to complete other than the administration of potential litigation claims, which can otherwise be effectively pursued by BLBG and a chapter 7 trustee without the Debtors remaining in chapter 11. <u>Third</u>, the Debtors believe conversion best positions the estates to pursue the D&O Claims. For a variety of reasons, including considerations of insurance limitations and timing considerations regarding the initiation of potential proceedings, the Debtors have concluded that conversion is the most effective course for maximizing recovery to the estates.

31. Based upon the foregoing, the Debtors submits that a chapter 7 trustee will be able to more efficiently and effectively bring these bankruptcy cases to their conclusion by winding down their estates and administering any potential litigation claims that the Debtors' estates may have, including the D&O Claims with the assistance and advice of BLBG.

32. Pursuant to Local Rule 2002-1(f)(xi), "[u]pon conversion of a chapter 11 case to a chapter 7 case, if there are more than 200 creditors, the claims agent appointed in the chapter 11 case shall . . . submit a termination order." Del. Bankr. L.R. 2002-1(f)(x). Accordingly, the Debtors request that the conversion order sought hereby also provide for the termination of Epiq's services as claims and noticing agent in this case.

33. Accordingly, the Debtors respectfully request that the Court enter an order converting these cases from chapter 11 to chapter 7 of the Bankruptcy Code

## **NOTICE**

34. The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the DIP Agent and the Pre-Petition Agent; (iv) counsel to Spyglass; (v) the New York Attorney General and the California Attorney General; (vi) the

Office of the United States Attorney for the District of Delaware; (vii) all parties that have requested service of notices pursuant to Bankruptcy Rule 2002; and (viii) all creditors on the Debtors' creditor matrix.

## **NO PRIOR MOTION**

35. The Debtors have not made any prior motion for the relief sought in the Motion to this Court or any other.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    May 14, 2019
          Wilmington, Delaware

*/s/ David T. Queroli*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701

- and -

**CRAVATH, SWAINE & MOORE LLP**
Paul H. Zumbro (admitted *pro hac vice*)
George E. Zobitz (admitted *pro hac vice*)
Karin A. DeMasi (admitted *pro hac vice*)
David A. Herman (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for the Debtors and Debtors in Possession*