**<u>Exhibit A</u>**

**(Proposed Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered)<br><br>**Re: Docket No. ___** |

### <u>ORDER APPROVING THE TERMINATION AND RELEASE AGREEMENT</u>

Upon consideration of the *Termination and Release Agreement* (the "<u>Termination Agreement</u>"); the Court having determined that good and adequate cause exists for approval of the Termination Agreement; and the Court having determined that no further notice of the Termination Agreement is necessary;

**IT IS HEREBY ORDERED THAT:**

1.  The Termination Agreement attached hereto as **<u>Exhibit 1</u>** is APPROVED.

2.  The terms of the Termination Agreement are incorporated in full as if set forth herein.

3.  This Order shall be effective immediately upon entry.

4.  This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

**Exhibit 1**

**(Termination Agreement)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,<br><br>                              Debtors. | Chapter 11<br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 501** |

## TERMINATION AND RELEASE AGREEMENT

This Termination and Release Agreement ("Termination Agreement") is made as of November 13, 2019 between The Weinstein Company LLC ("TWC"), on behalf of itself and its subsidiaries, and Beta Film GmbH ("Beta" and, together with TWC, the "Parties"), by and through their undersigned counsel.

## RECITALS

1.    **WHEREAS**, on March 19, 2018 (the "Petition Date"), TWC and its affiliated debtors and debtors in possession (collectively, the "Debtors") commenced these voluntary chapter 11 cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.    **WHEREAS**, on March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving*

*Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 8].

3.      **WHEREAS**, on April 6, 2018, the Court entered the *Order (I) (A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief* [Docket No. 190].

4.      **WHEREAS**, on May 9, 2018, the Court entered the *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 846], which, *inter alia*, approved the sale of substantially all of the Debtors' assets to Lantern Entertainment LLC ("Lantern").

5.      **WHEREAS**, on May 10, 2018, the Debtors filed the *Notice of Filing of Final List of Potentially Assumed Contracts and Leases* [Docket No. 860] (the "Original Assumed Contracts Schedule").

6.      **WHEREAS**, on July 11, 2018, the Court entered the *Order Approving Amendment to Asset Purchase Agreement Entered Into By and Between the Debtors and Lantern Entertainment LLC* [Docket No. 1220].

7.      **WHEREAS**, on September 5, 2018, the Debtors filed the *Notice of Filing of List of Assumed Contracts Pursuant to Sale Order* [Docket No. 1457] and on September 20, 2018, November 5, 2018, and November 8, 2018, the Debtors filed three *Supplemental Notice[s] of*

2

*Filing of List of Assumed Contracts Pursuant to Sale Order* [Docket Nos. 1512, 1665, and 1695, respectively] (collectively, with the Original Assumed Contracts Schedule, the "Assumed Contracts Schedules").

8.     **WHEREAS**, TWC and Beta are party to that certain license agreement, dated October 15, 2013 (the "Beta License Agreement"), pursuant to which TWC agreed to pay Beta certain amounts in exchange for certain licenses to distribute and market that certain Italian language television series currently entitled "Gomorra,"[1] including (i) a license to distribute season one of Gomorra ("Season 1"), (ii) subject to certain requirements, a license to distribute season two of Gomorra ("Season 2"), and (iii) the exclusive option (the "Option") to acquire licenses and distribution rights in future seasons of Gomorra (each, a "Subsequent Season").

9.     **WHEREAS**, during the Term (as defined in the Beta License Agreement), TWC agreed to make certain royalty payments (the "Royalty Payments") to Beta, calculated as a percentage of gross receipts generated by the applicable season.

10.     **WHEREAS**, prior to the Petition Date, TWC failed to provide Beta with certain quarterly and/or biannual statements for Season 1 and Season 2, as required under section 9 of the Beta License Agreement.  As a result, Beta was unable to determine whether any Royalty Payments were due and owing by TWC to Beta.

11.     **WHEREAS**, on April 30, 2018, Beta filed the *Reservation of Rights and Limited Objection of Beta Film GmbH to the Cure Notice* [Docket No. 501] (the "Cure Objection"), in which Beta objected to and reserved its rights with respect to TWC's proposed $0 cure amount identified in the *Notice of Assumption and Assignment* [Docket No. 216].

---

[1]     References to "Gomorra" and "Gomorrah" are references to the same television show.

12.    **WHEREAS**, pursuant to the Assumed Contracts Schedules, the Beta License Agreement is a "Disputed Other Contract."[2]

13.    **WHEREAS**, because the Cure Objection remains unresolved, TWC remains the counterparty to the Beta License Agreement.

