**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---

| | |
|---|---|
| ------------------------------------------------------------- x | |
| In re: | Chapter 11 |
| | |
| The Weinstein Company Holdings LLC, *et al*., | Case No. 18-10601 (MFW) |
| | |
| Debtors.¹ | (Jointly Administered) |
| | |
| | **Hearing Date: TBD** |
| | **Obj. Deadline: TBD** |
| ------------------------------------------------------------- x | |

**JOINT MOTION OF THE DEBTORS AND SPYGLASS, PURSUANT TO
BANKRUPTCY RULE 9019, FOR ENTRY OF AN ORDER APPROVING
STIPULATION RESOLVING DISNEY'S LIMITED OBJECTIONS TO, AND
RESERVATION OF RIGHTS CONCERNING, THE DEBTORS' SALE MOTION AND
THE DEBTORS' REVISED ASSUMED CONTRACTS SCHEDULE**

The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC) ("Spyglass") hereby file this motion (this "Motion"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, substantially in the form of order attached to this Motion as **Exhibit A** (the "Proposed Order"), approving the *Stipulation Resolving Disney's Limited Objections to, and Reservation of Rights Concerning, the Debtors' Sale Motion and the Debtors'*

---

¹ The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

*Revised Assumed Contracts Schedule* ("Stipulation")[2] and authorizing the Debtors and Spyglass to take any and all action necessary to effectuate the Stipulation and the settlement provided for therein.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

2.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors, Spyglass, and Disney (as defined in the Stipulation) consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue of these Chapter 11 Cases and related proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## RELEVANT BACKGROUND

5.      On March 19, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code.

---

[2]      Capitalized terms used but not otherwise defined in this Motion shall have the meaning ascribed to them in the Stipulation.  A true and correct copy of the Stipulation is attached to the Proposed Order as *Exhibit 1*.

2

6.      Prior to the Petition Date, one or more of the Debtors entered into certain contracts with Disney, including without limitation (i) the contracts listed in the Debtors' Revised Assumed Contracts Schedule identifying Disney or any Disney affiliate as a counterparty and (ii) the contracts identified on Annex 2 (a) and (b) to the Stipulation (collectively, the "Disney Contracts").

7.      On May 9, 2018, the Court entered an order [D.I. 846] (the "Sale Order") approving the sale of substantially all of the Debtors' assets to Spyglass (the "Sale").  On May 10, 2018, the Debtors filed a notice [D.I. 860] (the "Final Assignment Notice"), which Notice states that it supersedes all previous lists of potentially Assumed Contracts and Leases filed by the Debtors.

8.      On July 11, 2018, the Court entered an order approving certain amendments to that certain Asset Purchase Agreement between the Debtors and Spyglass, dated as of March 19, 2018 [D.I.1220] (as amended, the "APA").

9.      On July 13, 2018, the Sale closed (the "Closing Date") [D.I. 1247].

10.      Paragraph 31 of the Sale Order explicitly preserves Unresolved Contract Objections for the Contract Assumption Hearing (both as defined in the Sale Order) and provides that the Debtors and Spyglass shall reasonably cooperate with one another regarding the prosecution of any litigation relating to the final determination of cure amounts and the assignability of the contracts related to the Unresolved Contract Objections.

11.      The Debtors and Spyglass agreed to extend Disney's time to file any objection, on any and all legal grounds, to the Sale Motion and the Final Assignment Notice to a mutually agreeable future date.

12.      Spyglass informed Disney that certain titles identified as Covered Titles in the APA would not ultimately be purchased by Spyglass and that contracts related to certain titles still under development (and not identified as Covered Titles in the APA) would ultimately be assumed by

3

Spyglass, such that the final list of titles, motion pictures, television programs, and other products or programs being assumed and assigned to Spyglass by the Debtors (the "<u>Assumed Titles</u>") was not coextensive with the list of Covered Titles identified in the APA.

13.     Paragraph 32 of the Sale Order requires the Debtors to file with the Court a notice (the "<u>Final Cure Notice</u>") that identifies which Assumed Contracts and Leases are Assumed Contracts (the "<u>Assumed Contracts Schedule</u>").

