**<u>EXHIBIT A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| The Weinstein Company Holdings LLC, *et al*., | : | Case No. 18-10601 (MFW) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : | **Re: D.I.: ___** |

------------------------------------------------------------ x

## ORDER APPROVING STIPULATION RESOLVING DISNEY'S LIMITED OBJECTIONS TO, AND RESERVATION OF RIGHTS CONCERNING, THE DEBTORS' SALE MOTION AND THE DEBTORS' REVISED <u>ASSUMED CONTRACTS SCHEDULE</u>

Upon the Motion,[2] pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 9019, for entry of an order approving the Stipulation, a copy of which is attached hereto as **<u>Exhibit 1</u>**; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States Bankruptcy Court for the District of Delaware, dated as of February 29, 2012; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

---

[1]      The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED, as set forth in this Order.

2.      Pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Stipulation is approved in its entirety and is incorporated by reference herein.

3.      The Debtors, Spyglass, and Disney are authorized to take any and all actions they deem reasonably necessary to effectuate the terms of this Order and the Stipulation.

4.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be effective immediately and enforceable upon its entry.

5.      This Court retains jurisdiction over any and all matters arising from or related to the implementation, interpretation, or enforcement of this Order or the Stipulation.

2

# **EXHIBIT 1**

**Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x

|                                        |     |                              |
|----------------------------------------|-----|------------------------------|
| In re:                                 | :   | Chapter 11                   |
|                                        | :   |                              |
| THE WEINSTEIN COMPANY HOLDINGS         | :   | Case No. 18-10601 (MFW)      |
| LLC, *et al.*,                         | :   |                              |
|                                        | :   | (Jointly Administered)       |
|                          Debtors.[1]   | :   |                              |
|                                        | :   | **Re: Docket Nos. 8, 190 & 860** |

------------------------------------------------------------- x

### STIPULATION RESOLVING WALT DISNEY PICTURES' LIMITED OBJECTIONS TO, AND RESERVATION OF RIGHTS CONCERNING, THE DEBTORS' SALE MOTION AND THE DEBTORS' REVISED ASSUMED CONTRACTS SCHEDULE

This Stipulation is entered into by and among the above-captioned debtors and debtors-in-possession (the "Debtors"); Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC) (together with its affiliates, "Spyglass"); and Walt Disney Pictures f/k/a Walt Disney Pictures and Television ("WDP", and together with any other WDP affiliates that are identified on Annex 1, attached hereto, or that are counterparties to the executory contracts on Annex 2, attached hereto, or on Debtors' Revised Assumed Contracts Schedule (as defined herein), "Disney").[2] The Debtors, Spyglass, and Disney hereby stipulate as follows:

### RECITALS

**WHEREAS**, on March 19, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

---

[1]      The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837).  The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Sale Order (defined herein).

Court"); and the above-captioned Debtors' chapter 11 cases (the "Chapter 11 Cases") have been jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure;

WHEREAS, prior to the Petition Date, one or more of the Debtors entered into certain contracts with Disney, including without limitation (i) the contracts listed in the Debtors' Revised Assumed Contracts Schedule identifying Disney or any Disney affiliate as a counterparty and (ii) the contracts identified on Annex 2 (a) and (b) (collectively, the "Disney Contracts");

WHEREAS, on March 8, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [D.I. 8] (the "Sale Motion"), seeking, among other things, Bankruptcy Court approval of the Debtors' proposed bidding procedures and the sale of substantially all of the Debtors' assets;

WHEREAS, on April 6, 2018, the Bankruptcy Court entered the *Order (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale,*

*Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief* [D.I. 190];

**WHEREAS**, on May 9, 2018, the Bankruptcy Court entered an *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [D.I. 846] (the "Sale Order"), which, *inter alia*, authorized the sale of substantially all of the Debtors' assets to Spyglass (the "Sale");

**WHEREAS**, on May 10, 2018, the Debtors filed the *Notice of Filing of Final List of Potentially Assumed Contracts and Leases* [D.I. 860] (the "Final Assignment Notice"), which Notice states that it supersedes all previous lists of potentially Assumed Contracts and Leases filed by the Debtors;

**WHEREAS**, on June 27, 2018, the Debtors filed the *Debtors' Motion for an Order Approving Amendment to Asset Purchase Agreement Entered Into By and Between the Debtors and Lantern Entertainment LLC* [D.I. 1115];

**WHEREAS**, on July 11, 2018, the Court entered the *Order Approving Amendment to Asset Purchase Agreement Entered into By and Between the Debtors and Lantern Entertainment LLC* [D.I. 1220], which, *inter alia*, authorized the Debtors to enter into the second amendment to that certain Asset Purchase Agreement between Debtors and Spyglass, dated as of March 19, 2018 (as amended to date, the "APA") and to consummate the Sale to Spyglass pursuant to the terms thereunder;

**WHEREAS**, the closing of the transactions contemplated by the APA occurred on July 13, 2018 (the "Closing Date") [D.I. 1247];

3

**WHEREAS**, the APA identified certain motion pictures, television programs, and other products or programs to be purchased from the Debtors by Spyglass (as defined in the APA, "Covered Titles");

**WHEREAS**, the Sale Order in ¶ 31 explicitly preserves Unresolved Contract Objections for the Contract Assumption Hearing (both as defined in the Sale Order) and provides that the Debtors and Spyglass shall reasonably cooperate with one another regarding the prosecution of any litigation relating to the final determination of cure amounts and the assignability of the contracts related to the Unresolved Contract Objections;

**WHEREAS**, the Debtors and Spyglass agreed to extend Disney's time to file any objection, on any and all legal grounds, to the Sale Motion and the Final Assignment Notice (the "Disney Objection") to a mutually agreeable future date;

