## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,[1] | Case No. 18-10601 (MFW) |
| Debtors. | **Hearing Date: 08/04/2020 at 10:30 a.m. (ET)**<br>**Obj. Deadline: 07/28/2020 at 4:00 p.m. (ET)** |

## MOTION BY NON-SETTLING PLAINTIFFS
## TO CONVERT DEBTORS' CHAPTER 11 CASES TO CHAPTER 7

Wedil David and Dominque Huett (together, the "Non-Settling Plaintiffs"), by and through

their undersigned counsel, respectfully request entry of an order, substantially in the form attached

hereto as **Exhibit A**, pursuant to section 1112(b) of the Bankruptcy Code, converting the chapter

11 cases of The Weinstein Company Holdings LLC ("TWC") and its affiliated debtors and debtors

in possession (collectively, the "Debtors"), to cases under chapter 7 of the Bankruptcy Code. In

support of this Motion, the Non-Settling Plaintiffs respectfully represent as follows:

### Jurisdiction and Venue

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334, and the Amended Standing Order of Reference from the United States District Court for the

District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. §

157(b). Pursuant to Local Rule 9013-1(f), the Non-Settling Plaintiffs consent to the entry of a final

order by the Court in connection with this matter to the extent that it is later determined that the

---

[1]  The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relevant Background

1.    Wedil David, an actress, was raped by Harvey Weinstein in California in 2016. Dominique Huett, an actress and model, was sexually assaulted by Harvey Weinstein in California in 2010.

2.    Ms. David is the plaintiff in *David v. The Weinstein Company LLC et al*, No. 18 Civ. 5414, pending in the United States District Court for the Southern District of New York.  Ms. David has asserted claims of assault, battery, sexual battery under Cal. Civ. Code § 1708.5, gender violence under Cal. Civ. Code § 52.4, sex trafficking 18 U.S.C. § 1591, negligence and negligent supervision against Harvey Weinstein, The Weinstein Company LLC and The Weinstein Company Holdings LLC.  Ms. David had previously asserted claims of negligence and negligent supervision against Robert Weinstein, who was the former co-Chairman and co-CEO of the Debtors, as well the following members of Debtors' Board of Directors: Lance Maerov, Richard Koenigsberg, Tarak Ben Ammar, Dirk Ziff, Tim Sarnoff, Paul Tudor Jones, Jeff Sackman, and James Dolan (collectively, the "Former Directors").  The district court dismissed Ms. David's claims against the Robert Weinstein and the Former Directors by decisions dated April 24, 2019 and December 19, 2019.  *See David v. Weinstein Co. LLC*, No. 18-CV-5414 (RA), 2019 WL 1864073, at *1 (S.D.N.Y. Apr. 24, 2019); *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290 (S.D.N.Y. 2019).  Ms. David has the right to appeal the dismissal of those claims, and intends to do so, when there is a final decision in her case within the meaning of 28 U.S.C. § 1291.  Her case is currently in discovery, which she has been aggressively pursuing.

3.    Ms. Huett is the plaintiff in *Huett v. The Weinstein Company et al.*, No. 2:18-cv-6012, pending in the United States District Court for the Central District of California.  Ms. Huett has asserted claims for negligence and sex trafficking 18 U.S.C. § 1591 against Harvey Weinstein and The Weinstein Company LLC.  The district court denied Harvey Weinstein's motion to dismiss Ms. Huett's claims.  *See Huett v. Weinstein Co. LLC*, No. 2:18 CV 06012, 2018 WL 6314159, at (C.D. Cal. Nov. 5, 2018).  Ms. Huett's case has been stayed by the district court pending the disposition of criminal proceedings against Harvey Weinstein.  *See Huett v. Weinstein Co. LLC*, 2:18 CV 06012, 2019 WL 2902494 (C.D. Cal. Feb. 28, 2019).

**Harvey Weinstein is Incarcerated and the Debtors are Moribund.**

4.    In the fall of 2017, stories emerged and were widely reported that Harvey Weinstein during a period spanning decades allegedly engaged in sexual misconduct, harassment and rape at TWC or other companies.  Convicted of rape, among other things, he was sentenced to 23 years in prison.  He most likely will spend the rest of his life in prison.  Barring a successfully appeal, Harvey Weinstein should never be able to sexually abuse another woman.

