**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>**Hearing Date: 8/4/2020 at 10:30 a.m. (ET)**<br><br>**Re: D.I. 2859 & 2895** |

**NON-SETTLING PLAINTIFFS' SUPPLEMENTAL OBJECTION TO:**

**DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING DEADLINES FOR FILING PROOFS OF CLAIM SOLELY WITH RESPECT TO TORT CLAIMS, (II) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF**

Wedil David and Dominique Huett (together, the "Non-Settling Plaintiffs"), by and through their undersigned counsel, hereby submit this Supplemental Objection to the *Debtors' Amended Motion for Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim Solely with Respect to Tort Claims, (II) Approving Form and Manner of Notice Thereof, and (III) Granting Related Relief* [D.I. 2895] (the "Amended Bar Date Motion")[2], and respectfully state as follows:

**RELEVANT BACKGROUND**

1. On June 30, 2020, the Debtors filed *Debtors' Motion for Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim Solely with Respect to Tort Claims, (II)*

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Joint Chapter 11 Plan of Liquidation or the Amended Bar Date Motion.

*Approving Form and Manner of Notice Thereof, and (III) Granting Related Relief* [D.I. 2859] (the "Initial Bar Date Motion").

2. On July 14, 2020, the Non-Settling Plaintiffs filed their *Limited Objection* [D.I. 2873] to the Initial Bar Date Motion.

3. On July 21, 2020, the Non-Settling Plaintiffs filed their *Motion to Convert Debtors' Chapter 11 Cases to Chapter 7* [D.I. 2884] (the "Motion to Convert").

4. On July 28, 2020, the Debtors filed the *Debtors' and the Committee's Motion to Continue Hearing on Non-Settling Plaintiffs' Motion to Convert Debtors' Chapter 11 Cases to Chapter 7* [D.I. 2891] (the "Motion to Adjourn").

5. On July 31, 2020, the Debtors filed the Amended Bar Date Motion [D.I. 2895]. The Amended Motion states the *Limited Objection* is moot but invites the Non-Settling Plaintiffs to supplement their *Limited Objection*.

6. The Amended Bar Date Motion suggests the possible sequencing of events for these cases, as follows: the Court considers for approval the Amended Bar Date Motion and then one of two paths is followed. If the Debtors and Committee reach a new deal by August 31, the Debtors and Committee will submit a Revised Plan by that date. If a deal is not agreed upon, the Debtors will submit their own Motion to Convert.[3] If a Revised Plan is submitted, the Debtors intend to object to the Motion to Convert "on a proper briefing schedule established by the Court." *See* Amended Bar Date Motion at 4, n. 4.

[3] It is unclear why the Debtors would incur the expense of teeing up their own motion to convert when the Motion to Convert is already pending. If conversion is ordered, the Non-Settling Plaintiffs will work with the Debtors on a consensual form of Conversion Order.

## SUPPLEMENTAL OBJECTION

### I. The Non-Settling Plaintiffs Object to the Proposed Sequencing.

7. There are two separate, possible conversion events in the near term: (a) the Debtors fail to submit a Revised Plan by August 31 and, separately, (b) the Motion to Convert. The Non-Settling Plaintiffs readily perceive the Debtors' strategy of delaying adjudication of the Motion to Convert to gain momentum for confirmation of a Revised Plan. In fact, the Debtors advise they are working "feverishly" to do so. Motion to Adjourn at ¶ 6. That zeal, however, should be tempered by good stewardship and conservation of the estates' assets. It is *premature* for the Court to consider the Amended Bar Date Motion. The Amended Bar Date Motion should not be considered until the later of August 31 and the Court's adjudication of the Motion to Convert. *First*, the Debtors' estates should not incur the substantial expense[4] of setting and promulgating a tort bar date notice before there is clarity that these cases will remain in chapter 11 and the Debtors will be permitted to go forward with a Revised Plan. *Second*, the tort claimants located domestically, Canada, Ireland ,the U.K., and possibly other jurisdictions, should not be forced to incur the time and expense to comply with the Bar Date (or hire counsel to do so) until it is clear a Revised Plan is going to be put forward.

[4] The proposed notice procedures will be costly:

- Mail/email notice to 59,000 individuals on the Contact List;
- Publication in the following newspapers: *The Hollywood Reporter*, *Variety* and *The New York Post*;
- Online publication for 45 days on the following websites: *The New York Post* (nypost.com), *Page 6* (page6.com), *The Sun* (thesun.co.uk), *The Toronto Star* (thestar.com) and potentially other media resources;
- Informational release to Screen Actors Guild-American Federation of Television and Radio Artists (SAG-AFTRA), Actor's Equity Association (U.S.), British Actors' Equity Association, Actors' Guild of Great Britain, Alliance of Canadian Cinema, Television and Radio Artists (ACTRA), and Canadian Actors' Equity Association; and
- Sponsored search listings on *Google*, *Yahoo!* and *Bing*.

