```
             IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE DISTRICT OF DELAWARE

In re:                            ) Chapter 11
                                  )
THE WEINSTEIN COMPANY             )
HOLDINGS, LLC, et al.,            )
                                  ) Case No. 18-10601 (MFW)
         Debtors.                 ) Jointly Administered
_____ )
```

**<u>MEMORANDUM OPINION[1]</u>**

Before the Court is the Motion of Sartraco, Inc. ("Sartraco") to Compel Compliance with Sale Order approving the sale of the assets of The Weinstein Company Holdings, LLC ("TWC"), and its related debtors (collectively, the "Debtors"), to SpyGlass Media Group, LLC ("SpyGlass"). (D.I. 2704.) It is opposed by Netflix, Inc. ("Netflix"). For the following reasons, the Court will deny the Motion.

I. <u>BACKGROUND</u>

Prior to the commencement of this bankruptcy case, in 2012, Sartraco and TWC executed a Domestic Distribution Agreement and a First Amendment thereto (collectively, the "Distribution Agreement") relating to the film <u>Sin City 2</u> (the "Film"). (D.I. 2073 at Ex. A.) Under the Distribution Agreement, Sartraco gave TWC the exclusive right to use and distribute the Film subject to

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is incorporated by reference in Rule 9014.

certain limitations.  (Id.)  Those rights included the right to license the Film to others.  (Id. at ¶ 1(q).)  After the Distribution Agreement was executed, TWC entered into a License Agreement with Netflix with respect to numerous films and other properties (the "License Agreement").  (D.I. 2717 at Ex. 1; D.I. 2719.)  The License Agreement included a license permitting Netflix to air the Film for specific periods subject to the payment of a license fee to TWC.[2]  (Id. at Ex. 2.)

On March 20, 2018, the Debtors filed a petition under chapter 11 of the Bankruptcy Code.  Shortly after the case was filed, Sartraco filed a Motion to Compel Rejection of the Distribution Agreement.  (D.I. 2073.)  On April 1, 2019, the Court entered an Agreed Order granting Sartraco's motion and compelling rejection of the Distribution Agreement (the "Rejection Order").  (D.I. 2251.)  The Rejection Order also provided that the automatic stay did not prevent Sartraco from terminating the Distribution Agreement.  (Id.)  Subsequently, on April 19, 2019, Sartraco terminated the Distribution Agreement with respect to the Film.  (D.I. 2717 at Ex. 4.)

In the interim, the Debtors filed a motion for approval of a sale of substantially all of their assets.  (D.I. 4.)  Thereafter, by Order dated May 9, 2018, the Court approved the

---

[2] The periods ran from June 22, 2016, through June 22, 2018; December 22, 2021 through December 22, 2022; and March 22, 2022, through March 22, 2023.  (D.I. 2717.)

sale to Lantern Entertainment LLC, the predecessor in interest to SpyGlass (the "Sale Order"). (D.I. 846.) The Sale closed on July 13, 2018. SpyGlass and Netflix subsequently stipulated that the License Agreement with Netflix was one of the contracts that was assumed and assigned to SpyGlass pursuant to the Sale Order. (D.I. 1697).

Between April and August 2019, SpyGlass received funds from Netflix under the License Agreement. Sartraco demanded those funds and by agreement with Sartraco, SpyGlass has turned over those funds and agreed to turnover any additional funds it receives from Netflix related to the Film. (D.I. 2704 at ¶ 10.) Sartraco also demanded that Netflix pay directly to Sartraco any current or future license fees that it would normally have paid to SpyGlass under the License Agreement for use of the Film. Netflix has refused to pay Sartraco. As a result, Sartraco filed this Motion on February 10, 2020. (Id.) Netflix opposes the Motion. (D.I. 2717.) A hearing was held on August 4, 2020, at which the parties introduced documentary evidence and presented argument. The Motion was held under advisement and is ripe for decision.

II. JURISDICTION

Sartraco's Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(N) because the Motion seeks to enforce an

"order approving the sale of property." 28 U.S.C. § 157(b)(2)(N). The parties have not contested the authority of the Court to enter a final order on this motion and, therefore, the Court may hear and enter final judgment on the matter. 28 U.S.C. § 157(b)(1); Del. Bankr. L.R. 7008-1. See Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1939 (2015) (parties may impliedly consent to final adjudication by a bankruptcy judge).

III. DISCUSSION

   A.   Standard of Review

This case requires the Court to interpret the language of the Distribution and License Agreements. The Third Circuit Court of Appeals has stated that the "paramount goal of contract interpretation is to determine the intent of the parties." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009). "A court must look to the plain language of a written agreement as the starting point for any contractual interpretation." Quintus Corp. v. Avaya, Inc. (In re Quintus Corp.), 353 B.R. 77, 82 (Bankr. D. Del. 2006). "If a written contract is unambiguous on its face, the plain language of the contract is the exclusive source used for deriving a proper interpretation of the parties' intent." Id. at 82.

