## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

———————————————————x
:
In re:                                            : Chapter 11
:
The Weinstein Company Holdings LLC, *et al.*,[1]  : Case No. 18-10601 (MFW)
:
Debtors.                                 : (Jointly Administered)
:
: **Re: Docket No. 2934[2]**
———————————————————x

## DEBTORS' OBJECTION TO THE MOTION OF HARVEY WEINSTEIN FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY TO AUTHORIZE THE PROSECUTION OF PRE-PETITION ARBITRATION PROCEEDINGS IN THE STATE OF NEW YORK

The above-captioned debtor and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this Objection (the "**Objection**") to the motion of Harvey Weinstein ("**Weinstein**" or "**Movant**") *For Entry of an Order Modifying the Automatic Stay to Authorize the Prosecution of Pre-Petition Arbitration Proceedings in the State of New York* (the "**Motion**"). The Motion should be denied because the Movant has not shown (and cannot show) cause to lift the automatic stay. In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.     Two and a half years after Harvey Weinstein's sexual misconduct drove The Weinstein Company Holdings LLC (the "**Company**") into bankruptcy, Weinstein seeks to

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

[2] Objection deadline extended to September 2, 2020 by agreement of the Debtors and Movant.

resurrect his meritless wrongful termination arbitration against the Company (the "**Arbitration**"). The Arbitration is premised on the baseless assertion that the Company's Board of Directors did not have the right to terminate Weinstein in October 2017. Weinstein, now a convicted rapist serving a 23-year prison sentence, should not be allowed to drain Estate resources litigating a hopeless Arbitration. Weinstein simply cannot meet this Court's three-prong standard for stay relief. First, lifting the stay would unduly prejudice the Debtors and the Estate—and most importantly, the creditors, who include the survivors of Weinstein's misconduct. (*See* Section I.A., below.) Second, maintaining the stay would not unduly prejudice Weinstein, who admits that he (like the Estate) cannot afford to pursue the Arbitration. The balance of hardships thus tilts completely in favor of the Debtors and the Estate. (*See* Section I.B., below.) Third, Weinstein has failed to show that he has any probability of succeeding in the Arbitration. (*See* Section I.C., below.)

2. In any event, Weinstein's effort to recover from the Estate is futile. Even if the Court were to lift the stay, and even if Weinstein were to persuade the Arbitrator that the Debtors owed him damages for wrongful termination, Weinstein would have no chance of recovering from the Estate. The Estate's assets are already insufficient to fully satisfy the claims of the remaining unsecured creditors, many of whom are the apparent survivors of Weinstein's sexual misconduct. Even after a successful Arbitration, Weinstein would have to return to this Court—as an insider with unclean hands—and argue that his own unsecured claims deserve the same priority as the claims of any survivors of his misconduct. That effort would surely fail. Therefore, Weinstein faces a dead end, and any further indulgence of Weinstein's claims would only squander the resources of everyone involved. For these reasons, and the reasons set forth below, the Debtors respectfully request that the Motion be denied.

## BACKGROUND

3.      On October 5, 2017, The New York Times published an article that detailed allegations of sexual harassment against Weinstein—the Company's co-founder and then-Co-Chairman—by multiple women spanning nearly three decades.

4.      On October 8, 2017, the Board of Directors terminated Weinstein's employment, a decision that was ratified on October 17, 2017.

5.      On October 25, 2017, Weinstein filed a Demand for Arbitration, seeking compensatory and punitive damages for breach of contract; breach of the implied covenant of good faith and fair dealing; and fraudulent inducement; as well as declaratory relief.

6.      On November 20, 2017, JAMS appointed Robert Davidson as the arbitrator to adjudicate Weinstein's claims.   The parties made their initial document productions on February 23, 2018.

7.      On March 19, 2018, the Company and its affiliated debtors and debtors-in-possession commenced voluntary cases under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").   (D.I. 1.)   Pursuant to Section 362(a) of the Bankruptcy Code, the Arbitration was automatically stayed in the early stages of discovery.

8.      On February 12, 2019, Movant filed Proof of Claim No. 80054 with this Court, reasserting the same wrongful termination claims he made in the Arbitration.

## LEGAL STANDARD

9.      A voluntary petition for relief under the Bankruptcy Code operates as a stay of any pre-petition actions against the debtor.  11 U.S.C. § 362(a)(1).  The automatic stay is "designed to relieve the debtor of the financial pressures that drove [it] into bankruptcy, to protect the bankruptcy estate from being whittled away by creditors' lawsuits, and to implement a system

where all creditors will be treated equally." *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993) (internal quotations and citations omitted).

