## Exhibit A

**Plan Support Agreement**

*EXECUTION VERSION*

## PLAN SUPPORT AGREEMENT

This PLAN SUPPORT AGREEMENT (as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, this "Agreement"), dated as of October 19, 2020, is entered into by and among The Weinstein Company Holdings, LLC ("Holdings") and The Weinstein Company LLC ("TWC"), each a debtor and debtor in possession in the Chapter 11 Cases, each affiliate of Holdings or TWC that is a debtor in the Chapter 11 Cases as identified on the signature pages hereto (Holdings, TWC and such affiliates, collectively, the "Debtors"), the Committee, the Former Representatives, Harvey Weinstein and the Insurance Companies (each a "Party" and collectively, the "Parties"). Each capitalized term used herein but not otherwise defined shall have the meaning ascribed to it in the Debtors' and the Committee's *Second Amended Joint Chapter 11 Plan of Liquidation*, filed with the Bankruptcy Court on October 1, 2020 and attached hereto as Exhibit C (as it may be further amended, modified, or supplemented from time to time, the "Plan").

## RECITALS

WHEREAS, multiple individuals filed lawsuits, claims or class actions in federal courts, state courts and foreign tribunals alleging, *inter alia*, that Harvey Weinstein engaged in sexual harassment and abuse in violation of federal, foreign and state law, and that certain companies (including the Debtors) and the Former Representatives should also be held responsible for such harassment and abuse;

WHEREAS, on March 19, 2018 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on the terms and subject to the conditions set forth herein and in the Plan, and subject to the approval of this Agreement and the Plan by the Bankruptcy Court, the Parties wish to settle all actual and potential claims, disputes and controversies relating to, connected to or arising out of the allegations against the Debtors, the Former Representatives and (to the extent holders of Sexual Misconduct Claims affirmatively elect) Harvey Weinstein, and it is their intent to avoid the risk, expense and burden of litigation, and permanently to settle and resolve all such disputes, matters, claims, controversies, issues, assertions and causes of action among them, whether known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, domestic or foreign, which have been or could have been alleged or asserted, by and between the Parties, without any admission of fault, liability or wrongdoing on the part of any Party (the "Settlement");

WHEREAS, the Parties have agreed to implement the Settlement through the Plan in a manner consistent in all material respects with the terms and conditions set forth in this Agreement;

WHEREAS, the Parties desire to express to each other their mutual support of and commitment to the Plan and this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    <u>Settlement Amount</u>.

The Insurance Companies, on behalf of the Released Parties (and Harvey Weinstein, only with respect to Sexual Misconduct Claims held by holders of Sexual Misconduct Claims who affirmatively elect to release Harvey Weinstein in accordance with the Plan) shall pay the Settlement Amount of $35,214,882.30 to an account controlled by the Global Escrow Agent in immediately available funds not later than ten (10) Business Days following occurrence of the Effective Date. Each Insurance Company will fund its applicable portion in respect of the Settlement Amount, as specified in Schedule 2 attached to the Plan, which shall collectively total the Settlement Amount. The Global Escrow Agent shall further distribute the Settlement Amount in accordance with Section 5 of the Plan.

2.    <u>Releases</u>.

In consideration of and conditioned upon payment, distribution, allocation and receipt of the Settlement Amount set forth in Section 1 of this Agreement and the other contributions of the Parties, the Settlement Parties conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, disclaim and discharge the Released Parties and their respective property to the maximum extent permitted by law, as further set forth below.

A.    General Release.

i.    Except as otherwise set forth in Sections 2.B and 2.C herein, as of the Effective Date, each of the Settlement Parties that is a signatory hereto releases (and each entity so discharged and released shall be deemed discharged and released by the Settlement Parties) each of the Released Parties that is a signatory hereto and its respective property from any and all Claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any direct or derivative claims asserted or assertable by or on behalf of any of the Settlement Parties, any Claims or causes of action asserted by or on behalf of any of the Settlement Parties, or that any Settlement Party would have been legally entitled to assert in their own right, whether individually or collectively, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law or in equity, based on any matter, cause, thing, conduct or omission occurring prior to the Effective Date and in any way related to the Debtors, their businesses, operations, activities or the Chapter 11 Cases (including, but not limited to, Tort Claims).

B.    <u>Additional Releases</u>.

i.    Additional Releases include the following:

(1)    the Debtors and the Former Representatives release the Insurance Companies from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever (including, without limitation, reimbursement of fees and costs of defense) in any way arising out of or related to the Tort Claims, whether in law, in equity or otherwise, and whether under contract, warranty, tort or otherwise, including but not limited to any claims for bad faith or breach of the implied covenant of good faith and fair dealing; <u>provided</u>, <u>however</u>, this release shall not include any (i) Claims that are not Tort Claims; (ii) Tort Claims that are not permanently released, discharged and enjoined pursuant to the Bankruptcy Injunctions; and (iii) direct and indirect fees, costs and expenses incurred by the Debtors or the Former Representatives in excess of $25,000 per Claim in connection with (a) the enforcement of the Bankruptcy Injunctions and/or (b) any Claim or action by or against a Non-Released Party or by a holder of a Sexual Misconduct Claim who does not affirmatively elect to release Harvey Weinstein (except as otherwise provided in Section 2.B.i(3) below); <u>provided further</u> that with respect to the Claims specified in subparagraphs (i)-(iii) above, the Debtors and the Former Representatives reserve their rights to seek insurance coverage from the Insurance Companies and the Insurance Companies reserve their rights to contest such coverage;

