# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*, | : | Case No. 18-10601 (MFW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |
| | : | Related Docket No. 3031 |

## LIMITED OBJECTION OF SEYFARTH SHAW LLP TO JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR APPROVAL OF DISCLOSURE STATEMENT

Seyfarth Shaw LLP ("Seyfarth"), solely in its capacity as a prepetition creditor, by and through its undersigned counsel, hereby files this *Limited Objection of Seyfarth Shaw LLP to Joint Motion of the Debtors' and the Official Committee of Unsecured Creditors for Approval of Disclosure Statement* (the "Objection") in opposition to the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order (A) Approving the Adequacy of the Disclosure Statement, (B) Approving Solicitation Procedures, (C) Setting Confirmation Hearing Date and Related Deadlines, (D) Estimating Certain Claims, and (E) Granting Related Relief* (ECF No. 3031), and in support thereof states as follows:

## BACKGROUND

### A.  Seyfarth's Prepetition Representation of Debtors

1.  On March 19, 2018 (the "Petition Date"), the Weinstein Company Holding LLC and its affiliated debtors in these jointly administered Chapter 11 cases (the "Debtors") filed their

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

66433096v.4

respective voluntary petitions for relief under chapter 11 of title 11, U.S.C (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

2.     Prior to the Petition Date, Seyfarth represented the Debtors[2] in numerous proceedings (the "Pre-Petition Procedures"),[3] including:

| | |
|---|---|
| *Gregory Ackers v. The Weinstein Company LLC, et al.* | Superior Court of California, County of Los Angeles (CA Index No.: BC681850) |
| *Alexandra Canosa v. The Weinstein Company Holdings, LLC, et al.* | Supreme Court of the State of New York, New York County (N.Y. Index No.: 161254/2017) |
| *Jane Doe, et al. v. The Weinstein Company LLC, et al.* | Superior Court of California, County of Los Angeles (CA Index No.: BC683411) |
| *Doe III v. The Weinstein Company LLC* | (London, England Index No.: HQ17P04249) |
| *Louisette Geiss, et al. v. The Weinstein Company Holdings, LLC, et al.* | United States District Court, Southern District of New York (S.D.N.Y. Index No.: 17-CV-09554) |
| *Dominique Huett v. The Weinstein Company LLC* | Superior Court of California, County of Los Angeles (CA Index No.: BC680869) |
| *In Re Grand Jury Proceedings in the County of New York* | Supreme Court of the State of New York, New York County (ICMS Case Nos. 401223 & 2017-00401365) |
| *In Re Grand Jury Proceedings in the U.S. District Court for the Southern District of New York* | United States District Court, Southern District of New York (Subpoena Nos. Pending) |
| *Kadian Noble v. The Weinstein Company Holdings, LLC* | United States District Court, Southern District of New York (S.D.N.Y. Case No.: 17-CV-09260) |
| *The People of the State of New York, by Eric T. Schneiderman, Attorney General of the State of New York* | Supreme Court of the State of New York, New York County (Index No.: TBD) |

---

[2] Seyfarth represented, and continues to represent, only the Debtors.
[3] Although the majority of the above-referenced cases were stayed by Debtors' bankruptcy filings, the New York State and federal grand jury proceedings, as well as the New York State Attorney General's investigation, were not stayed by the bankruptcy filings. Subsequently, the Court modified the automatic stay to permit a number of the above-referenced cases to continue.

| | |
|---|---|
| *Sandeep Rehal v. The Weinstein Company Holdings, LLC, et al.* | United States District Court, Southern District of New York (S.D.N.Y. Case No. 18-cv-674) (Dismissed) (N.Y. Index No.: 151738/2018) |
| *Pamela Swain v. The Weinstein Company LLC, et al.* | Supreme Court of the State of New York, New York County (N.Y. Index No.: 101753/2017) |
| *Tensor Law P.C. o/b/o Paz De La Huerta v. The Weinstein Company, et al.* | Superior Court of California, County of Los Angeles (CA Index No.: SC128650) (Dismissal); United States District Court, Central District of California (S.D.N.Y. Case No. 18-cv-1490) |
| *Jane Doe I, et al. v. The Weinstein Company LLC* | (C.D. Cal. Index No.: 17-CV-08323) |

3. Seyfarth also represented the Debtors in connection with claims as to which formal lawsuits had not yet been filed.

4. Prior to the Petition Date, Seyfarth devoted substantial time and resources representing the Debtors in connection with the above-referenced matters. Seyfarth filed and opposed various motions, participated in oral arguments and court conferences, negotiated on behalf of the Debtors, conducted significant legal research, drafted various legal agreements, and engaged in voluminous document review and production.

