## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS, LLC., *et al.*, | Case No. 18-10601 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** November 5, 2020 at 2:00 p.m. |
| | **Objection Deadline:** October 29, 2020 at 4:00 p.m. |
| | **Re: Docket Nos. 2995, 3031** |

## UNITED STATES TRUSTEE'S OBJECTION TO THE JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES (DOCKET NO. 3031)

Andrew R. Vara, United States Trustee for Region 3, through his undersigned counsel, hereby objects to the joint motion filed by the Debtors and the Official Committee of Unsecured Creditors requesting approval of the parties' amended joint disclosure statement and of related solicitation procedures (Docket No. 3031).

### I.    Introduction

The Debtors and the Official Committee of Unsecured Creditors, after a years'-long process, have filed a proposed second amended joint plan and related disclosure statement, and requested approval from this Court of their related solicitation procedures. Under the proposed plan, there are two classes of creditors entitled to vote: Class 4 (made up of creditors holding "Sexual Misconduct Claims") and Class 5 (made up of creditors holding general unsecured claims). Sexual Misconduct Claims will be channeled to the "Sexual Misconduct Claims Fund," while general unsecured creditors' claims will be satisfied, if at

all, from a "Liquidation Trust." The Debtors have no ongoing operations and have not for some time: this is a liquidation. Holders of Sexual Misconduct Claims can opt in to a release of Harvey Weinstein, but cannot opt out of any of the other almost unlimited plan releases. General unsecured claimants will receive "an approximately 2% recovery," and cannot opt out of the plan's releases. The Debtors are released parties, with the plan treatment "in full and final . . . discharge" of claims against them (and a whole host of others). The disclosure statement cannot be approved because it describes a plan, parts of which are patently unconfirmable. The proposed plan is non-consensual. It provides an impermissible discharge of a liquidating debtor and impermissible exculpations. Holders of claims and interests cannot opt out (either through the ballots or by filing a confirmation objection) of releases of a huge swath of non-Debtor third parties that have no apparent connection to the Debtors' cases. The proposed plan is patently unconfirmable. The disclosure statement and the solicitation procedures should not be approved.

## II.  Jurisdiction and Venue

1.     This Court has jurisdiction to hear this Objection.

2.     Under 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.[1]

3.     The U.S. Trustee has standing to be heard with regard to this Objection under 11 U.S.C. § 307.

---

[1] *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

### III.    Factual Background

4.      On March 19, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors are not operating.

5.      On March 28, 2018, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee").

6.      On March 20, 2018, the Debtors filed a motion seeking approval to sell substantially all of their assets to Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC, "Spyglass") unless another party came forward with a higher or better offer. On May 8, 2018, the Court granted the Debtors' sale motion, and on May 9, 2018, the Court entered an order approving the sale of substantially all the Debtors' assets (the "Sale") to Spyglass.

7.      On June 27, 2018, the Debtors, the Committee, and Spyglass filed a motion to amend the Spyglass asset purchase agreement to reduce the purchase price. To resolve the Committee's objections to that motion, the Debtors agreed that the Committee would take the lead role in drafting and proposing a plan and that the Debtors' board of directors would be reconstituted with its members chosen by the Committee.

8.      On December 5, 2018, the Debtors filed a motion to set a general bar date for the case. The proposed bar date did not encompass tort claims, including the now-named Sexual Misconduct Claims. On December 27, 2018, the Court entered an order that set February 15, 2019 as the general bar date.

9.      On June 30, 2020, the Debtors filed a motion to set a bar date for parties in interest to file tort claims, including "Sexual Misconduct Claims." On September 9, 2020, the

Court entered an order granting the tort claims bar date motion as amended, and set October 31, 2020 as the tort claims bar date.

10.     On October 1, 2020, the Debtors and the Committee filed their second amended joint plan (Docket No. 2994) and second amended joint disclosure statement (Docket No. 2995)(respectively the "Disclosure Statement" and the "Plan"). The Plan proposes to channel all tort claims to a trust funded by insurance proceeds set up like an asbestos channeling trust under §524(g) with an accompanying permanent injunction and related, mandatory, releases.[2] General unsecured claims are channeled to a liquidation trust coupled with mandatory releases.

11.     On October 15, 2020, the Debtors filed a motion to approve the Disclosure Statement as containing adequate information and to approve solicitation procedures (Docket No. 3031).

