## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*, | : : : | Case No. 18-10601 (MFW) |
| Debtors.[1] | : : | (Jointly Administered) |
| | : | Hearing Date: November 5, 2020 |
| | : : | Re: Dkt. Nos. 3058, 3059, 3060, 3061 & 3062 |

------------------------------------------------------------- x

### DEBTORS' AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (A) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (B) APPROVING SOLICITATION PROCEDURES, (C) SETTING CONFIRMATION HEARING DATE AND RELATED DEADLINES, (D) ESTIMATING CERTAIN CLAIMS, AND (E) GRANTING RELATED RELIEF

The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") along with the Official Committee of Unsecured Creditors (the "**Committee**", together with the Debtors, the "**Plan Proponents**") filed on October 15, 2020, the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order (A) Approving the Adequacy of the Disclosure Statement, (B) Approving Solicitation Procedures, (C) Setting Confirmation Hearing Date and Related Deadlines, (D) Estimating Certain Claims, and (E) Granting Related Relief* (the "**Motion**") [D.I. 3031]. The Debtors and the Committee hereby reply (the "**Reply**") to: (1) the *Objection to [the Motion]* (the "**David**

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

Objection") [D.I. 3061] filed by Wedil David, Dominique Huett, Alexandra Canosa, Jane Doe I, Jane Doe II, Jane Doe III, Jane IV, Jane Doe V, Jane Doe VI, Jane VII and Jane Doe VIII (collectively, the "**David Claimants**"); and (2) *United States Trustee's Objection to [the Motion]* (the "**U.S. Trustee Objection**", together with the David Objection, the "**Objections**") filed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").[2]  In support of this Reply, the Debtors and the Committee respectfully state as follows:

## PRELIMINARY STATEMENT

1.      From the inception of the Chapter 11 Cases[3] to the date of this Reply, two important facts have become clear—*first*, the Debtors and the Committee, who both have fiduciary responsibilities to act in the best interests of all creditors, have worked tirelessly to achieve a settlement and put forward a plan of liquidation that provides the greatest potential recovery for all creditors, especially Holders of Sexual Misconduct Claims; *second*, counsel for the David Claimants will take any and all measures to achieve what they believe is "in the best interests of the [David Claimants]",[4] regardless of the lack of factual or legal support for their positions or the potential negative impacts on Holders of Sexual Misconduct Claims writ large.  The bulk of the arguments set forth in the David Objection are no exception.

---

[2] A limited objection to the Motion (the "**Guilds Objection**") [D.I. 3058] was filed by the Guilds (as defined in the Guilds Objection).  The Plan Proponents met and conferred with the Guilds and reached a consensual resolution of the Guilds Objection.  Sartraco, Inc. ("**Sartraco**") also filed an objection to the Motion (the "**Sartraco Objection**") [D.I. 3059].  The Plan Proponents met and conferred with Sartraco and reached an agreement in principle that resolves the Sartraco Objection.  Finally, Seyfarth Shaw LLP ("**Seyfarth**") filed the *Limited Objection of Seyfarth Shaw LLP to [the Motion]* (the "**Seyfarth Objection**") [D.I. 3060].  Seyfarth argues that the Disclosure Statement (as defined below) "fails to adequately explain the removal of Seyfarth's distribution for payment of its valid, prepetition fees . . . or how its prepetition fees are to be treated".  Seyfarth Obj. ¶ 20.  The Disclosure Statement has been amended to provide such an explanation and the Plan Proponents believe such revisions resolve the Seyfarth Objection.

[3] Capitalized terms used in this Response but not otherwise defined herein shall have the meaning ascribed to such terms in the *Third Amended Joint Chapter 11 Plan of Liquidation* (as may be further amended, modified and supplemented, the "**Plan**") [D.I. 3066 & 3067] or the Motion, as applicable.

[4] *See Reply to Debtors' and Official Committee of Unsecured Creditors' Response to Motion to Convert Debtors' Chapter 11 Cases to Chapter 7*, ¶ 19 [D.I. 3026].

2.      The relief sought in the Motion is straightforward.   The Plan Proponents are respectfully requesting that this Court, *inter alia*, find that the *Third Amended Disclosure Statement in Support of the Third Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* (as it may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**") [D.I. 3068 & 3069] contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code, and approve the Solicitation Procedures proposed in the Motion.  (Motion ¶ 28.)

3.      The David Objection requests the Plan Proponents add certain information to the Disclosure Statement to satisfy section 1125(a).  The Plan Proponents believe the Disclosure Statement already satisfied section 1125(a), but nevertheless, the Plan Proponents have revised the Disclosure Statement to accept certain of the suggested additions.

4.      The majority of the David Objection, however, is not actually directed at the adequacy of the Disclosure Statement or the propriety of the Solicitation Procedures.  Instead, the David Objection is rife with inflammatory rhetoric, inaccurate facts, inappropriate tactics and irrelevant arguments.  While the Plan Proponents will not attempt to refute every inflammatory statement, inappropriate tactic, inaccurate fact and irrelevant argument made in the David Objection, and will instead focus their argument on the David Claimants' arguments directed at the merits of the Motion, a few of these items must be addressed.

