# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> The Weinstein Company Holdings, LLC, *et al.* <br><br> Debtors. | Chapter 11 <br><br> Case No. 18-10601 (MFW) <br> Jointly Administered <br><br> **Hearing Date: Jan. 14, 2021 at 10:00 am** <br> **Obj. Deadline: Dec. 18, 2021 at 5:00 pm** |

## OBJECTION OF SARTRACO, INC. TO DEBTORS' PROPOSED PLAN OF REORGANIZATION

Sartraco, Inc. ("**Sartraco**") objects to the Debtors' proposed plan.[1]

### I.  INTRODUCTION

1.  Although the Debtors previously revised the plan to carve Sartraco out of the third party releases, the carve-out language may not currently adequately address the issue in light of changes in the procedural posture of the commercial fraud litigation between Sartraco and third parties. Sartraco objects to confirmation of the plan but anticipates it will be able to reach a resolution of the issue with the Debtors.

### II.  BACKGROUND

2.  Sartraco will not burden the Court with a lengthy recitation of the background of this matter. The Court is familiar with this bankruptcy case and Sartraco's role as the Court has already decided issues with respect to Sartraco pursuant to a written opinion.[2] Instead, Sartraco will recite the background which is germane to Sartraco's objection.

3.  Relevant to this objection, Sartraco has a general unsecured claim against The Weinstein Company, LLC ("**TWC**") in the amount of $5,000,000 which has been allowed by

---

[1] ECF 3096
[2] ECF 2933

an Order of the Court.[3] Sartraco's claim is commercial in nature and does not relate to sexual misconduct. Sartraco and certain other parties (the "Plaintiffs")[4] also have a separate and independent cause of action pending, or on or subject to appeal, against Harvey Weinstein, Robert Weinstein, David Glasser and Does 1 through 100 (the "**Fraud Defendants**") in the Superior Court of the State of California (the "**Commercial Fraud Litigation**").[5] The Commercial Fraud Litigation arises from a different fact pattern, a different time, and involves different parties, than Sartraco's claim in this case. The complaint in the Commercial Fraud Litigation is for fraud only and Sartraco believes it is not likely covered by insurance. The Commercial Fraud Litigation is one of the "Contract and Commercial Cases" identified in section 1.32 of the proposed plan.

4. The releases and injunctions in Debtors' proposed plan may prohibit the Plaintiffs from pursuing the Commercial Fraud Litigation against the Fraud Defendants.[6]

5. Specifically, section 7.2.2 of the proposed plan includes a release by creditors which provides, in relevant and simplified part, as follows:

> **7.2.2. Releases by the Committee and Holders of Claims and Interests**. … (ii) each present and former Holder of a Claim or Interest, will be deemed to … release… the Released Parties … from any and all causes of action…based on…conduct…occurring prior to the Effective Date…related to the Debtors…

6. The "Released Parties" appear to include the Fraud Defendants.[7] The definition of "Released Parties" includes "Former Representatives" which include Robert Weinstein and

---

[3] ECF 2251
[4] The Plaintiffs include Aldamisa International, LLC, Aldamisa Entertainment, LLC, Sergei Bespalov and Marina Bespalov.
[5] A copy of the Plaintiff's current complaint is attached as Exhibit A.
[6] Proposed plan, sections 5 and 7. Although the Commercial Fraud Litigation is listed in section 7.2.5(4) of the plan which deals with exceptions to the releases, the exception in that section appears to deal with claims between the Debtors and the Fraud Defendants with respect to the Commercial Fraud Litigation.

2

David Glasser who are Fraud Defendants.[8] "Released Parties" also includes former officers and directors of the Debtors which would likely include Harvey Weinstein who is a Fraud Defendant.[9]

7. Section 7.3 of the proposed plan also includes an injunction prohibiting creditors, whether they have voted for the plan or not, from asserting third party claims that have been released by the plan.

8. The plan does not provide for any payment by the Fraud Defendants to the Plaintiffs to settle the claims in the Commercial Fraud Litigation.

9. The plan's default rule for holders of Sexual Misconduct Claims[10] is they may affirmatively opt into the plan distributions by providing a release.

10. Because the Commercial Fraud Litigation is unrelated to sexual misconduct, the plan does not provide the Plaintiffs with an opt-in or opt-out enabling the Plaintiffs to elect to pursue the Commercial Fraud Litigation.

