**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>The Weinstein Company Holdings, LLC, *et al*.<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br>Jointly Administered<br><br>**Hearing Date: TBD**<br>**Obj. Deadline: January 18, 2021** |

**RESPONSE OF SARTRACO, INC. TO**
**MOTION OF SPYGLASS MEDIA GROUP, LLC (F/K/A LANTERN**
**ENTERTAINMENT LLC) FOR ENTRY OF AN ORDER (I) ENFORCING ORDER**
**DENYING SARTRACO'S MOTION TO COMPEL COMPLIANCE WITH SALE**
**ORDER AND (II) AWARDING ATTORNEY'S FEES AND COSTS**

Sartraco, Inc. ("**Sartraco**") responds to the motion (the "**Refund Motion**")[1] of Spyglass Media Group, LLC ("**Spyglass**") seeking to compel Sartraco to refund a payment to Netflix, Inc. ("**Netflix**").[2]

## I.    INTRODUCTION

1.    The Spyglass Refund Motion is beyond the jurisdiction of this Court. The motion involves a dispute between three non-debtors: Sartraco, Spyglass and Netflix. The dispute does not involve any of the Debtors, property of the estate or the administration of the bankruptcy case.

2.    Spyglass asserts the Court has jurisdiction to enforce the Court's order (the "**Prior Order**")[3] denying Sartraco's motion to compel compliance (the "**Motion to Compel**")[4] with the Court's sale order (the "**Sale Order**").[5]

---

[1] D.I. 3156
[2] Sartraco incorporates the accompanying declaration.
[3] D.I. 2933
[4] D.I. 2704
[5] D.I. 846

3. However, the Prior Order did not direct Sartraco to return funds to Netflix. It merely denied Sartraco's Motion to Compel because Sartraco was not a party to the license agreement (the "**License Agreement**") between Spyglass and Netflix.

4. The Prior Order, and associated Memorandum Opinion (the "**Opinion**")[6], did not adjudicate whether Netflix owed the funds to Sartraco based on legal duties arising outside of the License Agreement such as claims that may be brought by Sartraco against Netflix under the copyright laws for streaming the film without any right or license.

5. Putting the jurisdictional issues aside, the Spyglass Refund Motion is substantively flawed. Spyglass does not have a legal basis to compel Sartraco to return the funds to Netflix. There is no contractual, statutory, tort or equitable basis supporting the refund request. Spyglass voluntarily turned the funds over to Sartraco with the consent of Netflix.

6. The rights between the parties can only be adjudicated if Netflix is a party and, to the extent the Court has jurisdiction, an adversary proceeding is required.

7. But, because the Court lacks jurisdiction, Netflix and Spyglass must pursue remedies outside of bankruptcy court where Sartraco could assert setoff and recoupment defenses and, perhaps, counterclaims for violation of the copyright laws and similar causes of action. However, this Court is not the appropriate forum to adjudicate copyright related claims and defenses between non-debtors Sartraco and Netflix.

## II. BACKGROUND

8. On March 20, 2018 (the "**Petition Date**"), The Weinstein Company, LLC ("**TWC**") and its affiliated debtors ("**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

---

[6] D.I. 2932

**The 363 Sale**

9.      On the Petition Date, Debtors filed a motion seeking this Court's approval of the sale of substantially all of their assets (the "**Sale**"). The Court entered a sale order approving the Sale of the Debtors' assets to a predecessor of Spyglass on May 9, 2018. The Sale closed on July 13, 2018.

**The Distribution Agreement**

10.     Sartraco and TWC were parties to a "Sin City 2" Domestic Distribution Agreement Dated as of April 26, 2012 and a First Amendment to "Sin City 2" Domestic Distribution Agreement (collectively, the "**Distribution Agreement**"). Pursuant to the Distribution Agreement, Sartraco granted TWC the exclusive right (subject to certain exceptions not relevant to the Refund Motion) to distribute and exploit rights to the film "Sin City 2" (the "**Film**") in the geographic territory described in the Distribution Agreement.

