**<u>Exhibit 1</u>**

**Revised Confirmation Order**

.IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :
THE WEINSTEIN COMPANY HOLDINGS,           :        Case No. 18-10601 (MFW)
LLC, et al.,                              :
                                          :        (Jointly Administered)
                          Debtors.¹       :
                                          :        Re: D.I. 3182
-------------------------------------------------------------x
```

## ORDER CONFIRMING PLAN PROPONENTS'
## FIFTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

The *Fifth Amended Joint Chapter 11 Plan of Liquidation*, dated January 20, 2021 [D.I.

3182] (as may be amended, modified or supplemented, the "Plan") and the *Fourth Amended*

*Disclosure Statement in Support of the Fourth Amended Joint Chapter 11 Plan of Liquidation*

*Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 3097 & 3098],

dated November 17, 2020 (the "Disclosure Statement")² each having been filed with the United

States Bankruptcy Court for the District of Delaware (the "Court") by The Weinstein Company

Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") and

the Official Committee of Unsecured Creditors appointed in their Chapter 11 Cases (the

"Committee" and, together with the Debtors, the "Plan Proponents"); and the Disclosure

Statement, and appropriate Ballots for voting on the Plan having been approved, and transmitted

to Holders of Claims against the Debtors in the Voting Classes, pursuant to that certain *Order (A)*

---

¹ The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837.  The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/twc.

² All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Approving the Adequacy of the Disclosure Statement, (B) Approving Solicitation Procedures (C) Setting Confirmation Hearing Date and Related Deadlines, (D) Estimating Certain Claims, and (E) Granting Related Relief*, entered by this Court on November 17, 2020 [D.I. 3101] (the "Disclosure Statement Order"); and a copy of the Plan, as amended or modified, being attached hereto as Exhibit A; and the *Plan Supplement* having been filed on December 4, 2020 [D.I. 3120] (the "Plan Supplement"); and the Plan Proponents having filed their *Joint (I) Memorandum of Law In Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of Liquidation of The Weinstein Company Holdings, LLC et al. and (II) Omnibus Reply to Confirmation Objections* [D.I. 3184] (the "Confirmation Brief") with this Court prior to the Confirmation Hearing (as defined herein); and the *Declaration of Ivona Smith in Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of Liquidation of The Weinstein Company Holdings, LLC et al.* [D.I. 3185] (the "TWC Declaration"); (ii) *Declaration of Kyle Herman in Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of Liquidation of The Weinstein Company Holdings, LLC et al.* [D.I. 3186] (the "Herman Declaration"); (iii) *Declaration of Robert Peck in Support of Fifth Amended Chapter 11 Plan of Liquidation* [D.I. 3187] (the "Peck Declaration"); (iv) *Declaration of David P. Schack in Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of The Weinstein Company Holdings, LLC et al.* [D.I. 3188] (the "Schack Declaration"); (v) *Declaration of Paul H. Zumbro in Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of The Weinstein Company Holdings, LLC et al.* [D.I. 3189] (the "Zumbro Declaration"); (vi) *Declaration of Jane Sullivan on Behalf of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Fourth Amended Joint Chapter 11 Plan of Liquidation* (the "Voting Declaration") [D.I. 3191]; and *Report of the Official Committee of Unsecured Creditors Concerning Sexual Misconduct Claims Ballots and Declaration of Debra L. Grassgreen In*

*Support Thereof* (the "Committee Voting Report") [D.I. 3159] (collectively, the "Declarations" and together with the Confirmation Brief, the "Confirmation Documents") having been filed with this Court prior to the Confirmation Hearing; and the hearing to consider the confirmation of the Plan having been held before this Court on January 25, 2021 (the "Confirmation Hearing") after due and sufficient notice was given to Holders of Claims against, and Interests in, the Debtors and other parties-in-interest in accordance with the Disclosure Statement Order, Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), in each case as established by the affidavits of service, mailing and/or publication filed with this Court prior to the Confirmation Hearing (collectively, the "Notice Affidavits");[3] and upon all of the proceedings held before this Court and after full consideration of: (i) each of the objections to the confirmation of the Plan filed with this Court and not subsequently withdrawn, settled, or deemed moot (the "Objections"); (ii) the Plan Supplement; (iii) the Confirmation Brief; (iv) the Voting Report; (v) testimony proffered or presented at the Confirmation Hearing, (vi) the Declarations and affidavits filed with this Court; and (vii) all other evidence proffered or adduced at, memoranda and objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and after due deliberation thereon; and good cause appearing therefor:

## THE COURT HEREBY FINDS:

A.      The findings and conclusions set forth herein and on the record made at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules

---

[3] The Notice Affidavits are located at D.I. 3139 & 3163-65.

