# EXHIBIT A

.IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
                                          :
In re:                                    :     Chapter 11
                                          :
THE WEINSTEIN COMPANY HOLDINGS,           :     Case No. 18-10601 (MFW)
LLC, et al.,                              :
                                          :     (Jointly Administered)
                          Debtors.¹       :
                                          :     Re: D.I. 3182 & 3195
------------------------------------------------------------x
```

## ORDER CONFIRMING PLAN PROPONENTS'
## FIFTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

The *Fifth Amended Joint Chapter 11 Plan of Liquidation*, dated January 20, 2021 [D.I.

3182 & 3195] (as may be amended, modified or supplemented, the "Plan") and the *Fourth*

*Amended Disclosure Statement in Support of the Fourth Amended Joint Chapter 11 Plan of*

*Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I.

3097 & 3098], dated November 17, 2020 (the "Disclosure Statement")² each having been filed

with the United States Bankruptcy Court for the District of Delaware (the "Court") by The

Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession

(collectively, the "Debtors") and the Official Committee of Unsecured Creditors appointed in their

Chapter 11 Cases (the "Committee" and, together with the Debtors, the "Plan Proponents"); and

the Disclosure Statement, and appropriate Ballots for voting on the Plan having been approved,

and transmitted to Holders of Claims against the Debtors in the Voting Classes, pursuant to that

---

¹ The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/twc.

² All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

certain *Order (A) Approving the Adequacy of the Disclosure Statement, (B) Approving Solicitation Procedures (C) Setting Confirmation Hearing Date and Related Deadlines, (D) Estimating Certain Claims, and (E) Granting Related Relief*, entered by this Court on November 17, 2020 [D.I. 3101] (the "Disclosure Statement Order"); and a copy of the Plan, as amended or modified, being attached hereto as Exhibit A; and the *Plan Supplement* having been filed on December 4, 2020 [D.I. 3120] (the "Plan Supplement"); and the Plan Proponents having filed their *Joint (I) Memorandum of Law In Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of Liquidation of The Weinstein Company Holdings, LLC et al. and (II) Omnibus Reply to Confirmation Objections* [D.I. 3184] (the "Confirmation Brief") with this Court prior to the Confirmation Hearing (as defined herein); and the *Declaration of Ivona Smith in Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of Liquidation of The Weinstein Company Holdings, LLC et al.* [D.I. 3185] (the "TWC Declaration"); (ii) *Declaration of Kyle Herman in Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of Liquidation of The Weinstein Company Holdings, LLC et al.* [D.I. 3186] (the "Herman Declaration"); (iii) *Declaration of Robert Peck in Support of Fifth Amended Chapter 11 Plan of Liquidation* [D.I. 3187] (the "Peck Declaration"); (iv) *Declaration of David P. Schack in Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of The Weinstein Company Holdings, LLC et al.* [D.I. 3188] (the "Schack Declaration"); (v) *Declaration of Paul H. Zumbro in Support of Confirmation of the Fifth Amended Joint Chapter 11 Plan of The Weinstein Company Holdings, LLC et al.* [D.I. 3189] (the "Zumbro Declaration"); (vi) *Declaration of Jane Sullivan on Behalf of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Fourth Amended Joint Chapter 11 Plan of Liquidation* (the "Voting Declaration") [D.I. 3191]; and *Report of the Official Committee of Unsecured Creditors Concerning Sexual Misconduct Claims Ballots and*

*Declaration of Debra L. Grassgreen In Support Thereof* (the "Committee Voting Report")
[D.I. 3159] (collectively, the "Declarations" and together with the Confirmation Brief, the
"Confirmation Documents") having been filed with this Court prior to the Confirmation Hearing;
and the hearing to consider the confirmation of the Plan having been held before this Court on
January 25, 2021 (the "Confirmation Hearing") after due and sufficient notice was given to
Holders of Claims against, and Interests in, the Debtors and other parties-in-interest in accordance
with the Disclosure Statement Order, Title 11 of the United States Code (the "Bankruptcy Code"),
the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of
Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of
Delaware (the "Local Rules"), in each case as established by the affidavits of service, mailing
and/or publication filed with this Court prior to the Confirmation Hearing (collectively, the "Notice
Affidavits");[3] and upon all of the proceedings held before this Court and after full consideration
of: (i) each of the objections to the confirmation of the Plan filed with this Court and not
subsequently withdrawn, settled, or deemed moot (the "Objections"); (ii) the Plan Supplement;
(iii) the Confirmation Brief; (iv) the Voting Report; (v) testimony proffered or presented at the
Confirmation Hearing, (vi) the Declarations and affidavits filed with this Court; and (vii) all other
evidence proffered or adduced at, memoranda and objections filed in connection with, and
arguments of counsel made at, the Confirmation Hearing; and after due deliberation thereon; and
good cause appearing therefor:

**THE COURT HEREBY FINDS:**

A.     The findings and conclusions set forth herein and on the record made at the
Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to

---

[3] The Notice Affidavits are located at D.I. 3139 & 3163-65.

Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors are eligible debtors under section 109 of the Bankruptcy Code and, pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors and the Committee are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.

D.      The Plan Proponents have met their burden of proving that the Plan satisfies the elements of 1129(a) of the Bankruptcy Code by a preponderance of the evidence.

E.      The Plan was solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  As is evidenced by the *Affidavit of Service of Solicitation Materials* [D.I. 3139], the transmittal and service of the Plan, the Disclosure Statement, and the other documents required by the Disclosure Statement Order were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing, including the deadline for filing objections, have been given due, proper,

RLF1 24660236v.3

timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law and such parties have had a full and fair opportunity to appear and be heard with respect thereto. No additional or further notice is required.

F.        The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, the Court has considered the totality of the circumstances of these Chapter 11 Cases, and found that all constituencies acted in good faith. The Plan is the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies.

G.        Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

H.        The Holders of Sexual Misconduct Claims in Class 4 and the Holders of General Unsecured Claims in Class 6 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. No Holders of Other Tort Claims in Class 5 submitted ballots in favor of, or against, the Plan. Holders of Claims in Class 4, Class 5 and Class 6 are the only Holders of Claims entitled to vote on the Plan in accordance with the terms of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

I.        The Plan Injunction (Section 7.3), the Channeling Injunction (Sections 5.8, 5.12), the Debtor Release (Section 7.2.1), the Third-Party Release (Sections 7.2.2-7.2.6) and the Exculpation (Section 14.5) as set forth in the Plan are appropriate under applicable law.

J.        The releases contained in Section 7 of the Plan are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by Section 7 of the Plan; (c) a product of good-faith and arm's-

5

length negotiations; (d) integral elements of the Plan and the resolution of these Chapter 11 Cases;

(e) in the best interests of the Debtors and all Holders of Claims and Interests; (f) fair, equitable,

and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h)

consistent with the Bankruptcy Code and applicable bankruptcy law.

K.      The Court's findings of fact to support the approval of the Plan Injunction, the

Channeling Injunction, the Debtor Release, the Third-Party Release and the Exculpation, based on

the record made at the Confirmation Hearing, including the Confirmation Brief, Declarations and

Voting Report, are set forth below:

1)      *Compromise and Settlement*.   The Plan memorializes the significant compromises and agreements among the Released Parties that were agreed upon in the Plan Support Agreement.  The Released Parties' commitments under the Plan are contingent upon the corresponding commitments by the other Released Parties.  In consideration for the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies among the Released Parties, including all Claims arising prior to the Petition Date.  These compromises and settlements are in the best interests of the Debtors, their Estates and creditors, and all other parties-in-interest, and are fair, equitable and within the range of reasonableness.

2)      *Fairness*.

i.      Each of the Released Parties provided, or has agreed to provide, a substantial contribution that was necessary to make the Plan feasible and to provide a fair result for affected creditors that is superior to all other alternatives. Specifically:

a)      The Insurance Companies.  In connection with the Settlement and, pursuant to the terms of the Plan Support Agreement, the Insurance Companies, on behalf of the Released Parties (and Harvey Weinstein, only with respect to Sexual Misconduct Claimants who affirmatively elect to release Harvey Weinstein in accordance with the Plan), have agreed to pay the Settlement Amount to the Global Escrow Agent for the benefit of Holders of, among other Claims, Sexual Misconduct Claims, Other Tort Claims and General Unsecured Claims.  The consideration provided by the Insurance Companies constitutes a substantial contribution and is critical to the Plan.

b)      The Former Representatives. In connection with the Settlement, the Former Representatives have agreed to waive, in part, their

entitlement to reimbursement of all defense costs and expenses as a priority to payment of any liability or settlement amount pursuant to the terms of the Insurance Policies, which has provided the Insurance Companies with the ability to tender the Settlement Payment under the Plan. The consideration provided by the Former Representatives constitutes a substantial contribution and is critical to the Plan.

ii.     As reflected in the Voting Report and as set forth on the record made at the Confirmation Hearing, Holders of Sexual Misconduct Claims and General Unsecured Claims overwhelmingly voted in favor of the Plan. No Holders of Other Tort Claims returned a ballot in favor or, or against, the Plan. Accordingly, the Plan has been overwhelmingly accepted the classes of creditors affected by the injunctions and releases.

iii.    The Plan, the compromises reflected therein, and the Plan Injunction, the Channeling Injunction, the Debtor Release, the Third-Party Release and Exculpation were each the product of good-faith and arm's-length negotiation among the Debtors, the Committee, the Insurance Companies, the Former Representatives and their respective representatives.

iv.    The Settlement Payment is fair and adequate under the circumstances and provides sufficient funding for the Sexual Misconduct Claims Fund and Liquidation Trust and provides adequate funding for the other payments and distributions to be made under the Plan. Accordingly, in exchange for the injunctions and releases provided for under the Plan, Holders of Claims and Interests are receiving fair, reasonable and adequate consideration.

v.     The Sexual Misconduct Claims Fund provides a fair and equitable mechanism for holders of Sexual Misconduct Claims to liquidate and satisfy their Sexual Misconduct Claims.
.

3)     _Necessity_. The Plan Injunction, the Channeling Injunction, the Debtor Release and Third-Party Release are critical to the success of the Plan. Without the Debtor Release and Third-Party Release and the enforcement of the Debtor Release and Third-Party Release through the Plan Injunction and the Channeling Injunction, the Released Parties would not be willing to make their contributions under the Plan. Absent those contributions, no chapter 11 plan is feasible and creditors in these Chapter 11 Cases would receive little or no recovery.

4)     _Extraordinary Circumstances_. These Chapter 11 Cases were precipitated by the public disclosure of Harvey Weinstein's years' of alleged sexual misconduct. The Plan avoids the need for contentious, protracted and value-destructive litigation, preserves the Estates' limited assets and liquidates and monetizes the Debtors' applicable Insurance Policies for the benefit of, among others, Holders of Sexual Misconduct Claims, Other Tort Claims and General Unsecured Claims whose recoveries may not otherwise be possible under the circumstances. The extensive efforts and substantial contributions by each of the Released Parties, along with the substantial litigation and collection risk absent a global settlement such as that included in the Plan and the magnitude of the recoveries provided for under the Plan, and in particular to Holders of

Sexual Misconduct Claims, constitute extraordinary circumstances warranting the Plan Injunction, the Channeling Injunction, the Debtor Release and Third-Party Release set forth in the Plan.

5)  *Record Supports Specific Findings*.  The record of the Confirmation Hearing (including the Confirmation Brief, Declarations and Voting Report) and of these Chapter 11 Cases is sufficient to support the Plan Injunction, the Channeling Injunction, the Debtor Release and Third-Party Release contained in the Plan.

6)  *Third Party Release*.  As set forth in the Confirmation Documents and herein, the Third-Party Release provided under the Plan satisfies the standard articulated in *Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000) and *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019), and with respect to Holders of Claims (except Holders of Claims in Class 4) who voted against the Plan or failed to return a ballot, the Third-Party Release is consensual in that all parties to be bound by such release were given due and adequate notice thereof and sufficient opportunity and instruction to elect to opt out of such Third-Party Release.  With respect to Holders of Claims in Class 6 who opted out of the Third-Party Release, after confirmation of the Plan, such Holders may revise their ballot to opt in to the Third-Party Release and be treated as if such Holders never opted out of the Third-Party Releases.

7)  *Debtor Release*.  As set forth in the Confirmation Documents and herein, the releases being provided by the Debtors and the Estates constitute a sound exercise of the Debtors' business judgment and, to the extent applicable, otherwise satisfy the standard articulated in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).

8)  *Exculpation*.  As set forth in the Confirmation Documents and herein, the exculpations in favor of the Exculpated Parties in Section 14.5 of the Plan are appropriate in that the Exculpated Parties are estate fiduciaries and no Exculpated Party is being exculpated for acts or omissions that constitute willful misconduct or gross negligence.  Accordingly, the Exculpation complies with the standard articulated in *In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000).

L.  The injunction and release provisions are critical to the success of the Plan. Without the Debtor Release and Third-Party Release, and the enforcement of such releases through the Plan's Injunction and Channeling Injunction, the Insurance Companies and Former Representatives would not be willing to make their contributions under the Plan.  Absent those contributions, the Plan would not be feasible.  The injunctions are necessary to preserve and enforce the Debtor Release and Third-Party Release and are narrowly tailored to achieve that purpose.

M.  Section 12.1 of the Plan provides for the substantive consolidation of the Debtors and their Estates for all purposes associated with confirmation and substantial consummation of

RLF1 24660236v.3

the Plan. Based on, among other things, the Confirmation Brief, the Peck Declaration and the record made at the Confirmation Hearing, (i) no class of creditors or interest holders is disadvantaged by the substantive consolidation of the Debtors and their Estates and (ii) substantive consolidation of the Debtors and their Estates is justified, appropriate, and in the best interests of the Debtors, their Estates, creditors and all other parties-in-interest.

N.      Pursuant to sections 105, 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for, among other things, the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan, including the Settlement and Plan Support Agreement, shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan, the Settlement and the Plan Support Agreement.  These compromises and settlements, including the Settlement and the Plan Support Agreement, are in the best interests of the Debtors, their Estates, the Debtors' creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.

O.      The Holders of Intercompany Claims (Class 7) and Interests (Class 8) are deemed to have rejected the Plan (the "Rejecting Classes").  The Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because (i) no Holder of any Claim or Interest that is junior to the Rejecting Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (ii) no Holder of a Claim in a Class senior to the Rejecting Classes is receiving more than 100% recovery on account of its Claim.  Accordingly, the Plan does not discriminate unfairly among the different classes of creditors and interest holders, satisfies the fair

and equitable standard of the Bankruptcy Code and may be confirmed notwithstanding the rejection of the Plan by the Rejecting Classes.

## FURTHER, IT IS HEREBY ORDERED THAT:

**A.     Confirmation of the Plan and Approval of the Settlement and Plan Support Agreement**

1.     The Plan is confirmed and approved in all respects.

2.     Each of the Settlement and the Plan Support Agreement satisfies the requirements of Bankruptcy Rule 9019 and is approved.  The compromises and settlements set forth in the Plan, including the Settlement and the Plan Support Agreement, as reflected in the relative distributions to and recoveries of Holders of Claims under the Plan, are approved pursuant to Bankruptcy Rule 9019(a), including with respect to each of the Settlement and the Plan Support Agreement, and shall be effective immediately and binding on all parties in interest on the Effective Date.

3.     Any and all objections to the Plan that have not been resolved, withdrawn, waived, or settled prior to the Confirmation Hearing are hereby overruled on the merits for the reasons set forth on the record made at the Confirmation Hearing.

4.     The documents contained in the Plan Supplement are integral to the Plan and are approved by the Court.

5.     The Debtors, the Liquidation Trust, the Liquidation Trustee and the Sexual Misconduct Claims Examiner are authorized to take all actions required under the Plan, the Plan Supplement and the Liquidation Trust Agreement to effectuate the Plan and the transactions contemplated therein.

6.     The terms of the Plan, the Plan Supplement, the Liquidation Trust Agreement and the exhibits thereto (including, without limitation, the Settlement and the Plan Support Agreement) are incorporated herein by reference and are an integral part of this Confirmation Order.  The terms

of the Plan, the Plan Supplement, the Liquidation Trust Agreement and the exhibits thereto (including, without limitation, the Settlement and the Plan Support Agreement), and all other relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan shall be effective and binding as of the Effective Date. Subject to the terms of the Plan, the Plan Proponents may alter, amend, update or modify the Plan Supplement and the Liquidation Trust Agreement before the Effective Date. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, the Liquidation Trust Agreement or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision and this Confirmation Order shall be interpreted as if such articles, sections or provisions were included herein in their entirety.

7.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan. In accordance with section 1142(b) of the Bankruptcy Code, upon the entry of this Confirmation Order, the Debtors, the Liquidation Trust, the Liquidation Trustee and the Sexual Misconduct Claims Examiner, as applicable, each acting by and through their respective officers and agents, are authorized to take any and all actions necessary or appropriate to implement the Plan, including, without limitation, (i) consummating the Settlement and Plan Support Agreement; (ii) forming the Liquidation Trust, entering into the Liquidation Trust Agreement (substantially in the form included in the Plan Supplement), and complying with, and satisfying the obligations set forth under, the Liquidation Trust Agreement; (iii) complying with, and satisfying the obligations set forth under, the Plan; and

RLF1 24660236v.3

(iv) complying with, and satisfying the obligations set forth under, the Sexual Misconduct Claims Fund Procedures, as applicable, in each case, without any further order of the Court. The Liquidation Trust shall be deemed for all purposes to have been created in connection with the Plan and this Confirmation Order.

8.  Subject to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

9.  The amendments and modifications to the *Fourth Amended Joint Chapter 11 Plan of Liquidation* [D.I. 3095 & 3096] since the filing thereof, including as reflected herein, and incorporated into and reflected in the Plan are approved in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.

10.  Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and shall be effective immediately on the Effective Date without further order or action by the Court, any of the parties to such release, or any other Entity: (a) the Debtor Release (Section 7.2.1); (b) the Third-Party Release (Sections 7.2.2-7.2.6); (c) the Plan Injunction (Section 7.3); (d) the Channeling Injunction (Section 5.8, 5.12); and (e) the Exculpation (Section 14.5). For the avoidance of doubt, the terms of the Plan provisions set forth in this paragraph 10 are incorporated herein by reference.

11.  Except as otherwise set forth in the Plan, the Liquidation Trust Agreement or this Confirmation Order, on the Effective Date, the Liquidation Trust Assets shall vest in the Liquidation Trust free and clear of all Claims, Liens, and Interests.

12.     Unless as otherwise set forth in Section 8 of the Plan, all executory contracts and unexpired leases to which a Debtor is a party shall be deemed rejected on, and effective as of, the Effective Date.

13.     Pursuant to Section 12.1 of the Plan, the terms of the Debtors' substantive consolidation are approved.

14.     The Chapter 11 Cases, other than the Chapter 11 Case of The Weinstein Company LLC (Case No. 18-10601) are deemed closed as of the Effective Date and this Confirmation Order shall serve as an order closing such Chapter 11 Cases.

15.     The Liquidation Trustee shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Effective Date Notice</u>"), upon all parties listed in the creditor matrix maintained by Epiq Corporate Restructuring, LLC no later than seven (7) calendar days after the Effective Date.  Notice need not be given or served to any Person for whom any prior notices sent during these Chapter 11 Cases have been returned as undeliverable, unless the Liquidation Trustee has been informed, on or before the date on which the Effective Date Notice is served, in writing by such Person of that Person's new address, or unless previous mail to such address has been returned with a valid forwarding address on or before the date on which the Effective Date Notice is served, in which case the Effective Date Notice shall be mailed to such forwarding address. The notice described herein is adequate and appropriate and no other or further notice is necessary.

**B.     Liquidation Trust**

16.     Except as otherwise provided in the Plan, this Confirmation Order, or this Court's *Order Authorizing and Establishing Procedures for the Sale, Transfer or Abandonment of De Minimis Assets* [D.I. 3141] and *Order Granting Debtors' Motion Pursuant to Fed. R. Bankr. P.*

*9019 for Approval of Settlement Agreement with Guilds,*[4] *MUFG, UnionBanCal, and Committee*
[D.I. 1956; 1956-1], on and after the Effective Date, all Liquidation Trust Assets shall vest in the
Liquidation Trust free and clear of all Claims, Liens, charges, other encumbrances, and Interests.
On and after the Effective Date, the Liquidation Trust shall be authorized, without limitation, to
use and dispose of the Liquidation Trust Assets in accordance with the terms of the Plan, to
investigate and pursue any Causes of Action (other than any Cause of Action that has been released
pursuant to the Plan and this Confirmation Order) as the representative of the Debtors' Estates
pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and to otherwise administer their
affairs, in each case without supervision or approval by the Bankruptcy Court and free of any
restrictions of the Bankruptcy Code or Bankruptcy Rules.

17.     The Liquidation Trust shall retain and may enforce all rights to commence and
pursue, as appropriate, any and all Causes of Action (other than any Cause of Action that has been
released pursuant to the Plan and this Confirmation Order), whether arising before or after the
Petition Date, and such rights to commence, prosecute, or settle such Causes of Action shall be
preserved notwithstanding the occurrence of the Effective Date.

18.     Dean A. Ziehl shall be, and hereby is, appointed as the Liquidation Trustee from
and after the Effective Date. As the Liquidation Trustee, Mr. Ziehl will be an officer of the
Bankruptcy Court, with the immunities, rights, and protections customarily enjoyed by bankruptcy
trustees. The Bankruptcy Court will have sole jurisdiction over claims and causes of action against
Mr. Ziehl (solely in his capacity as the Liquidation Trustee) arising out of the performance of his

---

[4] "Guilds" means, as applicable: (i) Directors Guild of America, Inc., (ii) Directors Guild of America, Inc.-Producer Pension and Health Plans, (iii) Screen Actors Guild-American Federation of Television and Radio Artists, (iv) Screen Actors Guild-Producers Pension and Health Plans, (v) Writers Guild of America West, Inc., (vi) Writers Guild of America East, Inc., (vii) Writers Guild Pension Plan and Industry Health Fund, and (viii) Motion Picture Industry Pension and Health Plans.

RLF1 24660236v.3

duties, and Mr. Ziehl (in such capacity) may not be sued, or have claims asserted against him, in any other forum without leave of the Bankruptcy Court. The Liquidation Trustee and any professionals retained by the Liquidation Trustee may be compensated by the Liquidation Trust in connection with any services provided to or on account of the Liquidation Trust from and after the Effective Date, subject to and in accordance with the terms of the Plan and the Liquidation Trust Agreement.

**C.     Supplemental Administrative Expense Claims Bar Date**

19.     Except as otherwise provided in the Initial Bar Date Order or the Plan, requests for payment of Administrative Expense Claims must be filed with the Court and served on the Liquidation Trustee and its counsel and the U.S. Trustee within forty-five (45) days from service of the Effective Date Notice.  Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the holder of the Administrative Expense Claim; (ii) the dates upon which the Administrative Expense Claims arose; (iii) the asserted amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  ANY ADMINISTRATIVE EXPENSE CLAIMS THAT ARE NOT ASSERTED IN ACCORDANCE HEREWITH AND WITH SECTION 3.7.1 OF THE PLAN SHALL BE DEEMED DISALLOWED UNDER THE PLAN AND SHALL BE FOREVER BARRED AGAINST THE DEBTORS, THEIR ESTATES, THE LIQUIDATION TRUST, OR ANY OF THEIR ASSETS OR PROPERTY, AND THE HOLDER THEREOF SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, RECOUP, OR RECOVER SUCH CLAIM AND SHALL BE SUBJECT TO THE INJUNCTION PROVISION.

### D.  Bar Date for Claims Arising From Rejection of Execution Contracts

20.     Claims created by the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Bankruptcy Court and served on the Liquidation Trustee and its counsel, no later than thirty (30) days after the Effective Date. Any Claims for rejection of executory contracts or unexpired leases pursuant to the Plan for which a proof of claim is not filed and served within such time will be forever barred and shall not be enforceable against the Debtors or their Estates, assets, properties, or interests in property, or against the Liquidation Trust. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided in the Plan shall be treated as General Unsecured Claims under the Plan. Nothing in the Plan extends any deadline for the filing of any Claims established in a previously entered order of the Bankruptcy Court.

### E.     Professional Fee Claims

21.     Each Bankruptcy Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must (i) file and serve a properly noticed final fee application by no later than 45 days after the Effective Date and (ii) be paid solely from the Liquidation Trust (a) the full unpaid amount as is Allowed by the Court within 7 days after the date that such Claim is Allowed by Order of the Court or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidation Trustee.   ANY PROFESSIONAL FEE CLAIM THAT IS NOT ASSERTED IN ACCORDANCE WITH SECTION 3.8 OF THE PLAN SHALL BE DEEMED DISALLOWED UNDER THE PLAN AND SHALL BE FOREVER BARRED AGAINST THE DEBTORS, THEIR ESTATES, THE LIQUIDATION TRUST, OR ANY OF THEIR ASSETS OR PROPERTY, AND THE HOLDER THEREOF SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY

RLF1 24660236v.3

ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, RECOUP, OR RECOVER SUCH CLAIM AND SHALL BE SUBJECT TO THE INJUNCTION PROVISION. Any Holder of a Claim or Interest (or their representative, including, but not limited to, the Committee) or the Liquidation Trustee may object to the allowance of Professional Fee Claims.

**F.      Dissolution of the Committee**

22.      On the Effective Date, the Committee shall dissolve and all members, *ex officio* members, employees, attorneys, financial advisors, other Bankruptcy Professionals, or other agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided, however*, that the Committee shall continue in existence and its Professionals shall continue to be retained with respect to Professional Fee Claims filed or to be filed pursuant to sections 330 and 331 of the Bankruptcy Code.

**G.      Miscellaneous**

23.      The Plan shall not become effective unless and until all conditions set forth in Section 11 of the Plan have been satisfied or waived pursuant to the terms thereof.

24.      Notwithstanding Bankruptcy Rule 3020(e), 6004(h), 6006(d) and 7062, to the extent applicable, this Confirmation Order shall be effective and enforceable immediately, and the Plan Proponents and the Settlement Parties are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately upon the entry of this Confirmation Order.

25.      The failure specifically to include or to refer to any particular section or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such section or provision shall have the same validity, binding effect, and enforceability as every other section or provision of the Plan, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety and that all Plan-related documents be approved.

RLF1 24660236v.3

26.     Notwithstanding anything to the contrary contained in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order: (i) shall grant any relief to any Entity that the Court is prohibited from granting by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a); (ii) release or discharge any claim for federal taxes against any Entity other than the Debtors, or enjoin the collection or assessment of such taxes; or (iii) grant the Debtors a release or discharge of any claims for federal taxes except as provided by 11 U.S.C. §§ 524 and 1141(d), or enjoin the collection or assessment of such taxes except as provided by those provisions.

27.     Notwithstanding any other provision of the Plan, the United States' right(s) of setoff and recoupment are expressly preserved.

28.     Notwithstanding any other provision of the Plan, the United States' right to post-petition interest and penalties on its administrative claims is preserved.

29.     Notwithstanding anything to the contrary in the Plan Documents or this Confirmation Order, nothing in the Plan Documents, this Confirmation Order, or the Chapter 11 Cases generally, including any orders establishing deadlines for filing proofs of claim or requests for payment of expenses, shall stay, affect, or prejudice in any way Ashley Judd's rights, claims, or defenses, or be used in any way, in or in connection with (a) the litigation currently pending in the United States District Court for the Central District of California captioned *Judd v. Weinstein*, Case No. 18-cv-05724 PSG (FFMx) or any related appeal, provided that none of the Released Parties shall be named as defendants in such litigation; or (b) any other proceeding, litigation, or appeal involving Ashley Judd and Harvey Weinstein relating to conduct arising in whole or part prior to June 30, 2005.

RLF1 24660236v.3

30.     On April 30, 2018, Black Bear Pictures, together with its affiliates BBP DevCo, LLC, BBP Gold, LLC, BBP Imitation, LLC, Black Bear IG Limited, and Three Greenhorns, Inc. (collectively, "Black Bear Pictures") filed "Black Bear Pictures' Objection To Assumption And Assignment Of Executory Contracts Or Unexpired Leases And Proposed Cure Objection" [D.I. 527] (the "Black Bear Pictures Cure Objection"), to, among other things, object to the assumption and assignment of the Assumption Agreements (as defined in the Black Bear Pictures Cure Objection) to Spyglass Media Group, LLC, (f/k/a Lantern Entertainment LLC) pursuant to the Sale Order (as defined below).  As of the date of the entry of this Confirmation Order, the Black Bear Pictures Cure Objection remains an Unresolved Contract Objection (as such term is defined the *Order (I) Authorizing the Sale of All or Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [D.I. 846] (the "Sale Order")).  Notwithstanding anything in this Confirmation Order to the contrary, nothing herein shall affect the rights of any parties with Unresolved Contract Objections (as such term is defined in the Sale Order), including  Black Bear Pictures under the Sale Order or the Black Bear Pictures Cure Objection with respect to the Assumption Agreements including, without limitation, any rights arising under Section 8.1 of the Plan. For the avoidance of doubt, nothing in this Confirmation Order shall supersede, alter, or otherwise modify the terms of the Sale Order and the rights granted or obligations imposed thereunder.

31.     Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur

RLF1 24660236v.3

shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Liquidation Trustee, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Supplement, and any amendments or modifications to the foregoing.

32.      The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

33.      To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

34.      Except as otherwise provided in the Plan or this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date shall be limited to the following parties: (i) the Liquidation Trustee and its counsel; (ii) the U.S. Trustee, and (iii) any party known to be directly affected by the relief sought.

35.      Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan or this Confirmation Order, shall retain jurisdiction over all matters arising out of, arising under, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Section 13 of the Plan.

Dated: January 26th, 2021
Wilmington, Delaware

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

RLF1 24660236v.3

## Exhibit A

**Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY<br>HOLDINGS LLC., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>Jointly Administered<br><br>Re: Docket No. 2992[2] |

## FIFTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER, P.A.**<br>Mark D. Collins (DE Bar No. 2981)<br>Paul N. Heath (DE Bar No. 3704)<br>Zachary I. Shapiro (DE Bar No. 5103)<br>Brett M. Haywood (DE Bar No. 6166)<br>David T. Queroli (DE Bar No. 6318)<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801 | **CRAVATH, SWAINE & MOORE LLP**<br>Paul H. Zumbro (admitted *pro hac vice*)<br>Lauren A. Moskowitz (admitted *pro hac vice*)<br>Salah M. Hawkins (admitted *pro hac vice*)<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019 |

*Counsel for the Debtors*

-and-

**PACHULSKI STANG ZIEHL & JONES LLP**
James I. Stang (admitted *pro hac vice*)
Robert J. Feinstein (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
Jason H. Rosell (admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
Wilmington, DE 19899 (Courier 19801)

*Counsel for the Official Committee of Unsecured Creditors*

Dated: January 20, 2021

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] On September 25, 2020 the Court entered an order [Docket No. 2992] authorizing the Debtors to file the Insurance Companies' Funding Amounts, a copy of which is attached to the Plan as Schedule 2, under seal.

