# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                          :
                                          :
THE WEINSTEIN COMPANY HOLDINGS            :
LLC, et al.,                              :
                                          :
                  Debtors.¹               :
                                          :
                                          :
------------------------------------------------------------ x
```

Chapter 11

Case No. 18-10601 (MFW)

(Jointly Administered)

**Re: D.I. 3182**

## DECLARATION OF IVONA SMITH IN SUPPORT OF
## FIFTH AMENDED CHAPTER 11 PLAN OF LIQUIDATION

I, Ivona Smith, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to best of my knowledge, information, and belief:

1.       I am a board member of The Weinstein Company Holdings LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors").  I have served in this capacity since my appointment in April 2018.  I submit this declaration (the "Declaration") in support of the *Fifth Amended Chapter 11 of Liquidation* (as may be amended, modified, or supplemented, the "Plan") proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Committee").²

2.       Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, including the Plan and Disclosure Statement, and information supplied to me by the

---

¹ The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837).  The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

² Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

Debtors' advisors and my opinion based upon my experience, knowledge and information concerning the Debtors' Chapter 11 Cases.

3.      The Plan provides for, among other things, releases by the Debtors (Section 7.2.1) (the "Debtors' Releases"), third-party releases (Section 7.2.2) (the "Third-Party Releases" and, together with the Debtors' Releases, the "Plan Releases"), a channeling injunction (Section 5.8) (the "Channeling Injunction"), a plan injunction (Section 7.3) (the "Plan Injunction" and, together with the Channeling Injunction, the "Injunctions") and an exculpation (Section 14.5) (the "Exculpation").  For the reasons set forth herein, I believe that the Plan Releases and the Injunctions are necessary and appropriate under the circumstances, given in exchange for fair and reasonable consideration, and are in the best interests of the Debtors, their estates and all parties in interest. Further, I believe that the Exculpation is necessary and appropriate under the circumstances.

## MEDIATION SESSIONS

4.      In an effort to resolve claims of various parties in the chapter 11 cases, certain key parties in interest, including, among others, the Debtors, the Committee, the Former Representatives, certain Holders of Sexual Misconduct Claims, and the Insurance Companies (collectively, the "Mediation Parties"), participated in formal and informal confidential mediation sessions throughout the Chapter 11 Cases.  The first mediation session took place in May 2018 (the "May Mediation Session").  From the May Mediation Session through the filing of the Plan, the Debtors' counsel, on behalf of myself and the other members of the Debtors' board of directors (the "Board"), took part in certain confidential mediation sessions with the Mediation Parties and each of their respective counsel and the Debtors' counsel kept the Board apprised of the substance of the mediation sessions.  During the mediation sessions, the

Mediation Parties discussed, among other things, the release of certain parties' claims and related injunctions to support those releases as necessary conditions to achieving any global settlement of claims in connection with any proposed chapter 11 plan.

5.    Based on my knowledge of the mediation sessions, I believe that the Injunctions and Plan Releases were necessary inducements for the signatories to the Plan Support Agreement (the "Settlement Parties") to reach agreement on the contributions set forth therein and as reflected in the Settlement embodied in the Plan.  Absent the Injunctions and Plan Releases set forth in the Plan, I do not believe that the Settlement Parties would have reached agreement on the terms of the Plan Support Agreement and Settlement, and without the Plan Support Agreement and Settlement, I do not believe that the Debtors could formulate and consummate a confirmable chapter 11 plan.

## RELEASES, INJUNCTIONS AND EXCULPATION

6.    For the reasons set forth below, I believe that the Injunctions, Plan Releases and Exculpation set forth in the Plan are necessary and appropriate under the circumstances and otherwise satisfy the applicable legal standards in the Third Circuit.

**A.    The Plan Releases Should be Approved**

       *a.  The Debtors' Releases*

7.    To my understanding, section 7.2.1 of the Plan provides for releases by the Debtors, on behalf of, among others, themselves and their respective Estates from, among other things, any and all claims, including any direct or derivative claims asserted or assertable by or

on behalf of any of the Debtors.[3]  Subject to the exceptions found in section 7.2.3 of the Plan, the Debtors' Releases include the Released Parties[4] and Harvey Weinstein.

