**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*[1] | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered) |

**JOINT DECLARATION OF ELIZABETH A. FEGAN AND STEVE W. BERMAN IN SUPPORT OF THE APPLICATION OF LOUISETTE GEISS, CO-CHAIR OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES RENDERED AS A SUBSTANTIAL CONTRIBUTION IN THESE CASES UNDER 11 U.S.C. § 503(b)(3)(D)**

Elizabeth A. Fegan and Steve W. Berman, pursuant to 28 U.S.C. § 1746, jointly declare to the best of our knowledge, information, and belief:

1. We submit this declaration in support of the Application of Louisette Geiss, Co-Chair of the Official Committee of Unsecured Creditors (the "Application") pursuant to Sections 503(b)(3)(D) and 503(b)(4) of Title 11 of the United States Code (the "Bankruptcy Code") seeking payment of professional fees and expenses incurred by Ms. Geiss and other victims represented by Ms. Geiss' Counsel based on the substantial contributions made for the benefit of the Debtors' estates in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), filed contemporaneously herewith by Brown Rudnick LLP ("Brown Rudnick") and Hagens Berman

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

Sobol Shapiro, LLP ("Hagens Berman," and collectively with Brown Rudnick, "Geiss Counsel") in the Chapter 11 Cases.[2]

2.  We have personal knowledge of the facts set forth below, and if called upon to do so, could and would testify competently thereto. We are authorized to submit this Declaration on behalf of Hagens Berman.[3]

3.  We understand that, in order to be allowable administrative expenses for a substantial contribution, a party's expenses must be "actual" and "necessary" expenses incurred by a creditor "in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). We understand that the test for determining whether a creditor has made a substantial contribution looks to whether the creditor's efforts "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mecham Financial Inc.*, 27 F.3d 937 (3d Cir. 1994).

4.  We believe that Geiss Counsel's efforts in the Chapter 11 Cases have resulted in actual, tangible, and demonstrable benefit to the estate, the Victims who will benefit from the Sexual Misconduct Claims Fund, and other creditors. Consequently, we believe that Geiss Counsel's Application for fees and expenses up to $647,877.33 as an administrative expense should be allowed. This includes the actual and necessary expenses of $147,877.33 – including the $89,961.00 Hagens Berman incurred in administrative mediation expenses, sharing with the Debtors one-half of all JAMS mediation expenses.

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Application, or if not in the Application, then in the Plan.

[3] Mr. Berman is the Managing Partner of Hagens Berman and Ms. Fegan was a partner of Hagens Berman during much of this time but is now a partner at Fegan Scott LLC ("Fegan Scott").

5. Geiss Counsel's substantial contributions to the estate and its creditors include, but are not limited to, the following:

6. Through Geiss Counsel's extensive negotiation and mediation work with various of the Victims, the NYOAG, Debtors, Debtors' former officers and directors, the UCC, and Insurance Companies in the critical period from June 2018 to June 2019 and well beyond, the Debtors have achieved their goal of confirming and consummating a Chapter 11 Plan with the consent of major stakeholders pursuant to a global settlement (the "Global Settlement") embodied in the Plan.  *See* Plan at Section 5.  That Global Settlement is the cornerstone of the Plan.

7. The Global Settlement achieved through Geiss Counsel's mediation efforts avoids what would otherwise likely have been time-consuming and costly litigation that threatened to derail the Debtors' Chapter 11 Cases.

8. But for Geiss Counsel's efforts, which resulted in the basic structure of the Global Settlement being facilitated, there would not have been a settlement reached in the end.  All of the critical pieces of the ultimate settlement that this Bankruptcy Court approved were developed during the period that Geiss Counsel was tasked on behalf of all the interested parties to try to deliver a global settlement.

9. By achieving maximum global peace among the key stakeholders at and in connection with the mediation process, Geiss Counsel played a critical role that led to a global resolution that facilitated the Insurance Companies funding the Global Settlement.

10. The Global Settlement provisions Geiss Counsel negotiated – including the Sexual Misconduct Claims Fund – were necessary to the ultimate approval of the Plan and provided a substantial contribution to the estate.

