UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS LLC, *et al.*[1] | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>(Jointly Administered) |
|---|---|

**DECLARATION OF THOMAS P. GIUFFRA IN OPPOSITION TO THE APPLICATION OF LOUISETTE GEISS, CO-CHAIR OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES RENDERED AS A SUBSTANTIAL CONTRIBUTION IN THESE CASES UNDER 11 U.S.C. § 503(b)(3)(D)**

Thomas P. Giuffra, pursuant to 28 U.S.C. § 1746, deposes and declares that the following is true under penalties of perjury:

1. I am a member of the law firm of Rheingold, Giuffra, Ruffo & Plotkin LLP, counsel for Plaintiff Alexandra Canosa in her direct action against Harvey Weinstein, The Weinstein Company Holdings, LLC and The Weinstein Company, LLC pending before the Honorable Paul A. Engelmayer, U.S.D.J. In the United States District Court, Southern District of New York (No. 18 Civ. 4115).

2. This Declaration is submitted in opposition to *the Application of Louisette Geiss, Co-Chair of the Official Committee of Unsecured Creditors, for Compensation for Services Rendered and Reimbursement of Expenses Rendered as a Substantial Contribution in These Cases under 11 U.S.C. § 503(b)(3)(D)*, and in support thereof respectfully state as follows.

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are 3837. The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/twc.

{00030643. }

**Introduction**

3. The true parties in interest seeking compensation for services rendered and reimbursement of expenses in this matter, are the law firms of Hagens Berman Sobol Shapiro and Brown Rudnick LLP (hereinafter "Hagens Berman"). Both firms represented a putative class action for a small group of survivors which was soundly rejected by Alvin Hellerstein of the Southern District of New York on July 14, 2020.

4. Notably, the motion is submitted by Louisette Geiss for payment of legal fees and expenses incurred *by Ms. Geiss and other victims represented by Hagens Berman.*[2] Simply put, Hagens Berman is using one of its *own clients* as a "front" for a motion obviously submitted on its own behalf to recoup legal fees and expenses that it incurred as a result largely of its failed class action.

5. Obviously, as experienced class action lawyers, when Hagens Berman took on the representation of a small group of survivors to create a class action, it recognized that there was a possibility that there would be a small recovery or no recovery at all or that its class would fail.

6. Respectfully, the Bankruptcy Court should not be used as a "back stop" to bail Hagens Berman out of the expenses incurred as a result of the failed class action effort especially at the expense of other survivor's and/or creditors.

7. It is well settled that substantial contribution claims are permitted only in *rare* circumstances. Here Hagens Berman are effectively filing a claim on their own behalf for attorney's fees and expenses incurred as a result of their own failed class action.

8. Hagens Berman has failed to provide anything more than a cursory summary of its claims, they cannot show that the benefit to the estate was anything other than incidental actions taken in its own interest and the most elementary requirements to satisfy such a claim are absent. Movants

---

[2] Based on the fact that the true party in interest seeking these fees and expenses is Hagens Berman and not the creditor, they will be referred herein as movant.

are thus not entitled to an administrative claim for substantial contribution.

## Factual Statement

9.  Factually there are many statements contained in the Declarations of the moving parties. I agree that certain events occurred on certain dates. However, I disagree with many of the alleged factual representations regarding the mediation process and the efforts by the attorneys who now recount their version of what occurred. Unfortunately, I am constrained by a confidentiality agreement that I entered into as part of this process which prevents me from recounting what occurred during the mediation sessions or to comment about the efforts of the attorneys seeking fees and expenses for these failed efforts. I am happy to discuss what occurred *in camera* with the Court. Suffice to say I disagree with the representations of counsel that their efforts were successful or helpful to the survivors.

10.  I would note that ultimately, my client directed me to no longer participate in the mediation process based on what occurred mid-way during the proceedings.

11.  I would further observe that in the supporting Declarations of the attorneys offered to justify the instant application, the overwhelming majority of efforts that they are now trying to somehow link to the Bankruptcy Court proceeding, were in fact devoted to their efforts to craft a global class action settlement in the Southern District of New York and not a settlement in this Court.

