# EXHIBIT A

```
K7E8GEIC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LOUISETTE GEISS, et al.,

        Plaintiffs,

     v.                                    17 Cv. 9554 (AKH)

THE WEINSTEIN COMPANY HOLDINGS,
LLC, et al.,

        Defendants.                 Telephone Conference

------------------------------x
                                      July 14, 2020
                                      10:00 a.m.

Before:

            HON. ALVIN K. HELLERSTEIN,

                               District Judge

                   APPEARANCES

FEGAN SCOTT LLC
    Attorneys for Plaintiffs
BY:  ELIZABETH A. FEGAN
      -and-
HAGENS BERMAN SOBOL SHAPIRO LLP
BY:  STEVE W. BERMAN

LEWIS BRISBOIS BISGAARD & SMITH LLP
    Attorneys for Defendant Harvey Weinstein
BY:  ELIOR D. SHILOH

CRAVATH, SWAINE & MOORE LLP
    Attorneys for Defendant The Weinstein Company Holdings
BY:  PAUL H, ZUMBRO

LETITIA JAMES
    Attorney General of the State of New York
SANDRA PULLMAN
    Assistant Attorney General

K7E8GEIC

```
 1              (The Court and all parties appearing telephonically)
 2              THE COURT:  It is now 10:00.  We shall proceed.
 3              The first speaker will be either Elizabeth Fegan or
 4   Steve Berman.
 5              MS. FEGAN:  Good morning, your Honor.  This is
 6   Elizabeth Fegan on behalf of the nine class representatives.
 7              Your Honor, I would like to start with a brief intro
 8   on how we got here, and then move to the terms of the
 9   settlement, and then focus on Rule 23(b) and how we intend to
10   certify the subclasses.
11              Your Honor, we represent the nine class
12   representatives who were sexually abused and harassed by Harvey
13   Weinstein.  Each of them filed this class action lawsuit
14   because they know women exactly like them, women who today
15   still don't have a voice and are scared to come forward.
16              We were joined in our efforts by the New York State
17   Office of the Attorney General who filed a lawsuit for
18   violations of the state and city human rights laws.
19              We were also joined at the negotiating table and at
20   settlement by 16 women who filed individual lawsuits or claims
21   in the United States, Canada and the United Kingdom.  Each of
22   these women had every incentive to maximize the overall
23   recovery for the victims.
24              This proposed settlement represents the culmination of
25   a battle on a number of fronts which I would like to briefly
```

1  review.

2          First, in this court, we went through several rounds
3  of motions to dismiss, and ultimately this Court dismissed all
4  defendants except Harvey Weinstein, dismissed all of the state
5  law claims for all plaintiffs, and only the Trafficking Victims
6  Protection Act claims survived, and only for those four
7  plaintiffs whose claims occurred post 2008.  All of the other
8  plaintiffs' claims were dismissed.  And this Court's decision
9  was consistent with other courts in this district, including by
10 Judge Abrams and Judge Engelmayer, Judge Sweet, all of whom
11 dismissed all of the officers and directors of the Weinstein
12 Company.

13         We also faced another front in the bankruptcy court.
14 On March 19, 2018, TWC and its subsidiaries filed a Chapter 11
15 proceeding in the District of Delaware.  At that time, TWC
16 effectively ceased operations.  We were lucky enough that
17 Louisette Geiss, one of our class representatives, joined by
18 plaintiff Sandeep Rehal who has an individual case, they were
19 appointed to the Unsecured Creditors Committee when Louisette
20 served as one of the chairs.

21         As part of that, we became privy to assets of the
22 company, or lack thereof, and the fact that over $250 million
23 in unsecured trade creditor claims were filed in the
24 bankruptcy, and that there is less 10 million in assets to
25 distribute to all unsecured creditors, which include both the

K7E8GEIC

1   trade creditor claims as well as any women who were abused in
2   the TWC time period.
3           We have learned during that process the only real
4   assets of the company were insurance policies, and yet those
5   same insurance policies served as another front for our fight.
6   We have learned the insurance policies generally disclaimed
7   coverage for intentional torts, including molestation and
8   sexual abuse.  The only thing left was the sole remaining
9   defendant, Harvey Weinstein, who obviously has his own issues.
10          And just to briefly review some of them, we know he is
11  fighting to appeal his convictions in New York.  He is still
12  facing charges in Los Angeles and potentially a life sentence.
13  We understand that there is litigation against him to recover
14  on a secured loan of tens of millions of dollars which would
15  put that person in front of all of the women here.  We also
16  understand that his ex-wives have frozen his assets in order to
17  secure them for their benefit and the benefit of his children.
18          Notwithstanding these barriers, both our clients, the
19  settlement class representatives, and the New York attorney
20  general were --
21          THE COURT:  In a bankruptcy setting with Harvey
22  Weinstein, do those other claims by his ex-wives have priority
23  against your claims?
24          MS. FEGAN:  Harvey Weinstein himself has not filed for
25  bankruptcy, your Honor.

