**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS, LLC., *et al.*, | Case No. 16-12320 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** June 1, 2021 at 3:00 p.m. |
| | **Objection Deadline:** April 29, 2021 at 4:00 p.m. (Extended for the U.S. Trustee to May 18, 2021) |
| | **Re: Docket Nos. 3307 and 3308** |

**UNITED STATES TRUSTEE'S OBJECTION TO APPLICATION OF
LOUISETTE GEISS, CO-CHAIR OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, FOR COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
RENDERED AS A SUBSTANTIAL CONTRIBUTION IN THESE CASES
UNDER 11 U.S.C. § 503(b)(3)(D) (DOCKET NO. 3307) AND TO RELATED MOTION TO
SEAL (DOCKET NO. 3308)**

Andrew R. Vara, United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), by and through undersigned counsel, hereby objects to the *Application of Louisette Geiss, Co-Chair of the Official Committee of Unsecured Creditors, for Compensation for Services Rendered and Reimbursement of Expenses Rendered as a Substantial Contribution in These Cases Under 11 U.S.C. §503(b)(3)(D)* (Docket No. 3307) (the "Application") and to the related motion to seal (Docket No. 3308), and in support of that objection states as follows:

I.    <u>Introduction</u>

Louisette Geiss, co-chair of the Official Committee of Unsecured Creditors, filed the Application, which asks for reimbursement of almost $1.2 million in fees for her personal counsel based on a substantial contribution to these bankruptcy cases. But 11 U.S.C. §

503(b)(3)(F) and (b)(4) does not establish a basis for a committee member to recover personal attorney's fees. Even were that not the case, Ms. Geiss's Application fails to provide evidence of the kind of extraordinary actions for which substantial contribution might, in some circumstances, be appropriate, and its attachments make it impossible to even evaluate whether the fees sought were reasonable. There is no support for Ms. Geiss's motion to seal the entirety of the Application's exhibits. The Application and the motion to seal should be denied.

## II.    **Jurisdiction and Venue**

1.     This Court has jurisdiction to hear this Objection.

2.     Under 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.[1]

3.     The U.S. Trustee has standing to be heard with regard to this Objection under 11 U.S.C. § 307.

4.     Aside from the U.S. Trustee, parties in interest typically have no motive to object to fee requests. *See*, *e.g.*, *In re Busy Beaver Building Centers, Inc.*, 19 F.3d at 842-43 (Debtors often do not object to their own counsel's fees because the fees often come out of creditor recoveries—not the reorganized debtor's assets—or because the debtor is not inclined to object to the fees of attorneys who made it possible for the debtor to stay in business. Creditors often do not object to fee applications as a perceived professional courtesy or for fear of retaliation). *See also In re Armstrong World Industries, Inc.*, 366 B.R. 278, 281 n.2 (D. Del. 2007) (same). Partly

---

[1] *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

in recognition of other parties' reluctance to object to fee requests, Congress "granted the U.S.
Trustee party-in-interest standing to provide a means for a more objective review of fees of
professionals in reorganization cases." *In re Heck's, Inc.*, 112 B.R. 775, 785 (Bankr. S.D. W.Va.
1990) (*aff'd in part*, *rev'd in part* by *In re Heck's Properties, Inc.*, 151 B.R. 739 (S.D. W.Va.
1992)). When it expanded the U.S. Trustee Program nationwide in 1986, Congress understood
that U.S. Trustees would have no pecuniary interest in any case and would function as impartial
administrators. *See In re Columbia Gas Systems, Inc.*, 33 F.3d at 299 (*citing* H.R. Rep. No. 764,
99th Cong., 2d Sess. 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5240).

### III.   Factual Background

5.      On March 19, 2018 (the "Petition Date"), each of the Debtors filed a voluntary
petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors are not
operating.

6.      On March 28, 2018, the Office of the United States Trustee for the District of
Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the
"Committee"), which had five members: Louisette Geiss, Sandeep Rehal, Access Digital Cinema
Phase 2 Corp c/o Cinedigm, Light Chaser Animation, and William Morris Endeavor
Entertainment. Louisette Geiss is co-chair of the Committee. Pachulski, Stang, Ziehl & Jones
LLP represents the Committee.

7.      On March 20, 2018, the Debtors filed a motion seeking approval to sell
substantially all their assets to Spyglass Media Group, LLC ("Spyglass") unless another party
came forward with a higher or better offer. On May 8, 2018, the Court granted the Debtors' sale
motion, and on May 9, 2018, the Court entered an order approving the sale of substantially all of
the Debtors' assets (the "Sale") to Spyglass.