14.    **WHEREAS**, from time to time, the Debtors sublicensed certain of TWC's rights in and to the Beta License Agreement by entering into sublicense agreements with various counterparties (the "Sublicense Counterparties"), including, but not limited to: (i) that certain *License Agreement for Internet Transmission No. 4*, dated August 12, 2013 (as amended from time to time, including that certain *Amendment #9 to the License Agreement for Internet Transmission No. 4 ("Gomorrah")* (the "Netflix Sublicense Agreement"), dated December 5, 2016), between TWC and Netflix, Inc. ("Netflix"); (ii) that certain *Gomorrah – Deal Term Sheet*, dated January 6, 2016 between Weinstein Television LLC and SundanceTV LLC (the "Sundance Sublicense Agreement"); (iii) that certain *Cover Art License Agreement*, dated April 12, 2017 between Weinstein Television LLC and Picador Books[3] (the "Picador Sublicense Agreement"); and (iv) that certain *License and Amendment Agreement*, dated December 4, 2014 (as amended from time to time, including that certain *Amendment #7*, dated August 22, 2016) between TWC and Anchor Bay Entertainment, LLC (the "Anchor Bay Sublicense Agreement" and together with the Netflix Sublicense Agreement, Picador Sublicense Agreement, and the Sundance Sublicense Agreement, the "Sublicense Agreements").

---

[2]    As per Docket No. 1695-1, "[t]he Disputed Other Contracts are currently subject to pending litigation or objections before the Court.  In the event that the Purchaser prevails in connection with the pending litigation and/or the prosecution of pending objections relevant to this contract list and subject to the resolution of any pending cure dispute, the Purchaser has determined to assume the contracts listed herein.  Given that the contracts on this list are the subject of pending objections and/or litigation, all parties' rights are reserved."

4

15.	**WHEREAS**, the Debtors and Beta desire to enter into this Termination Agreement to resolve any and all disputes and or issues between them relating to the Beta License Agreement and the Sublicense Agreements and to provide for the terms and conditions pursuant to which: (i) the Beta License Agreement will be deemed rejected pursuant to Bankruptcy Code section 365(a); (ii) the Beta License Agreement will be deemed terminated without further action; and (iii) Beta will withdraw its Cure Objection, Proof of Claim No. 40020, and Proof of Claim No. 80079.

16.	**NOW, THEREFORE**, for valuable consideration, including the promises as set forth below, the Parties agree as follows:

<u>**STIPULATION**</u>

17.	The foregoing recitals are hereby fully incorporated into and made an express part of this Termination Agreement.

18.	This Termination Agreement shall be effective: (i) upon its execution by the Parties; (ii) the Debtors' immediate written notice to the Sublicense Counterparties and to Lantern, with a copy to Beta, stating that the Debtors no longer hold any rights in and to the television series Gomorra; and (iii) the entry by the Court of a final order approving this Termination Agreement (the "<u>Effective Date</u>").

19.	Upon the Effective Date, TWC shall be deemed to have rejected the Beta License Agreement and the Beta License Agreement shall automatically terminate in its entirety and be of no further force or effect.

20.	Upon the Effective Date, all interest in, or rights with respect to, Gomorra acquired by the Debtors in connection with the Beta License Agreement shall revert back to Beta, and neither Beta nor the Debtors shall have any obligations to each other with respect to Gomorra or

5

the Beta License Agreement.  For the avoidance of doubt, the Debtors shall have no interest in, or rights with respect to, Gomorra or the Beta License Agreement.

21.    Upon the Effective Date, the Cure Objection, Proof of Claim No. 40020, and Proof of Claim No. 80079 shall be deemed withdrawn by Beta with prejudice.

22.    Upon the Effective Date, the Debtors, their estates, predecessors-in-interest, successors-in-interest (including, without limitation, any plan trustee, liquidating trustee, plan administrator or other liquidating agent under any plan of reorganization or any bankruptcy trustee, and their affiliates, and their respective officers, directors, shareholders, employees, and agents (collectively, the "Debtor Release Parties") shall be deemed to have irrevocably and unconditionally waived, released, relinquished, remised, acquitted and forever discharged Beta, its respective affiliates, partners, trustees, members, officers, directors, representatives, employees, managers, attorneys, agents, personal representatives, heirs, executors, administrators, successors and assigns (collectively, the "Beta Release Parties"), from any and all claims, rights, cause and causes of action, manner of action and actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, agreements, promises, attorneys' fees, costs, judgments, executions, damages, and demands whatsoever, in law or in equity, whether known or unknown, accrued or unaccrued, and whether foreseeable or unforeseeable, of whatever kind or character whatsoever (collectively, "Claims") that the Debtor Release Parties might have against Beta in connection with the Beta License Agreement and the Sublicense Agreements.

23.    Upon the Effective Date, the Beta Release Parties shall be deemed to have irrevocably and unconditionally waived, released, relinquished, remised, acquitted and forever discharged the Debtor Release Parties from any and all Claims (administrative or otherwise) that

6

Beta might have against the Debtors in connection with the Beta License Agreement and the Sublicense Agreements.

24.    The Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Termination Agreement.


[Signature Page Follows]

7

Agreed and Accepted

**THE WEINSTEIN COMPANY LLC**          **BETA FILM GMBH**

By: David T. Queroli                              By:
Its: Attorney                                         Its:

*[Signature Page to Termination and Release Agreement]*

Agreed and Accepted

November 13, 2019

**THE WEINSTEIN COMPANY**

**BETA FILM GMBH**

By: _____

By: _____

Its:

Its:

Beta Film GmbH
Gruenwalder Weg 28 d
D-82041 Oberhaching

[*Signature Page to Termination and Release Agreement*]