14.     On September 5, 2018, the Debtors filed a notice [D.I. 1457] (the "<u>Assumed Contracts Notice</u>") that annexed the Assumed Contracts Schedule designating certain contracts as Assumed Contracts and their associated Cure Amounts (as such terms are defined in the Sale Order).

15.     Paragraph 32 of the Sale Order requires any Counterparty to such Assumed Contract to file any objection to the proposed Additional Cure Amount by the Final Cure Objection Deadline (as defined in the Final Cure Notice); and Spyglass, which must pay all Additional Cure Amounts pursuant to the APA, agreed to extend Disney's time to file any such objection to a mutually agreeable future date.

16.     On September 20, 2018, the Debtors filed a schedule supplementing the Assumed Contracts Schedule [D.I. 1512] (the "<u>Supplemental Contracts Schedule</u>").

17.     On November 5, 2018, the Debtors filed a further schedule supplementing the Assumed Contracts Schedule [D.I. 1665] (the "<u>Second Supplemental Contracts Schedule</u>").

18.     On November 8, 2018, Spyglass filed the *Supplemental Notice of Filing of List of Assumed Contracts Pursuant to Sale Order [Docket No. 846]* [D.I. 1695] supplementing the Assumed Contracts Schedule [D.I. 1695] (the "<u>Third Supplemental Contracts Schedule</u>" and,

4

together with the Assumed Contracts Schedule, the Supplemental Contracts Schedule, and the Second Supplemental Contracts Schedule, the "Revised Assumed Contracts Schedule").[3]

19.     Disney has informed Spyglass that the Revised Assumed Contracts Schedule does not include all the Disney Contracts related to the Assumed Titles.

20.     The Debtors have decided in their reasonable business judgment to assume and assign to Spyglass, at Spyglass's request, the Disney Contracts identified on Annex 2(a) and Annex 2(b) of the Stipulation (collectively referred to as the "Assumed Disney Contracts").

## THE AGREEMENT

21.     Following extensive, good faith, arm's-length discussions, the Debtors, Spyglass, and Disney (collectively, the "Parties") entered into the Stipulation.  The Parties' agreement is significant, as it resolves Disney's outstanding informal objections to, and reservation of rights concerning, the Debtors' Sale Motion and the Debtors' Revised Assumed Contracts Schedule.

22.     The material terms of the Stipulation are set forth below:[4]

- The Parties agree that inclusion of a title in the Sale shall not be deemed evidence that Debtors have any interest in the title, and that if Disney reasonably believes that the Debtors had no interest, other than by reason of Disney's action or inaction, Disney's rights to argue that Spyglass has no interest in the title are fully preserved, subject to return by Disney to Spyglass of the applicable Cure Payment if it is determined that the Debtors had no interest in such title.

---

[3]     Consistent with Spyglass's position in paragraph 7 and footnote 3 of the Third Supplemental Contracts Schedule, Spyglass is still party to litigation seeking a determination that the contract of Bruce Cohen is not executory and therefore already purchased by Spyglass under section 363 of the Bankruptcy Code.  In accordance therewith, nothing in this Motion or the Stipulation is intended to categorize the Bruce Cohen, or any of the Disputed Talent Party Contracts (as such term is defined in the Third Supplemental Contracts Schedule), as executory, nor shall this Motion or the Stipulation prejudice or preclude Spyglass from exercising any of its rights in connection therewith.

[4]     This list is provided in summary fashion only and is not intended to represent exhaustively all of the terms under the Stipulation.  To the extent of any inconsistency between the description herein and the terms of the Stipulation itself, the Stipulation will govern in all respects.

- Spyglass further agrees that Spyglass shall be responsible for obligations arising after the Closing Date related to an Assumed Title to the same extent Debtors would have been responsible if the Sale had not occurred.

- Subject to certain exceptions, upon the Order Date, each of the Assumed Disney Contracts shall be assumed by Debtors and assigned to Spyglass pursuant to section 365 of the Bankruptcy Code.

- The Parties agree that the total amount necessary to cure the Assumed Disney Contracts, as of each respective Reporting Date is $749,599.00 (the "Reporting Date Cure Payment").