**WHEREAS**, Spyglass informed Disney that certain titles identified as Covered Titles in the APA would not ultimately be purchased by Spyglass and that contracts related to certain titles still under development (and not identified as Covered Titles in the APA) would ultimately be assumed by Spyglass, such that the final list of titles, motion pictures, television programs, and other products or programs being assumed and assigned to Spyglass by the Debtors (the "Assumed Titles") was not coextensive with the list of Covered Titles identified in the APA;

**WHEREAS**, the Sale Order in ¶ 32 requires the Debtors to file with the Court a notice (the "Final Cure Notice") that identifies which Assumed Contracts and Leases are Assumed Contracts (the "Assumed Contracts Schedule");

**WHEREAS**, on September 5, 2018, the Debtors filed the Final Cure Notice and the Assumed Contracts Schedule [D.I. 1457];

**WHEREAS**, the Debtors' Assumed Contracts Schedule continued to identify for assumption contracts that related to titles that were not Assumed Titles;

**WHEREAS**, the Sale Order in ¶ 32 requires any Counterparty to such Assumed Contract to file any objection to the proposed Additional Cure Amount by the Final Cure Objection Deadline (as defined in the Final Cure Notice); and Spyglass, which must pay all Additional Cure Amounts pursuant to the APA [D.I. 1187], agreed to extend Disney's time to file any such objection to a mutually agreeable future date;

**WHEREAS**, (i) on September 20, 2018, the Debtors filed a schedule supplementing the Assumed Contracts Schedule [D.I. 1512] (the "Supplemental Contracts Schedule"), (ii) on November 5, 2018, the Debtors filed an additional schedule supplementing the Assumed Contracts Schedule [D.I. 1665] (the "Second Supplemental Contracts Schedule"), and (iii) on November 8, 2018, Spyglass filed a further schedule supplementing the Assumed Contracts Schedule [D.I.. 1695] (the "Third Supplemental Contracts Schedule" and, together with the Assumed Contracts Schedule, the Supplemental Contracts Schedule, and the Second Supplemental Contracts Schedule, the "Revised Assumed Contracts Schedule");

**WHEREAS**, Disney has informed Spyglass that the Revised Assumed Contracts Schedule does not include all the Disney Contracts related to the Assumed Titles;

**WHEREAS**, the Debtors have decided in their reasonable business judgment to assume and assign to Spyglass, at Spyglass's request, the Disney Contracts identified on Annex 2(a) and Annex 2(b) (collectively referred to as the "Assumed Disney Contracts");[3]

**WHEREAS**, in order to avoid the expense associated with litigating any Disney Objection, the parties have agreed to enter into this Stipulation.

---

[3]    The Exhibit Nos. referenced in Annex 2(a) correspond to the contract numbers used in the Revised Contract Schedule.

## STIPULATION

**NOW, THEREFORE, the parties, by and through their respective undersigned counsel, hereby stipulate and agree, and upon the Bankruptcy Court's approval it shall be ordered and binding on all parties in interest, as follows**:

1.      (a) For purposes of this Stipulation, Assumed Titles, except as otherwise indicated below, shall include all titles purported to have been acquired by Spyglass from Debtors pursuant to the APA.[4] Debtors, Spyglass, and Disney agree that inclusion of a title in the sale between Debtors and Spyglass shall not be deemed evidence that Debtors have any interest in the title, and that, if Disney reasonably believes that the Debtors had no interest in a specific title or contract other than by reason of Disney's action or inaction (as distinguished from a Debtor's taking or failing to take any action to preserve its rights in that title or contract by, for example, not timely commencing production of the title), Disney's rights to argue that Spyglass has no interest in the title because the Debtors had no interest in the title at the time of the Sale to Spyglass are fully preserved; provided, that in the event that Disney challenges Spyglass's interest in any Assumed Disney Contracts or Assumed Titles and either (x) a court of competent jurisdiction enters a final nonappealable order that Debtors had no interest in the title or contract, or (y) Spyglass and Disney agree, in writing, that Debtors had no interest in the title or contract, then Disney shall promptly thereafter return to Spyglass any portion of the Reporting Date Cure Payment or TrueUp Cure Payment (each as defined below and collectively referred to herein as the "Cure Payment") for such Assumed Disney Contract.

(b) Spyglass further agrees that to the extent any rights to an Assumed Title are subject to ongoing obligations by the Debtors, Spyglass shall be responsible for such obligations arising

---

[4]      To the extent TWC has forfeited any rights to any titles or production assets as a result of TWC's action, inaction, or breach of an agreement, then nothing in this Stipulation revives them or permits them to be assumed and assigned to Spyglass.

after the Closing Date to the same extent Debtors would have been responsible if the sale had not

occurred.  Except for payment of the Cure Payment and as set forth in Paragraph 6 below,

Spyglass shall not be responsible for any obligations of the Debtors with respect to any Assumed

Title for any period prior to the Closing Date.

2.      Subject to the exceptions identified below, upon entry of a final, non-appealable

order of the Bankruptcy Court approving this Stipulation (the "Order Date"), each of the

Assumed Disney Contracts shall be and hereby is assumed by Debtors and assigned to Spyglass

pursuant to section 365(a) of the Bankruptcy Code, effective retroactive to the Closing Date.  For

the avoidance of any doubt, the Assumed Disney Contracts include all exhibits, appendices,

annexes, amendments, modifications and related documents associated with the Assumed Disney

Contracts that are made by and between the Debtors, on the one hand, and Disney and any

Disney affiliate, on the other hand, even if not expressly listed in Annex 2.  The Assumed Disney

Contracts will also include any executory Disney Contracts related to Assumed Titles that are

made by and between the Debtors, on the one hand, and Disney and/or any Disney affiliate, on

the other hand, whether or not such Disney Contracts are included in Annex 2, to the extent that

such executory Disney Contracts are integrated with and non-severable from any agreements,

contracts, rights or interests assumed or otherwise acquired by Spyglass related to any Assumed

Title under applicable law.  For the avoidance of doubt, neither Spyglass nor the Debtors shall be

required to pay any additional cure amounts (other than the Cure Payment) in connection with

the assumption and assignment of any such related documents or executory Disney Contracts not

specifically identified on Annexes 2(a) or 2(b).