5.    In the wake of the alleged monstrosities, the Debtors ceased operations and filed voluntary petitions with this Court for chapter 11 relief on March 19, 2018 (the "<u>Petition Date</u>").  As of July 13, 2018, the Debtors essentially had ceased operations.  *See* Conversion Motion (defined below) at ¶ 16; Global Settlement Agreement (defined below) at 1.

**The Debtors Have Accomplished all of Their Legitimate Goals in Chapter 11.**

6.    On May 9, 2018, the Court entered an order approving the sale of substantially all of the Debtors' assets [DI. 846] (the "<u>Sale</u>") to Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC) ("<u>Spyglass</u>").  The Sale closed over two years ago, on July 13, 2018.

7.      Having completed the sale of substantially all of their assets and recognizing they no longer need the types of relief that Chapter 11 provides, the Debtors, on May 14, 2019, filed a *Motion for an Order (I) Converting Their Chapter 11 Cases to Cases under Chapter 7 of the Bankruptcy Code and (II) Granting Related Relief* [D.I. 2357] ("Conversion Motion"). The Conversion Motion reflected a moment of objective assessment of the status of the cases from the perspective of the Debtors on behalf of their stakeholders. The Debtors could not justify remaining in chapter 11 with ever-increasing expenses of administration. A chapter 7 trustee could handle any remaining tasks, principally prosecuting D&O claims. In the Conversion Motion and later filed pleadings, the Debtors stipulated or made the following representations to the Court:

a.    "[o]n the Closing Date [of the sale to SpyGlass], the Debtors ceased business operations." Conversion Motion at ¶16; *see also* Global Settlement Agreement at p. 1 ("[Debtors] effectively ceased operations in late 2017 and sold substantially all assets" to Spyglass in 2018).

b.    "[T]he Debtors believe that the primary remaining task for their estates is resolving the D&O claims," which could be "accomplished by a chapter 7 trustee" and qualified contingency fee counsel "without the expense and cost of a chapter 11 plan process." Conversion Motion at ¶25.[2]

c.    The Debtors also stated they "no longer maintain an operating business that requires the benefits afforded by chapter 11." *Id*. at ¶30.

d.    "[T]here is no longer enough liquidity in the estates to confirm a chapter 11 plan … [and] continued delay will only further exhaust the limited assets of the Debtors' estate and increase the risk of unpaid administrative expense claims." *Id*.

e.    The Debtors stated that "[f]or a variety of reasons, including considerations of insurance limitations and timing considerations regarding the initiation of potential proceedings, the Debtors have concluded that conversion is the most effective course for maximizing recovery to the estates." *Id*.

---

[2] Presumably, to the extent any statute of limitations on commencing D&O claims was approaching, the Debtors entered into appropriate tolling agreements to preserve the chapter 7 trustee's right to prosecute the D&O claims.

The status of the Conversion Motion is unclear from the public record. *See* July 15, 2019 Hearing Transcript [D.I. 2521] at 4:6-9 ("Your Honor, I think it probably makes sense to start with a brief status update on the conversion motion. I know that you saw the agenda and it reflects that that's matters been continued.").

**Litigation Related to the Debtors' Cases Pending in NY District Court.**

8.        There is a self-styled "class action" litigation pending in the United States District Court for the Southern District of New York (the "NY District Court"), captioned *Geiss et al. v. The Weinstein Company Holdings LLC et al.*, Case No. 1:17-cv-09554-AKH (S.D.N.Y. Dec. 6, 2017) (the "*Geiss* Action" or "Class Action"). On June 30, 2020, a motion was filed in the *Geiss* Action seeking, among others, a preliminary approval of class settlement and certification of settlement classes (the "Settlement Motion"). On July 14, 2020, the NY District Court denied the Settlement Motion.