8. In the event these cases convert to chapter 7, a tort bar date will not be of any benefit to a chapter 7 trustee in his or her administration of the estates. The Non-Settling Plaintiffs will seek stay relief by motion/stipulation to return to their respective tribunals of competent jurisdiction, have their day in court before a jury, and, to the extent a judgment is realized, collect insurance proceeds to the extent coverage is available.

## II. The Motion to Convert Should be a Gating Issue

9. The Court should decide as a threshold matter whether these cases should remain in chapter 11 or convert to chapter 7. The Non-Settling Plaintiffs believe this should be discussed at the August 4 status conference. Without limitation, in the Non-Settling Plaintiffs' view:

- The so-called "proper briefing schedule" for the Motion to Convert is illusory and interposed for delay purposes only. There is no substantive basis to administer the Debtors' assets in chapter 11 as the Debtors previously acknowledged by filing their own motion to convert. The only relevant topic is the good faith of the Revised Plan and whether it is put forward for the benefit of the insurance companies or tort victims.

- A Revised Plan funded by insurance companies cannot be for and in the best interests of tort victims.

- Because the true plan proponents are insurance companies, and insurance proceeds are paying professionals' fees and expenses, that compromises the professionals' duty of loyalty. They no longer are disinterested professionals. For example, the Debtors previously sought to prosecute D&O claims, and other claims against Former Directors and Officers. *See* Application/Motion to Employ/Retain Bernstein Litowitz Berger & Grossmann, LLP as Special Litigation Counsel to the Debtors Nunc Pro Tunc to May 1, 2019 [DI 2337]. But this will surely not be the case in the Revised Plan because the persons and entities creating that Plan will not bite the hand that feeds them. In fact, the Revised Plan most likely will seek broad releases to protect the Former Directors and Officers as tortfeasors and affirmatively pay some of them millions of dollars.

- Finally, the Revised Plan will provide insurance companies with an opportunity to re-write downward their existing policy limits. Instead of the towers of policies that currently exist, a fixed sum will be offered and no more.

**III. The Non-Settling Plaintiffs' Initial Limited Objection is not Moot**

10. The Debtors and the Committee claim that the Non-Settling Plaintiffs' initial limited objection is moot because under their "forthcoming revised plan of liquidation, all holders of Tort Claims will be in the same class and their claims will be liquidated in a manner consistent with claims adjudication processes in mass tort bankruptcy cases." *See* Amended Bar Date Motion at 7, n. 5.

11. The Limited Objection is not moot and the Non-Settling Plaintiffs object to any tort claims' bar date. Outside the plan process, there are, upon information and belief, towers of insurance coverage with an aggregate coverage limit that is a multiple of what the insurance companies will offer in the Revised Plan. The insurance companies are motivated to limit the amounts of available coverage/defense costs. The plan process is the way to achieve that goal.

12. The first step is to negotiate with Settlement Parties that have little plaintiff-side representation. The second step is to negotiate with professionals representing out-of-the- money constituents that are uninsured but need insurance proceeds to cover fees and expenses/provide the appearance of a recovery. That "negotiation" leads to the declaration that only $46,786,000 is available to fund a plan even though there actually is far more coverage. There should be no doubt the insurance companies are agreeing to this because they could not achieve a better result if they had to defend these matters before juries and pay defense costs and verdicts. The next step is to silence the victims and survivors of Harvey Weinstein and deny them access to all available insurance coverage by forcing them to participate in the plan process. That is accomplished through a bar date.

[*Signature follows on next page*]

**WHEREFORE**, the Non-Settling Plaintiffs respectfully request that the Court deny the Amended Bar Date Motion and for such other and further relief as is just and proper.

Dated: August 3, 2020
Wilmington, Delaware

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE # 3995)
Zhao (Ruby) Liu (DE# 6436)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Tel.: (302) 777-1111
Email: rosner@teamrosner.com
liu@teamrosner.com

- and -

**WIGDOR LLP**

Douglas H. Wigdor, Esquire.
Bryan L. Arbeit, Esquire
85 Fifth Ave, Fl. 5
New York, NY 10003
Phone: (212) 257-6800
Email: dwigdor@wigdorlaw.com
barbeit@wigdorlaw.com

- and -

**THE LAW OFFICE OF KEVIN MINTZER, P.C.**

Kevin Mintzer, Esquire
1350 Broadway, Suite 2220
New York, New York 10018
Phone: 646.843.8180
Email: km@mintzerfirm.com

*Counsel for the Non-Settling Plaintiffs*