B.  <u>Analysis</u>

Sartraco argues that because the right to use and distribute the Film reverted to Sartraco upon termination of the Distribution Agreement, Netflix is obligated to pay directly to Sartraco, not SpyGlass, any fees which may have accrued under the License Agreement since the termination of the Distribution Agreement.

Netflix argues that it does not owe any fees to Sartraco for several reasons.  First, Netflix argues that it does not owe anything under the License Agreement for past use of the Film.[3] It further contends that it has no right to air the Film in the future because the right granted to it under the License Agreement was terminated.  Netflix contends that once Sartraco terminated the Distribution Agreement, it deprived TWC (and consequently, Spyglass) of the right to license the Film to Netflix.  The License Agreement allows Netflix to withdraw any Title from the Agreement "if continued distribution of that Title would be reasonably likely to violate any law, court order" or subject either party to the Agreement to legal liability or

---

[3]   Netflix asserts that, due to the upfront payment structure of the License Agreement, it has already paid 75% of the license fee for the Film, even though it was only able to exploit the Film for 50% of the licensed period.  Netflix argues that under the License Agreement, it has the right to a setoff, refund or credit of a portion of the fees paid for the Film against fees it may owe to SpyGlass for other properties.  (D.I. 2719 at § 2.4.2.)

litigation.  (D.I. 2719 at § 2.4.2.)  Because the Distribution Agreement has been cancelled, Netflix argues that any continued airing of the Film by it would violate applicable law governing Sartraco's rights to the Film.

Sartraco responds that Netflix still has the ability to air the Film so long as Netflix continues to pay Sartraco the fees due under the License Agreement.  It argues that the License Agreement survived termination of the Distribution Agreement, with TWC's rights under that agreement reverting to Sartraco.

Netflix responds that under the express terms of the Distribution Agreement only the <u>right</u> to license the Film reverted to Sartraco, not the existing License Agreement between TWC and Netflix.  Netflix maintains that it has never been in contractual privity with Sartraco and that Sartraco, therefore, has no grounds for seeking payment of any fees under the License Agreement.

The law does not generally provide for automatic survival of sublicenses.  <u>See, e.g.</u>, <u>Fraunhofer-Gesellschaft Zur Förderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.</u>, 940 F.3d 1372, 1380-81 (Fed. Cir. 2019) (stating that sublicense survival depends on interpretation of the relevant master agreement).  Thus, the Court must determine whether the Distribution Agreement's language provides unambiguously that the License Agreement survived termination of the Distribution Agreement.

There is no express term in the Distribution Agreement that provides for survival of licenses existing at the time of termination.  (D.I. 2073 at Ex. A.)  Instead, the Distribution Agreement simply provides that the Rights granted under that Agreement to TWC reverted to Sartraco on termination.  (Id. at ¶ 19(a).)  The Distribution Agreement defines Rights to be the right "to exploit, sublicense, [and] assign . . . the [Film]."  (Id. at ¶ 1(r).)  The grant of these Rights to TWC continued only "so long as [the Distribution Agreement] is in effect."  (D.I. 2073, Ex. A, ¶ 2.)

The Court concludes that under the unambiguous terms of the Distribution Agreement, the rights that TWC had under the License Agreement did not revert to Sartraco.  Rather, the Court concludes that what reverted to Sartraco was simply the right to exploit or license the Film itself.

This conclusion is also consistent with the Bankruptcy Code and the Sale Order.  Under the Bankruptcy Code, contract rights of a Debtor are not assigned to another unless done with approval of the Court.  11 U.S.C. § 365(a).  In fact, in this case, the rights of the Debtors and TWC in the License Agreement were expressly assigned to SpyGlass (not Sartraco) by Order dated November 9, 2018. (D.I. 1697.)

Because the Court concludes that the License Agreement did not revert to Sartraco on termination of the Distribution

Agreement, it concludes that Netflix does not owe any fees to Sartraco under the License Agreement.  Further, because the Distribution Agreement between Sartraco and TWC has been terminated, TWC (and Spyglass) no longer have the right to exploit or license the Film.  Therefore, Netflix is entitled to withdraw the Film from the License Agreement.  The Court will, therefore, deny the Motion.

IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court will deny the Motion of Sartraco, Inc. to Compel Compliance with Sale Order.

An appropriate order follows.

Dated: August 17, 2020

BY THE COURT:

_____
Mary F. Walrath
United States Bankruptcy Judge