10.     In "extraordinary circumstances", the Court may "grant relief from the stay . . . for cause". *In re Eagle Enters., Inc.*, 265 B.R. 671, 680 (E.D. Pa. 2001); 11 U.S.C. § 362(d)(1).  This Court applies a three-prong balancing test to determine whether "cause" exists: (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit"; (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor"; and (3) "[t]he probability of the creditor prevailing on the merits." *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120-21 (Bankr. D. Del. 2015) (citing *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)).

## ARGUMENT

## I.     WEINSTEIN HAS FAILED TO SHOW CAUSE TO LIFT THE STAY.

### A.     Lifting the Stay Would Greatly Prejudice the Debtors and the Estate by Squandering Limited Resources.

11.     Lifting the stay would be highly prejudicial to the Debtors and the Estate. Weinstein seeks to resume an Arbitration that had just entered discovery in order to prosecute a claim that is certain to fail.  Such an effort would waste the resources of everyone involved—the Debtors, the Estate, the Estate's creditors and Weinstein himself.

12.     The Arbitration was at an early stage when it was stayed more than two years ago. Prior to the automatic stay, the parties had only begun to share documents and no depositions had been noticed or taken.  *See In re Fairchild Corp.*, No. 09-10899 CSS, 2009 WL 4546581, at *6 (Bankr. D. Del. Dec. 1, 2009) ("[I]t would be distracting for the Debtors' management and professionals to be entangled in [another] action" when "expert reports and depositions have not yet occurred" and "many hours by the Debtor and its professionals would be needed to prepare for

such a trial.").  Neither side is anywhere near ready to proceed to the Arbitration hearing, which had been scheduled to last five days.  *See In re Nw. Airlines Corp.*, No. 05-17930, 2006 WL 382142, at *2 (Bankr. S.D.N.Y. Jan. 12, 2006) (denying stay relief where "the State Court Action appears to be in the initial stages of litigation and the parties are not ready for trial").  Indeed, it is not clear how Weinstein, who is imprisoned for the next 23 years, could even participate in (much less prosecute) the Arbitration.

13.     Completing the Arbitration would be costly and distracting for the Debtors and the Estate during a time when their limited resources would be better spent resolving these bankruptcy cases.  *See In re DVI, Inc.*, 306 B.R. 496, 505 (Bankr. D. Del. 2004) (Walrath, J.) (denying stay relief where it would "cause the[] estate to incur substantial additional attorneys' fees" and the debtors' efforts would be better spent focusing on "administrative matters involved in this chapter 11 case").  It would thus severely prejudice the Debtors and the Estate if they are forced to incur the expense and distraction of defending the Arbitration during this critical period.

14.     Wasting Estate resources would be harmful enough if this were a normal arbitration.  It is not:  the matter that Weinstein seeks to revive is one to pursue a challenge to his own termination arising out of the very misconduct that led the Company into bankruptcy.  In such circumstances, it would be particularly prejudicial for the Debtors and the Estate to expend their remaining resources defending against the wrongdoer himself.  That is all the more true now that Weinstein has been criminally convicted for some of the very misconduct that led to his termination.  Weinstein's misconduct should preclude any attempted recovery from the Estate. *See In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (holding that the doctrine of unclean hands prevents a claimant from recovering from the estate when he has engaged in

"unconscionable act[s]" that are "connected, *i.e.*, have a relationship, to the matters before the court for resolution").

15.     Indeed, Weinstein's entire effort is futile because the Estate's assets are insufficient to cover the general unsecured claims that remain—including those belonging to the survivors of Weinstein's sexual misconduct.   Therefore, even in the highly unlikely event that Weinstein prevails in the Arbitration, principles of equity and statutory requirements under Section 510(c) of the Bankruptcy Code would demand that his claims be either (i) disallowed due to his misconduct or (ii) equitably subordinated to the claims of more deserving creditors.   11 U.S.C. § 510(c) (equitable subordination).  In short, Weinstein has virtually no chance of recovery.  First, it would be impossible for Weinstein to show that he has "clean hands" given that his misconduct is the undisputed cause of these bankruptcy proceedings.  *See, e.g., In re Benninger*, 357 B.R. 337, 350-51 (Bankr. W.D. Pa. 2006) (disallowing claim based on claimant's unclean hands and unlawful acts).  Second, equity and the Bankruptcy Code would demand that Weinstein's claims be subordinated to the claims of other general unsecured creditors, especially any creditors directly harmed by his misconduct (which, in this case, is all of them).  *See, e.g.*, *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 70, 78 (Bankr. D. Del. 2002) (fully subordinating the employment claims of the former CEO, who committed crimes that harmed the estate and other creditors, because "it would be inequitable to allow [the former CEO] to share equally in the distribution of the estate with the very creditors he harmed by his criminal conduct and breaches of fiduciary duties", and noting that "where the claimant is an insider, the standard for finding inequitable conduct is much lower").  Thus, the Arbitration would be a complete waste of time and money.