(2)    the Former Representatives and the Debtors who are currently or were previously named parties in the Contract and Commercial Cases waive all challenges to coverage positions taken by the Insurance Companies for each of the Contract and Commercial Cases due to the failure of such Former Representatives and Debtors to issue timely coverage dispute letters to the Insurance Companies, and such Former Representatives and the Debtors shall not seek coverage from the Insurance Companies for any cost or expense incurred in connection with any Contract or Commercial Case for which a coverage position has been waived;

(3)    Harvey Weinstein releases the Insurance Companies for all Claims arising in the Judd Case and the McGowan Case;

(4)    in the event a holder of a Sexual Misconduct Claim affirmatively elects to release Harvey Weinstein, then (i) Harvey Weinstein shall be deemed to release the Insurance Companies from any Claims in any way arising out of, related to or connected to such Sexual

Misconduct Claims; and (ii) the Insurance Companies shall be deemed to release Harvey Weinstein from any Claims in any way arising out of, related to or connected to such Sexual Misconduct Claims;

(5)     the Debtors, the Estates, the Committee and the Non-Debtor Affiliates release the Former Representatives for all of the Estates' Claims and Causes of Action against any Former Representative;

(6)     the Former Representatives and Harvey Weinstein release the Debtors with respect to any and all Claims, including: (i) all general unsecured, priority and/or administrative expense claims that have been asserted or could be asserted against the Debtors (except as set forth in the Plan); (ii) any and all claims for substantial contribution pursuant to Section 503(b)(3) of the Bankruptcy Code (provided that such substantial contribution claims shall only be available as consideration for any releases granted pursuant to the Plan and the approval of the Channeling Injunction and shall not support the request for payments from the Estates); and (iii) any and all contribution and indemnity Claims against the Debtors and/or their respective bankruptcy Estates, except to the extent that any of the Debtors are nominally defendants in any insurance coverage litigation; upon occurrence of the Effective Date and distribution and receipt of the Settlement Amount in accordance with this Agreement and the Plan, all proofs of claim filed by the Former Representatives and Harvey Weinstein shall be deemed disallowed and any amounts owed to the Former Representatives and Harvey Weinstein as reflected on the Debtors' schedules of assets and liabilities shall be deemed released and discharged;

(7)     the Debtors, the Former Representatives and Harvey Weinstein (as applicable) release all holders of Sexual Misconduct Claims, including current or former TWC employees and/or contractors, from any confidentiality, non-disclosure or non-disparagement agreements (if any), arising from or relating to any Sexual Misconduct Claim;[1]

(8)     notwithstanding the foregoing, and in exchange for the consideration herein, the Debtors, the Former Representatives and Harvey Weinstein: (i) fully release and forever relinquish any and all rights for coverage for defense costs or indemnification or otherwise under Policy No. G27085969 005 issued by Westchester Fire Insurance Company to the named insured The Weinstein Company Holdings. The Debtors, the Former Representatives and

---

[1]  On or about the Petition Date, the Debtors publicly announced such release as provided in the press release attached hereto as Exhibit A and the Debtors hereby reaffirm such release.

Harvey Weinstein agree that any duties or obligations of Westchester Fire Insurance Company under Policy No. G27085969 005 are fully and finally extinguished and terminated. By this release, the Debtors, the Former Representatives and Harvey Weinstein reserve no rights or benefits whatsoever under or in connection with Policy No. G27085969 005 with respect to any past, present or future claims whatsoever; and (ii) fully release and forever discharge National Union Fire Insurance Company of Pittsburgh, PA ("National Union") from any obligations, duties, responsibilities, claims, liabilities and damages under Policy No. 01-824-40-28 issued to the named insured The Weinstein Company Holdings. The Debtors, the Former Representatives and Harvey Weinstein agree that National Union's contribution of the remaining unexhausted amount of Policy No. 01-824-40-28 towards the Settlement Amount exhausts the $10 million limit of liability of Policy No. 01-824-40-28. By this release, the Debtors, the Former Representatives and Harvey Weinstein reserve no rights or benefits whatsoever under or in connection with Policy No. 01-824-40-28 with respect to any past, present or future claims whatsoever;

(9)     each Insurance Company releases each and every other Insurance Company for Claims or causes of action, whether in law, in equity, or otherwise, and whether under contract, warranty, tort or otherwise, solely with respect to any claim for recovery of each Insurance Company's respective contribution to the Settlement Amount and any defense costs paid by any Insurance Company prior to the execution of this Agreement for the Claims and any criminal proceedings arising out of the Sexual Misconduct Claims from any other Insurance Company (unless otherwise agreed upon by and between any of the Insurance Companies), provided, however, (i) these releases shall not apply to any Insurance Company's obligations under any contract of reinsurance; and (ii) in the event any Insured seeks coverage for any matters or claims not released herein, each Insurance Company reserves the right to challenge the exhaustion of any applicable policy except Policy No. 01-824-40-28 issued by National Union;

(10)    except as provided in Section 2 above, the Insurance Companies (on behalf of themselves and their subsidiaries, Affiliates, parents, predecessors, or successors (except AIG Europe Limited and AIG Europe SA)) release the other Released Parties from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever (including, without limitation, reimbursement of fees and costs of defense) in any way arising out of or related to the Claims, whether in law, in equity or otherwise, and whether under contract, warranty, tort or otherwise,

including but not limited to any claims for bad faith or breach of the implied covenant of good faith and fair dealing; the Insurance Companies shall not seek recovery of the Settlement Amount or any portion thereof paid by such Insurance Company from any other Released Party for any reason; provided, however the Insurance Companies do not release any rights, defenses or Claims against The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Miramax, LLC, Miramax Film Corporation and/or Miramax Film NY, LLC.