5. At the Petition Date, Seyfarth was owed $1,198,982.47 by the Debtors for fees and disbursements incurred in representing the Debtors prior to the Petition Date in connection with the above-referenced matters.

B. **Seyfarth's Post-Petition Representation of the Debtors**

6. On April 18, 2018, the Court entered the Order Authorizing the Debtors to Employ and Compensate Professionals Utilized in the Ordinary Course of Business, Effective Nunc Pro Tunc to the Petition Date [Docket No. 253] (the "OCP Order").

3

7. On May 3, 2018, pursuant to and in accordance with the OCP Order, the Debtors, on behalf of Seyfarth, filed the Declaration of Disinterestedness in Support of Retention of Seyfarth Shaw LLP as an Ordinary Course Professional [Docket No. 700] (the "Seyfarth OCP Declaration"). As set forth in the Seyfarth OCP Declaration, the Debtors sought to retain Seyfarth as an Ordinary Course Professional with respect to certain matters. As no parties in interest objected to the Seyfarth OCP Declaration, on May 17, 2018, pursuant to the OCP Order and the Seyfarth OCP Declaration, the Debtors were authorized to retain and pay Seyfarth as an Ordinary Course Professional, effective nunc pro tunc to the Petition Date.

8. Given the complexity of the matters involved and the amount of time and work required to adequately represent the Debtors, the Debtors concluded thereafter that Seyfarth's fees and expenses would regularly exceed the Monthly Fee Limit set forth in the OCP Order. Accordingly, on July 13, 2018, the Debtors filed the Debtors' Application Pursuant to 11 U.S.C. § 327(e) to Retain and Employ Seyfarth Shaw LLP as Special Litigation Counsel to the Debtors Nunc Pro Tunc to July 18, 2018 [Docket No. 1239] (the "Seyfarth 327(e) Application") seeking entry of an order retaining Seyfarth as special litigation counsel effective as of July 18, 2018 (the "Retention Date"). On August 13, 2018, the Court entered an Order authorizing the Debtors to retain Seyfarth nunc pro tunc to the Retention Date (the "Seyfarth 327 Retention Order").

9. The Seyfarth Retention Order did not modify Seyfarth's retention as an Ordinary Course Professional. Accordingly, for the period prior to the Retention Date, Seyfarth's retention and compensation remain governed by the OCP Order. The Seyfarth 327 Retention Order authorized Seyfarth to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses. Seyfarth has continued to represent the Debtors in connection with the ongoing Pre-Petition Proceedings including Seyfarth's defense of the Debtors in *Geiss, et al, v. The Weinstein Company Holdings LLC, et al*, a putative class action which, as a result of

Seyfarth's efforts, was dismissed by the United States District Court for the Southern District of New York. As of August 2020, Seyfarth has incurred postpetition fees and expenses of $1,546,066.00

### C. Liability Insurance Policies

10. In connection with the operation of its business, the Debtors maintained liability insurance policies[4] (the "Insurance Policies") with Fireman's Fund Insurance Companies ("Fireman's") from April 7, 2006 through April 7, 2016 and the Chubb Group of Insurance Companies ("Chubb"; together with Fireman's, collectively the "Insurance Companies") from April 7, 2016 through April 7, 2018. The Insurance Policies provide for the payment of attorneys' fees and litigation expenses incurred in the defense of a lawsuit without diminishing the coverage limits under the policy.

11. Specifically, the Fireman's policy provides that Fireman's has "the right and duty to defend the insured against any suit seeking . . . damages" for bodily injury or property damage, Commercial Liability Coverage Form CG 00 01 04 13 (the "Fireman's Policy") at 1, or "personal and advertising injury." *Id.* at 6.[5] Further, the "Supplementary Payments -Coverages A and B" provides "[Fireman's] will pay, with respect to any claim we investigate or settle, or any suit against an insured we defend . . . [a]ll expenses we incur . . . These payments **will not** reduce the limits of insurance." *Id.* at 9 (emphasis added). The total Fireman's "Limit of Insurance" for general liability coverage is $2,000,000. Fireman's Policy at GL-1. Debtors also maintained an umbrella policy with Fireman's in the amount of $15,000,000 from April 7, 2007 through April 7, 2016.