**IV.    Law and Argument**

12.     A disclosure statement, and the full and honest disclosure it should contain under section 1125, is crucial to the effective functioning of the federal bankruptcy system.[3] Section 1125 requires disclosure of adequate information, and is designed to help creditors negotiate with debtors over plan terms.[4] The Bankruptcy Code defines adequate information as "[i]nformation of a kind, and in sufficient detail . . . that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan . . . "[5]

---

[2] The Debtors allege that section 105 permits this Court to graft asbestos trust procedures onto a case with a known universe of claims and no future claims implications. The U.S. Trustee reserves for confirmation argument on whether this is permissible.

[3] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414 (3d Cir. 1988)).

[4] 11 U.S.C. § 1125; *see also Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988).

[5] 11 U.S.C. § 1125(a)(1).

A plan proponent must establish compliance with all of the requirements of §1129(a), and bears the burden of proof.[6]

13.    Providing adequate information under section 1125 is one of the requirements for plan confirmation under section 1129.[7] But a court cannot approve a disclosure statement if the plan it describes contains terms that are patently unconfirmable on their face.[8] Here, the Disclosure Statement does not provide adequate information because parts of the Disclosure Statement describe Plan provisions that are unconfirmable. The Plan is based on impermissible non-consensual releases of both the Debtors and of non-Debtor third parties, and provides a bankruptcy discharge in violation of the Bankruptcy Code—not only to the Debtors, but to that same host of non-Debtors.

    a.    *The Plan is not confirmable because its release provisions are unreasonable and non-consensual.*

14.    Under the Plan's proposed terms, creditors cannot opt out of any of the Plan's releases, either of the Debtors or of a broad array of non-Debtor third parties. The definition of Released Party(ies) and Releasing Party(ies) are:

**1.94 Released Party(ies)**: (i) the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, the Former Representatives and the Insurance Companies; (ii) professionals of firms specified in Schedule 1 to the Plan; and (iii) each such persons' or entities' current and former officers, directors and board representatives, predecessors, successors, assigns, insiders, subsidiaries, Affiliates, principals, equity holders, members, trustees, partners, managers, employees, agents, members of any boards or similar bodies of such persons, advisory board members, financial advisors, attorneys, insurers, reinsurers, accountants, investment bankers, consultants, representatives, and other professionals, and such persons' respective heirs, executors, estates, and nominees, in each case, in their capacity as such, or any other person who rendered services for, or provided goods to, any of the Debtors, with respect to liability for the actions or inactions of the Former Representatives, the

---

[6] *See* 11 U.S.C. § 1129(a); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001).

[7] *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

[8] *See In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).

Debtors, the Estate, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies; provided, however, those persons or entities who fall within subparagraph (iii) (other than persons or entities specified in subparagraphs (i) and (ii)) are not released with respect to their own actions related to Sexual Misconduct Claims, regardless of their relationship with the Former Representatives, the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies, to the extent such action constitutes aiding, abetting or conspiracy to prevent the disclosure of or to cover up any Sexual Misconduct Claim (each a "Non-Released Party").

**1.95 Releasing Party(ies)**: The Debtors, the Estates, the Non-Debtor Affiliates, the Former Representatives, the UCC, the Insurance Companies, and all Holders of Claims and Interests.

15.    Other relevant definitions include:

**1.72 Non-Debtor Additional Affiliates:** The Debtors' former non-debtor affiliates, including Scary Movie 4 LLC; Derailed SPV, LLC; Mrs. Henderson Presents SPV, LLC; The Matador SPV, LLC; Breaking and Entering SPV, LLC; Come Drink With Me SPV, LLC; SPV Film Distribution LLC; Butler Films LLC; Kristy Films LLC; and TWC Gold SPV, LLC.

**1.73 Non-Debtor Affiliates:** The Debtors' non-debtor affiliates, including The Weinstein Company (UK) Ltd.; Tulip Fever Films Limited; Current Films UK Limited; and MarcoThree, LLC.

**1.47 Former Representatives:** Robert Weinstein, Tarak Ben Ammar, James Dolan, Frank Gil, David Glasser, Richard Koenigsberg, Marc Lasry, Lance Maerov, Jeff Sackman, Tim Sarnoff, Barbara Schneeweiss, Paul Tudor Jones, and Dirk Ziff. ***The definition of Former Representatives does not include Harvey Weinstein.***

**1.44 Exculpated Parties:** Each of (i) the Debtors, and any of their respective successors or assigns, and any of their respective Representatives; (ii) the Committee, its members and any of their respective Representatives; (iii) the Released Parties and any of their respective Representatives; and (iv) Proposed Class Plaintiffs' Counsel and any of their respective Representatives.