5.      The David Claimants accuse the Plan Proponents of being "proxies for the Insurance Companies" and allege that the Disclosure Statement "never describes the full and aggregate amount of insurance proceeds that might be available in chapter 7 after the stay is lifted." (David Obj. ¶ 6.)  These accusations and allegations are inaccurate.  The Plan Proponents are far from proxies for the Insurance Companies, the Disclosure Statement contains more than adequate

disclosure as it relates to the Insurance Policies and issues related to insurance coverage for Sexual Misconduct Claims, and the likelihood of a Holder of Sexual Misconduct Claims obtaining stay relief to seek recovery under the Insurance Policies is far from certain.

6. *First*, the Plan put forth by the Plan Proponents represents the culmination of more than two years of arm's-length negotiations among the Debtors, the Committee, the Former Representatives, Harvey Weinstein and the Insurance Companies, with substantial input along the way from multiple attorneys representing Holders of Sexual Misconduct Claims. The Plan establishes an approximately $17 million fund—the Sexual Misconduct Claims Fund—from which Holders of Sexual Misconduct Claims (Class 4) may seek compensation without having to engage in expensive and unpredictable litigation. Sixty-five (65) Tort Claims were filed prior to the Tort Claims Bar Date, indicating an average recovery of approximately $250,000 for each Holder of Sexual Misconduct Claims.[5]

7. In the event the Plan is not confirmed and these Chapter 11 Cases are converted to chapter 7 cases, the Sexual Misconduct Claims Fund will not be available and the Insurance Companies likely will contend that they have no responsibility to cover costs and judgments related to Sexual Misconduct Claims. In response to the Debtors' requests for coverage related to certain Sexual Misconduct Claims, the Insurance Companies responded that the Insurance Policies do not cover Sexual Misconduct Claims. (*See* Coverage Dispute Letters, Disclosure Statement Ex. D.) Absent the settlement embodied in the Plan, it is therefore likely that there would be protracted coverage litigation, and entirely possible that the Insurance Companies will not be required to pay any funds to cover Sexual Misconduct Claims. What "might be available in chapter

---

[5] The actual distribution to any such Holder will depend on the application of the factors specified in the Sexual Misconduct Claims Fund Procedures and the $250,000 should be viewed as illustrative.

7" is not a risk the actual fiduciaries—the Debtors and the Committee—are prepared to accept in exchange for the certain recovery of insurance proceeds provided by the Settlement and contemplated by the Plan.  The accusation that the Plan Proponents are acting as proxies for the Insurance Companies reflects a disregard for the facts.

8.    *Second*, the Disclosure Statement provides robust information about the Insurance Policies and issues attendant to potential insurance coverage for Sexual Misconduct Claims, which information allows Holders of Sexual Misconduct Claims to decide for themselves whether to accept or reject the Plan.  The Disclosure Statement (i) provides a summary explanation of all of the insurance policies that could potentially provide insurance coverage for Sexual Misconduct Claims, (Disclosure Statement § IX.E); (ii) includes a chart containing the policy number, Insurance Company, coverage dates, type of coverage and policy limit for each insurance policy, (*id.*); (iii) summarizes the issues related to insurance coverage for Sexual Misconduct Claims and the rationale for the Settlement and the Plan, (Disclosure Statement §§  III, IX); and (iv) attaches copies of certain letters from the Insurance Companies expressing their position with respect to coverage for the Sexual Misconduct Claims, (Disclosure Statement Ex. D).  Contrary to the David Claimants' assertion, the information contained in the Disclosure Statement allows Holders of Sexual Misconduct Claims to assess "the full and aggregate amount of insurance proceeds that might be available in chapter 7."  (*See* David Obj. ¶ 6.)

9.    *Third*, the David Claimants have no basis to assert that the automatic stay would be lifted in a chapter 7 liquidation to allow them to pursue insurance proceeds.  The more likely scenario is that "as in any [c]hapter 7," the Sexual Misconduct Claims (Class 4) and the General Unsecured Claims (Class 5) would be combined into one class "of general unsecured creditors to await payment until all the claims in the class were liquidated, all the assets reduced to cash,

5

distributions made, and insurance claims resolved". *See In re W.R. Grace & Co.*, 446 B.R. 96, 127 (Bankr. D. Del. 2011); *see also In re Sunland Inc.*, 508 B.R. 739, 744 (Bankr. D.N.M. 2014) ("A number of courts have declined to grant stay relief to one claimant where, as here, the available insurance coverage was inadequate to compensate other similarly situated claimants." (collecting cases)). The David Claimants are well aware that if the cases are converted, it is unlikely that the stay will be lifted to allow them seek to recover insurance proceeds. In lifting the stay for Alexandra Canosa and Wedil David—two of the David Claimants—this Court ordered that "further order of this Court shall be required prior to . . . the enforcement of any judgment or settlement against the Debtors or their assets, *including the Debtors' insurance policies and proceeds thereof*". *Order Granting Relief From Automatic Stay as to the Canosa Case*, ¶ 4 [D.I. 1473] (emphasis added); *Order Approving Stipulation Modifying The Automatic Stay as to Wedil David*, ¶ 3 [D.I. 2411-1].

10.      Perhaps in an effort to make the objection carry more weight, the David Objection purports to be made on behalf of several Jane Does. However, not all of the Jane Does are creditors or parties in interest in these Chapter 11 Cases. As defined in the Plan, Sexual Misconduct Claims are limited to conduct "that took place in whole or in part on or after June 30, 2005". (Plan §§ 1.22, 1.107, 1.113; *see* David Obj. ¶ 5 n.17 ("The Plan permits proofs of claims related in any way to sexual misconduct of Harvey Weinstein on or after June 30, 2005.").)