11. As discussed in this objection, the non-consensual third party release and injunction renders the plan unconfirmable.

12. Sartraco will not vote for the plan in its current form and Sartraco does not consent to the release, injunction or modification of Sartraco's claims against the Fraud Defendants.

---

[7] See section 1.94 of the proposed plan.
[8] Proposed plan, section 1.49
[9] The Introduction section of the proposed plan states the definition of "Released Parties" does not include Harvey Weinstein. However, that appears to be inconsistent with the definition of "Released Parties" contained in section 1.94 of the proposed plan which does not include any express exclusion for Harvey Weinstein. At a minimum, if Harvey Weinstein is not intended to be a "Released Party", the definition in section 1.94 should include an express statement to that effect.
[10] As defined in the proposed plan

### III. OBJECTIONS

**A. The non-consensual third party releases and related remedies are impermissible.**

13. While the Third Circuit has not expressly barred third party releases, it has recognized that they are the exception, not the rule. *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 212 (3d Cir. 2000)(finding that a non-consensual third party release of another third party was not valid under the specific facts of that case but concluding that it might be in other cases based on "fairness, necessity to the reorganization, and specific factual findings to support these conclusions"). If non-consensual releases by a non-debtor of other non-debtor third parties are permitted at all, they are to be granted only in extraordinary cases. *Id.*

14. Even after *Continental*, this Court held it does not have the power to grant a third party release of a non-debtor. *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004); *In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011)("This Court has previously held that it does not have the power to grant a third party release of a non-debtor.").

15. "Rather, any such release must be based on consent of the releasing party (by contract or the mechanism of voting in favor of the plan)". *Washington Mutual* at 352. As a result, a plan that mandates third party releases if the party did not wish to grant the release would not pass muster. *Id*.

16. Indeed, a Bankruptcy Court may lack jurisdiction to approve a non-consensual third party release. *In re SunEdison, Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017).

17. Putting aside that there is an open question concerning the authority and jurisdiction of the Court to approve a non-consensual third party, the release in this case would

not satisfy the standards commonly employed by those courts which have considered the substantive fairness and appropriateness of non-consensual third party releases. Those courts typically employ the "*Master Mortgage* factors"[11] as follows:

(1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

(2) substantial contribution by the nondebtor of assets to the reorganization;

(3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

(4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes "overwhelmingly" votes to accept the plan; and

(5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*Washington Mutual,* 442 B.R. at 347; *In re Tribune Co.*, 464 B.R. 126, 186 (Bankr. D. Del. 2011).

18. The proposed non-consensual third party release does not satisfy the *Master Mortgage* factors. The first factor is not satisfied because the Fraud Defendants are apparently now unassociated with the Debtors so there is no substantial identity between the Debtors and the Fraud Defendants. The Commercial Fraud Litigation will not deplete the estate of assets.

---

[11] *See In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D.Mo. 1994)

The Plaintiffs' fraud claim is based on intentional tort which may not be covered by insurance.

19.     The second factor may not be established because the insurance proceeds funding the plan may not constitute non-debtor assets as they may already be property of the Debtors' estates. See discussion in *In re W.R. Grace & Co.*, 475 B.R. 34, 81-82 (D. Del. 2012); *In re SelectBuild Ill., LLC*, 2015 Bankr Lexis 1790, 2015 WL 3452542 (Bankr. D. Del. May 28, 2015).

20.     Third, the third party release and injunction, as applied to the Plaintiffs, is not essential to the reorganization. In this case, there is no reorganization. It is a liquidation. Plaintiffs are not receiving anything from the Fraud Defendants to resolve the Commercial Fraud Litigation which should be dealt with separately and independently from Sartraco's allowed claim in this case. The victims of sexual misconduct, whose claims likely dwarf the Plaintiffs' claims, have the right to effectively opt-out of the release and the Plaintiffs, at a minimum, should be given that right too.[12]

21.     Fourth, it is unlikely the creditors similarly situated to Sartraco will support the plan. More specifically, it may be that unsecured creditors without direct claims against the insiders may support the plan. But those general unsecured creditors are not similarly situated to creditors like Sartraco who are being asked to give up separate and independent rights against third parties in exchange for a modest *pro rata* distribution. If the plan is going to impose a non-consensual release that impacts some unsecured creditors and not others, those two groups of unsecured creditors should be separately classified so the Court can determine