11.     The Distribution Agreement provided upon rejection of the Distribution Agreement, Sartraco may terminate the grant of Rights (the "**Termination Right**") to TWC, with the rights reverting to Sartraco.

**The Pre-Petition Arbitration**

12.     Prior to the Petition Date, Sartraco commenced an arbitration proceeding with JAMS against TWC for breaches of the Distribution Agreement. On March 2, 2018, Sartraco was granted a final award against TWC in the amount of $17,377,267 (the "**Arbitration Award**"). Sartraco filed a proof of claim based on the Arbitration Award which was given claim number 20188 (the "**Claim**").

### The Rejection of the Distribution Agreement

13.    On February 8, 2019, Sartraco filed a Motion (I) to Compel Rejection of Distribution Agreement and other Agreements Related to Sin City 2, and (II) for Determination that Automatic Stay does not Apply to Exercise of Termination Right (the "**Rejection Motion**").[7]

14.    On April 1, 2019, the Court entered an Order[8] (the "**Rejection Order**") granting the Rejection Motion and providing Sartraco with relief from the automatic stay. The Rejection Order provided the Distribution Agreement was effective as of April 1, 2019 (the "**Rejection Date**").

### The Termination Notice

15.    Following entry of the Rejection Order, Sartraco sent a Notice of Exercise of Termination Right (the "**Termination Notice**") to TWC. Accordingly, TWC no longer has any right, title or interest in or to the Film.

### The Post-Rejection Netflix Payment to Spyglass

16.    Following the Rejection Date and issuance of the Termination Notice, a number of entities, including Netflix, continued to pay TWC and/or Spyglass monies on account of sub-licenses relating to the Film.

### The License Agreement between Netflix and Spyglass

17.    The Film was the subject of the License Agreement dated April 16, 2012 between TWC and Netflix. The License Agreement was assumed and assigned to Spyglass pursuant to the sale order.[9]

---

[7] D.I. 2073
[8] D.I 2551
[9] D.I. 216, 282, 482 and 860

**Spyglass Turns the Netflix Payment
Over to Sartraco with the Consent of Netflix**

18.    Following conversations between counsel to Sartraco, Netflix and Spyglass, Spyglass turned over to Sartraco funds in the amount of $439,274.12 (the "**Netflix Payment**") it received from Netflix related to the Film for the period from the Rejection Date through approximately August, 2019.[10]

**The Implied Misrepresentation Claim**

19.    A legal theory behind the Spyglass Refund Motion appears to be implied misrepresentation by then counsel for Sartraco[11] concerning Sartraco's entitlement to the Netflix Payment.[12] In effect, Spyglass argues Sartraco counsel made a misrepresentation by asserting Sartraco was entitled to the Netflix Payment.

20.    However, there was no misrepresentation. The matter was discussed by counsel for Sartraco, Spyglass and Netflix by email and both Spyglass and Netflix agreed the Netflix Payment should be remitted by Spyglass to Sartraco.

21.    True and correct copies of the relevant communications are attached to the accompanying declaration and excerpted below in chronological order:

Sartraco counsel:    Following up on the below, I have spoken several times with Tom Patterson, counsel to Netflix. Tom has confirmed today that Netflix paid the $439,274.12 to Spyglass for amounts due under the rejected Sin City 2 Distribution Agreement.  Netflix agrees that the funds should be remitted to Sartraco and not refunded to Netfix [sic].  By way of this email,  I ask that Tom reply and confirm to you as counsel for Spyglass.

Please confirm that Spyglass will remit the funds to Sartraco.

---

[10] Spyglass has also turned over funds to Sartraco related to non-Netflix sublicense agreements covering the Film.  Only Netflix is at issue in this Motion.

[11] Mary Caloway, Esquire is the former counsel for Sartraco. Ms. Caloway is now associated with Pachulski Stang Ziehl & Jones LLP which is counsel for the official committee of unsecured creditors in this case.