7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors are eligible debtors under section 109 of the Bankruptcy Code and, pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors and the Committee are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.

D.      The Plan Proponents have met their burden of proving that the Plan satisfies the elements of 1129(a) of the Bankruptcy Code by a preponderance of the evidence.

E.      The Plan was solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  As is evidenced by the *Affidavit of Service of Solicitation Materials* [D.I. 3139], the transmittal and service of the Plan, the Disclosure Statement, and the other documents required by the Disclosure Statement Order were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing, including the deadline for filing objections, have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance

with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law and such parties have had a full and fair opportunity to appear and be heard with respect thereto.  No additional or further notice is required.

F.      The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, the Court has considered the totality of the circumstances of these Chapter 11 Cases, and found that all constituencies acted in good faith.  The Plan is the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies.

G.      Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

H.      The Holders of Sexual Misconduct Claims in Class 4 and the Holders of General Unsecured Claims in Class 6 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. No Holders of Other Tort Claims in Class 5 submitted ballots in favor of, or against, the Plan.  Holders of Claims in Class 4, Class 5 and Class 6 are the only Holders of Claims entitled to vote on the Plan in accordance with the terms of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

I.       The Plan Injunction (Section 7.3), the Channeling Injunction (Sections 5.8, 5.12), the Debtor Release (Section 7.2.1), the Third-Party Release (Sections 7.2.2-7.2.6) and the Exculpation (Section 14.5) as set forth in the Plan are appropriate under applicable law.

J.       The releases contained in Section 7 of the Plan are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by Section 7 of the Plan; (c) a product of good-faith and arm's-length negotiations; (d) integral elements of the Plan and the resolution of these Chapter 11 Cases;

(e) in the best interests of the Debtors and all Holders of Claims and Interests; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) consistent with the Bankruptcy Code and applicable bankruptcy law.

K.      The Court's findings of fact to support the approval of the Plan Injunction, the Channeling Injunction, the Debtor Release, the Third-Party Release and the Exculpation, based on the record made at the Confirmation Hearing, including the Confirmation Brief, Declarations and Voting Report, are set forth below:

1)      *Compromise and Settlement*.    The Plan memorializes the significant compromises and agreements among the Released Parties that were agreed upon in the Plan Support Agreement.  The Released Parties' commitments under the Plan are contingent upon the corresponding commitments by the other Released Parties.  In consideration for the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies among the Released Parties, including all Claims arising prior to the Petition Date.  These compromises and settlements are in the best interests of the Debtors, their Estates and creditors, and all other parties-in-interest, and are fair, equitable and within the range of reasonableness.

2)      *Fairness*.

i.      Each of the Released Parties provided, or has agreed to provide, a substantial contribution that was necessary to make the Plan feasible and to provide a fair result for affected creditors that is superior to all other alternatives. Specifically:

a)   The Insurance Companies.  In connection with the Settlement and, pursuant to the terms of the Plan Support Agreement, the Insurance Companies, on behalf of the Released Parties (and Harvey Weinstein, only with respect to Sexual Misconduct Claimants who affirmatively elect to release Harvey Weinstein in accordance with the Plan), have agreed to pay the Settlement Amount to the Global Escrow Agent for the benefit of Holders of, among other Claims, Sexual Misconduct Claims, Other Tort Claims and General Unsecured Claims.  The consideration provided by the Insurance Companies constitutes a substantial contribution and is critical to the Plan.