# TABLE OF CONTENTS

**SECTION 1.** PLAN CONSTRUCTION ..................................................................................4

    **1.1.** Rules of Interpretation...........................................................................4

    **1.2.** Controlling Document...........................................................................4

**SECTION 2.** PAYMENT OF ADMINISTRATIVE EXPENSES ............................................4

    **2.1.** General.. ..................................................................................................4

    **2.2.** Payment of United States Trustee Fees..................................................4

    **2.3.** Bar Date for Administrative Expense Claims. ......................................5

**SECTION 3.** CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ..................................................................................................5

    **3.1.** General Settlement of Claims. ...............................................................5

    **3.2.** Bar Date for Claims (other than Administrative Expense Claims).. ......5

    **3.3.** General Rules of Classification. .............................................................5

    **3.4.** Summary of Treatment of Claims and Interests.....................................6

    **3.5.** Postpetition Interest on Claims. .............................................................6

    **3.6.** Full Satisfaction of Claims. ...................................................................7

    **3.7.** Administrative Expense Claims .............................................................7

    **3.8.** Professional Fee Claims. ........................................................................7

    **3.9.** Priority Tax Claims. ...............................................................................8

    **3.10.** Class 1: Other Priority Claims ..............................................................8

    **3.11.** Class 2: Secured Tax Claims .................................................................8

    **3.12.** Class 3: Secured Claims ........................................................................9

    **3.13.** Class 4: Sexual Misconduct Claims.....................................................10

    **3.14.** Class 5: Other Tort Claims ..................................................................12

    **3.15.** Class 6: General Unsecured Claims......................................................12

    **3.16.** Class 7: Intercompany Claims Against the Debtors. ...........................13

    **3.17.** Class 8: Interests in the Debtors. ........................................................13

**SECTION 4.** DISTRIBUTIONS UNDER THE PLAN............................................................13

    **4.1.** Timing of Distributions Under The Plan..............................................13

    **4.2.** Manner of Payment Under the Plan..................................................13

**4.3.**  Withholding of Taxes.................................................................................13

**4.4.**  Unclaimed Distributions..........................................................................14

**4.5.**  Transferability of Liquidation Trust Interests. ......................................14

**4.6.**  Fractional Cents. ....................................................................................14

**4.7.**  Delivery of Distributions in General. .....................................................14

**4.8.**  Minimum Distribution Amount. ..............................................................14

**4.9.**  Treatment of Contingent and Disputed Claims. .....................................15

**4.10.**  Estimation of Contingent and Disputed Claims.. ...................................15

**4.11.**  Objections to Claims.. ............................................................................15

**4.12.**  Distributions to Holders of Claims.. ......................................................15

**4.13.**  No Postpetition Interest..........................................................................16

**SECTION 5.**  THE SETTLEMENT EMBODIED IN PLAN ......................................16

**5.1.**  Incorporation of Plan Support Agreement.. ...........................................16

**5.2.**  Summary of Settlement............................................................................16

**5.3.**  Global Escrow Agent. .............................................................................17

**5.4.**  Sexual Misconduct Claims Fund.. ..........................................................17

**5.5.**  Non-Released Parties' Contribution Claims. .........................................19

**5.6.**  Liquidation Trust. ...................................................................................19

**5.7.**  Former Representatives Defense Costs...................................................20

**5.8.**  Channeling Injunction. ...........................................................................20

**5.9.**  Additional Documentation; Non-Material Modifications....................22

**SECTION 6.**  LIQUIDATION TRUST ....................................................................22

**6.1.**  Liquidation Trust. . .................................................................................22

**6.2.**  Establishment and Purpose of the Liquidation Trust. ...........................22

**6.3.**  Authority and Role of the Liquidation Trustee.......................................23

**6.4.**  Appointment of the Liquidation Trustee. ................................................23

**6.5.**  Liquidation Trust Assets. ........................................................................23

**6.6.**  Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor-in-Interest. ..........................................................................23

**6.7.**  Responsibilities of the Liquidation Trustee............................................24

**6.8.**  Expenses of the Liquidation Trustee.......................................................25

**6.9.**  Bonding of the Liquidation Trustee.........................................................25

**6.10.** Fiduciary Duties of the Liquidation Trustee. .......................................................25

**6.11.** Transfer of Books and Records. .......................................................................25

**6.12.** Dissolution of the Liquidation Trust..............................................................25

**6.13.** Full and Final Satisfaction against Liquidation Trust. ........................................26

**SECTION 7.** INJUNCTIONS AND RELEASES .........................................................26

**7.1.** Term of Certain Bankruptcy Injunctions and Automatic Stay. ...........................26

**7.2.** Releases. ........................................................................................................26

**7.3.** Plan Injunction. .............................................................................................33

**SECTION 8.** EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...........................34

**8.1.** Executory Contracts and Unexpired Leases Deemed Rejected............................34

**8.2.** Bar Date for Claims Arising from Rejection or Termination..............................35

**SECTION 9.** ACCEPTANCE OR REJECTION OF THE PLAN ...........................................35

**9.1.** Impaired Classes to Vote. .................................................................................35

**9.2.** Acceptance by Impaired Class of Claims..........................................................35

**9.3.** Presumed Acceptances by Unimpaired Classes. .................................................35

**9.4.** Presumed Rejection of the Plan. ......................................................................35

**9.5.** Nonconsensual Confirmation. ...........................................................................35

**SECTION 10.** MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ........................................................................................................36

**10.1.** Modification of the Plan. ...............................................................................36

**10.2.** Revocation or Withdrawal...............................................................................36

**SECTION 11. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**........................................................................................37

**11.1.** Conditions Precedent to Confirmation.............................................................37

**11.2.** Conditions Precedent to the Effective Date......................................................37

**11.3.** Simultaneous Actions.....................................................................................38

**11.4.** Effect of Failure of Conditions.. ....................................................................38

**11.5.** Waiver of Conditions Precedent. ....................................................................39

**SECTION 12.** MEANS FOR IMPLEMENTATION OF THE PLAN.....................................39

**12.1.** Substantive Consolidation. ..............................................................................39

**12.2.**    Vesting of Assets. ...........................................................................40

**12.3.**    Setoffs. .......................................................................................40

**12.4.**    Corporate Authority. ...................................................................40

**12.5.**    Corporate Action. .......................................................................40

**12.6.**    Incorporation of Plan Documents.. ................................................41

**SECTION 13.**    RETENTION OF JURISDICTION ...........................................41

**13.1.**    General Jurisdiction. ...................................................................41

**13.2.**    Specific Jurisdiction. ...................................................................41

**13.3.**    District Court Jurisdiction. ...........................................................44

**13.4.**    Bankruptcy Court Does Not Exercise Jurisdiction. ..........................44

**13.5.**    Non-Released Claims Jurisdiction. .................................................44

**SECTION 14.**    MISCELLANEOUS PROVISIONS ...........................................44

**14.1.**    Binding Effect of Plan. .................................................................44

**14.2.**    Reservation of Rights. ..................................................................44

**14.3.**    No Admission of Liability. .............................................................45

**14.4.**    Dissolution of the Committee. ........................................................45

**14.5.**    Exculpation and Release. ..............................................................46

**14.6.**    Governing Law.. .........................................................................46

**14.7.**    Notice. ......................................................................................46

**14.8.**    Exemption from Taxes.. ................................................................47

**14.9.**    Plan Supplement. . ......................................................................47

**14.10.**    Severability. .............................................................................47

**14.11.**    Standing of Released Parties. . ......................................................48

## **INTRODUCTION**

On March 19, 2018, The Weinstein Company Holdings LLC and fifty-four (54) affiliated companies (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Chapter 11 Cases").[3]   The Chapter 11 Cases are jointly administered.

The Debtors and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee") jointly propose this *Fifth Amended Joint Chapter 11 Plan of Liquidation* (as it may be further amended, modified, or supplemented from time to time, together with any and all exhibits, schedules, and supplements attached hereto or referenced herein, the "Plan") for the resolution and satisfaction of all Claims[4] against and Interests in the Debtors. The Plan contemplates, first and foremost, the comprehensive settlement of various Claims, including those at issue in a multitude of litigations pending in various courts between and among sexual misconduct claimants, the Debtors, Harvey Weinstein, Robert Weinstein, other former members of the board of representatives of and/or directors and officers of the Debtors, the Office of the New York Attorney General (the "NYOAG"), and numerous insurance companies that issued directors and officers and general liability insurance policies to the Debtors prepetition. The Debtors and the Committee (the "Plan Proponents") believe the Plan represents the most favorable recoveries attainable under the circumstances and provides for the fair and equitable allocation of the insurance proceeds (which may not be available at all absent the comprehensive settlement embodied in the Plan) and the Debtors' remaining business assets to be distributed to creditors.

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation, so long as such alterations, amendments or modifications are consistent with the terms of the Plan Support Agreement, attached hereto as Exhibit 3.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to the consummation of this Plan.

The comprehensive settlement embodied in this Plan (the settlements embodied herein, the "Settlement") provides mechanisms by which the universe of Tort Claims related directly or indirectly to the alleged misconduct of Harvey Weinstein, including, but not limited to the Sexual Misconduct Claims, shall be permanently resolved, released, and enjoined.   In summary, Tort Claims include and are treated as follows:

---

[3] A table identifying each Debtor, its chapter 11 bankruptcy case number, and the last four digits of its federal tax identification number is provided in Exhibit 2.

[4] A capitalized term used but not defined herein shall have the meaning ascribed to it in Exhibit 1.

     (1)    **Sexual Misconduct Claims:**  Sexual Misconduct Claims are Tort Claims that relate directly or indirectly to the alleged or actual sexual misconduct of Harvey Weinstein and shall be (a) ***permanently channeled*** to the Sexual Misconduct Claims Fund and administered in accordance with the Sexual Misconduct Claims Fund Procedures in ***full satisfaction and release*** of any and all such Sexual Misconduct Claims, and (b) ***permanently enjoined and released*** against the Released Parties pursuant to the Bankruptcy Injunctions and Releases set forth in the Plan and the Plan Support Agreement; *provided, however*, that after a Sexual Misconduct Claim is Allowed and liquidated in accordance with the Sexual Misconduct Claims Fund Procedures, Holders of such Allowed and liquidated Sexual Misconduct Claims shall have the option to release Harvey Weinstein or to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in another court of competent jurisdiction.  Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein shall receive 25% of the Liquidated Value of their Sexual Misconduct Claims in consideration of the release of their potential Sexual Misconduct Claims against the Released Parties, and Holders of Sexual Misconduct Claims who affirmatively elect to release Harvey Weinstein shall receive the full Liquidated Value of their Sexual Misconduct Claims.  The Claims review and determination process to establish the Liquidated Value of Sexual Misconduct Claims is summarized below and fully set forth in the Sexual Misconduct Claims Fund Procedures (attached hereto as Exhibit 4).

     (2)    **Other Tort Claims:**  Tort Claims that are not Sexual Misconduct Claims ("Other Tort Claims") shall recover solely, if Allowed, from the Liquidation Trust in ***full satisfaction and release*** of any and all Other Tort Claims in accordance with the Liquidation Trust Agreement, and be ***permanently enjoined and released*** against the Released Parties pursuant to the Bankruptcy Injunctions and Releases set forth in the Plan and the Plan Support Agreement.  Other Tort Claims will recover ratably with all Allowed Other Tort Claims and Allowed General Unsecured Claims.

The Released Parties are (i) the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, the Former Representatives and the Insurance Companies; (ii) professionals of firms specified in Schedule 1 to the Plan; and (iii) each such persons' or entities' current and former officers, directors and board representatives, predecessors, successors, assigns, insiders, subsidiaries, Affiliates, principals, equity holders, members, trustees, partners, managers, employees, agents, members of any boards or similar bodies of such persons, advisory board members, insurers, reinsurers, and such persons' respective heirs, executors, estates, and nominees, in each case as applicable and in their capacity as such, with respect to liability for the actions or inactions of the Former Representatives, the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies; *provided*, *however*, those persons or entities who fall within subparagraph (iii) (other than persons or entities specified in subparagraphs (i) and (ii)) are not released with respect to their own actions related to Sexual Misconduct Claims, regardless of their relationship with the Former Representatives, the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies, to the extent such action constitutes aiding, abetting or conspiracy to prevent the disclosure of or

to cover up any Sexual Misconduct Claim (each a "Non-Released Party").[5] **The definition of Released Parties does not include Harvey Weinstein.**

Further, all Holders of Claims or Interests will release the Released Parties pursuant to Section 7 of the Plan irrespective of how such Holders vote on the Plan, *provided, however*, the Third-Party Releases shall not apply to Holders of Opt-Out GUCs. Notwithstanding the foregoing, the Debtors and the Former Representatives shall retain any and all rights against the Insurance Companies with respect to any Claims or Interests that are not permanently released or enjoined pursuant to Section Section 5 and Section Section 7 of the Plan.

To effectuate the foregoing, the Plan provides for, *inter alia*, the establishment of (i) a Sexual Misconduct Claims Fund for the payment and satisfaction of the Sexual Misconduct Claims (Class 4) and (ii) a Liquidation Trust for the payment and satisfaction of all Claims (except Claims in Class 4). The Plan Proponents will seek to confirm the Plan pursuant to section 105(a) and other sections of the Bankruptcy Code to consummate the comprehensive Settlement embodied herein, including through the Sexual Misconduct Claims Fund and the Liquidation Trust. The Plan Proponents will only seek confirmation of the Plan if the Holders of Sexual Misconduct Claims (Class 4) vote to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, and notwithstanding the Plan Proponents' rights under sections 1129(a) and 1129(b) of the Bankruptcy Code, the Plan Proponents will not seek confirmation of the Plan if the Holders of Sexual Misconduct Claims (Class 4) vote to reject the Plan in accordance with section 1126(c) of the Bankruptcy Code. **Section 105(a) of the Bankruptcy Code and other sections of the Bankruptcy Code authorize the Bankruptcy Court to enter a "channeling injunction" pursuant to which the Sexual Misconduct Claims are forever channeled to the Sexual Misconduct Claims Fund, except that Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein shall be excused from the Channeling Injunction solely for the purpose of pursing an action against Harvey Weinstein (but not any Released Party) in another court of competent jurisdiction. Following the issuance of the Channeling Injunction in accordance with the Confirmation Order, any and all Holders of Sexual Misconduct Claims shall be permanently enjoined from seeking satisfaction of their Sexual Misconduct Claims against the Debtors or any other Released Party or the property of any such Released Party. The contributions of the Released Parties and Harvey Weinstein, directly or indirectly, to the Sexual Misconduct Claims Fund are expressly conditioned upon entry of the Confirmation Order approving the Channeling Injunction and confirming the Plan.**

**Nothing in this Plan shall affect in any way any claims or causes of action, including, but not limited to, any claims, rights, or causes of action within the definition of "claim" in section 101(5) of the Bankruptcy Code, related in any way to conduct that occurred in whole or in part prior to June 30, 2005.**

---

[5] As specified in Exhibit 1, § 1.55, AIG Europe Limited and AIG Europe SA are not Insurance Companies and as such, AIG Europe Limited and AIG Europe SA are not Released Parties.

# SECTION 1.    PLAN CONSTRUCTION

**1.1.    Rules of Interpretation.**  Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time.  A term used herein that is not defined herein or in the exhibits shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as it may have been amended, restated, revised, supplemented, or otherwise modified.  If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter.

**1.2.    Controlling Document.**  In the event of any conflict, ambiguity, or inconsistency between any term or provision of the Plan and the Disclosure Statement, the term or provision of the Plan shall control in all respects.  In the event of any conflict, ambiguity, or inconsistency between any term or provision of the Plan, the Plan Support Agreement, the Sexual Misconduct Claims Fund Procedures or the Liquidation Trust Agreement, the term or provision of the Plan shall control in all respects.  In the event of any inconsistency or ambiguity between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

# SECTION 2.    PAYMENT OF ADMINISTRATIVE EXPENSES

**2.1.    General.**  Subject to the Bar Date provisions set forth in Section 2.3 of the Plan, unless otherwise agreed to by the Liquidation Trustee and the Holder of a particular Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Expense Claim on the later of (a) the Effective Date or as soon thereafter as is reasonably practicable, and (b) such other date as is mutually agreed upon by the Liquidation Trustee and the Holder of such Claim.  All Allowed Administrative Expense Claims against the Debtors shall be satisfied solely out of the Liquidation Trust, including all Allowed Administrative Expense Claims of Bankruptcy Professionals; *provided, however*, that while the Plan Proponents' estimates and analyses (as of the date of the Plan) reflect that the Liquidation Trust Assets will be sufficient to satisfy all Administrative Expense Claims in full in Cash, in the event the Liquidation Trust Assets are insufficient to satisfy all Allowed Administrative Expense Claims in full in Cash, the Plan Proponents reserve the right to transfer part of the Sexual Misconduct Claims Fund to the Liquidation Trust only in the amount necessary for the Liquidation Trust to satisfy all Administrative Expense Claims in full in Cash.

**2.2.    Payment of United States Trustee Fees.**  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable.  From and after the Effective Date, the Liquidation Trust shall be liable for and shall pay the fees assessed against the Debtors' estate under 28 U.S.C. § 1930 until entry of a final decree closing the Chapter 11 Cases.  In addition, the Liquidation Trustee shall file post-confirmation quarterly reports in conformity with the United States Trustee guidelines, until entry of an order closing or converting the Chapter 11 Cases.

**2.3.    Bar Date for Administrative Expense Claims.**  Pursuant to the *Order (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing Deadlines for Filing Requests for Payment of Postpetition Administrative Expenses, (III) Approving Form and Notice Thereof, and (IV) Granting Related Relief* (Dkt. No. 1890) (the "Initial Bar Date Order"), February 15, 2019 was the deadline for filing Administrative Expense Claims through December 31, 2018 (the "Initial Administrative Claims Bar Date").  Confirmation of the Plan shall establish, and the Confirmation Order shall be the order establishing, a supplemental bar date for Administrative Expense Claims in the Chapter 11 Cases incurred after December 31, 2018.  The deadline for filing additional Administrative Expense Claims shall be the first Business Day that is at least 45 days after the Effective Date (the "Supplemental Administrative Claims Bar Date") unless a later date is otherwise approved or such time is extended by the Bankruptcy Court.  Objections to timely filed requests for allowance of Administrative Expense Claims must be filed and served no later than 30 days after the Supplemental Administrative Claims Bar Date.

## SECTION 3.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1.    General Settlement of Claims.**  Pursuant to section 1123 of the Bankruptcy Code and in consideration for the classification, distribution, releases, and other benefits under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies resolved pursuant to the Plan.

**3.2.    Bar Date for Claims (other than Administrative Expense Claims).**  Pursuant to the Initial Bar Date Order, February 15, 2019 was the deadline for filing a proof of Claim for all Claims except (i) Administrative Expense Claims that arose after December 31, 2018, and (ii) Tort Claims.[6]  On September 9, 2020, the Bankruptcy Court entered the *Order (I) Establishing Deadlines for Filing Proofs of Claim Solely With Respect To Tort Claims, (II) Approving Form and Manner of Notice Thereof, and (III) Granting Related Relief* (Dkt. No. 2966), which set October 31, 2020 as the deadline for filing a proof of claim for Tort Claims (the "Tort Claims Bar Date").

**3.3.    General Rules of Classification.**  The Plan:  (i) divides Holders of Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, Other Priority Claims, Secured Tax Claims, Sexual Misconduct Claims, Other Tort Claims, General Unsecured Claims, Intercompany Claims and Interests into different groups and Classes based on their legal rights and interests, (ii) provides for satisfaction of Sexual Misconduct Claims from the Sexual Misconduct Claims Fund, and (iii) provides for the satisfaction of Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, Other Priority Claims, Secured Tax Claims, Other Tort Claims and General Unsecured Claims from the Liquidation Trust, and (iv) provides for the cancellation and termination of Intercompany Claims and Interests.

---

[6]  Tort Claims as defined herein are defined as Harassment Claims in the Initial Bar Date Order. (Dkt. No. 1890 at 6-7), and the definitions of Tort Claims and Harassment Claims are substantively the same. The "Tort Claims" nomenclature has been adopted and used in the Plan and the Plan Documents.

Sections 3.7, 3.8, and 3.9 of the Plan describe the categories of Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, all of which are not classified.  This Section 3 of the Plan classifies Claims and Interests, for all purposes, including voting, confirmation, and distributions under the Plan.  A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest falls within the Class description.  To the extent part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Pursuant to Section 12.1 below, and for the reasons set forth in the Disclosure Statement, the Plan provides for the substantive consolidation of the Estates into a single Estate for all purposes associated with confirmation and consummation.  As a result of the substantive consolidation of the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors, and all Claims filed against more than one Debtor either on account of joint and several liability or on account of the same debt shall be deemed a single Claim against the consolidated Estates; *provided*, *however*, in the event the Bankruptcy Court does not approve the substantive consolidation of the Estates, each Class of Claims and Interests will be subdivided by Estate and each Estate's assets will be distributed to the Holders of Allowed Claims in accordance with the absolute priority rule as set forth in this Plan.

**3.4.    Summary of Treatment of Claims and Interests.**  The following table summarizes the classification and treatment of the Classes of Claims and Interests under the Plan.

| CLASS | DESCRIPTION | IMPAIRED / UNIMPAIRED | ENTITLED TO VOTE |
| --- | --- | --- | --- |
| Class 1 | Other Priority Claims | Unimpaired | No - Deemed to Accept |
| Class 2 | Secured Tax Claims | Unimpaired | No – Deemed to Accept |
| Class 3 | Secured Claims | Unimpaired | No - Deemed to Accept |
| Class 4 | Sexual Misconduct Claims | Impaired | Yes |
| Class 5 | Other Tort Claims | Impaired | Yes |
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 7 | Intercompany Claims | Impaired | No – Deemed to Reject |
| Class 8 | Interests | Impaired | No - Deemed to Reject |

**3.5.    Postpetition Interest on Claims.** Except as required by applicable bankruptcy law, postpetition interest shall not accrue or be payable on account of any Claim.

**3.6.    Full Satisfaction of Claims.**  The treatment in the Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim or an Allowed Interest may have in or against the Debtors or their property.  Except as provided in the Plan, this treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtors or their property.

**EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY ADMINISTRATIVE EXPENSE CLAIM, PROFESSIONAL FEE CLAIM, OR CLAIM THAT IS NOT ALLOWED.**

**3.7.    Administrative Expense Claims**

**3.7.1.    *Treatment.***  Except as otherwise provided in Section 3.7.2 of the Plan, or to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Debtors or Liquidation Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash solely from the Liquidation Trust in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors or liabilities arising under obligations incurred by the Debtors prior to the Effective Date, shall be paid by the Debtors, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, any applicable orders of the Bankruptcy Court.  In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid solely from the Liquidation Trust on the Effective Date by the Debtors, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidation Trustee in accordance with the applicable schedule for payment of such fees.

**3.7.2.    *Administrative Expense Claims Bar Date.***  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Initial Administrative Expense Claims Bar Date or the Supplemental Administrative Expense Claims Bar Date, as applicable, or such other date as may be agreed to by the Liquidation Trustee.  Any Administrative Expense Claims that are not asserted in accordance herewith and with Section 3.7.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their Estates, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim.

**3.8.    Professional Fee Claims.**  Each Bankruptcy Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must (i) file and serve a properly noticed final fee application by no later than 45 days after the Effective Date and (ii) be paid solely from the Liquidation Trust (a) the full unpaid amount as is Allowed by the Bankruptcy Court within 7 days after the date that

such Claim is Allowed by Order of the Bankruptcy Court or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidation Trustee. Any Professional Fee Claim that is not asserted in accordance with this Section 3.8 shall be deemed disallowed under this Plan and shall be forever barred against the Debtors, the Estates, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim. Any Holder of a Claim or Interest (or their representative, including, but not limited to, the Committee) or the Liquidation Trustee may object to the allowance of Professional Fee Claims.

**3.9.     Priority Tax Claims.** Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim, if any such Claim exists, shall receive Cash solely from the Liquidation Trust in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the date that is 90 calendar days after the Effective Date.

## 3.10.   Class 1: Other Priority Claims

> **3.10.1.    *Classification.*** Class 1 consists of all Allowed Other Priority Claims against any of the Debtors that are specified as having priority in section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

> **3.10.2.    *Treatment.*** Except to the extent that a Holder of an Allowed Other Priority Claim against any of the Debtors has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, and release of each such Allowed Other Priority Claim, Cash solely from the Liquidation Trust in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidation Trustee and the Holder of the Allowed Other Priority Claim against the applicable Debtor.

## 3.11.   Class 2: Secured Tax Claims

> **3.11.1.    *Classification.*** Class 2 consists of all Allowed Secured Tax Claims against any of the Debtors that, absent the secured status of such Claim, would be entitled to priority in right of payment under section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

> **3.11.2.    *Treatment.*** Each Holder of an Allowed Secured Tax Claim against any of the Debtors shall receive, in full and final satisfaction, settlement, and release of each such Allowed Secured Tax Claim, Cash solely from the Liquidation Trust in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidation Trustee and the Holder of the Secured Tax Claim. The applicable Debtor and the Liquidation Trustee (after the Effective Date) specifically reserve the right to challenge the validity, nature,

and perfection of, and to avoid, pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims.

**3.12.    Class 3:  Secured Claims**

    **3.12.1.    *Classification.***    Class 3 consists of all Allowed Secured Claims, other than Allowed Secured Tax Claims.

    **3.12.2.    *Treatment.***    On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Secured Claim will receive, at the election of the Liquidation Trustee, one of the following treatments in full satisfaction of its Allowed Secured Claim:

        (1)    The Liquidation Trustee will convey to the Holder of the Allowed Secured Claim the collateral in which such Holder has a security interest;

        (2)    The Liquidation Trustee will pay to the Holder of the Allowed Secured Claim, up to the amount of such Allowed Secured Claim, any net proceeds actually received from the sale or disposition of the collateral in which such Holder has a security interest;

        (3)    Provided there is Distributable Cash on hand, the Liquidation Trustee will pay Cash to the Holder of the Allowed Secured Claim in the amount of such Allowed Secured Claim;

        (4)    Such other distributions or treatment that are necessary to leave the rights of the Holder of the Allowed Secured Claim unimpaired or that are necessary to otherwise satisfy the requirements of Chapter 11 of the Bankruptcy Code; or

        (5)    Such other and less favorable distributions or treatments as may be agreed upon by and between the Holder of the Allowed Secured Claim and the Liquidation Trustee.

    The Liquidation Trustee may, in his or her discretion, select which of these treatments each Holder of an Allowed Secured Claim will receive and any Cash payments to such Holders will be paid solely from the Liquidation Trust.  The Liquidation Trustee shall have until the later of (a) the Effective Date and (b) 90 days after a Class 3 Claim has become an Allowed Secured Claim to elect which treatment to provide to such Holder of an Allowed Secured Claim.  Notwithstanding the foregoing, any agreement between a Holder of an Allowed Secured Claim and the Debtors approved by the Bankruptcy Court prior to the Effective Date shall remain in full force and effect.

### 3.13.  Class 4:  Sexual Misconduct Claims

> **3.13.1.**  *Classification.*  Class 4 consists of the Sexual Misconduct Claims.

> *Treatment.*  On the Effective Date, pursuant to the terms and conditions of the Plan, (i) all Sexual Misconduct Claims shall be *released* as against the Released Parties pursuant to the terms and conditions of the Plan; and (ii) the Sexual Misconduct Claims Fund shall be administered, processed, settled, resolved, liquidated, satisfied, and distributed in accordance with the terms of the Plan, the Plan Support Agreement, and the Sexual Misconduct Claims Fund Procedures.

> Under the Sexual Misconduct Claims Fund Procedures, the Sexual Misconduct Claims Examiner will review each Sexual Misconduct Claim and the documents and statements offered in support of such Claims to determine a Point Award for such Claims.  At the conclusion of the Claims review and determination process, the Sexual Misconduct Claims Fund will be divided by the total of the Point Awards to establish the value of each point (the "Point Value").  The Point Value will be multiplied by the Point Award for each Sexual Misconduct Claim to calculate the monetary amount (*i.e.* the Liquidated Value) to be awarded to each Holder of Sexual Misconduct Claims.

> After a Sexual Misconduct Claim is Allowed and liquidated in accordance with the Sexual Misconduct Claims Fund Procedures and the Liquidated Value is determined, Holders of Allowed and liquidated Sexual Misconduct Claims shall have the option to release Harvey Weinstein or to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in another court of competent jurisdiction.  Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein shall receive 25% of the Liquidated Value of their Sexual Misconduct Claims in consideration of the release of their potential Sexual Misconduct Claims against the Released Parties, and Holders of Sexual Misconduct Claims who affirmatively elect to release Harvey Weinstein shall receive the full Liquidated Value of their Sexual Misconduct Claims.

> Pursuant to the Channeling Injunction, all Sexual Misconduct Claims shall be *permanently channeled* to the Sexual Misconduct Claims Fund, and such Sexual Misconduct Claims may thereafter be asserted exclusively against the Sexual Misconduct Claims Fund and resolved (including, determining the recovery amount, if any, of each Sexual Misconduct Claim and the timing of the payment thereof) in accordance with the Sexual Misconduct Claims Fund Procedures established by Order of the Bankruptcy Court, except that Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein shall be excused from the Channeling Injunction solely for the purpose of pursuing an action against Harvey Weinstein (but not any Released Party) in another court of competent jurisdiction.  In the event a Holder of a Sexual Misconduct Claim does not affirmatively elect to release Harvey Weinstein and such Holder obtains any judgment against Harvey Weinstein arising out of, related to or connected to their Sexual Misconduct Claims, such Holder may seek to enforce, collect or otherwise recover on such judgment by any manner or means, whether directly or indirectly, from either Harvey Weinstein or the Insurance Companies (as applicable), *provided, however*, if such Holder seeks to enforce, collect or otherwise recover the judgment from the Insurance Companies, Harvey Weinstein shall not seek coverage from the Insurance Companies for such judgment; *provided further*, that

(i) with respect to such Holder's non-released Sexual Misconduct Claims against Harvey Weinstein, the Insurance Companies reserve their rights to contest coverage, and (ii) nothing in this paragraph shall be read to expand or alter the terms, conditions and provisions of any Insurance Policies.

Pursuant to the terms of this Plan and the Confirmation Order, Holders of all Sexual Misconduct Claims are **_permanently enjoined_** from filing any future litigation, Claims, or causes of action arising out of Sexual Misconduct Claims against any of the Released Parties (or any of their respective property), and may not proceed in any manner against any of the Released Parties (or any of their respective property) in any forum whatsoever, including, without limitation, any state, federal, or foreign court or administrative or arbitral forum, and are required to pursue their Sexual Misconduct Claims solely against the Sexual Misconduct Claims Fund pursuant to the Sexual Misconduct Claims Fund Procedures.

Holders of Sexual Misconduct Claims are not entitled to receive distributions or other payment of funds from any portion of the Settlement Amount other than the Sexual Misconduct Claims Fund on behalf of, related to, or with respect to, such Sexual Misconduct Claims, nor shall such Holders receive any other distributions whatsoever under the Plan on behalf of, related to, or with respect to their Sexual Misconduct Claims.

Holders of Sexual Misconduct Claims are Impaired and are entitled to vote on the Plan.

The female former employees of the Debtors whose interests are covered by the NYOAG Lawsuit are (i) Holders of Sexual Misconduct Claims; (ii) permitted to recover from the Sexual Misconduct Claims Fund; and (iii) entitled to vote on the Plan as members of Class 4. The NYOAG is not a Holder of any Claims or Interests in an individual or institutional capacity, and is not entitled to vote on the Plan nor to receive any distributions under the Plan. The NYOAG is also not eligible to vote on the Plan on behalf of any female former employees covered by the NYOAG Lawsuit, nor is the NYOAG eligible to recover from the Sexual Misconduct Claims Fund on behalf of female former employees covered by the NYOAG Lawsuit. On the Effective Date, the NYOAG shall release all of the Sexual Misconduct Claims brought in a representative capacity and any future Sexual Misconduct Claims against the Released Parties the NYOAG could bring in an individual or representative capacity (and such release shall be in a form and substance reasonably acceptable to the Former Representatives), _provided, however_, the NYOAG may in its discretion elect to continue with its pending action against Harvey Weinstein (but not any Released Party) in a representative capacity on behalf of Holders of Sexual Misconduct Claims who are covered by the NYOAG Lawsuit and do not affirmatively elect to release Harvey Weinstein.

### 3.14. Class 5: Other Tort Claims

**3.14.1.** *Classification.* Class 5 consists of all Other Tort Claims.  To the extent the Court does not approve the substantive consolidation of the Debtors, the treatment described below will apply to each Class for each of the Debtors.

**3.14.2.** *Treatment.* Except to the extent that a Holder of Other Tort Claims agrees to different treatment, in ***full and final satisfaction, settlement, and release*** of the Allowed Other Tort Claims against each of the Released Parties, each Holder of Other Tort Claims will receive its Pro Rata share of the Distributable Cash from the Liquidation Trust as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; *provided*, *however*, that each Holder of Other Tort Claims with an Allowed Other Tort Claim against more than one Debtor shall be entitled to a single distribution on account of each Claim that arises out of the same facts and circumstances regardless of the number of Debtors against which the Claim is asserted.