8.     I believe the Debtors have exercised their reasonable business judgment in proposing the Debtors' Releases and that the Debtors' Releases are reasonable and satisfy the standard that courts generally apply when reviewing settlements.  As discussed above, the Debtors' Releases were the subject of extensive arm's-length negotiations among all of the parties and are an essential part of the Plan.  In addition, as set forth herein, I believe that each of the Released Parties shares an identity of interest with the Debtors and/or has provided a substantial contribution to the Debtors without which the Plan is not possible.  The Plan provides Holders of Claims with recoveries that they would likely not otherwise receive absent the treatment of Claims under the Plan.  And as set forth in the Voting Declaration, all of the Voting Classes in which votes were cast have overwhelmingly voted in favor of the Plan.[5]  Accordingly, I believe that the Debtors' Releases are appropriate and meet the applicable standards for approval in the Third Circuit.

---

[3] The description of the Debtors' Releases is a summary and for convenience only.  The terms of Section 7.2.1 of the Plan shall control in all respects.

[4] "**Released Parties**" means: (i) the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, the Former Representatives and the Insurance Companies; (ii) professionals of firms specified in Schedule 1 to the Plan; and (iii) each such persons' or entities' current and former officers, directors and board representatives, predecessors, successors, assigns, insiders, subsidiaries, Affiliates, principals, equity holders, members, trustees, partners, managers, employees, agents, members of any boards or similar bodies of such persons, advisory board members, insurers, reinsurers, and such persons' respective heirs, executors, estates, and nominees, in each case as applicable and in their capacity as such, with respect to liability for the actions or inactions of the Former Representatives, the Debtors, the Estate, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies; *provided*, *however*, those persons or entities who fall within subparagraph (iii) (other than persons or entities specified in subparagraphs (i) and (ii)) are not released with respect to their own actions related to Sexual Misconduct Claims, regardless of their relationship with the Former Representatives, the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies, to the extent such action constitutes aiding, abetting or conspiracy to prevent the disclosure of or to cover up any Sexual Misconduct Claim (each a "Non-Released Party").

[5] Class 4 (82.98% in both amount and number); Class 5 did not return any ballot; and Class 6 (96.39% in amount and 96.43% in number).

b.  *The Third-Party Releases*

9.    I also understand that, except for Holders of General Unsecured Claims in Class 6, pursuant to Section 7.2.2 of the Plan, all Holders of Claims against and Interests in the Debtors are deemed to release the Released Parties from any and all Claims that could be brought by such Holders of Claims and/or Interests against the Released Parties in any way related to the Debtors, their businesses, operations, activities, or their chapter 11 cases; *provided*, *however*, that, as it relates to parties other than the Debtors, the Third-Party Releases do not apply to Holders of Opt-Out GUCs. The Third-Party Releases also are subject to the exceptions found in section 7.2.3 of the Plan.[6]

10.    I have been advised of the applicable standard for approval of consensual third-party releases established in the Third Circuit.  Holders of Claims in Classes 1, 2 and 3 are unimpaired and deemed to accept the Plan.  No Holders of Claims in Class 5 voted on the Plan, and with respect to Holders of Claims in Classes 4 and 6, I understand that the majority of Holders of Claims in those classes voted in favor of the Plan.  I also understand that Holders of General Unsecured Claims in Class 6 were provided with the right to opt out of the Third-Party Releases and that the Third-Party Releases do not apply to those Holders of Claims that exercised this opt out right.  Accordingly, with respect to Classes 1, 2 and 3 and the Holders of Claims in Classes 4 and 6 that voted to accept the Plan, I believe that the Third-Party Releases are consensual and meet the applicable standard for approval in the Third Circuit.

11.    In addition, I have been advised of the applicable standard for approval of non-consensual third-party releases established in the Third Circuit. As set forth herein, substantial contributions have been provided in exchange for the Plan Releases, including the

---

[6] The description of the Third-Party Releases is a summary and for convenience only.  The terms of Section 7.2.2 of the Plan shall control in all respects.

Third-Party Releases, without which there would be no Plan and little to no Distributions to Holders of Allowed Claims. Given the substantial contributions provided in exchange for the Third-Party Releases and that the Third-Party Releases are a critical component of the Plan, I believe that the Third-Party Releases are appropriate even to the extent they are non-consensual and meet the applicable standard for approval in the Third Circuit.

> c.  *Identity of Interest*

12.    I believe that the Released Parties share an identity of interest with the Debtors sufficient to approve the Plan Releases.