A. **Procedural History**

11.     On December 6, 2017, on behalf of Plaintiffs Louisette Geiss, Katherine Kendall, Zoe Brock, Sarah Ann Thomas (a/k/a Sarah Ann Masse), Melissa Sagemiller, and Nannette Klatt ("Original *Geiss* Plaintiffs"), Hagens Berman filed the original Class Action Complaint in this litigation, *Geiss et al. v. The Weinstein Company Holdings, LLC et al.,* No. 1:17-cv-09554-AKH (S.D.N.Y.) (such complaint, the "Class Action Complaint" or "*Geiss* Complaint"). The Original *Geiss* Plaintiffs alleged Weinstein isolated Plaintiffs and Class Members in an attempt to engage in unwanted sexual conduct that took many forms: flashing, groping, fondling, harassing, battering, false imprisonment, sexual assault, attempted rape and/or completed rape. Plaintiffs sought recovery for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), civil battery, assault, and intentional and negligent infliction of emotional distress against the Debtors, Non-Debtor Entities, and Director Defendants, including Harvey Weinstein. Plaintiffs also sought recovery from the Debtors, Non-Debtor Entities and Director Defendants for the negligent supervision or retention of Harvey Weinstein.

12.     On February 11, 2018, the New York State Office of the Attorney General (the "NYOAG") filed a lawsuit entitled The People of the State of New York v. The Weinstein Company LLC, The Weinstein Company Holdings LLC, Harvey Weinstein, and Robert Weinstein, Case No. 0450293/2018 (N.Y. Sup. Ct.) (the "NYOAG Lawsuit").

13.     The NYOAG Lawsuit alleged that Harvey Weinstein, in his capacity as TWC's co-owner and co-CEO, created a hostile work environment at TWC by repeatedly and persistently sexually harassing female employees, including demanding sexual contact as a quid pro quo for continued employment or career advancement, subjecting female employees to verbal abuse and demeaning work tasks, and forcing female employees to engage in unwanted sexual contact, and

alleging that Robert Weinstein and TWC aided and abetted these violations of law by failing to investigate and/or stop Harvey Weinstein's unlawful activities, all in violation of state and city human rights laws.

14. On February 20, 2018, eleven defendants filed six motions to dismiss the *Geiss* Complaint.

15. On March 19, 2018 ("Petition Date"), The Weinstein Company Holdings LLC and its affiliates (the "Debtors") filed these Chapter 11 Cases in the United States Bankruptcy Court for the District of Delaware, Case No. 18-10601 (Walrath, J.).

16. Class Plaintiff Louisette Geiss was appointed to serve as Co-Chair of the Official Committee of Unsecured Creditors ("UCC") in the Chapter 11 Cases. Based on her appointment, we retained Brown Rudnick to represent the interests of Louisette Geiss and other Post-2005 Victims in the Chapter 11 Cases.

17. Additional motions to dismiss the *Geiss* Complaint were filed on March 22, 2018, March 26, 2018, and April 20, 2018.

18. On April 20, 2018, Weinstein filed a motion in this Court under Fed. Bankr. R. P. 2004 for discovery related to emails that he exchanged with alleged victims, which were in the possession of the Debtors, for the purpose of using those emails in his criminal defense.

19. On May 9, 2018, this Court approved the sale of substantially all the assets of the Debtors to Lantern Entertainment. The sale closed on July 13, 2018.

20. On May 25, 2018, Harvey Weinstein was arrested in New York and arraigned by the New York District Attorney ("NYDA") on charges of criminal sexual act in the first degree (Penal Law §130.50(1)), rape in the first degree (Penal Law §130.35(1)), and rape in the third degree (Penal Law §130.25(1)). A grand jury formally indicted Weinstein on those charges on

May 30, 2018, in the matter *The People of the State of New York v. Harvey Weinstein*, Docket No. 2018NY023971. On June 5, 2018, Weinstein pleaded not guilty.

21. On June 1, 2018, Hagens Berman filed a combined opposition to the nine motions to dismiss the *Geiss* Complaint.

22. On June 1, 2018, on behalf of Caitlin Dulany, Larissa Gomes, and Melissa Thompson, Hagens Berman filed the second Class Action Complaint in *Dulany et al. v. Miramax Film NY, LLC et al.,* No. 1:18-cv-4857-AKH (S.D.N.Y.), based on similar allegations and causes of action.

23. On July 2, 2018, the NYDA filed a superseding indictment charging Harvey Weinstein with the crimes of predatory sexual assault (Penal Law §130.15(2)), criminal sexual act in the first degree (Penal Law §130.5(1)), rape in the first degree (Penal Law §130.35(1)), and rape in the third degree (Penal Law §130.25(1)).