## Argument

**A. Movants are not authorized to file an application for attorney's fees and expenses on their own behalf under Sections 503(b)(3) and (4) of the Bankruptcy Code.**

12.  Under the majority view and plain language of sections 503(b)(3)(D) and (4) of the Bankruptcy Code, Movants may not seek reimbursement of compensation and expenses on their own behalf, particularly when movants have not paid, nor are obligated to pay, the compensation

{00030643. }

requested.

13.     In the instant matter, Hagens Berman are using one of their clients, Ms. Geiss, as a "front" to pursue enhanced fees and reimbursement of expenses incurred as a result of their failed class action.

14.     Sections 503(b)(3)(D) and (4) of the Bankruptcy Code provide:

> After notice and a hearing, there shall be administrative expenses other than claims allowed under section 502(f) of this title, including-
>
> (3)     the *actual and necessary expenses*, other than compensation specified in paragraph (4) of this subsection, *incurred by-*
> (D)     a creditor, indenture trustee, an equity security holder, or *committee representing creditors or equity security holders* other than a committee appointed under section 1102 of this title in making a substantial contribution in a case under chapter 9 or 11 of this title;
> (4)     *reasonable contribution for professional services rendered by an attorney or accountant of an entity whose expense is allowable under paragraph H (3) of this subsection,* based on the time nature and value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

15.     The plain language of sections 503(b)(3)(D) and (4) of the Bankruptcy Code dictates that these provisions be read in conjunction. *Lebron v. Mechen Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994 (stating "Section 503(b)(4) authorizes awards of legal and accounting fees only in the scope of Sec. 503(b)(3)."); *In re Glickman, Berkowitz, Levnson & Winer*, 196 B.R.291, 295 (Bankr. E.D. Pa. 1996) (same).

16.     Accordingly, the natural reading of these provisions is that the "entity" who may file a request for payment …under subsection (b)(4) is the same "entity" whose expense is allowable under subsection (b)(3)(D), i.e., the creditor. *In re Olsen*, 334 B.R. 104, 106 (Bankr. S.D.N.Y. 2005) (citing *Worldcom, Inc.,* No. 02-13533, ex. A. at 6-7 (July 8, 2005) (Order denying the

Request of Akin Gump Strauss Hauer & Feld LLP for Post-Petition Pre-Appointment Fees Pursuant to Section 11 U.S.C. Section 503(b)).

17. Thus, the right to request compensation under section 503(b) belongs to Creditors Committee *only if they actually incurred an obligation* and not to the attorney. The Creditors Committee may apply for reimbursement of expenses from the estate for its *own* expenses, not those of third parties. Id.; see also *Lebron*, 27 F.3d at 944 (stating that "four categories of persons may apply for reimbursement of expenses: (1) creditors, (2) indenture trustees, (3) equity stakeholders, and (4) creditor and equity holder committees other than appointed official committees appointed under 11 U.S.C. Sec. 1102) may apply for reimbursement of expenses."); *In re American Preferred Prescription, Inc.*, 194 B.R. 721 (Bankr. E.D.N.Y. 1996) (holding that a "firm is not a creditor of the Debtor, and does not have standing to apply for fees pursuant to Sec. 503(a)(3)(D) and (4)").

18. In the instant matter, the party in interest who is actually making this application is Hagens Berman who is utilizing one of its clients who sit on the Creditors Committee as a substitute. This is prohibited.

**B. The Creditors Committee Did Not Incur Any Expense as a Result of The Representation of Hagens Berman:**

19. Section 503(b)(3) expressly covers the "***actual***, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, ***incurred by a committee representing creditors****… in making a substantial contribution in a case under chapter* 9 or 11 of this title." 11 USC Sec. 503 (b)(3)(D). This statute contemplates that the fees covered by subsection (b)(4), like those covered by subsection (b)(3) will have been actually "incurred "by the creditor." *Olsen*, 334 B.R. at 107. This reading is consistent with the plain language interpretation of sections 503(b)(3) and (4) by the Third Circuit in *Lebron*. 27 F3d. at 944.