|   |   |
|---|---|
| 1 | THE COURT: I didn't ask that question. Just answer |
| 2 | my question. |
| 3 | MS. FEGAN: I believe so, your Honor. |
| 4 | THE COURT: The claim of a wife for alimony is a |
| 5 | higher priority than a claim of a creditor, is that what you're |
| 6 | saying? |
| 7 | MS. FEGAN: Your Honor, I am not sure of the answer to |
| 8 | that question. |
| 9 | THE COURT: Why should I believe that anybody can |
| 10 | secure anything against your claims once you reduce them to a |
| 11 | judgment? |
| 12 | MS. FEGAN: Your Honor, I think I can say with |
| 13 | certainty that with respect to the secured loans and that |
| 14 | litigation, that those would have priority over our clients. |
| 15 | THE COURT: But you say Harvey Weinstein is the |
| 16 | secured creditor. |
| 17 | MS. FEGAN: I am sorry. Harvey Weinstein -- right. |
| 18 | He received the loan. |
| 19 | THE COURT: If he is the secured creditor, then that |
| 20 | claim can be subordinated. There is no reason for me to |
| 21 | believe that your clients will be prejudiced in a bankruptcy |
| 22 | setting if they had a claim. |
| 23 | MS. FEGAN: We can certainly provide more information |
| 24 | on that. |
| 25 | THE COURT: I don't need more information. Keep |

K7E8GEIC

1   going.  You have 15 minutes.  Use it.

2           MS. FEGAN:  Thank you, your Honor.

3           I would like to review the terms of the settlement.

4           Here, the settlement involves sexual misconduct claims

5   on behalf of two subclasses.  The first subclass is the

6   pre-June 30, 2005 subclass, and this is with respect to all

7   women who met Harvey Weinstein in the context of his role at

8   Miramax.  The post-2005 subclass is the later period, post June

9   30, 2005, with respect to women who met Harvey Weinstein in his

10  role as owner and founder of TWC.

11          THE COURT:  So let me ask you, if the statute of

12  limitations runs post 2008, why are we including in the claim

13  claims that arose before that date?

14          MS. FEGAN:  Your Honor, there's two reasons.  First,

15  women who have claims that are older than 2008 still have their

16  appeal rights and would exercise those appeal rights, as I am

17  sure Ms. Brock could attest to, when we got to judgment.

18          THE COURT:  Haven't I dismissed those claims?

19          MS. FEGAN:  You have dismissed those claims, your

20  Honor, but it's not ripe for appeal because there is not a

21  final judgment in the case.

22          THE COURT:  Why is there a distinction between pre-

23  and post-6/30/05?

24          MS. FEGAN:  Because, your Honor, with respect to the

25  pre 6/30/2005, we are not seeking a mandatory non-opt-out

1  class. We are not alleging or contesting that it is a
2  limited-fund class because Miramax and Disney and other
3  defendants are still a going concern and are not in bankruptcy.
4  So with respect to the pre-June 30, 2005 class, we are asking
5  the Court to certify the subclass under Rule 23(b)(3), which
6  would provide both notice, objection, and opt-out rights.
7           However, with respect to the post-June 30, 2005 class,
8  we are asking the Court to certify a limited subclass or a
9  mandatory non-opt-out class under Rule 23(b)(1).
10          THE COURT: We will get to that later, but I don't
11 believe you are going to succeed on a limited-fund subclass
12 basis. I don't see any way I can do that, but we will get to
13 it.
14          MS. FEGAN: OK.
15          THE COURT: The next question I have is, why should it
16 include women that just met Harvey Weinstein and were not
17 sexually molested? Not every woman was sexually molested,
18 right?
19          MS. FEGAN: We agree that not every woman was sexually
20 molested.
21          THE COURT: How could you have potential clients of
22 women who just met and were not sexually molested?
23          MS. FEGAN: Your Honor, it's our allegation that
24 because TWC and the other companies for which Harvey worked,
25 along with officers and directors, didn't stop or prevent or

put barriers in place to ensure he wouldn't continue, that all of the women were in the zone of danger.

THE COURT: I have dismissed those cases. We are only talking about Harvey Weinstein. What is there to make me believe that a person who just met Harvey Weinstein has the same claim as the person who is raped by Harvey Weinstein?

MS. FEGAN: Your Honor, based on our investigation and the facts as we have alleged them, every woman who came in contact with Harvey Weinstein was absolutely assessed by him to determine whether she was vulnerable, to determine how he could use her. I think we have seen this and we have certainly talked to dozens of women, both in the context of employment as well as in the context of the industry itself.

THE COURT: The fact that you have talked to dozens of women doesn't mean to say that every women is similarly situated. Women who have been raped are entitled to a much greater recovery than women who just met Harvey Weinstein.

MS. FEGAN: We agree with that, your Honor. And that's why we set up the claims process with allocation guidelines that will allow a person to report to a special master and to allow them to evaluate the totality of each woman's circumstances.

THE COURT: How could I delegate to a non-Article III person the right to make judgments in an Article III case?

MS. FEGAN: In the context of a class action

1  settlement, where the court oversees the process, oversees the
2  allocation guidelines, ensures that the special master is armed
3  with the information it needs as part of the claims process,
4  this is a role that has been given by Article III judges to
5  special masters in the context of a settlement, where we
6  believe it's appropriate here.  It was done in *USC*.  It was
7  done in *John Hopkins*.