8.      On June 27, 2018, the Debtors, the Committee, and Spyglass filed a motion to amend the Spyglass asset purchase agreement to reduce the purchase price. To resolve the Committee's objections to that motion, the Debtors agreed that the Committee would take the lead role in drafting and proposing a plan and that the Debtors' board of directors would be reconstituted with its members chosen by the Committee.

9.      On December 5, 2018, the Debtors filed a motion to set a general bar date for the case. The proposed bar date did not encompass tort claims, including the now-named Sexual Misconduct Claims. On December 27, 2018, the Court entered an order that set February 15, 2019 as the general bar date.

10.     On June 30, 2020, the Debtors filed a motion to set a bar date for parties in interest to file tort claims, including "Sexual Misconduct Claims." On September 9, 2020, the Court entered an order granting the tort claims bar date motion as amended, and set October 31, 2020 as the tort claims bar date.

11.     After the Petition Date, the Debtors, the Committee, the Debtors' former officers and directors, various insurers, and Sexual Misconduct Claimants began what was to be a three-year attempt to reach a global resolution of all the potential claims against Harvey Weinstein. There were at least five confidential mediations and many additional discussions and negotiations.

12.     In February 2019, a number of Sexual Misconduct Claimants announced that they had terminated their participation in the mediations. As a result, on May 14, 2019, the Debtors filed a motion to convert the cases to chapter 7 on the basis that a global resolution was unlikely and their liquidity was declining. This conversion motion revived the settlement discussions, and more than a year later, on June 30, 2020, the Debtors and the Committee filed a joint proposed

chapter 11 plan of liquidation that incorporated the resultant comprehensive settlement of claims against Harvey Weinstein.

13.     The June 30, 2020 plan proposed to use class action litigation mechanisms to resolve certain Sexual Misconduct Claims. These class action mechanisms required the approval of the U.S. District Court for the Southern District of New York (the "District Court"). But on July 14, 2020, the District Court rejected the settlement contained in the June 30 plan and denied class certification. This ruling removed one of the keys to the June 30 plan, which now could not move forward.

14.     After that setback, the parties continued to negotiate, with negotiations spearheaded by the Committee. The parties were able to reach a revised settlement, and on September 1, 2002, the Debtors and the Committee filed their First Amended Joint Plan of Liquidation (Docket No. 2952). The first amended plan addressed a number of the concerns raised by the District Court—Sexual Misconduct Claimants could now opt out of releasing Harvey Weinstein, certain tort claims were not included in the settlement pool, and Harvey Weinstein would not be reimbursed for any defense costs.

15.     On October 1, 2020, the Debtors and the Committee filed a second amended plan and disclosure statement (Docket Nos. 2994 and 2995) and a motion to approve the second amended disclosure statement as containing adequate information and to approve solicitation procedures (Docket No. 3031).

16.     On November 4, 2020, the Debtors and the Committee filed a third amended joint plan and third amended disclosure statement (Docket Nos. 3067 and 3076). After a hearing on November 5, 2020, the Debtors and the Committee filed a fourth amended joint plan and fourth amended disclosure statement on November 17, 2020 to address the Court's ruling that non-tort

claimants must be given the right to opt out of the plan's proposed third party releases. (Docket Nos. 3096 and 3097). The Court entered an order approving the fourth amended joint plan and disclosure statement for solicitation that same day. (Docket No. 3101).

17.     On January 7, 2021, the Debtors filed a voting report that indicated that 82.98% of the Sexual Misconduct Claimants that voted had voted to accept the fourth amended plan (39 votes to accept vs 8 votes to reject).

18.     On January 20, 2021, the Debtors and the Committee filed a fifth amended joint plan (Docket No. 3182), that contained modifications addressing certain filed confirmation objections.

19.     On January 25, 2021, the Court held a hearing to consider confirmation, overruled a confirmation objection filed by four Sexual Misconduct Claimants, and confirmed the fifth amended plan, entering the confirmation order the next day (Docket No. 3203).

20.     On February 18, 2021, the Debtors filed a notice that the fifth amended plan had been substantially consummated and that February 18, 2021 was the effective date.