- Upon payment of the Reporting Date Cure Payment, none of the Parties shall have any further payment obligations for payments due under the Assumed Disney Contracts to the extent such payment obligations arose prior to the Reporting Date for the applicable Assumed Title. Payment of the Reporting Date Cure Payment, however, shall not waive any prospective reporting or accounting requirements under the Assumed Disney Contracts nor any liability for payments based on exploitation of a title which arose or arises after the applicable Reporting Date, including liability for any TrueUp Cure Payments.

- The Parties agree that, except as provided in the Stipulation, the Assumed Disney Contracts shall be enforceable according to their terms against Spyglass as assignee, and all rights and obligations under the Assumed Disney Contracts granted to both Disney and Spyglass (as assignee) shall remain in full force and effect.

- In accordance with paragraph 56 of the Sale Order, any rights under any of the Assumed Contracts and Leases that have expired in accordance with their terms prior to the Closing shall not be assumed nor assigned, shall not be considered Disney Assumed Contracts, and the titles themselves (along with any rights to further produce, market or exploit such titles) shall not be assumed and/or assigned to Spyglass.

- The Debtors and Spyglass acknowledge that where the Debtors' rights to produce new derivative productions in certain franchises have now lapsed such rights can neither be assumed nor assigned.

- The parties recognize that the business with respect to certain of the titles that Spyglass is not taking was conducted through LLCs in which a Disney entity and a Weinstein entity were the sole members. The parties agree that, upon the Order Date, the Debtors' membership interests in such LLCs shall be deemed transferred to Disney.

- Except as otherwise expressly stated therein, any Disney Contracts related to an Assumed Title, to the extent that they are executory contracts, shall be Assumed

6

Disney Contracts to the extent they relate to an Assumed Title. Any Disney Contracts relating solely to titles that were identified as Covered Titles but that, as of the date the Stipulation is executed by the parties, Spyglass has not identified as Assumed Titles shall be deemed rejected, to the extent that they are executory contracts, on the Order Date unless Spyglass purchased such agreements under section 363 of the Bankruptcy Code.[5]

- Upon the Order Date, the Stipulation provides for certain irrevocable and unconditional waivers and releases for the benefit of (i) the Debtors, their estates, predecessors-in-interest, successors-in-interest, (ii) Disney and its respective affiliates, partners, trustees, members, officers, directors, and other affiliated persons and entities.

- Upon the Order Date, any proofs of claim filed by Disney in the Debtors' Chapter 11 Cases shall be deemed withdrawn with prejudice.

- Spyglass agrees to notify Disney, the Debtors and any other potentially impacted parties to the extent that Spyglass, since the inception of the Petition Date, received any funds in connection with any PFC Title relating to a Disney Contract, and shall provide an accounting of such funds.

- Spyglass agrees to escrow a portion of the funds to be distributed only upon and in accordance with certain terms set out in the Stipulation.

## BASIS FOR RELIEF REQUESTED

23.      Bankruptcy Rule 9019(a) permits the court to approve compromises and settlements. "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citing *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004). The standard for approval of a proposed compromise is well established: the court should approve a compromise when it "is fair, reasonable, and in the best interest of the estate." *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)); *see Myers v. Martin* (*In re Martin*), 91 F.3d 389, 394 (3d Cir. 1996) ("[T]he bankruptcy court must

---

[5]      For the avoidance of doubt, Spyglass expressly reserves any and all rights to dispute the executory nature contracts to be assumed or assigned under section 365 of the Bankruptcy Code. Spyglass also expressly reserves any and all rights to argue that it purchased non-executory contracts under section 363 of the Bankruptcy Code.

be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.").

24.     When considering the best interests of the estate, the court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.  In striking this balance, the court should consider: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors. *Id*.

25.     The court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  A court will normally accept the judgment of the movant as long as a legitimate business justification exists. *See, e.g.*, *In re Martin*, 91 F.3d at 395.

26.     The compromise embodied in the Stipulation falls well within the range of reasonableness.  The Parties negotiated the Stipulation at arms' length and in good faith, and at all times were represented by sophisticated counsel.  The Stipulation provides for the reservation of Disney's rights against any third parties to whom any Disney Contract (or any rights related thereto) may have been assigned, and the resolution of significant disputes among the Parties.  In particular, the Stipulation provides that Disney has agreed to waive all claims it may have against the Debtors' estates in connection with the Disney Contracts, except with respect to all rights Disney has in connection with tort claims involving Harvey Weinstein.  Accordingly, the resolution and waiver of claims against the Debtors' estates benefits the Debtors, their estates, and their creditors.