3.      The titles *Bernard and the Genie*, *Cricket in Times Square*, and *Firework Maker's

Daughter* shall be Assumed Titles.

4.      Upon the Order Date, each of the Assumed Disney Contracts shall be assigned to Spyglass as of the date of the Closing Date.

5.      The parties hereto agree that the total amount of the payment necessary to bring the Assumed Disney Contracts, in the aggregate, current as of each respective Reporting Date (as defined below) for each such contract is $749,599.00 (the "Reporting Date Cure Payment"). This amount shall be paid by wire transfer of immediately available funds, to a Disney account to be identified by Disney.  The Reporting Date Cure Payment shall be made within ten (10) business days after the Order Date.

6.      The Reporting Date Cure Payment was determined based upon information reported by Debtors and/or Spyglass that reflected exploitation of the Assumed Titles under the Assumed Disney Contracts identified in Annex 2(b) as of a certain date (the "Reporting Date"). The Reporting Date for each Assumed Title is set forth in Annex 2(b).  Upon payment of the Reporting Date Cure Payment, none of the parties hereto shall have any further payment obligations for payments due under the Assumed Disney Contracts to the extent such payment obligations arose prior to the Reporting Date for the applicable Assumed Title.  Payment of the Reporting Date Cure Payment, however, shall not waive any prospective reporting or accounting requirements under the Assumed Disney Contracts nor any liability for payments based on exploitation of a title which arose or arises after the applicable Reporting Date, including payments based on exploitation from the Reporting Date through the Order Date (the "TrueUp Cure Payments").  Spyglass will provide any contractually required reporting for and make any payments of any TrueUp Cure Payments as quickly as possible after the Order Date, but in no event later than ninety (90) days after the Order Date.  Spyglass will assume liability for and satisfy all prospective obligations under the Assumed Disney Contracts (including all reporting

and payment obligations) following the Order Date in accordance with the terms of each Assumed Disney Contract.  The parties further agree that, except as provided herein, the Assumed Disney Contracts shall be enforceable according to their terms against Spyglass as assignee, and all rights and obligations under the Assumed Disney Contracts granted to both Disney and Spyglass (as assignee) shall remain in full force and effect.

7.      Notwithstanding the foregoing, and consistent with ¶ 56 of the Sale Order, which provides that "[n]o rights under any of the Assumed Contracts and Leases that have expired in accordance with their terms prior to the Closing constitute property of the Debtors' estates or will be transferred to the Purchaser in connection with the Sale Transaction or otherwise," any and all contracts associated with the television project commonly referred to as *United States of Song* (including without limitation Contract Nos. 1014 and 1015) (the "Disney Expired Contracts") shall be deemed to have terminated before the Petition Date by their terms and by impossibility of performance, and as such, the Disney Expired Contracts shall neither be assumed nor assigned, shall not be considered Disney Assumed Contracts, and the titles themselves (along with any rights to further produce, market or exploit such titles) shall not be assumed and/or assigned to Spyglass.  Debtors, Spyglass and Disney all agree that neither Disney, Debtors nor Spyglass (or any affiliate of any of them) shall have any further rights or obligations with respect to the contracts regarding *United States of Song* as those contracts have expired by their terms.

8.      The Debtors and Spyglass acknowledge that while the contracts associated with the film franchises commonly known as *Halloween* and *Scary Movie* may be assumed and assigned, the Debtors' rights to produce new derivative productions in these franchises have now

lapsed, and that consistent with ¶ 56 of the Sale Order, such rights can neither be assumed nor assigned.

9.      The parties recognize that the certain Acquisition Agreement, dated as of March 29, 2005, among W Acquisition Company LLC, Miramax Film Corp., and WDP, along with certain of its exhibits, appendices, annexes, amendments, modifications and related documents (the "Acquisition Agreement"), addresses issues regarding multiple Assumed Titles. Notwithstanding anything herein to the contrary, the Acquisition Agreement shall be an Assumed Disney Contract only to the extent that it applies to Assumed Titles.  Spyglass is not assuming any rights or obligations under the Acquisition Agreement with respect to any titles or projects that are not Assumed Titles.  Disney and Spyglass agree that the treatment of the Acquisition Agreement as an Assumed Disney Contract as set forth herein shall not be altered by the rejection of any other Disney Contracts.

10.      For the avoidance of doubt, the following titles shall not be Assumed Titles and no Disney Contracts or any rights associated with such titles or such contracts shall be assigned or otherwise transferred to Spyglass:

- *Breaking and Entering*
- *Derailed*
- *Chestnut*
- *The Matador*
- *Mrs. Henderson Presents*
- *Scary Movie 4*
- *Scream TV* [Season Three, a/k/a *Scream: The TV Series, Season 3* a/k/a *Scream 5*]
- *Mila 18*
- *United States of Song*
- *Halloween 9* [a/k/a *Untitled Rob Zombie Halloween Project*]
- *Hoodwinked*
- *Arthur and the Invisibles*
- *Artemis Fowl*
- *Artemis Fowl 2*

11.     To the extent that subsequent production rights exist with respect to any Assumed Titles, the applicable Assumed Disney Contracts relating to such titles shall govern the rights of Disney and Spyglass with respect to such subsequent production rights.  Nothing contained in this Stipulation shall be deemed or construed to modify the terms of such Assumed Disney Contracts or any subsequent production rights.