**This Court Afforded the Debtors Ample Time to Formulate a Confirmable Plan that Maximizes Recoveries for the Benefit of Tort Victims. The Debtors Failed to do so.**

9.        This Court afforded the Debtors more than one year after they filed their Conversion Motion to formulate a Plan that maximizes recoveries for Tort Victims,[3] the principal stakeholders in these cases. On June 30, 2020, the Debtors and Creditors' Committee filed their Joint Chapter 11 Plan of Liquidation [D.I. 2856] (the "Plan") and related Disclosure Statement [D.I. 2858] (the "Disclosure Statement" or "DS").

10.        The Plan essentially is populated with various settlements: (a) The Weinstein Company Bankruptcy Global Settlement Agreement [D.I. 2856-3] (the "Global Settlement," or "GS"); (b) the Class Action Settlement Agreement [D.I. 2856-4] (the "Class Action Settlement");

---

[3] This Motion may employ capitalized terms defined in the Plan/Disclosure Statement or one or more of the Settlements.

and (c) the Individual Plaintiffs' Settlement Agreement [D.I. 2856-5] (collectively, the "Settlements").  The Plan and Settlements are integrally related and economically interdependent. For example, but without limitation, as condition precedent to confirmation and Effective Date of the Plan, this Court has to rule the Settlements are binding upon all Holders of Claims and Interests and the NY District Court has to enter an order approving the Class Action Settlement.  Plan at § 11.1.  As described more fully below, however, the NY District Court *denied* approval on a preliminary basis of the Class Action Settlement and said that the *Geiss* Action is not a "class" action.[4]

11.    The GS and Plan also provide for: (a) the reimbursement of the Former Representatives legal costs in the amount of $12,216,000 from proceeds of insurance and (b) "to fund $1,500,000 into a segregated account for the benefit of Former Representatives who are or may be parties to any Contract or Commercial Case."  DS at § 5.10.  The Plan at § 1.60 defines Former Representatives to include the TWC Board of Directors, ***including*** Harvey and Robert Weinstein, along with other executives and directors, who are alleged to have facilitated Harvey Weinstein's sexual misconduct.

12.    The effect of the Settlements is to fund with insurance proceeds discrete and substantially different recoveries among unsecured creditors; *i.e.*, Former Representatives, trade and tort claimants.  The Settlements guarantee the amount of some recoveries, others are not or the amounts put forward are subject to substantial dilution before distribution.  The Plan dedicates some insurance proceeds to satisfy claims that are not even insured.  The entire scheme presented to this Court, packaged in the Plan, is fundamentally unfair in whole or part.

---

[4] *See* Class Action July 14, 2020 Hearing Transcript at 11:18-22, attached hereto as **Exhibit B** ("This is not a case suitable for a class. I told you that many times. And what you're doing is just putting this forward not in a motion for class certification, but under the umbrella of a settlement. This is not a class action. You want to test me, make a motion.")

13.     For example, under the Global Settlement, the lion's share of guaranteed financial reward is allocated—not to the victims and survivors of Harvey Weinstein—but to the alleged wrongdoers.  The Global Settlement provides that Former Representatives receive a guaranteed recovery of $12,216,000.  GS at ¶ 1.B.iv(1).  The Former Representatives also receive blanket immunity from future litigation under the Plan; *e.g.* a Channeling Injunction and Release for all Sexual Misconduct Claims.  Plan at § 5.12.  In sharp contrast, although $18,875,000 in insurance proceeds is dedicated to the proposed Class Action Settlement, actual recoveries for victims are not guaranteed and subject to substantial dilution, as set forth below using reasonable estimates for potential litigation and settlement costs:

| PROPOSED CLASS | |
| --- | --- |
| Settlement Fund | $18,875,000 |
| Attorneys' Fees[5] | -$4,718,750 |
| Litigation Costs | -$1,000,000 |
| Settlement Costs | -$2,000,000 |
| | |
| **TOTAL** | **$11,156,250** |

14.     The Non-Settling Plaintiffs face a steeper uphill battle under the proposed Plan for their recovery.  The Plan offers them a deathtrap provision.  If they vote against the Plan, they receive a meager $25,000, are deprived of a jury trial and are *compelled*—without any opt-out—to release a broad swath of Former Representatives and the Insurance Companies.