**B.     Denying the Motion Would Not Prejudice Weinstein.**

16.     Weinstein fails to articulate any hardship that he would suffer if the motion to lift the stay were denied.  For years now, Weinstein has neglected and repeatedly sought to delay the

Arbitration, effectively conceding that the stay is not prejudicing him. Between June 2018 and February 2020, Weinstein's counsel failed to respond substantively to at least *11 requests* from JAMS to confirm that Weinstein would pursue the Arbitration if the stay was lifted.[3] It was not until May of this year—after Weinstein's failure to respond prompted Arbitrator Davidson to invite an application to dismiss the Arbitration ***without prejudice***—that Weinstein's counsel finally responded. (Ex. B (Application to Dismiss Letters).)

17.     Even then, however, Weinstein's counsel still was unable to confirm that Weinstein could actually pursue the Arbitration if the stay was lifted. In response to Weinstein's uncertain position, Arbitrator Davidson indicated that he would dismiss the matter without prejudice, unless Weinstein moved to lift the stay by June 18, 2020. (Ex. C (May 15, 2020 Email from JAMS to Counsel).) Unready to proceed yet again, Weinstein's counsel sought an additional 90-day extension and Arbitrator Davidson extended the deadline to August 19, 2020. Five days before that extended deadline, Weinstein's counsel again sought a 30-day extension, explaining that Weinstein was still not ready to proceed due to a litany of legal, financial and health issues. Arbitrator Davidson denied that request. Accordingly, on August 19, 2020, Weinstein's counsel filed the present Motion. The Motion states that "the JAMS Arbitration is now ripe for adjudication and the stay herein should be lifted so it may proceed on its merits" (Mot. ¶ 14); however, there is no indication that Weinstein is ready to arbitrate his claims. As recently as May 2020, Weinstein's counsel told Arbitrator Davidson that they "see no reason why the Arbitration

---

[3] *See* Ex. A (June 25, 2018 Email from JAMS to Counsel; Jan. 29, 2019 Email from JAMS to Counsel; June 26, 2019 Email from JAMS to Counsel; July 2, 2019 Email from JAMS to Counsel; July 30, 2019 Email from JAMS to Counsel; Aug. 20, 2019 Email from JAMS to Counsel; Sept. 20, 2019 Email from JAMS to Counsel; Oct. 11, 2019 Email from JAMS to Counsel; Jan. 3, 2020 Email from JAMS to Counsel; Jan. 14, 2020 Email from JAMS to Counsel; Feb 3, 2020 Email from JAMS to Counsel).

could not be stayed for another six months while we determine how we may logistically proceed". (Ex. B (Opposition Letter to Application to Dismiss at 1).)  It is thus clear that maintaining the stay would not prejudice Weinstein.  Nor would the dismissal of the Arbitration (a private forum which neither Weinstein nor the Estate has the ability to fund) prejudice Weinstein.  There are many years still remaining on the statute of limitations for Weinstein's contract claim, and the early stage of the matter ensures that it could be easily resumed (whether in this Court or in arbitration) in the unlikely event that Weinstein's claim is ever resurrected.

18.    Finally, Weinstein's reliance on the arbitration provision of his employment agreement is irrelevant to the question of stay relief.  (Mot. ¶ 12.)  None of the cases cited by Weinstein suggests that an arbitration provision can be "cause" for stay relief.[4]  Weinstein is likewise wrong to suggest that the Arbitrator is better situated than this Court to ultimately decide his claims (even assuming the claims were worth adjudicating, which they are not; and even assuming Weinstein had any chance of recovery, which he does not).  This Court has spent two and half years overseeing these bankruptcy cases and has decided dozens of disputes concerning the Estate.  By contrast, the Arbitrator has adjudicated only two disputes unrelated to the merits (concerning the protective order and scope of the parties' document productions), both of which arose and were decided more than two years ago.  It is thus clear which forum is more familiar with the facts and issues underlying Weinstein's claims.