C.    Certain Plan Releases.

    i.    On the Effective Date, all Claims for contribution (including Claims for contribution arising from, related to or connected to Tort Claims) held by a Non-Released Party against all Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, and forever enjoined, discharged and released pursuant to the terms of the Plan.

    ii.    In the event a holder of a Sexual Misconduct Claim does not affirmatively elect to release Harvey Weinstein and such holder obtains any judgment against Harvey Weinstein arising out of, related to or connected to their Sexual Misconduct Claims, such holder may seek to enforce, collect or otherwise recover on such judgment by any manner or means, whether directly or indirectly, from either Harvey Weinstein or the Insurance Companies (as applicable), provided, however, if such holder seeks to enforce, collect or otherwise recover the judgment from the Insurance Companies, Harvey Weinstein shall not seek coverage from the Insurance Companies for such judgment; provided further, that (i) with respect to the such holder's non-released Sexual Misconduct Claims against Harvey Weinstein, the Insurance Companies reserve their rights to contest coverage, and (ii) nothing in this paragraph shall be read to expand or alter the terms, conditions and provisions of any Insurance Policies;

D.    Exclusions and Waivers.

    i.    Notwithstanding the foregoing, the releases set forth in this Agreement and the Plan shall not include or constitute a release of (i) any Claims in Section 2.B of this Agreement that are specifically excluded from the releases set forth in Sections 2.A and 2.B or (ii) any of the following:

        (1)    any Former Representatives' and/or their respective affiliates' or representatives' Claims (other than Claims released in Section 2.B), including any claim for indemnification, against any Released Party other than the Debtors, the Estates and the Former Representatives;

(2)    Robert Weinstein's and Harvey Weinstein's Claims for indemnification against the Non-Debtor Entities that arise from, relate to or connect to Sexual Misconduct Claims;

(3)    in the event a holder of a Sexual Misconduct Claim does not affirmatively elect to release Harvey Weinstein; (i) Harvey Weinstein shall not be required to release the Insurance Companies from any Claims in any way arising out of, related to or connected to such holder's Sexual Misconduct Claims other than as set forth in Section 2.B.i(3); and (ii) the Insurance Companies shall not be required to release Harvey Weinstein from any Claims in any way arising out of, related to or connected to Sexual Misconduct Claims that are not released in accordance with subparagraph (i) of this Section 2.D.i(3);

(4)    the Debtors', Harvey Weinstein's, Robert Weinstein's, Frank Gil's and David Glasser's claims and counterclaims against the Debtors, Harvey Weinstein, Robert Weinstein, Frank Gil and David Glasser, arising out of the actions entitled *Frank Gil v. Weinstein Live Entertainment LLC, et. al.*, Supreme Court of the State of New York, County of New York, Case No. 653555/2019, and *Sartraco et. al. v. Robert Weinstein, et. al.*, Superior Court for the State of California, County of Los Angeles, Case No. 19-cv-00448;

(5)    Claims to enforce the terms of this Agreement and the Plan and any related documents;

(6)    Claims for professional fees, as further described in the Plan.

ii.    The Settlement Parties hereby expressly, knowingly and voluntarily waive the provisions of Section 1542 of the California Civil Code (or any comparable statutory or common law provision of any other jurisdiction with respect to the Claims released pursuant to this Agreement), which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settlement Parties expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully

waive such rights or benefits pertaining to the Claims. In connection with such waiver and relinquishment, the Settlement Parties hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Claims known or unknown, suspected  or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties and Harvey Weinstein. In furtherance of such intention, the release herein given by the Settlement Parties to the Released Parties and Harvey Weinstein shall be and remain in effect as a full and complete general release as to the Claims, notwithstanding the discovery or existence of any such additional or different claims or facts. Each of the Settlement Parties expressly acknowledges that he/she/it has been advised by his/her/its attorney of the contents and effect of Section 1542, and with that knowledge, each of the Settlement Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section.

3.      No Admission.

By entering into this Agreement, no Released Party is admitting any wrongdoing, liability, fault or violation of law and no Insurance Company is admitting coverage under any policy of insurance. Rather, the Parties agree and acknowledge that (i) Debtors, the Former Representatives and Harvey Weinstein deny all allegations and Claims asserted against them, (ii) this Agreement is without prejudice to any coverage position taken or that may be taken by any Insurance Company, any Former Representative or Harvey Weinstein in the event this Agreement does not become effective, and (iii) the Parties are entering into the Settlement to avoid the risk, burden, and expense of continued litigation.

4.      Costs.

None of the Former Representatives, Harvey Weinstein or the Insurance Companies shall have any obligation to provide funds (other than the Settlement Amount) to fund any expense incurred by or in the course of the administration of the Estates, including seeking approval of this Agreement and the Plan; provided, however, the Estates shall not bear the costs of seeking enforcement of the Channeling Injunction or the Plan in any foreign jurisdictions.