---

[4] Although the Seconded Amended Disclosure Statement includes as Exhibit D certain letters from insurance companies declining to provide coverage for "sexual misconduct claims", the Disclosure Statement fails to indicate whether any of the Debtors' insurance companies accepted coverage under any of their policies.

[5] The "right and duty to defend" does not end until "we have used up the applicable limit of insurance in the payment of judgments or settlements . . . . Fireman's Policy at 1.

12.     Similarly, the "Investigation, Defense, and Settlements" section of the Chubb Liability Insurance Policy, Form 80-02-0010 (the "Chubb Policy"), states that Chubb has "the right and duty to defend the insured against a suit, even if such suit is false, fraudulent or groundless. If such a suit is brought, we will pay reasonable attorney fees and necessary litigation expenses to defend: the insured." *Id.* at 4. The Chubb Policy provides that "[s]uch attorney fees and litigation expenses will be paid as described in the Supplementary Payments section of this contract." *Id.* The "Supplementary Payments" section provides that Chubb will pay "the expenses we incur" and "[t]hese payments **will not** reduce the Limits Of Insurance." *Id.* at 4-5 (emphasis added). The total Chubb "Limit of Insurance" for general liability coverage is $2,000,000. Debtors also maintained an excess insurance policy in the amount of $15,000,000 with Chubb from April 7, 2016 through April 7, 2018

13.     As described above, the total liability coverage limit available for resolution of claims under each Insurance Policy is not reduced by the payment of defense costs.

**D.     Debtors' First Plan and Amended Plan Properly Included Disbursements to Seyfarth for Debtors' Prepetition Legal Fees**

14.     On June 30, 2020, Debtors filed a Joint Chapter 11 Plan of Liquidation (ECF No. 2856, the "First Plan"). The First Plan included, in Section 5.9, a distribution "to satisfy the defense costs incurred by . . . Seyfarth Shaw LLP (in capacity as counsel to the Debtors) in connection with the defense of the applicable cases in the Class Action Settlement Agreement and the Individual Plaintiffs' Settlement Agreement.[6]" First Plan at Section 5.9. In other words, the First Plan contemplated a distribution to Seyfarth for its prepetition costs and expenses incurred by Debtors in the matters described above, as part of the 60% recovery of Former Representatives

---

[6] "Class Action Settlement Agreement" and "Individual Plaintiffs' Settlement Agreement" as defined in the First Plan.

Defense Costs; *see also* Disclosure Statement In Support of Joint Chapter 11 Plan of Liquidation Proposed by Debtors and Official Committee of Unsecured Creditors (ECF No. 2858) at 35.

15. On September 1, 2020, Debtors' filed their First Amended Chapter 11 Plan of Liquidation (ECF No. 2952, the "First Amended Plan"). The First Amended Plan included an explicit distribution to Seyfarth on account of its prepetition fees and disbursements incurred in the course of its prepetition representation of the Debtors, although Seyfarth's fees and disbursements were no longer included in Section 5.7 of the First Amended Plan providing for payment of Former Representatives Defense Cost. Section 5.6 of the First Amended Plan provided that "From the Liquidation Trust,[7] $1,112,305.52 shall be distributed to Seyfarth Shaw LLP in full satisfaction of any unpaid amounts for prepetition services rendered to the Debtors and no Settlement Party shall object to such distribution or to the allowance of Seyfarth Shaw LLP's $1,112,305.52 Claim for such prepetition services." First Amended Plan at Section 5.6; *see also* First Amended Disclosure Statement In Support of the Debtors' First Amended Chapter 11 Plan of Liquidation (ECF No. 2953) at 34.

### E. Seyfarth's Disbursement is Deleted from the Second Amended Plan Without Explanation

16. On October 1, 2020, Debtors filed their Second Amended Joint Chapter 11 Plan of Liquidation (ECF No. 2994, the "Second Amended Plan."). The Second Amended Plan removed the distribution to Seyfarth for its Pre-Petition fees which were covered by the Insurance Policies. Indeed, the blackline comparing the Second Amended Plan to the First Amended Plan (ECF No. 2997-1) shows that the sentence providing for a distribution to Seyfarth was simply deleted from Section 5.6 of the Second Amended Plan without any other material change to that paragraph. There is no reference to Seyfarth or explanation for this removal in the Second Amended

---

[7] "Liquidation Trust" as defined in the First Amended Plan.