16.    Under the Plan's release provisions, the Debtors are releasing themselves (in addition to releasing all of the Released Parties), the Committee is releasing the Released Parties on behalf of itself and also on behalf of all holders of claims and interests, and there are broad releases between and among other third parties. Holders of Sexual Misconduct Claims may opt in to releasing Harvey Weinstein at some point in the future but are not told

6

how or when they might do so—only that failure to opt in will reduce their distribution by 75%. Otherwise, there is no ability whatsoever for any party to opt out of the releases, not even by filing an objection to confirmation. These are all material defects in the Plan. The Plan is unconfirmable because under Third Circuit law, third-party releases of non-debtors are permissible only to the extent that the releasing parties give affirmative consent. Further, the Debtors must establish that, notwithstanding §524(e), the Debtors can release non-debtor entities. They have done neither.

17.    Decisions in this District are in accord that third-party releases of non-debtors should be allowed only to the extent the releasing parties have given affirmative consent.[9] In *Washington Mutual* this Court held that "any third party release is effective only with respect to those who *affirmatively consent* to it by voting in favor of the Plan and not opting out of the third party releases."[10] The Court clarified that merely having an opt out mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place)" and that "failing to return a ballot is not a sufficient manifestation of consent to a third party release."[11]

18.    There are several recent (some unpublished) decisions by this Court that follow *Washington Mutual* and its predecessors and agree that parties must affirmatively

---

[9] *See In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011). *See also In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004)(holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003)(approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)(release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan).

[10] *Id.* at 355 (emphasis added).

[11] *Id.*, citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

consent to a third party release. In *Emerge Energy Services LP*,[12] Judge Owens ruled that consent to a third-party release "cannot be inferred by the failure of a creditor or equity holder to return a ballot or Opt-Out Form." Judge Owens reached this conclusion even though the opt-out forms in that case provided conspicuous notice of how to opt-out and the implication of the failure to do so. The Court also rejected the Debtor's argument that inferred consent from "silence" should be approved as typical, customary, and routine. The Court held that it could not, "on the record before it[,] find that the failure of a creditor or equity holder to return a ballot or Opt-Out Form manifested their intent to provide a release. Carelessness, inattentiveness, or mistake are three reasonable alternative explanations."[13]

19.    The Court's recent unpublished rulings in *In re Juno USA, LP*,[14] and in *Fizzics, Inc.*,[15] follow and confirm the *Emerge* ruling. In *Juno*, this Court ruled that with respect to plan releases and exculpations, notwithstanding any conflicting language in the Plan, only those parties who have affirmatively consented to the proposed third party releases by voting on the Plan and not opting out of the releases are bound by those releases. In *Fizzics*, the debtors' plan of reorganization provided for a distribution to be made to general unsecured creditors. The third party releases were to be deemed to be given by all holders of claims and equity interests, except for those who had timely submitted a ballot on which they opted out of such releases, or, for those who did not receive a ballot, submitted a "written notice" before the plan objection deadline.[16] At confirmation, the Court limited those who

---

[12] 2019 WL 7634308, Case No. 19-11563 (Bankr. D. Del, Dec. 5, 2019).

[13] *See id.* at *18; *accord, In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011), and other cases cited therein.

[14] Case No. 19-12484-MFW (March 25, 2020; D.I. 315).

[15] Case No. 19-10545 (Bankr. D. Del.) (KBO).

[16] *See* First Amended Plan of Reorganization in *Fizzics*, D.I. 123, § VIII.F (Dec. 16, 2019).

would be deemed to give the third party releases to creditors who had actually voted on the plan, either to accept or reject, and did not check the opt-out box.[17]

20.    The Debtors can, at this stage of the plan process, change their proposed voting procedures to provide parties the ability to opt out of the proposed releases. As drafted, however, they run afoul of *Washington Mutual* and other cases discussed above. Unsecured creditors will get little (if anything), and in exchange must release an enormous list of parties with the barest (if any) connection to the bankruptcy cases, with no ability to say no. Tort claimants, although they may receive a recovery (how much they will recover is undisclosed), must also release that same host of parties with no ability to opt out. While the Debtors may argue that the insurance companies and former directors and officers are contributing significant value to the Plan process, there is no evidence whatsoever that the majority of the other "Released Parties"—which, for example, would include a release of former Debtor affiliates that did not file for bankruptcy and those companies' current and former directors, officers, lawyers, and accountants—have contributed anything of value to the reorganization. All of the releases are nonconsensual, overly broad, and render the Plan patently unconfirmable.