11.      The David Claimants include eight Jane Does, five of whom filed lawsuits related Harvey Weinstein's sexual misconduct. (David Obj. at nn.2-3.) The Plan Proponents located the two complaints filed on behalf of certain of the Jane Does—one on behalf of Jane Does I-IV and one on behalf of Jane Doe V. *See* Compl., *Doe I et al. v. Harvey Weinstein*, No. 20-cv-5241 (S.D.N.Y. July 8, 2020), ECF No. 1-1 (the "**Doe I Complaint**"); Compl., *Doe V v. Harvey*

*Weinstein*, No. 20-cv-8490 (S.D.N.Y. Oct. 12, 2020), ECF No. 1-1 (the "**Doe V Complaint**"). None of the complaints names the Debtors as defendants, *see id.*, and based on the substance of the complaints, only Jane Doe III and Jane Doe IV allege conduct arising on after June 30, 2005 and as such, can be Holders of Sexual Misconduct Claims. *See* Doe I Compl. ¶¶ 39, 54, 62, 78; Doe V Compl. ¶ 36. Thus, based on the information currently available to the Court and the Plan Proponents, only Wedil David, Dominique Huett, Alexandra Canosa, Jane III and Jane Doe IV have standing as creditors or parties in interest whose rights will be affected by these Chapter 11 Cases. *See* 11 U.S.C. 1109(b); *In re Amatex Corp.*, 755 F.2d 1034, (3d Cir. 1984); *In re United Tax Grp., LLC*, No. 14-10486, 2016 Bankr. LEXIS 4315, at \*9-13 (Bankr. D. Del. Dec. 12, 2016). The David Objection contains no information that would demonstrate that Jane VI, Jane Doe VII and Jane Doe VIII have standing in these Chapter 11 Cases; indeed, it appears that based on the allegations in the Doe I Complaint and Doe V Complaint, Jane Doe I, Jane II and Jane Doe V do not have standing as creditors or parties in interest in these Chapter 11 Cases. Attempting to bolster the David Objection by including individuals who lack standing in these Chapter 11 Cases is completely inappropriate.[6]

12.    As to the U.S. Trustee Objection, the U.S. Trustee does not argue that Disclosure Statement fails to provide adequate information. The U.S. Trustee argues that the Court cannot approve the Disclosure Statement because the Plan contains "patently unconfirmable" provisions, namely, certain third-party releases, the Debtors' release, discharge and exculpation provisions.

---

[6] The David Claimants also make repeated assertions that the Plan improperly uses "insurance proceeds to satisfy uninsured [trade creditor] claims instead of applying those funds only to insured claims." (David Obj. at 5.) The David Claimants' assertions have no basis in fact whatsoever. The Insurance Companies have not agreed to coverage of any Claims and issues relating to insurance coverage have not been conclusively litigated as of the date of this Response. In fact, as noted above, the Insurance Companies have taken the position that the Insurance Policies do not cover Sexual Misconduct Claims. (*See* Disclosure Statement, Ex. D.) As a result, it is unclear at this time which Claims are covered by the Insurance Policies, are not covered by the Insurance Policies or are subject to the exclusions set forth in the Insurance Policies, and the David Claimants have no basis to make definitive statements on what Claims are covered or not covered under the Insurance Policies.

(U.S. Trustee Obj. at 2.[7])  The U.S. Trustee's arguments as to the Plan's release provisions are either contradicted or unsupported by case law.  The Plan Proponents will of course address any issues on the substance of the third-party and Debtor releases in connection with confirmation and the Plan Proponents believe the Plan (including the contemplated releases) is confirmable.  The Plan Proponents, however, have revised the Plan to address the U.S. Trustee's concerns as to the discharge and exculpation provisions of the Plan.  (*See, e.g.*, Plan §§ 7.2, 14.5.)

13.    Accordingly, and as discussed further below, the Court should overrule the Objections and grant the Motion.

## **REPLY**

14.    The Objections fail to provide the Court with a sufficient basis to deny the relief sought in the Motion.  Below, the Plan Proponents first address the David Objection and then address the U.S. Trustee Objection.

## I.    **The David Objection Fails To Provide A Sufficient Basis To Deny The Motion.**

15.    The David Objection contains a number of requests about certain additional information the Plan Proponents should add to satisfy section 1125(a) and certain legal arguments to why the Court should deny the Motion.  The Plan Proponents will first address the requests for additional information and then address the legal arguments.  As discussed further below, neither the requests nor the legal arguments provide a basis for the Court to deny the Motion.

---

[7] Certain arguments in the Objections are contained in paragraphs that do not have paragraph numbers.  In instances where this Reply cites to such paragraphs, the citations are to the page numbers assigned by the Electronic Document Filing System (ECF).

**A. The Plan Proponents Have Revised The Disclosure Statement To Address Certain Requests In The David Objection And The Remainder of The Requests In The David Objection Do Not Merit Any Revisions.**

16.    The David Claimants argue that the Plan Proponents should provide further disclosure regarding the number of filed Sexual Misconduct Claims, the Sexual Misconduct Claims Examiners and the impact of the Sexual Misconduct Claims Procedures on the jury trial rights of Holders of Sexual Misconduct Claims.  (David Obj. at 3-4, ¶ 9.)  The Plan Proponents have revised the Disclosure Statement to accommodate these requests.