---

[12] An opt-in or opt-out for creditors like Sartraco might not solve the problem. A creditor who elects to pursue claims outside of the plan would be precluded from recovering under the plan. In other words, an opt-out provides a Hobson's choice which discriminates against those creditors with claims against third parties by requiring the creditors to give up the third party claims in order to recover anything under the plan. Creditors who don't have claims against third parties have nothing to give up. As a result, there is disparate treatment of claimants.

whether the release is actually supported by the parties it affects. Indeed, 11 U.S.C. §1122(a) expressly prohibits a plan from classifying dissimilar claims together and this prohibition is recognized by the Third Circuit Court of Appeals. *In re Jersey City Medical Ctr.*, 817 F.2d 1055, 1060 (3d Cir. 1987).

22. Finally, and perhaps most importantly, the plan does not pay substantially all of Sartraco's claim. It only pays a small fraction of the claim against TWC but does not pay anything to Sartraco in connection with the claims against the Fraud Defendants.

23. As a result, the plan cannot be confirmed because it includes a non-consensual third party release and other injunctions.

    **B.**   **The plan impermissibly modifies Plaintiffs' rights in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.**

24. The proposed plan violates the Takings Clause of the Fifth Amendment to the United States Constitution by depriving the Plaintiffs of the right to recover their claim against the Fraud Defendants.

25. There is "almost universal agreement that the power given to Congress by the Bankruptcy Clause [of the United States Constitution] may not overstep the limitations imposed by the Due Process and Takings Clauses of the Fifth Amendment." *Community Natl. Bank & Trust Co. of New York v. Persky (In re Persky)*, 134 B.R. 81 (Bankr. E.D.N.Y. 1991) citing *United States v. Security Industrial Bank*, 459 U.S. 70 (1982); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935); *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir.1981); *In re Gifford*, 669 F.2d 468 (7th Cir.1982), reh. en banc, 688 F.2d 447; *In re Negri*, 27 B.R. 941 (Bankr.E.D.N.Y.1983).

26. This means the Debtors' ability to modify or eliminate the Plaintiffs' rights is limited by the Takings Clause of the United States Constitution which provides "nor shall

private property be taken for public use, without just compensation".

27. In assessing whether a debtor's plan under the Bankruptcy Code effects a taking, courts consider "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017); *Pulte Home Corp. v. Montgomery County*, 909 F.3d 685, 695 (4th Cir. 2018).

28. Applying these factors, it is apparent that the Debtors' plan constitutes an impermissible taking for public use (i.e, payment of creditors under the Bankruptcy Code).

29. First, the non-consensual third party release appears to prohibit the Plaintiffs from recovering their claim against the Fraud Defendants.

30. Second, Plaintiffs had the legitimate expectation that any party it dealt with would be held accountable for the party's fraudulent conduct under applicable law and that Plaintiffs would have the right to recover damages as a result of the fraud. The Debtors' plan eliminates those rights and destroys that expectancy.

31. Third, the Debtors are invoking government action by using the Bankruptcy Code and this Court to effectuate the taking and deprivation of Plaintiffs' rights.

32. Despite the taking, the Debtors are not providing just compensation to Sartraco who will only receive a small pro rata portion of its claim against TWC but will receive nothing with regard to the claim against the Fraud Defendants.

33. As a result, the Debtors' Plan cannot be confirmed because it effectuates an impermissible taking for public use without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. See, *Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.)*, 496 B.R. 644 (B.A.P. 1st Cir. 2013).

**WHEREFORE**, Sartraco, Inc. respectfully requests the Court deny confirmation.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

Dated: December 18, 2020

/s/ Geoffrey G. Grivner
Geoffrey G. Grivner, Esquire
919 North Market Street, Suite 990
Wilmington, DE 19801-3036
Tel: 302-552-4207
geoffrey.grivner@bipc.com

Mark Pfeiffer, Esquire (admitted pro hac vice)
50 S. 16th Street
Suite 3200
Philadelphia, PA 19102
Tel: 215-665-3921
mark.pfeiffer@bipc.com

Attorneys for Sartraco, Inc.