[12] ECF 3156, paragraphs 2 and 7

|                    | The payment will go to my Firms' client trust account.  Wire instructions will follow tomorrow morning |
|---|---|
| Netflix counsel:   | … I don't believe Netflix has any objection to Spyglass paying Sartraco so long as it doesn't affect any legal rights or obligations between Netflix and Spyglass.[13] |
| Sartraco counsel:  | Are we good for Spyglass to remit the funds to Sartraco?  I don't see any reason Sartraco need wait any longer.  Could you please advise?  Thanks. |
| Spyglass counsel:  | I'm waiting to hear back from [Netflix counsel] on a related issue.  I have made the client aware of the circumstances. |
| Netflix counsel:   | I don't think we had appreciated that Spyglass giving the money to Sartraco was dependent on another issue.  I have inquired of my client for direction. |
| Sartraco counsel:  | I don't know what the other/related issue is but I am struggling to understand why it would delay Netflix from sending money to Sartraco that neither Netflix nor Spyglass is entitled to.  Please advise whether the funds will be remitted today.  If they are not wired by Monday, Sartraco will be forced to seek an order compelling the payment, something I'd rather avoid if possible. |
| Spyglass counsel:  | I have no issue with Netflix sending the money, but we have a potential set off issue with Netflix that I thought was resolved.  As soon as I get word that the issue has been resolved, I have no issue sending the money to Sartraco or back to Netflix. |
| Netflix counsel:   | Not sure what you mean about Netflix sending money. I thought you were looking to Spyglass sending it, as they are currently holding it. |
| Spyglass counsel:  | It is Netflix's obligation. Please advise as to the status of the issue between Netflix and Spyglass. |
| Netflix counsel:   | While we are very much trying to resolve matters it doesn't help to have these provocative email communications.  I do not have the faintest idea what you mean when you say it is Netflix's obligation.  Netflix discharged its obligation by paying its counterparty who then informed Netflix that it did not have the rights it represented it had to this and other titles.   And we're |

---

[13] This statement from Netflix counsel was omitted from the exhibit attached to the Spyglass Refund Motion.

trying to sort that out.

Spyglass counsel:    I've been informed that Netflix is releasing the money it owes Spyglass within the next few days.  Once that happens, Spyglass will wire the Sin City 2 money to [Sartraco counsel].  They have the wire instructions.  I'll let you know when I am told that the money is going out to [Sartraco counsel].

## III.   ANALYSIS

### A.   The Court lacks jurisdiction over this dispute between non-debtors.

22.   The Court lacks jurisdiction over this dispute between non-debtors. The dispute does not involve any debtor. It does not affect property of the estate and it does not implicate any of the Court's orders or administration of the bankruptcy case.

23.   The jurisdiction of a bankruptcy court is limited and is derived from 28 U.S.C. §§ 1334 and 157. Federal bankruptcy jurisdiction extends to four types of matters: (1) cases under title 11 (the "**Bankruptcy Code**"), (2) proceedings arising under the Bankruptcy Code, (3) proceedings arising in a case under the Bankruptcy Code, and (4) proceedings related to a case under the Bankruptcy Code. 28 U.S.C. §§ 157, 1334. *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006); *In re Combustion Eng'g Inc.*, 391 F.3d 190, 225 (3d Cir. 2004).

### Case "Under" the Bankruptcy Code

24.   The Spyglass Refund Motion is not a case under the Bankruptcy Code. A case under the Bankruptcy Code is merely the bankruptcy petition itself. *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 264 (3d Cir. 1991).

### "Arising Under"

25.   Proceedings "arising under" the Bankruptcy Code refer to the steps within the bankruptcy case and any action within the case that may raise a disputed or litigated matter. See, e.g., *Michigan Emp'r Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio*

*Co., Inc.*), 930 F.2d 1132 , 1141 n.14 (6th Cir. 1991).

26.    "Arising under" proceedings encompass actions based on any express provision of the Bankruptcy Code; for example, a sale of assets under section 363. *Seagate Tech. (US) Holdings, Inc. v. Global Kato HG, LLC (In re Solyndra, LLC)*, No. 11-12799 (MFW), 2015 Bankr. LEXIS 3515, 2015 WL 6125246, at *3 (Bankr. D. Del. Oct. 16, 2015).