b)   The Former Representatives. In connection with the Settlement, the Former Representatives have agreed to waive, in part, their entitlement to reimbursement of all defense costs and expenses as a priority to payment of any liability or settlement amount pursuant to

the terms of the Insurance Policies, which has provided the Insurance Companies with the ability to tender the Settlement Payment under the Plan.  The consideration provided by the Former Representatives constitutes a substantial contribution and is critical to the Plan.

ii.    As reflected in the Voting Report and as set forth on the record made at the Confirmation Hearing, Holders of Sexual Misconduct Claims and General Unsecured Claims overwhelmingly voted in favor of the Plan. No Holders of Other Tort Claims returned a ballot in favor or, or against, the Plan.  Accordingly, the Plan has been overwhelmingly accepted the classes of creditors affected by the injunctions and releases.

iii.    The Plan, the compromises reflected therein, and the Plan Injunction, the Channeling Injunction, the Debtor Release, the Third-Party Release and Exculpation were each the product of good-faith and arm's-length negotiation among the Debtors, the Committee, the Insurance Companies, the Former Representatives and their respective representatives.

iv.    The Settlement Payment is fair and adequate under the circumstances and provides sufficient funding for the Sexual Misconduct Claims Fund and Liquidation Trust and provides adequate funding for the other payments and distributions to be made under the Plan. Accordingly, in exchange for the injunctions and releases provided for under the Plan, Holders of Claims and Interests are receiving fair, reasonable and adequate consideration.

v.    The Sexual Misconduct Claims Fund provides a fair and equitable mechanism for holders of Sexual Misconduct Claims to liquidate and satisfy their Sexual Misconduct Claims.
.

3)    *Necessity*. The Plan Injunction, the Channeling Injunction, the Debtor Release and Third-Party Release are critical to the success of the Plan.  Without the Debtor Release and Third-Party Release and the enforcement of the Debtor Release and Third-Party Release through the Plan Injunction and the Channeling Injunction, the Released Parties would not be willing to make their contributions under the Plan.  Absent those contributions, no chapter 11 plan is feasible and creditors in these Chapter 11 Cases would receive little or no recovery.

4)    *Extraordinary Circumstances*. These Chapter 11 Cases were precipitated by the public disclosure of Harvey Weinstein's years' of alleged sexual misconduct.  The Plan avoids the need for contentious, protracted and value-destructive litigation, preserves the Estates' limited assets and liquidates and monetizes the Debtors' applicable Insurance Policies for the benefit of, among others, Holders of Sexual Misconduct Claims, Other Tort Claims and General Unsecured Claims whose recoveries may not otherwise be possible under the circumstances.  The extensive efforts and substantial contributions by each of the Released Parties, along with the substantial litigation and collection risk absent a global settlement such as that included in the Plan and the magnitude of the recoveries provided for under the Plan, and in particular to Holders of Sexual Misconduct Claims, constitute extraordinary circumstances warranting the Plan Injunction, the Channeling Injunction, the Debtor Release and Third-Party Release set forth in the Plan.

5) *Record Supports Specific Findings*. The record of the Confirmation Hearing (including the Confirmation Brief, Declarations and Voting Report) and of these Chapter 11 Cases is sufficient to support the Plan Injunction, the Channeling Injunction, the Debtor Release and Third-Party Release contained in the Plan.

6) *Third Party Release*.  As set forth in the Confirmation Documents and herein, the Third-Party Release provided under the Plan satisfies the standard articulated in *Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000) and *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019), and with respect to Holders of Claims (except Holders of Claims in Class 4) who voted against the Plan or failed to return a ballot, the Third-Party Release is consensual in that all parties to be bound by such release were given due and adequate notice thereof and sufficient opportunity and instruction to elect to opt out of such Third-Party Release.  With respect to Holders of Claims in Class 6 who opted out of the Third-Party Release, after confirmation of the Plan, such Holders may revise their ballot to opt in to the Third-Party Release and be treated as if such Holders never opted out of the Third-Party Releases.

7) *Debtor Release*.  As set forth in the Confirmation Documents and herein, the releases being provided by the Debtors and the Estates constitute a sound exercise of the Debtors' business judgment and, to the extent applicable, otherwise satisfy the standard articulated in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).