Pursuant to the terms of this Plan and the Confirmation Order, Holders of all Other Tort Claims are permanently enjoined from filing any future litigation, Claims, or causes of action arising out of Other Tort Claims against any of the Released Parties (or any of their respective property), and may not proceed in any manner against any of the Released Parties (or any of their respective property) in any forum whatsoever, including, without limitation, any state, federal, or foreign court or administrative or arbitral forum, and are required to pursue their Other Tort Claims solely against the Liquidation Trust.

Holders of Other Tort Claims are not entitled to receive distributions or other payment of funds from any portion of the Settlement Amount other than the Liquidation Trust on behalf of, related to, or with respect to, such Other Tort Claims, nor shall such Holders receive any other distributions whatsoever under the Plan on behalf of, related to, or with respect to their Other Tort Claims.

Holders of Allowed Other Tort Claims are Impaired and are entitled to vote on the Plan.

### 3.15. Class 6:  General Unsecured Claims

**3.15.1.** *Classification.* Class 6 consists of all General Unsecured Claims.  To the extent the Court does not approve the substantive consolidation of the Debtors, the treatment described below will apply to each Class for each of the Debtors.

**3.15.2.** *Treatment.* Except to the extent that a Holder of Opt-Out GUCs agrees to different treatment, in ***full and final satisfaction, settlement, and release*** of the Allowed General Unsecured Claims against each of the Debtors, each Holder of Opt-Out GUCs will receive its Pro Rata share of the Distributable Cash from the Liquidation Trust as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; *provided*, *however*, that each Holder of Opt-Out GUCs with an Allowed General Unsecured Claim against more than one Debtor shall be entitled to a single distribution on account of each Claim that arises out of the same facts and circumstances regardless of the number of Debtors against which the Claim is asserted.

Except to the extent that a Holder of Opt-In GUCs agrees to different treatment, in *full and final satisfaction, settlement, and release* of the Allowed General Unsecured Claims against each of the Released Parties, each Holder of Opt-In GUCs shall receive its Pro Rata share of the Distributable Cash from the Liquidation Trust as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; *provided*, *however*, that each Holder of Opt-In GUCs with an Allowed General Unsecured Claim against more than one Released Party shall be entitled to a single distribution on account of each Claim that arises out of the same facts and circumstances regardless of the number of Released Parties against which the Claim is asserted.

Seyfarth Shaw LLP's unpaid fees for services rendered to the Debtors prior to the Petition Date shall be classified as General Unsecured Claims and Seyfarth Shaw LLP will receive its Pro Rata share of Distributable Cash from the Liquidation Trust for the Allowed amount of its General Unsecured Claims.  The Liquidation Trustee reserves its rights to dispute the validity of any General Unsecured Claim, whether or not objected to prior to the Effective Date.

Holders of Allowed General Unsecured Claims are Impaired and are entitled to vote on the Plan.

**3.16.    Class 7:   Intercompany Claims Against the Debtors.**   Class 7 consists of all Intercompany Claims against the Debtors.  On the Effective Date, Intercompany Claims against the Debtors shall not be entitled to any Distribution under the Plan and such claims shall be cancelled and released on the Effective Date.

Holders of Intercompany Claims will receive no Distributions under the Plan in respect of such Intercompany Claims, are not entitled to vote on the Plan, and are deemed to have rejected the Plan.

**3.17.    Class 8:   Interests in the Debtors.**   Class 8 consists of all Interests in the Debtors. All Interests in the Debtors shall be cancelled and terminated on the Effective Date of the Plan.

Holders of Interests will receive no Distributions under the Plan in respect of such Interests, are not entitled to vote on the Plan, and are deemed to have rejected the Plan.

**SECTION 4.    DISTRIBUTIONS UNDER THE PLAN**

**4.1.    Timing of Distributions Under The Plan.**  Any Distribution to be made pursuant to the Plan shall be deemed to have been timely made if made within fourteen (14) calendar days of the time specified in the Plan.

**4.2.    Manner of Payment Under the Plan.**  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made under the Plan shall be made by check drawn on a domestic bank, or by wire transfer from a domestic bank.

**4.3.    Withholding of Taxes.**  The Liquidation Trustee shall distribute the assets and property of the Liquidation Trust in accordance with the terms of the Plan.  To the extent required by applicable law, the Liquidation Trustee shall withhold from the Liquidation Trust any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or

payable by the Entity entitled to such assets to the extent required by applicable law. The Debtors, the Estates and the Liquidation Trustee shall not have the authority to or be responsible for any withholding of taxes applicable to Distributions other than the Distributions of assets and property of the Liquidation Trust.

**4.4.    Unclaimed Distributions.**  Any Cash, assets, and other property to be distributed under the Plan that cannot be delivered to the Entity entitled thereto (including by an Entity's failure to negotiate a check issued to such Entity) before the later of (a) one year after the Effective Date, (b) if the applicable Entity's Claim has been objected to, six months after an order allowing such Entity's Claim becomes a Final Order, or (c) six months after the time period for objecting to Claims has lapsed and no objection has been lodged, shall become vested in, and shall be transferred to, the Liquidation Trust notwithstanding state or other escheat or similar laws to the contrary, and in accordance with the Liquidation Trust Agreement, any such Cash, assets or other property shall be shared ratably amongst the Holders of Allowed Claims who previously accepted distributions from the Liquidation Trust.  In such event, such Entity's Claim shall no longer be deemed to be Allowed and such Entity shall be deemed to have waived its rights to such payments or Distributions under the Plan pursuant to section 1143 of the Bankruptcy Code, shall have no further Claim in respect of such Distribution, and shall not participate in any further Distributions under the Plan with respect to such Claim.  Nothing in this Section 4.4 shall govern unclaimed distributions from the Sexual Misconduct Claims Fund, as the distribution of the Sexual Misconduct Claims Fund shall be handled in accordance with the Sexual Misconduct Claims Fund Procedures.

**4.5.    Transferability of Liquidation Trust Interests.**  The beneficial interests in the Liquidation Trust shall not be transferable or assignable except by will, intestate succession, or operation of law.

**4.6.    Fractional Cents.**  Notwithstanding anything to the contrary contained herein, no Cash payments of fractions of cents will be made.  Fractional cents shall be rounded to the nearest whole cent (with ½ cent or less to be rounded down).

**4.7.    Delivery of Distributions in General.**  Distributions to Holders of Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, Other Priority Claims, Other Tort Claims and General Unsecured Claims shall be made from the Liquidation Trust in accordance with the terms to the Plan.  Distributions to Holders of Sexual Misconduct Claims shall be made from the Sexual Misconduct Claims Fund in accordance with the terms of the Sexual Misconduct Claims Fund Procedures.

Distributions to Holders of Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims, Other Priority Claims, Other Tort Claims, General Unsecured Claims, and Sexual Misconduct Claims shall be made to the address of the Holder of such Claim as indicated on the records of the Debtors, or if a proof of claim has been filed, to the address on the proof of claim, unless the Liquidation Trustee or the Sexual Misconduct Claims Examiner is instructed otherwise by a signed writing from the Holder of such Allowed Claim.

**4.8.    Minimum Distribution Amount.**  Notwithstanding anything to the contrary contained herein, no Cash payments of $100 or less will be made.

**4.9.    Treatment of Contingent and Disputed Claims.**  Holders of Contingent and Disputed Claims shall be paid from the Liquidation Trust only after such Claims have become fixed and/or liquidated.  No interest shall be paid on account of Contingent and Disputed Claims except as provided in section 506(b) of the Bankruptcy Code.  Any Contingent and Disputed Claims that have not become fixed or liquidated on or before two years after the Effective Date shall be deemed waived, disallowed, and expunged unless the Holder of such Claim has, on or before two years following the Effective Date, filed a request with the Bankruptcy Court requesting estimation of such Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code.  After the later of two years following the Effective Date and the entry of Final Orders on any timely filed requests for estimation no cash reserves will be held for Contingent and Disputed Claims and any funds previously held for such purposes may be distributed to the Holders of Allowed Claims.

**4.10.    Estimation of Contingent and Disputed Claims.**  The Debtors or the Committee (before the Effective Date) or the Liquidation Trustee (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, the Committee, or the Liquidation Trustee may pursue supplementary proceedings to object to the allowance of such Claim; *provided*, *however*, the Liquidation Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

**4.11.    Objections to Claims.**  The Plan and the Confirmation Order shall be deemed to constitute an objection by the Debtors to the allowance of all Claims (other than Professional Fee Claims) filed against the Debtors in these Chapter 11 Cases.  On and after the Effective Date and in accordance with the Liquidation Trust Agreement, the Liquidation Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to the allowance of Claims (other than Sexual Misconduct Claims or Professional Fee Claims) against the Debtors filed with the Bankruptcy Court after providing notice and receiving an order from the Bankruptcy Court, *provided, however*, no such notice and order shall be required for any objections not filed with the Bankruptcy Court.  On and after the Effective Date and in accordance with the Sexual Misconduct Claims Fund Procedures, the Sexual Misconduct Claims Examiner shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to the allowance of Sexual Misconduct Claims filed with the Bankruptcy Court without notice to Creditors or order of the Bankruptcy Court.

**4.12.    Distributions to Holders of Claims.**  Payments and distributions to each Holder of a Claim that is not an Allowed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the Plan, including the provisions governing the Class of Claims

in which such Claim is classified.  As soon as practicable after the date that any Claim is Allowed, in whole or in part, the Liquidation Trustee shall distribute to the Holder of such Claim any Cash that would have been distributed to such Holder if such Claim had been an Allowed Claim on the Effective Date.  No distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof.  Distribution shall be made as soon as practicable with respect to any portion of a Contingent Claim that becomes fixed or liquidated.  Nothing in this section shall affect the allowance, liquidation, or payment of Sexual Misconduct Claims, which shall be governed by Section 3.13 of the Plan and the Sexual Misconduct Claims Fund Procedures.

**4.13.    No Postpetition Interest.**  Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Claim after the Effective Date, including on any Disputed Claim, in respect of the period from the Effective Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

## SECTION 5.    THE SETTLEMENT EMBODIED IN PLAN

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a proposed compromise and settlement of numerous inter-Debtor, Debtor-Creditor, and inter-Creditor issues designed to achieve an economic settlement of Claims against all of the Debtors and fair (under the circumstances) and efficient resolution of the Chapter 11 Cases.  At the Confirmation Hearing, the Bankruptcy Court will determine whether to approve the Settlement as fair and equitable and within the bounds of reasonableness.  If the Settlement is approved, the Confirmation Order shall constitute an order of the Bankruptcy Court, pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the compromises and settlements contained in the Plan and Plan Support Agreement.

**5.1.    Incorporation of Plan Support Agreement.**  The Plan Support Agreement is incorporated into the Plan and will become effective on the Effective Date.

**5.2.    Summary of Settlement.**  Tort Claims have been alleged against certain of the Released Parties and Harvey Weinstein.  Subject to the entry of the Confirmation Order approving the Settlement and the occurrence of the Effective Date, the Settlement provides mechanisms by which the universe of Tort Claims related directly or indirectly to the alleged misconduct of Harvey Weinstein, including, but not limited to the Sexual Misconduct Claims, shall be permanently resolved, released, and enjoined.

As consideration for the Settlement, the Insurance Companies, on behalf of the Released Parties (and Harvey Weinstein, but only with respect to Sexual Misconduct Claims held by Holders of Sexual Misconduct who affirmatively elect to release Harvey Weinstein), are paying the aggregate amount of $35,214,882.30 (the "Settlement Amount"), which is to be allocated as follows.  Pursuant to the terms of the Plan Support Agreement, the Insurance Companies shall pay, on behalf of the Released Parties (and Harvey Weinstein, but only with respect to Sexual Misconduct Claims held by Holders of Sexual Misconduct who affirmatively elect to release Harvey Weinstein):  (i) the aggregate Cash amount of the Sexual Misconduct Claims Fund

($17,064,525.30); (ii) the aggregate Cash amount to the Estates in the amount of the Liquidation Trust Settlement Payment ($8,407,305.00); (iii) the aggregate Cash amount of the Former Representatives Defense Costs ($9,743,052.00). ***The Former Representatives Defense Costs do not provide for reimbursement of any defense costs and expenses incurred by Harvey Weinstein.*** In addition, the Insurance Companies, upon the Effective Date, shall be deemed to withdraw (or waive with the consent of the Committee) their proofs of claim filed against the Debtors.

In exchange for the consideration discussed above, all Claims against the Released Parties will either be (i) ***permanently channeled*** to the Sexual Misconduct Claims Fund pursuant to the Channeling Injunction and the Released Parties shall receive the benefit of the Bankruptcy Injunctions (which shall include approval of the Channeling Injunction) and Releases; or (ii) ***permanently released and enjoined*** pursuant to the Plan (and the Plan Support Agreement) against all of the Released Parties and all of the Released Parties shall receive the benefit of the Bankruptcy Injunctions and Releases set forth herein, *provided, however,* subparagraph (ii) of this paragraph, as it relates to parties other than the Debtors, shall not apply to Holders of Opt-Out GUCs.

**5.3.    Global Escrow Agent.**    The Insurance Companies shall pay, on behalf of the Released Parties (and Harvey Weinstein, but only with respect to Sexual Misconduct Claims held by Holders of Sexual Misconduct who affirmatively elect to release Harvey Weinstein), the Settlement Amount to an account controlled by the Global Escrow Agent in immediately available funds not later than ten (10) Business Days following occurrence of the Effective Date.  Once payment of the Settlement Amount has been received by the Global Escrow Agent, the Global Escrow Agent shall promptly, and in any case no more than three (3) Business Days following receipt of the Settlement Amount, distribute by wire transfer the distributions described in this Section 5. Each Insurance Company will fund its applicable portion in respect of the Settlement Amount, as specified in Schedule 2 attached to this Plan.

**5.4.    Sexual Misconduct Claims Fund.**    From the Settlement Amount, $17,064,525.30 shall be distributed by the Global Escrow Agent to an account controlled by the Sexual Misconduct Claims Examiner who shall administer, process, settle, resolve, liquidate, satisfy, and distribute the Sexual Misconduct Claims Fund to Holders of Allowed Sexual Misconduct Claims in accordance with the Sexual Misconduct Claims Fund Procedures.  In exchange for the Sexual Misconduct Claims Fund as well as additional consideration provided for in the Plan, such Sexual Misconduct Claims shall be (a) ***permanently channeled*** to the Sexual Misconduct Claims Fund and administered in accordance with the Sexual Misconduct Claims Fund Procedures in ***full satisfaction and release*** of any and all such Sexual Misconduct Claims, and (b) ***permanently enjoined and released*** against the Released Parties pursuant to the Channeling Injunction in accordance with the terms of this Plan.  The Sexual Misconduct Claims Fund will be used to pay: (a) administrative expenses of the Sexual Misconduct Claims Fund; (b) taxes on the Sexual Misconduct Claims Fund; (c) distributions to Holders of Sexual Misconduct Claims.  The Sexual Misconduct Claims Fund will not be used to pay any administrative expenses or taxes incurred relating to the Estates.

As it pertains to the NYOAG, any Claims the NYOAG currently holds arise in its representative capacity for the People of the State of New York.  The female former employees of the Debtors whose interests are covered by the NYOAG Lawsuit are (i) Holders of Sexual Misconduct Claims; (ii) permitted to recover from the Sexual Misconduct Claims Fund;

and (iii) entitled to vote on the Plan as members of Class 4. The NYOAG is not a Holder of any Claims or Interests in an individual or institutional capacity, and is not entitled to vote on the Plan nor to receive any distributions under the Plan. The NYOAG is also not eligible to vote on the Plan on behalf of any female former employees covered by the NYOAG Lawsuit, nor is the NYOAG eligible to recover from the Sexual Misconduct Claims Fund on behalf of female former employees covered by the NYOAG Lawsuit. On the Effective Date, the NYOAG shall release all of the Sexual Misconduct Claims brought in a representative capacity and any future Sexual Misconduct Claims against the Released Parties the NYOAG could bring in an individual or representative capacity (and such release shall be in a form and substance reasonably acceptable to the Former Representatives), *provided, however*, the NYOAG may in its discretion elect to continue with its pending action against Harvey Weinstein (but not any Released Party) in a representative capacity on behalf of Holders of Sexual Misconduct Claims who are covered by the NYOAG Lawsuit and do not affirmatively elect to release Harvey Weinstein.

Under the Sexual Misconduct Claims Fund Procedures, the Sexual Misconduct Claims Examiner will review each Sexual Misconduct Claim and the documents and statements offered in support of such Claims to determine a Point Award for such Claims. At the conclusion of the Claims review and determination process, the Sexual Misconduct Claims Fund will be divided by the total of the Point Awards to establish the value of each point (the "Point Value"). The Point Value will be multiplied by the Point Award for each Sexual Misconduct Claim to calculate the monetary amount (*i.e.* the Liquidated Value) to be awarded to each Holder of Sexual Misconduct Claims.

After a Sexual Misconduct Claim is Allowed and liquidated in accordance with the Sexual Misconduct Claims Fund Procedures and the Liquidated Value is determined, Holders of such Allowed and liquidated Sexual Misconduct Claims shall have the option to release Harvey Weinstein or to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in another court of competent jurisdiction. Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein shall receive 25% of the Liquidated Value of their Sexual Misconduct Claims in consideration of the release of their potential Sexual Misconduct Claims against the Released Parties, and Holders of Sexual Misconduct Claims who affirmatively elect to release Harvey Weinstein shall receive the full Liquidated Value of their Sexual Misconduct Claims.

For each Holder of a Sexual Misconduct Claim who does not affirmatively elect to release Harvey Weinstein, 75% of the Liquidated Value of their Sexual Misconduct Claims shall be allocated to a reversionary fund for the benefit of the Allianz Insurance Companies and the Chubb Insurance Companies. The Sexual Misconduct Claims Examiner shall revert 63% of reversionary fund to the Allianz Insurance Companies and 37% of the reversionary fund to the Chubb Insurance Companies. Distribution of the reversionary fund to the Allianz Insurance Companies and the Chubb Insurance Companies shall occur at the same time and not earlier than the initial distributions to Holders of Allowed Sexual Misconduct Claims from the Sexual Misconduct Claims Fund.

**5.5.    Non-Released Parties' Contribution Claims.**  In the event a Tort Claimant has initiated (or initiates in the future) an action against a Non-Released Party related to a Tort Claim, any recovery in such action (or a related action) against a Released Party shall be deemed completely satisfied based on the Released Party's (and/or such Released Party's Insurance Companies') contribution to the Settlement Amount, regardless of the jurisdiction in which the Tort Claimant brings the Tort Claim or the applicable law that governs such Tort Claim.  On and after the Effective Date, all Claims for contribution (including Claims for contribution arising from, related to or connected to Tort Claims) held by a Non-Released Party shall be ***permanently enjoined and released*** against all Released Parties.

**5.6.    Liquidation Trust.**  From the Settlement Amount, $8,407,305.00 shall be distributed by the Global Escrow Agent to an account controlled by the Liquidation Trustee who shall manage the Liquidation Trust and distributions from the Liquidation Trust in accordance with the provisions of this Plan, the Plan Support Agreement and the Liquidation Trust Agreement.  In consideration for the Liquidation Trust as well as the additional consideration provided for in the Plan:

>    (i)    all Claims (other than the Sexual Misconduct Claims and Opt-Out GUCs) against the Released Parties and Harvey Weinstein, shall (a) recover solely, if at all, from the Liquidation Trust in ***full satisfaction and release*** of such Claims, and (b) all such Claims shall be ***permanently enjoined and released*** against the Released Parties pursuant to the Bankruptcy Injunctions and Releases set forth in the Plan and the Plan Support Agreement; and

>    (ii)    all Opt-Out GUCs shall (a) recover solely, if at all, from the Liquidation Trust, in ***full satisfaction and release*** of such Claims against the Debtors, and (b) all such Claims shall be ***permanently enjoined and released*** against the Debtors pursuant to the Bankruptcy Injunctions and Releases set forth in the Plan.

Because Holders of General Unsecured Claims may opt out of the Third Party Releases, the Allianz Insurance Companies and the Chubb Insurance Companies, who are two of the Insurance Companies contributing funds for the Settlement Amount, may incur litigation costs, defense costs and/or damages (including amounts paid in connection with any settlement) pertaining to Opt-Out GUCs (the "Opt-Out Costs").  The Liquidation Trust shall contain a reserve in the amount of $500,000 to cover Opt-Out Costs incurred by the Allianz Insurance Companies and the Chubb Insurance Companies (the "Opt-Out Reserve").  For any Opt-Out Costs incurred prior to or within ten (10) Business Days of the Effective Date, the Allianz Insurance Companies and the Chubb Insurance Companies shall provide the Plan Proponents with documentation of the Opt-Out Costs and their contributions to the Settlement Amount shall be reduced in the amount of their Opt-Out Costs; *provided, however*, the aggregate amount of such reductions shall not exceed the amount of the Opt-Out Reserve.  For any Opt-Out Costs incurred more than ten (10) Business Days after the Effective Date, the Allianz Insurance Companies and the Chubb Insurance Companies shall provide the Liquidation Trustee with documentation of the Opt-Out Costs and the Liquidation Trustee shall use funds from the Opt-Out Reserve to reimburse the Allianz Insurance Companies and the Chubb Insurance Companies (as applicable) for their Opt-Out Costs.  To effectuate post-Effective Date settlements regarding Opt-Out GUCs, after confirmation of the Plan, Holders of Opt-Out GUCs may revise their ballot to opt in to the Third-Party Releases and shall be treated

as if such Holder never opted out of the Third-Party Releases. Six months after the Effective Date, the remaining amount of the Opt-Out Reserve shall become available to the Liquidation Trustee for distribution to Holders of Allowed General Unsecured Claims and costs and expenses of the Liquidation Trust.

**5.7.    Former Representatives Defense Costs.**  Pursuant to the terms and conditions of the Plan and the Plan Support Agreement, the Former Representatives have agreed, in consideration for the releases and injunctions contemplated hereunder and thereunder, to waive, in part, their entitlement to reimbursement of all defense costs and expenses as a priority to payment of any liability or settlement amount pursuant to the terms of the applicable Insurance Policies.  As a result of such waiver, the Former Representatives shall be reimbursed $9,743,052.00, an amount which, in the aggregate, approximates fifty percent (50%) of the fees and expenses incurred by the Former Representatives as of April 25, 2019 and for any other defense costs or expenses incurred by the Former Representatives after such date, the Former Representatives will be reimbursed zero percent (0%) of their fees and expenses.  The Global Escrow Agent shall distribute the Former Representatives Defense Costs to an account controlled by a representative selected by the Former Representatives, this representative shall distribute the funds to satisfy the defense costs incurred by the Former Representatives in connection with the defense of the applicable cases, and such distributions shall be made in accordance with the payment schedule held by Jed Melnick of Melnick ADR, LLC.  ***The Former Representatives Defense Costs do not provide for reimbursement of any defense costs and expenses incurred by Harvey Weinstein.***

**5.8.    Channeling Injunction.**  From and after the Effective Date: (i) all Sexual Misconduct Claims against the Released Parties will be subject to the Channeling Injunction pursuant to section 105(a) of the Bankruptcy Code and the provisions of the Plan and the Confirmation Order, except that Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein shall be excused from the Channeling Injunction solely for the purpose of pursuing an action against Harvey Weinstein (but not any Released Party) in another court of competent jurisdiction; (ii) upon the funding of the Sexual Misconduct Claims Fund by the Insurance Companies on behalf of the Released Parties (and Harvey Weinstein, but only with respect to Sexual Misconduct Claims held by Holders of Sexual Misconduct who affirmatively elect to release Harvey Weinstein), the Released Parties shall have no obligation to pay any liability of any nature or description arising out of, relating to, or in connection with the Sexual Misconduct Claims; (iii) if a Holder of a Sexual Misconduct Claim affirmatively elects to release Harvey Weinstein, Harvey Weinstein shall have no obligation to pay any liability of any nature or description arising out of, relating to, or in connection with such Holder's Sexual Misconduct Claims, *provided*, *however*, that nothing in the Plan shall preclude any action by the Settlement Parties to enforce the Plan, and nothing shall preclude any Holder of a Sexual Misconduct Claim who does not affirmatively elect to release Harvey Weinstein from pursuing an action against him in another court of competent jurisdiction.  Further, nothing in this Section 5.8 or the Channeling Injunction shall constitute or be deemed a waiver of any claim, right or Cause of Action connected to any Sexual Misconduct Claim by any Settlement Party against any Entity that is not a Released Party.  The Plan Proponents will only seek confirmation of the Plan if the Holders of Sexual Misconduct Claims (Class 4) vote to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.  Accordingly, the Channeling Injunction shall be binding upon, and enforceable by its terms against, all Holders of Sexual Misconduct Claims, irrespective of whether any such Holder (i) has voted to accept the Plan or (ii) has agreed to be bound by the Channeling Injunction,

in both cases, only because the Class consisting of the Holders of Sexual Misconduct Claims (Class 4) has voted to approve the Plan in accordance with section 1126(c) of the Bankruptcy Code. *In order to supplement the injunctive effect of the Bankruptcy Injunctions, and pursuant to sections 105(a) of the Bankruptcy Code, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date*:

    **5.8.1.    *Channeling Injunction Terms.*** In order to (i) preserve and promote the Settlement and the Plan and (ii) supplement, where necessary, the effect of the injunctions and the releases described in Sections 7.2 and 7.3 of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons and Entities that (a) have held or asserted, or that hold or assert, or that may hold or assert in the future, any Sexual Misconduct Claims against the Released Parties, or any of them or (b) have affirmatively elected to release Harvey Weinstein, each shall have recourse solely to the Sexual Misconduct Claims Fund and each shall be permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Released Party or Harvey Weinstein with respect to any Sexual Misconduct Claims, including, but not limited to:

    (1)    commencing or continuing, in any manner, whether directly or indirectly, any suit, actions or other proceedings of any kind with respect to any Sexual Misconduct Claim against any of the Released Parties or Harvey Weinstein or against the property of any of the Released Parties or Harvey Weinstein;

    (2)    enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, whether directly or indirectly, from any of the Released Parties or Harvey Weinstein, or the property of the Released Parties or Harvey Weinstein, any judgment, award, decree or other order with respect to any such Sexual Misconduct Claim against any of the Released Parties, Harvey Weinstein or any other person;

    (3)    creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien of any kind relating to any Sexual Misconduct Claim against any of the Released Parties or Harvey Weinstein, or the property of any of the Released Parties or Harvey Weinstein;

    (4)    asserting, implementing or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any Sexual Misconduct Claim of any kind, whether directly or indirectly, against (i) any obligation due to any of the Released Parties or Harvey Weinstein, (ii) any of the Released Parties or Harvey Weinstein; or (iii) the property of any of the Released Parties or Harvey Weinstein; and

    (5)    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any such Sexual Misconduct Claim.

    **5.8.2.**    *Reservations.*    Notwithstanding anything to the contrary in Section 5.8.1 of the Plan, this Channeling Injunction shall not enjoin or affect the rights of any persons or Entities to the treatment afforded to them under the Plan, including the right of Holders of Sexual Misconduct Claims to assert such Claims in accordance with the Plan and the Sexual Misconduct Claims Fund Procedures.

    **5.8.3.**    *Modifications.*    Notwithstanding an order by the Bankruptcy Court modifying this Channeling Injunction to comply with the Bankruptcy Code, the scope of this Channeling Injunction may not be amended, modified, or limited in any material respect without the prior consent of the Settlement Parties.

    **5.8.4.**    *Authorization for Recognition and Enforcement of Channeling Injunction.* The Settlement Parties (and each of them) are authorized to take all necessary or appropriate actions, in accordance with the terms of this Plan and the agreements incorporated herein, to enforce, or otherwise have recognized, the Confirmation Order, the Plan, the Channeling Injunction, or any other related document, in any jurisdiction worldwide and without limitation, *provided*, *however*, the cost of such actions shall be borne by the party seeking enforcement or recognition unless otherwise provided in the Plan or the applicable Plan Document.

**5.9.**    **Additional Documentation; Non-Material Modifications.**    From and after the Effective Date, the Sexual Misconduct Claims Examiner, Liquidation Trustee, and the Settlement Parties shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Settlement contained in this Section 5 without further Order of the Bankruptcy Court. Additionally, the Sexual Misconduct Claims Examiner, Liquidation Trustee, and the Settlement Parties may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement contained in this Section 5, subject to Bankruptcy Court approval, *provided*, *however*, any such changes must be consistent with the terms of the Plan Support Agreement and the Plan, and the amendment or modification does not materially and adversely change the treatment of any Holder of an Allowed Claim without the prior written agreement of such Holder. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented under this Section 5.9, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class. An Order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section 5.9 shall constitute an Order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

## SECTION 6.    LIQUIDATION TRUST

**6.1.**    **Liquidation Trust.**    The Liquidation Trust Agreement is incorporated into and made a part of the Plan.

**6.2.**    **Establishment and Purpose of the Liquidation Trust.**    On or before the Effective Date, the Debtors and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall have established the Liquidation Trust pursuant to the Plan. The Liquidation Trust shall be established for the primary purpose of Liquidation and distributing the assets transferred to it, in

accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the Liquidation purpose of the Liquidation Trust.

**6.3.     Authority and Role of the Liquidation Trustee.**    The authority and role of the Liquidation Trustee shall be in accordance with the provisions of the Liquidation Trust Agreement and the Plan.  In furtherance of and consistent with the purpose of the Liquidation Trust Agreement and the Plan, solely for the purpose of carrying out the Plan and discharging the duties in the Liquidation Trust Agreement, the Liquidation Trustee shall be, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable State corporate law, appointed as the successor-in-interest to, and the representative of, the Estates for the retention, enforcement, settlement, or adjustment of all claims and rights, known and unknown, and all interests belonging to the Debtors or their Estates, which arose prior to the Effective Date, except in connection with any proceeding involving, relating to, or arising out of, in whole or in part, the Sexual Misconduct Claims, as set forth in Section 4.12 of the Plan.

**6.4.     Appointment of the Liquidation Trustee.**  The identity of the Liquidation Trustee is set forth in the Liquidation Trust Agreement.  The appointment of the Liquidation Trustee shall be approved in the Confirmation Order, and such appointment shall be as of the Effective Date.  In accordance with the Liquidation Trust Agreement, the Liquidation Trustee shall serve in such capacity through the earlier of (i) the date that the Liquidation Trust is dissolved in accordance with the Liquidation Trust Agreement or (ii) the date such Liquidation Trustee resigns, is terminated, or is otherwise unable to serve; *provided*, *however*, that, in the event that the Liquidation Trustee resigns, is terminated, or is unable to serve, then the Court, upon the motion of any party-in-interest, including, but not limited to, counsel to the Liquidation Trust, shall approve a successor to serve as the Liquidation Trustee, and such successor Liquidation Trustee shall serve in such capacity until the Liquidation Trust is dissolved.

**6.5.     Liquidation Trust Assets.**    On the Effective Date, the Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust.   Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date, the Debtors shall be deemed to have automatically transferred to the Liquidation Trust all of their right, title, and interest in and to all of the Liquidation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidation Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the Liquidation Trust Beneficiaries and the expenses of the Liquidation Trust. Subsequent to the Effective Date, the Debtors shall have no interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust.

**6.6.     Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor-in-Interest.**  In accordance with Treas. Reg. § 301.7701-4(d), the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries, and not unduly prolong its duration. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidation Trust Agreement.