13.    The Non-Debtor Affiliates and Non-Debtor Additional Affiliates are, or were once affiliated with, the Debtors and are, or in certain instances may be, covered by the Insurance Policies. Thus, suits against the Non-Debtor Affiliates and/or Non-Debtor Additional Affiliates may involve in the Debtors, and any recoveries against the Non-Debtor Affiliates and/or Non-Debtor Additional Affiliates may be covered by the Insurance Policies. To the extent any such claims are eligible for coverage under the Insurance Policies, such recoveries may deplete the coverage available to the Debtors thereunder. Accordingly, the Non-Debtor Affiliates and Non-Debtor Additional Affiliates share an identity of interest with the Debtors.

14.    Certain of the Insurance Policies are joint Director and Officer ("D&O") and Employment Practices Liability ("EPL") policies, which cover the Debtors and the Former Representatives. The D&O and EPL Insurance Policies are "wasting" policies whereby each dollar expended to reimburse covered fees and expenses or to satisfy covered claims against parties reduces available coverage thereunder on a dollar-for-dollar basis. Further, I understand that the Debtors may also have certain indemnification obligations in favor of the Former Representatives under certain organizational documents. Thus, suits against the Former

Representatives may involve the Debtors and any recoveries against the Former Representatives will deplete the Debtors' coverage under the Insurance Policies, may give rise to certain indemnification obligations, and otherwise deplete limited estate resources. Accordingly, the Former Representatives share an identity of interest with the Debtors.

15. Finally, each of the Settlement Parties is a signatory to the Plan Support Agreement. The Plan Support Agreement establishes the framework for the Settlement embodied in the Plan. In the absence of the Plan Support Agreement and Settlement, the Debtors cannot confirm a chapter 11 plan. Accordingly, each of the Released Parties and the Debtors share an aligned interest in confirming the Plan.

16. Based upon the foregoing, I believe that the Released Parties and the Debtors share an identity of interest.

       *d. Substantial Contribution*

17. I believe that the Insurance Companies and Former Representatives are making, or will make, substantial contributions under the Plan, for the benefit of the Sexual Misconduct Claims Fund and Liquidation Trust, in exchange for the Plan Releases.

18. As described in more detail in the Plan and the Plan Support Agreement, the substantial contributions made include:

    b. <u>The Insurance Companies</u>. The Insurance Companies will contribute the Settlement Amount ($35,214,822.30) to the Debtors for the benefit of their estates and creditors, of which (i) $17,064,525.60 will fund the Sexual Misconduct Claims Fund for the benefit of Sexual Misconduct Claimants, (ii) $8,407,305,00.00 will fund the Liquidation Trust for the benefit of, among others, Holders of Other Tort Claims and General Unsecured Claims, and (iii) $9,743,052.00 will fund 50% of the Former Representatives' Defense Costs through and including April 25, 2019.

    c. <u>Former Representatives</u>. As set forth in Section 5.7 of the Plan, in exchange for the Settlement Payment and the releases set forth in Section 7 of the Plan, the Former Representatives have agreed to waive, in part,

their entitlement to reimbursement of all defense costs and expenses as a priority to payment of any liability or settlement amount pursuant to the terms of the applicable Insurance Policies.  As a result of such waiver, the Former Representatives shall be reimbursed only 50% of the fees and expenses incurred by the Former Representatives as of April 25, 2019. For any other defense costs or expenses incurred by the Former Representatives after such date, the Former Representatives will be reimbursed 0% of their fees and expenses. Absent the waiver provided by the Former Representatives, reimbursement of all of the Former Representatives' defenses costs and expenses would have priority in right of payment against payment of any liability or settlement amount pursuant to the terms of the applicable Insurance Policy.

19.     I believe that the amounts contributed by the Insurance Companies and the Former Representatives' waiver of their rights to full and priority reimbursement under the applicable Insurance Policies are fair and reasonable and provide the Holders of Claims against the Debtors with a meaningful recovery which they may not otherwise receive absent the Plan Releases.

20.     Based upon the foregoing, I believe that the Insurance Companies and the Former Representatives have provided the Debtors with a substantial contribution under the Plan.