24. On September 12, 2018, District Court held oral argument on the motions to dismiss the *Geiss* Complaint. The Court granted the motions to dismiss without prejudice and with leave to amend.

25. On October 31, 2018, on behalf of the Original *Geiss* Plaintiffs and *Dulany* Plaintiffs, we filed the First Amended Class Action Complaint in the *Geiss* litigation (the "<u>First Amended Complaint</u>"). In addition to amending the factual allegations, Plaintiffs also added defendants, including but not limited to The Walt Disney Company, and former employees of the Debtors and Non-Debtor Entities. Additionally, Hagens Berman added claims for violations of the Trafficking Victims Protection Act and false imprisonment.

26. On December 17, 2018 and December 28, 2018, certain defendants filed motions to dismiss the First Amended Complaint. Additional defendants filed subsequent motions to dismiss on January 28, 2019, February 7, 2019, and February 13, 2019.

27. On January 31, 2019 and February 27, 2019, Hagens Berman filed Plaintiffs' oppositions to the motions to dismiss the First Amended Complaint.

28. On March 13, 2019, the District Court held oral argument on the pending motions to dismiss the First Amended Complaint.

29. On April 17, 2019, Hagens Berman filed the third Class Action Complaint in this litigation, *Jill Doe v. The Weinstein Company Holdings, LLC et al.,* No. 1:19-cv-3430-AKH (S.D.N.Y.), based on similar allegations and causes of action as the First Amended Class Action Complaint.

30. On April 18, 2019, the District Court granted in part and denied in part Harvey Weinstein's motion to dismiss and granted the remaining Defendants' motions to dismiss.

31. On January 6, 2020, in *The People of the State of California v. Harvey Weinstein*, No. BA483663 (Cal. Sup. Ct.), Weinstein was charged with forcible oral copulation (Penal Code §288(c)(2)(A)), sexual penetration by force (Penal Code §289(a)(1)(A)), forcible rape (Penal Code §261(a)(2)), and sexual battery by restraint (Penal Code §243.4(a)), and on April 10, 2020, Weinstein was charged with an additional count of sexual battery by restraint (Penal Code §243.4(a)).

32. On March 11, 2020, in *The People of the State of New York v. Harvey Weinstein* (N.Y. Sup. Ct.), Harvey Weinstein was sentenced for his convictions of first-degree criminal sexual act and third-degree rape. He received consecutive prison sentences of 20 years and three

years, respectively. The sentences include five years of supervision after release and require Weinstein to register as a sex offender.

### B. Mediation Facilitation

33. From the inception of the Chapter 11 Cases, Geiss Counsel vigorously sought a global resolution that would minimize expenses and vindicate the legitimate interests of all parties. Geiss Counsel led substantial settlement negotiations among key stakeholders, including defendants, the NYOAG, Debtors, the UCC, and Insurance Companies, including in-person mediation sessions overseen by mediator Jed Melnick of JAMS ADR.

34. Hagens Berman, in it its capacity as counsel to Ms. Geiss and other sexual misconduct claimants, incurred actual and necessary expenses to facilitate the negotiations among key stakeholders including sharing with the debtors one-half of all JAMS mediation expenses.

35. Hagens Berman also attended regular telephonic and in-persons meetings of, and negotiations with, the UCC, together with Ms. Geiss and attorneys from Brown Rudnick, including Ed Weisfelner and Sigmund Wissner-Gross.

36. During the mediation process, in our capacity as counsel to Ms. Geiss and other sexual misconduct claimants, we personally were in constant contact with the mediator, both before, during, and after in-person mediation sessions.

37. Geiss Counsel attended numerous mediation sessions, on June 13, 2018, June 22, 2018, October 11, 2018, November 6-7, 2018, December 11-12, 2018, February 4, 2019, April 25, 2019, and May 29, 2019. Other mediation sessions overseen by the mediator which did not include the Plaintiffs include May 14, 2018 (initial session, limited participants), May 25, 2018 (Defendants, UCC, and Insurance Companies), August 16, 2018 (Defendants only), and October 24, 2018 (Insurance Companies only).