{00030643. }

20.   It is well settled that when the creditor has incurred no obligation to pay his attorney, "*that attorney cannot be said to be seeking fees from the estate 'on the creditor's behalf.*"' Olsen, 334 B.R. at 107.

21.   Unless the applicant has an allowable claim under § 503(b)(3), its professional fees cannot be reimbursed under § 503(b)(4). See *In re Worldwide Direct, Inc.*, 334 B.R. at 120-21. The Creditor's Committee has not incurred *any expenses* related to Hagens Berman's representation. Accordingly, it cannot be reimbursed.

22.   Here, while the Substantial Contribution Application has technically been made by the Creditors Committee, in effect, it is an application for reimbursement of compensation and expenses filed by Hagens Berman on their own behalf through an individual client who was appointed to the Creditors Committee.

23.   This fact is plainly acknowledged by Fegan and Berman in the Substantial Contribution Application. See Sub. Cont. App. At 1 ("We submit this declaration in support of the Application of Louisette Geiss, Co-Chair of the Official Committee of Unsecured Creditors pursuant to Sections 503(b)(3)(D) and 503(b)(4) of Title 11 of the United States Code seeking payment of professional fees and expenses incurred by *Ms. Geiss and other victims represented by Ms. Geiss' Counsel* based on substantial contributions made for the benefit of the Debtors' estates.).

24.   Accordingly, Ms. Geiss cannot be said to be seeking fees from the estate on the behalf of Claimant's Committee (which never retained Hagens Berman), but *merely for the attorneys who represented her* and other survivors individually.

25.   Presumably, Hagens Berman was representing Ms. Geiss and others pursuant to a contingency fee agreement or a class action agreement in which they would be paid a court

approved sum in the event that the District Court approved of a class settlement and not under a billable hour type retainer.

26. Accordingly, Hagens Berman's compensation would be limited to whatever percentage of the recovery they would have been entitled to under the contingency agreements with their clients or the amount the District Court approved in conjunction with a class settlement and not a penny more.

27. My Firm has also represented our client pursuant to a contingency agreement and have spent more attorney time than will likely be recovered based on the 1/3 contingency fee agreement we entered into. But that was the agreement we made when we agreed to represent Ms. Canosa. We are certainly not seeking additional fees over and above what was entitled to under the terms of our retainer agreement.

28. Plaintiff's attorneys always take on risk when they agree to represent a client on a contingency or contemplated class action basis.

29. Hagens Berman was anticipating a windfall fee in anticipation of the "class action" settlement being approved by United States District Judge Hellerstein. The rejection of the proposed class action settlement, which from the outset I and others had cautioned Hagens Berman would most likely not be approved, eliminated the windfall fee. Consequently, Hagen Berman is now seeking an end run of their failed class action in order to obtain extraordinary fees to make up for its expenses incurred in pursuing the failed class action. That should not be permitted.

30. The Substantial Contribution Application before the Court is nothing more than an attorney's application seeking enhanced compensation over and above that to which it would otherwise be entitled to pursuant to its contingency agreements and/or class action agreements with Ms. Geiss and other firm clients. Simply put this is not permitted by the law.

31. The Creditors Committee *have incurred no obligations whatsoever to Hagens Berman for a penny of the expenses sought*. All of the expenses were incurred by Hagens Berman as a result of its *representation of its own clients for its own interests*. The instant application is therefore prohibited under the Bankruptcy Code.

   **C. Substantial contribution is only allowable if the applicant's actions benefited the estate as a whole.**

32. If one were to continue the analysis and pretend that the Committee actually incurred expense as a result of the representation provided by Hagens Berman, the application would still fail.

33. A court may award an applicant actual, necessary expenses, including professional fees of an attorney, which were incurred in making a "substantial contribution" in a case under chapter 9 or 11. 11 U.S.C. §503(b)(3)(D) and (4); see also *Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 943 (3d Cir. 1994).