8           THE COURT:  I believe it's an abdication of the
9  Court's responsibility.  I don't believe the Supreme Court
10 following Hanken would ever allow a judge to abdicate
11 responsibility in that fashion.  Indeed, I think it's improper
12 and I wouldn't sign off to it.
13          In the 9/11 settlements, there was a development and
14 pretrial discovery, on which I presided, which created a point
15 system in evaluating claims.  And that was judicially
16 recognized and approved, and that then became the
17 administrative function of the settlement master.  There is
18 nothing like that in this case.  I have never had
19 interrogatories that created distinctions and entitlements
20 among plaintiffs, and I can't see how I could delegate that
21 function to somebody else who is not a judge.  I won't.
22          MS. FEGAN:  Your Honor, certainly we have reviewed the
23 9/11 case, and certainly if the Court would prefer --
24          THE COURT:  There is no way, Ms. Fegan, there is no
25 way I would approve a delegation of that sort.  Zero.

1           MS. FEGAN:  Your Honor, do you have other questions
2    for me that I can answer for you?
3           THE COURT:  Rule 23 and its application.
4           MS. FEGAN:  Your Honor, with respect to the Rule 23(a)
5    factors, would you like me to start with Rule 23(a)?
6           THE COURT:  Why is there a limited fund?  I understand
7    that you get a certain amount of the insurance recovery, and
8    you say that is the limited fund against which people can
9    claim.  But that's not true.  The only limited fund is Harvey
10   Weinstein.  There may be many claims against Harvey Weinstein.
11   It's possible Harvey Weinstein is bankrupt, but he hasn't filed
12   for protection.  I don't know that it's a limited fund.  In
13   fact, I don't think it is a limited fund.
14          Furthermore, the idea that Harvey Weinstein can get a
15   defense fund ahead of a claimant's is obnoxious.  And the idea
16   that you can regulate the claims of people not involved in the
17   settlement that have their own cases, I can't subscribe to
18   that.
19          MS. FEGAN:  Your Honor, with respect to your latter
20   point, to the extent women had cases on file during the course
21   of negotiations and asked to be excluded, we have excluded them
22   from the settlement.  For many of the women that filed
23   objections before you are excluded by the settlement's terms so
24   that they can continue to pursue their own litigation.  That
25   includes Dominique Huett, Wedil David, Kaja Sokola asked to be

K7E8GEIC

1    excluded from the pre-2005 subclass so we did so.  And
2    Alexandra Canosa was also excluded as well as Ashley Judd and
3    Rose McGowan.
4        THE COURT:  Suppose they have second thoughts and want
5    to join?
6        MS. FEGAN:  Your Honor, that has always been part of
7    the negotiations on the table, and certainly if they decided to
8    join the class --
9        THE COURT:  They can't because they have been
10   excluded.  The definition excludes them.
11       Why in this case where the individual claims are
12   measured by the depravity that a particular woman suffered does
13   not outweigh the common claims?  Not every woman was captured
14   in the same way.  Some gave up their bodies because of
15   blandishments, some subjected their bodies by force, some may
16   have done it willingly.  It's hard to describe.  And yet your
17   settlement would create equality among all of those people.
18       This is not a case suitable for a class.  I told you
19   that many times.  And what you're doing is just putting this
20   forward not in a motion for class certification, but under the
21   umbrella of a settlement.  This is not a class action.  You
22   want to test me, make a motion.
23       MS. FEGAN:  Your Honor, I share your concerns and we
24   will obviously take them under advisement and wait for a trial
25   motion.

K7E8GEIC

1            THE COURT:  All right.  I am going to do this.
2            First of all, is there anything else you want to say?
3            MS. FEGAN:  No.  Thank you, your Honor.
4            THE COURT:  I don't want to cut you off.
5            MS. FEGAN:  No.  Thank you.
6            THE COURT:  Based on my study of the papers, based on
7    my study of the objection papers, and based on what I have
8    heard, I will not give preliminary approval to the settlement.
9    And if you want to have a class, you should bring on a motion
10   for a class certification promptly.
11           It would be more advisable to litigate the case for
12   your clients so they can change their concurrent claims into a
13   liquidated sum and therefore gets status in the bankruptcy, if
14   that's where you want to go, or execute upon Harvey Weinstein's
15   assets, if that's where they want to go.  If you get a
16   judgment, you could immediately execute, unless Harvey
17   Weinstein posts a superseding bond.  If he does, then you can
18   pursue many remedies.  If he doesn't, your judgment becomes
19   immediately available for execution.  That's what you should be
20   doing instead of wasting your time with settlements and
21   attempts to create a class that doesn't exist.
22           MS. FEGAN:  Thank you, your Honor.
23           THE COURT:  Is there anybody else who wants to speak?
24           I don't think there is any need for objections because
25   there is no point in making an objection to a settlement I am

K7E8GEIC

1    not approving in light of the remarks I have made.
2             I think I can, unless there is objection, close this
3    meeting.  I have made my decision.  You will have a summary
4    order that will follow.
5             (Adjourned)