## A.    *Professional Retentions and Final Fee Applications*

21.     The Debtors retained Cravath, Swaine & Moore LLP as lead counsel (Docket No. 415), Richards, Layton & Finger, P.A. as co-counsel (Docket No. 288), Bernstein Litowtiz Berger & Grossman, LLP as special litigation counsel (Docket No. 2610), and Seyfarth Shaw as special litigation counsel (Docket No. 1346).[2] As noted above, the Committee retained Pachulski, Stang, Ziehl & Jones LLP ("Pachulski") as counsel (Docket No. 942).

22.     On April 5, 2021, Cravath, Swaine, & Moore LLP (Debtors' lead counsel), Richards, Layton & Finger, P.A. (Debtors' co-counsel), Bernstein Litowitz Berger & Grossman,

---

[2] The Debtors and the Committee also retained additional non-legal professionals.

LLP (Debtors' special litigation counsel), Seyfarth Shaw (Debtors' special litigation counsel),

Pachulski, Stang, Ziehl & Jones LLP (Committee counsel) among others, filed their respective

final fee applications. Those firms sought approval of final fees as follows:

| Firm | Fees | Expenses | Total Hours | Blended Hourly Rate |
|------|------|----------|-------------|---------------------|
| Cravath, Swaine & Moore | $12,802,539.25 | $205,307.79 | 14,178.70 | $882.63 |
| Richards, Layton & Finger | $4,827,543.50 | $105,084.97 | 7,181.6 | $614.39 |
| Bernstein Litowitz Berger & Grossman | $400,000.00 | $1,864.54 | 633 | $677.64 |
| Seyfarth Shaw | $1,378,114.00 | $29,698.50 | 2,145.00 | $573.64 |
| Pachulski, Stang, Ziehl & Jones | $5,182,763.70 | $166,947.83 | 7,014.40 | $777.76 |

## B.    *Geiss's Substantial Contribution Application and Case Activities*

23.    On June 1, 2018, Ms. Geiss, as proposed lead class plaintiff, filed a motion to lift

the automatic stay to permit litigation to go forward in the United States District Court for the

Southern District of New York (Docket No. 958). On June 18, 2018, the Court entered an order

lifting the stay, and permitting Ms. Geiss to pursue claims against the Debtors, Harvey

Weinstein, other former directors and officers, and other parties (Docket No. 1060).

24.    Ms. Geiss, as noted above, pursued litigation in the District Court as the proposed

representative class plaintiff, including participating in mediations and settlement discussions on

behalf of the putative class. After dismissing Ms. Geiss's first complaint, on April 17, 2019, the

District Court dismissed all defendants to that lawsuit except Harvey Weinstein, and all counts of

the amended complaint except the Trafficking Victims Protection Act claim against Harvey

Weinstein. In June, 2020, Ms. Geiss and other interested parties reached a tentative settlement of

that litigation, for which they sought District Court approval. Among other terms, that settlement

proposed that $18,875,000 would be allocated to pay distributions to Sexual Misconduct

Claimants, and that Sexual Misconduct Claimants' counsel could seek an award of up to 25% of

that amount ($4,718,750). In an opinion dated July 24, 2020, the District Court rejected class

certification and refused to approve the proposed settlement. The District Court found that the

unique facts and legal issues applicable to each claim predominated over common issues, that

favoring litigation costs of the former officers and directors and Harvey Weinstein at the expense

of victims was "obnoxious," and that the proposed claims process was not clear regarding

allocation of funds.

      25.    On April 5, 2021, Ms. Geiss filed her Application, which seeks an administrative

claim for $1,173,392.29 in fees and expenses incurred by Hagens Berman Sobol Shapiro LLP

and Brown Rudnick LLP—both her personal counsel—on the basis that these firms provided a

substantial contribution to the bankruptcy estate under 11 U.S.C. § 503(b)(3)(D). The requested

fees, if approved, would not be paid from the funds allocated to Sexual Misconduct Claims under

the confirmed plan, but would instead be paid out of the limited funds available to pay other

administrative fee claims and make a distribution to general unsecured creditors. If not approved

as a substantial contribution, it appears that these fees would likely be paid by Ms. Geiss out of

her distribution from the Sexual Misconduct Claims Fund according to her personal engagement

agreements with those firms.