27.     The Stipulation also resolves issues related to the Assumed Titles (as defined in the Stipulation).  Absent approval of the Stipulation, the parties would be forced to engage in complex, time-consuming, and expensive litigation with respect to these agreements, which would place an unnecessary burden upon the Debtors' estates, as well as upon Spyglass and Disney.  If this Court were to approve the Stipulation, Spyglass would be closer to finally achieving the "free and clear" Sale that it negotiated and paid for and that the Sale Order intended almost two years ago in May 2018.

28.     To the extent that section 365(a) of the Bankruptcy Code is implicated in the compromise embodied in the Stipulation, the Debtors seek authority to execute the Stipulation and perform the obligations thereunder pursuant to section 365(a) of the Bankruptcy Code.

29.     Finally, authorizing the Debtors to enter into and effectuate the terms of the Stipulation is well within the equitable powers of this Court.  *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); *see also Joubert v. ABN AMRO Mortg. Grp., Inc.* (*In re Joubert*), 411 F.3d 452, 455 (3d Cir. 2005) (noting that the court considers section 105(a) as a "powerful, versatile tool … [that] empowers bankruptcy courts and district courts to fashion orders in furtherance of Bankruptcy Code provisions.").

30.     The Official Committee of Unsecured Creditors (the "Committee") has reviewed and commented on the Stipulation and has no objection to entry of the Proposed Order.

31.     Accordingly, the Debtors respectfully submit that the Stipulation should be approved as a fair and reasonable compromise under Bankruptcy Rule 9019 as well as sections 105(a) and 365(a) of the Bankruptcy Code.

## **NOTICE**

32.      The Debtors will provide notice of this Motion  in accordance with the Local Rules

to: (i) the Office of the United States Trustee for Region 3; (ii) counsel to Committee; (iii) counsel

to Disney; and (iv) all parties that have requested service pursuant to Bankruptcy Rule 2002.  The

Debtors and Spyglass submit that no other or further notice is necessary under the circumstances.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, attached hereto as **Exhibit A**, approving the Stipulation, and grant such other and further relief as the Court deems just and proper.

Dated: March 12, 2020
      Wilmington, Delaware

| | |
|---|---|
| */s/ David T. Queroli* | */s/ R. Craig Martin* |
| Mark D. Collins (No. 2981) | R. Craig Martin (DE No. 5032) |
| Paul N. Heath (No. 3704) | Maris J. Kandestin (DE No. 5294) |
| Zachary I. Shapiro (No. 5103) | DLA PIPER LLP (US) |
| Brett M. Haywood (No. 6166) | 1201 N. Market Street, Suite 2100 |
| David T. Queroli (No. 6318) | Wilmington, DE 19801 |
| RICHARDS, LAYTON & FINGER, P.A. | Telephone:  (302) 468-5700 |
| One Rodney Square | Facsimile:  (302) 394-2341 |
| 920 North King Street | Email: craig.martin@dlapiper.com |
| Wilmington, Delaware 19801 |        maris.kandestin@dlapiper.com |
| Telephone: (302) 651-7700 | |
| Facsimile: (302) 651-7701 | - and - |
| | |
| - and - | Thomas R. Califano (admitted *pro hac vice*) |
| | Rachel Ehrlich Albanese (admitted *pro hac vice*) |
| Paul H. Zumbro (admitted *pro hac vice*) | DLA PIPER LLP (US) |
| George E. Zobitz (admitted *pro hac vice*) | 1251 Avenue of the Americas |
| Karin A. DeMasi (admitted *pro hac vice*) | New York, NY 10020 |
| CRAVATH, SWAINE & MOORE LLP | Telephone:  (212) 335-4500 |
| Worldwide Plaza | Facsimile: (212) 335-4501 |
| 825 Eighth Avenue | Email: thomas.califano@dlapiper.com |
| New York, New York 10019 |       rachel.albanese@dlapiper.com |
| Telephone: (212) 474-1000 | |
| Facsimile: (212) 474-3700 | *Counsel to Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC)* |
| | |
| *Attorneys for the Debtors and Debtors in Possession* | |

11