12.     The parties recognize that the business with respect to certain of the titles that Spyglass is not taking was conducted through LLCs in which a Disney entity and a Weinstein entity were the sole members.  These LLCs are identified on Annex 3 attached hereto.  Disney has purported to continue the LLCs pursuant to each LLC's operating agreement through letters dated June 14, 2018.  The parties agree that, upon the Order Date, the Debtors' membership interests in the LLCs identified on Annex 3, whether retained by the Debtors or acquired by Spyglass pursuant to the APA, shall be deemed transferred to Disney.  For the avoidance of doubt, on the Order Date, Disney shall be deemed the owner of 100% of the LLCs.

13.     Except as otherwise expressly stated herein, neither this stipulation nor the assumption and assignment of any contract shall modify the rights or obligations of any party under the Assumed Disney Contracts, nor shall it revive any rights or obligations that have otherwise expired pursuant to the terms of the Assumed Disney Contracts.

14.      Except as otherwise expressly stated herein, any Disney Contracts related to an Assumed Title shall be Assumed Disney Contracts.  Any Disney Contracts relating solely to titles that were identified as Covered Titles but that, as of the date this Stipulation is executed by the parties, Spyglass has not identified as Assumed Titles shall be deemed rejected, to the extent that they are executory contracts, on the Order Date.  For the avoidance of doubt, all other Disney Contracts that are not Assumed Disney Contracts shall be deemed rejected, to the extent

that they are executory contracts, on the Order Date, and all rights pursuant to such rejected

contracts shall automatically revert to Disney as of the Order Date.

15.     Upon the Order Date, the Debtors, their estates, predecessors-in-interest,

successors-in-interest (including, without limitation, any plan trustee, liquidating trustee, plan

administrator or other liquidating agent under any plan of reorganization or any bankruptcy

trustee, and their affiliates, and their respective officers, directors, shareholders, employees, and

agents (collectively, the "Debtor Release Parties") shall be deemed to have irrevocably and

unconditionally waived, released, relinquished, remised, acquitted and forever discharged

Disney, its respective affiliates, partners, trustees, members, officers, directors, representatives,

employees, managers, attorneys, agents, personal representatives, heirs, executors,

administrators, successors and assigns (collectively, the "Disney Release Parties"), from any and

all claims, rights, cause and causes of action, manner of action and actions, suits, debts, dues,

sums of money, accounts, reckonings, bonds, bills, covenants, contracts, agreements, promises,

attorneys' fees, costs, judgments, executions, damages, and demands whatsoever, in law or in

equity, whether known or unknown, accrued or unaccrued, and whether foreseeable or

unforeseeable, of whatever kind or character whatsoever (collectively, "Claims") that the Debtor

Release Parties might have against Disney in connection with the Disney Contracts, including

without limitation all Claims under chapter 5 of the Bankruptcy Code and similar state laws.

16.     Upon the Order Date, the Disney Release Parties shall be deemed to have

irrevocably and unconditionally waived, released, relinquished, remised, acquitted and forever

discharged the Debtor Release Parties from any and all Claims (administrative or otherwise) that

Disney might have against the Debtors in connection with the Disney Contracts, except with

respect to all rights Disney has pursuant to a separate settlement of claims by Louisette Geiss and

others, if such separate settlement is approved by the Court.  For the avoidance of doubt, the

Disney Release Parties do not hereby waive any and all Claims that they may have against any

third parties, including insurers.

17.     Upon the Order Date, any proofs of claim filed by Disney in the Debtors' Chapter

11 Cases shall be deemed withdrawn with prejudice.

18.     For the avoidance of doubt, Disney reserves any and all rights against any third-

parties to whom any Disney Contract (or any rights related thereto) may have been assigned,

conveyed, transferred or pledged, including but not limited to asserting claims and causes of

action under law or equity, and seeking related discovery.

19.     Spyglass represents that (a) nothing in this stipulation shall constitute an

assumption by the Debtors (and assignment to Spyglass) of any contracts pursuant to which the

Debtors acquired rights in any titles in which Portfolio Funding Company LLC I ("PFC") has

claimed an interest ("PFC Titles"), and (b) Spyglass has no right to any funds generated by the

exploitation of, or any other interest in, such PFC Titles.  If any Disney Contract addresses both

PFC Titles and Assumed Titles that are not PFC Titles, then Spyglass shall be deemed to have

assumed such Disney Contract only insofar as that agreement covers Assumed Titles that are not

PFC Titles.

20.     To the extent that Spyglass, since the inception of the Petition Date, has received

or receives in the future any funds in connection with any PFC Title related to a Disney Contract,

Spyglass agrees that it shall (i) notify Disney, the Debtors and any other potentially impacted

parties by writing and email of its receipt of such funds (the "Disputed Funds"), (ii) provide an

accounting of such funds, and (iii) deposit such Disputed Funds into an escrow account (which

Disney will arrange and pay for) established with a neutral, nationally recognized escrow agent,