15.     De-coded under the various definitional schemes, Harvey and Bob Weinstein may receive funds under the Global Settlement from three pots of money:

   a.     A *pro rata* share of the $12,216,000 defense costs reserved for the Former Representatives, *see* Global Settlement at ¶ 1.B.iv(1);

   b.     $1,500,000 in a "Segregated Defense Fund" to defend against the claims of

---

[5] Up to 25% of the Settlement Fund – or $4,718,750 – will go to prospective Class Counsel, including Additional Class Counsel and Subclass Counsel.  *See* Class Action Settlement at ¶ 146.

the Non-Settling Plaintiffs, *id.* at 10 (definition of "Segregated Defense Fund") and ¶ 1.B.iv(2); and

c.     Another $1,500,000 reserved for the Former Representative to defend against contract or commercial cases, *id.* at ¶ 1.B.iv(3).

16.     In addition, $7,295,000 in insurance proceeds will be paid to the Liquidating Trust for the benefit of Holders of Allowed Administrative Expense Claims, Allowed Professional Fees, and Allowed Claims. DS at § 5.8.  In addition to the fact these insurance proceeds are diverted from actual tort victims, they are specifically being dedicated to pay claims that, upon information and belief, are not even covered by insurance.

17.     The Plan also provides spectacularly broad, protective relief for the Insurance Companies and Former Representatives.  Although the Debtors are not reorganizing and clearly not entitled to discharge relief under either sections 524 or 1141(d)(3), they seek a Channeling Injunction,[6] a subsection of section 524, that essentially is a supplemental discharge, for the benefit of non-Debtor third parties.

18.     From the Non-Settling Plaintiffs' perspective, the Disclosure Statement accompanying the Plan is woefully inadequate.  To the extent the disclosures focus on the Debtors,

---

[6] While the Debtors studiously avoid mentioning section 524 in the DS and/or Plan, and softly describe the Channeling Injunction as based on "*[s]ection 105(a) of the Bankruptcy Code and other sections of the Bankruptcy Code* . . . ." DS at 4, the Channeling Injunction is based on section 524.  The Debtors' description of the Channeling Injunction— avoiding any reference to section 524—confirms the old adage "you can put your sneakers in the oven and call them biscuits, but they're still sneakers." The Channeling Injunction clearly is section 524 relief, not appropriately invoked in these cases for a variety of reasons. *First*, the Debtors are not entitled to a discharge, so providing a supplemental discharge for non-operating Debtors is inappropriate.  *Second*, section 105 does not create substantive rights on its own and has to be used in a manner consistent with the Code.  *See In re Continental Airlines,* 203 F.3d 203, 211 (3d Cir. 2000) (§ 105(a) has a limited scope.  It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code.).  Using section 105 in conjunction with section 524(G) is *not* consistent with the Code because section 524 does not apply here. *Third*, a Channeling Injunction should be invoked sparingly and is reserved for *reorganizing* debtors, financially healthy companies except for mass tort liability; *e.g.*, asbestos, that needs to be addressed on an ongoing basis funded by future dividends of the reorganized company. *See, e.g., In re Combustion Eng'g, Inc.*, 391 F.3d 190, 248 (3d Cir. 2004), *as amended* (Feb. 23, 2005) ("The implication of this requirement is that the reorganized debtor must be a going concern, such that it is able to make future payments into the trust to provide an 'evergreen' funding source for future asbestos claimants. Both the Bankruptcy Court and the District Court found the reorganized Combustion Engineering would engage in business operations after consummation of the Plan.").  There is no ongoing tort because Harvey Weinstein is behind bars and there are no future dividends.

who are defunct and cored out, they are misdirected.  Tort victims whose claims possibly are insured care little about the Debtors or their estates.  To make an informed decision whether to accept or reject the proposed Plan funded by insurance proceeds that provides broad third party releases and a Channeling Injunction for Insurance Companies and Former Representatives, the Non-Settling Plaintiffs, not surprisingly, would like to know what is the aggregate amount of insurance proceeds available to address the tort victims' claims?  What claims are covered or not covered?[7]  The Disclosure Statement describes none of this.  Instead, it describes a Plan comprised of Settlements presented as a *fait accompli* to the Court.