---

[4] *See In re 15375 Mem'l Corp.*, 382 B.R. 652, 689 (Bankr. D. Del.) (allowing a creditor to seek recovery from liability insurance proceeds where there was no hardship to the debtors and no indication that "the proceeds of the liability insurance policies [would] be insufficient to satisfy all claims presented"); *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291 (3d Cir. 2016) (enforcing an arbitration provision in a putative class action with no connection to any bankruptcy proceedings); *In re Conf. of Afr. Union First Colored Methodist Protestant Church*, 184 B.R. 207, 223 (Bankr. D. Del. 1995) (dismissing bankruptcy case where the judge found that the debtors filed for bankruptcy solely to "delay and frustrate legitimate state court proceedings"); *Matter of Baker*, 75 B.R. 120, 121 (Bankr. D. Del. 1987) (granting stay relief on the basis that family courts have more expertise than bankruptcy courts in divorce law).

8

19.     In sum, denying the Motion would not prejudice Weinstein, whereas lifting the stay would severely prejudice the Debtors and the Estate by wasting precious resources.  The balance of hardships thus weighs entirely in the Debtors' and the Estate's favor.

**C.     Weinstein Has Not Shown (and Cannot Show) Any Likelihood of Success on the Merits.**

20.     Finally, although it is not necessary for this Court to address the merits of Weinstein's wrongful termination claims on this Motion, we note that Weinstein has made no attempt to show that he has any probability of success.  Rather, the Motion baldly states that the "arbitration is with merit" and alludes to "[n]ewly discovered information and facts" that Weinstein claims show his termination was unjustified.  (Mot. ¶ 14.)  Those conclusory assertions are both implausible and insufficient to meet Weinstein's burden.  *See In re RNI Wind Down Corp.*, 348 B.R. 286, 299-300 (Bankr. D. Del. 2006), *aff'd*, 359 F. App'x 352 (3d Cir. 2010) (finding that the movant failed to make a prima facie case for stay relief because it failed to offer any evidence in support of its motion).

21.     In fact, the vast public record in the time since his termination shows that the Board was more than justified in terminating Weinstein.  Since October 2017 alone, Weinstein has incited a global movement against sexual misconduct; been accused by more than 80 survivors of various forms of criminal and civil sexual misconduct; caused the Company to collapse, resulting in these bankruptcy cases and job losses for dozens of employees; subjected the Company to dozens of lawsuits and investigations in this country and around the world; been criminally convicted of rape in New York; and been criminally charged with rape in Los Angeles.  The facts and information that have come out since his termination have only confirmed that firing Weinstein was the Board's only option.  Recognizing these improbable odds, Weinstein claims that "even a slight probability

of success on the merits" is enough to lift the stay.  (Mot. ¶ 13.)[5]  But even applying that standard,

Weinstein cannot meet it for all of the reasons discussed above.

WHEREFORE, the Debtors respectfully request that the Court deny the Motion *For Entry of an Order Modifying the Automatic Stay to Authorize the Prosecution of Pre-Petition Arbitration Proceedings in the State of New York* and grant such other and further relief as may be appropriate.

Dated:    September 2, 2020
          Wilmington, Delaware

                              */s/ David T. Queroli*
                              **RICHARDS, LAYTON & FINGER, P.A.**
                              Mark D. Collins (No. 2981)
                              Paul N. Heath (No. 3704)
                              Zachary I. Shapiro (No. 5103)
                              Brett M. Haywood (No. 6166)
                              David T. Queroli (No. 6318)
                              One Rodney Square
                              920 North King Street
                              Wilmington, DE  19801
                              Telephone:   (302) 651-7700
                              Facsimile:   (302) 651-7701

                              -and-

                              **CRAVATH, SWAINE & MOORE LLP**
                              Paul H. Zumbro (admitted *pro hac vice*)
                              George E. Zobitz (admitted *pro hac vice*)
                              Karin A. DeMasi (admitted *pro hac vice*)
                              Worldwide Plaza
                              825 Eighth Avenue
                              New York, NY 10019
                              Telephone: (212) 474-1000
                              Facsimile: (212) 474-3700

                              *Attorneys for the Debtors*
                              *and Debtors in Possession*

---

[5] Again, Weinstein cites cases that are inapplicable to his wrongful termination claims. *See In re Cont'l Airlines, Inc.*, 152 B.R. at 426 (granting stay relief to allow a California court to rule on a discrete issue concerning the scope of a settlement agreement's general release and noting that in "an appropriate case" where the "balance of hardships weighs in favor of [the movant]", a slight probability of success may be sufficient to lift the stay); *In re Fonseca*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990) (noting that in the context of a landlord-tenant dispute, "if a tenant has no legal right to possession, relief from the stay would be readily granted to the owner of a premises" unless there are "strong defenses").