5.      Plan Support; Channeling Injunction Support; Other Support.

With respect to the Plan, the Parties further agree as follows:

A.      The Debtors shall (i) have filed the Plan with the Bankruptcy Court on or before October 1, 2020 and (ii) use best efforts to obtain confirmation of the Plan as soon as reasonably practicable in accordance with the Bankruptcy Code and on terms consistent with this Agreement.

B. Each Party shall support entry of the Confirmation Order so long as such order and the Plan are consistent in all material respects with the terms of this Agreement (a "Conforming Chapter 11 Plan").

C. Each Party entitled to vote on the Plan will (i) support and vote to accept the Plan to the extent it is a Conforming Chapter 11 Plan and (ii) opt-in to any consensual releases thereunder.

D. Each Party shall use best efforts to support and cooperate with the Debtors to obtain confirmation of the Plan and any regulatory or other approvals necessary for confirmation or effectiveness of the Plan to the extent it is a Conforming Chapter 11 Plan.

E. No Party shall: (i) object to, delay, impede, or take any other action to interfere with acceptance, confirmation or implementation of the Plan so long as it is a Conforming Chapter 11 Plan; (ii) directly or indirectly solicit approval or acceptance of, encourage, propose, file, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout or plan of liquidation or reorganization for the Debtors other than the Plan so long as it is a Conforming Chapter 11 Plan or (iii) otherwise take any action that would interfere with, delay, impede, or postpone (a) the solicitation of acceptances, consummation or implementation of the Plan so long as it is a Conforming Chapter 11 Plan, or (b) the Effective Date.

F. In the event a person or entity asserts a Claim or commences an action against a Released Party and such Claim or action arises from, connects to or relates to a Tort Claim, the Released Party (or Released Parties) against whom such Claim or action is asserted shall take all commercially reasonable actions to enforce or otherwise have recognized the terms of the Confirmation Order and the Plan (including, but not limited to, the Bankruptcy Injunctions), which provide that such Claim or action is discharged, released and enjoined pursuant to the Confirmation Order and the Plan.

G. The Parties to this Agreement shall support the entry of a Bankruptcy Court order approving the Channeling Injunction.

6. Further Assurances.

The Parties acknowledge and agree that they will each cooperate in the execution and delivery of any other or further documentation that may be reasonably necessary to carry out the intentions of this Agreement.

7. Effectiveness.

A. This Agreement shall be binding on all Parties upon execution and delivery of this Agreement by all Parties subject to the terms and conditions herein and in the Plan.

9

B.    Upon the execution of this Agreement and until the Effective Date, the Parties shall proceed in good faith to seek Bankruptcy Court approval of the Plan and the Parties shall not, directly or indirectly, propose, file, support, solicit, encourage or participate in any Settlement other than the Settlement embodied in the Plan, unless it is a Conforming Chapter 11 Plan.

C.    Any Foreign Court Approval Orders, as may be mutually deemed necessary and agreed upon by Harvey Weinstein and the Former Representatives who seek such orders, and the costs of which shall be borne exclusively by Harvey Weinstein and those Former Representatives who seek such orders, may be obtained at any time and from time to time following the Effective Date (as determined by Harvey Weinstein and such Former Representatives), but shall not constitute a condition to this Agreement becoming fully effective as provided in this Section 7. The Debtors and other Parties will reasonably cooperate with the obtaining of any such Foreign Court Approval Order, but will not be required to incur any unreimbursed costs or expenses related thereto (including attorneys' fees).

D.    In the event the Bankruptcy Court declines to enter the Confirmation Order, unless the Parties agree otherwise, this Agreement shall be deemed terminated, null and void *ab initio*, and the Parties will be excused from any future performance thereunder. In such event, nothing in this Agreement shall be admissible as evidence in any case or proceeding for any purpose, it being the intent of the Parties that in such circumstance all discussions and negotiations related to the Settlement and this Agreement will be treated as inadmissible settlement discussions protected under Federal Rule of Evidence 408 and its state law equivalents.

8.    <u>Tolling</u>.

Any unexpired statute of repose, statute of limitations, limitation or laches period, or other provision that requires, mandates, or establishes any deadline for the commencement or filing of any matter, proceeding or other action, or the assertion of any right, claim or defense related thereto, by or on behalf of the Debtors against the applicable Former Representatives, or any of them, applicable to any of the Excluded Actions (as defined in the Asset Purchase Agreement with Lantern Entertainment dated March 19, 2018) covered under sections 108 and 546 of the Bankruptcy Code (collectively, the "<u>Limitation Deadline</u>"), are hereby tolled until the earlier of (i) the Effective Date, (ii) forty-five (45) days after the first hearing at which the Bankruptcy Court declines to approve the Confirmation Order or (iii) in the event an order converting the Chapter 11 Cases to chapter 7 cases has been entered by the Bankruptcy Court, forty-five (45) days after the date on which a chapter 7 trustee is duly appointed, elected or designated (as applicable).

9.    <u>Governing Law</u>.

This Agreement shall be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and where state law is applicable, the laws of the State of New York shall govern, without giving effect to the choice of law principles thereof, including as to all matters of the construction, validity and performance of this Agreement.