7

Disclosure Statement (ECF No. 2995). Nor is there any explanation in the Second Amended Disclosure Statement as to what happened to the $1,112,305.52 which otherwise would have been paid to Seyfarth. Notably, however, there was no change in the funds available to the Sexual Misconduct Claims Fund or for the Former Representatives Defense Costs. Indeed, the blackline showing changes from the First Amended Disclosure Statement to the Second Amended Disclosure Statement also shows that references to Seyfarth's distribution were simply deleted without commentary or explanation (ECF No. 2997-2 at 18, 37), while payment to other legal counsel is included and provides no other proposed treatment of Seyfarth's claim other than, apparently, as an unsecured creditor, despite the fact that its fees are payable under the Insurance Policies.

## OBJECTION

I. **THE DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE INFORMATION**

    A. **Adequate Information**

17. Section 1125(b) of the Bankruptcy Code requires the proponent of a plan to provide a disclosure statement containing "adequate information." In turn, "adequate information" is defined as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan. . . .

11 U.S.C. § 1125(a)(1).

18. Full and fair disclosure is the foundation of chapter 11, and the adequacy of information contained in the disclosure statement is of paramount importance. *See*, *e.g.*, *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("[t]he importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors

and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information'"); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003) ("preparing and filing a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor") (quoting *Oneida*, 848 F.2d at 417); *see also In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[o]f prime importance in the reorganization process is the principle of disclosure").

19. As the Third Circuit has explained, "[i]n enacting the bankruptcy code, Congress contemplated that the creditors would be in active negotiations with the debtor over the plan . . . The necessity of 'adequate information' was intended to help creditors in their negotiations." *Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988). As such, a disclosure statement must "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988) (disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible Code alternatives so that [creditors] can intelligently accept or reject the Plan.") In particular, a disclosure statement must provide enough information for parties in interest to understand the financial ramifications of the plan based on the particular facts and circumstances of the case at hand. *See Oneida*, 848 F.3d at 418 (plan "failed to alert the creditors" of certain material information).

20. A plan proponent has an obligation in the first instance – namely, with the filing of the disclosure statement – to set forth information sufficient to allow parties in interest to make informed decisions about the plan. *Id.*; *see also In re Williams*, No. 1:09-BK-04781MDF, 2012 WL 3564027, at *7 (Bankr. M.D. Pa. Aug. 17, 2012) ("A debtor has an affirmative duty to provide

66433096v.4

complete disclosure of all assets [and] liabilities and to answer all questions fully and with the utmost candor.") (quotation omitted). Here, the Second Amended Disclosure Statement fails to meet the requirements of section 1125 of the Bankruptcy Code. It not only fails to "adequately" explain the removal of Seyfarth's distribution for payment of its valid, prepetition fees (while payment of Former Representatives Defense Costs are included in the Second Amended Plan) or how its prepetition fees are to be treated under the Second Amended Plan, but in fact provides *no* explanation whatsoever. Seyfarth's distribution was simply, and summarily, deleted and the funds to be distributed to Seyfarth have seemingly disappeared. That is not an adequate explanation under section 1125. *See Oneida*, 848 F.3d at 418.

## RIGHTS RESERVED

21.     Seyfarth reserves all rights to assert any objection it may have with respect to the Second Amended Plan in connection with the proposed confirmation of the Second Amended Plan.

[Remainder of the page intentionally left blank.]

**CONCLUSION**

22. For the foregoing reasons, Seyfarth requests that approval of the Second Amended Disclosure Statement be denied.

Dated: Wilmington, Delaware
October 29, 2020

          CHIPMAN BROWN CICERO & COLE, LLP

          By:   */s/ William E. Chipman, Jr.*
              William E. Chipman, Jr. (No. 3818)
          Hercules Plaza
          1313 N. Market Street, Suite 5400
          Wilmington, DE 19801
          (302) 295-0193

          and

          Edward M. Fox
          Seyfarth Shaw LLP
          620 Eighth Avenue, 32nd Floor
          New York, NY 10018
          Direct Dial: (212) 218-4646
          Direct Fax: (917) 344-1339
          Email: emfox@seyfarth.com
          Attorneys for Seyfarth Shaw LLP