---

[17] *See Fizzics* confirmation order, D.I. 144, ¶ 8, (Jan 24, 2020). *But see In re Indianapolis Downs, LLC*, 486 B. R. 286, 304-05 (Bankr. D. Del. 2013) and *In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del 2010). However, in neither of those two cases, did the plan propose that third party releases be given by parties who are deemed to reject the plan. *See Indianapolis Downs,* 486 B.R. at 304-05. In *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del 2010), while the Court held that affirmative consent was not required, but only as to releases being given by unimpaired classes, who were "being paid in full." *Id.* at 144. In fact, in *Spansion,* the Court determined that non-consensual releases being deemed to be given by parties who were not receiving any distribution under the plan did not pass muster under applicable law. *See Id.* at 145.

21.    In determining whether a debtor can release non-debtor entities notwithstanding § 524(e) of the Code, the Court should consider the five factors set forth in In re *Zenith Elecs. Corp.*,[18] Those factors are as follows:

1.    identity of interests between debtor and non-debtor releasee, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);

2.    substantial contribution to the plan by the non-debtor;

3.    necessity of release to the reorganization;

4.    overwhelming acceptance of plan and release by creditors; and

5.    payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*Tribune* 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346 (citing *Zenith*, 241 B.R. at 110)).  "The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Tribune* 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346).

22.    In the present cases, neither the Plan nor the Disclosure Statement address whether any of the *Zenith* factors are met for an overwhelming percentage of the Released Parties. While it may be that the Debtors can meet their burden of proof that their insurance companies have contributed value, they cannot at all show that, for example, the accountants of their formerly related companies have provided anything   This failure renders the Plan, as proposed, unconfirmable.

---

[18] 241 B.R. 92, 110 (Bankr. D. Del 1999), and *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994).  *See* also *In re Tribune Company,* 464 B.R. 126 (Bankr. D. Del. 2011)(Carey, J.); *Washington Mutual*, 442 B.R. at 346; *In re Spansion, Inc.*, 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del 2010)(Carey, J.); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004)(Walrath, J).

b. *The Plan is not confirmable because it provides a discharge to a liquidating corporate debtor.*

23.     A chapter 11 plan may not be confirmed unless the Court can find that the plan complies with all the provisions of 11 U.S.C. § 1129(a), which includes a requirement that the plan comply with applicable Bankruptcy Code provisions. In a liquidating plan scenario, that means that the plan must comply with §§ 1123 and 1141. Section 1123(b)(3)(A) allows a plan proponent to propose: "...the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."  Then, § 1141(d)(3) states:

The confirmation of a plan does not discharge a debtor if-

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under Section 727(a) of this title if the case were a case under chapter 7 of this title.

24.     In a liquidation case, §727(a)(1) allows only an individual, not a corporation, to receive a discharge. Here, the plan proposes a liquidation, the Debtors are not in business now, and are corporations. Each of §1141's elements are met. But the Plan nonetheless provides the functional equivalent of a discharge.

25.     Each of the following plan sections provides some form of discharge, either to the Debtors or to non-Debtor third parties:

a. 3.10.2 (priority claims discharged);

b. 3.11.2 (secured tax claims discharged);

c. 3.14.2 (general unsecured claims discharged);

d. 3.15 (intercompany claims discharged);

11

    e.   3.4 (a withdrawal of a Sexual Misconduct Claim irrevocably discharges that claim);

    f.   5.2 (tort claims discharged);

    g.   5.4 (same);

    h.   5.5 (non-released parties' contribution claims discharged);

    i.   5.6 (Liquidation Trust in full satisfaction and discharge of unsecured claims);

    j.   7.2 (discharge of the Debtors and all of the Released Parties);

    k.   7.2.2 (Committee, on behalf of its members and all holders of Claims and Interests, discharges the Debtors and Released Parties);

    l.   7.2.3 (discharge of Harvey Weinstein);[19] and

    m.  7.2.4 (additional discharges in the settlement agreement).