17.    *First,* the David Claimants argue that the Plan Proponents should provide further disclosure regarding the number of Sexual Misconduct Claims filed prior to the Tort Claims Bar Date.  (David Obj. at 3.)  The Tort Claims Bar Date was October 31, 2020, and the Plan Proponents could not have disclosed the number of filed Tort Claims prior to the Tort Claims Bar Date.  Now that the Tort Claims Bar Date has passed, the Plan Proponents have revised the Disclosure Statement to disclose the number of Tort Claims filed prior to the Tort Claims Bar Date.  (*See* Disclosure Statement § III.)

18.    *Second*, the David Claimants argue that the Plan Proponents should provide further disclosure regarding the Sexual Misconduct Claims Examiners.  (David Obj. at 4).  The Plan Proponents have revised the Disclosure Statement to (i) provide additional information about the currently designated Sexual Misconduct Claims Examiners, (Disclosure Statement § IX.D); (ii) include the curriculum vitaes of the currently designated Sexual Misconduct Claims Reviewers, (*id.* at Ex. E); and (iii) inform Holders of Sexual Misconduct of their ability to propose alternative qualified individuals to serve as the Sexual Misconduct Claims Examiners, (*id.* § IX.D).

19.    *Third*, the David Claimants also argue that the Plan Proponents should provide further disclosure regarding the impact of the Sexual Misconduct Claims Procedures on the jury trial rights of Holders of Sexual Misconduct Claims.  (David Obj. ¶ 9.)  The Plan Proponents have

revised the Disclosure Statement to explain the jury trials rights possessed by Holders of Sexual Misconduct Claims and the impact of the Plan and the Sexual Misconduct Claims Procedures on certain of such rights.  (Disclosure Statement § IX.C.)

20.     In addition, the David Claimants request further disclosure regarding (i) the rationale for the Plan providing that Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein shall receive 25% of the Liquidated Value of their Sexual Misconduct Claims in consideration of the release of their potential Sexual Misconduct Claims against the Released Parties; and (ii) the propriety and necessity of the channeling injunction.  (David Obj. at 3-5).  The Plan Proponents believe the explanations in the Disclosure Statement regarding the distribution reduction for Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein and the basis for the channeling injunction clearly meet the section 1125 standard.  *See* Disclosure Statement §§ III, V, X; *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3rd Cir. 1988) (stating that section 1125 "seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *In re FF Holdings Corp.*, No. 98-37, U.S. Dist. LEXIS 10741, at *10 (D. Del. Feb. 17, 1998) (overruling a disclosure statement objection regarding release provisions in a plan because an objection concerning "ultimate legality" of an item such as releases is "more appropriately [categorized] as an objection to the [p]lan").

21.     The David Claimants also request that the Plan Proponents revise the Disclosure Statement to include information about the inability of Holders of Tort Claims to object to Tort Claims filed by other Holders of Tort Claims.  As discussed in section I.B.(3) *infra*, no Holders of Tort Claims objected to the confidentiality provisions in the Tort Claim Bar Date Order and therefore have waived their right to object to those provisions now.

22.     Finally, it bears mentioning that the David Claimants mischaracterize the operation of the Sexual Misconduct Claims Procedures in arguing that "[r]ape victims should not be scored by Claims Examiners" and asserting that Point Awards "are compared with the points other women scored." (David Obj. ¶ 8.)  The Sexual Misconduct Procedures do not operate in that manner.  The Claims Reviewers will "conduct a review of each of the Sexual Misconduct Claims" independently to determine Point Awards in accordance with the Point Guidelines.  (Plan, Ex. 4, §§ 4, 5.2(b).) Each Sexual Misconduct Claim is independently assessed under the Point Guidelines; it is not compared to other Sexual Misconduct Claims.  (*See id.*)

**B.  The Remaining Arguments In The David Objection Do Not Provide A Sufficient Basis For The Court To Deny The Motion**.

23.     After considering the issues addressed above and the Plan Proponents' revisions to the Disclosure Statement addressing the additional disclosure requests in the David Objection, the David Claimants have three remaining arguments in opposition to the merits of the Motion. *First*, the David Claimants argue that the request to estimate each Sexual Misconduct Claim at one dollar for voting purposes violates section 1126(c) of the Bankruptcy Code.  (David Obj. ¶¶ 2-3, 16.)  *Second*, the David Claimants argue that the Plan Proponents are attempting, for section 1126 purposes, to solicit and count votes of Holders of Sexual Misconduct Claims who failed to file timely proofs of claims.  (David Obj. ¶¶ 4-5, 14, 17-19.)  *Third*, the David Claimants argue that the Court should deny the Motion because "[a]ll filed proof[s] of Sexual Misconduct Claims are kept on a confidential basis", which prevents the David Claimants from being able to object to Sexual Misconduct Claims filed by other Holders of Sexual Misconduct Claims and from soliciting rejection votes to the Plan.  (David Obj. at 3, ¶¶ 7, 21-22.)  None of the arguments provides a basis for the Court to deny the Motion.  Below, the Plan Proponents address each argument in turn.

> **(1)    Estimating The Sexual Misconduct Claims At One Dollar Solely For Voting Purposes Is Consistent With The Bankruptcy Code.**

24.    The David Claimants argue that the request to estimate each Sexual Misconduct Claim at one dollar for voting purposes violates section 1126(c) of the Bankruptcy Code because the request disregards the two-thirds in amount requirement of section 1126(c).  The David Claimants' argument is misplaced and contrary to longstanding and seminal case law.