27.    Spyglass' Refund Motion does not arise under the Bankruptcy Code because it is not based on any express provision of the Bankruptcy Code. At best, it is a case in which one non-debtor seeks to compel another non-debtor to refund a post-bankruptcy sale payment to a third non-debtor. It is based on law unrelated to the Bankruptcy Code.

### "Arising In"

28.    Proceedings arising in a Bankruptcy Case are those that are not based on any right expressly created by the Bankruptcy Code, but nevertheless would have no existence outside the bankruptcy case. *Stoe*, 436 F.3d at 216. They are claims that, by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case; *Seagate Tech. (US) Holdings, Inc. v. Global Kato HG, LLC (In re Solyndra, LLC)*, No. 11-12799 (MFW), 2015 Bankr. LEXIS 3515, 2015 WL 6125246, at *3 (Bankr. D. Del. Oct. 16, 2015).

29.    Spyglass' Refund Motion is not one that could only arise in a bankruptcy case. It involves a request for a refund of a payment Spyglass states was improper. It is a claim that could arise completely outside the bankruptcy context among parties that have no relationship to a bankruptcy case.

30.    There is no "arising in" jurisdiction with respect to the Prior Order. The assertion that the Refund Motion seeks to enforce the Court's Prior Order denying the Motion

to Compel is fundamentally flawed. The Prior Order did not compel Sartraco to do anything. It merely denied Sartraco's request to compel future payments from Netflix finding Sartraco was not a party to the License Agreement which was assigned pursuant to the Court's Sale Order. The Prior Order did not adjudicate Sartraco's recoupment and setoff defenses. It did not adjudicate Sartraco's copyright claims against Netflix and did not require Sartraco to return the Netflix Payment.

31.    Even though the jurisdictional hook for the Spyglass Refund Motion, is the Prior Order, Spyglass appears to acknowledge the Prior Order did not compel Sartraco to refund the Netflix Payment. Spyglass does not say Sartraco violated the express terms of the Prior Order. It says Sartraco failed "to comply with the implications" of the Prior Order.[14] In other words, the Refund Motion is not really a motion seeking to enforce the Court's Prior Order. It is a motion seeking to expand the Prior Order from one that merely denied relief to Sartraco to one that adjudicates rights between non-debtors even though many of those rights were not at issue before.

### "Related To"

32.    Proceedings "related to" a case under title 11 constitute "the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999).

33.    Pre-confirmation "related to" jurisdiction extends to matters that "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

34.    Although confirmation has not yet occurred at the time of this response, there

---

[14] D.I. 3156, paragraph 18

is a confirmation hearing presently scheduled and it is likely the Court will decide the Refund Motion after confirmation. Once confirmation occurs, the Court retains "related to" jurisdiction only when there is a "close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166 (3d Cir. 2004).

35.    The Refund Motion does not involve the pre- or post-confirmation "related to" jurisdiction of the Court. The Refund Motion only involves claims between non-debtor parties. Whether Sartraco refunds the Netflix Payment to Netflix will have no bearing on the estate, claims against the estate or the administration of the estate. The payment is not property of the estate and nothing about this situation can trigger a claim against the estate or impact the administration. The Distribution Agreement is already rejected. The License Agreement has already been assigned. It is not an estate issue anymore. It is nothing more than a dispute between non-debtors.

36.    There is no-post confirmation "related to" jurisdiction because there is no close nexus between the Refund Motion and the plan or proceeding. The proposed plan is effectuates a liquidation through a liquidating trust.[15] Nothing related to the Refund Motion could affect the liquidation or any further proceedings in the case.

37.    The Refund Motion is nothing more than a dispute between non-debtors which will not impact the bankruptcy estate or the liquidating trust.  It is exactly the type of dispute between non-debtors which the *Pacor* court determined falls outside of the bankruptcy court's "related to" jurisdiction. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

38.    Accordingly, this dispute between non-debtors is not within the jurisdiction of

---

[15] D.I. 2856

the Court.

**B.      There is no legal or factual basis for the Refund Motion.**

39.      Putting aside the lack of jurisdiction issue, there is no legal or factual basis for the Refund Motion. It is not based on any contract, tort, statute or other legal right. It is merely based on the Prior Order which does not require the refund sought or adjudicate any of the non-bankruptcy related claims between the parties other than with respect to the License Agreement.