8) *Exculpation*.  As set forth in the Confirmation Documents and herein, the exculpations in favor of the Exculpated Parties in Section 14.5 of the Plan are appropriate in that the Exculpated Parties are estate fiduciaries and no Exculpated Party is being exculpated for acts or omissions that constitute willful misconduct or gross negligence.  Accordingly, the Exculpation complies with the standard articulated in *In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000).

L.    The injunction and release provisions are critical to the success of the Plan. Without the Debtor Release and Third-Party Release, and the enforcement of such releases through the Plan's Injunction and Channeling Injunction, the Insurance Companies and Former Representatives would not be willing to make their contributions under the Plan.  Absent those contributions, the Plan would not be feasible.  The injunctions are necessary to preserve and enforce the Debtor Release and Third-Party Release and are narrowly tailored to achieve that purpose.

M.    Section 12.1 of the Plan provides for the substantive consolidation of the Debtors and their Estates for all purposes associated with confirmation and substantial consummation of the Plan. Based on, among other things, the Confirmation Brief, the Peck Declaration and the

record made at the Confirmation Hearing, (i) no class of creditors or interest holders is disadvantaged by the substantive consolidation of the Debtors and their Estates and (ii) substantive consolidation of the Debtors and their Estates is justified, appropriate, and in the best interests of the Debtors, their Estates, creditors and all other parties-in-interest.

N.    Pursuant to sections 105, 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for, among other things, the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan, including the Settlement and Plan Support Agreement, shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan, the Settlement and the Plan Support Agreement. These compromises and settlements, including the Settlement and the Plan Support Agreement, are in the best interests of the Debtors, their Estates, the Debtors' creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.

O.    The Holders of Intercompany Claims (Class 7) and Interests (Class 8) are deemed to have rejected the Plan (the "Rejecting Classes"). The Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because (i) no Holder of any Claim or Interest that is junior to the Rejecting Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (ii) no Holder of a Claim in a Class senior to the Rejecting Classes is receiving more than 100% recovery on account of its Claim. Accordingly, the Plan does not discriminate unfairly among the different classes of creditors and interest holders, satisfies the fair and equitable standard of the Bankruptcy Code and may be confirmed notwithstanding the rejection of the Plan by the Rejecting Classes.

RLF1 24660236v.2

**FURTHER, IT IS HEREBY ORDERED THAT:**

**A.    Confirmation of the Plan and Approval of the Settlement and Plan Support Agreement**

1.    The Plan is confirmed and approved in all respects.

2.    Each of the Settlement and the Plan Support Agreement satisfies the requirements of Bankruptcy Rule 9019 and is approved.  The compromises and settlements set forth in the Plan, including the Settlement and the Plan Support Agreement, as reflected in the relative distributions to and recoveries of Holders of Claims under the Plan, are approved pursuant to Bankruptcy Rule 9019(a), including with respect to each of the Settlement and the Plan Support Agreement, and shall be effective immediately and binding on all parties in interest on the Effective Date.

3.    Any and all objections to the Plan that have not been resolved, withdrawn, waived, or settled prior to the Confirmation Hearing are hereby overruled on the merits for the reasons set forth on the record made at the Confirmation Hearing.

4.    The documents contained in the Plan Supplement are integral to the Plan and are approved by the Court.

5.    The Debtors, the Liquidation Trust, the Liquidation Trustee and the Sexual Misconduct Claims Examiner are authorized to take all actions required under the Plan, the Plan Supplement and the Liquidation Trust Agreement to effectuate the Plan and the transactions contemplated therein.

6.    The terms of the Plan, the Plan Supplement, the Liquidation Trust Agreement and the exhibits thereto (including, without limitation, the Settlement and the Plan Support Agreement) are incorporated herein by reference and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Supplement, the Liquidation Trust Agreement and the exhibits thereto (including, without limitation, the Settlement and the Plan Support Agreement), and all other

relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan shall be effective and binding as of the Effective Date.  Subject to the terms of the Plan, the Plan Proponents may alter, amend, update or modify the Plan Supplement and the Liquidation Trust Agreement before the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, the Liquidation Trust Agreement or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision and this Confirmation Order shall be interpreted as if such articles, sections or provisions were included herein in their entirety.