      **6.6.1.     *Liquidation Trust as a "Grantor Trust."*** The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidation Trust

Beneficiaries treated as grantors and owners of the Liquidation Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims of Liquidation Trust Beneficiaries entitled to distributions from the Liquidation Trust Assets, followed by a transfer by such Holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

       **6.6.2.** ***Valuation of Liquidation Trust Assets.*** As soon as reasonably practicable after the Effective Date, the Liquidation Trustee (to the extent that the Liquidation Trustee deems it necessary or appropriate in his or her absolute sole discretion) shall value the Liquidation Trust Assets based on the good faith determination of the value of such Liquidation Trust Assets. The valuation shall be used consistently by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

       **6.6.3.** ***Liquidation Trustee's Right and Power to Invest.*** The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets transferred to the Liquidation Trust, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to invest such Liquidation Trust Assets (pending distributions in accordance with the Plan) in Permissible Investments; *provided*, *however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a "liquidation trust," within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

**6.7.** **Responsibilities of the Liquidation Trustee.** The responsibilities of the Liquidation Trustee shall include, but shall not be limited to:

       (1)    the making of Distributions as contemplated herein;

       (2)    establishing and maintaining the Cash Reserves in accordance with the terms of the Plan;

       (3)    conducting an analysis of Administrative Expense Claims, Priority Claims, Secured Claims, and General Unsecured Claims, and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate;

       (4)    preparing and filing post-Effective Date operating reports for the Debtors;

       (5)    filing appropriate tax returns with respect to the Liquidation Trust and paying taxes properly payable by the Liquidation Trust, if any, in the exercise of its fiduciary obligations; provided however, that for the avoidance of doubt, neither the Liquidation Trust or the Liquidation Trustee shall have any authority or duty to file any tax returns for any of the Debtors;

(6)     taking such actions as are necessary to wind down and dissolve the Debtors under applicable law;

(7)     retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations;

(8)     taking such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust;

(9)     protecting and enforcing the rights to the Liquidation Trust Assets vested in the Liquidation Trustee by any method reasonably determined to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; and

(10)    terminating the Liquidation Trust and seeking to close the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

**6.8.    Expenses of the Liquidation Trustee.**  Fees and expenses incurred by the Liquidation Trustee shall be paid from the Liquidation Trust Expense Reserve.

**6.9.    Bonding of the Liquidation Trustee.**  The Liquidation Trustee shall not be obligated to obtain a bond but may do so, in his or her sole discretion, in which case the expense incurred by such bonding shall be paid from the Liquidation Trust.

**6.10.    Fiduciary Duties of the Liquidation Trustee.**  Pursuant to the Plan and the Liquidation Trust Agreement, the Liquidation Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims against the Debtors (other than those Holders of Sexual Misconduct Claims) that will receive Distributions pursuant to the terms of the Plan.

**6.11.    Transfer of Books and Records.**  On the Effective Date, the Debtors will transfer and assign, or cause to be transferred and assigned, to the Liquidation Trust, all of the books and records of the Debtors.

**6.12.    Dissolution of the Liquidation Trust.**  The Liquidation Trust shall be dissolved no later than five years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the fourth anniversary or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets.  The Liquidation Trust Agreement shall require that each extension be approved by the Bankruptcy Court within six months prior to the conclusion of the extended term. After (a) the final Distribution of the Contingent Claims Cash Reserve and the Disputed Claims Cash Reserve and the balance of the assets or proceeds of the Liquidation Trust pursuant to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

**6.13.   Full and Final Satisfaction against Liquidation Trust.**  On and after the Effective Date, the Liquidation Trust shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Liquidation Trust Agreement.  All payments and all Distributions made by the Liquidation Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Interests against the Liquidation Trust and the Released Parties, as applicable.

## SECTION 7.   INJUNCTIONS AND RELEASES

**7.1.   Term of Certain Bankruptcy Injunctions and Automatic Stay.**

**7.1.1.**   All of the injunctions (which do not include the Bankruptcy Injunctions, as defined in the Plan) and/or automatic stays provided for in or with respect to these Chapter 11 Cases, whether pursuant to section 105, section 362 or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the Bankruptcy Injunctions (as defined in the Plan) provided for by the Plan become effective.  In addition, on and after the Confirmation Date, the Plan Proponents, with the consent of all the Settlement Parties, may seek such further orders as they deem necessary to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

**7.1.2.**   Each of the Bankruptcy Injunctions shall become effective on the Effective Date and shall continue to be effective at all times thereafter.  Notwithstanding anything to the contrary contained in the Plan, all actions in the nature of those to be enjoined by the Bankruptcy Injunctions shall be enjoined or stayed during the period between the Confirmation Date and the Effective Date.

**7.1.3.**   On and after the Confirmation Date but prior to the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any Claim, debt, right or cause of action of the Debtors which the Debtors retain sole and exclusive authority to pursue in accordance with Section 12.2.4 of the Plan.

**7.2.   Releases.**

**7.2.1.**   *Releases by Debtors and Estate.*  Except as otherwise set forth in Section 7.2 of this Plan and the Plan Support Agreement, for good and valuable consideration, including without limitation, all payments under the Plan to Holders of Claims, payment of which is critical to the Debtors' ability to obtain confirmation of the Plan and to effectuate distributions to Holders of Claims, as of the Effective Date, each of the Debtors, on behalf of themselves and their respective Estates and their current respective Affiliates, members, officers, directors, and any person claiming by or through them, shall be deemed to conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, and disclaim the Released Parties, Harvey Weinstein and their respective property to the maximum extent permitted by law from any and all Claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any direct or derivative claims asserted or assertable by or on behalf of any of the Debtors, any Claims or causes of action asserted by or on behalf of any of the Debtors or any Interest that any such Debtor would have been legally entitled to assert in their own right, whether

26

individually or collectively, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law or in equity, based on any matter, cause, thing, conduct, or omission occurring prior to the Effective Date and in any way related to the Debtors, their businesses, operations, activities, or these Chapter 11 Cases.

**7.2.2.    *Releases by the Committee and Holders of Claims and Interests.*** Except as otherwise set forth in Section 7.2 of this Plan and the Plan Support Agreement, for good and valuable consideration, including, without limitation, all payments under the Plan to Holders of Claims, payment of which is critical to the Debtors' ability to obtain Confirmation of the Plan and to effectuate distributions to Holders of Claims, as of the Effective Date, (i) the Committee, on behalf of itself and its members (solely in their capacities as members of the Committee) and (ii) each present and former Holder of a Claim or Interest, will be deemed to unconditionally, completely, and forever release, waive, and disclaim the Released Parties of and from any and all Claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any direct or derivative claims asserted or assertable by or on behalf of any member of the Committee or any Holder of a Claim or Interest, any Claims or causes of action asserted by or on behalf of any member of the Committee or any Holder of a Claim or Interest or that any such member of the Committee or any Holder of a Claim or Interest would have been legally entitled to assert in their own right, whether individually or collectively, whether known or unknown, matured or unmatured, accrued or not accrued, foreseen or unforeseen, existing or hereinafter arising, in law or equity, based on any matter, cause, thing, conduct, or omission occurring prior to the Effective Date and in any way related to the Debtors, their businesses, operations, activities, or these Chapter 11 Cases, *provided, however,* subparagraph (ii) of this Section 7.2.2, as it relates to parties other than the Debtors, shall not apply to Holders of Opt-Out GUCs.

**7.2.3.    *Releases of Harvey Weinstein by Holders of Sexual Misconduct Claims.*** Except as otherwise set forth in Section 7.2 of this Plan and the Plan Support Agreement, for good and valuable consideration, including, without limitation, all payments under the Plan to Holders of Claims, payment of which is critical to the Debtors' ability to obtain Confirmation of the Plan and to effectuate distributions to Holders of Claims, after a Sexual Misconduct Claim is Allowed and liquidated in accordance with the Sexual Misconduct Claims Fund Procedures, Holders of such Allowed and liquidated Sexual Misconduct Claims shall have the option to release Harvey Weinstein or not release Harvey Weinstein and pursue an action against him (but not any Released Party) in another court of competent jurisdiction. If a Holder of a Sexual Misconduct Claim affirmatively elects to release Harvey Weinstein, such Holder will be deemed to unconditionally, completely, and forever release, waive, and disclaim Harvey Weinstein and the Insurance Companies of and from any and all Sexual Misconduct Claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any direct or derivative claims asserted or assertable by or on behalf of any Holder of a Sexual Misconduct Claim, any Sexual Misconduct Claims or causes of action asserted by or on behalf of any Holder of a Sexual Misconduct Claim or that any Holder of a Sexual Misconduct Claim would have been legally entitled to assert in their own right, whether individually or collectively, whether known or unknown, matured or unmatured, accrued or not accrued, foreseen or unforeseen, existing or hereinafter arising, in law or equity, based on any matter, cause, thing, conduct, or omission occurring prior to the Effective Date.

**7.2.4.**    ***Additional Settlement Releases.***    In addition to the general releases in Sections 7.2.1, 7.2.2 and 7.2.3 of this Plan (the "Plan Releases"), the Plan Support Agreement contains certain general and specific releases (the "Settlement Releases") by the Releasing Parties and Harvey Weinstein.  Notwithstanding anything herein to the contrary, nothing herein shall be construed to limit or lessen the scope of the Settlement Releases and the rights reserved thereunder in any way.  The Settlement Releases consist of the following:

(1)    General Release.

(a)    Except as otherwise set forth in Sections 7.2.4(2) and 7.2.5 herein, as of the Effective Date, each of the Settlement Parties that is a signatory to the Plan Support Agreement releases (and each entity so released shall be deemed released by the Settlement Parties) each of the Released Parties that is a signatory hereto and its respective property from any and all Claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any direct or derivative claims asserted or assertable by or on behalf of any of the Settlement Parties, any Claims or causes of action asserted by or on behalf of any of the Settlement Parties, or that any Settlement Party would have been legally entitled to assert in their own right, whether individually or collectively, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law or in equity, based on any matter, cause, thing, conduct or omission occurring prior to the Effective Date and in any way related to the Debtors, their businesses, operations, activities or the Chapter 11 Cases (including, but not limited to, Tort Claims).

(2)    Additional Releases.

(a)    the Debtors and the Former Representatives release the Insurance Companies from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever (including, without limitation, reimbursement of fees and costs of defense) in any way arising out of or related to the Tort Claims, whether in law, in equity or otherwise, and whether under contract, warranty, tort or otherwise, including but not limited to any claims for bad faith or breach of the implied covenant of good faith and fair dealing; *provided*, *however*, this release shall not include any (i) Claims that are not Tort Claims; (ii) Tort Claims that are not permanently released and enjoined pursuant to the Bankruptcy Injunctions; and (iii) direct and indirect fees, costs and expenses incurred by

28

the Debtors or the Former Representatives in excess of $25,000 per Claim in connection with (a) the enforcement of the Bankruptcy Injunctions and/or (b) any Claim or action by or against a Non-Released Party or by a Holder of a Sexual Misconduct Claim who does not affirmatively elect to release Harvey Weinstein (except as otherwise provided in Section 7.2.4(2)(c) below); *provided further* that with respect to the Claims specified in subparagraphs (i)-(iii) above, the Debtors and the Former Representatives reserve their rights to seek insurance coverage from the Insurance Companies and the Insurance Companies reserve their rights to contest such coverage;

(b) the Former Representatives and the Debtors who are currently or were previously named parties in the Contract and Commercial Cases waive all challenges to coverage positions taken by the Insurance Companies for each of the Contract and Commercial Cases due to the failure of such Former Representatives and Debtors to issue timely coverage dispute letters to the Insurance Companies, and such Former Representatives and the Debtors shall not seek coverage from the Insurance Companies for any cost or expense incurred in connection with any Contract or Commercial Case for which a coverage position has been waived;

(c) Harvey Weinstein releases the Insurance Companies for all Claims arising in the Judd Case and the McGowan Case;

(d) in the event a Holder of a Sexual Misconduct Claim affirmatively elects to release Harvey Weinstein, then (i) Harvey Weinstein shall be deemed to release the Insurance Companies from any Claims in any way arising out of, related to or connected to such Sexual Misconduct Claims; and (ii) the Insurance Companies shall be deemed to release Harvey Weinstein from any Claims in any way arising out of, related to or connected to such Sexual Misconduct Claims;

(e) the Debtors, the Estates, the Committee and the Non-Debtor Affiliates release the Former Representatives for all of the Estates' Claims and Causes of Action against any Former Representative;

(f) the Former Representatives and Harvey Weinstein release the Debtors with respect to any and all Claims, including: (i) all general unsecured, priority and/or administrative

29

expense claims that have been asserted or could be asserted against the Debtors (except as set forth in the Plan); (ii) any and all claims for substantial contribution pursuant to Section 503(b)(3) of the Bankruptcy Code (provided that such substantial contribution claims shall only be available as consideration for any releases granted pursuant to the Plan and the approval of the Channeling Injunction and shall not support the request for payments from the Estates); and (iii) any and all contribution and indemnity Claims against the Debtors and/or their respective bankruptcy Estates, except to the extent that any of the Debtors are nominally defendants in any insurance coverage litigation; upon occurrence of the Effective Date and distribution and receipt of the Settlement Amount in accordance with this Agreement and the Plan, all proofs of claim filed by the Former Representatives and Harvey Weinstein shall be deemed disallowed and any amounts owed to the Former Representatives and Harvey Weinstein as reflected on the Debtors' schedules of assets and liabilities shall be deemed released;

(g)    the Debtors, the Former Representatives and Harvey Weinstein (as applicable) release all Holders of Sexual Misconduct Claims, including current or former TWC employees and/or contractors, from any confidentiality, non-disclosure or non-disparagement agreements (if any), arising from or relating to any Sexual Misconduct Claim;

(h)    Notwithstanding the foregoing, and in exchange for the consideration herein, the Debtors, the Former Representatives and Harvey Weinstein: (i) fully release and forever relinquish any and all rights for coverage for defense costs or indemnification or otherwise under Policy No. G27085969 005 issued by Westchester Fire Insurance Company to the named insured The Weinstein Company Holdings.  The Debtors, the Former Representatives and Harvey Weinstein agree that any duties or obligations of Westchester Fire Insurance Company under Policy No. G27085969 005 are fully and finally extinguished and terminated.  By this release, the Debtors, the Former Representatives and Harvey Weinstein reserve no rights or benefits whatsoever under or in connection with Policy No. G27085969 005 with respect to any past, present or future claims whatsoever; and (ii) fully release National Union Fire Insurance Company of Pittsburgh, PA ("National Union") from any obligations, duties, responsibilities, claims, liabilities and damages under Policy

No. 01 824-40-28 issued to the named insured The Weinstein Company Holdings. The Debtors, the Former Representatives and Harvey Weinstein agree that National Union's contribution of the remaining unexhausted amount of Policy No. 01-824-40-28 towards the Settlement Amount exhausts the $10 million limit of liability of Policy No. 01-824-40-28. By this release, the Debtors, the Former Representatives and Harvey Weinstein reserve no rights or benefits whatsoever under or in connection with Policy No. 01 824 40-28 with respect to any past, present or future claims whatsoever;

(i)     each Insurance Company releases each and every other Insurance Company for Claims or causes of action, whether in law, in equity, or otherwise, and whether under contract, warranty, tort or otherwise, solely with respect to any claim for recovery of each Insurance Company's respective contribution to the Settlement Amount and any defense costs paid by any Insurance Company prior to the execution of this Agreement for the Claims and any criminal proceedings arising out of the Sexual Misconduct Claims from any other Insurance Company (unless otherwise agreed upon by and between any of the Insurance Companies), provided, however, (i) these releases shall not apply to any Insurance Company's obligations under any contract of reinsurance; and (ii) in the event any Insured seeks coverage for any matters or claims not released herein, each Insurance Company reserves the right to challenge the exhaustion of any applicable policy except Policy No. 01 824 40 28 issued by National Union;

(j)     except as provided in Section 7.2.4 above, the Insurance Companies (on behalf of themselves and their subsidiaries, Affiliates, parents, predecessors, or successors (except AIG Europe Limited and AIG Europe SA)) release the other Released Parties from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever (including, without limitation, reimbursement of fees and costs of defense) in any way arising out of or related to the Claims, whether in law, in equity or otherwise, and whether under contract, warranty, tort or otherwise, including but not limited to any claims for bad faith or breach of the implied covenant of good faith and fair dealing; the Insurance Companies shall not seek recovery of the Settlement Amount or any portion thereof paid by such Insurance Company from any other

Released Party for any reason; *provided*, *however,* the Insurance Companies do not release any rights, defenses or Claims against The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Miramax, LLC, Miramax Film Corporation and/or Miramax Film NY, LLC.

**7.2.5.    *Exceptions to Releases.***  The Releases set forth in Sections 7.2.1-7.2.4 of the Plan and the Bankruptcy Injunctions set forth in Sections 5.8 and 14.7 of the Plan shall not apply to (i) any Claims in the Plan Support Agreement that are specifically excluded from the releases set forth in the Plan Support Agreement and (ii) any of the following:

(1)     any Former Representatives' Claims and/or their respective affiliates' or representatives' Claims (other than Claims released in the Plan Support Agreement), including any claim for indemnification, against any Released Party other than the Debtors, the Estates and the Former Representatives;

(2)     Robert Weinstein's and Harvey Weinstein's Claims for indemnification against the Non-Debtor Entities that arise from, relate to or connect to Sexual Misconduct Claims;

(3)     in the event a Holder of a Sexual Misconduct Claim does not affirmatively elect to release Harvey Weinstein; (i) Harvey Weinstein shall not be required to release the Insurance Companies from any Claims in any way arising out of, related to or connected to such Holder's Sexual Misconduct Claims other than as set forth in Section 7.2.4(2)(c); and (ii) the Insurance Companies shall not be required to release Harvey Weinstein from any Claims in any way arising out of, related to or connected to Sexual Misconduct Claims that are not released in accordance with subparagraph (i) of this Section 7.2.5(3);

(4)     the Debtors', Harvey Weinstein's, Robert Weinstein's, Frank Gil's and David Glasser's claims and counterclaims against the Debtors, Harvey Weinstein, Robert Weinstein, Frank Gil and David Glasser, arising out of the action entitled *Frank Gil v. Weinstein Live Entertainment LLC, et. al.*, Supreme Court of the State of New York, County of New York, Case No. 653555/2019;

(5)     the claims of Sartraco, Inc., Aldamisa International, LLC, Aldamisa Entertainment, LLC, Sergei Bespalov, Marina Bespalov, Harvey Weinstein, Robert Weinstein, and David Glasser (the "Sartraco-Weinstein Parties") and the respective counter-claims of the Sartraco-Weinstein Parties against each other arising out of the action entitled Sartraco et. al. v. Robert Weinstein, et. al., Superior Court for the State of California, County of Los Angeles, Case No. 19-VECV-00448;

(6)     any Claims to enforce the terms of the Plan and the Plan Documents;

(7)     any Allowed Professional Fee Claim.

**7.2.6.    *Bankruptcy Court Approval of Releases.*** Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Releases by Holders of Claims and Interests and the Settlement Releases subsumed thereunder, which includes by reference each of the related provisions and definitions contained in this Plan and the Plan Support Agreement, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of claims released by the Third-Party Releases; (3) in the best interests of the Debtors, the Estates and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, foreign law, common law or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued based upon any acts, omissions, conduct or other matters in any way related to the Debtors, their businesses, operations, activities, their Chapter 11 Cases, against any of the Released Parties or their property.

**7.3.    Plan Injunction.** Except as otherwise provided in the Plan and/or the Plan Documents (including, specifically, the Plan Support Agreement), on and after the Effective Date, all Persons and Entities who have held, hold, or may hold Claims or Interests whether or not such Persons or Entities have voted to accept or reject the Plan (except, solely as it relates to parties other than the Debtors, Holders of Opt-Out GUCs), and other parties in interest, along with their respective present or former employers, agents, officers, directors, or principals, shall be and are permanently enjoined from and restrained against taking any of the following actions on account of any such Claims or Interests:

(1)     taking any actions to interfere with the implementation or consummation of the Plan, taking any actions to interfere with the implementation or consummation of the Plan, or otherwise acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan;

(2)     commencing, conducting, or continuing in any manner, directly or indirectly, in any court, proceeding, or other tribunal of any kind, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum), or otherwise asserting any Claim or Interest, which has been released pursuant to Section 7.2 of the Plan or from seeking to hold any Released Party or Harvey Weinstein (as applicable) liable in any such suit, action or proceeding or for any such Claim, or Interest that has been released pursuant to Section 7.2 of the Plan;

(3)     enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any manner

or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, their Estates, their assets, the Released Parties and/or the property of the Released Parties, the Liquidation Trust Assets, and/or the Sexual Misconduct Claims Fund;

(4)    creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance against the Debtors' assets, their Estates' assets, the Released Parties' assets, the Liquidation Trust Assets, and/or the Sexual Misconduct Claims Fund; and

(5)    asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due any Released Party or against the property of any Released Party with respect to any such claim, demand, or cause of action.

The Releases pursuant to Section 7 of the Plan shall act as a permanent injunction against any party from commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim released under this Plan to the fullest extent authorized by applicable law.  Notwithstanding anything to the contrary contained herein, the Releases and Bankruptcy Injunctions granted in favor of Insurance Companies do not include any insurance policies issued to The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Miramax, LLC, Miramax Film Corporation and Miramax Film NY, LLC, and each of their respective affiliates and successors.

## SECTION 8.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1.    Executory Contracts and Unexpired Leases Deemed Rejected.**  Except as otherwise provided for herein, and except for executory contracts and unexpired leases which the Debtors either have assumed, have rejected or have filed a motion to assume or reject prior to the Confirmation Date and which remains pending as of the Confirmation Date, all executory contracts and unexpired leases for goods, services, or premises used in connection with Debtors' business operations shall be deemed rejected by the Debtors on the Effective Date, and the Plan shall constitute a motion to reject such executory contracts and unexpired leases.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtors, their Estates, and all parties in interest in these Chapter 11 Cases.

Notwithstanding the foregoing, or anything else in the Plan or Confirmation Order to the contrary, nothing shall be deemed to be a rejection of any Insurance Policy of the Debtors, and the Debtors, jointly and severally, shall assume all such Insurance Policies in their entireties pursuant to sections 105 and 365 of the Bankruptcy Code, and such Insurance Policies shall vest, unaltered, in the Liquidation Trust except that on and after the Effective Date, the Liquidation Trust shall become and remain liable for all of the Debtors' obligations under the Insurance Policies regardless of when such obligations arise.

**8.2.    Bar Date for Claims Arising from Rejection or Termination.**  Claims created by the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Bankruptcy Court and served on the Liquidation Trustee, no later than thirty (30) days after the Effective Date.  Any Claims for rejection of executory contracts or unexpired leases pursuant to the Plan for which a proof of claim is not filed and served within such time will be forever barred and shall not be enforceable against the Debtors or their Estates, assets, properties, or interests in property, or against the Liquidation Trust.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan.  Nothing in the Plan shall extend any deadline for the filing of any Claims established in a previously entered order of the Bankruptcy Court.

## SECTION 9.    ACCEPTANCE OR REJECTION OF THE PLAN

**9.1.    Impaired Classes to Vote.**  Each Holder of a Claim or Interest that is classified in an Impaired Class and is eligible to receive a Distribution pursuant to the Plan shall be entitled to vote to accept or reject the Plan.

**9.2.    Acceptance by Impaired Class of Claims.**  Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if, after excluding any Claims designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the Holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept such Plan and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.  All Sexual Misconduct Claims filed prior to the Tort Claims Bar Date shall be temporarily Allowed and valued at one dollar solely for the purpose of voting.

Except for Holders of Claims in Classes that are deemed or presumed to have accepted or rejected the Plan pursuant to the terms of the Plan, if Holders of Claims in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject the Plan and notified that a failure of any Holders of Claims in such Impaired Class of Claims to vote to accept or reject the Plan would result in such Impaired Class of Claims being deemed to have accepted the Plan, then such Class of Claims shall be deemed to have accepted the Plan.

**9.3.    Presumed Acceptances by Unimpaired Classes.**  Classes of Claims or Interests designated as Unimpaired are conclusively presumed to have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, and the votes of the Holders of such Claims or Interests will not be solicited.

**9.4.    Presumed Rejection of the Plan.**  Impaired Classes of Claims or Interests that do not receive or retain property under the Plan are conclusively presumed to have voted to reject the Plan pursuant to 1126(g) of the Bankruptcy Code, and the votes of such Claims or Interests will not be solicited.

**9.5.    Nonconsensual Confirmation.**  In the event that any Impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Plan Proponents reserve the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting class, in which case

the Plan shall constitute a motion for such relief,  or (b) modify the Plan in accordance with Section 10.1 of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, *provided, however,* the Plan Proponents will only seek confirmation of the Plan if the Holders of Sexual Misconduct Claims (Class 4) vote to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, and notwithstanding the Plan Proponents' rights under sections 1129(a) and 1129(b) of the Bankruptcy Code, the Plan Proponents will not seek confirmation of the Plan if the Holders of Sexual Misconduct Claims (Class 4) vote to reject the Plan in accordance with section 1126(c) of the Bankruptcy Code.

## SECTION 10.   MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

**10.1.    Modification of the Plan.**  The Plan Proponents, unless otherwise provided in the Plan or the Plan Documents, may alter, amend, or modify the Plan and the Plan Documents under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as the Plan and the Plan Documents, as modified, meet the requirements of sections 1122 and 1123 of the Bankruptcy Code and incorporates, or are consistent with, the terms of the Plan Support Agreement in a form and substance reasonably satisfactory to the Settlement Parties.  After the Confirmation Date, and prior to the Effective Date, unless otherwise provided in the Plan or the Plan Documents, Plan Proponents may alter, amend, or modify the Plan and the Plan Documents in accordance with section 1127(b) of the Bankruptcy Code so long as the Plan, as modified: (i) incorporates, or is consistent with, the terms of the Plan Support Agreement in a form and substance reasonably satisfactory to the Settlement Parties; and (ii) the Plan Proponents file notice of material modifications with the Bankruptcy Court and the Bankruptcy Court approves such modifications.  From and after the Effective Date, the Plan Documents may be modified in accordance with their respective terms, *provided*, *however*, that (i) any modification to any Plan Document must be consistent with the Plan and the Confirmation Order; and (ii) the Plan Proponents file notice of material modifications with the Bankruptcy Court and the Bankruptcy Court approves such modifications.  In the event that any modifications to any Plan Document are not consistent with the Plan and Confirmation Order, Section 1.2 of the Plan shall govern such inconsistencies.

**10.2.    Revocation or Withdrawal.**

> **10.2.1.    *Right to Revoke.***  The Debtors may revoke or withdraw the Plan at any time prior to the Effective Date.

> **10.2.2.    *Effect of Withdrawal or Revocation.***  If the Plan Proponents revoke or withdraw the Plan, then the Plan and the settlements contemplated thereby, including, without limitation the Settlement shall be deemed null and void and nothing in the Settlement shall be admissible as evidence in any case or proceeding for any purpose, it being the intent of the Settlement Parties that in such circumstance all discussions and negotiations related to the Settlement will be treated as inadmissible settlement discussions protected under Federal Rule of Evidence 408 and its state law equivalents.  Further, in such event of revocation or withdrawal, nothing contained herein or in any of the Exhibits hereto, shall be deemed to (i) constitute an admission of liability by the Plan Proponents, any Released Party or any other Entity, (ii) constitute a waiver or release of any Claims

by the Plan Proponents, any Released Party or any other Entity, or (ii) prejudice in any manner the rights of the Debtors, any Released Party or any Entity in any future case or proceeding.

## SECTION 11.   CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**11.1.   Conditions Precedent to Confirmation.**  Each of the following is a condition precedent to the Confirmation of the Plan, which must be satisfied or waived by each of the Settlement Parties in their sole and absolute discretion in accordance with Section 11.5 of the Plan:

(1)    The Bankruptcy Court shall have ruled that the settlements embodied in the Plan and the Channeling Injunction set forth in Section 5.8 of the Plan and the Plan Injunction set forth in Section 7.3 of the Plan are binding upon, and enforceable by their terms against, all Holders of Claims and Interests.

(2)    The Bankruptcy Court shall have entered an order approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(3)    The Bankruptcy Court shall have entered the Confirmation Order, in a form and substance reasonably satisfactory to all of the Settlement Parties, approving, among other things, the Channeling Injunction, the Plan Injunction and the Releases, the Plan Support Agreement, and such Confirmation Order shall not in any way impair, diminish or detract from the terms of the Settlement.

(4)    All documents, instruments, and agreements provided under, or necessary to implement, the Plan, shall have been executed and delivered by the applicable parties.

(5)    The Debtors and the Liquidation Trustee shall have executed the Liquidation Trust Agreement and shall have established the Liquidation Trust pursuant to the Plan that shall be in a form and substance acceptable to the Plan Proponents.

(6)    The Debtors and the Sexual Misconduct Claims Examiner shall have finalized the Sexual Misconduct Claims Fund Procedures and shall have established the Sexual Misconduct Claims Fund pursuant to the Plan that shall be in a form and substance acceptable to the Plan Proponents.

(7)    The substantive consolidation of the Debtors shall have been approved by the Bankruptcy Court.

**11.2.   Conditions Precedent to the Effective Date.**  The "substantial consummation," as defined in section 1101 of the Bankruptcy Code, shall not occur, and the Plan shall be of no force and effect, until the Effective Date.  The occurrence of the Effective Date is subject to satisfaction of each of the following conditions precedent, each of which may be waived by all of the Settlement Parties (as applicable) in their sole and absolute discretion:

      (1)     There is no stay in effect with respect to the Confirmation Order, and the Confirmation Order, including the Channeling Injunction, the Plan Injunction and the Releases, shall be in full force and effect.

      (2)     The Sexual Misconduct Claims Fund shall have been funded as provided in the Plan and the Plan Support Agreement.

      (3)     The Liquidation Trust shall have been funded in accordance with the terms of this Plan.

      (4)     The Former Representatives Defense Costs shall have been funded as provided in the Plan.

      (5)     The Debtors shall have sufficient funds to satisfy all Allowed Administrative Expense Claims in full, in Cash.

      (6)     The Plan Documents necessary or appropriate to implement the Plan, shall have been executed and shall be in full force and effect.

      (7)     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained.

      (8)     All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

**11.3.   Simultaneous Actions.**   Except as otherwise specified to occur in a specific order, all actions required to be taken on the Effective Date of the Plan, to the extent such actions have actually been taken, shall be deemed to have occurred simultaneously.  In no event shall any action be deemed to have occurred unless the action in fact occurred.

**11.4.   Effect of Failure of Conditions.**   In the event that one or more of the conditions specified in Sections 11.1 or 11.2 of the Plan cannot be satisfied after a reasonable amount of time and the occurrence of such condition is not waived by all the Settlement Parties (as applicable) in their sole and absolute discretion, then the Plan Proponents, with the consent of all the Settlement Parties (not to be unreasonably withheld or delayed), shall file a notice of the failure of the Effective Date with the Bankruptcy Court, at which time the Plan and the Confirmation Order, if conditions precedent to the Confirmation Date have been satisfied, shall be deemed null and void.  If the Effective Date does not occur, then (a) the Confirmation Order, if the conditions precedent to Confirmation Date have been satisfied, shall be vacated, (b) no Distributions under the Plan shall be made, (c) the Debtors and all Holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date and if the conditions precedent to Confirmation Date shall have been met, as though the Confirmation Order had never been entered and the Confirmation Date never occurred, including being subject to any injunctions and automatic stays issued in these Chapter 11 Cases, and (d) the Debtors' obligations with respect to all of the Claims and Interests shall remain unchanged, and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any future case or proceeding involving the Debtors.

**11.5.    Waiver of Conditions Precedent.**  Subject to the consent of all of the Settlement Parties (not to be unreasonably withheld or delayed), the Plan Proponents may waive the occurrence of any of the foregoing conditions specified in Sections 11.1 or 11.2 of the Plan or modify any such conditions precedent.  Except as otherwise set forth herein, any such waiver of a condition precedent may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without formal action other than the filing of a stipulation executed by each of the Settlement Parties.

## SECTION 12.   MEANS FOR IMPLEMENTATION OF THE PLAN

**12.1.    Substantive Consolidation.**  The Plan Proponents seek entry, pursuant to section 105 of the Bankruptcy Code, of a Bankruptcy Court order that, effective upon the Effective Date, substantively consolidates the Estates into a single consolidated Estate and consolidates all of the debts of all of the Debtors, for all purposes associated with Confirmation and substantial consummation.  *See* Disclosure Statement at §§ V(A)(7) and (XI)(B)(2)-(3).  On and after the Effective Date, all Assets and liabilities of the Debtors shall be treated as though they were merged into the Estate of The Weinstein Company Holdings LLC (Case No. 18-10601) for all purposes associated with Confirmation and substantial consummation, and all guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors, subject to all rights, claims, defenses, and arguments available to the Debtors or the Liquidation Trust.