**B.     Plan Releases and Channeling Injunction are Indispensable to Plan and Only Feasible Option for the Chapter 11 Cases**

21.     From my perspective, the centerpiece of the Plan is the Sexual Misconduct Claims Fund and the contemplated distribution to holders of Allowed Sexual Misconduct Claims.

22.     In the absence of the Channeling Injunction and Plan Releases, the Debtors likely would be subject a substantial number of claims and lawsuits related to Sexual Misconduct Claims. Absent the Sexual Misconduct Claims Fund, the Channeling Injunction and Plan Releases, Holders of Sexual Misconduct Claims would be forced to litigate their claims in the tort system.  Even if successful at obtaining a judgment against the Debtors, Holders of Sexual

Misconduct Claims would have recourse only to the limited, dwindling funds of the Debtors' Insurance Policies with respect to recovery on such claims, and the Insurance Companies would have the right to assert coverage defenses.  Furthermore, without the Channeling Injunction and Plan Releases, the Debtors would be subject to a "race to the courthouse" whereby the Debtors' assets would be consumed by those claimants who first file suit, leaving nothing for the remaining Holders of Sexual Misconduct Claims.  Such a result would threaten the equitable treatment of Sexual Misconduct Claims writ large.

23.     The Insurance Companies and Former Representatives have expressed that all monetary contributions, and waivers to reimbursement, contemplated by the Plan are contingent on securing the Channeling Injunction and Plan Releases on the terms set forth in the Plan.  The Insurance Companies and Former Representatives have also conditioned any contributions pursuant to the Plan Support Agreement, Settlement, and Plan on securing the Plan Releases of all Released Parties covered under the applicable Insurance Policies.  Absent the finality that all potential claims will be resolved pursuant to the Plan, the Insurance Companies and Former Representatives have expressed their unwillingness to make any contribution, or waivers to reimbursement, under the Plan.

24.     Further, if all of the Released Parties are not covered by the Channeling Injunction and Plan Releases, this may expose the Debtors to the possibility of continued prosecution of the Sexual Misconduct Claims that would involve all parties with rights under the Debtors' Insurance Policies in litigation and result in substantial costs being incurred that would diminish the assets available for distribution to all Holders of Claims.  Thus, I believe that including each of the Released Parties in the Channeling Injunction and Plan Releases is fair and equitable with respect to persons who may assert Sexual Misconduct Claims in light of the

benefits provided or to be provided to the Sexual Misconduct Claims Fund on behalf of such Released Parties.

**C.    The Plan's Exculpation Provision Are Permissible and Should be Approved**

25.    I understand that the Plan contains an Exculpation, which exculpates the Exculpated Parties for certain acts or omissions. I also understand that the Exculpation does not exculpate acts or omissions that constitute gross negligence, fraud or willful misconduct or any obligations that they have under or in connection with the Plan, the Plan Documents, or any transactions contemplated thereby and is limited to estate fiduciaries.

26.    I believe that approval of the Exculpation is reasonable and appropriate under the circumstances because the Exculpated Parties have participated in the chapter 11 cases in good faith, and such provision is necessary to protect them from collateral attacks related to any good faith acts or omissions in connection with, or related to, among other things, the chapter 11 cases, the Plan Support Agreement, Settlement and Plan.    Accordingly, the Exculpation should be approved.

**D.    The Corresponding Plan Injunction Should be Approved**

27.    It is my understanding that Section 7.3 of the Plan sets out the Plan Injunction provisions with respect to the Debtors' Releases, the Third Party Releases, the Sexual Misconduct Claims Fund and/or the Liquidation Trust Assets. I believe the Plan Injunction is necessary to preserve and enforce the Debtors' Releases and Third-Party Releases, is necessary to protect the Released Parties, the Sexual Misconduct Claims Fund and the Liquidation Trust Assets, and is narrowly tailored to achieve that purpose. I further believe that the Plan Injunction is a key component of the Plan. Accordingly, the Plan Injunction should be approved.