38. Further, after the June 22, 2018 in-person mediation session that was held at Debtors' counsel's offices, Hagens Berman, it its capacity as counsel to Ms. Geiss and other sexual misconduct claimants, undertook to secure the involvement of as many other tort victims who had filed their own separate lawsuits as possible. Those lawsuits were pending in California, New York state and federal district courts, Canada, and the United Kingdom. These efforts were critical to secure the global settlement including the Sexual Misconduct Claims Fund embodied in the Plan.

39. Numerous critical all-hands in-person mediations were conducted at Brown Rudnick's New York offices on November 6-7, 2018 and December 11-12, 2018, at which all parties were represented in person or by phone, the efforts to secure a global deal required our constant efforts before, after, and between those dates.

40. During these mediation sessions, including on October 11, 2018, Elizabeth Fegan, made numerous hours-long presentations to the Insurance Companies and defendants regarding the pending cases, theories of liability, court rulings, sexual misconduct events which could potentially trigger various policies, Defendants' knowledge of wrongdoing, and other information intended to maximize the potential recovery.

41. During an intensive period from June 2018 to June 2019, Hagens Berman was in constant contact with the mediator and interested parties to try to achieve a global settlement that advanced the interests of the Victims, and benefited the Debtors, the UCC, and other interested parties such as the NYOAG.

42. We, or other Hagens Berman attorneys, participated in numerous additional negotiation sessions and phone conferences with the interested parties throughout and after that

intensive time-period, both in person and via telephone – including but not limited to April 23, 2019, July 2, 2019, August 8, 2019, August 15, 2019, September 16, 2019, and November 8, 2019.

43. This complex and difficult effort to secure the Global Settlement that was endorsed by the vast majority of individual tort victims and by the NYOAG's office only occurred as a result of Geiss Counsel's joint efforts, working on a coordinated basis to secure the maximum coordinated support for a global settlement, since the Insurance Companies, who were expected to be the primary source of funding of any global settlement, wanted "maximum global peace" among the parties before committing to fund the settlement.

44. Debtors consented to Geiss Counsel leading the mediation efforts during a critical period in the mediation process. Geiss Counsel likewise received the proxy of the UCC and the class plaintiffs to act on their behalf during critical periods in the mediation process.

45. These negotiations were hard fought and conducted at arms' length by experienced counsel. This intensive period of negotiations eventually led to an agreement in principle and a term sheet outlining the contours of a settlement.

46. The parties signed a settlement term sheet in late 2019 reflecting the results of these negotiations.

47. With the term sheet in place, the key stakeholders continued the painstaking work of negotiating the terms of a settlement agreement. Many further negotiation sessions occurred among the Parties, including in person and Zoom drafting sessions—continuing negotiation and coordination of the terms of a proposed Class Settlement Agreement, Global Settlement Agreement, and Joint Plan of Liquidation. These negotiations and drafting sessions occurred on the following dates, including but not limited to: March 2, 2020, March 12, 2020, March 19, 2020,

March 26, 2020, April 16, 2020, May 15, 2020, June 10, 2020, June 24, 2020, July 21, 2020, and August 28, 2020. This months-long process resulted in the Plan confirmed by this Court.

48. The Global Settlement embodied in the Plan confirmed by this Court and consummated by the Debtors reflects in its structure and major material terms the resolution reached through the mediation process that Geiss Counsel led. In particular, it follows a structure under which funding was provided by the Insurance Companies, releases are provided by the Debtors, as many tort victims as possible participate in the Global Settlement and recover from the Sexual Misconduct Claims Fund, and the NYOAG participates as well.

49. During critical periods in the negotiation process, Geiss Counsel stepped into a leadership role and assumed responsibility for trying to facilitate a reconciliation of the interests of the major stakeholders, which would benefit the Victims, the UCC, and the Debtors. Had Geiss Counsel failed to bring any one of those parties into the settlement process under the structure discussed above, the Victims' recovery would have been imperiled and the outcome of these Chapter 11 Cases would not have been the same.

50. Looking back over the history of the Chapter 11 Cases, the work of Geiss Counsel in leading the mediations and driving them toward a settlement term sheet laid the groundwork for the Global Settlement. Without that work, we do not believe the Global Settlement would have emerged.

51. Geiss Counsel dedicated substantial time, effort, resources, and expertise to successfully negotiate the settlement of this matter to the substantial contribution to the bankrupt estate and creditors.

52. For the foregoing reasons, we believe the relief requested in the Application should be granted.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 5, 2021

_____
Elizabeth A. Fegan

_____
Steve W. Berman