34. "Compensation based on substantial contribution is designed to promote meaningful participation in the reorganization process, but at the same time, discourage mushrooming administrative expenses ... Accordingly, the substantial contribution provisions must be narrowly construed." *Buckhead*, 161 B.R. at 122 (quoting *In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997)).

35. In determining whether there has been a substantial contribution pursuant to section 503(b)(3)(D), "the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." Id. (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). Because creditors are presumed to act primarily in their own interest and not for the benefit of the estate as a whole, they have the burden of proving by a preponderance of the evidence that they have met the requisite substantial contribution. *In re Buckhead American*

*Corporation*, 161 B.R. 11, 15 (Bankr. D. Del. 1993 ).

36.     The Third Circuit has held that the relevant inquiry is "whether the efforts of the applicant resulted in an ***actual and demonstrable benefit*** to the debtor's estate and the creditors." *Lebron*, 27 F.3d at 944(emphasis added and internal citations omitted).

37.     The benefit must exceed that which merely results from an applicant's efforts to further its own interests. But if the creditor's protection of its own interests only results in an incidental benefit to the estate, that creditor has not provided a substantial contribution.

38.     The Third Circuit explained that self-interest itself does not preclude reimbursement, but that "substantial contribution" should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which were designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate.

39.     Inherent in the term "substantial" is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have ***transcended self-protection***. *Id.* (emphasis added).

40.     Hagens Berman through its proxy, is required to show that its activities benefited the debtor's estate as a whole and not merely the parochial interests of a single constituency. *See Lebron*, 27 F.3d at 944 ("the purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate *as a whole* . . ." (emphasis added)); *RS Legacy Corp.*, 2016 WL 1084400, at *3 ("[c]ompensation under section 503 is reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate") (internal citations omitted).

41.  I would note that one of the major beneficiaries of the settlement in this matter are the former officers and directors of the Weinstein Company who are receiving millions of dollars from TWC's insurance carriers to pay in part their legal fees.

42.  In determining whether a creditor has met this burden, "courts consider the following factors: 1) whether the services were rendered solely to benefit the client or to benefit all parties in the case; 2) whether the services provided a direct, significant and demonstrable benefit to the estate; and, 3) whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys." *In re Worldwide Direct, Inc.*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) (quoting *In re Buckhead Am. Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993)).

43.  In considering the first factor, section 503(b) compensation has been consistently denied where the creditor seeking compensation acted primarily for its own benefit, and any benefit to other creditors, the debtor or the estate was merely incidental. Id. at 16; see also *In re Labron*, 27 F.3d at 946 ("A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate"); *In re U.S. Lines*, 103 B.R. 427 (Bankr. S.D.N.Y. 1989) (denying compensation because attorney's participation in settlement negotiations was to benefit counsel's clients and any benefit to the estate was incidental); *In re American Plumbing & Mech., Inc.*, 327 B.R. 273 (Bank. W.D. Tex. 2005) (denying substantial contribution of indenture trustee for bondholders because protecting the rights of bondholders in plan negotiations and litigation was not a contribution that benefited the estate).

44. Hagens Berman's involvement was directed solely at protecting the interests of its own clients interests vis-a-vis other creditors. See *In re Hooker Investments, Inc.*, 188 B.R. 117 (S.D.N.Y. 1995) (affirming bankruptcy court's ruling denying compensation under 503(b) to attorneys for trade creditor group that performed services prior to its retention as special counsel, because "the firms' earlier services, resulting in their appointment by the bankruptcy court as special counsel, primarily benefitted the Trade Creditor Group rather than 'all parties in the case.'").

45. As to the second factor, Hagens Berman's actions must have provided direct, significant and demonstrable benefit to the estate. For example, compensation has been allowed where "extraordinary actions by a creditor resulted in actual and demonstrable benefit to the estate." Buckhead, 161 B.R. at 16.

46. However, where efforts are not "extraordinary or unusual efforts, in any way directed toward providing a tangible benefit to the estate or other creditors, but rather [are] normal creditor efforts directed to protecting the creditors' interests to the greatest extent possible," compensation under section 503(b)(3)(D) should be denied. Id. at 17; *In re Columbia Gas Sys., Inc.*, 224 B.R. 540, 548 (Banla. D. Del. 1998) (holding that expected or routine activities in a chapter 11 case do not constitute substantial contribution).