      26.    The Application attaches invoices from Brown Rudnick and Hagens Berman. The

Brown Rudnick invoice includes a summary of fees and expenses and the total hours billed. It

contains no list of the attorneys working on the matter, their rates, their years of Bar admittance,

a breakdown of fees by project category, or much of the other information required by the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to evaluate the reasonableness of a

firm's fees. The Hagens Berman invoice contains a summary of current fees and costs, and each

attorney's rate is included in the bill detail. It contains no total of the hours spent, the list of

attorneys working on the matter, their rates, their years of Bar admittance, or a breakdown of fees by project category, rendering it similarly noncompliant with the relevant provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules. and the total hours each firm spent.

27.    The fee breakdown between the firms is as follows:

| Firm | Fees Billed | Fees Sought | Expenses | Total Hours | Blended Hourly Rate |
|------|-------------|-------------|----------|-------------|---------------------|
| Brown Rudnick | $945,483.43 | $500,000.00 | $25,515.59 | 799.60 | $1,182.44 (for fees billed) $625.31 (for fees sought) |
| Hagens Berman | $802,660.00 | $500,000.00 | $147,877.33 | Not provided | Unknown |

28.    Ms. Geiss also filed a motion to seal the exhibits attached to the Application. The grounds for the seal request are unclear because the mediation was terminated, the litigation concluded, and the plan confirmed and effective.

### IV.    Law and Argument

#### A.    *Sections 503(b)(3)(F) and 503(b)(4) Govern the Application and Does Not Allow for Recovery*

29.    Section 503(b)(3)(F) and 503(b)(4) together govern requests by committee members to recover their attorney fees for committee-related work, and does not allow committee members to be reimbursed for their own personal attorneys' fees. As a result, Ms. Geiss cannot recover her attorneys' fees, as sought in the Application.

30.    Section 503(b) provides in part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> [ . . . ]

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

[ . . . ]

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

[ . . . ]

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under **subparagraph (A), (B), (C), (D), or (E) of** paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(Emphasis added).

31.    The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA")

amended Section 503(b)(4) in 2005 to include the underlined language above. *See* Pub. L. 109-8

§ 1208 (2005). The 2005 amendment of Section 503(b)(4) added "specific references to

subparagraphs (A), (B), (C), (D) and (E) of section 503(b)(3). Members of committees appointed

under section 1102 are entitled to an administrative priority for expenses under section

503(b)(3)(F) but not reimbursement for professional fees since subsection (F) is excluded from

the subsections referenced in section 503(b)(4)." 4 COLLIER ON BANKRUPTCY ¶ 503.11, fn 1

(Alan N. Resnick & Henry J. Sommer eds., 16th ed).[3] *See also Davis v. Elliot Mgmt. Corp. (In re*

*Lehman Bros. Holdings Corp.)*, 508 B.R. 283 (S.D.N.Y. 2014). ("The problem is not that

[committee members' professional fees] are not listed—the list is not exhaustive—but instead

that the structure of §503(b)(3) and (4) glaringly exclude professional fee expenses for official

committee members. . . . Section 503(b)(3)(F) provides for the payment of the expenses incurred

by official committee members in performing committee work. Section 503(b)(3), however,

explicitly excludes *professional fee* expenses—that is, the cost of hiring lawyers or

accountants—from the expenses it authorizes. . . . Statutory history confirms that this omission

was intentional")(emphasis in original). *Id* at 290. Thus, post-BAPCPA, official committee

members may not recover any attorney fees under Sections 503(b)(3)(F) and 503(b)(4).

  32. Further, applications by official committee members to recover personal attorney

fees for committee-related work are governed by Section 503(b)(3)(F)—not 503(b)(3)(D).  It is a

canon of statutory construction that "the specific governs the general." *Morales v. Trans World*

*Airlines, Inc.*, 504 U.S. 374, 384 (1992). This canon "is perhaps most frequently applied to

statutes in which a general permission or authorization is contradicted by a specific lack of

authorization or permission. To eliminate the contradiction, the specific provision is construed as

an exception to the general one." *RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct.

2065, 2071 (2012). This canon "is not an absolute rule, but is merely a strong indication of

statutory meaning that can be overcome by textual indications that point in the other direction."

---

[3] The Application pulls only a selective quote from this section in support of the argument that Ms. Geiss can recover her attorneys' fees. However, the section stands for the proposition that such fees are not allowed. It begins by stating, "[a] member of an official committee is not entitled to an administrative expense for such member's professional fees." It concludes by stating, that in an appeal of an order authorizing a plan provision that paid a committee member's attorney's fees, "[t]he district court found that committee member expenses are included in section 503(b)(3)(F), but professional fees for committee members are specifically excluded in section 503(b)(4), and could not be included in a plan provision "that is merely a backdoor to administrative expenses that § 503 has clearly excluded."