13

all within 90 days of its receipt of such funds; provided, however, if Spyglass received any such funds prior to the Order Date, it will provide notice and an accounting for such funds and place the funds in escrow no later than April 30, 2020.  The escrow agreement pursuant to which such funds are deposited with the escrow agent shall provide that the escrow agent shall distribute the funds only upon and in accordance with (a) a final, nonappealable order of a court of competent jurisdiction authorizing the distribution of the funds, or (b) a joint instruction from PFC, the Debtors and Disney directing the distribution of the funds; provided, that if Disney and PFC do not receive a response from the Debtors with respect to any joint instruction within 45 days after such joint instruction is provided to the Debtors, Disney and PFC shall be permitted to submit such joint instruction to the escrow agent without any need for the Debtors to execute such joint instruction.   Any notices to Disney under this paragraph shall be provided to:  Alec M. Lipkind, Asst. General Counsel, The Walt Disney Company, 77 West 66th Street, 15th Floor, New York, New York 10023, Email: alec.lipkind@disney.com, William W. Neuschaefer,  Asst. Chief Counsel, The Walt Disney Company, 500 So. Buena Vista St. Burbank, CA 91521-1286**,** Email:  Bill.Neuschaefer@disney.com, and Andrew Goldman, WilmerHale, 7 World Trade Center, 250 Greenwich Street, New York, New York  10007, Email: Andrew.goldman@wilmerhale.com.  This Stipulation shall neither waive nor prejudice any rights that Disney may have against any third parties, and all such rights are specifically preserved.

21.    Except as otherwise expressly stated herein, this Stipulation (including the Annexes referenced herein and attached hereto) expresses the entire understanding of the parties hereto and replaces any and all former agreements, understandings and representations, and

contains all the terms, conditions, understandings and promises of the parties hereto, relating in any way to the subject matter hereof.

22.     This Stipulation has been negotiated at arm's length and between and among persons sophisticated and knowledgeable in the matters dealt with in this Stipulation.  In addition, this Stipulation was drafted by experienced and knowledgeable legal counsel for each of the parties.  Accordingly, no party shall be entitled to have any provisions of the Stipulation construed against the other party in accordance with any rule of law, legal decision or doctrine.

23.     This Stipulation cannot be modified or amended except in writing signed by all parties. Each of the parties hereto acknowledge that no officer, employee or representative of such other party has made any promise or representation not expressly set forth in this Stipulation.

24.     This Stipulation shall be binding on the parties when an order by the Bankruptcy Court approving the Stipulation becomes final and nonappealable and shall not be subject to any stay under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or otherwise.  In the event that an order approving this Stipulation is not entered by the Bankruptcy Court, this Stipulation shall be deemed null and void, and Disney, the Debtors and Spyglass shall retain all their respective rights, including, with respect to Disney, the right to file an objection to the Sale and to the assumption and assignment of any Disney Contract with the Bankruptcy Court.

25.     The Bankruptcy Court shall retain jurisdiction over any and all matters arising from or related to the interpretation and/or implementation of this Stipulation.

26.     This Stipulation may be executed in counterparts, one or more of which may contain electronic (in PDF format) signatures, all of which shall constitute an original agreement.

Dated: March 12, 2020
       Wilmington, Delaware

*/s/ David T. Queroli*
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
David T. Queroli (No. 6318)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

Paul H. Zumbro (admitted *pro hac vice*)
George E. Zobitz (admitted *pro hac vice*)
Karin A. DeMasi (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for the Debtors and Debtors in Possession*

/s/ *Jason H. Rosell*
Jason H. Rosell
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Email: jrosell@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

  */s/ Maris J. Kandestin*
R. Craig Martin (DE No. 5032)
Maris J. Kandestin (DE No. 5294)
DLA PIPER LLP (US)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
Email:  craig.martin@dlapiper.com
       maris.kandestin@dlapiper.com

- and -

Thomas R. Califano (admitted *pro hac vice*)
Rachel Ehrlich Albanese (admitted *pro hac vice*)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 335-4500
Facsimile: (212) 335-4501
Email:  thomas.califano@dlapiper.com
       rachel.albanese@dlapiper.com

*Counsel to Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC)*

_Andrew Goldman_

**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
Andrew N. Goldman, Esq. (admitted *pro hac vice*)
Benjamin W. Loveland, Esq.
Christopher D. Hampson, Esq. (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
E-mail:  andrew.goldman@wilmerhale.com
        benjamin.loveland@wilmerhale.com
        chris.hampson@wilmerhale.com

*Counsel to Disney*

## ANNEX 1

ABC Cable Networks Group
ABC Distribution
ABC Inc.
ABC Studios
American Broadcasting Companies, Inc.
Breaking and Entering Productions, Inc.
Breaking and Entering SPV, LLC
Buena Vista Home Entertainment
Buena Vista International, Inc.
Buena Vista Television
Buena Vista Theatrical Group Ltd
Chestnut Productions, Inc.
Chestnut SPV, LLC
Derailed MX, Inc.
Derailed SPV, LLC
Disney
Disney ABC Networks Group
Disney AssetsCo, LLC
Disney Enterprises Inc.
Disney PropertyCo, LLC
Disney-ABC CNG
ESPN Enterprises, Inc.
Greengrass Productions Inc
Hollywood Pictures Company
International Family Entertainment Inc.
Lucas Film Premiere Theatre
Matador Productions, Inc.
Miramax Holding Corp.
Mrs. Henderson Presents Productions, Inc.
Mrs. Henderson Presents SPV, LLC
Scary Movie 4 LLC
Scary Movie 4 SPV, LLC
SM4 Productions, Inc.
The Matador SPV, LLC
The Muppet Studio LLC
The Walt Disney Company
Walt Disney Motion Pictures Group
Walt Disney Pictures
Walt Disney Pictures and Television