19.    This is a Court of equity.  These cases are noteworthy and are the subject of continuing public interest.  This Court should not rubber stamp a Plan populated with a variety pack of Settlements that dictate unjust results.  This Court should not consider for approval a Plan that lends its imprimatur to the Weinstein brothers receiving anything, no less a guaranteed recovery of millions of dollars.  The Weinstein brothers and the other ultra-affluent Former Directors are the alleged tortfeasors largely responsible for, or through negligence contributing to, this debacle.  Despite this, the Plan endorses and ratifies payments to, and overly broad protections for, the Weinstein brothers and Former Directors.  This is accomplished by various Settlements that ignore the D&O Claims that could (and should) be prosecuted against the Weinstein brothers and Former Directors, and the concomitant protections afforded the estates against their claims by sections 502(d) and 510(c).

**The NY District Court States that the *Geiss* Litigation is *Not* a Class Action.**

---

[7] The Former Directors apparently spent no less than $20,360,000 in legal fees and coverage issues are not sorted out. *See* DS at § 5.9 (the reimbursement amount of $12,216,000 is approximately sixty (60%) of the fees and expenses of the Former Representatives incurred as of April 25, 2019).

20.     On July 14, 2020, the NY District Court considered approval of the proposed Class

Action on a preliminary basis.  The District Court flatly denied preliminary approval, remarking:

     a.     the case is not suitable for class action, *see* Ex. B at 11:18-22;

     b.     the settlement agreement unfairly treat all victims the same and that
"[w]omen who have been raped are entitled to a much greater recovery than
women who just met Harvey Weinstein," *id.* at 8:16-17;

     c.     a plan that "regulate[s] the claims of people not involved in the settlement
that have their own cases" is unacceptable, *id.* at 10:15-18;

     d.     "the idea that Harvey Weinstein could get a defense fund ahead of the
plaintiffs is obnoxious," *id.* at 10:14-15; and

     e.     the settlement agreement improperly allows a "special master" to evaluate
each woman's claim and assign a monetary value and that it should be up
to a judge to decide and was an "abdication of the court's responsibility,"
*id.* at 9:8-12.

21.     This Court afforded the Debtors and other key constituents more than ample time

to formulate a consensual Plan.  The Plan they formulated, however, is not confirmable, provides

guaranteed rewards to wrongdoers more than victims and survivors of Harvey Weinstein, and is

predicated on a final order approving a Class Action Settlement that appears to be not forthcoming.

The NY District Court denied the motion to approve the Class Action even on a preliminary basis.

Converting these Chapter 11 Cases to chapter 7 is appropriate for these Debtors as reflected in the

Debtors' prior and initial judgment.

## RELIEF REQUESTED

22.     By this Motion, the Non-Settling Plaintiffs seek conversion of the Debtors' chapter

11 cases to cases under chapter 7 of the Bankruptcy Code.

## BASIS FOR RELIEF REQUESTED

23.     Section 1112(b) of the Bankruptcy Code provides that a party in interest may seek

conversion of a chapter 11 case to chapter 7 "for cause," "whichever is in the best interests of

creditors and the estate." 11 U.S.C. § 1112(b). In applying section 1112(b), the Court *must* convert if it finds that "cause" exists under section 1112(b)(4). *See, e.g.*, *In re Riverbend Cmty., LLC*, No. 11-11771 KG, 2012 WL 1030340, at *3 (Bankr. D. Del. Mar. 23, 2012).

24.    Section 1112(b)(4) cites examples of cause, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" (1112(b)(4)(A)). Cause for dismissal also may exist beyond the various examples cited in 11 U.S.C. § 1112(b)(4). *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161-62 (3d. Cir. 2012). For example, a court may also find cause where there is not "a reasonable possibility of a successful reorganization within a reasonable period of time." *In re Brown, 951 F.2d 564, 572* (3d Cir.1991). The amount of time that is considered reasonable varies. *See, e.g., DCNC N.C. I, L.L.C. v. Wachovia Bank*, Nos. 09–3775, 09–3776, 2009 WL 3209728, at *2-3 (E.D. Pa. Oct. 5, 2009) (four months); *In re Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. 794, 797 (E.D. Pa. 2000) (three months); *In re Halvajian*, 216 B.R. 502, 513 (D.N.J. 1998) (22 months), *aff'd*, 168 F.3d 478 (3d Cir. 1998). Unreasonable delay that is prejudicial to creditors may be considered cause for conversion of a case post-confirmation. *See Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortg. Entities)*, 248 B.R. 368, 375, 378 (9th Cir. BAP 2000) (finding the bankruptcy court did not abuse its discretion by converting a case to Chapter 7 post-confirmation as a result of unreasonable delay in accomplishing plan goals which was prejudicial to creditors).