10.    <u>Dispute Resolution.</u>

In the event of a dispute arising out of this Agreement after the Effective Date, such dispute, controversy or claim shall first be referred to the respective senior representatives or counsel of the Parties, who shall in good faith endeavor to amicably resolve the dispute, controversy or claim.  Any such dispute, controversy or claim, including any dispute, controversy or claim arising out of, relating to, or in connection with this Agreement, or the breach, termination of validity thereof that is not resolved by the Parties pursuant to the preceding sentence, shall be adjudicated or otherwise resolved in the Bankruptcy Court; <u>provided</u>, <u>however</u>, that if the Bankruptcy Court is unwilling or unable to hear any such dispute, controversy or claim, the New York State courts located in New York County and/or the federal courts of the United States of America located in New York County will have sole jurisdiction over such dispute, controversy or claim.  Upon the Effective Date, the Parties consent to venue and personal jurisdiction over them in those courts solely with regards to any such dispute, controversy or claim and shall not object to or otherwise challenge the same.

11.    <u>Entire Agreement</u>.

This Agreement, the Plan, and the other documents and agreements contemplated hereby and thereby represent the entire agreement of the Parties with respect to the matters and transactions that are the subject of this Agreement and the Plan.

12.    <u>Integration</u>.

This Agreement, the Plan and the other documents and agreements contemplated hereby and thereby supersede and replace all prior and contemporaneous agreements and understandings, oral or written, between any or all of the Parties with regard to the matters and transactions that are the subject of this Agreement and the Plan.

13.    <u>Amendments</u>.

No amendment to this Agreement shall be effective unless made in writing and signed by all Parties.

14.    <u>Construction</u>.

As this Agreement was jointly drafted by the Parties, no provision of this Agreement shall be construed against or interpreted to the disadvantage of any Party by any court or other governmental or judicial authority by reason of such Party having or being deemed to have structured or drafted such provision.

15.    <u>Notices</u>.

Should any notice be required or sent with respect to this Agreement, such notice shall be in writing and be given in person or by means of electronic mail (with request for assurance of receipt in a manner typical with respect to communications of that type), by recognized overnight courier that maintains written confirmation of delivery or by registered or certified mail, and shall become effective: (i) on delivery if given in person; (ii) on the date of transmission if

sent by electronic mail; (iii) one (1) Business Day after delivery by overnight courier; or (iv) three (3) Business Days after being mailed, with proper postage and documentation, for first-class registered or certified mail, prepaid. Notices shall be addressed as specified in Exhibit B to this Agreement.

16.     Voluntary Signing of Agreement.

The Parties acknowledge that they each have voluntarily entered into this Agreement.  The Parties further acknowledge that they each have read this Agreement and understand all of its terms, including the mutual release and discharge of claims in Section 2 of this Agreement. The Parties acknowledge that they may hereafter discover claims or facts in addition to or different from those they now know or believe to exist with respect to the subject matter of this Agreement which, if they had known or suspected at the time of execution of this Agreement, may have materially affected the Settlement.  The Parties nevertheless agree that the mutual release and discharge of claims in Section 2 applies to any such additional or different claims or facts.

17.     Consent, Withdrawal and Termination Rights.

Each Party may withdraw from this Agreement prior to the Effective Date, solely as to itself, by written notice to all Parties stating the Party's intention to withdraw from this Agreement and the basis for such withdrawal, on or after the occurrence of any of the following (at which time this Agreement shall be deemed to be terminated and null and void *ab initio*):

A.      the Plan or Confirmation Order is amended, modified or otherwise changed in a manner that adversely affects such Party's rights in any material respect, including but not limited to with respect to any of the following: (i) the provisions of the Plan that relate to the exculpation and release of Harvey Weinstein, the Former Representatives or the Insurance Companies contemplated in this Agreement, including, without limitation, any non-consensual releases by any holders of Tort Claims against any Former Representative and the waiver of any such Former Representative's rights to seek full reimbursement under the Insurance Policies; and (ii) the form of Channeling Injunction set forth in Section 5 of the Plan;

B.      the noticing and claims procedures and other implementation in connection with the Channeling Injunction effectuated pursuant to the Plan are not reasonably satisfactory to a Former Representative or an Insurance Company;

C.      the NYOAG has not provided the releases contemplated under the Plan in a form and substance reasonably acceptable to the Former Representatives; or

D.      the Confirmation Order is not entered on or before December 31, 2020 (or such later date as may be agreed to by the Parties).

18. <u>Authority</u>.

Each Party executing this Agreement on such Party's behalf or in a representative capacity represents and warrants that such Party is duly authorized to do so and that such Party's signature so binds the Party or the represented Party (as applicable), its former, current, and future Affiliates, predecessors, successors, privies, assigns, members, partners, employees, agents, representatives, heirs, administrators and executors, and all others who are acting or have acted on its behalf (as applicable).

19. <u>Severability</u>.

If a provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable under applicable law, that provision will be enforced to the maximum extent permitted by applicable law and the remaining provisions of this Agreement will continue in full force and effect.

20. <u>Counterparts</u>.

This Agreement may be executed in one or more counterparts, each of which will be deemed an original and part of one and the same document. Signatures delivered in PDF format shall be deemed original signatures.

****

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed in a manner legally binding upon them as of the date hereof.