26.    Under the relevant definitions, the Debtors are both Released Parties and Releasing Parties. Thus, they are giving themselves an indirect discharge by discharging and releasing claims against themselves. Thus, the Plan appears to be an attempt to rewrite the Bankruptcy Code to give not only the Debtors a discharge to which they are not entitled, but to also provide bankruptcy discharges to the almost unlimited parties included in the definition of "Released Parties." A plan cannot rewrite the Bankruptcy Code.[20] A debtor may not do by indirection what it cannot do directly. Section 105 of the Bankruptcy Code may not be used to override explicit mandates of the Bankruptcy Code. "That is simply an application of the axiom that a statute's general permission to take actions of a certain type

---

[19] To the extent claimants opt in to this release, they are providing a bankruptcy discharge to Harvey Weinstein, even though he has not filed a bankruptcy case.

[20] *See In re Beyond.com*, 289 Bankr. 138 (Bankr. N.D. CA. 2003). *See also In re South Canaan Cellular Investments*, Inc., 427 B.R. 44 (Bankr. E.D. Pa. 2010); *In re Repurchase Corporation*, 2008 WL 4379035 (N.D. Ill. 2008).

must yield to a specific prohibition found elsewhere."[21] There is no provision in the Bankruptcy Code permitting creditors to vote on whether a non-individual liquidating debtor is entitled to a discharge. So here, the attempt to invoke §1123 to otherwise circumvent the provisions of Chapter 11 and § 1141(d)(3) is inappropriate. The Plan does not satisfy the requirements of Bankruptcy Code Section 1129(a) and is not confirmable.

      c.   *The Plan is not confirmable because it contains additional, objectionable provisions.*

27.     Without waiving the right to raise further issues at confirmation, the U.S. Trustee hereby gives notice of several problematic provisions that could ultimately make the Plan unconfirmable. First, the Plan definition of "Exculpated Parties" extends to a broad group of non-fiduciaries and is not time-delimited, both of which are contrary to the rulings of the Delaware bankruptcy bench. Second, the Committee is providing releases on behalf of all holders of claims and interests, with no explanation of its authority to do so. Third, the Plan imposes a minimum distribution threshold of $100 and provides no information, given the anticipated 2% distribution to general unsecured creditors, of how many creditors might be affected by this provision and why it is appropriate. Third, the proposed trustees are not required to obtain a bond, which exposes the creditors for which they are fiduciaries to unacceptable risk of loss. Fourth, the Plan provides for substantive consolidation with no evidence that the Debtors were so intertwined that creditors treated them as one entity. Fifth, the Plan purports to act as a settlement under Rule 9019, but does not address the five factors set forth in *In re Martin*,[22] and does not explain how release provisions, which are to be

---

[21] This principle was most recently restated by the Supreme Court in *Law v. Siegel*, 571 U.S. 415, 421 (2014). *See also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012).

[22] *In re Martin*, 91 F. 3d 389 (3rd Cir. 1996). The factors are: "(1) the probability of success in litigation; (2) the

addressed under §1129, can be approved under 9019. Finally, section 346 does not entitle the

Debtors to an injunction against all taxing authorities.

### V.       Reservation of Rights

28.       The U.S. Trustee leaves the Debtors to their burden of proof and reserves any

and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment,

alter and/or modify this objection, file an appropriate Motion and/or conduct any and all

discovery as may be deemed necessary or as may be required and to assert such other

grounds as may become apparent upon further factual discovery.   The U.S. Trustee also

reserves all rights with respect to plan confirmation issues until the objection deadline for the

same.

### VI.      Conclusion

29.       The Disclosure Statement does not provide adequate information because the

plan it describes is patently unconfirmable. The Plan contains impermissible, overly broad,

and non-consensual debtor and third-party releases. The Disclosure Statement should not be

approved.

---

likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience
and delay necessarily attending it; and (4) the paramount interest of the creditors." 91 F.3d at 393 (citations
omitted).

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying approval of the solicitation procedures motion, denying approval of the proposed disclosure statement, and granting such other relief as this Court deems appropriate, fair and just.

Dated: October 29, 2020

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE, REGIONS 3 AND 9**

**By:**  */s/ Hannah Mufson McCollum*

Hannah Mufson McCollum
Jane M. Leamy (#4113)
Trial Attorneys
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Telephone: (302) 573-6491
hannah.mccollum@usdoj.gov
jane.m.leamy@usdoj.gov