25.    Section 1126(c) provides, in relevant part, that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors".  Tort claims, however, generally are contingent and unliquidated claims and determining the allowed amount of tort claims is a costly and lengthy process.  *See Kane v. Johns-Manville (In re Johns-Manville Corp.)*, 843 F.2d 636, 651 (2d Cir. 1988).  As a result, courts do not read the provisions of section 1126(c) in a vacuum.  *See id.*  Section 502(c)(1) of the Bankruptcy Code allows courts to estimate "any contingent or unliquidated, the fixing or liquidation of which . . . would unduly delay administration of the case", and Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") provides that court "may temporarily allow [a] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."

26.    Taken together, courts, including this Court, have construed the Bankruptcy Code and the Bankruptcy Rules as providing authority for courts to temporarily allow tort claims at one dollar solely for purpose of voting on a plan.  *See Order at 1, In re Signal Int'l, Inc.*, No. 15-1149 (MFW) (Bankr. D. Del. Oct. 8, 2015), [Docket No. 384]; *see also In re Johns-Manville Corp.*, 843 F.2d at 651; *Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir. 1989); Order ¶ 6.c, *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [Docket

No. 6340]; Order at 1, 35, *In re The Catholic Bishop of Spokane a/k/a the Catholic Diocese of Spokane*, No. 04-08822, (Bankr. E.D. Wash. Mar. 9, 2007), [Docket No. 1777].

27.    Contrary to the David Claimants' assertions, the Plan Proponents are not seeking to "devalue" any of the Sexual Misconduct Claims by requesting the Court estimate each Sexual Misconduct Claim at one dollar solely for voting purposes.  (David Obj. ¶ 2.)  On the contrary, the Plan Proponents are requesting that the Court estimate each Sexual Misconduct Claim at one dollar solely for voting purposes to preserve value for Holders of Sexual Misconduct Claims as "if each claim were to be considered separately for purposes of allowance and voting . . . the delay entailed by such an approach would not only be fatal to the entire plan but might very well be fatal to any recovery for the claimants." *See In re Johns-Manville Corp.*, 843 F.2d at 651.  The severity of the harm suffered by each Holder of Sexual Misconduct Claims will be considered for purposes of distribution as set forth in the Sexual Misconduct Claims Procedures.  (*See* Plan, Ex. 4, §§ 5.2, 7.)  Prior cases involving claims related to sexual abuse have approved similar voting and claims evaluation processes.  *See* Order at 1, *In re The Catholic Bishop of Spokane*, No. 04-08822, at 1, 35 [Docket No. 1777] (estimating sexual abuse tort claims at one dollar for voting purposes); Plan § 4.1, *In re Archdiocese of Saint Paul and Minneapolis*, No.15-30125 (Bankr. D. Minn. Sept. 19, 2018), [Docket No. 1262] (using a point system to evaluate sexual abuse tort claims); Order Confirming Plan, *In re Archdiocese of Saint Paul and Minneapolis*, No.15-30125 (Bankr. D. Minn. Sept. 25, 2018), [Docket No. 1278].

28.    To support their argument, the David Claimants cite dicta from *In re Quigley*, 346 B.R. 647, 654 (Bankr. S.D.N.Y. 2006).  (David Obj. ¶ 6.)  In *Quigley*, the court was determining whether it should dilute the voting amount of claimants who settled their tort claims against the debtors.  *Id.* at 656.  Prior to the voting period, the debtors requested that the court estimate all the

tort claims at one dollar for voting purposes only.  *Id.* at 652.  The ad hoc committee of tort claimants requested that that the monetary voting amount of the tort claims be estimated based on monetary amounts assigned to asbestos disease categories—which indicated severity of impairments—and that the monetary voting amount of previously settled tort claims should be discounted by 90%.  *Id.*  The court deferred decision on the issue until after the vote.  *Id.* at 652.  After the creditors voted, the court revisited the issues.  *Id.* at 652-53.  Based on the voting results, the court realized that the 90% dilution issue would determine whether or not the two-thirds in amount requirement under 1126(c) was satisfied regardless of whether the tort claims were estimated at $1.00 or estimated according to asbestos disease category.  *Id.* at 659 ("[D]ilution of the [s]ettling [] [c]laimants' vote by 90% results in rejection of the [p]lan . . . regardless of which [estimation] methodology is used.").  The *Quigley* court's statements regarding estimating claims at $1.00, on which the David Claimants rely, were irrelevant to its ruling.  *Id.*  Nor did the *Quigley* court find that estimating tort claims at one dollar solely for voting purposes violates section 1126(c).  *See id.* at 652-58.  *Quigley*, therefore, does not support the David Claimants' argument that estimating the Sexual Misconduct Claims at one dollar for voting purposes violates section 1126(c).

29.    In sum, the David Claimants' section 1126(c) argument provides no basis for the Court to deny the Motion.

### (2)    Only Holders of Sexual Misconduct Claims Who Filed Timely Proofs of Claims May Vote On The Plan.

30.    The David Claimants argue that the Plan Proponents are attempting, for section 1126 purposes, to solicit and count votes of Holders of Sexual Misconduct Claims who failed to file proofs of claims prior to the Tort Claims Bar Date.  (David Obj. ¶¶ 4-5, 14, 17-19.)  The David Claimants are wrong.