**The Refund is not Required by the Prior Order**

40.      Spyglass asserts the Prior Order requires Sartraco to return the Netflix Payment to Netflix.  It doesn't.

41.      The text of the Prior Order is:

> AND NOW, this 17th day of AUGUST, 2020, upon consideration of the Motion to Compel Compliance with Sale Order filed by Sartraco, Inc., and the opposition thereto, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that the Motion to Compel Compliance with Sale Order is DENIED.[16]

42.      The Prior Order does not address whether Sartraco is required to return the Netflix Payment to Netflix. It does not adjudicate the copyright, setoff and recoupment claims and defenses between Sartraco and Netflix. Spyglass didn't even file an objection to Sartraco's Motion to Compel and does not seem to be a beneficiary of the Prior Order.

43.      The Court's Opinion[17] did not address these issues either. The holding of the Opinion was:

> Because the Court concludes that the License Agreement did not

---

[16] D.I. 2933
[17] D.I. 2932

revert to Sartraco on termination of the Distribution Agreement, it concludes that Netflix does not owe any fees to Sartraco under the License Agreement. Further, because the Distribution Agreement between Sartraco and TWC has been terminated, TWC (and Spyglass) no longer have the right to exploit or license the Film. Therefore, Netflix is entitled to withdraw the Film from the License Agreement. The Court will, therefore, deny the Motion.

44.     The Court's analysis and ruling was focused on whether the fees were due under the License Agreement because the License Agreement was assigned by the debtors to the buyer pursuant to the Sale Order. The jurisdictional hook for Sartraco's Motion to Compel was the Sale Order and the assigned License Agreement. The Sale Order did not assign Sartraco's underlying copyright claims or the claims and defenses Sartraco has against Netflix outside of the License Agreement. The dispute was limited to the License Agreement which was the only relevant thing administered in the bankruptcy case. This is why the Court's Prior Order did not address all of the parties' respective rights. Those issues were simply not before the Court and they shouldn't be now because they fall outside of the Court's jurisdiction.

**No Contract or Statute**

45.     The Refund Motion does not allege the existence any contract between the parties. The Distribution Agreement between Sartraco and the Debtors was rejected. The Court already determined Sartraco is not a party to the License Agreement. As a result, neither of these agreements form the basis of Spyglass' request for relief.

46.     Spyglass and Sartraco are not in privity to any relevant contract and Sartraco owes no contractual duties to Spyglass in this matter.

47.     The communications between counsel for the parties do not establish a contract. The communications are merely a demand by Sartraco for payment of the sums due

to Sartraco. Spyglass considered the demand and engaged in discussions with Netflix which did not object to the payment. There was no offer, acceptance or consideration.

48.     Finally, the Refund Motion does not allege the existence of any statute requiring Sartraco to refund the payment.

**No Tort or Equitable Basis**

49.     There is no equitable or tort basis for the Refund Motion.

50.     Although Spyglass appears to assert an implied tortious misrepresentation by prior counsel to Sartraco, the communications between the parties reflect merely that Sartraco counsel demanded payment from Spyglass, Spyglass agreed the payment should be made and Netflix consented to it.

51.     A demand for payment does not constitute a misrepresentation even if coupled with a statement that Sartraco is entitled to the funds. Under Delaware law, there is no cause of action for fraud based on a representation which constitutes an opinion of law. See, *RHA Constr., Inc. v. Scott Eng'g, Inc.*, 2013 De Super Lexis 301, 2013 WL 3884937, *5-6 (Del. Super. Ct. July 24, 2013).

52.     Even if such a demand, and statement of entitlement to the funds, could be actionable it would not be in this case because Spyglass and Netflix were represented by sophisticated counsel and it would not be reasonable for them to rely on a bald assertion of entitlement. In fact, they didn't. Counsel for Spyglass and Netflix reviewed the issue independently, stated their own opinions concerning Sartraco's entitlement to the funds, engaged in discussions with each other and considered the implications of the payment on the relations between Spyglass and Netflix. In other words, they did what good lawyers do in these situations and did not merely take the word of former Sartraco counsel that the funds

were due to Sartraco.