7.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.  In accordance with section 1142(b) of the Bankruptcy Code, upon the entry of this Confirmation Order, the Debtors, the Liquidation Trust, the Liquidation Trustee and the Sexual Misconduct Claims Examiner, as applicable, each acting by and through their respective officers and agents, are authorized to take any and all actions necessary or appropriate to implement the Plan, including, without limitation, (i) consummating the Settlement and Plan Support Agreement; (ii) forming the Liquidation Trust, entering into the Liquidation Trust Agreement (substantially in the form included in the Plan Supplement), and complying with, and satisfying the obligations set forth under, the Liquidation Trust Agreement; (iii) complying with, and satisfying the obligations set forth under, the Plan; and (iv) complying with, and satisfying the obligations set forth under, the Sexual Misconduct Claims Fund Procedures, as applicable, in each case, without any further order of the Court.  The

11

Liquidation Trust shall be deemed for all purposes to have been created in connection with the Plan and this Confirmation Order.

8.      Subject to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

9.      The amendments and modifications to the *Fourth Amended Joint Chapter 11 Plan of Liquidation* [D.I. 3095 & 3096] since the filing thereof, including as reflected herein, and incorporated into and reflected in the Plan are approved in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.

10.     Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and shall be effective immediately on the Effective Date without further order or action by the Court, any of the parties to such release, or any other Entity: (a) the Debtor Release (Section 7.2.1); (b) the Third-Party Release (Sections 7.2.2-7.2.6); (c) the Plan Injunction (Section 7.3); (d) the Channeling Injunction (Section 5.8, 5.12); and (e) the Exculpation (Section 14.5).  For the avoidance of doubt, the terms of the Plan provisions set forth in this paragraph 10 are incorporated herein by reference.

11.     Except as otherwise set forth in the Plan, the Liquidation Trust Agreement or this Confirmation Order, on the Effective Date, the Liquidation Trust Assets shall vest in the Liquidation Trust free and clear of all Claims, Liens, and Interests.

12.     Unless as otherwise set forth in Section 8 of the Plan, all executory contracts and unexpired leases to which a Debtor is a party shall be deemed rejected on, and effective as of, the Effective Date.

13.     Pursuant to Section 12.1 of the Plan, the terms of the Debtors' substantive consolidation are approved.

14.     The Chapter 11 Cases, other than the Chapter 11 Case of The Weinstein Company LLC (Case No. 18-10601) are deemed closed as of the Effective Date and this Confirmation Order shall serve as an order closing such Chapter 11 Cases.

15.     The Liquidation Trustee shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Effective Date Notice</u>"), upon all parties listed in the creditor matrix maintained by Epiq Corporate Restructuring, LLC no later than seven (7) calendar days after the Effective Date.  Notice need not be given or served to any Person for whom any prior notices sent during these Chapter 11 Cases have been returned as undeliverable, unless the Liquidation Trustee has been informed, on or before the date on which the Effective Date Notice is served, in writing by such Person of that Person's new address, or unless previous mail to such address has been returned with a valid forwarding address on or before the date on which the Effective Date Notice is served, in which case the Effective Date Notice shall be mailed to such forwarding address. The notice described herein is adequate and appropriate and no other or further notice is necessary.

**B.      Liquidation Trust**

16.     Except as otherwise provided in the Plan or this Confirmation Order, on and after the Effective Date, all Liquidation Trust Assets shall vest in the Liquidation Trust free and clear of all Claims, Liens, charges, other encumbrances, and Interests. On and after the Effective Date, the Liquidation Trust shall be authorized, without limitation, to use and dispose of the Liquidation

Trust Assets in accordance with the terms of the Plan, to investigate and pursue any Causes of Action (other than any Cause of Action that has been released pursuant to the Plan and this Confirmation Order) as the representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and to otherwise administer their affairs, in each case without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

17.     The Liquidation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (other than any Cause of Action that has been released pursuant to the Plan and this Confirmation Order), whether arising before or after the Petition Date, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

18.     Dean A. Ziehl shall be, and hereby is, appointed as the Liquidation Trustee from and after the Effective Date. As the Liquidation Trustee, Mr. Ziehl will be an officer of the Bankruptcy Court, with the immunities, rights, and protections customarily enjoyed by bankruptcy trustees. The Bankruptcy Court will have sole jurisdiction over claims and causes of action against Mr. Ziehl (solely in his capacity as the Liquidation Trustee) arising out of the performance of his duties, and Mr. Ziehl (in such capacity) may not be sued, or have claims asserted against him, in any other forum without leave of the Bankruptcy Court. The Liquidation Trustee and any professionals retained by the Liquidation Trustee may be compensated by the Liquidation Trust in connection with any services provided to or on account of the Liquidation Trust from and after the Effective Date, subject to and in accordance with the terms of the Plan and the Liquidation Trust Agreement.