Substantive consolidation will not (i) alter the state of incorporation or state of formation of any Debtor for purposes of determining the applicable law for any of the Causes of Action, (ii) alter or impair the legal and equitable rights of the Liquidation Trustee to prosecute any of the Causes of Action, or (iii) otherwise impair, release, extinguish, or affect any of the Causes of Action or issues raised as a part thereof.

Notwithstanding anything in the Plan or in the Confirmation Order to the contrary, the entry of the Confirmation Order ordering substantive consolidation of the Estates shall not have any effect upon the separate and distinct legal entities as they existed at the time of any prepetition transaction that is the subject of any litigation; *provided*, *however*, that the foregoing provision shall not serve to prejudice or compromise whatever rights, if any, the Debtors or the Liquidation Trustee, as applicable, may have to contend in any pending or future adversary proceeding or other lawsuit that the Debtors or the Liquidation Trustee, as applicable, may prosecute claims for fraudulent conveyance or fraudulent transfer arising from transfers made by one or more of the Debtors based on any theory or doctrine, including any federal, state, or common law alter-ego, veil-piercing, or any other theory or doctrine that would permit or require the disregard of corporate separateness or facts as they existed at the time of the transaction in question.  Moreover, substantive consolidation shall not affect the obligation of each Debtor or the Liquidation Trustee to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 until the earlier of the time that a particular Case has been closed, dismissed, or converted.

Notwithstanding anything to the contrary herein, on the Effective Date, all Claims by a Debtor against any other Debtor will be extinguished without any distributions being made on account of such Claims.

**12.2.    Vesting of Assets.**

**12.2.1.    *Intercompany Claims.*** Except as otherwise may be provided in the Plan, on the Effective Date, all Intercompany Claims of any Debtor against any other Debtor are waived and cancelled.

**12.2.2.    *Interests in the Debtors.*** Except as otherwise may be provided in the Plan, on the Effective Date, the Interests in the Debtors shall be cancelled.

**12.2.3.    *Title to Assets.*** Except as otherwise may be provided in the Plan and Plan Documents, on the Effective Date, title to all assets and properties and interests in property of the Debtors dealt with by the Plan shall vest in the Liquidation Trust, free and clear of all Claims, Liens, and Interests.

**12.2.4.    *Preservation and Assignment of Rights and Causes of Action.*** Except for any Claims that are released pursuant to the Plan, all rights and causes of action accruing to the Debtors pursuant to the Bankruptcy Code or any other statute or any legal theory, and any rights for recovery, existing as of the Effective Date, are hereby expressly assigned to the Liquidation Trust, and on the Effective Date, shall be transferred and assigned to the Liquidation Trust. All of the Debtors' right, title and interest, if any, in and to Claims of contribution and indemnification are hereby preserved to the extent those Claims have not been settled pursuant to the Plan and Plan Support Agreement, or any other settlement agreement between the Debtors and any other Entities.

**12.3.    Setoffs.** Subject to the limitations provided in section 553 of the Bankruptcy Code, the Liquidation Trust may, but shall not be required to, setoff against any Claim and the payments or Distributions to be made pursuant to the Plan in respect of such Claim, any claims, rights, causes of action and liabilities of any nature that the Liquidation Trust may hold against the Holder of such Claim; *provided*, *however*, that neither the failure to effect such a setoff nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trust of any of such claims, rights, causes of action and liabilities that the Liquidation Trust has or may have against the Holder of such Claim.

**12.4.    Corporate Authority.** The entry of the Confirmation Order shall constitute direction and authorization to and of the Debtors to take or cause to be taken any corporate action necessary or appropriate to consummate the provisions of the Plan, including without limitation taking all action to implement the Settlement, and all such actions taken or caused to be taken shall be deemed authorized and approved in all respects without any further action by the members, stockholders, officers and/or directors of the Debtors.

**12.5.    Corporate Action.**

**12.5.1.    *By the Debtors.*** Upon the Effective Date, the terms of all directors, officers, and managers of each Debtor shall be deemed to have expired, all such directors, officers, and managers shall be released of their duties and all actions in furtherance of the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by the Debtors, Holders of Claims or Interests, directors, officers, or managers of the Debtors, or any other Entity, including the transfer of assets of the Debtors to the Liquidation Trust. The directors, officers, and managers of the Debtors, and the Liquidation

Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, release, and other agreements or documents and take such other actions as they may deem, in their sole discretion, necessary or appropriate to effectuate and implement the provisions of the Plan and Plan Documents.  The authorizations and approvals contemplated by this section of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

   **12.5.2.** *Effectuating Documents and Further Transactions.*  The Liquidation Trust shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and Plan Documents.

**12.6. Incorporation of Plan Documents.**  All Plan Documents attached as exhibits to the Plan and/or filed with the Plan Supplement are hereby incorporated into and made a part of the Plan.

## SECTION 13. RETENTION OF JURISDICTION

**13.1. General Jurisdiction.**

   **13.1.1.**  The Bankruptcy Court shall retain the fullest and most extensive jurisdiction permissible and necessary to ensure that the purposes and intent of the Plan are carried out.  Except as otherwise provided in the Plan and Plan Documents, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtors, and to adjudicate and enforce all of the Debtors' causes of action.  Nothing contained herein shall prevent the Liquidation Trustee or the Sexual Misconduct Claims Examiner (as applicable) from taking such action as may be necessary in the enforcement of any cause of action which the Debtors have or may have and which may not have been enforced or prosecuted by the Debtors, which cause of action shall survive confirmation of the Plan and shall not be affected hereto except as specifically provided herein.

   **13.1.2.**  Following the entry of the Confirmation Order, the administration of the Chapter 11 Cases will continue at least until the completion of the transfers contemplated to be accomplished on the Effective Date.  The Bankruptcy Court shall retain jurisdiction for the purpose of classification of any Claim and the re-examination of Claims that have been Allowed temporarily for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claim.  The failure by the Plan Proponents to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the right of the Released Parties, the Liquidation Trustee, or the Sexual Misconduct Claims Examiner to object to or re-examine such Claim in whole or part for any other purpose.

**13.2. Specific Jurisdiction.**  In addition to the foregoing, the Bankruptcy Court shall retain exclusive jurisdiction for the following specific purposes after the Confirmation Date:

   (1) to approve modification of the Plan after the Confirmation Date, pursuant to the provisions of the Bankruptcy Code, the Bankruptcy Rules and the terms and conditions of the Plan and the Plan Support Agreement;

   (2) to correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, the

Plan Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan and the Plan Support Agreement, including the adjustment of the date(s) of performance under the Plan Documents in the event that the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(3)     to hear, determine, and resolve controversies related to the Liquidation Trust and the Sexual Misconduct Claims Fund;

(4)     to assure the performance by the Debtors, the Liquidation Trustee, and the Sexual Misconduct Claims Examiner of their respective obligations to make Distributions under the Plan;

(5)     to enforce and interpret the terms and conditions of the Plan Documents and any documents issued or executed with respect to the Plan;

(6)     to enter such orders or judgments, including, but not limited to, the Releases and Bankruptcy Injunctions (i) as are necessary to enforce the title, rights, and powers of the Debtors, the Liquidation Trustee, the Sexual Misconduct Claims Examiner, and/or the Released Parties, and (ii) as are necessary to enable Holders of Claims to pursue their rights against any Entity that may be liable therefore pursuant to applicable law or otherwise, including but not limited to, Bankruptcy Court orders;

(7)     to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtors, the Liquidation Trust, and the Sexual Misconduct Claims Fund, arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or based upon the period of administration of the Chapter 11 Cases;

(8)     to hear and determine all applications for compensation of professionals and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code;

(9)     to hear and determine any causes of action by, against or involving the Debtors arising during the period from the Petition Date through the Effective Date;

(10)    to hear and determine any causes of action by, against or involving the Debtors, the Liquidation Trust, or the Sexual Misconduct Claims Fund, arising during the period from the Effective Date to the date of the order entering a final decree in the Chapter 11 Cases;

(11)    to hear and determine any cause of action regarding the enforcement of Plan Documents or the transactions contemplated thereby;

(12)   to determine any and all applications or motions pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases, and if need be, liquidate any and all Claims arising therefrom;

(13)   to hear and determine such other matters as may be provided in the Confirmation Order;

(14)   to consider and act on the compromise and settlement of any Claim against or Interest in the Debtors or their Estates including, without limitation, any disputes with respect to the Bar Dates;

(15)   to hear and determine all questions and disputes regarding title to the assets of the Debtors and their Estates, the Liquidation Trust, or the Sexual Misconduct Claims Fund;

(16)   to hear and determine all matters, questions, and disputes with respect to any direct causes of action brought by the Debtors and their Estates, the Liquidation Trust, or the Sexual Misconduct Claims Fund;

(17)   to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Cases;

(18)   to interpret, enforce, and administer the terms of the Settlement and the Plan Support Agreement, only to the extent such Plan Support Agreement does not provide for an alternate forum for resolution;

(19)   to hear and determine any proceeding that involves the validity, application, construction, interpretation, enforceability or enforcement of the Channeling Injunction or the application of section 105(a) of the Bankruptcy Code to the Channeling Injunction.  Notwithstanding the foregoing, nothing herein shall constitute a waiver by any Released Party of the protections granted to them under the Channeling Injunction or consent to the Bankruptcy Court's consideration of any matter;

(20)   to hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which a Debtor may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(21)   to enjoin any actions in violation of the Bankruptcy Injunctions on behalf of the Released Parties;

(22)   To hear and determine all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidation Trust or the Sexual Misconduct Claims Fund after the Effective Date, including, without

express or implied limitation, any claims to recover assets for the benefit of the Estates;

(23)    To enter an order or final decree closing the Chapter 11 Cases; and

(24)    To hear and determine all questions, matters, and disputes with respect to the Plan.

**13.3.    District Court Jurisdiction.**  To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters in Section 13.2, the reference to the Bankruptcy Court in Section 13.2 shall be deemed to be replaced by the United States District Court for the District of Delaware.

**13.4.    Bankruptcy Court Does Not Exercise Jurisdiction.**  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to these Chapter 11 Cases, including with respect to any of the matters set forth in Section 13 of the Plan, nothing herein shall prohibit or limit the exercise of jurisdiction by any other tribunal that has competent jurisdiction with respect to any such subject matter.

**13.5.    Non-Released Claims Jurisdiction.**  All obligations, rights or duties arising under the Insurance Policies with regard to coverage for any Non-Released Claims shall be determined in an appropriate non-bankruptcy forum pursuant to applicable non-bankruptcy law as if the Chapter 11 Cases had never been filed, except with regard to credit for any payments received under the Plan by a Holder of a Non-Released Claim and/or exhaustion of limits under any Insurance Policies by payment of the Settlement Amount.

## SECTION 14.   MISCELLANEOUS PROVISIONS

**14.1.    Binding Effect of Plan.**  The provisions of the Plan shall be binding upon all parties and inure to the benefit of the Debtors, their Estates, and their respective predecessors, successors, assigns, and Representatives.  The terms of the Plan shall be enforceable against the Debtors, their Creditors, Holders of Interests in the Debtors, the Liquidation Trust, the Settlement Parties, and all parties-in-interest.

**14.2.    Reservation of Rights.**  Except as expressly set forth in the Plan and/or the Plan Documents, nothing contained in the Plan shall constitute a waiver of any right, claim, or cause of action of the Debtors or the Liquidation Trust.  Except as set forth in the Plan and/or the Plan Documents, any rights, claims, or causes of action accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including, without limitation, any Avoidance Actions, shall be transferred to the Liquidation Trust; *provided, however,* that the Debtors and the Estates shall not retain and/or transfer any such Avoidance Actions against the Former Representatives.  Pursuant to sections 1123(a)(5) and 1123(b)(3)(B) of the Bankruptcy Code and consistent with Section 6.3 of the Plan, the Liquidation Trustee shall retain and shall be the appointed representative with exclusive authority to pursue, litigate, enforce, adjust and compromise and settle any such rights, claims, or causes of action, as appropriate, in accordance with what is in the best interests of and for the benefit of the Creditors who will receive Distributions from the Liquidation Trust.  Notwithstanding any other provision of the Plan to the

contrary, the Releases and the Bankruptcy Injunctions set forth in Sections 5.8 and 7.1 shall not be deemed or construed to satisfy, release or enjoin Claims by any Entity against the Sexual Misconduct Claims Fund for payment of the Sexual Misconduct Claims in accordance with the Sexual Misconduct Claims Fund Procedures. Nothing contained in the Plan shall be deemed or construed to constitute a waiver of any right or claim of a Released Party to enforce or assert any defense under any Plan Document.

**14.3.    No Admission of Liability.**  The provisions of this Plan and the Plan Support Agreement shall not constitute an admissions that any Released Party or Harvey Weinstein is admitting any wrongdoing, liability, fault or violation of law and no Insurance Company is admitting coverage under any policy of insurance.

Notwithstanding anything in the Plan or Confirmation Order to the contrary, no provision of the Plan or the Plan Documents, including without limitation any exhibits and attachments thereto, or of any order, opinion, finding, statement or ruling in these Chapter 11 Cases, including without limitation any provision that purports to be preemptory or supervening, shall impair, release, waive, enlarge or in any way affect any obligations, rights, duties, claims or defenses of the Insurance Companies, the Debtors, the Former Representatives or any other person or entity claiming rights to coverage under any Insurance Policies, with regard to any Non-Released Claims.

Further, the Sexual Misconduct Claims Examiner's determination and information or documents related thereto with respect to a Sexual Misconduct Claim (i) shall not be offered, introduced, admitted, referenced, discussed or otherwise disclosed to the judge, jury (any mediator(s) or arbitrator(s)) or any other finder of fact in any non-bankruptcy lawsuit or proceeding concerning any Non-Released Claim for any reason, except by a Released Party if necessary to prove entitlement to a credit against any amounts owed in connection with a judgment, award, decree or other order with respect to any such Non-Released Claim against any of the Released Parties, (ii) shall not have, and shall not be argued by a Holder of Non-Released Claims to have, preclusive, binding, res judicata, estoppel, or preemptive effect of any kind whatsoever with respect to the amount of any such Holder's Non-Released Claims, and (iii) shall not constitute an adjudication, judgment, trial, hearing on the merits, settlement, resolution of or otherwise establish any parties' liability or obligation for any Non-Released Claims.

Rather, the Debtors, the Former Representatives and Harvey Weinstein deny all allegations and Claims asserted against them; this Plan and the Plan Support Agreement are without prejudice to any coverage position taken or that may be taken by any Insurance Company, any Former Representative, or Harvey Weinstein; and this Plan and the Settlement embodied herein is put forth to avoid the risk, burden, and expense of litigation.

**14.4.    Dissolution of the Committee.**  On the Effective Date, the Committee shall thereupon be released of and from all further authority, duties, responsibilities, and obligations arising from and based upon the Chapter 11 Cases, and the Committee shall be deemed dissolved; *provided*, *however*, that (a) in the event that the Effective Date occurs prior to the Confirmation Order becoming a Final Order, the Committee may, at its option, continue to serve and function for the purpose of participating in any appeal of the Confirmation Order until such time as the Confirmation Order becomes a Final Order, and (b) if the Effective Date occurs prior to the conclusion of any outstanding litigation or adversary proceedings in the Chapter 11 Cases or prior

to the entry of a Final Order with respect to final fee applications of Bankruptcy Professionals, the Committee may, at its option, continue to serve until a Final Order is entered with respect to such proceedings and/or applications.

**14.5.    Exculpation and Release.**  The Exculpated Parties shall not have or incur, and are hereby released from, any claim, obligation, cause of action, and/or liability, in each case that arise from facts or circumstances that took place in whole or in part between the Petition Date and the Effective Date, to any Holder of a Claim, Interest, or any other Entity or any of their respective successors, assigns or Representatives for any act or omission with respect to or arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence, fraud or willful misconduct or any obligations that they have under or in connection with the Plan, the Plan Documents, or any transactions contemplated thereby, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**14.6.    Governing Law.**  Unless a rule of law or procedure is governed by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and the Plan Documents, except as otherwise expressly provided in the Plan Documents.

**14.7.    Notice.**  Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing, and unless otherwise expressly provided herein, shall be deemed to have been duly given and made when served by (i) certified mail, return receipt request or (ii) by overnight delivery service, and (iii) confirmed by email service, to be addressed as follows:

> To Debtors:
>
> Mark D. Collins (No. 2981)
> Paul N. Heath (No. 3704)
> Zachary I. Shapiro (No. 5103)
> RICHARDS, LAYTON & FINGER, P.A.
> 920 N. King Street
> Wilmington, Delaware 19801
> Phone:  (302) 651-7700
> Facsimile:  (302) 651-7701
>
> and

Paul H. Zumbro (admitted *pro hac vice*)
Lauren A. Moskowitz  (admitted *pro hac vice*)
Salah M. Hawkins (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

To Committee:

James I. Stang (CA Bar No. 94435)
Robert J. Feinstein (NY Bar No. 1767805)
Debra I. Grassgreen (CA Bar No. 169978)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400

**14.8.   Exemption from Taxes.**   Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any equity security under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or with respect to, the Plan shall be exempt from all transfer and recordation taxes, stamp taxes or similar taxes.

**14.9.   Plan Supplement.**   Any Plan Supplement (and amendments thereto) filed by the Plan Proponents shall be deemed an integral part of the Plan and shall be incorporated by reference as if fully set forth herein.   Any and all exhibits, lists or schedules referred to herein or in the Disclosure Statement but not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the deadline established by the Bankruptcy Court for filing and service of objections to the Plan.

**14.10.   Severability.**   If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable under applicable law, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent permitted by applicable law, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted, *provided*, *however*, that any such altered form must be consistent with the Plan Support Agreement.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order will constitute a judicial

determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.11.  Standing of Released Parties.**  Each of the Released Parties shall have standing to seek relief from the Bankruptcy Court or any court of competent jurisdiction for purposes of enforcement of the Channeling Injunction or other Injunction or releases under the Plan and the Plan Support Agreement to the extent that any act occurs or is taken that is contrary to the provisions of, or would interfere with, restrict, defeat, nullify, violate or otherwise limit the protections afforded the Released Party through the Channeling Injunction or other Injunction or releases under the Plan and the Plan Support Agreement.

[*remainder of page intentionally left blank*]

Dated: January 20, 2021

Respectfully submitted,

*For the Debtors*

By: _____
Name: Ivona Smith
Title:   Director, The Weinstein Company
         Holdings, LLC

The Weinstein Company Holdings LLC,
a Delaware Limited Liability Company

The Weinstein Company LLC,
a Delaware Limited Liability Company

Avenging Eagle SPV, LLC,
a Delaware Limited Liability Company

Branded Partners LLC,
a Delaware Limited Liability Company

Check Hook LLC,
a Delaware Limited Liability Company

CTHD 2 LLC,
a Delaware Limited Liability Company

Cues TWC (ASCAP), LLC,
a Delaware Limited Liability Company

Current War SPV, LLC,
a Delaware Limited Liability Company

DRT Films, LLC,
a Delaware Limited Liability Company

DRT Rights Management LLC,
a Delaware Limited Liability Company

FFPAD, LLC,
a Delaware Limited Liability Company

HRK Films, LLC,
a Delaware Limited Liability Company

InDirections LLC,
a Delaware Limited Liability Company

InteliPartners LLC,
a Delaware Limited Liability Company

ISED, LLC,
a Delaware Limited Liability Company

MarcoTwo, LLC,
a Delaware Limited Liability Company

One Chance LLC,
a Delaware Limited Liability Company

PA Entity 2017, LLC,
a Delaware Limited Liability Company

Paddington 2, LLC,
a Delaware Limited Liability Company

PS Post LLC,
a Delaware Limited Liability Company

Scream 2 TC Borrower, LLC,
a Delaware Limited Liability Company

Small Screen Productions LLC,
a Delaware Limited Liability Company

Small Screen Trades LLC,
a Delaware Limited Liability Company

Spy Kids TV Borrower, LLC,
a Delaware Limited Liability Company

Team Players LLC,
a Delaware Limited Liability Company

The Actors Group LLC,
a Delaware Limited Liability Company

The Giver SPV, LLC,
a Delaware Limited Liability Company

Tulip Fever LLC,
a Delaware Limited Liability Company

TWC Borrower 2016, LLC,
a Delaware Limited Liability Company

TWC Domestic LLC,
a Delaware Limited Liability Company

TWC Fearless Borrower, LLC,
a Delaware Limited Liability Company

TWC Library Songs (BMI), LLC,
a Delaware Limited Liability Company

TWC Loop LLC,
a Delaware Limited Liability Company

TWC Mist, LLC,
a Delaware Limited Liability Company

TWC Polaroid SPV, LLC,
a Delaware Limited Liability Company

TWC Production-Acquisition Borrower
2016, LLC,
a Delaware Limited Liability Company

TWC Production, LLC,
a Delaware Limited Liability Company

TWC Replenish Borrower, LLC,
a Delaware Limited Liability Company

TWC Short Films, LLC,
a Delaware Limited Liability Company

TWC Untouchable SPV, LLC,
a Delaware Limited Liability Company

TWC Waco SPV, LLC,
a Delaware Limited Liability Company

Twenty O Five Holdings, LLC,
a Delaware Limited Liability Company

W Acquisition Company LLC,
a Delaware Limited Liability Company

WC Film Completions, LLC,
a Delaware Limited Liability Company

Weinstein Books, LLC,
a Delaware Limited Liability Company

Weinstein Development LLC,
a Delaware Limited Liability Company

Weinstein Global Funding Corp.,
a Delaware Corporation

Weinstein Global Film Corp.,
a Delaware Corporation

Weinstein Productions LLC,
a Delaware Limited Liability Company

Weinstein Television LLC,
a Delaware Limited Liability Company

WTV Guantanamo SPV, LLC,
a Delaware Limited Liability Company

WTV JCP Borrower 2017, LLC,
a Delaware Limited Liability Company

WTV Kalief Browder Borrower, LLC,
a Delaware Limited Liability Company

WTV Scream 3 SPV, LLC,
a Delaware Limited Liability Company

WTV Yellowstone SPV, LLC,
a Delaware Limited Liability Company

*Counsel to the Debtors*

By: _____
Name:  Paul H. Zumbro
Title:    Partner, Cravath, Swaine & Moore LLP

Paul H. Zumbro (admitted *pro hac vice*)
George E. Zobitz (admitted *pro hac vice*)
Lauren A. Moskowitz  (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

            -and-

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

*For the Official Committee of Unsecured Creditors*

By: _____

Name: Louisette Geiss

Title: Committee Co-Chair

By: _____

Name: Lori Wentworth Odierno,

       William Morris Endeavor

       Entertainment

Title: Committee Co-Chair

*Counsel to The Official Committee of Unsecured Creditors*

By: _____

      James I. Stang (CA Bar No. 94435)

      Robert J. Feinstein (NY Bar No. 1767805)

      Debra I. Grassgreen (CA Bar No. 169978)

      Colin R. Robinson (DE Bar No. 5524)

      Jason Rosell (CA Bar No. 269126)

      PACHULSKI STANG ZIEHL

      & JONES LLP

      919 North Market Street, 17th Floor

      P.O. Box 8705

      Wilmington, DE  19899 (Courier 19801)

      Telephone: 302-652-4100

      Facsimile:  302-652-4400

## **EXHIBITS**

Exhibit 1:        Definitions

Exhibit 2:        List of Debtors

Exhibit 3:        Plan Support Agreement

Exhibit 4:        Sexual Misconduct Claims Fund Procedures

## **SCHEDULES**

Schedule 1:      Released Professionals

Schedule 2:      Insurance Companies' Funding Amounts

## EXHIBIT 1

### DEFINITIONS

In addition to other words and terms defined elsewhere in the Plan Documents, the terms below shall have the respective meanings specified below:

**1.1    Additional Insured:**   To the extent permissible by law:   (i) the Debtors' predecessors, all of each Debtor's past and present subsidiaries and the predecessors and successors of such subsidiaries, their past and present affiliates and joint ventures and their predecessors and successors, and all of their past, present and future assigns; (ii) any other current or former affiliate of the Debtors, including any corporations that have been acquired by, merged into or combined with the Debtors, their predecessors, or past and present subsidiaries, affiliates successors and assigns; and (iii) any and all entities named as insureds or other insureds whether specifically listed or listed under a special endorsement, or that are otherwise named or claimed to be insured under the Insurance Policies, and those entities' directors, officers, agents and employees.

**1.2    Administrative Expense Claim:**  Any (i) cost or expense of administration of the Chapter 11 Cases under section 503(b) of the Bankruptcy Code including, but not limited to: (a) any actual and necessary postpetition cost or expense of preserving the Estates or operating the businesses of the Debtors; (b) any payment to be made under the Plan, as the case may be, to cure a default on an assumed executory contract or unexpired lease; (c) any postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by one or more of the Debtors in the ordinary course of business; (d) any valid and allowed reclamation claims in accordance with section 546(c) of the Bankruptcy Code; (e) compensation or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court under sections 328, 330(a) or 331 of the Bankruptcy Code; (f) any Claim for compensation or reimbursement of expenses relating to services rendered in making a substantial contribution in the Chapter 11 Cases under sections 503(b)(3), (4) or (5) of the Bankruptcy Code; (g) all Claims for adequate protection payments authorized in connection with any debtor-in-possession credit facility; and (h) Section 503(b)(9) Claims; and (ii) any United States Trustee fee or charge assessed against any of the Estates under 28 U.S.C. § 1930.

**1.3    Affiliate:** As to any specified Entity: (i) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by, or is under common control with, the specified Entity, and (ii) any Entity that is an "affiliate" (within the meaning of Bankruptcy Code § 101(2)) of the specified Entity.  As used in clause (i) of this definition, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an Entity (whether through ownership of equity of that Entity, by contract, or otherwise).

**1.4    Allianz Insurance Companies:**  The American Insurance Company and Fireman's Fund Insurance Company and each of their respective affiliates and successors.

**1.5    Allowed:**  With respect to any Claim other than an Administrative Expense Claim, a Disputed Claim or a Sexual Misconduct Claim, (i) any Claim that is specifically designated as Allowed under the Plan, (ii) any Claim proof of which was timely filed with the Bankruptcy Court or its duly appointed claims agent, or, in compliance with any order of the Bankruptcy Court regarding the filing of a proof of claim, with respect to which either no objection to the allowance thereof has been filed within the applicable period of limitation fixed by either the Plan or Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or the Claim has been allowed by a Final Order (but only to the extent so allowed), or (iii) any Claim that has been, or hereafter is, listed in the schedules as liquidated in amount and not disputed or contingent; *provided*, *however*, that notwithstanding the foregoing, with respect to a Sexual Misconduct Claim, the Sexual Misconduct Claims Fund Procedures shall govern the determination as to whether or not such Claims constitute Allowed Claims for purposes of Distribution under the Plan, but not for purposes of voting on the Plan.  Allowed Claims shall not, for purposes of Distribution under the Plan, include:  (a) for any Claim arising prior to the Petition Date, interest on such Claim accruing from or after the Petition Date; or (b) any Non-Compensatory Damages.

With respect to any Claim that is asserted to constitute an Administrative Expense Claim, (i) a Claim that represents an actual and necessary expense of preserving the Estate or operating the business of the Debtors, to the extent such Claim is determined by the Debtors to constitute an Administrative Expense Claim; (ii) other than with respect to a Claim of a Bankruptcy Professional, a Claim that has been Allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is determined pursuant to a Final Order to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; or (iii) that represents a Claim of a Bankruptcy Professional, to the extent such Claim is allowed by a Final Order of the Bankruptcy Court under section 330 of the Bankruptcy Code.

**1.6    Assets:**  (i) All real or personal property of the Debtors (including as debtors in possession) of any nature, including, without limitation, any Cash, real property, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, works in process, accounts receivable, tax refunds, chattel paper, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action (including Avoidance Actions), and any other general intangibles of any nature whatsoever, including, without limitation, "property of the estate" pursuant to section 541 of the Bankruptcy Code; and (ii) proceeds, products, rents and profits of all of the foregoing.

**1.7    Avoidance Actions:**  Any and all pending or possible actions, proceedings, accounts, controversies, agreements, promises, claims and rights of each Debtor and its Estate to (i) avoid or recover a transfer of property of any of the Debtors' Estates or an interest of any of the Debtors in property or (ii) subordinate any Claim against or Interest in any of the Debtors, including, without limitation, actions arising under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, whether or not litigation has been commenced with respect to such cause of action as of the Effective Date.

**1.8    Ballot:**  A ballot approved by the Bankruptcy Court in the Chapter 11 Cases to be distributed to Holders of impaired Claims, for acceptance or rejection of the Plan.

**1.9    Bankruptcy Code:**  Title 11 of the United States Code.

**1.10    Bankruptcy Court:**  The United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over these Chapter 11 Cases or any proceeding within, or appeal of an order entered in, these Chapter 11 Cases.

**1.11    Bankruptcy Injunctions:**  The Plan Injunction provided for in Section 7.3 of the Plan and the Channeling Injunction provided for in Section 5.8 of the Plan.

**1.12    Bankruptcy Professional:**  Any Entity (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code, or (ii) who wishes to apply to the Bankruptcy Court for compensation and reimbursement of expenses pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.13    Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the local rules of the Bankruptcy Court.

**1.14    Bar Date(s):**  The date(s) fixed by order(s) of the Bankruptcy Court by which Entities required by such order to file a proof of claim must file a proof of claim or be forever barred from asserting such Claim against the Debtors or their property and from voting on the Plan and/or sharing in distributions hereunder.

**1.15    Business Day:**  Any day other than Saturday, Sunday, or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**1.16    Cash:**  United States currency, a check drawn on a U.S. domestic bank, or a wire transfer of funds.

**1.17    Cash Reserves:**  The Contingent Claims Cash Reserve and the Disputed Claims Cash Reserve.

**1.18    Causes of Action:**  Any claim (other than the Claims against the Debtors), cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and/or franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  A Cause of Action also includes without limitation:  (a) any right of setoff, counterclaim, or recoupment and/or any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action.

**1.19    Channeling Injunction:**  The permanent injunction provided for in Section 5.8 of the Plan and to be issued pursuant to the Confirmation Order with respect to Sexual Misconduct Claims.

**1.20    Chapter 11 Cases:**  The jointly administered cases under the Bankruptcy Code, presently pending in the Bankruptcy Court and captioned *In re Weinstein Company Holdings*, LLC, Case No. 18-10601.

**1.21    Chubb Insurance Companies:**  Federal Insurance Company; Great Northern Insurance Company; Westchester Fire Insurance Company; Pacific Indemnity Company; Chubb Indemnity Insurance Company; Executive Risk Indemnity Inc.; Chubb National Insurance Company; and ACE American Insurance Company and each of their respective affiliates and successors.

**1.22    Claim:**  Shall include, without limitation, any and all past, present or future claims, cross-claims, counterclaims, third-party claims, contribution claims, indemnification claims, rights, causes of action, orders, liabilities, notices of liability or potential liability, arbitrations, actions, suits, damages, demands, disputes, obligations, judgments, duties, defenses, liens, administrative proceedings, costs, expenses, attorneys' (and other) fees, matters, requests or proceedings of any kind or nature whatsoever and any claim within the definition of "claim" in section 101(5) of the Bankruptcy Code, in each case that arise from facts or circumstances that took place in whole or in part on or after June 30, 2005, regardless of where arising or where brought, whether at law, equity, contract, statute, or otherwise direct, indirect, or derivative, known or unknown, actual or alleged, asserted or not asserted, suspected or unsuspected, anticipated or unanticipated, fixed or contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, domestic or foreign, disclosed or undisclosed, accrued or unaccrued, apparent or unapparent, existing under any federal, state, local, foreign, tribal, common law, ordinance, statute or regulation, which has been, could have been, or may be asserted by or on behalf of any person or entity against the Debtors, their predecessors, successors, assigns, or any current or former Affiliate of any of the foregoing, or any other Released Party or Harvey Weinstein, whether seeking damages (including compensatory, punitive or exemplary damages and all other potential elements of recovery or relief) or equitable, mandatory, injunctive, or any other type of relief, irrespective of the expiration of any applicable statute of limitations.

**1.23    Class:**  A category of Claims or Interests pursuant to a Plan, as such term is used and described in section 1122 of the Bankruptcy Code.