*[remainder of page intentionally left blank]*

## CONCLUSION

28.     In light of the foregoing, I believe that the Injunctions, Plan Releases and Exculpation are necessary and appropriate, in the best interest of the Debtors, their estates, and all parties in interest, and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  January 20, 2021
        New York, New York

By:_____
Name:  Ivona Smith
Title: Director, The Weinstein Company Holdings, LLC

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x
:
THE WEINSTEIN COMPANY HOLDINGS      :
LLC, *et al.*,
:
Debtors.[1]
:
:
:
:
-------------------------------------------------------------- x

Chapter 11

Case No. 18-10601 (MFW)

(Jointly Administered)

**Re: D.I. 3182**

## DECLARATION OF IVONA SMITH IN SUPPORT OF
## FIFTH AMENDED CHAPTER 11 PLAN OF LIQUIDATION

I, Ivona Smith, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to

best of my knowledge, information, and belief:

      1.      I am a board member of The Weinstein Company Holdings LLC and its affiliated

debtors and debtors in possession (collectively, the "Debtors").  I have served in this capacity

since my appointment in April 2018.  I submit this declaration (the "Declaration") in support of

the *Fifth Amended Chapter 11 of Liquidation* (as may be amended, modified, or supplemented,

the "Plan") proposed by the Debtors and the Official Committee of Unsecured Creditors (the

"Committee").[2]

      2.      Except as otherwise noted, all facts in this Declaration are based on my personal

knowledge of the matters set forth herein, information gathered from my review of relevant

documents, including the Plan and Disclosure Statement, and information supplied to me by the

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837).  The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

Debtors' advisors and my opinion based upon my experience, knowledge and information concerning the Debtors' Chapter 11 Cases.

3.     The Plan provides for, among other things, releases by the Debtors (Section 7.2.1) (the "Debtors' Releases"), third-party releases (Section 7.2.2) (the "Third-Party Releases" and, together with the Debtors' Releases, the "Plan Releases"), a channeling injunction (Section 5.8) (the "Channeling Injunction"), a plan injunction (Section 7.3) (the "Plan Injunction" and, together with the Channeling Injunction, the "Injunctions") and an exculpation (Section 14.5) (the "Exculpation").  For the reasons set forth herein, I believe that the Plan Releases and the Injunctions are necessary and appropriate under the circumstances, given in exchange for fair and reasonable consideration, and are in the best interests of the Debtors, their estates and all parties in interest. Further, I believe that the Exculpation is necessary and appropriate under the circumstances.

## MEDIATION SESSIONS

4.     In an effort to resolve claims of various parties in the chapter 11 cases, certain key parties in interest, including, among others, the Debtors, the Committee, the Former Representatives, certain Holders of Sexual Misconduct Claims, and the Insurance Companies (collectively, the "Mediation Parties"), participated in formal and informal confidential mediation sessions throughout the Chapter 11 Cases.  The first mediation session took place in May 2018 (the "May Mediation Session").  From the May Mediation Session through the filing of the Plan, the Debtors' counsel, on behalf of myself and the other members of the Debtors' board of directors (the "Board"), took part in certain confidential mediation sessions with the Mediation Parties and each of their respective counsel and the Debtors' counsel kept the Board apprised of the substance of the mediation sessions.   During the mediation sessions, the

Mediation Parties discussed, among other things, the release of certain parties' claims and related injunctions to support those releases as necessary conditions to achieving any global settlement of claims in connection with any proposed chapter 11 plan.

5.      Based on my knowledge of the mediation sessions, I believe that the Injunctions and Plan Releases were necessary inducements for the signatories to the Plan Support Agreement (the "Settlement Parties") to reach agreement on the contributions set forth therein and as reflected in the Settlement embodied in the Plan. Absent the Injunctions and Plan Releases set forth in the Plan, I do not believe that the Settlement Parties would have reached agreement on the terms of the Plan Support Agreement and Settlement, and without the Plan Support Agreement and Settlement, I do not believe that the Debtors could formulate and consummate a confirmable chapter 11 plan.

## RELEASES, INJUNCTIONS AND EXCULPATION

6.      For the reasons set forth below, I believe that the Injunctions, Plan Releases and Exculpation set forth in the Plan are necessary and appropriate under the circumstances and otherwise satisfy the applicable legal standards in the Third Circuit.

**A.      The Plan Releases Should be Approved**

*a. The Debtors' Releases*

7.      To my understanding, section 7.2.1 of the Plan provides for releases by the Debtors, on behalf of, among others, themselves and their respective Estates from, among other things, any and all claims, including any direct or derivative claims asserted or assertable by or

on behalf of any of the Debtors.[3]  Subject to the exceptions found in section 7.2.3 of the Plan, the Debtors' Releases include the Released Parties[4] and Harvey Weinstein.