47. In this matter, after the class action settlement predictably collapsed, Hagens Berman was confronted with the prospect of litigating individual cases for its clients. This was obviously anathema to it and the best outcome for Hagens Berman was to cut its losses and involve itself in a settlement in Bankruptcy Court. To claim otherwise is simply disingenuous.

48. It cannot be seriously disputed that the activities performed by Hagens Berman were performed solely for the Movants' self-interest and did not provide any substantial, demonstrable benefit to the estate. See *Worldwide Direct*, 334 B.R. at 125.

{00030643. }

49.     Hagens Berman through its surrogate argues that it was significantly involved in the negotiation of the ultimate settlement agreement. This argument is flawed for two reasons. First, participation in the plan process and negotiation of plan terms has consistently been regarded as normal creditor activity not rising to the level of substantial contribution under section 503(b)(3)(D). See *In re: American Plumb. & Mech., Inc.*, 327 B.R. 273, 291 (W.D. Tex. 2005) (holding that plan negotiation is an expected activity in a chapter 11 case).

50.     Second, even if the Hagens Berman's participation in the plan process was deemed a substantial contribution to the Debtors' cases, such participation will be compensated through the fees that it will earn pursuant to its retainer agreements with its individual clients. Effectively, Hagens Berman is seeking a double recovery for its services based on the instant application and through its agreements with individual clients.

51.     It is curious that Hagens Berman has failed to submit a single retainer for its clients. Presumably, Hagens Berman had some contingency fee arrangement with their clients. If they did not, and were expecting to receive their fees and costs through the approval of a predestined to fail class action, that is the risk they undertook. Moreover, once the proposed class action was soundly rejected, Hagens Berman could have renegotiated their representations going forward on a contingent fee, hourly fee, or pro bono basis going forward. They should not be permitted to recover money from the bankruptcy process where the proceeds could otherwise be directed to survivors and/or other creditors.

52.     Hagens Berman's application is simply a grab for funds. It is essentially seeking a bonus for running up expenses in pursuing a class action that was doomed from the outset under the law and facts.

53. As Judge Hellerstein noted at the July 14, 2020 argument which resulted in the rejection of the class action settlement:

"This is not a case suitable for a class. I told you that many times. And what you're doing is just putting this forward not in a motion for class certification, but under the umbrella of a settlement. This is not a class action.' (See page 11 of the oral argument of July 14, 2020, annexed as Exhibit "A").

54. Judge Hellerstein also recommended that:

"It would be advisable to litigate the case for your clients…That's what you should be doing instead of *wasting your time with settlements and attempts to create a class that doesn't exist.* (See page 14 of Exhibit "A")."

55. Following the denial of the proposed class action settlement, both Ms. Fegan and Mr. Berman gave a statement to the media:

> We were disappointed in the Judge's decision this morning; we've long held that we needed to find justice for all the women that Weinstein preyed upon in a fair and equitable way. *Now, we need to turn our attention to litigating our clients' individual cases. We will also seek to appeal an earlier court ruling that excused the Weinstein Company's board of directors who we contend had known of Weinstein's behavior and did nothing to stop it. We believe they should be held accountable for their silence and inaction* (See annexed as Exhibit B, Hollywood Reporter article dated July 14, 2020).

56. Despite these brave words, Hagens Berman did nothing of the sort, instead, it continued working with the same attorneys with whom it had proudly negotiated a settlement that included a provision that provided that if a survivor did not agree to the settlement, the funds that would otherwise go to her, would be given to Harvey Weinstein to defend against her claims. [3]

57. Hagens Berman's subsequent efforts were extraordinary and unusual in that it is the only

---

[3] Judge Hellerstein observed the following about this provision:

> "Furthermore, the idea that Harvey Weinstein can get a defense fund ahead of a claimant is **obnoxious**. And the idea that you can regulate the claims of people not involved in the settlement that have their own cases, I can't subscribe to that" See Page 10 of Exhibit "A".

settlement that I am aware of in which alleged wrongdoers are receiving millions of dollars and the survivors are effectively not being given the opportunity to proceed with their litigation and hold all the wrongdoers responsible for their actions. Obviously, this is not the type of extraordinary and unusual involvement that would warrant an entitlement to extraordinary fees and expenses. It is the type of involvement that should be embarrassing.