*Id.* Section 503(b)(4) generally provides for the allowance of attorney fees of the entities who are described in Section 503(b)(3), including creditors who have made a substantial contribution in a case. However, Section 503(b)(4) also contains an exception to this general rule that does not authorize administrative expense status for the attorney fees and expenses of official committee members listed in Section 503(b)(3)(F)—that is, committee members who have incurred the attorney fees and expenses in the performance of their committee-related duties. To the extent Hagens Berman and Brown Rudnick did not provide services pursuing Ms. Geiss's own interests, but rather at the direction and request of the Committee or were for the type of activities listed in Section 1103(c), sections 503(b)(3)(F) and 503(b)(4) preclude reimbursement.

###### B. *The Creditors' Committee Did Not Retain Either Hagens Berman or Brown Rudnick.*

33. Ms. Geiss's attorneys' fees and expenses are also not allowable under Section 503(b) to the extent they were incurred on behalf of the Committee itself. The Committee did not retain either Hagens Berman or Brown Rudnick as required by Section 1103(a) and Rule 2014(a). Without court approval, a Committee may not employ counsel. Section 1103(a) provides:

> At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

(emphasis added). Section 1103(a) authorizes creditors' committees to employ attorneys "with prior court approval." *In re Lifeschultz Fast Freight, Inc.*, 140 B.R. 482, 485 (Bankr. N.D. Ill. 1992). The Bankruptcy Code and Bankruptcy Rules require "prior approval of employment" of an official committee's counsel. *Matter of Arkansas Co., Inc.*, 798 F.2d 645, 649 (3d Cir. 1986)

(citing, among other provisions, Section 1103(a)). *See also First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d at 399 (citing *Matter of Arkansas Co., Inc.*, *supra* ("We have previously emphasized the importance of the requirement of prior court approval for the hiring of committee counsel.")). Additionally, Fed. R. Bankr. P. 2014(a) permits an official committee to employ attorneys and other professionals pursuant to Section 1103 "only on application of the . . . committee." Prior court approval of committee counsel helps avoid "abuses and detrimental practices" such as cronyism and attorney control of bankruptcy cases, and apprises the court of proposed counsel's integrity, experience and competence. *See First Merchants*, 198 F.3d at 399-400 (citations omitted).

34.     Professionals who serve in a bankruptcy case may not be compensated from the bankruptcy estate unless the Court has authorized their retention. Section 330 of the Bankruptcy Code authorizes the Court to award "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses" to "a professional person employed under section 327 or 1103[.]"  *See also Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) (Section 330(a)(1) does not authorize chapter 7 debtor's counsel to be compensated from the estate unless counsel's employment is authorized under Section 327); *see also In re Borders Group, Inc.*, 456 B.R. 195, 210 (Bankr. S.D.N.Y. 2011) (legal fees for services performed by compensation consultant's outside counsel on behalf of chapter 11 debtors' estates were not recoverable where outside counsel's retention had not been authorized).

35.     The Application suggests that Hagens Berman and Brown Rudnick performed work at the Committee's direction. To the extent that either Hagens Berman or Brown Rudnick intended to provide any services on behalf of the Committee as a whole, the Application seeks compensation for committee counsel that the Committee did not apply to retain. To the extent

that the Committee intended to retain or employ either of these firms, it should have filed

retention applications and complied with all appropriate disclosure requirements of the

Bankruptcy Code and Rules. As neither Hagens Berman nor Brown Rudnick have an entered

retention order, neither Ms. Geiss nor the Committee are entitled to recover Hagens Berman's or

Brown Rudnick's attorney fees or expenses from the Debtors' bankruptcy estates.

> **C.      *Ms. Geiss Has Not Made a Substantial Contribution under Section 503(b)(3)(D).***

36.      Section 503(b)(3)(D) permits an entity to recover attorneys' fees if that entity

made a "substantial contribution" to an estate. In order for a committee member to show that it

made a substantial contribution, it must "perform extraordinary work to benefit the estate, above

and beyond normal committee duties" (*Lehman*, at 294) and also somehow distinguish its request

from the Supreme Court's directive in *RadLax*, *supra*, that general statutory provisions do not

trump the specific. Because Ms. Geiss has not made that showing, the U.S. Trustee submits that

the Application should still be denied.