**ANNEX 2(a)**

| Exhibit No. | Debtor | Counterparty | Description of Contract |
|---|---|---|---|
| 369 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | DEAL MEMO RE LICENSE AGREEMENT DTD 6/29/2009 |
| 370 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | DEAL MEMO EFFECTIVE DATE: 6/29/2009 |
| 371 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | DEAL MEMO CONFIRMING MATERIAL DEAL POINTS FOR THE AGREEMENT TO BE DTD 1/20/2012 RE "SPY KIDS: ALL THE TIME IN THE WORLD" EFFECTIVE DATE: 1/20/2012 |
| 372 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | DEAL MEMO GRANTING RIGHTS TO ACNG RIGHT AND LICENSE TO TELECAST MOTION PICTURE "SPY KIDS: ALL THE TIME IN THE WORLD" EFFECTIVE DATE: 1/20/2012 |
| 373 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | DIRECTION TO PAY ASSIGNMENT OF RECEIPTS TO UNION BANK, N.A. EFFECTIVE DATE: 3/26/2012 |
| 374 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | DIRECTION TO PAY DTD 3/26/2012 RE: DEAL MEMO DTD 1/20/2012 |
| 378 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | LICENSE AGREEMENT LICENSE TO TELECAST PROGRAM "SPY KIDS 4" EFFECTIVE DATE: 1/20/2012 |
| 379 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | SCHEDULE #1 TO LICENSE AGREEMENT EFFECTIVE DATE: 6/29/2009 |
| 380 | THE WEINSTEIN COMPANY LLC | ABC CABLE NETWORKS GROUP | SCHEDULE #1 TO LICENSE AGREEMENT RE LICENSE AGREEMENT DTD 6/29/2009 EFFECTIVE DATE: 6/29/2009 |
| 382 | THE WEINSTEIN COMPANY LLC | ABC STUDIOS | KATE WALSH - SCARY MOVIE 5 EFFECTIVE DATE: 8/28/2012 |
| 3303 | THE WEINSTEIN COMPANY LLC | BUENA VISTA TELEVISION | LIVE WITH KELLY AND MICHAEL - BURNT PROMOTION EFFECTIVE DATE: 9/28/2015 |
| 3304 | THE WEINSTEIN COMPANY LLC | BUENA VISTA THEATRICAL GROUP LTD | MARQUEE RELEASE AND LICENSE EFFECTIVE DATE: 9/16/2011 |
| 7139 | THE WEINSTEIN COMPANY LLC | ESPN ENTERPRISES, INC. | OUTPUT DISTRIBUTION AGREEMENT EFFECTIVE DATE: 7/6/2006 |
| 21210 | THE WEINSTEIN COMPANY LLC | SM4 PRODUCTIONS INC | LETTER AGREEMENT DTD 3/10/2011 |

| Exhibit No. | Debtor | Counterparty | Description of Contract |
|---|---|---|---|
| 21213 | THE WEINSTEIN COMPANY LLC / W ACQUISITION COMPANY LLC / FASHION CENTS LLC | SM4 PRODUCTIONS INC | PAYMENT AGREEMENT DTD 11/5/2009 |
| 21214 | THE WEINSTEIN COMPANY LLC | SM4 PRODUCTIONS INC | PAYMENT AGREEMENT DTD 11/5/2009 |
| 21215 | THE WEINSTEIN COMPANY LLC | SM4 PRODUCTIONS INC | PAYMENT AGREEMENT DTD 5/22/2009 |
| 21218 | W ACQUISITION COMPANY LLC/ THE WEINSTEIN COMPANY LLC | SM4 PRODUCTIONS INC | PAYMENT AGREEMENT DTD 5/22/2009 |
| 21219 | W ACQUISITION COMPANY LLC | SM4 PRODUCTIONS INC | SCARY MOVIE 5 EFFECTIVE DATE: 3/10/2011 |
| 21221 | THE WEINSTEIN COMPANY LLC | SM4 PRODUCTIONS, INC. | RE: "SCARY MOVIE 5" DTD 3/10/11 LETTER RE ACQUISITION AGREEMENT DTD 3/25/05 |
| 13824 | THE WEINSTEIN COMPANY LLC | LUCAS FILMS PREMIERE THEATRE | MASTER THEATRICAL EXHIBITION LICENSE AGREEMENT |
| 11341 | THE WEINSTEIN COMPANY LLC | ILM (LUCAS FILM PREMIERE THEATRE) | MASTER THEATRICAL EXHIBITION LICENSE AGREEMENT |
| 16152 | THE WEINSTEIN COMPANY LLC | MUPPETS STUDIO LLC, THE | LICENSE EFFECTIVE DATE: 7/14/2011 |
| 11558 | THE WEINSTEIN COMPANY LLC | INTERNATIONAL FAMILY ENTERTAINMENT INC. | DEAL MEMO EFFECTIVE DATE: 5/24/2010 |
| 20386 | W ACQUISITION COMPANY LLC | WALT DISNEY PICTURES AND TELEVISION | FIRST AMENDMENT TO VISUAL EFFECTS SERVICES AGREEMENT EFFECTIVE DATE: 3/1/2013 |
| 24972 | W ACQUISITION COMPANY LLC | WALT DISNEY PICTURES AND TELEVISION | QUITCLAIM AGREEMENT EFFECTIVE DATE: 5/30/2007 |
| 15409 | W ACQUISITION COMPANY LLC | MIRAMAX FILM CORP | ACQUISITION AGREEMENT DTD 3/29/2005 EFFECTIVE DATE: 9/30/2005 |
| 15475 | W ACQUISITION COMPANY LLC | MIRAMAX FILM CORP | HELLRAISER REMAKE/SEQUEL AGREEMENT SEQUEL AGREEMENT EFFECTIVE DATE: 11/12/2007 |
| 15483 | W ACQUISITION COMPANY LLC | MIRAMAX FILM CORP | LICENSE AGREEMENT DTD 11/12/2007 |
| 15539 | THE WEINSTEIN COMPANY LLC | MIRAMAX FILM CORP | SHORT FORM LICENSE & QUITCLAIM EFFECTIVE DATE: 3/22/2010 (Spy Kids 4) |
| 15576 | W ACQUISITION COMPANY LLC | MIRAMAX FILM NY | LICENSE AGREEMENT EFFECTIVE DATE: 8/31/2010 |