**Substantial or Continuing Loss to or Diminution of the Estate**

25.    The factors favoring conversion are met here. There is no factual dispute about the status of the Debtors' cases. The Debtors previously acknowledged more than one year ago in their Conversion Motion that these cases could and should be administered in chapter 7. The

Debtors are defunct, have no business operations and maintaining these cases in chapter 11 with attendant professional fees just erodes any remaining assets that may exist.  To date, the Debtors' estates have funded over $25.2 million in aggregate professional fees.  Under the proposed Plan, a portion of insurance proceeds are devoted to paying Professional Fees, which are uninsured claims.  In chapter 7, tort victims may seek relief from the automatic stay to prosecute their claims, have their day in court before a jury, and pursue recoveries against insurance proceeds.

**No Reasonable Likelihood of Successful Reorganization Within a Reasonable Period of Time**

26.     The Debtors have had no business operations since the Petition Date; there are no jobs or enterprise value to preserve.  The Debtors sold substantially all of their assets over 2 years ago.  There is not any possibility of a true reorganization.  There is only liquidation, and that is accomplished with far less cost in chapter 7.  The D&O actions may be prosecuted on a contingency fee basis.  The alternative is to allow the insurance companies and Former Representative to rent this Court and direct the Debtors, their proxies, to prosecute a Plan that rewards and protects wrongdoers and, through extraordinary unwarranted relief, silences Tort Victims and cuts off their access to insurance recoveries.

27.     The Debtors have had more than sufficient time to formulate a confirmable plan that maximizes recoveries to tort victims.  They are not able to do so because the Debtors cannot fund the Plan.  Any Plan the Debtors' propose will be funded by insurance proceeds.  Because the insurance companies control the proceeds, negotiations are focused on cutting off Tort Victims right to have their day in court, protecting the insurance companies and Former Representatives from tort claims,  and limiting the amount—and any disclosure with respect to the aggregate amount—of insurance proceeds available to satisfy tort claims.

28.     The draft Plan already has suffered a major setback.  The Plan is predicated on the approval of the Class Action Settlement, which was denied on a preliminary basis by the NY

District Court.  During the course of the preliminary approval hearing, the NY District Court emphatically stated that the *Geiss* Action will not proceed as a class action.  *See* Ex. B at 11:21-22 ("This is not a class action.  You want to test me, make a motion.").

29.    Based upon the foregoing, the Debtors submits that a chapter 7 trustee will be able to more efficiently and effectively bring these bankruptcy cases to their conclusion by winding down their estates and administering any potential litigation claims that the Debtors' estates may have, including the D&O Claims.

30.    The Non-Settling Plaintiffs have not previously sought this relief but, as noted, the Debtors did.

**WHEREFORE**, the Non-Settling Plaintiffs respectfully request that the Court enter the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

*[Signature follows on next page]*

Dated:  July 21, 2020
        Wilmington, Delaware

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE # 3995)
Zhao (Ruby) Liu (DE# 6436)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Tel.: (302) 777-1111
Email:  rosner@teamrosner.com
       liu@teamrosner.com

-   and   -

**WIGDOR LLP**

Douglas H. Wigdor, Esquire.
Bryan L. Arbeit, Esquire
85 Fifth Ave, Fl. 5
New York, NY 10003
Phone: (212) 257-6800
Email: dwigdor@wigdorlaw.com
      barbeit@wigdorlaw.com

-   and   -

**THE LAW OFFICE OF KEVIN MINTZER, P.C.**

Kevin Mintzer, Esquire
1350 Broadway, Suite 2220
New York, New York 10018
Phone: 646.843.8180
Email: km@mintzerfirm.com

*Counsel for the Non-Settling Plaintiffs*