[*signature pages follow*]

*For the Debtors*


By: _____

Name:  Ivona Smith

Title:   Director, The Weinstein Company
         Holdings, LLC


The Weinstein Company Holdings LLC,
a Delaware Limited Liability Company

The Weinstein Company LLC,
a Delaware Limited Liability Company

Avenging Eagle SPV, LLC,
a Delaware Limited Liability Company

Branded Partners LLC,
a Delaware Limited Liability Company

Check Hook LLC,
a Delaware Limited Liability Company

CTHD 2 LLC,
a Delaware Limited Liability Company

Cues TWC (ASCAP), LLC,
a Delaware Limited Liability Company

Current War SPV, LLC,
a Delaware Limited Liability Company

DRT Films, LLC,
a Delaware Limited Liability Company

DRT Rights Management LLC,
a Delaware Limited Liability Company

FFPAD, LLC,
a Delaware Limited Liability Company

HRK Films, LLC,
a Delaware Limited Liability Company

InDirections LLC,
a Delaware Limited Liability Company

InteliPartners LLC,
a Delaware Limited Liability Company

ISED, LLC,
a Delaware Limited Liability Company

MarcoTwo, LLC,
a Delaware Limited Liability Company

One Chance LLC,
a Delaware Limited Liability Company

PA Entity 2017, LLC,
a Delaware Limited Liability Company

Paddington 2, LLC,
a Delaware Limited Liability Company

PS Post LLC,
a Delaware Limited Liability Company

Scream 2 TC Borrower, LLC,
a Delaware Limited Liability Company

Small Screen Productions LLC,
a Delaware Limited Liability Company

Small Screen Trades LLC,
a Delaware Limited Liability Company

Spy Kids TV Borrower, LLC,
a Delaware Limited Liability Company

Team Players LLC,
a Delaware Limited Liability Company

The Actors Group LLC,
a Delaware Limited Liability Company

The Giver SPV, LLC,
a Delaware Limited Liability Company

Tulip Fever LLC,
a Delaware Limited Liability Company

TWC Borrower 2016, LLC,
a Delaware Limited Liability Company

TWC Domestic LLC,
a Delaware Limited Liability Company

TWC Fearless Borrower, LLC,
a Delaware Limited Liability Company

TWC Library Songs (BMI), LLC,
a Delaware Limited Liability Company

TWC Loop LLC,
a Delaware Limited Liability Company

TWC Mist, LLC,
a Delaware Limited Liability Company

TWC Polaroid SPV, LLC,
a Delaware Limited Liability Company

TWC Production-Acquisition Borrower
2016, LLC,
a Delaware Limited Liability Company

TWC Production, LLC,
a Delaware Limited Liability Company

TWC Replenish Borrower, LLC,
a Delaware Limited Liability Company

TWC Short Films, LLC,
a Delaware Limited Liability Company

TWC Untouchable SPV, LLC,
a Delaware Limited Liability Company

TWC Waco SPV, LLC,
a Delaware Limited Liability Company

Twenty O Five Holdings, LLC,
a Delaware Limited Liability Company

W Acquisition Company LLC,
a Delaware Limited Liability Company

WC Film Completions, LLC,
a Delaware Limited Liability Company

Weinstein Books, LLC,
a Delaware Limited Liability Company

Weinstein Development LLC,
a Delaware Limited Liability Company

Weinstein Global Funding Corp.,
a Delaware Corporation

Weinstein Global Film Corp.,
a Delaware Corporation

Weinstein Productions LLC,
a Delaware Limited Liability Company

Weinstein Television LLC,
a Delaware Limited Liability Company

WTV Guantanamo SPV, LLC,
a Delaware Limited Liability Company

WTV JCP Borrower 2017, LLC,
a Delaware Limited Liability Company

WTV Kalief Browder Borrower, LLC,
a Delaware Limited Liability Company

WTV Scream 3 SPV, LLC,
a Delaware Limited Liability Company

WTV Yellowstone SPV, LLC,
a Delaware Limited Liability Company

*For Current Films UK Limited*
*a Delaware Limited Liability Company*


By: _____

Name: Ivona Smith
Title:   Director, The Weinstein Company
         Holdings, LLC


*For MarcoThree, LLC,*
*a Delaware Limited Liability Company*


By: _____

Name: Ivona Smith
Title:   Director, The Weinstein Company
         Holdings, LLC


*For Tulip Fever Films Limited,*
*a Delaware Limited Liability Company*


By: _____

Name: Ivona Smith
Title:   Director, The Weinstein Company
         Holdings, LLC


*For The Weinstein Company (UK) Ltd.,*
*a UK Private Limited Company*


By: _____

Name: Ivona Smith
Title:   Director, The Weinstein Company
         Holdings, LLC

*EXECUTION VERSION*

*For the Official Committee of Unsecured Creditors*

By: _____

Name: Louisette Geiss

Title: Committee Co-Chair

*EXECUTION VERSION*

*For the Official Committee of Unsecured Creditors*

By: _____

Name: Lori Wentworth Odierno,
      William Morris Endeavor
      Entertainment
Title: Committee Co-Chair

*For Harvey Weinstein*


By: _Imran H. Ansari_
Name:   Imran H. Ansari., Esq.
Title:    Partner, Aidala, Bertuna &
            Kamins PC

*EXECUTION VERSION*

*For Robert Weinstein*


By:_____ _____
Name:
Title:

DocuSign Envelope ID: 5E9E475C-6603-4D67-8F84-B82D074E77F7

*EXECUTION VERSION*

*For James Dolan*

By: _____

Name:

Title:

For Frank Gil

By: _____
Name:
Title:

*EXECUTION VERSION*

*For David Glasser*

By:  /s/ Douglas E. Grover
Name:  Douglas E, Grover
Title:    Partner
            Schlam Stone & Dolan LLP

*EXECUTION VERSION*

*For Paul Tudor Jones*

By:_____

Name:

Title:

*EXECUTION VERSION*

*For Marc Lasry*

By:_____
Name:
Title:

*For Jeff Sackman*


By:_____

Name:

Title:    jeff sackman

*EXECUTION VERSION*

For Barbara Schneeweiss

By:

Name:

Title:

Scanned with
Mobile Scanner

*EXECUTION VERSION*

*For Lance Maerov*

By:_____

Name:

Title:

*For Tarak Ben Ammar*

By:_____

Name: Tarak BEN AMMAR

Title:

*EXECUTION VERSION*

*For Richard Koenigsberg*

By:_____

Name: Richard Koenigsberg

Title:

*EXECUTION VERSION*

*For Dirk Ziff*

By: _____

_____
Name:

Title:

*For Tim Sarnoff*

By: _____

Name: _____

Title: _____

*EXECUTION VERSION*

For Fireman's Fund Insurance
Company

By: _____
Name:    IAN GALLOWAY
Title:    CLAIM DIRECTOR

*EXECUTION VERSION*

For The American Insurance
Company

By:

Name: IAN GALLOWAY

Title: CLAIM DIRECTOR

*EXECUTION VERSION*

*For National Union Fire Insurance Company of Pittsburgh, PA.*


By: *Richard F. Dziedziula*

Name:   Richard F. Dziedziula

Title:    Vice President Financial Lines

*EXECUTION VERSION*

*For ACE American Insurance Company*

By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
         Coverage & Complex Claims

*EXECUTION VERSION*

*For Chubb National Insurance
Company*

By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
             Coverage & Complex Claims

*EXECUTION VERSION*

*For Executive Risk Indemnity Inc.*

By:_____

Name:  Christopher J. Celentano

Title:   Senior Vice President,
         Coverage & Complex Claims

*EXECUTION VERSION*

*For Federal Insurance Company*

By:_____

Name:  Christopher J. Celentano

Title:  Senior Vice President,
        Coverage & Complex Claims

*For Great Northern Insurance Company*

By:_____

Name:  Christopher J. Celentano

Title:   Senior Vice President,
         Coverage & Complex Claims

*EXECUTION VERSION*

*For Pacific Indemnity Company*


By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
         Coverage & Complex Claims

*EXECUTION VERSION*

*For Westchester Fire Insurance Company*

By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
            Coverage & Complex Claims

*EXECUTION VERSION*

*For Chubb Indemnity Insurance Company*

By:_____

Name:  Christopher J. Celentano

Title:   Senior Vice President,
         Coverage & Complex Claims

## **EXHIBIT A**

The Weinstein Company Press Release of March 19, 2018



THE WEINSTEIN COMPANY

**TWC and Lantern Capital Partners Enter Into Stalking Horse Agreement
for Section 363 Sale**

**Deal Contemplates Business Continuing as a Going Concern**

**TWC Releases NDA Obligations**

FOR IMMEDIATE RELEASE – March 19, 2018

The Weinstein Company Holdings LLC today entered into a "stalking horse" agreement with an affiliate of Lantern Capital Partners, a Dallas-based private equity company.  TWC entered into the agreement with Lantern in conjunction with the filing of a voluntary petition under the United States Bankruptcy Code in the United States Bankruptcy Court in the District of Delaware.  Under the agreement, Lantern will purchase substantially all of the assets of the Company, subject to certain conditions including approval of the Bankruptcy Court.  The Board selected Lantern in part due to Lantern's commitment to maintain the assets and employees as a going concern.  The Company hopes that this orderly sale process under the supervision of the Bankruptcy Court will allow it to maximize the value of the Company's assets for the benefit of its creditors and other stakeholders.

Today, the Company also takes an important step toward justice for any victims who have been silenced by Harvey Weinstein.  Since October, it has been reported that Harvey Weinstein used non-disclosure agreements as a secret weapon to silence his accusers.  Effective immediately, those "agreements" end.  The Company expressly releases any confidentiality provision to the extent it has prevented individuals who suffered or witnessed any form of sexual misconduct by Harvey Weinstein from telling their stories.  No one should be afraid to speak out or coerced to stay quiet.  The Company thanks the courageous individuals who have already come forward.  Your voices have inspired a movement for change across the country and around the world.

"While we had hoped to reach a sale out of court, the Board is pleased to have a plan for maximizing the value of its assets, preserving as many jobs as possible and pursuing justice for any victims," said Chairman Robert Weinstein.  The Board also expressed its great appreciation to New York Attorney General Eric Schneiderman, and his colleagues, for helping the Company achieve these objectives.



Lantern co-founders Andy Mitchell and Milos Brajovic stated: "We are honored to be selected as the bidder to acquire the company's businesses as an ongoing concern. In the last several months, Lantern has evaluated the company and is proud to provide a solution to the board. As with all our businesses, Lantern will improve the performance of the company's businesses with the utmost respect to all employees and promote a diverse and transparent environment. We are grateful for everyone involved in the transaction and look forward to following through on our promise to reposition the business as a preeminent content provider, while cultivating a positive presence in the industry."