14

31.    Rule 3003(c)(3) of the Bankruptcy Rules provides that "[t]he court shall fix . . . the time within which proofs of claim or interest may be filed", and Rule 3003(c)(2) provides that potential creditors who hold unliquidated claims "shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."  In accordance with Rule 3003, on September 9, 2020, the Court entered an order (the "**Tort Claims Bar Date Order**") [D.I. 2966] establishing October 31, 2020 as the deadline by which Holders of Tort Claims, which include Holders of Sexual Misconduct Claims, must file their Claims.  (Tort Claims Bar Date Order ¶ 2.)  The Tort Claims Bar Date Order states that:

> [A]ny Tort Claimant . . . that is required to file a timely proof of claim on account of a Tort Claim in these Chapter 11 Cases . . . , but that fails to do so properly by the Tort Claims Bar Date, shall not, with respect to such claim, be treated as a creditor of the Debtors for the purposes of voting upon, or receiving distributions under, any plan in these Chapter 11 Cases.

(*Id.* ¶ 12.)

32.    The Solicitation and Tabulation Procedures set forth in the Motion make clear that the only Sexual Misconduct Claims that will be counted for voting purposes are Sexual Misconduct Claims timely filed pursuant to the Tort Claims Bar Order.  The Motion requests the Court approve a Sexual Misconduct Claims Ballot, which the Plan Proponents will mail "only to creditors . . . entitled to vote on the Plan."  (Mot. ¶ 53.)  The Motion further request that the Court approve the Tabulation Procedure whereby "[a]ny Ballot cast for a Claim . . . for which no Proof of Claim was timely filed" will "not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected".[8]  (*Id.* ¶ 63.)

---

[8] On this basis alone, the David Claimants' assertion that the Plan Proponents "seek[] to enfranchise 59,000 potential claimants . . . with an equal vote . . . regardless of whether the Tort Claimant ha[s] an allowed claim" lacks any basis

33. The October 31, 2020 Tort Claims Bar Date has passed, so the number of Holders of Sexual Misconduct Claims—and thus, the number of individuals within the Sexual Misconduct Claims class who are entitled to vote on the Plan—is now fixed. No individuals beyond those who timely have filed proofs of claim will be solicited or will be entitled to vote on the Plan.

### (3) The David Claimants Forfeited Their Right To Object To The Confidentiality Provisions In The Tort Claims Bar Date Order.

34. The David Claimants argue that the Court should deny the Motion because "[a]ll filed proof[s] of Sexual Misconduct Claims are kept on a confidential basis", which prevents the David Claimants from being able to object to Sexual Misconduct Claims filed by other Holders of Sexual Misconduct Claims or from soliciting rejection votes to the Plan. (David Obj. at 2, ¶¶ 7, 21-22.) That issue already was resolved in connection with the *Debtors' Motion for Entry of An Order [] Establishing Deadlines for Filing Proofs of Claim Solely With Respect to Tort Claims*, (the "**Tort Claims Bar Date Motion**") [D.I. 2859] filed over four months ago on June 30, 2020. Specifically, due to the sensitive nature of the Sexual Misconduct Claims, the Plan Proponents requested approval of the confidentiality procedures set forth in the Tort Claims Bar Date Order to protect the privacy and identity of potential Holders of Sexual Misconduct Claims and ensure that no Holders of Sexual Misconduct Claims would have to decide between protecting their privacy and identity or filing a Sexual Misconduct Claim and seeking recovery for the harm to which they were subjected.

35. Counsel for the David Claimants objected to the Tort Claims Bar Date Motion. (*See* D.I. 2873.) The objection did not contain any argument about the proposed confidentiality procedures. *See id.* On July 30, 2020, the Debtors amended the Tort Claims Bar Date Motion

---

in fact. (*See* David Obj. ¶¶ 14, 17.) Sixty-five (65) Tort Claims were filed prior to the Tort Claims Bar Date and only those 65 individuals would be solicited and entitled to vote on the Plan.

(the "**Amended Tort Claims Bar Date Motion**") [D.I. 2895], and the amended motion still sought approval of the confidentiality procedures.  In the Amended Tort Claims Bar Date Motion, the Debtors stated that "the Debtors did not prosecute the [Tort Claims Bar Date Motion]" and parties who objected to the Tort Claims Bar Date Motion "need only supplement their prior objection". (Am. Tort Claims Bar Date Mot. at 1 n.2.)  Counsel for the David Claimants filed a supplemental objection, requesting the that the Court deny the Amended Tort Claims Bar Date Motion.  (*See* D.I. 2902.)  But yet again, counsel for the David Claimants did not object to the proposed confidentiality procedures.  (*See id.*)

36.    The Court held a hearing on the Amended Tort Claims Bar Date Motion on September 2, 2020.  Counsel for the David Claimants appeared at the hearing and argued that the Court should deny the Amended Tort Claims Bar Date Motion.  (*See generally* Sept. 2 Hrg Tr.) At no point during his remarks did counsel for the David Claimants argue that the proposed confidentiality procedures were improper.  (*See generally id.*)  During the hearing, the Court agreed with counsel for the David Claimants that a few revisions were needed to the proposed order and directed the Debtors' and counsel for the David Claimants to work together on revisions to the proposed order.  (Sept. 2 Hr'g Tr. at 49:12-14, 50:13-21.)  The Debtors adhered to the Court's direction and met and conferred with counsel for the David Claimants to revise the proposed order.  On September 9, 2020, counsel for the David Claimants consented to the Debtors' revisions to the proposed order and the same day, the Debtors filed the revised order. (*See Certification of Counsel Regarding Order Establishing Deadlines for Filing Proofs of Claim Solely With Respect to Tort Claims*, ¶ 7 [D.I. 2964] ("The Revised Order has been circulated to counsel for the [David Claimants] and counsel to the Committee and the aforementioned parties

do not object to entry of the Revised Order.").)  The Court entered the Tort Claims Bar Date Order

later that day.