53.    With regard to an equitable basis for the Refund Motion, Spyglass is not seeking return of the Netflix payment to Spyglass. It is asking that the funds be returned to Netflix.  In other words, it is not Spyglass which is allegedly harmed.[18] It is Netflix. But there is no applicable rule of equity which permits a party to obtain equitable relief on behalf of a third party. If Netflix was harmed, Netflix has the ability to seek whatever relief is available in a court with jurisdiction over the matter.[19]

54.    However, the problem for Netflix is it did not have the right to stream the Film following the rejection and termination of the Distribution Agreement. It cannot seek a return of the Netflix Payment on its own because Sartraco would be able to assert a setoff, recoupment and, perhaps, a counterclaim against Netflix for violating the copyright laws or related legal basis.

55.    Requiring Sartraco to refund the Netflix Payment, in this proceeding without the presence of Netflix as a party, would deprive Sartraco of the right to assert the copyright related setoff, recoupment and counterclaims.

56.    The Court should not use its limited equitable powers to right the wrong Spyglass perceives to have been done to Netflix when the dispute has zero impact on the debtors or the estate. The parties are sophisticated enough to seek resolution of their disputes in a court of competent jurisdiction.

---

[18] To the extent Spyglass is harmed by any setoff asserted by Netflix, that is an issue between Spyglass and Netflix and the resolution of that issue should not involve Sartraco and this Court.

**C.      The Refund Motion should be Denied because of the Voluntary Payment Rule.**

57.      The Refund Motion should be denied because of the voluntary payment rule.

58.      The voluntary payment rule states "where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying." *Nieves v. All Star Title, Inc.*, 2010 De Super Lexis 319, 2010 WL 2977966 (Del. Super. Ct. July 27, 2010).

59.      Spyglass and Netflix knew the facts: Sartraco owned the rights to the Film and Netflix streamed it without authority. Those facts have not changed. The only thing that changed is the Court determined Netflix did not owe any money to Sartraco under the License Agreement because Sartraco was not a party to the License Agreement. Nothing else changed.

60.      As a result, Spyglass cannot recover the funds, or more precisely require the funds be paid to Netflix, because Spyglass made the payment voluntarily.

**D,      Spyglass is not the Real Party in Interest and, if the Court has Jurisdiction, an Adversary Proceeding is Required.**

61.      Spyglass is not the real party in interest. Spyglass, by the very relief requested, acknowledges that it does not have an interest in the Netflix Payment which it claims should be returned to Netflix.

62.      Yet, Spyglass is asking the Court to adjudicate the dispute between Sartraco and Netflix regarding the unauthorized streaming of the Film without Netflix being a party to the Refund Motion. Certainly, it is not possible for the Court to adjudicate the rights and

---

[19] Conversely, if Spyglass has a dispute with Netflix, it can seek to resolve the dispute in a court of competent

defenses of the parties affected by the Refund Motion if Netflix is not joined.

63.    But joinder of Netflix does not solve all of the problems. Sartraco has counterclaims and defenses against Netflix which cannot be adjudicated in the context of a motion. An adversary proceeding is required to the extent the Court has jurisdiction over the matter.

64.    Because the Court lacks jurisdiction and the Refund Motion is procedurally and substantively defected, it should be denied leaving these non-debtor parties to resolve their disputes outside of bankruptcy court.

WHEREFORE, Sartraco, Inc. respectfully requests the motion be denied.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

Dated: January 18, 2021

/s/ Geoffrey G. Grivner
Geoffrey G. Grivner (#4711)
919 North Market Street, Suite 990
Wilmington, DE 19801-3036
Tel: 302-552-4207
geoffrey.grivner@bipc.com

Mark Pfeiffer, Esquire (admitted *pro hac vice*)
50 S. 16th Street
Suite 3200
Philadelphia, PA 19102
Tel: 215-665-3921
mark.pfeiffer@bipc.com

Attorneys for Sartraco, Inc.

---

jurisdiction outside of the bankruptcy court.