C.      **Supplemental Administrative Expense Claims Bar Date**

19.     Except as otherwise provided in the Initial Bar Date Order or the Plan, requests for payment of Administrative Expense Claims must be filed with the Court and served on the Liquidation Trustee and its counsel and the U.S. Trustee within forty-five (45) days from service of the Effective Date Notice.  Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the holder of the Administrative Expense Claim; (ii) the dates upon which the Administrative Expense Claims arose; (iii) the asserted amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  ANY ADMINISTRATIVE EXPENSE CLAIMS THAT ARE NOT ASSERTED IN ACCORDANCE HEREWITH AND WITH SECTION 3.7.1 OF THE PLAN SHALL BE DEEMED DISALLOWED UNDER THE PLAN AND SHALL BE FOREVER BARRED AGAINST THE DEBTORS, THEIR ESTATES, THE LIQUIDATION TRUST, OR ANY OF THEIR ASSETS OR PROPERTY, AND THE HOLDER THEREOF SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, RECOUP, OR RECOVER SUCH CLAIM AND SHALL BE SUBJECT TO THE INJUNCTION PROVISION.

D.  **Bar Date for Claims Arising From Rejection of Execution Contracts**

20.     Claims created by the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Bankruptcy Court and served on the Liquidation Trustee and its counsel, no later than thirty (30) days after the Effective Date. Any Claims for rejection of executory contracts or unexpired leases pursuant to the Plan for which a proof of claim is not filed and served within such time will be forever barred and shall not be enforceable against the Debtors or their Estates, assets, properties, or interests in property, or against the Liquidation Trust. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided in

the Plan shall be treated as General Unsecured Claims under the Plan. Nothing in the Plan extends any deadline for the filing of any Claims established in a previously entered order of the Bankruptcy Court.

**E.      Professional Fee Claims**

21.      Each Bankruptcy Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must (i) file and serve a properly noticed final fee application by no later than 45 days after the Effective Date and (ii) be paid solely from the Liquidation Trust (a) the full unpaid amount as is Allowed by the Court within 7 days after the date that such Claim is Allowed by Order of the Court or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidation Trustee.   ANY PROFESSIONAL FEE CLAIM THAT IS NOT ASSERTED IN ACCORDANCE WITH SECTION 3.8 OF THE PLAN SHALL BE DEEMED DISALLOWED UNDER THE PLAN AND SHALL BE FOREVER BARRED AGAINST THE DEBTORS, THEIR ESTATES, THE LIQUIDATION TRUST, OR ANY OF THEIR ASSETS OR PROPERTY, AND THE HOLDER THEREOF SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, RECOUP, OR RECOVER SUCH CLAIM AND SHALL BE SUBJECT TO THE INJUNCTION PROVISION. Any Holder of a Claim or Interest (or their representative, including, but not limited to, the Committee) or the Liquidation Trustee may object to the allowance of Professional Fee Claims.

**F.      Dissolution of the Committee**

22.      On the Effective Date, the Committee shall dissolve and all members, *ex officio* members, employees, attorneys, financial advisors, other Bankruptcy Professionals, or other agents thereof shall be released and discharged from all rights and duties arising from or related to

RLF1 24660236v.2

the Chapter 11 Cases; *provided, however*, that the Committee shall continue in existence and its Professionals shall continue to be retained with respect to Professional Fee Claims filed or to be filed pursuant to sections 330 and 331 of the Bankruptcy Code.