**1.24    Class . . . Claim / Interest:**  The specific Class into which Claims or Interests are classified pursuant to the Plan.

**1.25    Committee:**  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

**1.26    Confirmation:**  Approval of the Plan by the Bankruptcy Court, pursuant to section 1129 of the Bankruptcy Code.

**1.27    Confirmation Date:**  The date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.28    Confirmation Hearing:**  The hearing to be held before the Bankruptcy Court by which the Plan Proponents will seek Confirmation of the Plan.

**1.29    Confirmation Order:**  The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, which will contain the Channeling Injunction and Releases.

**1.30    Contingent Claims:**  A Claim that is a contingent and/or unliquidated Claim. Contingent Claims shall not include Sexual Misconduct Claims.

**1.31    Contingent Claims Cash Reserve:**  The Cash deposited by the Liquidation Trustee in one or more segregated accounts on the Effective Date, which amount shall be the good faith estimate of the total Distributions to be made on account of all Contingent Claims against the Debtors as of such date.  The Debtors or the TWC Liquidation Trustee, as applicable, shall seek Bankruptcy Court approval of such Contingent Claims Cash Reserve on the Effective Date or as soon thereafter as practicable.

**1.32    Contract and Commercial Cases:**  Includes, without limitation, (i) *Donald P. Borchers v. The Weinstein Company, LLC, et al.*, Case No. 2:  17-cv-6263 (C.D. Cal.); (ii) *Lesia Anson v. Harvey Weinstein et al.*, Case No. 2:  17-cv-08360 (C.D. Cal.); (iii) *Terence Williams v. Bob Weinstein, et al.*, Case No. 2:  18-cv-10776 (E.D. Mich.); (iv) *Tensor Law P.C. v. Harvey Weinstein et al.*, Case No. SC128650 (L.A. Super. Ct.); (v) *EMJAG Productions, Inc., et al. v. The Weinstein Company LLC*, Case No. BC 685511 (L.A. Super. Ct.); (vi) *AI International Holdings (BVI), Limited v. Harvey Weinstein et al.*, Case No. 656864-2017E (N.Y. Sup. Ct.); (vii) *Entertainment One Films Canada, Inc. v. Weinstein Global Film Corp. et al.*, Case No. BC692352 (L.A. Super. Ct.); (viii) *Brad Weston et al. v. The Weinstein Company*, Case No. BC679011 (L.A. Super. Ct.); (ix) *Frank Gil v. Weinstein Live Entertainment LLC, et al*., Case No. 653555/2019 (N.Y. Sup. Ct.); and (x) *Sartraco et al v. Robert Weinstein, et al*., Case No. 19 cv- 00448 (Cal. Super. Ct.).

**1.33    Contract and Commercial Claim(s):**  Any Claim arising from, connected to or related to the Contract and Commercial Cases.

**1.34    Creditor:**  A "creditor," as defined in section 101(10) of the Bankruptcy Code.

**1.35    Debtors**:  The Weinstein Company Holdings LLC and fifty-four (54) affiliated companies.  A table identifying each Debtor, its chapter 11 bankruptcy case number, and the last four digits of its federal tax identification number is provided in Exhibit 2 of the Plan.

**1.36    Disclosure Statement:**  The Disclosure Statement dated November 17, 2020, filed under section 1125 of the Bankruptcy Code in the Chapter 11 Cases with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

**1.37    Disputed Claim:**  A Claim which has been (i) "scheduled" as disputed or (ii) subject to an objection filed within the applicable period of limitation fixed by either the Plan or the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; *provided*, *however*, regardless of whether an objection has been filed to such Claims, all Sexual Misconduct Claims shall be excluded from the definition of Disputed Claim.

**1.38    Disputed Claims Cash Reserve:**  The Cash deposited by the Liquidation Trustee or in one or more segregated accounts on the Effective Date which amount shall be the good faith estimate of the total Distributions to be made on account of all Disputed Claims, determined by the Liquidation Trustee.

**1.39    Distributable Cash:**  All Liquidation Trust Assets reduced to Cash net of all expenses and costs of operating or effectuating the duties of the Liquidating Trust and establishing any reserves as the Liquidation Trustee may determine is necessary pursuant to the terms of this Plan and the Liquidation Trust Agreement.

**1.40    Distribution(s):**  The payment or distribution under the Plan of property or interests in property of the Debtors to the Holders of Allowed Claims, to the Liquidation Trust, and to the Sexual Misconduct Claims Fund, as applicable.

**1.41    Effective Date:**  The first Business Day after the date on which all of the conditions precedent to the effectiveness of the Plan have been satisfied or waived in accordance with the terms of the Plan, or, if a stay of the Confirmation Order is in effect on such date, the first Business Day after the expiration, dissolution, or lifting of such stay.

**1.42    Entity:**  Any person, individual, corporation, partnership, firm, limited liability company, association, joint stock company, joint venture, estate, trust, business trust, unincorporated organization, government or any political subdivision thereof, the United States Trustee, or other person or entity.

**1.43    Estate:**  As to each Debtor, the estate created for such Debtor under section 541 of the Bankruptcy Code upon the commencement of its Chapter 11 Case.

**1.44    Exculpated Parties:**  Each of (i) the Debtors, and any of their respective successors or assigns, and any of their Representatives; and (ii) the Committee, its members and any of their respective Representatives.

**1.45    File, Filed, or Filing:**  Shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

**1.46    Final Order:**  An order of a court:  (i) as to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for reargument, rehearing or reconsideration has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for reargument, rehearing or reconsideration shall then be pending; or (ii) in the event that an appeal, writ of certiorari, or other appellate review or reargument, rehearing or reconsideration thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed from which writ of certiorari or other appellate review or reargument, rehearing or reconsideration was sought, and the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for reargument, rehearing or reconsideration shall have expired or such appeal has been withdrawn with prejudice; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

**1.47    Foreign Court Approval Orders:** Those orders of any courts of the United Kingdom, Ireland and Canada necessary to aid the implementation of the Channeling Injunction in the United Kingdom, Canada and Ireland (to the extent determined by certain of the Settlement Parties that such orders are necessary), which orders shall be Final Orders that are reasonably satisfactory to the Settlement Parties seeking such orders.

**1.48    Former Representatives:** Robert Weinstein, Tarak Ben Ammar, James Dolan, Frank Gil, David Glasser, Richard Koenigsberg, Marc Lasry, Lance Maerov, Jeff Sackman, Tim Sarnoff, Barbara Schneeweiss, Paul Tudor Jones, and Dirk Ziff. ***The definition of Former Representatives does not include Harvey Weinstein.***

**1.49    Former Representatives Defense Costs:** The $9,743,052.00 to be paid by the Insurance Companies for the Former Representatives costs in connection with the defense of the applicable cases.

**1.50    General Unsecured Claim:** An unsecured Claim against any Debtor and any claims in connection with the rejection or termination of executory contracts and unexpired leases, ***but excluding*** any Administrative Expense Claims, Priority Claims, Secured Claims, Sexual Misconduct Claims, Other Tort Claims, Intercompany Claims, and Interests.

**1.51    Global Escrow Agent:** Epiq Class Action & Claims Solutions, Inc. in its role distributing the Settlement Amount in accordance with the terms of the Plan.

**1.52    Holder:** The holder of a Claim against the Debtors or the Holder of an Interest in the Debtors.

**1.53    Impaired:** When used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.54    Initial Administrative Claims Bar Date:** February 15, 2019, the filing deadline for Administrative Expense Claims that existed from the Petition Date through December 31, 2018.

**1.55    Initial Bar Date Order:** *Order (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing Deadlines for Filing Requests for Payment of Postpetition Administrative Expenses, (III) Approving Form and Notice Thereof, and (IV) Granting Related Relief* of the Bankruptcy Court entered on December 27, 2018 (Dkt. No. 1890).

**1.56    Insurance Companies:** Shall mean National Union Fire Insurance Company of Pittsburgh, Pa.; The American Insurance Company; Fireman's Fund Insurance Company; Federal Insurance Company; Great Northern Insurance Company; Westchester Fire Insurance Company; Pacific Indemnity Company; Chubb Indemnity Insurance Company; Executive Risk Indemnity Inc.; Chubb National Insurance Company; ACE American Insurance Company, on behalf of themselves and their subsidiaries, Affiliates, parents, predecessors, or successors and (ii) any other insurance company, reinsurer, insurance broker or syndicate insurance broker, guaranty association, liquidator, or any other Entity with actual or potential obligation or liability to the Debtors based on any insurance policy issued to the Debtors; *provided*, *however*, Insurance Companies shall not include AIG Europe Limited and AIG Europe SA.

**1.57    Insurance Policies:**  Any insurance policy issued by an Insurance Company.

**1.58    Intercompany Claim:**  Any Claim by a Debtor against another Debtor.

**1.59    Interest:**  The interest, as that term is defined in section 101(17) of the Bankruptcy Code, of any Entity who holds an equity security in the Debtors no matter how held, including, but not limited to, issued and outstanding shares of common stock, preferred stock, stock options, warrants, membership interests, or other evidence of interests in securities of the Debtors.

**1.60    Internal Revenue Code:**  The Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

**1.61    IRS:**  The United States of America's Internal Revenue Service.

**1.62    Judd Case:**  The case commenced by Ashley Judd in the Central District of California, captioned *Ashley Judd v. Harvey Weinstein*, Case No. 2:18-cv-05724.

**1.63    Lien:**  A "lien" as defined in section 101(37) of the Bankruptcy Code.

**1.64    Liquidated Value:**  The dollar value of the Point Award for an Allowed Sexual Misconduct Claim as determined in accordance with the Sexual Misconduct Claims Fund Procedures.

**1.65    Liquidation Trust:**  The Liquidation trust established by Section 6 of the Plan pursuant to section 105(a) of the Bankruptcy Code and the Liquidation Trust Agreement.

**1.66    Liquidation Trust Agreement:**  The trust agreement establishing and delineating the terms and conditions of the Liquidation Trust.

**1.67    Liquidation Trust Assets:**  The Liquidation Trust Settlement Payment and all other Assets of the Estates.

**1.68    Liquidation Trust Beneficiaries:**  The Holders of Allowed Claims against the Debtors under the Plan, but not including the Holders of Sexual Misconduct Claims.

**1.69    Liquidation Trust Documents:**  The Liquidation Trust Agreement and all documents, attachments and exhibits thereto, and any amendments thereto made in accordance with the Bankruptcy Code, and which aid in effectuating the Liquidation Trust, which documents, attachments, and exhibits shall be filed with the Bankruptcy Court.

**1.70    Liquidation Trust Expense Reserve:**  The reserve established pursuant to the Plan by the Liquidation Trustee to hold funds as are reasonably necessary for the Liquidation Trust to satisfy the expenses of administering the Liquidation Trust, including, without limitation, the winding down and closing of the Debtors' Chapter 11 Cases, the Liquidation Trustee's reasonable professional fees and expenses in respect of the claims reconciliation process, the liquidation of

Liquidation Trust Assets, the prosecution, negotiation and settlement of any causes of action with respect thereto, and the making of Distributions by the Liquidation Trustee under the Plan.

**1.71    Liquidation Trust Settlement Payment:**  The sum of $8,407,305.00 to be paid by the Insurance Companies to the Liquidation Trust in accordance with the terms of the Plan.

**1.72    Liquidation Trustee:**  The individual initially selected by the trade claimant members of the Committee to act as trustee of the Liquidation Trust pursuant to the terms of the Liquidation Trust Documents to administer the Liquidation Trust, and any successors thereto.

**1.73    McGowan Case:**  The case commenced by Rose McGowan in the Central District of California captioned *Rose McGowan v. Harvey Weinstein et. al.*, Case No. 2:19-cv-09105-ODW-GJS.

**1.74    Non-Compensatory Damages:**  Any and all damages awarded by a court of competent jurisdiction that are penal or exemplary in nature, including, without limitation, any fine, penalty, forfeiture, attorneys' fees (to the extent such attorneys' fees are punitive or exemplary in nature), or multiple, punitive, exemplary, vindictive, imaginary, or presumptive damages based upon, arising from, or relating to any cause of action whatsoever (including, without limitation, violation of law, personal injury, or wrongful death, whether secured or unsecured, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foresee or unforeseen, then existing or thereafter arising in law, equity or otherwise).

**1.75    Non-Debtor Additional Affiliates:**  The Debtors' former non-debtor affiliates, including Scary Movie 4 LLC; Derailed SPV, LLC; Mrs. Henderson Presents SPV, LLC; The Matador SPV, LLC; Breaking and Entering SPV, LLC; Come Drink With Me SPV, LLC; SPV Film Distribution LLC; Butler Films LLC; Kristy Films LLC; and TWC Gold SPV, LLC.

**1.76    Non-Debtor Affiliates:**  The Debtors' non-debtor affiliates, including The Weinstein Company (UK) Ltd.; Tulip Fever Films Limited; Current Films UK Limited; and MarcoThree, LLC.

**1.77    Non-Debtor Entities:**  All companies (other than the Debtors) that Harvey Weinstein was employed by, worked for, or held a position as an officer or director of between January 1, 1979 and October 1, 2017, as well as each of their parents, subsidiaries and Affiliates (including, without limitation, The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Miramax, LLC, Miramax Film Corporation and Miramax Film NY, LLC), or any of their respective equity holders or members, any of their Affiliates or any other independent contractor, current or former members of the board of representatives of the Non-Debtor Entities; *provided*, *however*, that Non-Debtor Entities shall not include (a) the Four Seasons Hotel Limited and Burton Way Hotels LLC, defendants in *Paz De La Huerta v. Harvey Weinstein et. al.*, Case No. 19-cv-02183 (C.D. Cal.)) or (b) the Four Seasons Hotel Limited, Burton Way Hotels LLC and Burton Way Hotels Ltd., defendants in *Paz De La Huerta v. Harvey Weinstein et. al.*, Case No. 18SCTV04723 (L.A. Sup. Ct.).

**1.78    Non-Released Claim**: A Claim against a Non-Released Party for which a full release is not given to such Non-Released Party under the terms of the Plan, including Sexual

Misconduct Claims against Harvey Weinstein held by Holders of Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein.

**1.79    Non-Released Party:**  See Section 1.99 below.

**1.80    NYOAG:**  The Office of the New York Attorney General.

**1.81    NYOAG Lawsuit:**  The lawsuit filed by the NYOAG in the Supreme Court of the State of New York, County of New York on behalf of the People of the State of New York in Case No. 0450293/2018 (N.Y. Sup. Ct.).

**1.82    Opt-In GUCs:**  General Unsecured Claims held by Holders of such Claims who vote in favor of the Plan and do not affirmatively opt out of the Third-Party Releases.

**1.83    Opt-Out GUCs:**  General Unsecured Claims held by Holders of such Claims who (i) vote in favor of the Plan, but affirmatively opt out of the Third-Party Releases; (ii) vote against the Plan; or (iii) fail to return a ballot.

**1.84    Other Priority Claim:**  A Priority Claim other than a Priority Tax Claim.

**1.85    Other Tort Claim:**  A Tort Claim that is not a Sexual Misconduct Claim.

**1.86    Permissible Investments:**  (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) demand deposits or certificates of deposit at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, or (d) such other investments as the Bankruptcy Court may approve from time to time.

**1.87    Petition Date:**  March 19, 2018, the date on which the Debtors commenced their Chapter 11 Cases in the Bankruptcy Court.

**1.88    Plan Documents:**  The Plan, including all exhibits annexed thereto and made a part hereof, the Disclosure Statement, the Plan Supplement, and all documents, attachments and exhibits thereto, including, but not limited to, the Plan Support Agreement, the Liquidation Trust Documents, the Sexual Misconduct Claims Fund Procedures and any amendments thereto made in accordance with the Bankruptcy Code, and which aid in effectuating the Plan, which documents, attachments, and exhibits shall be filed with the Bankruptcy Court.

**1.89    Plan Injunction:**  The injunction issued pursuant to Section 7.3 of the Plan.

**1.90    Plan Proponents:**  The Debtors and the Committee.

**1.91    Plan Releases:**  The releases specified in Section 7.2 of the Plan.

**1.92    Plan Supplement:**  The compilation of documents or forms of documents specified in the Plan, including, without limitation, any exhibits to the Plan not included herewith, each in form and substance acceptable to the Debtors.

**1.93    Plan Support Agreement:**  The agreement executed by the Settlement Parties on October 19, 2020 and attached hereto as Exhibit 3.

**1.94    Point Award:**  The number of points awarded pursuant to the Sexual Misconduct Claims Fund Procedures to a Holder of a Sexual Misconduct Claim on account of an Allowed Sexual Misconduct Claim.

**1.95    Priority Claim:**  Any Claim against a Debtor to the extent such claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim.

**1.96    Priority Tax Claim:**  A Claim against the Estates entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.97    Pro Rata:**  The proportion that the Allowed Claim or Interest in a particular Class bears to the aggregate amount of (a) Allowed Claims or Allowed Interests in such Class as of the date of determination, plus (b) Disputed Claims or Disputed Interests in such Class as of the date of determination, in their aggregate face amounts or such other amount:  (i) as calculated by the Debtors, the Liquidation Trustee, or the Sexual Misconduct Claims Examiner (as applicable) on or before the date of any such Distribution, (ii) as determined by an Order of the Bankruptcy Court estimating such Disputed Claim, or (iii) as directed by a Final Order of the Bankruptcy Court.

**1.98    Professional Fee Claim:**  A claim under sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 of the Bankruptcy Code for compensation for services rendered or reimbursement for expenses incurred by any of the Bankruptcy Professionals.

**1.99    Released Party(ies):**  (i) the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, the Former Representatives and the Insurance Companies; (ii) professionals of firms specified in Schedule 1 to the Plan; and (iii) each such persons' or entities' current and former officers, directors and board representatives, predecessors, successors, assigns, insiders, subsidiaries, Affiliates, principals, equity holders, members, trustees, partners, managers, employees, agents, members of any boards or similar bodies of such persons, advisory board members, insurers, reinsurers, and such persons' respective heirs, executors, estates, and nominees, in each case as applicable and in their capacity as such, with respect to liability for the actions or inactions of the Former Representatives, the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies; *provided*, *however*, those persons or entities who fall within subparagraph (iii) (other than persons or entities specified in subparagraphs (i) and (ii)) are not released with respect to their own actions related to Sexual Misconduct Claims, regardless of their relationship with the Former Representatives, the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies,

to the extent such action constitutes aiding, abetting or conspiracy to prevent the disclosure of or to cover up any Sexual Misconduct Claim (each a "<u>Non-Released Party</u>").[1]

    **1.100  Releasing Party(ies):**  The Debtors, the Estates, the Non-Debtor Affiliates, the Former Representatives, the UCC, the Insurance Companies, and all Holders of Claims and Interests (except, solely as it relates to parties other than the Debtors, Holders of Opt-Out GUCs).

    **1.101  Releases:**  The releases provided for in Section 7.2 of the Plan, including its subparagraphs.

    **1.102  Representative:**  With respect to any Entity, the present and former directors, officers, members, managers, employees, trustees, accountants (including independent certified public accountants), advisors, attorneys, consultants, experts or other agents of that Entity, or any other professionals of that Entity, in each case in their capacity as such.

    **1.103  Section 503(b)(9) Claims**:  Claims arising under section 503(b)(9) of the Bankruptcy Code for the value of any goods received by Debtors within twenty (20) days before the commencement of the Chapter 11 Cases in which the goods have been sold to Debtors in the ordinary course of Debtors' business.

    **1.104  Secured Claim:**  Pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a Lien against property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code.  A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under section 506(a) of the Bankruptcy Code.

    **1.105  Secured Tax Claim:**  A Priority Tax Claim that, absent the secured status of such Claim, would be entitled to priority in right of payment under section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

    **1.106  Settlement:**  The comprehensive global settlement embodied in this Plan.

    **1.107  Settlement Amount:**  The sum of $35,214,882.30 to be paid by the Insurance Companies on behalf of the Former Representatives and Harvey Weinstein, which shall be allocated as described in Section 5 of the Plan.

    **1.108  Settlement Party(ies):**  All parties who are signatories to the Plan Support Agreement**,** and each such persons' predecessors, successors, assigns, insiders, subsidiaries, Affiliates, current and former officers, directors and board representatives, principals, equity holders, members, trustees, partners, managers, employees, agents, members of any boards or similar bodies of such persons, advisory board members, financial advisors, attorneys, insurers, reinsurers, accountants, investment bankers, consultants, representatives, and other professionals,

---

[1] As specified above, AIG Europe Limited and AIG Europe SA are not Insurance Companies and as such, AIG Europe Limited and AIG Europe SA are not Released Parties.

and such persons' respective heirs, executors, estates, and nominees, in each case, in their capacity as such.

**1.109   Settlement Releases:**  The certain general and specific releases contained within this Plan and the Plan Support Agreement.

**1.110   Sexual Misconduct Claims:**  Shall mean all Tort Claims that arise out of, connect to or relate in any way to any actual or alleged sexual conduct of Harvey Weinstein.

**1.111   Sexual Misconduct Claims Fund:**  The sum of $17,064,525.30 to be paid by the Insurance Companies to the Global Escrow Account in accordance with the terms of the Plan.

**1.112   Sexual Misconduct Claims Examiner:**  Jed Melnick and Simone Lelchuk of Melnick ADR, LLP and any of their Representatives.

**1.113   Sexual Misconduct Claims Fund Procedures:**  Shall mean the procedures for distribution of the Sexual Misconduct Claims Fund to Holders of Sexual Misconduct Claims by the Sexual Misconduct Claims Examiner, attached hereto as Exhibit 4.

**1.114   Supplemental Administrative Claims Bar Date:**  The first Business Day that is at least 45 days after the Effective Date.

**1.115   Third-Party Releases:**  The third-party releases described in Section 7 of the Plan.

**1.116   Tort Claim:**  Any Claim (including any Claim asserted against any Released Party by any Non-Released Party) that arises out of or connects or relates in any way to, any actual or alleged conduct of Harvey Weinstein, which shall include, without limitation:  (i) actual or alleged sexual misconduct, nonconsensual interactions, harassment (including sexual harassment), uninvited or unwelcome conduct, predatory conduct, inappropriate conduct, degrading conduct, coercive or intimidating behavior, humiliation, tort, hostile work environment, sexual assault, rape, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, battery, assault, gender violence, false imprisonment, false arrest or detention, sexual abuse, sex trafficking or discrimination based on sex or gender or any similar or related actions, or (ii) defamation, witness tampering, mail fraud, wire fraud, negligent hiring, negligent supervision, negligent retention, negligence, failure to prevent harassment or ratification, whether based on direct or vicarious liability, whether domestic or foreign, whether based on breach of fiduciary (or other) duty or intentional or negligent conduct, including but not limited to allegations of failure to prevent or remedy, failure to disclose, aiding and abetting or efforts or conspiracy to prevent the disclosure, or cover up, of any of the preceding, against the Released Parties.

**1.117   Tort Claimant:**  Any Holder of a Tort Claim.

**1.118   Unimpaired:**  When used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.119   United States Trustee:**  The Office of the United States Trustee for Region 3.

## EXHIBIT 2

## LIST OF DEBTORS[1]

| DEBTOR | CASE NO. | DEBTOR | CASE NO. |
|---|---|---|---|
| Avenging Eagle SPV, LLC | 18-10602 | WTV Guantanamo SPV, LLC | 18-10629 |
| TWC Waco SPV, LLC | 18-10603 | TWC Fearless Borrower, LLC | 18-10630 |
| Small Screen Productions LLC | 18-10604 | DRT Rights Management LLC | 18-10631 |
| Small Screen Trades LLC | 18-10605 | WTV JCP Borrower 2017, LLC | 18-10632 |
| Twenty O Five Holdings, LLC | 18-10606 | TWC Library Songs (BMI), LLC | 18-10633 |
| Branded Partners LLC | 18-10607 | FFPAD, LLC | 18-10634 |
| W Acquisition Company LLC | 18-10608 | WTV Kalief Browder Borrower, LLC | 18-10635 |
| Spy Kids TV Borrower, LLC | 18-10609 | TWC Loop LLC | 18-10636 |
| Check Hook LLC | 18-10610 | WTV Scream 3 SPV, LLC | 18-10637 |
| WC Film Completions, LLC | 18-10611 | TWC Mist, LLC | 18-10638 |
| Team Players LLC | 18-10612 | HRK Films, LLC | 18-10639 |
| Weinstein Books, LLC | 18-10613 | WTV Yellowstone SPV, LLC | 18-10640 |
| The Actors Group LLC | 18-10614 | TWC Polaroid SPV, LLC | 18-10641 |
| CTHD 2 LLC | 18-10615 | InDirections LLC | 18-10642 |
| Weinstein Development LLC | 18-10616 | TWC Production-Acquisition Borrower 2016, LLC | 18-10643 |
| The Giver SPV, LLC | 18-10617 | InteliPartners LLC | 18-10644 |
| Weinstein Global Funding Corp. | 18-10618 | ISED, LLC | 18-10645 |
| Cues TWC (ASCAP), LLC | 18-10619 | TWC Production, LLC | 18-10646 |
| The Weinstein Company LLC | 18-10620 | MarcoTwo, LLC | 18-10647 |
| Weinstein Global Film Corp. | 18-10621 | TWC Replenish Borrower, LLC | 18-10648 |
| Tulip Fever LLC | 18-10622 | TWC Short Films, LLC | 18-10649 |
| Current War SPV, LLC | 18-10623 | One Chance LLC | 18-10650 |
| Weinstein Productions LLC | 18-10624 | TWC Untouchable SPV, LLC | 18-10651 |
| TWC Borrower 2016, LLC | 18-10625 | PA Entity 2017, LLC | 18-10652 |
| Weinstein Television LLC | 18-10626 | Paddington 2, LLC | 18-10653 |
| DRT Films, LLC | 18-10627 | PS Post LLC | 18-10654 |
| TWC Domestic LLC | 18-10628 | Scream 2 TC Borrower, LLC | 18-10655 |

---

[1] Each Debtor's federal tax identification number may be obtained on the website of the Debtors' claims and noticing agent at http: //dm.epiq11.com/twc.

<u>**EXHIBIT 3**</u>

**PLAN SUPPORT AGREEMENT**

## PLAN SUPPORT AGREEMENT

This PLAN SUPPORT AGREEMENT (as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, this "Agreement"), dated as of October 19, 2020, is entered into by and among The Weinstein Company Holdings, LLC ("Holdings") and The Weinstein Company LLC ("TWC"), each a debtor and debtor in possession in the Chapter 11 Cases, each affiliate of Holdings or TWC that is a debtor in the Chapter 11 Cases as identified on the signature pages hereto (Holdings, TWC and such affiliates, collectively, the "Debtors"), the Non-Debtor Affiliates, the Committee, the Former Representatives, Harvey Weinstein and the Insurance Companies (each a "Party" and collectively, the "Parties"). Each capitalized term used herein but not otherwise defined shall have the meaning ascribed to it in the Debtors' and the Committee's *Second Amended Joint Chapter 11 Plan of Liquidation*, filed with the Bankruptcy Court on October 1, 2020 and attached hereto as Exhibit C (as it may be further amended, modified, or supplemented from time to time, the "Plan").

## RECITALS

WHEREAS, multiple individuals filed lawsuits, claims or class actions in federal courts, state courts and foreign tribunals alleging, *inter alia*, that Harvey Weinstein engaged in sexual harassment and abuse in violation of federal, foreign and state law, and that certain companies (including the Debtors) and the Former Representatives should also be held responsible for such harassment and abuse;

WHEREAS, on March 19, 2018 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on the terms and subject to the conditions set forth herein and in the Plan, and subject to the approval of this Agreement and the Plan by the Bankruptcy Court, the Parties wish to settle all actual and potential claims, disputes and controversies relating to, connected to or arising out of the allegations against the Debtors, the Former Representatives and (to the extent holders of Sexual Misconduct Claims affirmatively elect) Harvey Weinstein, and it is their intent to avoid the risk, expense and burden of litigation, and permanently to settle and resolve all such disputes, matters, claims, controversies, issues, assertions and causes of action among them, whether known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, domestic or foreign, which have been or could have been alleged or asserted, by and between the Parties, without any admission of fault, liability or wrongdoing on the part of any Party (the "Settlement");

WHEREAS, the Parties have agreed to implement the Settlement through the Plan in a manner consistent in all material respects with the terms and conditions set forth in this Agreement;

WHEREAS, the Parties desire to express to each other their mutual support of and commitment to the Plan and this Agreement;

1

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.  Settlement Amount.

The Insurance Companies, on behalf of the Released Parties (and Harvey Weinstein, only with respect to Sexual Misconduct Claims held by holders of Sexual Misconduct Claims who affirmatively elect to release Harvey Weinstein in accordance with the Plan) shall pay the Settlement Amount of $35,214,882.30 to an account controlled by the Global Escrow Agent in immediately available funds not later than ten (10) Business Days following occurrence of the Effective Date. Each Insurance Company will fund its applicable portion in respect of the Settlement Amount, as specified in Schedule 2 attached to the Plan, which shall collectively total the Settlement Amount.  The Global Escrow Agent shall further distribute the Settlement Amount in accordance with Section 5 of the Plan.

2.  Releases.

In consideration of and conditioned upon payment, distribution, allocation and receipt of the Settlement Amount set forth in Section 1 of this Agreement and the other contributions of the Parties, the Settlement Parties conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, disclaim and discharge the Released Parties and their respective property to the maximum extent permitted by law, as further set forth below.

A.  General Release.

i.  Except as otherwise set forth in Sections 2.B and 2.C herein, as of the Effective Date, each of the Settlement Parties that is a signatory hereto releases (and each entity so discharged and released shall be deemed discharged and released by the Settlement Parties) each of the Released Parties that is a signatory hereto and its respective property from any and all Claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any direct or derivative claims asserted or assertable by or on behalf of any of the Settlement Parties, any Claims or causes of action asserted by or on behalf of any of the Settlement Parties, or that any Settlement Party would have been legally entitled to assert in their own right, whether individually or collectively, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law or in equity, based on any matter, cause, thing, conduct or omission occurring prior to the Effective Date and in any way related to the Debtors, their businesses, operations, activities or the Chapter 11 Cases (including, but not limited to, Tort Claims).