8.     I believe the Debtors have exercised their reasonable business judgment in proposing the Debtors' Releases and that the Debtors' Releases are reasonable and satisfy the standard that courts generally apply when reviewing settlements.  As discussed above, the Debtors' Releases were the subject of extensive arm's-length negotiations among all of the parties and are an essential part of the Plan.  In addition, as set forth herein, I believe that each of the Released Parties shares an identity of interest with the Debtors and/or has provided a substantial contribution to the Debtors without which the Plan is not possible.  The Plan provides Holders of Claims with recoveries that they would likely not otherwise receive absent the treatment of Claims under the Plan.  And as set forth in the Voting Declaration, all of the Voting Classes in which votes were cast have overwhelmingly voted in favor of the Plan.[5]  Accordingly, I believe that the Debtors' Releases are appropriate and meet the applicable standards for approval in the Third Circuit.

---

[3] The description of the Debtors' Releases is a summary and for convenience only.  The terms of Section 7.2.1 of the Plan shall control in all respects.

[4] "**Released Parties**" means: (i) the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, the Former Representatives and the Insurance Companies; (ii) professionals of firms specified in Schedule 1 to the Plan; and (iii) each such persons' or entities' current and former officers, directors and board representatives, predecessors, successors, assigns, insiders, subsidiaries, Affiliates, principals, equity holders, members, trustees, partners, managers, employees, agents, members of any boards or similar bodies of such persons, advisory board members, insurers, reinsurers, and such persons' respective heirs, executors, estates, and nominees, in each case as applicable and in their capacity as such, with respect to liability for the actions or inactions of the Former Representatives, the Debtors, the Estate, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies; *provided*, *however*, those persons or entities who fall within subparagraph (iii) (other than persons or entities specified in subparagraphs (i) and (ii)) are not released with respect to their own actions related to Sexual Misconduct Claims, regardless of their relationship with the Former Representatives, the Debtors, the Estates, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies, to the extent such action constitutes aiding, abetting or conspiracy to prevent the disclosure of or to cover up any Sexual Misconduct Claim (each a "Non-Released Party").

[5] Class 4 (82.98% in both amount and number); Class 5 did not return any ballot; and Class 6 (96.39% in amount and 96.43% in number).

### b. The Third-Party Releases

9.      I also understand that, except for Holders of General Unsecured Claims in Class 6, pursuant to Section 7.2.2 of the Plan, all Holders of Claims against and Interests in the Debtors are deemed to release the Released Parties from any and all Claims that could be brought by such Holders of Claims and/or Interests against the Released Parties in any way related to the Debtors, their businesses, operations, activities, or their chapter 11 cases; *provided*, *however*, that, as it relates to parties other than the Debtors, the Third-Party Releases do not apply to Holders of Opt-Out GUCs. The Third-Party Releases also are subject to the exceptions found in section 7.2.3 of the Plan.[6]

10.     I have been advised of the applicable standard for approval of consensual third-party releases established in the Third Circuit. Holders of Claims in Classes 1, 2 and 3 are unimpaired and deemed to accept the Plan. No Holders of Claims in Class 5 voted on the Plan, and with respect to Holders of Claims in Classes 4 and 6, I understand that the majority of Holders of Claims in those classes voted in favor of the Plan. I also understand that Holders of General Unsecured Claims in Class 6 were provided with the right to opt out of the Third-Party Releases and that the Third-Party Releases do not apply to those Holders of Claims that exercised this opt out right. Accordingly, with respect to Classes 1, 2 and 3 and the Holders of Claims in Classes 4 and 6 that voted to accept the Plan, I believe that the Third-Party Releases are consensual and meet the applicable standard for approval in the Third Circuit.

11.     In addition, I have been advised of the applicable standard for approval of non-consensual third-party releases established in the Third Circuit. As set forth herein, substantial contributions have been provided in exchange for the Plan Releases, including the

---

[6] The description of the Third-Party Releases is a summary and for convenience only. The terms of Section 7.2.2 of the Plan shall control in all respects.

Third-Party Releases, without which there would be no Plan and little to no Distributions to Holders of Allowed Claims.  Given the substantial contributions provided in exchange for the Third-Party Releases and that the Third-Party Releases are a critical component of the Plan, I believe that the Third-Party Releases are appropriate even to the extent they are non-consensual and meet the applicable standard for approval in the Third Circuit.