58. It cannot be ignored that had the class action fund been approved, Hagens Berman was planning to apply for up to 25% of the "class action" settlement fund, plus expenses. The fund proposed was to be $18,875,000. Based on this, Hagens Berman was planning to take *$4.7 million in fees plus expenses.* It is obvious that Hagens Berman had no interest in actually litigating its cases, it was only interested in scoring a settlement no matter the cost.

59. In contrast, my Firm has successfully defeated motions to dismiss, has active California and New York State and New York City Human rights claims, has completed virtually all fact discovery and has conducted six depositions including those of Ms. Canosa, Bob Weinstein, Irwin Reiter, Tom Prince, Julie Oh and Frank Gil. I believe we are the only Firm in the World representing survivors of Harvey Weinstein who has gone so far in the discovery process. I am also confident that we are the only Firm that has taken a single deposition.

60. We have litigated our case. Hagens Berman has from the outset attempted to litigate a settlement.

61. I am proud to be a trial lawyer[4] and was ready and willing to try this case to verdict and beyond to obtain justice for the women who were subjected to abuse by Harvey Weinstein with

---

[4] I have tried in excess of 100 complex tort cases to verdict in both State and Federal Court in my career and an additional 100 cases that resolved during trial. I am proud to be a member of the American Board of Trial Advocates and the International Society of Barristers, organizations that are invitation only organizations which recognize the best trial advocates. Both require extensive trial experience, verdicts and recommendations from the judiciary and the bar before membership is offered.

{00030643. }

the support of his enablers. This is an important case for our society. The actions of Hagens Berman in pursuing its own self-interest in obtaining windfall fees did nothing to hold Harvey Weinstein and his laughing enablers accountable for the longstanding abuse of women. That truly is a shame.

62. Hagens Berman apparently did not have the stomach for the fight and from the outset sought a settlement. They now have the temerity to seek a bonus for their inability or unwillingness to actively litigate a case as opposed to actively negotiate a settlement which apparently was their intention all along. This should not be rewarded by the Court.

63. It cannot be disputed that Hagens Berman's work in this matter was designed to further its own interests after the failure of its class action. This application is nothing more than an attempt to recoup some of the costs associated with this failed effort. The activities that Hagen Berman undertook in this Court are those that they would have been taken representing their individual clients without an expectation of reimbursement from the estate.

64. Hagens Berman's activities did not benefit the estate as a whole. This is not even alleged by them. The only allegation that is articulated is that its efforts assisted in reaching a global peace. This is not sufficient under the law.

    **D. <u>Hagens Berman's activities were primarily for its own benefit.</u>**

65. Hagens Berman has not overcome the presumption that they acted primarily in their own self-interest. Hagens Berman incurred the majority of its expenses as a result of its avaricious efforts to negotiate a global class action settlement which would benefit itself more than anybody else.

66. It is well settled that Courts should presume that creditors are acting in their own interest "until they satisfy the court that their efforts have transcended self-protection." Normally, the

presumption is that the applicant's activities are "incurred for the benefit of the engaging party" and "are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization."

67. In making this determination, courts consider whether the services provided (a) were only for the benefit of the claimant or were for the benefit of all parties in the case; (b) directly, significantly and demonstrably benefited the estate; and (c) were duplicative of the services provided by professionals for the creditors' committee, the committee itself, debtor and its attorneys, or other fiduciaries and their professionals.

68. The movant must prove substantial contribution by a preponderance of the evidence, by establishing that a "causal connection exists between the services provide and the benefit to the estate, and by introducing more than self-serving statements about its involvement in the case. Extensive participation in a case is not enough to justify a substantial contribution award. Unless the applicant has an allowable claim under 503(b)(3), its professional fees cannot be reimbursed under 503(b)(4), particularly if *no obligation was incurred by the moving party*.