37.      Section 503(b)(3)(D) provides administrative expense status for the actual,

necessary expenses of a creditor, indenture trustee, equity security holder, or ad hoc committee

that makes a substantial contribution in a chapter 11 case.  Section 503(b)(4) provides

administrative expense status for the reasonable fees and actual, necessary expenses of such

entity's attorneys and accountants. Section 503(b)(3)(D) must be narrowly construed. *See In re*

*Worldwide Direct, Inc.*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) (quoting *In re Granite*

*Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997)). Section 503(b)(3)(D) has two purposes:

(1) to encourage creditors to participate meaningfully in the reorganization process; and (2) to

minimize fees and administrative expenses and thereby maximize creditor recoveries. *Lebron v.*

*Mechem Financial Inc.*, 27 F.3d 937, 944 (3d Cir. 1994). A committee member seeking

reimbursement for attorneys' fees must show that it went above and beyond normal committee duties and performed extraordinary work.

38.     A creditor makes a substantial contribution if its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 27 F.3d at 943-44 (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). *See also In re Worldwide Direct, Inc.*, 334 B.R. at 121. A movant's acts are analyzed in hindsight with particular scrutiny upon the actual benefits provided to the entire bankruptcy estate. *RS Legacy Corp., et al.*, 2015 Bankr. LEXIS 2206, (Bankr. D. Del. 2015)(citation omitted). Creditors are presumed to act in their own interests until they prove, by a preponderance of the evidence, that "their efforts have transcended self-protection" and then may be reimbursed "if, but only if, the services 'directly and materially contributed' to the reorganization." *Lebron* at 944 (citations omitted). Extensive participation in a chapter 11 case, without more, is not a sufficient basis to justify a substantial contribution award. *Fenicle v. EFH Plan Adm'r Bd. (In re Energy Future Holdings Corp)*, 2019 U.S. Dist. LEXIS 14390 at 6 (D. Del 2019); *Leidos Eng'g, LLC v. Kior, Inc. (In re Kior, Inc.)*, 567 B.R. 451, 460 (D. Del. 2017). While the phrase "substantial contribution" does not lend itself to a set of exacting criteria, "a well-developed body of case law teaches that the sort of contribution that reaches the substantial threshold is exceedingly narrow." *In re RS Legacy Corp.*, 2016 Bankr. LEXIS 854, 2016 WL 1084400 at *4 (Bankr. D. Del. Mar. 17, 2016).

39.     When determining if an applicant has met its burden of proof, courts consider whether the services allegedly provided as a substantial contribution—

1)  were only for the benefit of the client or were for the benefit of all parties in the case;

2)  directly, significantly and demonstrably benefited the estate; and

3) were duplicative of the services provided by attorneys for the committee, the

    committees themselves, or the debtor and its attorneys.

*See In re Worldwide Direct, Inc.*, 334 B.R. at 122 (citing *See In re Buckhead America Corp.*,

161 B.R. 11, 15 (Bankr. D. Del. 1993)).

    40.    Routine activities of an official committee member are not a substantial

contribution. *See*, *e.g.*, *In re Worldwide Direct, Inc.*, 334 B.R. at 124 ("Routine activities of a

Committee member do not rise to the level of a substantial contribution. . . . [Applicant] was

simply fulfilling its fiduciary duties as a Committee member and performing the routine

Committee tasks delineated in section 1103(c)."); *In re Summit Metals, Inc.*, 379 B.R. 40, 66-67

(Bankr. D. Del. 2007) (denying substantial contribution to official committee member who had

pursued additional committee counsel and sought committee authority to pursue claims against a

defendant in shareholder lawsuits, "as these efforts are routine duties and powers delineated in

section 1103(a) and (c)."). *See also Matter of Columbia Gas System, Inc.*, 224 B.R. 540, 551-52

(Bankr. D. Del. 1998) (denying substantial contribution to Exxon, a member of the official

committee of unsecured creditors, and rejecting Exxon's assertion that it had played a leading

role in negotiating and drafting a settlement agreement with customers, where (among other

reasons), "as a member of the committee, Exxon had a fiduciary obligation to promote a

settlement that benefited the best[] interests of the creditor body.").