| Exhibit No. | Debtor | Counterparty | Description of Contract |
|---|---|---|---|
| 15581 | W ACQUISITION COMPANY LLC | MIRAMAX FILM NY LLC | LICENSE AGREEMENT EFFECTIVE DATE: 12/1/2010 |
| 15582 | W ACQUISITION COMPANY LLC | MIRAMAX FILM NY LLC | LICENSE AGREEMENT EFFECTIVE DATE: 8/31/2010 |
| 15584 | W ACQUISITION COMPANY LLC | MIRAMAX FILM NY LLC | LICENSE AGREEMENT DTD 12/1/2010 |
| 15585 | W ACQUISITION COMPANY LLC | MIRAMAX FILM NY LLC | LICENSE AGREEMENT DTD 12/1/2010 RE: ACQUISITION AGREEMENT DTD 3/29/2005 |
| 15449 | W ACQUISITION COMPANY LLC | MIRAMAX FILM CORP | CLOSING ITEMS LETTER DTD 9/30/2005 RE: ACQUISITION AGREEMENT DTD 3/29/2005 |
| 15450 | W ACQUISITION COMPANY LLC | MIRAMAX FILM CORP | CLOSING LETTER DTD 9/30/2005 RE: ACQUISITION AGREEMENT DTD 9/30/2005 |
| 15451 | W ACQUISITION COMPANY LLC | MIRAMAX FILM CORP | CLOSING LETTER DTD 9/30/2005 RE: ACQUISITION AGREEMENT DTD 9/30/2005 |
| 6201, 6202, 6203 | THE WEINSTEIN COMPANY LLC / W ACQUISITION COMPANY LLC / THE WEINSTEIN COMPANY HOLDINGS LLC | DISNEY ENTERPRISES INC. | SETTLEMENT AGREEMENT DTD 11/3/2010 |
| 24909 | THE WEINSTEIN COMPANY LLC | WALT DISNEY PICTURES | LETTER AGREEMENT DTD 11/26/2013 [Endgame] |
| 24910 | W ACQUISITION LLC | WALT DISNEY PICTURES | LICENSE AGREEMENT DTD 10/6/2015 [Children of the Corn 9] |
| 24915 | THE WEINSTEIN COMPANY LLC | WALT DISNEY PICTURES | LICENSE AND QUITCLAIM AGREEMENT EFFECTIVE DATE: 5/11/2011 [Spy Kids 4] |
| 24916 | THE WEINSTEIN COMPANY LLC | WALT DISNEY PICTURES | OPTION QUITCLAIM AMENDMENT DTD 12/13/2012 [Endgame] |
| 24919 and 24922 | W ACQUISITION LLC | WALT DISNEY PICTURES | RE "SCARY MOVIE 5" |
| 24928 | W ACQUISITION LLC | WALT DISNEY PICTURES | DISNEY OPT IN LETTER [Scream 4] |
| 24950 | THE WEINSTEIN COMPANY LLC; W ACQUISITION LLC | WALT DISNEY PICTURES | 'LETTER AGREEMENT RE: FRANCHISE PROJECTS – CHILDREN OF THE CORN AND HELLRAISER DTD 1/19/2016. |
| Identified as new contract on Third Supplemental Contracts Schedule | Weinstein Company LLC; W Acquisition LLC | Miramax Film Corp.; Walt Disney Pictures and Television | Letter Agreement re Acquisition Agreement dated August 3, 2009 [Spy Kids 4] |
| Identified as new contract on Third Supplemental | W Acquisition LLC | Miramax Film Corp.; Walt Disney Pictures and Television | License Agreement re Halloween 11 dated 12/1/2010 |

| Exhibit No. | Debtor | Counterparty | Description of Contract |
|---|---|---|---|
| Contracts Schedule | | | |

## ANNEX 2(b)

| Title | Description of Disney Contract | Cure Amount |
|---|---|---|
| Addresses multiple titles and projects; Spyglass to assume only with respect to Assumed Titles | Acquisition Agreement, dated as of March 29, 2005 solely to the extent it applies to Assumed Titles. | |
| Children of the Corn DTV (a/k/a Children of the Corn 8 a/k/a Children of the Corn), released 26 September 2009)<br><br>**Reporting Date: 7/13/2018** | License Agreement, dated as of August 31, 2010, between Miramax Film NY, LLC (successor-to Miramax Film Corp.) (and if and only to the extent applicable, Hardware Distribution, Inc.), on the one hand, and W Acquisition Company LLC, on the other hand, in connection with the proposed feature length theatrical motion picture project or direct-to-video motion picture project tentatively entitled "Children of the Corn 8". | $6,498.00 |
| Children of the Corn DTV (a/k/a Children of the Corn 9 a/k/a Children of the Corn Runaway), released 13 March 2018)<br><br>**Reporting Date: 7/13/2018** | License Agreement, dated as of October 6, 2015, among Disney PropertyCo, LLC, Disney AssetsCo, LLC, and Walt Disney Pictures, on the one hand, and W Acquisition Company LLC, on the other hand, in connection with the proposed production tentatively entitled "Children of the Corn 9". | $2,326.00 |
| Hellraiser DTV (a/k/a Hellraiser 9 a/k/a Hellraiser: Revelations a/k/a Hellraiser Remake/Sequel), released 18 October 2011<br><br>**Reporting Date: 7/13/2018** | License Agreement, dated as of November 12, 2007, between Miramax Film Corp. (and if and only to the extent applicable, Hardware Distribution, Inc.) and W Acquisition Company LLC in connection with the proposed feature-length theatrical motion picture tentatively entitled "Hellraiser Remake/Sequel". | $8,880.00 |
| Hellraiser DTV (a/k/a Hellraiser 10 a/k/a Hellraiser: Judgment) Title released on 3 February 2018<br><br>**Reporting Date: 7/13/2018** | License Agreement, dated as of October 22, 2015, among Disney PropertyCo, LLC, Disney AssetsCo, LLC, and Walt Disney Pictures, on the one hand, and W Acquisition Company, on the other hand, in connection with the proposed production tentatively entitled "Hellraiser 10". | $16,948.00 |