The Company regrets that it cannot undo the damage Harvey Weinstein caused, but hopes that today's events will mark a new beginning. Even as the Company heads into bankruptcy, the Company remains committed to doing whatever it can to maximize value for its creditors and, in cooperation with Attorney General, continue its pursuit of justice for any victims.

### About Lantern Capital Partners

Founded in 2010, Lantern is a private equity firm that has managed and/or acquired over $2 billion in assets across a diverse range of industries. As a true partner to investors with a commitment to providing solutions to complicated business problems, Lantern believes in hands-on investment management and partnership with leading industry executives and complete integrity. Lantern has earned the reputation for its turnaround capabilities because of the history of investing in and contributing to the growth of businesses that foster long-term value. Led by Co-Founders Andy Mitchell and Milos Brajovic, Lantern Capital Partners is headquartered in Dallas, TX, with its affiliate, Lantern Asset Management. For more information about Lantern, please visit www.lanternam.com.

## **Exhibit B**

To the extent any notice is required with respect to the Agreement, notices shall be addressed as follows:

if to Debtors:

Paul H. Zumbro
Lauren A. Moskowitz
CRAVATH SWAINE & MOORE, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Phone: (212) 474-1000
pzumbro@cravath.com
lmoskowitz@cravath.com

and

Paul N. Heath
RICHARDS, LAYTON & FINGER, PA
920 N King St.
Wilmington, DE 19801
Phone: (302) 651-7700
heath@RLF.com

if to the Committee:

James I. Stang (CA Bar No. 94435)
Robert J. Feinstein (NY Bar No. 1767805)
Debra I. Grassgreen (CA Bar No. 169978)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile:  302-652-4400

if to Former Representatives

        Elior Shiloh
        LEWIS BRISBOIS BISGAARD & SMITH, LLP
        77 Water Street, Suite 2100
        New York, NY 10005
        Phone: (212) 232-1300
        elior.shiloh@lewisbrisbois.com

        and

        Adam Harris
        SCHULTE ROTH & ZABEL LLP
        919 Third Avenue
        New York, NY 10022
        Phone: (212) 756-2253
        adam.harris@srz.com

        and

        Lawrence S. Spiegel
        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        One Manhattan West
        New York, New York 10001
        Phone: (212) 735-3000
        lawrence.spiegel@skadden.com

        and

        Marvin Putnam
        LATHAM & WATKINS LLP
        10250 Constellation Blvd. Suite 1100
        Los Angeles, CA 90067
        Phone: (424) 653-5588
        marvin.putnam@lw.com

        and

        Mark Silverschotz
        ANDERSON KILL P.C.
        1251 6th Avenue
        New York, NY 10020
        Phone: (212) 278-1000
        msilverschotz@andersonkill.com

and

Kathy Jorrie
PILLSBURY WINTHROP SHAW
PITTMAN LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017
Phone: (213) 488-7100
kathy.jorrie@pillsburylaw.com

and

Israel David
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, NY 10004
Phone: (212) 859-8000
israel.david@friedfrank.com

and

James D. Wareham
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
Phone: (202) 639-7000
james.wareham@friedfrank.com

and

Ann Kramer
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 521-5400
akramer@reedsmith.com

and

James V. Masella, III
Daniel A. Lowenthal
Alejandro H. Cruz
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 6th Avenue
New York, NY 10036
Phone: (212) 336-2000
jmasella@pbwt.com
dalowenthal@pbwt.com
acruz@pbwt.com

and

John J. Rosenberg
ROSENBERG, GIGER & PERALA P.C.
1330 Avenue of the Americas
Suite 1800
New York, NY  10019
Phone:  (646) 494-5000
jrosenberg@rglawpc.com

and

Douglas E. Grover
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, NY 10004
Phone: (212) 344-5400
dgrover@schlamstone.com

If to the Insurance Companies:

E. Joseph O'Neil
PEABODY & ARNOLD LLP
600 Atlantic Avenue
Boston, MA 02210
Phone: (617) 951-4705
eoneil@peabodyarnold.com

and

Alex Fooksman
AIG
80 Pine Street 5th Floor
New York, NY 10005
Phone: (646) 857-2168
alex.fooksman@aig.com

and

David Simantob
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
555 South Flower Street Suite 2900
Los Angeles, CA 90071
Phone: (213) 330-8819
david.simantob@wilsonelser.com

and

Sherry L. Pantages
ALLIANZ GLOBAL CORPORATE & SPECIALTY
2350 West Empire Avenue, Suite 200
Burbank, CA 91504 USA
Phone: (818) 972-5204
sherry.pantages@agcs.allianz.com

and

Christopher Celentano
CHUBB
10 Exchange Place, 9th Floor
Jersey City, NJ 07302
Phone: (201) 479-6398
Christopher.celentano@chubb.com

and

Edward Gibbons
Joyce Noyes
WALKER WILCOX MATOUSEK LLP
One North Franklin Street
Chicago, IL 60606
Phone: (312) 244-6700
egibbons@walkerwilcox.com
jnoyes@walkerwilcox.com

# **EXHIBIT C**

Plan
[*omitted*]