37.     When a party is provided with a full and fair opportunity to assert an argument in a

timely manner but fails to do so, the argument is forfeited and should not be considered later

"absent truly exceptional circumstances."  *Tri-Arc Fin. Servs. Inc. v. Evanston Ins. Co.*, 725

F. App'x 97, 101 (3d Cir. 2018); *accord Robinson v. First State Comm. Action Agency*, 920 F.3d

182, 188-89 (3d Cir. 2019); *In re Millenium Lab Holdings II, LLC*, 575 B.R. 252, 293-95 (Bankr.

D. Del. 2017) *aff'd* 591 B.R. 559 (D. Del. 2018).  The argument-forfeiture rule is grounded in

sound procedural doctrine that "prevents a litigant from sandbagging the court—remaining silent

about his objection and belatedly raising the error only if the [ruling] does not conclude in his

favor."  *Puckett v. United States*, 556 U.S. 129, 135 (2009); *In re Millenium Lab Holdings II, LLC*,

575 B.R. 294 n.190.

38.     Here, the David Claimants plainly have forfeited any objections related to the

confidentiality procedures, *see Puckett*, 556 U.S. at 135; *In re Millenium Lab Holdings II, LLC*,

575 B.R. at 293-95, and the David Claimants do not even try to meet the exceptional circumstances

standard, nor could they, *see* David Obj. at 2, ¶¶ 7, 21-22; *Tri-Arc Fin. Servs. Inc.*, 725 F. App'x

at 101 (3d Cir. 2018).[9]

---

[9]  Assuming *arguendo* that the David Claimants have not forfeited any objections to the confidentiality procedures
contained in the Tort Claims Bar Date Order, while the David Claimants may have a right to object to other creditors'
claims, "the needs of orderly and expeditious administration do not permit the full and unfettered exercise of such
right." 4 COLLIER ON BANKRUPTCY ¶502.02 (16th ed. 2020); *see also In re Savidge*, 57 B.R. 389, 392 (D. Del.
1986) ("[N]o general creditor has standing to contest another general creditor's claim.  The needs of orderly
administration of the bankrupt's estate mandate that objections be voiced by general creditors through the [debtor-in-
possession], unless the [debtor-in-possession], upon application, refuses to object." (citation omitted)).  As discussed
above, the Plan Proponents' voting solicitation, voting tabulation and claims allowance procedures have been designed
to ensure the orderly administration of the Debtors' estates and preserve as much value as possible for creditors.

II.     **The U.S. Trustee Objection Fails To Provide A Sufficient Basis To Deny The Motion.**

39.     The U.S. Trustee does not argue that Disclosure Statement fails to provide adequate information.  The U.S. Trustee argues that the Court cannot approve the Disclosure Statement because the Plan contains "patently unconfirmable" provisions, namely, the release, discharge and exculpation provisions.  (U.S. Trustee Obj. at 2.)  As discussed further below, the Plan Proponents have revised the Plan to address the arguments directed at the discharge and exculpation provisions, and the U.S. Trustee's arguments regarding the release provisions in the Plan are contradicted by case law.[10]

A.     **The Plan Proponents Revised The Disclosure Statement To Address The U.S. Trustee's Concerns Regarding The Discharge And Exculpation Provisions In The Plan.**

40.     The U.S. Trustee argues that the Plan "provides an impermissible discharge of a liquidating debtor and impermissible exculpations."  (U.S. Trustee Obj. at 2, ¶¶ 23-26.)  The Plan Proponents have removed all discharge language from the Plan, (*see, e.g.*, Plan §§ 7.2.4), and circumscribed the definition of Exculpated Parties to include only the Debtors and the Committee. The revisions fully resolve the U.S. Trustee's concerns regarding the discharge and exculpation provisions in the Plan.

---

[10]  The U.S. Trustee also "gives notice of several problematic provisions that *could* ultimately make the Plan unconfirmable."  (U.S. Trustee Obj. ¶ 27 (emphasis added).)  While the Plan Proponents in no way concede that the Plan provisions called out in the U.S. Trustee Objection make the Plan unconfirmable, prior to the filing of the U.S. Trustee Objection, the Plan Proponents met and conferred with the U.S. Trustee to discuss their issues with the Plan.  Prior to the start of the confirmation hearings, the Debtors intend to continue to meet and confer with the U.S. Trustee to attempt to resolve any issues the U.S. Trustee may have with the Plan.

19

**B. The Plan Is Patently Not Patently Unconfirmable**.

41.     In light of the Plan Proponents' revisions to the Plan, the only remaining objections in the U.S. Trustee Objection are that the Plan is patently unconfirmable because "third-party releases of non-debtors are permissible only to the extent that the releasing parties give affirmative consent", (U.S. Trustee Obj. ¶ 16),[11] and the Debtors' releases of non-debtor parties fail to satisfy the standards applicable to such releases, (*id.* ¶¶ 21-22).   The U.S. Trustee's arguments misconstrue the law in this Circuit and therefore should be rejected.

42.     Third Circuit precedent holds that while "confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage . . . , if it appears there is a defect that makes a plan inherently or patently unconfirmable, the [c]ourt may consider and resolve that issue that issue at the disclosure statement stage". *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012) (citations and internal quotation marks omitted).   "A plan is patently unconfirmable where (1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Id.* (citation, alterations and internal quotation marks omitted).