## G.    Miscellaneous

23.    The Plan shall not become effective unless and until all conditions set forth in Section 11 of the Plan have been satisfied or waived pursuant to the terms thereof.

24.    Notwithstanding Bankruptcy Rule 3020(e), 6004(h), 6006(d) and 7062, to the extent applicable, this Confirmation Order shall be effective and enforceable immediately, and the Plan Proponents and the Settlement Parties are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately upon the entry of this Confirmation Order.

25.    The failure specifically to include or to refer to any particular section or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such section or provision shall have the same validity, binding effect, and enforceability as every other section or provision of the Plan, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety and that all Plan-related documents be approved.

26.    Notwithstanding anything to the contrary contained in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order: (i) shall grant any relief to any Entity that the Court is prohibited from granting by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a); (ii) release or discharge any claim for federal taxes against any Entity other than the Debtors, or enjoin the collection or assessment of such taxes; or (iii) grant the Debtors a release or discharge of any claims for federal taxes except as provided by 11 U.S.C. §§ 524 and 1141(d), or enjoin the collection or assessment of such taxes except as provided by those provisions.

27.     Notwithstanding any other provision of the Plan, the United States' right(s) of setoff and recoupment are expressly preserved.

28.     Notwithstanding any other provision of the Plan, the United States' right to post-petition interest and penalties on its administrative claims is preserved.

29.     Notwithstanding anything to the contrary in the Plan Documents or this Confirmation Order, nothing in the Plan Documents, this Confirmation Order, or the Chapter 11 Cases generally, including any orders establishing deadlines for filing proofs of claim or requests for payment of expenses, shall stay, affect, or prejudice in any way Ashley Judd's rights, claims, or defenses, or be used in any way, in or in connection with (a) the litigation currently pending in the United States District Court for the Central District of California captioned *Judd v. Weinstein*, Case No. 18-cv-05724 PSG (FFMx) or any related appeal, provided that none of the Released Parties shall be named as defendants in such litigation; or (b) any other proceeding, litigation, or appeal involving Ashley Judd and Harvey Weinstein relating to conduct arising in whole or part prior to June 30, 2005.

30.     On April 30, 2018, Black Bear Pictures, together with its affiliates BBP DevCo, LLC, BBP Gold, LLC, BBP Imitation, LLC, Black Bear IG Limited, and Three Greenhorns, Inc. (collectively, "Black Bear Pictures") filed "Black Bear Pictures' Objection To Assumption And Assignment Of Executory Contracts Or Unexpired Leases And Proposed Cure Objection" [D.I. 527] (the "Black Bear Pictures Cure Objection"), to, among other things, object to the assumption and assignment of the Assumption Agreements (as defined in the Black Bear Pictures Cure Objection) to Spyglass Media Group, LLC, (f/k/a Lantern Entertainment LLC) pursuant to the Sale Order (as defined below).  As of the date of the entry of this Confirmation Order, the Black Bear Pictures Cure Objection remains an Unresolved Contract Objection (as such term is defined the

*Order (I) Authorizing the Sale of All or Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [D.I. 846] (the "Sale Order")).  Notwithstanding anything in this Confirmation Order to the contrary, nothing herein shall affect the rights of any parties with Unresolved Contract Objections (as such term is defined in the Sale Order), including  Black Bear Pictures under the Sale Order or the Black Bear Pictures Cure Objection with respect to the Assumption Agreements including, without limitation, any rights arising under Section 8.1 of the Plan. For the avoidance of doubt, nothing in this Confirmation Order shall supersede, alter, or otherwise modify the terms of the Sale Order and the rights granted or obligations imposed thereunder.

31.    Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Liquidation Trustee, as applicable, prior to the effective date of such reversal, stay, modification, or  vacatur.  Notwithstanding any reversal, stay, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Supplement, and any amendments or modifications to the foregoing.

32.     The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

33.     To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

34.     Except as otherwise provided in the Plan or this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date shall be limited to the following parties: (i) the Liquidation Trustee and its counsel; (ii) the U.S. Trustee, and (iii) any party known to be directly affected by the relief sought.