2

B.     <u>Additional Releases</u>.

      i.      Additional Releases include the following:

      (1)     the Debtors and the Former Representatives release the Insurance Companies from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever (including, without limitation, reimbursement of fees and costs of defense) in any way arising out of or related to the Tort Claims, whether in law, in equity or otherwise, and whether under contract, warranty, tort or otherwise, including but not limited to any claims for bad faith or breach of the implied covenant of good faith and fair dealing; <u>provided</u>, <u>however</u>, this release shall not include any (i) Claims that are not Tort Claims; (ii) Tort Claims that are not permanently released, discharged and enjoined pursuant to the Bankruptcy Injunctions; and (iii) direct and indirect fees, costs and expenses incurred by the Debtors or the Former Representatives in excess of $25,000 per Claim in connection with (a) the enforcement of the Bankruptcy Injunctions and/or (b) any Claim or action by or against a Non-Released Party or by a holder of a Sexual Misconduct Claim who does not affirmatively elect to release Harvey Weinstein (except as otherwise provided in Section 2.B.i(3) below); <u>provided further</u> that with respect to the Claims specified in subparagraphs (i)-(iii) above, the Debtors and the Former Representatives reserve their rights to seek insurance coverage from the Insurance Companies and the Insurance Companies reserve their rights to contest such coverage;

      (2)     the Former Representatives and the Debtors who are currently or were previously named parties in the Contract and Commercial Cases waive all challenges to coverage positions taken by the Insurance Companies for each of the Contract and Commercial Cases due to the failure of such Former Representatives and Debtors to issue timely coverage dispute letters to the Insurance Companies, and such Former Representatives and the Debtors shall not seek coverage from the Insurance Companies for any cost or expense incurred in connection with any Contract or Commercial Case for which a coverage position has been waived;

      (3)     Harvey Weinstein releases the Insurance Companies for all Claims arising in the Judd Case and the McGowan Case;

      (4)     in the event a holder of a Sexual Misconduct Claim affirmatively elects to release Harvey Weinstein, then (i) Harvey Weinstein shall be deemed to release the Insurance Companies from any Claims in any way arising out of, related to or connected to such Sexual

Misconduct Claims; and (ii) the Insurance Companies shall be deemed to release Harvey Weinstein from any Claims in any way arising out of, related to or connected to such Sexual Misconduct Claims;

(5)    the Debtors, the Estates, the Committee and the Non-Debtor Affiliates release the Former Representatives for all of the Estates' Claims and Causes of Action against any Former Representative;

(6)    the Former Representatives and Harvey Weinstein release the Debtors with respect to any and all Claims, including: (i) all general unsecured, priority and/or administrative expense claims that have been asserted or could be asserted against the Debtors (except as set forth in the Plan); (ii) any and all claims for substantial contribution pursuant to Section 503(b)(3) of the Bankruptcy Code (provided that such substantial contribution claims shall only be available as consideration for any releases granted pursuant to the Plan and the approval of the Channeling Injunction and shall not support the request for payments from the Estates); and (iii) any and all contribution and indemnity Claims against the Debtors and/or their respective bankruptcy Estates, except to the extent that any of the Debtors are nominally defendants in any insurance coverage litigation; upon occurrence of the Effective Date and distribution and receipt of the Settlement Amount in accordance with this Agreement and the Plan, all proofs of claim filed by the Former Representatives and Harvey Weinstein shall be deemed disallowed and any amounts owed to the Former Representatives and Harvey Weinstein as reflected on the Debtors' schedules of assets and liabilities shall be deemed released and discharged;

(7)    the Debtors, the Former Representatives and Harvey Weinstein (as applicable) release all holders of Sexual Misconduct Claims, including current or former TWC employees and/or contractors, from any confidentiality, non-disclosure or non-disparagement agreements (if any), arising from or relating to any Sexual Misconduct Claim;[1]

(8)    notwithstanding the foregoing, and in exchange for the consideration herein, the Debtors, the Former Representatives and Harvey Weinstein: (i) fully release and forever relinquish any and all rights for coverage for defense costs or indemnification or otherwise under Policy No. G27085969 005 issued by Westchester Fire Insurance Company to the named insured The Weinstein Company Holdings.  The Debtors, the Former Representatives and

---

[1]  On or about the Petition Date, the Debtors publicly announced such release as provided in the press release attached hereto as Exhibit A and the Debtors hereby reaffirm such release.

EXECUTION VERSION

Harvey Weinstein agree that any duties or obligations of Westchester Fire Insurance Company under Policy No. G27085969 005 are fully and finally extinguished and terminated. By this release, the Debtors, the Former Representatives and Harvey Weinstein reserve no rights or benefits whatsoever under or in connection with Policy No. G27085969 005 with respect to any past, present or future claims whatsoever; and (ii) fully release and forever discharge National Union Fire Insurance Company of Pittsburgh, PA ("National Union") from any obligations, duties, responsibilities, claims, liabilities and damages under Policy No. 01-824-40-28 issued to the named insured The Weinstein Company Holdings. The Debtors, the Former Representatives and Harvey Weinstein agree that National Union's contribution of the remaining unexhausted amount of Policy No. 01-824-40-28 towards the Settlement Amount exhausts the $10 million limit of liability of Policy No. 01-824-40-28. By this release, the Debtors, the Former Representatives and Harvey Weinstein reserve no rights or benefits whatsoever under or in connection with Policy No. 01-824-40-28 with respect to any past, present or future claims whatsoever;

(9)    each Insurance Company releases each and every other Insurance Company for Claims or causes of action, whether in law, in equity, or otherwise, and whether under contract, warranty, tort or otherwise, solely with respect to any claim for recovery of each Insurance Company's respective contribution to the Settlement Amount and any defense costs paid by any Insurance Company prior to the execution of this Agreement for the Claims and any criminal proceedings arising out of the Sexual Misconduct Claims from any other Insurance Company (unless otherwise agreed upon by and between any of the Insurance Companies), provided, however, (i) these releases shall not apply to any Insurance Company's obligations under any contract of reinsurance; and (ii) in the event any Insured seeks coverage for any matters or claims not released herein, each Insurance Company reserves the right to challenge the exhaustion of any applicable policy except Policy No. 01-824-40-28 issued by National Union;

(10)   except as provided in Section 2 above, the Insurance Companies (on behalf of themselves and their subsidiaries, Affiliates, parents, predecessors, or successors (except AIG Europe Limited and AIG Europe SA)) release the other Released Parties from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever (including, without limitation, reimbursement of fees and costs of defense) in any way arising out of or related to the Claims, whether in law, in equity or otherwise, and whether under contract, warranty, tort or otherwise,

including but not limited to any claims for bad faith or breach of the implied covenant of good faith and fair dealing; the Insurance Companies shall not seek recovery of the Settlement Amount or any portion thereof paid by such Insurance Company from any other Released Party for any reason; provided, however the Insurance Companies do not release any rights, defenses or Claims against The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Miramax, LLC, Miramax Film Corporation and/or Miramax Film NY, LLC.

C.    Certain Plan Releases.

i.    On the Effective Date, all Claims for contribution (including Claims for contribution arising from, related to or connected to Tort Claims) held by a Non-Released Party against all Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, and forever enjoined, discharged and released pursuant to the terms of the Plan.

ii.    In the event a holder of a Sexual Misconduct Claim does not affirmatively elect to release Harvey Weinstein and such holder obtains any judgment against Harvey Weinstein arising out of, related to or connected to their Sexual Misconduct Claims, such holder may seek to enforce, collect or otherwise recover on such judgment by any manner or means, whether directly or indirectly, from either Harvey Weinstein or the Insurance Companies (as applicable), provided, however, if such holder seeks to enforce, collect or otherwise recover the judgment from the Insurance Companies, Harvey Weinstein shall not seek coverage from the Insurance Companies for such judgment; provided further, that (i) with respect to the such holder's non-released Sexual Misconduct Claims against Harvey Weinstein, the Insurance Companies reserve their rights to contest coverage, and (ii) nothing in this paragraph shall be read to expand or alter the terms, conditions and provisions of any Insurance Policies;

D.    Exclusions and Waivers.

i.    Notwithstanding the foregoing, the releases set forth in this Agreement and the Plan shall not include or constitute a release of (i) any Claims in Section 2.B of this Agreement that are specifically excluded from the releases set forth in Sections 2.A and 2.B or (ii) any of the following:

(1)    any Former Representatives' and/or their respective affiliates' or representatives' Claims (other than Claims released in Section 2.B), including any claim for indemnification, against any Released Party other than the Debtors, the Estates and the Former Representatives;

(2)      Robert Weinstein's and Harvey Weinstein's Claims for indemnification against the Non-Debtor Entities that arise from, relate to or connect to Sexual Misconduct Claims;

(3)      in the event a holder of a Sexual Misconduct Claim does not affirmatively elect to release Harvey Weinstein; (i) Harvey Weinstein shall not be required to release the Insurance Companies from any Claims in any way arising out of, related to or connected to such holder's Sexual Misconduct Claims other than as set forth in Section 2.B.i(3); and (ii) the Insurance Companies shall not be required to release Harvey Weinstein from any Claims in any way arising out of, related to or connected to Sexual Misconduct Claims that are not released in accordance with subparagraph (i) of this Section 2.D.i(3);

(4)      the Debtors', Harvey Weinstein's, Robert Weinstein's, Frank Gil's and David Glasser's claims and counterclaims against the Debtors, Harvey Weinstein, Robert Weinstein, Frank Gil and David Glasser, arising out of the actions entitled *Frank Gil v. Weinstein Live Entertainment LLC, et. al.*, Supreme Court of the State of New York, County of New York, Case No. 653555/2019, and *Sartraco et. al. v. Robert Weinstein, et. al.*, Superior Court for the State of California, County of Los Angeles, Case No. 19-cv-00448;

(5)      Claims to enforce the terms of this Agreement and the Plan and any related documents;

(6)      Claims for professional fees, as further described in the Plan.

ii.      The Settlement Parties hereby expressly, knowingly and voluntarily waive the provisions of Section 1542 of the California Civil Code (or any comparable statutory or common law provision of any other jurisdiction with respect to the Claims released pursuant to this Agreement), which provides as follows:

      A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

      The Settlement Parties expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully

EXECUTION VERSION

waive such rights or benefits pertaining to the Claims.  In connection with such waiver and relinquishment, the Settlement Parties hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Claims known or unknown, suspected  or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties and Harvey Weinstein. In furtherance of such intention, the release herein given by the Settlement Parties to the Released Parties and Harvey Weinstein shall be and remain in effect as a full and complete general release as to the Claims, notwithstanding the discovery or existence of any such additional or different claims or facts. Each of the Settlement Parties expressly acknowledges that he/she/it has been advised by his/her/its attorney of the contents and effect of Section 1542, and with that knowledge, each of the Settlement Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section.

3.      No Admission.

By entering into this Agreement, no Released Party is admitting any wrongdoing, liability, fault or violation of law and no Insurance Company is admitting coverage under any policy of insurance. Rather, the Parties agree and acknowledge that (i) Debtors, the Former Representatives and Harvey Weinstein deny all allegations and Claims asserted against them, (ii) this Agreement is without prejudice to any coverage position taken or that may be taken by any Insurance Company, any Former Representative or Harvey Weinstein in the event this Agreement does not become effective, and (iii) the Parties are entering into the Settlement to avoid the risk, burden, and expense of continued litigation.

4.      Costs.

None of the Former Representatives, Harvey Weinstein or the Insurance Companies shall have any obligation to provide funds (other than the Settlement Amount) to fund any expense incurred by or in the course of the administration of the Estates, including seeking approval of this Agreement and the Plan; provided, however, the Estates shall not bear the costs of seeking enforcement of the Channeling Injunction or the Plan in any foreign jurisdictions.

5.      Plan Support; Channeling Injunction Support; Other Support.

With respect to the Plan, the Parties further agree as follows:

A.      The Debtors shall (i) have filed the Plan with the Bankruptcy Court on or before October 1, 2020 and (ii) use best efforts to obtain confirmation of the Plan as soon as reasonably practicable in accordance with the Bankruptcy Code and on terms consistent with this Agreement.

B.     Each Party shall support entry of the Confirmation Order so long as such order and the Plan are consistent in all material respects with the terms of this Agreement (a "Conforming Chapter 11 Plan").

C.     Each Party entitled to vote on the Plan will (i) support and vote to accept the Plan to the extent it is a Conforming Chapter 11 Plan and (ii) opt-in to any consensual releases thereunder.

D.     Each Party shall use best efforts to support and cooperate with the Debtors to obtain confirmation of the Plan and any regulatory or other approvals necessary for confirmation or effectiveness of the Plan to the extent it is a Conforming Chapter 11 Plan.

E.     No Party shall: (i) object to, delay, impede, or take any other action to interfere with acceptance, confirmation or implementation of the Plan so long as it is a Conforming Chapter 11 Plan; (ii) directly or indirectly solicit approval or acceptance of, encourage, propose, file, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout or plan of liquidation or reorganization for the Debtors other than the Plan so long as it is a Conforming Chapter 11 Plan or (iii) otherwise take any action that would interfere with, delay, impede, or postpone (a) the solicitation of acceptances, consummation or implementation of the Plan so long as it is a Conforming Chapter 11 Plan, or (b) the Effective Date.

F.     In the event a person or entity asserts a Claim or commences an action against a Released Party and such Claim or action arises from, connects to or relates to a Tort Claim, the Released Party (or Released Parties) against whom such Claim or action is asserted shall take all commercially reasonable actions to enforce or otherwise have recognized the terms of the Confirmation Order and the Plan (including, but not limited to, the Bankruptcy Injunctions), which provide that such Claim or action is discharged, released and enjoined pursuant to the Confirmation Order and the Plan.

G.     The Parties to this Agreement shall support the entry of a Bankruptcy Court order approving the Channeling Injunction.

6.     <u>Further Assurances.</u>

The Parties acknowledge and agree that they will each cooperate in the execution and delivery of any other or further documentation that may be reasonably necessary to carry out the intentions of this Agreement.

7.     <u>Effectiveness.</u>

A.     This Agreement shall be binding on all Parties upon execution and delivery of this Agreement by all Parties subject to the terms and conditions herein and in the Plan.

B.     Upon the execution of this Agreement and until the Effective Date, the Parties shall proceed in good faith to seek Bankruptcy Court approval of the Plan and the Parties shall not, directly or indirectly, propose, file, support, solicit, encourage or participate in any Settlement other than the Settlement embodied in the Plan, unless it is a Conforming Chapter 11 Plan.

C.     Any Foreign Court Approval Orders, as may be mutually deemed necessary and agreed upon by Harvey Weinstein and the Former Representatives who seek such orders, and the costs of which shall be borne exclusively by Harvey Weinstein and those Former Representatives who seek such orders, may be obtained at any time and from time to time following the Effective Date (as determined by Harvey Weinstein and such Former Representatives), but shall not constitute a condition to this Agreement becoming fully effective as provided in this Section 7. The Debtors and other Parties will reasonably cooperate with the obtaining of any such Foreign Court Approval Order, but will not be required to incur any unreimbursed costs or expenses related thereto (including attorneys' fees).

D.     In the event the Bankruptcy Court declines to enter the Confirmation Order, unless the Parties agree otherwise, this Agreement shall be deemed terminated, null and void *ab initio*, and the Parties will be excused from any future performance thereunder. In such event, nothing in this Agreement shall be admissible as evidence in any case or proceeding for any purpose, it being the intent of the Parties that in such circumstance all discussions and negotiations related to the Settlement and this Agreement will be treated as inadmissible settlement discussions protected under Federal Rule of Evidence 408 and its state law equivalents.

8.    <u>Tolling</u>.

Any unexpired statute of repose, statute of limitations, limitation or laches period, or other provision that requires, mandates, or establishes any deadline for the commencement or filing of any matter, proceeding or other action, or the assertion of any right, claim or defense related thereto, by or on behalf of the Debtors against the applicable Former Representatives, or any of them, applicable to any of the Excluded Actions (as defined in the Asset Purchase Agreement with Lantern Entertainment dated March 19, 2018) covered under sections 108 and 546 of the Bankruptcy Code (collectively, the "<u>Limitation Deadline</u>"), are hereby tolled until the earlier of (i) the Effective Date, (ii) forty-five (45) days after the first hearing at which the Bankruptcy Court declines to approve the Confirmation Order or (iii) in the event an order converting the Chapter 11 Cases to chapter 7 cases has been entered by the Bankruptcy Court, forty-five (45) days after the date on which a chapter 7 trustee is duly appointed, elected or designated (as applicable).

9.    <u>Governing Law</u>.

This Agreement shall be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and where state law is applicable, the laws of the State of New York shall govern, without giving effect to the choice of law principles thereof, including as to all matters of the construction, validity and performance of this Agreement.

10.   <u>Dispute Resolution.</u>

      In the event of a dispute arising out of this Agreement after the Effective Date, such dispute, controversy or claim shall first be referred to the respective senior representatives or counsel of the Parties, who shall in good faith endeavor to amicably resolve the dispute, controversy or claim. Any such dispute, controversy or claim, including any dispute, controversy or claim arising out of, relating to, or in connection with this Agreement, or the breach, termination of validity thereof that is not resolved by the Parties pursuant to the preceding sentence, shall be adjudicated or otherwise resolved in the Bankruptcy Court; <u>provided</u>, <u>however</u>, that if the Bankruptcy Court is unwilling or unable to hear any such dispute, controversy or claim, the New York State courts located in New York County and/or the federal courts of the United States of America located in New York County will have sole jurisdiction over such dispute, controversy or claim. Upon the Effective Date, the Parties consent to venue and personal jurisdiction over them in those courts solely with regards to any such dispute, controversy or claim and shall not object to or otherwise challenge the same.

11.   <u>Entire Agreement.</u>

      This Agreement, the Plan, and the other documents and agreements contemplated hereby and thereby represent the entire agreement of the Parties with respect to the matters and transactions that are the subject of this Agreement and the Plan.

12.   <u>Integration.</u>

      This Agreement, the Plan and the other documents and agreements contemplated hereby and thereby supersede and replace all prior and contemporaneous agreements and understandings, oral or written, between any or all of the Parties with regard to the matters and transactions that are the subject of this Agreement and the Plan.

13.   <u>Amendments.</u>

      No amendment to this Agreement shall be effective unless made in writing and signed by all Parties.

14.   <u>Construction.</u>

      As this Agreement was jointly drafted by the Parties, no provision of this Agreement shall be construed against or interpreted to the disadvantage of any Party by any court or other governmental or judicial authority by reason of such Party having or being deemed to have structured or drafted such provision.

15.   <u>Notices.</u>

      Should any notice be required or sent with respect to this Agreement, such notice shall be in writing and be given in person or by means of electronic mail (with request for assurance of receipt in a manner typical with respect to communications of that type), by recognized overnight courier that maintains written confirmation of delivery or by registered or certified mail, and shall become effective: (i) on delivery if given in person; (ii) on the date of transmission if

sent by electronic mail; (iii) one (1) Business Day after delivery by overnight courier; or (iv) three (3) Business Days after being mailed, with proper postage and documentation, for first-class registered or certified mail, prepaid. Notices shall be addressed as specified in Exhibit B to this Agreement.

16.    <u>Voluntary Signing of Agreement</u>.

        The Parties acknowledge that they each have voluntarily entered into this Agreement. The Parties further acknowledge that they each have read this Agreement and understand all of its terms, including the mutual release and discharge of claims in Section 2 of this Agreement. The Parties acknowledge that they may hereafter discover claims or facts in addition to or different from those they now know or believe to exist with respect to the subject matter of this Agreement which, if they had known or suspected at the time of execution of this Agreement, may have materially affected the Settlement. The Parties nevertheless agree that the mutual release and discharge of claims in Section 2 applies to any such additional or different claims or facts.

17.    <u>Consent, Withdrawal and Termination Rights</u>.

        Each Party may withdraw from this Agreement prior to the Effective Date, solely as to itself, by written notice to all Parties stating the Party's intention to withdraw from this Agreement and the basis for such withdrawal, on or after the occurrence of any of the following (at which time this Agreement shall be deemed to be terminated and null and void *ab initio*):

    A.    the Plan or Confirmation Order is amended, modified or otherwise changed in a manner that adversely affects such Party's rights in any material respect, including but not limited to with respect to any of the following: (i) the provisions of the Plan that relate to the exculpation and release of Harvey Weinstein, the Former Representatives or the Insurance Companies contemplated in this Agreement, including, without limitation, any non-consensual releases by any holders of Tort Claims against any Former Representative and the waiver of any such Former Representative's rights to seek full reimbursement under the Insurance Policies; and (ii) the form of Channeling Injunction set forth in Section 5 of the Plan;

    B.    the noticing and claims procedures and other implementation in connection with the Channeling Injunction effectuated pursuant to the Plan are not reasonably satisfactory to a Former Representative or an Insurance Company;

    C.    the NYOAG has not provided the releases contemplated under the Plan in a form and substance reasonably acceptable to the Former Representatives; or

    D.    the Confirmation Order is not entered on or before December 31, 2020 (or such later date as may be agreed to by the Parties).

18.    <u>Authority</u>.

      Each Party executing this Agreement on such Party's behalf or in a representative capacity represents and warrants that such Party is duly authorized to do so and that such Party's signature so binds the Party or the represented Party (as applicable), its former, current, and future Affiliates, predecessors, successors, privies, assigns, members, partners, employees, agents, representatives, heirs, administrators and executors, and all others who are acting or have acted on its behalf (as applicable).

19.    <u>Severability</u>.

      If a provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable under applicable law, that provision will be enforced to the maximum extent permitted by applicable law and the remaining provisions of this Agreement will continue in full force and effect.

20.    <u>Counterparts</u>.

      This Agreement may be executed in one or more counterparts, each of which will be deemed an original and part of one and the same document. Signatures delivered in PDF format shall be deemed original signatures.

****

      IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed in a manner legally binding upon them as of the date hereof.

[*signature pages follow*]

*For the Debtors*


By: _____
Name: Ivona Smith
Title:   Director, The Weinstein Company
         Holdings, LLC


The Weinstein Company Holdings LLC,
a Delaware Limited Liability Company

The Weinstein Company LLC,
a Delaware Limited Liability Company

Avenging Eagle SPV, LLC,
a Delaware Limited Liability Company

Branded Partners LLC,
a Delaware Limited Liability Company

Check Hook LLC,
a Delaware Limited Liability Company

CTHD 2 LLC,
a Delaware Limited Liability Company

Cues TWC (ASCAP), LLC,
a Delaware Limited Liability Company

Current War SPV, LLC,
a Delaware Limited Liability Company

DRT Films, LLC,
a Delaware Limited Liability Company

DRT Rights Management LLC,
a Delaware Limited Liability Company

FFPAD, LLC,
a Delaware Limited Liability Company

HRK Films, LLC,
a Delaware Limited Liability Company

InDirections LLC,
a Delaware Limited Liability Company

InteliPartners LLC,
a Delaware Limited Liability Company

ISED, LLC,
a Delaware Limited Liability Company

MarcoTwo, LLC,
a Delaware Limited Liability Company

One Chance LLC,
a Delaware Limited Liability Company

PA Entity 2017, LLC,
a Delaware Limited Liability Company

Paddington 2, LLC,
a Delaware Limited Liability Company

PS Post LLC,
a Delaware Limited Liability Company

Scream 2 TC Borrower, LLC,
a Delaware Limited Liability Company

Small Screen Productions LLC,
a Delaware Limited Liability Company

Small Screen Trades LLC,
a Delaware Limited Liability Company

Spy Kids TV Borrower, LLC,
a Delaware Limited Liability Company

Team Players LLC,
a Delaware Limited Liability Company

The Actors Group LLC,
a Delaware Limited Liability Company

The Giver SPV, LLC,
a Delaware Limited Liability Company

Tulip Fever LLC,
a Delaware Limited Liability Company

TWC Borrower 2016, LLC,
a Delaware Limited Liability Company

TWC Domestic LLC,
a Delaware Limited Liability Company

TWC Fearless Borrower, LLC,
a Delaware Limited Liability Company

TWC Library Songs (BMI), LLC,
a Delaware Limited Liability Company

TWC Loop LLC,
a Delaware Limited Liability Company

TWC Mist, LLC,
a Delaware Limited Liability Company

TWC Polaroid SPV, LLC,
a Delaware Limited Liability Company

TWC Production-Acquisition Borrower
2016, LLC,
a Delaware Limited Liability Company

TWC Production, LLC,
a Delaware Limited Liability Company

TWC Replenish Borrower, LLC,
a Delaware Limited Liability Company

TWC Short Films, LLC,
a Delaware Limited Liability Company

TWC Untouchable SPV, LLC,
a Delaware Limited Liability Company

TWC Waco SPV, LLC,
a Delaware Limited Liability Company

EXECUTION VERSION

Twenty O Five Holdings, LLC,
a Delaware Limited Liability Company

W Acquisition Company LLC,
a Delaware Limited Liability Company

WC Film Completions, LLC,
a Delaware Limited Liability Company

Weinstein Books, LLC,
a Delaware Limited Liability Company

Weinstein Development LLC,
a Delaware Limited Liability Company

Weinstein Global Funding Corp.,
a Delaware Corporation

Weinstein Global Film Corp.,
a Delaware Corporation

Weinstein Productions LLC,
a Delaware Limited Liability Company

Weinstein Television LLC,
a Delaware Limited Liability Company

WTV Guantanamo SPV, LLC,
a Delaware Limited Liability Company

WTV JCP Borrower 2017, LLC,
a Delaware Limited Liability Company

WTV Kalief Browder Borrower, LLC,
a Delaware Limited Liability Company

WTV Scream 3 SPV, LLC,
a Delaware Limited Liability Company

WTV Yellowstone SPV, LLC,
a Delaware Limited Liability Company

*For Current Films UK Limited*
*a Delaware Limited Liability Company*


By:_____

Name: Ivona Smith
Title:   Director, The Weinstein Company
          Holdings, LLC


*For MarcoThree, LLC,*
*a Delaware Limited Liability Company*


By:_____

Name: Ivona Smith
Title:   Director, The Weinstein Company
          Holdings, LLC


*For Tulip Fever Films Limited,*
*a Delaware Limited Liability Company*


By:_____

Name: Ivona Smith
Title:   Director, The Weinstein Company
          Holdings, LLC


*For The Weinstein Company (UK) Ltd.,*
*a UK Private Limited Company*


By:_____

Name: Ivona Smith
Title:   Director, The Weinstein Company
          Holdings, LLC

*For the Official Committee of Unsecured Creditors*

By: _____

Name: Louisette Geiss

Title: Committee Co-Chair

*For the Official Committee of Unsecured Creditors*

By:

Name: Lori Wentworth Odierno,
        William Morris Endeavor
        Entertainment
Title: Committee Co-Chair

*For Harvey Weinstein*


By: *Imran H. Ansari*
Name:   Imran H. Ansari., Esq.
Title:   Partner, Aidala, Bertuna &
         Kamins PC

For Robert Weinstein


By:_____
Name:
Title:

*For James Dolan*

By: _____

Name:

Title:

For Frank Gil

By:

Name:

Title:

*For David Glasser*


By:  /s/ Douglas E. Grover
Name:  Douglas E, Grover
Title:    Partner
           Schlam Stone & Dolan LLP

*For Paul Tudor Jones*

By:_____

Name:

Title:

*For Marc Lasry*

By:
Name:
Title:

*For Jeff Sackman*


By:_____

Name:    jeff sackman

Title:

*For Barbara Schneeweiss*

By: _____
Name:
Title:

Scanned with Mobile Scanner

*For Lance Maerov*


By:_____
Name:
Title:

*For Tarak Ben Ammar*

By:_____

Name: Tarak BEN AMMAR

Title:

*For Richard Koenigsberg*

By:_____

Name: Richard Koenigsberg

Title:

*EXECUTION VERSION*

*For Dirk Ziff*

By: _____

Name:

Title:

*EXECUTION VERSION*

*For Tim Sarnoff*

By: _____

Name: TIM SARNOFF

Title: _____

*For Fireman's Fund Insurance Company*

By: _____

Name:    IAN GALLOWAY

Title:    CLAIM DIRECTOR

*For The American Insurance
Company*

By: _____

Name: IAN GALLOWAY

Title: CLAIM DIRECTOR

*For National Union Fire Insurance*
*Company of Pittsburgh, PA.*


By: *Richard F. Dziedziula*
Name:    Richard F. Dziedziula
Title:    Vice President Financial Lines

*EXECUTION VERSION*

*For ACE American Insurance Company*

By:_____

Name:  Christopher J. Celentano

Title:   Senior Vice President,
          Coverage & Complex Claims

*For Chubb National Insurance Company*

By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
          Coverage & Complex Claims

*For Executive Risk Indemnity Inc.*

By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
         Coverage & Complex Claims

*EXECUTION VERSION*

*For Federal Insurance Company*

By:_____

Name:  Christopher J. Celentano

Title:   Senior Vice President,
            Coverage & Complex Claims

*For Great Northern Insurance Company*

By:_____
Name: Christopher J. Celentano
Title:   Senior Vice President,
           Coverage & Complex Claims

*EXECUTION VERSION*

*For Pacific Indemnity Company*

By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
            Coverage & Complex Claims

*For Westchester Fire Insurance Company*

By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
          Coverage & Complex Claims

*For Chubb Indemnity Insurance Company*

By:_____
Name:  Christopher J. Celentano
Title:   Senior Vice President,
         Coverage & Complex Claims

## **EXHIBIT A**

The Weinstein Company Press Release of March 19, 2018



**TWC and Lantern Capital Partners Enter Into Stalking Horse Agreement
for Section 363 Sale**

**Deal Contemplates Business Continuing as a Going Concern**

**TWC Releases NDA Obligations**

FOR IMMEDIATE RELEASE – March 19, 2018

The Weinstein Company Holdings LLC today entered into a "stalking horse" agreement with an affiliate of Lantern Capital Partners, a Dallas-based private equity company.  TWC entered into the agreement with Lantern in conjunction with the filing of a voluntary petition under the United States Bankruptcy Code in the United States Bankruptcy Court in the District of Delaware.  Under the agreement, Lantern will purchase substantially all of the assets of the Company, subject to certain conditions including approval of the Bankruptcy Court.  The Board selected Lantern in part due to Lantern's commitment to maintain the assets and employees as a going concern.  The Company hopes that this orderly sale process under the supervision of the Bankruptcy Court will allow it to maximize the value of the Company's assets for the benefit of its creditors and other stakeholders.

Today, the Company also takes an important step toward justice for any victims who have been silenced by Harvey Weinstein.  Since October, it has been reported that Harvey Weinstein used non-disclosure agreements as a secret weapon to silence his accusers.  Effective immediately, those "agreements" end.  The Company expressly releases any confidentiality provision to the extent it has prevented individuals who suffered or witnessed any form of sexual misconduct by Harvey Weinstein from telling their stories.  No one should be afraid to speak out or coerced to stay quiet.  The Company thanks the courageous individuals who have already come forward.  Your voices have inspired a movement for change across the country and around the world.

"While we had hoped to reach a sale out of court, the Board is pleased to have a plan for maximizing the value of its assets, preserving as many jobs as possible and pursuing justice for any victims," said Chairman Robert Weinstein.  The Board also expressed its great appreciation to New York Attorney General Eric Schneiderman, and his colleagues, for helping the Company achieve these objectives.



Lantern co-founders Andy Mitchell and Milos Brajovic stated: "We are honored to be selected as the bidder to acquire the company's businesses as an ongoing concern. In the last several months, Lantern has evaluated the company and is proud to provide a solution to the board. As with all our businesses, Lantern will improve the performance of the company's businesses with the utmost respect to all employees and promote a diverse and transparent environment. We are grateful for everyone involved in the transaction and look forward to following through on our promise to reposition the business as a preeminent content provider, while cultivating a positive presence in the industry."

The Company regrets that it cannot undo the damage Harvey Weinstein caused, but hopes that today's events will mark a new beginning. Even as the Company heads into bankruptcy, the Company remains committed to doing whatever it can to maximize value for its creditors and, in cooperation with Attorney General, continue its pursuit of justice for any victims.

## About Lantern Capital Partners

Founded in 2010, Lantern is a private equity firm that has managed and/or acquired over $2 billion in assets across a diverse range of industries. As a true partner to investors with a commitment to providing solutions to complicated business problems, Lantern believes in hands-on investment management and partnership with leading industry executives and complete integrity. Lantern has earned the reputation for its turnaround capabilities because of the history of investing in and contributing to the growth of businesses that foster long-term value. Led by Co-Founders Andy Mitchell and Milos Brajovic, Lantern Capital Partners is headquartered in Dallas, TX, with its affiliate, Lantern Asset Management. For more information about Lantern, please visit www.lanternam.com.

## **Exhibit B**

To the extent any notice is required with respect to the Agreement, notices shall be addressed as follows:

if to Debtors:

Paul H. Zumbro
Lauren A. Moskowitz
CRAVATH SWAINE & MOORE, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Phone: (212) 474-1000
pzumbro@cravath.com
lmoskowitz@cravath.com

and

Paul N. Heath
RICHARDS, LAYTON & FINGER, PA
920 N King St.
Wilmington, DE 19801
Phone: (302) 651-7700
heath@RLF.com

if to the Committee:

James I. Stang (CA Bar No. 94435)
Robert J. Feinstein (NY Bar No. 1767805)
Debra I. Grassgreen (CA Bar No. 169978)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile:  302-652-4400

if to Former Representatives

Elior Shiloh
LEWIS BRISBOIS BISGAARD & SMITH, LLP
77 Water Street, Suite 2100
New York, NY 10005
Phone: (212) 232-1300
elior.shiloh@lewisbrisbois.com

and

Adam Harris
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2253
adam.harris@srz.com

and

Lawrence S. Spiegel
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
lawrence.spiegel@skadden.com

and

Marvin Putnam
LATHAM & WATKINS LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Phone: (424) 653-5588
marvin.putnam@lw.com

and

Mark Silverschotz
ANDERSON KILL P.C.