       *c.  Identity of Interest*

12.     I believe that the Released Parties share an identity of interest with the Debtors sufficient to approve the Plan Releases.

13.     The Non-Debtor Affiliates and Non-Debtor Additional Affiliates are, or were once affiliated with, the Debtors and are, or in certain instances may be, covered by the Insurance Policies.  Thus, suits against the Non-Debtor Affiliates and/or Non-Debtor Additional Affiliates may involve in the Debtors, and any recoveries against the Non-Debtor Affiliates and/or Non-Debtor Additional Affiliates may be covered by the Insurance Policies.  To the extent any such claims are eligible for coverage under the Insurance Policies, such recoveries may deplete the coverage available to the Debtors thereunder.  Accordingly, the Non-Debtor Affiliates and Non-Debtor Additional Affiliates share an identity of interest with the Debtors.

14.     Certain of the Insurance Policies are joint Director and Officer ("D&O") and Employment Practices Liability ("EPL") policies, which cover the Debtors and the Former Representatives.  The D&O and EPL Insurance Policies are "wasting" policies whereby each dollar expended to reimburse covered fees and expenses or to satisfy covered claims against parties reduces available coverage thereunder on a dollar-for-dollar basis.  Further, I understand that the Debtors may also have certain indemnification obligations in favor of the Former Representatives under certain organizational documents.  Thus, suits against the Former

Representatives may involve the Debtors and any recoveries against the Former Representatives will deplete the Debtors' coverage under the Insurance Policies, may give rise to certain indemnification obligations, and otherwise deplete limited estate resources. Accordingly, the Former Representatives share an identity of interest with the Debtors.

15. Finally, each of the Settlement Parties is a signatory to the Plan Support Agreement. The Plan Support Agreement establishes the framework for the Settlement embodied in the Plan. In the absence of the Plan Support Agreement and Settlement, the Debtors cannot confirm a chapter 11 plan. Accordingly, each of the Released Parties and the Debtors share an aligned interest in confirming the Plan.

16. Based upon the foregoing, I believe that the Released Parties and the Debtors share an identity of interest.

    *d.  Substantial Contribution*

17. I believe that the Insurance Companies and Former Representatives are making, or will make, substantial contributions under the Plan, for the benefit of the Sexual Misconduct Claims Fund and Liquidation Trust, in exchange for the Plan Releases.

18. As described in more detail in the Plan and the Plan Support Agreement, the substantial contributions made include:

      b. <u>The Insurance Companies</u>. The Insurance Companies will contribute the Settlement Amount ($35,214,822.30) to the Debtors for the benefit of their estates and creditors, of which (i) $17,064,525.60 will fund the Sexual Misconduct Claims Fund for the benefit of Sexual Misconduct Claimants, (ii) $8,407,305,00.00 will fund the Liquidation Trust for the benefit of, among others, Holders of Other Tort Claims and General Unsecured Claims, and (iii) $9,743,052.00 will fund 50% of the Former Representatives' Defense Costs through and including April 25, 2019.

      c. <u>Former Representatives</u>. As set forth in Section 5.7 of the Plan, in exchange for the Settlement Payment and the releases set forth in Section 7 of the Plan, the Former Representatives have agreed to waive, in part,

their entitlement to reimbursement of all defense costs and expenses as a priority to payment of any liability or settlement amount pursuant to the terms of the applicable Insurance Policies.  As a result of such waiver, the Former Representatives shall be reimbursed only 50% of the fees and expenses incurred by the Former Representatives as of April 25, 2019. For any other defense costs or expenses incurred by the Former Representatives after such date, the Former Representatives will be reimbursed 0% of their fees and expenses. Absent the waiver provided by the Former Representatives, reimbursement of all of the Former Representatives' defenses costs and expenses would have priority in right of payment against payment of any liability or settlement amount pursuant to the terms of the applicable Insurance Policy.

19.     I believe that the amounts contributed by the Insurance Companies and the Former Representatives' waiver of their rights to full and priority reimbursement under the applicable Insurance Policies are fair and reasonable and provide the Holders of Claims against the Debtors with a meaningful recovery which they may not otherwise receive absent the Plan Releases.

20.     Based upon the foregoing, I believe that the Insurance Companies and the Former Representatives have provided the Debtors with a substantial contribution under the Plan.