69. "[E]xtensive participation in [a] case is not in and of itself sufficient to show substantial contribution." *In re Columbia Gas Sys., Inc.*, 224 B.R. 540, 552 (Bankr. D.Del. 1998); *accord In re Summit Metals*, 379 B.R. 40, 53 (Bankr. D. Del. 2007).

70. In order to justify compensation as an administrative expense under section 503(b), "something more than 'self-serving statements regarding one's involvement in a case which allegedly resulted in a "substantial contribution" must be presented to the court."' *Buckhead*, 161 B.R. at 15 (citing *In re 9085 E. Mineral Office Building, Ltd.*, 119 Bankr. 246, 249 (Bankr. D.Colo. 1990)). *In re Worldwide Direct, Inc.*, 334 B.R. at 123 ("'Corroborating testimony by a disinterested party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding

compensation for activities which otherwise might not constitute a 'substantial contribution'").

71. Accordingly, "[c]orroborating testimony by a *disinterested* party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which might not otherwise constitute a 'substantial contribution.'" Id.

72. The only corroborating testimony offered to the Court in support of this application are self-serving statements by the *very same* attorneys who are now seeking over one million dollars in fees and expenses.

73. Hagens Berman's alleged extensive participation in these Chapter 11 cases provides no justification for an award of over 1 million dollars. See: *RS Legacy Corp.*, 2016 WL 1084400, at *4 ("the movant must offer 'something more than self-serving statements regarding its involvement in the case'") (internal citation omitted).

74. Hagens Berman's settlement efforts were self-motivated, and the estate's resulting benefit, if any, was incidental. Hagens Berman's settlement efforts—over objections in both the class and bankruptcy proceedings, to name just a few examples—benefited the insurance carriers for TWC and Harvey Weinstein and his enabling cronies more than anybody else. Hagens Berman's efforts did not move the case forward or increase any other party's distribution.

75. Merely facilitating that resolution does not rise to the level of substantial contribution. Thus, Hagens Berman's activities do not rise to the level of substantial contribution that would justify the award of an administrative expense claim.

**E. Hagens Berman's motion fails to provide evidentiary support for its administrative claim request.**

76. Hagens Berman asks this Court to approve an administrative claim for reimbursement of legal fees and professional expenses. Completely redacted time sheets were presented for review which tell absolutely nothing about the purported efforts of Hagens Berman. Even though the time

sheets are redacted, it is noteworthy that they are far less in number than one would expect to represent over $1 million in legal fees. Moreover, the majority of the expenses are unrelated to the bankruptcy proceeding and are solely related to the failed class action effort.

77. No independent third party has provided evidence suggesting that Hagens Berman's actions affected the outcome of the case for any party other than themselves or that the expenses were necessary. There is no evidence submitted that satisfies the *Worldwide Direct* requirement for disinterested parties to support Hagen's Berman's substantial contribution request—there are only self-serving assertions. Hagens Berman produced no evidence to demonstrate a causal connection between its actions and any benefit to the estate as a whole. Effectively Hagens Berman is asking the Court to take its claims on blind faith.

78. In fact, I would argue that the efforts of Hagens Berman in this litigation has had nothing but a negative influence on this litigation. I would be happy to discuss the basis for that view *in camera* should the Court deem it appropriate.

### F. Hagens Berman has not complied with the local rules governing the filing of fee applications.

79. A request for compensation under section 503(b)(4) is akin to a professional fee application and thus is governed by similar requirements. Neither the motion nor the supplement comply with Local Rule 2016-2 of the Local Rules of the Delaware Bankruptcy Court, because they do not attach any fee statements or invoices. This failure alone is sufficient grounds for denial.

## Conclusion

WHEREFORE, based on the reasons stated herein, it is respectfully requested that the Court deny the Application together with such other relief that it deems just and proper.

Dated: New York, NY
April 28, 2021

_____
THOMAS P. GIUFFRA

{00030643. }