    41.    First, Ms. Geiss is presumed to have acted in her own self interest. As discussed

above, Ms. Geiss appears to assert that she incurred all or substantially all of her attorney fees at

the direction and request of the Creditors' Committee or in the negotiation or formulation of the

settlement of sexual misconduct claims that formed the basis of the Plan. But Ms. Geiss, as

proposed lead class plaintiff, has not proven that her efforts transcended that of the class and

substantially benefited the estate as a whole. The District Court rejected the settlement she and

her counsel presented and the estate had to spend additional funds and time renegotiating a

settlement with all parties, including general unsecured creditors. In hindsight, Ms. Geiss's

actions do not constitute a substantial contribution.

42.     Second, as an overarching matter, Ms. Geiss and her counsel may have taken the

lead in the settlement negotiations, but that settlement was premised as the basis for a

confirmable plan. Participation in the formulation of a plan is a committee duty expressly set

forth in Section 1103(c)(3). To the extent Ms. Geiss was performing the tasks delineated in

Section 1103(c), she has not made a substantial contribution.

43.     Third, Ms. Geiss has failed to prove that her counsels' activities did not duplicate

those of other retained professionals. Hagens Berman and Brown Rudnick's services appear

quite similar to those of other retained professionals. For example, under the plan and disclosure

statement categories, counsel retained by the Debtors and the Committee billed more than 5,000

hours. All or substantially all of the activities described in the Application pertain to the

negotiation or formulation of the Plan. The Application contends that nearly $2 million in

attorney fees spent attending mediations and negotiating a settlement on behalf of sexual

misconduct claimants was not duplicative. But in discussing what Hagens Berman and Brown

Rudnick did—for example, attending multiple mediations—the Application is clear that the

Committee also attended, and participated in, those mediations. The activities described in the

Application fall within the scope of services that the Committee retained Pachulski to perform.

Pachulski's retention application states that it would advise and represent the Committee on,

among other things, (1) its participation in the negotiation, formulation, or objection to any plan

of liquidation or reorganization; (2) investigations into the acts, conduct, assets, liabilities and

financial condition of the Debtors; (3) any proposed sale of the Debtors' assets; and (4) such other legal services that the Committee might require. These categories encompass all or substantially all of the activities described in the Application. The declarations submitted in support of the Application contain no references to duplication of effort at all and no description of any concrete measures either Hagens Berman or Brown Rudnick took to avoid duplication of effort, including amongst themselves. Ms. Geiss has not met her burden of proof on this issue and thus cannot demonstrate that her personal attorneys' fees constitute a substantial contribution.

### D.    *The Requested Fees are not Reasonable.*

44.    The Bankruptcy Code does not authorize the relief Ms. Geiss seeks in the Application, and she has failed to meet her burden of proof that she has made a substantial contribution that transcends personal interest and is different than her expected duties as a committee member. In addition, even if the Court were to determine that Ms. Geiss is eligible to receive administrative expense status for her attorneys' reasonable fees and actual, necessary expenses under Section 503(b), then the Court would need to determine whether the fees requested are reasonable. Neither Hagens Berman nor Brown Rudnick submitted materials sufficient to enable interested parties to determine whether their fees were reasonable. First, both firms sought to seal the entirety of their invoices, making no effort at any kind of targeted and selective redaction. Given that the plan has been confirmed and the settlement and mediation matters are concluded, it is unclear why any redaction, let alone the entirety of the billing records, is appropriate. Second, the invoices themselves are deficient, containing overwhelming numbers of vague entries, no project categories, no summaries of fees billed either by timekeeper or by matter, no disclosure of hourly or blended rates (for Brown Rudnick), and an excessive

amount of expenses with no explanation. Only the rare time entry is specific enough to inform parties what the attorney performing the service actually did—the rest are so vague as to be meaningless. Thus, the Application fails to comply with most, if not all, of the requirements for fee applications in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules. Without significant additional information, no party in interest can evaluate the Application under any type of reasonableness analysis. As a result, both Hagens Berman's and Brown Rudnick's fees are not reasonable and cannot be approved.

   **E.**   ***Ms. Geiss Has Not Met Her Burden of Proof on the Motion to Seal.***

45.    Ms. Geiss's motion to seal the entirety of the Application's exhibits is objectionable, as she has failed to satisfy her burden of establishing that she has satisfied one of the narrow exceptions to public access set forth in section 107(b) of the Bankruptcy Code. There is a "strong presumption in favor of public access to judicial records and papers, which has statutory, common law and First Amendment underpinnings . . . ." *In re Continental Airlines*, 150 B.R. 334, 341 (D. Del. 1993). "There is a strong presumption in favor of public access to bankruptcy proceedings and records.  During a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fishbowl." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 73 (Bankr. D. Del. 2006) (citations omitted).