| Title | Description of Disney Contract | Cure Amount |
|---|---|---|
| Scary Movie 5<br><br>**Reporting Date:**<br>**3/31/2018** | License Agreement, dated as of December 1, 2010, between Miramax Film NY, LLC (successor-to Miramax Film Corp.) (and if and only to the extent applicable, Hardware Distribution NY, LLC [successor-in-interest to Hardware Distribution, Inc.]) and Walt Disney Pictures, on the one hand, and W Acquisition Company LLC, on the other hand, in connection with the proposed project tentatively entitled "Scary Movie 5". | $173,102.00 |
| Scream 4<br><br>**Reporting Date:**<br>**3/31/2018** | License Agreement, dated as of October 28, 2009, between Miramax Film Corp. (and if and only to the extent applicable, Hardware Distribution, Inc.) and W Acquisition Company LLC in connection with the proposed feature length theatrical motion picture project tentatively entitled "Scream 4". | $145,766.00 |
| Scream TV: Season One (a/k/a Scream: The TV Series, Season One aka Scream 5)<br><br>Scream TV: Season Two (a/k/a Scream: The TV Series, Season Two aka Scream 5)<br><br>**Reporting Date:**<br>**7/13/2018** | License Agreement, dated as of December 1, 2010, between Miramax Film NY, LLC (successor-to Miramax Film Corp.) (and if and only to the extent applicable, Hardware Distribution NY, LLC [successor-in-interest to Hardware Distribution, Inc.]) and Walt Disney Pictures, on the other hand, and W Acquisition Company LLC, on the other hand, in connection with the proposed project tentatively entitled "Scream 5".<br><br>E-mail, dated May 8, 2015, from Michael Landres of Walt Disney Pictures to Adrian Lopez of TWC confirming that the "Disney Television Program Participation" (as defined in the 2005 Acquisition Agreement) is applicable to the "Scream" TV series in lieu of the 5% ADR participation. | $75,000.00<br><br><br><br><br><br>$105,000.00 |
| Spy Kids 4 (aka Spy Kids 4: All the Time in the World)<br><br>**Reporting Date:**<br>**3/31/2018** | License and Quitclaim Agreement, dated as of March 22, 2010, between Miramax Film Corp. (and if and only to the extent applicable, Hardware Distribution, Inc.) and Walt Disney Pictures, on the one hand, and W Acquisition Company LLC, on the other hand, in connection with the proposed feature length theatrical motion picture project tentatively entitled "Spy Kids 4". | $116,079.00 |
| Spy Kids TV (a/k/a Spy Kids: Mission Critical)<br><br>**Reporting Date:**<br>**3/31/2018** | License Agreement, dated as of December 1, 2010, between Miramax Film NY, LLC (successor-to Miramax Film Corp.) (and if and only to the extent applicable, Hardware Distribution NY, LLC [successor-in-interest to Hardware Distribution, Inc.]) and Walt Disney Pictures, on the one hand, and W Acquisition Company LLC, on the other hand, in connection with the proposed project tentatively entitled "Spy Kids 5". | $100,000.00 |

| Title | Description of Disney Contract | Cure Amount |
|-------|-------------------------------|-------------|
| | E-mail, dated May 8, 2015, from Michael Landres of Walt Disney Pictures to Adrian Lopez of TWC confirming that the "Disney Television Program Participation" (as defined in the 2005 Acquisition Agreement) is applicable to the "Spy Kids" TV series in lieu of the 5% ADR participation. | |
| Bernard and the Genie<br><br>**Reporting Date: 7/13/2018** | Quitclaim Agreement, dated as of April 26, 2010, between Miramax Film NY, LLC (and if and only to the extent applicable, Hardware Distribution, Inc.) and W Acquisition Company LLC in connection with the motion picture project tentatively entitled "Bernard and the Genie". | $0 |
| Cricket in Times Square<br><br>**Reporting Date: 7/13/2018** | Quitclaim Agreement, dated as of September 1, 2010, between Miramax Film NY, LLC, as successor-in-interest to Miramax Film Corp. (and if and only to the extent applicable, Hardware Distribution, Inc.) and W Acquisition Company LLC in connection with the motion picture project tentatively entitled "Cricket in Times Square | $0 |
| Firework Maker's Daughter<br><br>**Reporting Date: 7/13/2018** | Quitclaim Agreement, dated as of September 1, 2010, between Miramax Film NY, LLC, as successor-in-interest to Miramax Film Corp. (and if and only to the extent applicable, Hardware Distribution, Inc.) and W Acquisition Company LLC in connection with the motion picture project tentatively entitled "Firework Maker's Daughter". | $0 |

## ANNEX 3

Breaking and Entering SPV, LLC
Chestnut SPV, LLC
Derailed SPV, LLC
Mrs. Henderson Presents SPV, LLC
Scary Movie 4 SPV, LLC
The Matador SPV, LLC