43.     Creditors who vote in favor of a plan are deemed to have consented to the terms of the plan, including any injunctions and releases therein.  *See In re Washington Mut.*, Inc., 442 B.R. 314, 355 (Bankr. D. Del. 2011).   Thus, prior to creditors voting on the Plan there is only a

---

[11] In the same paragraph, the U.S. Trustee asserts that "Holders of Sexual Misconduct Claims may opt in to releasing Harvey Weinstein at some point in the future but are not told how or when they might do so".  (U.S. Trustee Obj. ¶ 16.)  This statement is inaccurate.  The Sexual Misconduct Claims Procedures clearly state that after their claims determination decision is final, "the Claims Administrator shall provide each Claimant with the option to release Harvey Weinstein or to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in another court of competent jurisdiction (including the right to a jury trial) (the 'Election Notice')" and that they "must return the Election Notice to the Claims Administrator within 14 calendar days after the date of mailing of the Election Notice."  (Plan Ex.. 4, § 9.)

possibility that the Plan will contain non-consensual releases.  The defect asserted by the U.S. Trustee therefore can be resolved by creditor voting and the U.S. Trustee cannot establish at this point that the Plan is patently unconfirmable.  *See In re Am. Cap. Equip., LLC*, 688 F.3d at 154-55; *In re Washington Mut.*, Inc., 442 B.R. at 355.  This is precisely why none of the third-party release cases cited by the U.S. Trustee analyzes releases proposed in a plan at the disclosure statement stage—the cases all weigh the issue at the confirmation stage.

44.    Moreover, the U.S. Trustee is incorrect that plans containing non-consensual third-party releases are *per se* unconfirmable.  (U.S. Trustee Obj. ¶ 16.)  Courts in this Circuit, including the Third Circuit Court of Appeals, have approved plans containing non-consensual third-party releases.[12]  *See In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 137 (3d Cir. 2019); *In re Blitz U.S.A., Inc.,* No. 11–13603 (PJW), 2014 WL 2582976, at *4-9 (Bankr. D. Del. Jan. 30, 2014).

45.    Finally, the U.S. Trustee provides no support for its argument that it is proper for a court to find at the disclosure statement stage that a proposed plan is patently unconfirmable based on the plan proponents' alleged failure to satisfy the factors set for in *In re Zenith Electronics Corporation*, 241 B.R. 92 (Bankr. D. Del. 1999), for evaluating a debtor's release of non-debtor parties.  (*See* U.S. Trustee Obj. ¶¶ 21-22 (first citing *In re Zenith*, 241 B.R. at 110; and then citing *In re Tribune Co.*, 464 B.R. 126, 186 (Bankr. D. Del. 1999).)  Both *Zenith* and *Tribune* were analyzing the debtors' releases in the proposed plans ***at the confirmation stage***.  *See In re Zenith*, 241 B.R. at 96, 110-11; *In re Tribune Co.*, 464 B.R. at 135, 186-89.  The U.S. Trustee has not established at this stage that any purported defects in the Plan "cannot be overcome by creditor

---

[12]  In the event that Class 4 or Class 5 vote in favor of the Plan in accordance with section 1126(c) but certain creditors vote in those classes vote against the Plan, the Plan Proponents will put forward argument and evidence in connection with confirmation to establish the non-consensual third-party releases contained in the Plan are confirmable.

voting results". *See In re Am. Cap. Equip. LLC*, 688 F.3d at 155; *see also In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) (rejecting pre-confirmation hearing arguments that the debtors' plan could not be confirmed because "the evidence, then existing, . . . was not strong enough to enable [the court] to say that [unconfirmability] was established as a matter of law.")

*     *     *     *     *

46.     The Debtors and the Committee firmly believe that the Plan is confirmable and in the best interests of all creditors, especially Holders of Sexual Misconduct Claims. The Disclosure Statement contains robust disclosure that satisfies section 1125 and provides creditors with the information they need in order to make an informed decision on whether to accept or reject the Plan. The Debtors and the Committee set up a Plan confirmation process that will be guided by the voice of the majority of Holders of Sexual Misconduct Claims. To date, the full class of Holders of Sexual Misconduct Claims have not had their opportunity to have their voices heard with respect to this Plan. With approval of this Motion, that opportunity will become a reality.

47.     The Objections provide no legal basis for the Court to deny the Motion. Accordingly, the Debtors and the Committee respectfully request that the Court grant the Motion and allow the Debtors and the Committee to commence the process that will, at long last, allow the Holders of Sexual Misconduct Claims, and the creditors writ large, to express their views of the Plan.

*[remainder of page intentionally left blank]*

## CONCLUSION

48.    WHEREFORE, based on the foregoing reasons, the Debtors respectfully request

that the Court overrule the Objections and grant the relief requested in the Motion.


Dated:    November 4, 2020
          Wilmington, Delaware


*/s/ David T. Queroli*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

        - and -

**CRAVATH, SWAINE & MOORE LLP**
Paul H. Zumbro (admitted *pro hac vice*)
Lauren A. Moskowitz (admitted *pro hac vice*)
Salah M. Hawkins (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for the Debtors and Debtors in
Possession*

*/s/ Colin R. Robinson*
**PACHULSKI STANG ZIEHL & JONES LLP**
James I. Stang (admitted *pro hac vice*)
Robert J. Feinstein (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell (admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400

*Attorneys for the Official Committee of Unsecured
Creditors*