35.     Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan or this Confirmation Order, shall retain jurisdiction over all matters arising out of, arising under, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Section 13 of the Plan.

RLF1 24660236v.2

## Exhibit A

**Plan**

## Exhibit B

**Form of Effective Date Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x
                                              :

In re:                                :        Chapter 11
                                              :

THE WEINSTEIN COMPANY HOLDINGS,   :        Case No. 18-10601 (MFW)
LLC, *et al.*,                           :
                                              :        (Jointly Administered)
                       Debtors.[1]      :
                                              :        **Re: D.I. [___]**
-------------------------------------------------------------x

**NOTICE OF EFFECTIVE DATE AND ENTRY OF ORDER CONFIRMING PLAN**
**PROPONENTS' FIFTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION**

        PLEASE TAKE NOTICE that, on January 20, 2021, the above-captioned debtors (the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") appointed in their chapter 11 cases filed the *Fifth Amended Joint Chapter 11 Plan of Liquidation* [D.I. 3182] (as amended, modified or supplemented, the "Plan") with the United States Bankruptcy Court for the District of Delaware (the "Court").[2]

        PLEASE TAKE FURTHER NOTICE that, on _____, 2021, the Court entered the *Order Confirming Plan Proponents' Fifth Amended Joint Chapter 11 Plan of Liquidation* [D.I. [____]] (the "Confirmation Order").

        PLEASE TAKE FURTHER NOTICE that the Effective Date of the Plan occurred on _____, 2021.

        PLEASE TAKE FURTHER NOTICE that, except as otherwise provided in the Initial Bar Date Order or the Plan, requests for payment of Administrative Expense Claims must be filed with the Court and served on the Liquidation Trustee and its counsel and the U.S. Trustee within forty-five (45) days from service of this Notice (*i.e.* ____, 2021). Any Administrative Expense Claims that are not asserted in accordance herewith and with Section 3.7.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their estates, the Liquidation Trust, or any of their assets or property, and the holder thereof shall be enjoined from

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/twc.

[2] Capitalized terms used in this Confirmation Order but not otherwise defined shall have the same meaning as in the Plan.

commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such claim and shall be subject to the injunction provision.

PLEASE TAKE FURTHER NOTICE that each Bankruptcy Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must (i) file and serve a properly noticed final fee application by no later than forty-five (45) days after the Effective Date and (ii) be paid solely from the Liquidation Trust (a) the full unpaid amount as is Allowed by the Court within 7 days after the date that such Claim is Allowed by Order of the Court or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidation Trustee. Any Professional Fee Claim that is not asserted in accordance herewith and with Section 3.8 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their estates, the Liquidation Trust, or any of their assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such claim and shall be subject to the injunction provision.  Any Holder of a Claim or Interest (or their representative, including, but not limited to, the Committee) or the Liquidation Trustee may object to the allowance of Professional Fee Claims.

PLEASE TAKE FURTHER NOTICE that, in accordance with Section 8.1 of the Plan, on the Effective Date, except as otherwise provided in the Plan, or the Confirmation Order, and except for executory contracts and unexpired leases which the Debtors either have assumed, have rejected or have filed a motion to assume or reject prior to the Confirmation Date and which remains pending as of the Confirmation Date, all executory contracts and unexpired leases for goods, services, or premises used in connection with Debtors' business operations shall be deemed rejected by the Debtors on the Effective Date.  In accordance with Section 8.2 of the Plan, Claims created by the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Court and served on the Liquidation Trustee, no later than thirty (30) days after the Effective Date (*i.e.* ____, 2021). Any Claims for rejection of executory contracts or unexpired leases pursuant to the Plan for which a proof of claim is not filed and served within such time will be forever barred and shall not be enforceable against the Debtors or their Estates, assets, properties, or interests in property, or against the Liquidation Trust.

PLEASE TAKE FURTHER NOTICE that the Plan, Confirmation Order and all other documents and pleadings filed in the Debtors' chapter 11 cases may be viewed free of charge at *https://dm.epiq11.com/case/twc/info*, or for a fee on the Court's website at *http://www.deb.uscourts.gov*.