1251 6th Avenue
New York, NY 10020
Phone: (212) 278-1000
msilverschotz@andersonkill.com

and

Kathy Jorrie
PILLSBURY WINTHROP SHAW
PITTMAN LLP
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017
Phone: (213) 488-7100
kathy.jorrie@pillsburylaw.com

and

Israel David
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, NY 10004
Phone: (212) 859-8000
israel.david@friedfrank.com

and

James D. Wareham
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
801 17th Street, NW
Washington, DC 20006
Phone: (202) 639-7000
james.wareham@friedfrank.com

and

Ann Kramer
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Phone: (212) 521-5400
akramer@reedsmith.com

and

James V. Masella, III
Daniel A. Lowenthal
Alejandro H. Cruz
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 6th Avenue
New York, NY 10036
Phone: (212) 336-2000
jmasella@pbwt.com
dalowenthal@pbwt.com
acruz@pbwt.com

and

John J. Rosenberg
ROSENBERG, GIGER & PERALA P.C.
1330 Avenue of the Americas
Suite 1800
New York, NY  10019
Phone:  (646) 494-5000
jrosenberg@rglawpc.com

and

Douglas E. Grover
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, NY 10004
Phone: (212) 344-5400
dgrover@schlamstone.com

If to the Insurance Companies:

E. Joseph O'Neil
PEABODY & ARNOLD LLP
600 Atlantic Avenue
Boston, MA 02210
Phone: (617) 951-4705
eoneil@peabodyarnold.com

and

Alex Fooksman
AIG
80 Pine Street 5th Floor
New York, NY 10005
Phone: (646) 857-2168
alex.fooksman@aig.com

and

David Simantob
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
555 South Flower Street Suite 2900
Los Angeles, CA 90071
Phone: (213) 330-8819
david.simantob@wilsonelser.com

and

Sherry L. Pantages
ALLIANZ GLOBAL CORPORATE & SPECIALTY
2350 West Empire Avenue, Suite 200
Burbank, CA  91504  USA
Phone: (818) 972-5204
sherry.pantages@agcs.allianz.com

and

Christopher Celentano
CHUBB
10 Exchange Place, 9th Floor
Jersey City, NJ 07302
Phone: (201) 479-6398
Christopher.celentano@chubb.com

and

Edward Gibbons
Joyce Noyes
WALKER WILCOX MATOUSEK LLP
One North Franklin Street
Chicago, IL 60606
Phone: (312) 244-6700
egibbons@walkerwilcox.com
jnoyes@walkerwilcox.com

# **EXHIBIT C**

Plan
[*omitted*]

## **EXHIBIT 4**

### **SEXUAL MISCONDUCT CLAIMS FUND PROCEDURES**

**SEXUAL MISCONDUCT CLAIMS**
**RESOLUTION PROCEDURES IN THE CHAPTER 11 CASES**
**OF THE WEINSTEIN COMPANY HOLDINGS LLC AND ITS DEBTOR AFFILIATES**

1.    **PURPOSE**

The purpose of this protocol is to provide for the distribution of funds to holders of Allowed Sexual Misconduct Claims.  This protocol does not apply to Other Tort Claims, which shall recover solely, if allowed, from the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement.

2.    **DEFINITIONS**

    2.1    **Capitalized Terms**

A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan or the Bankruptcy Code and such definitions are incorporated herein by reference.

    2.2    **Defined Terms**

        (a)    "Claims Examiner" means Simone Lelchuk and Jed Melnick of Melnick ADR, LLP.

        (b)    "Claimant" means a Holder of an Allowed Sexual Misconduct Claim.

3.    **RULES OF INTERPRETATION AND GENERAL GUIDELINES**

    3.1    **Sole and Exclusive Method With Respect to the Debtors**
          **and Former Representatives (other than Harvey Weinstein)**

The Plan and this protocol shall together be the sole and exclusive method by which a Claimant may seek monetary distribution on account of a Sexual Misconduct Claim against the Debtors and/or Former Representatives; provided, however, that after a Sexual Misconduct Claim is Allowed and liquidated in accordance with the procedures set forth herein, **a Claimant shall have the option to release Harvey Weinstein or to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in a court of competent jurisdiction**.

Holders of Allowed Sexual Misconduct Claims who do not affirmatively elect to release Harvey Weinstein shall receive 25% of the Liquidated Value of their Allowed Sexual Misconduct Claims in consideration of the release of their Sexual Misconduct Claims against the Released Parties.

Holders of Allowed Sexual Misconduct Claims who affirmatively elect to release Harvey Weinstein shall receive the full Liquidated Value of their Sexual Misconduct Claims.

    3.2    **Conflict with Plan.**

The terms of the confirmed Plan (as it may be amended) or the Confirmation Order shall prevail if there is any conflict between the terms of the Plan and the terms of this protocol.

### 3.3    Non-Compensatory Damages and Other Theories of Liability

In determining the distribution to any Claimant, punitive damages and damages that do not compensate the Claimant shall not be considered or allowed, even if these damages could have been considered or allowed under applicable non-bankruptcy law. While punitive damages may be a tool for punishing behavior and deterring future similar behavior, taking potential punitive and similar damages into account in the context of a limit pool settlement would increase administrative costs and burdens and likely would benefit some Claimants to the detriment of other Claimants.

### 3.4    Withdrawal of Claims

A Claimant can irrevocably withdraw a Sexual Misconduct Claim at any time upon written notice to the Claims Administrator. If a Claimant irrevocably withdraws a Sexual Misconduct Claim, the Claimant shall forever be barred, estopped, and enjoined from asserting such Sexual Misconduct Claim against each of the Debtors and the Released Parties and their respective property (or filing a subsequent proof of claim with respect thereto), and each of the Debtors, the Former Representatives, and their respective chapter 11 estates (as applicable), successors, and property shall be forever released from any and all indebtedness or liability with respect to or arising from such Sexual Misconduct Claim.

### 3.5    Res Judicata Effect

The Claims Examiner's determination with respect to a Sexual Misconduct Claim shall have no preclusive, res judicata, judicial estoppel, or similar effect outside of the Chapter 11 Cases as to any third party and, accordingly, the Claims Examiner's determination may not be used by or against any Claimant or Harvey Weinstein or any other third party in any other matter, case, or proceeding.

The Claims Examiner's determination and information or documents related thereto with respect to a Sexual Misconduct Claim (i) shall not be offered, introduced, admitted, referenced, discussed or otherwise disclosed to the judge, jury (any mediator(s) or arbitrator(s)) or any other finder of fact in any non-bankruptcy lawsuit or proceeding concerning any Non-Released Claim for any reason, except by a Released Party if necessary to prove entitlement to a credit against any amounts owed in connection with a judgment, award, decree or other order with respect to any such Non-Released Claim against any of the Released Parties, (ii) shall not have, and shall not be argued by a Holder of Non-Released Claims to have, preclusive, binding, res judicata, estoppel, or preemptive effect of any kind whatsoever with respect to the amount of any such Holder's Non-Released Claims, and (iii) shall not constitute an adjudication, judgment, trial, hearing on the merits, settlement, resolution of or otherwise establish any parties' liability or obligation for any Non-Released Claims.

### 3.6    Confidentiality and Privilege

All information that the Claims Examiner receives from any source about any Sexual Misconduct Claim, including all documents submitted in support of a Sexual Misconduct Claim (*e.g.*, medical records), shall be held in strict confidence and shall not be disclosed absent an Order of the Bankruptcy Court or the written consent of the Claimant (or such Claimant's counsel of record).

All information that the Claims Examiner receives from any Claimant (including from counsel to such Claimant) shall be subject to a mediation privilege and receipt of such information by the Claims Examiner shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

## 4.    SEXUAL MISCONDUCT CLAIMS EXAMINER

Simone Lelchuk and Jed Melnick of Melnick ADR, LLP have been appointed as the Claims Examiner under the terms of this protocol and an order of the Bankruptcy Court.  The Claims Examiner shall conduct a review of each of the Sexual Misconduct Claims and, according to the guidelines set forth in section 5 below, make determinations upon which individual monetary distributions will be made subject to the Plan.  The Claims Examiner's review as to each Claimant shall be final, subject only to: (1) reconsideration and judicial review as set forth in section 8 below; and (2) the option to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in a court of competent jurisdiction as set forth in section 9 below.

## 5.    PROCEDURE FOR ALLOCATION
## AMONG ALLOWED SEXUAL MISCONDUCT CLAIMS

### 5.1    Proof of Sexual Misconduct Claim

As set forth in the Plan, upon the Effective Date of the Plan, the Debtors shall serve each person that filed a proof of claim asserting a Sexual Misconduct Claim with a long form proof of claim (the "Long Form Proof of Claim").  Holders of Sexual Misconduct Claims must submit the Long Form Proof of Claim to the Claims Examiner within 60 days following the Effective Date of the Plan.

The Claims Examiner shall consider all of the facts and evidence presented by the Claimant in the Claimant's filed Long Form Proof of Claim.

By a date to be established by the Claims Examiner and upon written request by a Claimant or such Claimant's counsel of record, the Claims Examiner may interview any Claimant; provided that any face to face interview shall be conducted by video conference.

### 5.2    Guidelines for Allocation for Allowed Sexual Misconduct Claims

#### (a)    Initial Evaluation

Each Sexual Misconduct Claim will be evaluated by the Claims Examiner.  Before making a final determination regarding a particular Sexual Misconduct Claim, the Claims Examiner shall consider the degree to which the Claimant has proven by a preponderance of the evidence that the sexual misconduct was perpetrated by Harvey Weinstein. The Claims Examiner will evaluate all evidence provided by the Claimant or otherwise available to the Claims Examiner that may enhance or diminish the overall reliability of any asserted Sexual Misconduct Claims.

The Long Form Proof of Claim shall require Claimants to disclose whether such Claimant previously entered into a settlement agreement or executed a release of liability with any of the Released Parties and/or Harvey Weinstein relating to the Sexual Misconduct Claim, the date of

the settlement or release, and to provide a copy of such agreement upon request of the Claims Examiner on a confidential basis. Claimants who previously entered a settlement agreement or release of liability with any Released Party and/or Harvey Weinstein relating to a Sexual Misconduct Claim may only recover for conduct that occurred after the date of the settlement or release of liability; provided, however, releases contained in ordinary course of business employment separation agreements shall not be a basis to disallow a Sexual Misconduct Claim.

(b)    **Evaluation Factors**

The Claims Examiner will review a Claimant's Long Form Proof of Claim and any accompanying evidence according to the guidelines below (the "Point Guidelines"). The Point Guidelines are illustrative of the various types and impacts of conduct, but are not meant to be a complete or conclusive description of all possible fact patterns for which the Claims Examiner may assign points. In evaluating a Claim, the Claims Examiner shall consider the totality of the circumstances of the Sexual Misconduct Claim. The Claims Examiner will also consider the likelihood that the Claimant would have been able to prove such Claimant's claims in court, including the application of relevant statutes of limitation and any other relevant considerations. The fact that a claim may be time-barred under the relevant statute of limitations shall not be used as a total bar to recovery on the Sexual Misconduct Claim.

The Claims Examiner will determine a Point Award in accordance with the Point Guidelines. **The total number of points for which a Claimant may qualify is 100 points.**

| NATURE OF PHYSICAL SEXUAL MISCONDUCT CLAIM<br>MAXIMUM 60 POINTS | | |
|---|---|---|
| **No.** | **Factor** | **Examples** |
| 1. | Type of alleged conduct | Unwanted penetration of any kind, including oral, anal, or vaginal.<br><br>Unwanted sexualized touching, such as being touched by Harvey Weinstein, being coerced or forced to touch Harvey Weinstein, or forced or coerced to masturbate in front of Harvey Weinstein.<br><br>Indecent exposure, such as being exposed to Harvey Weinstein's nudity, partial nudity, or to him masturbating, or being forced or coerced by Harvey Weinstein to remove clothing to expose breast(s), buttocks, or genitals. |
| 2. | Frequency and duration | Number of physical encounters. |
| 3. | Direct physical injury | Unwanted penetration of any kind, including oral, anal, or vaginal; unwanted sexualized touching, such as being touched by Harvey Weinstein, being coerced or forced to touch Harvey Weinstein, or forced or coerced to masturbate in front of Harvey Weinstein; or bruises, scarring, internal or external injuries. |

| 4. | Control of environment | Imprisonment whereby Claimant was physically prevented from leaving the environment, such as being locked in a room in an enclosed space without an easy form of exit (*e.g.*, an airplane or a hotel room); and/or the Claimant was transported to a location at Harvey Weinstein's direction or invitation and then prevented from leaving.  Other examples include being physically restrained by Harvey Weinstein or an attempted or actual sexual assault forced the Claimant to lock herself into a room. |
|---|---|---|

| NATURE OF <u>NON-PHYSICAL</u> SEXUAL MISCONDUCT CLAIM <br> <u>MAXIMUM 30 POINTS</u> | | |
|---|---|---|
| **No.** | **Factor** | **Examples** |
| 5. | Stalking | Repeated contact by or communication from Harvey Weinstein (*e.g.*, in-person, via text messages, email, or phone, or through intermediaries) after declining, avoiding, or expressing reluctance to communicate or meet with Harvey Weinstein. <br><br> Unplanned, unannounced, or otherwise unwelcome visits by Harvey Weinstein at Claimant's residence, lodging, or workplace. <br><br> Claimant was followed, investigated, or otherwise targeted by private investigators retained by or on behalf of Harvey Weinstein. |
| 6. | Type of non-physical sexual misconduct | Verbal sexual harassment may include being asked, explicitly or by implication, to engage in sexual acts or sexual conduct, being subjected to comments about a person's physical attractiveness, being called or exposed to gendered epithets, being subjected to insults based on sex stereotypes (*i.e.*, comments like women are only good for getting married and having children, derogatory comments about menstruation, etc.) <br><br> Employment or professional opportunity conditioned on performing gendered personal tasks for Harvey Weinstein outside of and in addition to the Claimant's profession, including those tasks that involved exposure to Harvey Weinstein's sexual encounters (such as obtaining or having to store or otherwise handle penile dysfunction medication for Harvey Weinstein or cleaning rooms following Harvey Weinstein's sexual encounters). |
| 7. | Frequency and duration | Number of occurrences, including whether Claimant was employed by the Debtors. |
| 8. | Employment retaliation | Unfavorable employment terms or denial of professional opportunity after the Claimant complained, whether in writing or orally, about Harvey Weinstein's sexual misconduct, sexual harassment, and/or sexual discrimination to Harvey Weinstein or others in the workplace, including human resources personnel. |

| IMPACT OF SEXUAL MISCONDUCT MAXIMUM 10 POINTS | | |
|---|---|---|
| **No.** | **Factor** | **Examples** |
| 9. | Emotional distress | Mental health problems and other emotional trauma, whether or not diagnosed or treated, including: paranoia, depression, substance abuse, suicide attempt or suicidal ideation, self-harm, anxiety, flashbacks, post-traumatic stress disorder, damage to personal or familial relationships, and difficulty in obtaining or maintaining employment due to mental or emotional condition resulting from incident(s). |
| 10. | Economic harm | Economic harm including monetary loss attributable to retaliation, termination, or denial of professional opportunity by Harvey Weinstein for resisting or refusing to acquiesce to Harvey Weinstein's sexual conduct or demands or for complaining about such conduct or demands. |
| ADJUSTMENTS TO POINT AWARDS MAXIMUM +/- 20 POINTS (UP TO A MAXIMUM OF 100 TOTAL POINTS) | | |
| **No.** | **Factor** | **Examples** |
| 11. | Age | Age of claimant at time of abuse. |
| 12. | Litigation | What was the outcome of prior litigation? What is the current status of pending litigation? |
| 13. | Corroborating evidence | Items such as documents, emails, text messages, videos, receipts, hotel folios, itineraries, travel records, event tickets, etc. |
| 14. | Limitation on Damages in Applicable Jurisdiction | Are there any limits on compensatory damages in the applicable jurisdiction? |
| DOWNWARD ADJUSTMENTS TO POINT AWARDS MAXIMUM - 35 POINTS | | |
| **No.** | **Factor** | **Examples** |
| 15. | Limitations | What is or would be the applicable statute of limitation? Is the claim timely on its face under the applicable statute of limitations? Are there reasons why, notwithstanding a claim's apparent untimeliness the claim may not be time – barred, after all? Would the law applicable in the relevant jurisdiction lead to the conclusion that there is a reasonable expectation of the time bar being set aside? |

### 5.3    Joint or Several Liability Issues Not Applicable

The primary function of the Sexual Misconduct Claim evaluation is to facilitate the fair and equitable division of the proceeds of this settlement among the various Claimants.  Accordingly, there will be no consideration of joint or several liability issues vis-à-vis non-Debtor individuals or entities that may potentially be liable for the Sexual Misconduct Claim.

## 6.    MINIMUM DISTRIBUTION

Notwithstanding anything to the contrary herein or in the Plan, every holder of an Allowed Sexual Misconduct Claim shall receive a distribution of at least $7,500.  The Claims Examiner, however, shall have the discretion to apply downward adjustments to the minimum distribution amount based on the total number of Sexual Misconduct Claims.

## 7.    MONETARY DISTRIBUTION

Once the Claims Examiner determines each Claimant's Point Award, the Claims Administrator shall then calculate the value of each Point Award.  Each Claimant's Point Award value will be determined by dividing (x) the total amount of dollars in the Sexual Misconduct Claims Fund (approximately $17 million) by (y) the total number of points among all of the Point Awards, the result of which will be the value of one point (the "Point Value").  The Claims Administrator will then multiply the Point Value by each Claimant's Point Award to calculate the Liquidated Value of the Claimant's Sexual Misconduct Claims.  By way of example, if there are 100 claimants, with Point Awards totaling 7,500 points and a total settlement fund of $17 million, each point would be valued at $2,266.67 and a Claimant with 75 points would be allocated $170,000.  Claimants who receive a Point Award of zero points shall not be eligible to receive any monetary distribution, provided, however, such Claimants may seek reconsideration of their Point Award pursuant to the process set forth in Section 9 below.

At the conclusion of the claims determination process, as set forth in Section 8 below, the Claims Administrator shall make a monetary distribution to Holders of Allowed Sexual Misconduct Claims in accordance the written payment instructions provided to the Claims Administrator on the Long Form Proof of Claim.  Although the Claims Administrator is authorized to make interim distributions, the final monetary distribution will depend on (a) the number of Electing Judicial Claimants (defined below) and (b) the conclusion of all Final Judicial Determinations (defined below).

The Plan Proponents anticipate that an interim distribution will be made within approximately 7 months from the Effective Date of the Plan.

## 8.    NOTICE OF SEXUAL MISCONDUCT CLAIMS DETERMINATION

### 8.1    Claim Determination

After the Claims Examiner has fully evaluated all Sexual Misconduct Claims and the Claims Administrator has calculated the Liquidated Value of each Claimant's Sexual Misconduct Claims, the Claims Administrator shall notify each Claimant in writing (the "Determination Notice") of their Point Award and the estimated Liquidated Value with respect to their Sexual Misconduct Claims (the "Claims Determination").

The Claims Administrator shall mail the Determination Notice to the Claimant or such Claimant's counsel of record, or in the case of unrepresented parties, to the last address based on the Claimant's filed proof of claim.  Upon mailing of a Claimant's Determination Notice where such Claimant is issued a Point Award of one or more points, such mailing shall constitute a withdrawal

of the Settlement Parties' objections to such Claimant's Sexual Misconduct Claims (if any) and such Claimant's Sexual Misconduct Claims shall be deemed Allowed Sexual Misconduct Claims.

If a Claimant receives a Point Award of zero points and is therefore ineligible for monetary distribution, the Claims Determination will explain the reason(s) for such Point Award.  Upon mailing of a Claimant's Determination Notice where such Claimant is issued a Point Award of zero points, such mailing shall constitute an objection to the allowance of such Claimant's Sexual Misconduct Claims.  If such Claimant fails to seek reconsideration as set forth in Section 8.2 below, such Claimant's Sexual Misconduct Claims shall be deemed Disallowed Sexual Misconduct Claims.

### 8.2    Reconsideration

The Determination Notice shall be final and non-appealable unless the Claimant makes a timely request for the Point Award to be reconsidered by the Claims Examiner.  The Claimant may request reconsideration of the Point Award by delivering a written request for reconsideration to the Claims Examiner within 14 calendar days after the date of mailing of the Determination Notice. The Claimant, with the request for reconsideration, may submit additional evidence and argument in support of such request upon a showing that such additional information was not previously available or was not previously provided to the Claims Examiner.  If a Claimant fails to request reconsideration within 14 calendar days after the date of mailing of the Determination Notice, the Claims Examiner's determination shall become final and non-appealable, provided, however, **a Claimant shall have the option to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in a court of competent jurisdiction in accordance with section 9 below**.

If a Claimant makes a timely request for reconsideration, after reconsideration of the Claims Determination by the Claims Examiner, the Claims Administrator will issue a notice (a "Reconsideration Notice") of the outcome of its decision (the "Final Claims Determination"). If the Claimant accepts the Final Claims Determination, such Final Claims Determination shall be final and non-appealable; provided, however, **a Claimant shall have the option to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in a court of competent jurisdiction in accordance with section 9 below**.

### 8.3    Judicial Review of Point Award

Claimants that reject the Final Claims Determination may appeal the Final Claims Determination to the District Court.[1]

Election of Judicial Review.  Within 14 days after a Claimant receives a Reconsideration Notice (the "Election Deadline"), such Claimant must (i) notify the Claims Administrator of the Claimant's intent to seek judicial review of Final Claims Determination ("Judicial Review") by submitting a written notice to the Claim Administrator (a "Judicial Review Election Notice") and (ii) file a copy of such Judicial Review Election Notice with the District Court.  Claimants who

---

[1]    Nothing in these procedures shall be deemed a waiver or modification of a Claimant's right to a trial by jury as to Harvey Weinstein.

fail to submit and file a Judicial Review Election Notice by the Election Deadline shall be deemed to accept the Final Claims Determination, and such Final Claims Determination shall become final, binding, non-appealable and not subject to review by any Court.

Claimants who submit and file a Judicial Review Election Notice by the Election Deadline ("Electing Judicial Claimants") shall have no right to receive any distribution from the Sexual Misconduct Claims Fund absent the issuance of an order or judgment of the District Court confirming or revising the Point Award for such Claimant's Sexual Misconduct Claims that are no longer subject to appeal and for which no appeal is pending (a "Final Judicial Determination").

Limited Scope of Judicial Review.  The Judicial Review shall be limited to the Final Claims Determination and the Point Award thereunder; provided, however, the District Court shall have plenary review of the Final Claims Determination and Point Award thereunder.  The maximum points that the District Court may award on account of a Sexual Misconduct Claim is 100 points.

Recovery Limited to Final Judicial Determination.  To the extent that a Claimant's Final Judicial Determination with respect to such Claimant's Sexual Misconduct Claims results in a Point Award that is more or less than the Point Award in the Final Claims Determination, the Claimant will receive payment from the Sexual Misconduct Claims Fund that will be based on the Point Award of the Final Judicial Determination.

Consolidation of Judicial Reviews.  Subject to notice and a hearing and at the discretion of the District Court, all judicial review proceedings elected pursuant to this Section 8.3 may be heard and determined in one or more consolidated proceedings to the extent practicable, in a manner acceptable to the District Court, and in accordance with applicable law.

Attorneys' Fees and Expenses.  Electing Judicial Claimants shall be required to pay their own attorneys' fees and expenses in connection with the Judicial Review.  The Plan Proponents have structured these Sexual Misconduct Claims Resolution Procedures in a manner that is intended to reduce administrative costs and attorneys' fees attendant to administering the Sexual Misconduct Claims Fund including, but not limited to, retaining the Claims Examiner and Claims Administrator in a pro bono capacity, which thereby maximizes the amount of funds available for distribution to Claimants.  The Judicial Review process is included for the benefit of all Claimants and to comport with applicable law.  Accordingly, all attorney's fees and expenses of the Claims Administrator and/or Claims Examiner in connection with the Judicial Review shall be paid from the Sexual Misconduct Claims Fund.  To the extent there are pending Judicial Reviews at the time of any interim distribution from the Sexual Misconduct Claims Fund, the Claims Administrator shall create a reserve for its expected attorney's fees and expenses related to such Judicial Reviews.

## 9.    ELECTION TO RELEASE HARVEY WEINSTEIN

Upon the later of (i) the Claims Determination; (ii) a Final Claims Determination; or (ii) a Final Judicial Determination, the Claims Administrator shall provide each Claimant with the option to release Harvey Weinstein or to not release Harvey Weinstein and pursue an action against him (but not any Released Party) in another court of competent jurisdiction (including the right to a jury trial) (the "Election Notice").  The Election Notice shall include the estimated minimum Liquidated Value of a Claimant's Allowed Sexual Misconduct Claims.

**Claimants who do not affirmatively elect to release Harvey Weinstein shall receive 25% of the Liquidated Value of their Allowed Sexual Misconduct Claims in consideration of the release of their Sexual Misconduct Claims against the Released Parties (except the Insurance Companies as it relates to such Claimant's Sexual Misconduct Claims against Harvey Weinstein).**

**Claimants who affirmatively elect to release Harvey Weinstein shall receive the full Liquidated Value of their Sexual Misconduct Claims in consideration of the release of their Sexual Misconduct Claims against the Released Parties and Harvey Weinstein.**

Claimants must return the Election Notice to the Claims Administrator within 14 calendar days after the date of mailing of the Election Notice.  If a Claimant **does not affirmatively elect to release Harvey Weinstein** (a "<u>Non-Releasing Claimant</u>"), such Non-Releasing Claimant shall receive 25% of the Liquidated Value of its Allowed Sexual Misconduct Claims and pursue an action against Harvey Weinstein (but not any Released Party) in another court of competent jurisdiction.

For each Non-Releasing Claimant, the remaining 75% of the Liquidated Value of their Allowed Sexual Misconduct Claim shall be allocated to a reversionary fund for the benefit of the Insurance Companies.

## 10.    <u>ELECTION TO IMMEDIATELY PURSUE HARVEY WEINSTEIN</u>

Notwithstanding anything to the contrary contained herein, a Claimant may, upon a preliminary showing of a valid Sexual Misconduct Claim, elect on the Long Form Proof of Claim to receive the minimum distribution amount ($7,500), waive all further rights with respect to the Sexual Misconduct Claims Fund, and immediately pursue an action against Harvey Weinstein (but not any Released Party) in another court of competent jurisdiction.

**SCHEDULE 1**

**RELEASED PROFESSIONALS**

1.  *For the Debtors*
    Cravath, Swaine & Moore LLP
    Richards Layton & Finger, PA
    Seyfarth Shaw LLP

2.  *For the UCC*
    Pachulski Stang Ziehl & Jones LLP
    Berkeley Research Group, LLC

3.  *For Marc Lasry*
    Anderson Kill P.C.
    Paul Weiss Rifkind Wharton & Garrison LLP

4.  *For Barbara Schneeweiss*
    Barta Tate

5.  *For Jeff Sackman and Lance Maerov*
    Fried, Frank, Harris, Shriver & Jacobson LLP

6.  *For Tim Sarnoff*
    Latham & Watkins LLP

7.  *For Harvey Weinstein*
    Lewis Brisbois Brisgaard & Smith LLP
    Pasich LLP

8.  *For Paul Tudor Jones*
    Patterson Belknap Webb & Tyler LLP

9.  *For Tarak Ben Ammar*
    Pillsbury Winthrop Shaw Pittman LLP

10. *For Richard Koenigsberg*
    Reed Smith LLP

11. *For James Dolan*
    Rosenberg, Giger and Perala P.C.
    Skadden Arps Slate Meagher & Flom LLP

12. *For Dirk Ziff*
    Skadden Arps Slate Meagher & Flom LLP

13. *For David Glasser*
    Schlam Stone & Dolan LLP

14. *For Robert Weinstein*
    Schulte Roth & Zabel LLP
    Sauer & Wagner LLP

15. *For Frank Gil*
    White, Hilferty & Albanese, P.C.
    Ween & Kozek
    Bowles, Liberman & Newman

*HIGHLY CONFIDENTIAL*

# SCHEDULE 2

**INSURANCE COMPANIES' FUNDING AMOUNTS**

[*SEALED*]

**<u>Exhibit B</u>**

**Form of Effective Date Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
:
In re: : Chapter 11
:
THE WEINSTEIN COMPANY HOLDINGS, : Case No. 18-10601 (MFW)
LLC, *et al.*, :
: (Jointly Administered)
Debtors.[1] :
: **Re: D.I. [___]**
-------------------------------------------------------------x

## NOTICE OF EFFECTIVE DATE AND ENTRY OF ORDER CONFIRMING PLAN PROPONENTS' FIFTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

PLEASE TAKE NOTICE that, on January 20, 2021, the above-captioned debtors (the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") appointed in their chapter 11 cases filed the *Fifth Amended Joint Chapter 11 Plan of Liquidation* [D.I. 3182] (as amended, modified or supplemented, the "Plan") with the United States Bankruptcy Court for the District of Delaware (the "Court").[2]

PLEASE TAKE FURTHER NOTICE that, on _____, 2021, the Court entered the *Order Confirming Plan Proponents' Fifth Amended Joint Chapter 11 Plan of Liquidation* [D.I. [____]] (the "Confirmation Order").

PLEASE TAKE FURTHER NOTICE that the Effective Date of the Plan occurred on _____, 2021.

PLEASE TAKE FURTHER NOTICE that, except as otherwise provided in the Initial Bar Date Order or the Plan, requests for payment of Administrative Expense Claims must be filed with the Court and served on the Liquidation Trustee and its counsel and the U.S. Trustee within forty-five (45) days from service of this Notice (*i.e.* ____, 2021). Any Administrative Expense Claims that are not asserted in accordance herewith and with Section 3.7.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their estates, the Liquidation Trust, or any of their assets or property, and the holder thereof shall be enjoined from

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/twc.

[2] Capitalized terms used in this Confirmation Order but not otherwise defined shall have the same meaning as in the Plan.

commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such claim and shall be subject to the injunction provision.

PLEASE TAKE FURTHER NOTICE that each Bankruptcy Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must (i) file and serve a properly noticed final fee application by no later than forty-five (45) days after the Effective Date and (ii) be paid solely from the Liquidation Trust (a) the full unpaid amount as is Allowed by the Court within 7 days after the date that such Claim is Allowed by Order of the Court or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidation Trustee. Any Professional Fee Claim that is not asserted in accordance herewith and with Section 3.8 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their estates, the Liquidation Trust, or any of their assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such claim and shall be subject to the injunction provision. Any Holder of a Claim or Interest (or their representative, including, but not limited to, the Committee) or the Liquidation Trustee may object to the allowance of Professional Fee Claims.

PLEASE TAKE FURTHER NOTICE that, in accordance with Section 8.1 of the Plan, on the Effective Date, except as otherwise provided in the Plan, or the Confirmation Order, and except for executory contracts and unexpired leases which the Debtors either have assumed, have rejected or have filed a motion to assume or reject prior to the Confirmation Date and which remains pending as of the Confirmation Date, all executory contracts and unexpired leases for goods, services, or premises used in connection with Debtors' business operations shall be deemed rejected by the Debtors on the Effective Date.  In accordance with Section 8.2 of the Plan, Claims created by the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with the Court and served on the Liquidation Trustee, no later than thirty (30) days after the Effective Date (*i.e.* ____, 2021). Any Claims for rejection of executory contracts or unexpired leases pursuant to the Plan for which a proof of claim is not filed and served within such time will be forever barred and shall not be enforceable against the Debtors or their Estates, assets, properties, or interests in property, or against the Liquidation Trust.

PLEASE TAKE FURTHER NOTICE that the Plan, Confirmation Order and all other documents and pleadings filed in the Debtors' chapter 11 cases may be viewed free of charge at *https://dm.epiq11.com/case/twc/info*, or for a fee on the Court's website at *http://www.deb.uscourts.gov*.

RLF1 24660236v.3