**B.     Plan Releases and Channeling Injunction are Indispensable to Plan and Only Feasible Option for the Chapter 11 Cases**

21.     From my perspective, the centerpiece of the Plan is the Sexual Misconduct Claims Fund and the contemplated distribution to holders of Allowed Sexual Misconduct Claims.

22.     In the absence of the Channeling Injunction and Plan Releases, the Debtors likely would be subject a substantial number of claims and lawsuits related to Sexual Misconduct Claims. Absent the Sexual Misconduct Claims Fund, the Channeling Injunction and Plan Releases, Holders of Sexual Misconduct Claims would be forced to litigate their claims in the tort system.  Even if successful at obtaining a judgment against the Debtors, Holders of Sexual

Misconduct Claims would have recourse only to the limited, dwindling funds of the Debtors' Insurance Policies with respect to recovery on such claims, and the Insurance Companies would have the right to assert coverage defenses. Furthermore, without the Channeling Injunction and Plan Releases, the Debtors would be subject to a "race to the courthouse" whereby the Debtors' assets would be consumed by those claimants who first file suit, leaving nothing for the remaining Holders of Sexual Misconduct Claims. Such a result would threaten the equitable treatment of Sexual Misconduct Claims writ large.

23.     The Insurance Companies and Former Representatives have expressed that all monetary contributions, and waivers to reimbursement, contemplated by the Plan are contingent on securing the Channeling Injunction and Plan Releases on the terms set forth in the Plan. The Insurance Companies and Former Representatives have also conditioned any contributions pursuant to the Plan Support Agreement, Settlement, and Plan on securing the Plan Releases of all Released Parties covered under the applicable Insurance Policies. Absent the finality that all potential claims will be resolved pursuant to the Plan, the Insurance Companies and Former Representatives have expressed their unwillingness to make any contribution, or waivers to reimbursement, under the Plan.

24.     Further, if all of the Released Parties are not covered by the Channeling Injunction and Plan Releases, this may expose the Debtors to the possibility of continued prosecution of the Sexual Misconduct Claims that would involve all parties with rights under the Debtors' Insurance Policies in litigation and result in substantial costs being incurred that would diminish the assets available for distribution to all Holders of Claims. Thus, I believe that including each of the Released Parties in the Channeling Injunction and Plan Releases is fair and equitable with respect to persons who may assert Sexual Misconduct Claims in light of the

benefits provided or to be provided to the Sexual Misconduct Claims Fund on behalf of such Released Parties.

**C.**     **The Plan's Exculpation Provision Are Permissible and Should be Approved**

25.     I understand that the Plan contains an Exculpation, which exculpates the Exculpated Parties for certain acts or omissions. I also understand that the Exculpation does not exculpate acts or omissions that constitute gross negligence, fraud or willful misconduct or any obligations that they have under or in connection with the Plan, the Plan Documents, or any transactions contemplated thereby and is limited to estate fiduciaries.

26.     I believe that approval of the Exculpation is reasonable and appropriate under the circumstances because the Exculpated Parties have participated in the chapter 11 cases in good faith, and such provision is necessary to protect them from collateral attacks related to any good faith acts or omissions in connection with, or related to, among other things, the chapter 11 cases, the Plan Support Agreement, Settlement and Plan.    Accordingly, the Exculpation should be approved.

**D.**     **The Corresponding Plan Injunction Should be Approved**

27.     It is my understanding that Section 7.3 of the Plan sets out the Plan Injunction provisions with respect to the Debtors' Releases, the Third Party Releases, the Sexual Misconduct Claims Fund and/or the Liquidation Trust Assets. I believe the Plan Injunction is necessary to preserve and enforce the Debtors' Releases and Third-Party Releases, is necessary to protect the Released Parties, the Sexual Misconduct Claims Fund and the Liquidation Trust Assets, and is narrowly tailored to achieve that purpose. I further believe that the Plan Injunction is a key component of the Plan. Accordingly, the Plan Injunction should be approved.

*[remainder of page intentionally left blank]*

## CONCLUSION

28.     In light of the foregoing, I believe that the Injunctions, Plan Releases and Exculpation are necessary and appropriate, in the best interest of the Debtors, their estates, and all parties in interest, and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:    January 20, 2021
          New York, New York

By:_____
Name:  Ivona Smith
Title: Director, The Weinstein Company Holdings, LLC