46.    Section 107 of the Bankruptcy Code provides in relevant part:

   (a) Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

   (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

      (1)    protect an entity with respect to a trade secret or confidential research, development, or

commercial information; or

(2)     protect a person with respect to scandalous or
        defamatory matter contained in a paper filed
        in a case under this title.

47.     Fed. R. Bankr. P. 9018 provides:

On motion or on its own initiative, with or without notice, the court may make
any order which justice requires (1) to protect the estate or any entity in respect
of a trade secret or other confidential research, development, or commercial
information, (2) to protect any entity against scandalous or defamatory matter
contained in any paper filed in a case under the Code, or (3) to protect
governmental matters that are made confidential by statute or regulation.  If an
order is entered under this rule without notice, any entity affected thereby may
move to vacate or modify the order, and after a hearing on notice the court shall
determine the motion.

48.     Section 107(b) of the Bankruptcy Code provides a "narrow statutory exception"

to public access in bankruptcy cases." *In re Muma Services, Inc.*, 279 B.R. 478, 484 (Bankr. D.

Del. 2002). "Under § 107(a), unless a paper filed in a bankruptcy court falls within one of the

express exceptions in § 107(b) or (c), it must be open to public inspection. On the other hand, if a

paper falls within one of the express exceptions in § 107(b), on the request of a party in interest,

the bankruptcy court *shall* protect a person." *In re Food Management Group, LLC*, 359 B.R.

543, 554 (Bankr. S.D.N.Y. 2007). Sealing is "an extraordinary measure that is warranted only

under rare circumstances as 'public monitoring is an essential feature of democratic control.'" *In

re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) (citation omitted).

49.     The movant has the burden of showing that a request to seal documents falls

within the parameters of section 107(b). *See In re Food Management Group, LLC*, 359 B.R. at

561; *accord In re FiberMark, Inc.*, 330 B.R. 480, 504 (Bankr. D. Vt. 2005); *In re Oldco M

Corp.*, 466 B.R. 234, 237 (Bankr. S.D.N.Y. 2012). "It is not an easy burden nor should it be."  *In

re Gitto/Global Corp.*, 321 B.R. 367, 373 (Bankr. D. Mass. 2005), *aff'd* 2005 WL 1027348 (D.

Mass. May 2, 2005), *aff'd* 422 F.3d 1 (1st Cir. 2005).

50.    Ms. Geiss does not offer any evidence proving that attorney time records that relate to a terminated mediation and a post-effective-date confirmed plan are covered under any of the exceptions under section 107. The motion to seal contains no explanation and offers no evidence to justify sealing every single time entry and also does not explain why a more selective redaction of the time records was not possible. Unsupported arguments and conclusory statements do not satisfy section 107. The motion to seal should be denied.

**V.      Conclusion**

51.    Sections 503(b)(3)(F) and 503(b)(4) of the Bankruptcy Code govern requests by official committee members to recover their personal attorney fees and expenses for committee-related work. Post-BAPCPA, official committee members may not recover their attorney fees and expenses under Sections 503(b)(3)(F) and 503(b)(4). Ms. Geiss was the co-chair of the Committee. She incurred all or substantially all of her attorney fees and expenses for committee-related work. Therefore, Ms. Geiss is barred from recovery. Moreover, Ms. Geiss's attorneys' fees and expenses should not be allowed under Section 503(b) to the extent they were incurred on behalf of an official committee that did not seek to retain the attorneys as required by Section 1103(a) and Rule 2014(a).

52.    Alternatively, to the extent compensation is otherwise awardable under Section 503(b)(3)(D), Ms. Geiss has failed to carry her burden of showing that she made a substantial contribution in these cases. Even if the Court determines that Ms. Geiss has made a substantial contribution in these cases and is eligible to receive administrative expense status for her reasonable attorney fees and expenses, Ms. Geiss's attorneys' fees are not allowable under Section 503(b) to the extent they are unreasonably high.

53.     Finally, the motion to seal is not supported by evidence or proof, and should be denied.

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Application and the motion to seal and/or granting such other relief as this Court deems fair and just.

Dated: <u>May 18, 2021</u>
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE, REGIONS 3**
**AND 9**

By: <u>*/s/ Hannah McCollum*</u>
Hannah Mufson McCollum
Jane M. Leamy
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(202) 573-3275
hannah.mccollum@usdoj.gov