**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE WEINSTEIN COMPANY LLC, | ) |
| et al., | ) |
| | ) Case No.18-10601 (MFW) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Rel. Docs. 3363, 3387, 3395, |
| _____ | ) 846 |

**<u>MEMORANDUM OPINION IN SUPPORT OF ORAL RULING</u>**[1]

The Court issues this written opinion pursuant to Local Bankruptcy Rule 8003-2[2] in support of its oral ruling granting the Motion of Robert Weinstein (the "Movant") for Entry of an Order Enforcing the Sale Order and Granting Related Relief. (D.I. 3363.) The Motion was opposed by Spyglass Media Group, LLC (f/k/a Lantern Entertainment LLC) ("Spyglass"). (D.I. 3387.)

I.  <u>FACTUAL BACKGROUND</u>

On July 29, 2010, the Movant entered into an Employment Agreement with The Weinstein Company Holdings LLC ("TWC") pursuant to which he was granted, in addition to his base salary, an interest in certain net revenues received by the Debtors from

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014(c).

[2] That Rule provides that a "bankruptcy judge whose order is the subject of an appeal may, within seven (7) days of the filing date of the notice of appeal, file a written opinion that supports the order being appealed." Del. Bankr. L.R. 8003-2.

some of the films which the Movant produced (the "Participation Interest"). (D.I. 3363, Ex. 1 at § 4(b).) The Employment Agreement expired by its own terms on December 31, 2015. (Id. at § 1.)

On March 19, 2018, TWC and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. That same day, the Debtors filed a motion seeking approval of a sale of substantially all of their assets to Spyglass pursuant to an Asset Purchase Agreement (the "APA"). (D.I. 8; D.I. 846, Ex. 1.) On May 9, 2018, the Court entered an order (the "Sale Order") approving the Sale of assets to Spyglass under section 363 of the Bankruptcy Code and the assumption and assignment of certain contracts under section 365 of the Bankruptcy Code. (D.I. 846.) The Sale closed on July 13, 2018. (D.I. 1247.)

On June 16, 2021, the Movant filed a motion seeking a determination that he was entitled to payment from Spyglass of his Participation Interest in the film Scream 4 (the "Film"), which was one of the assets sold to Spyglass under the APA. (D.I. 3363.) He provided evidence that the revenues earned on that film had recently exceeded the threshold for payment of that interest. (Id. at Ex. 7.) Spyglass opposed the Motion. (Ex. 3387.) After hearing oral argument on August 5, 2021, the Court granted the Motion. An Order to that effect was entered on

August 9, 2021.  (D.I. 3403.)  Spyglass filed a notice of appeal that same day.  (D.I. 3408.)

II.  JURISDICTION

Pursuant to the Sale Order, the Court retained "jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA . . . . and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale."  (D.I. 846, ¶¶ 51, 66.) Furthermore, the Court had subject matter jurisdiction over this contested matter, as it is a core proceeding dealing with the interpretation of the Court's order authorizing sale of property of the estate.  28 U.S.C. §§ 1334(b), 157(b)(2)(A) & (O).  See, e.g., Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009) (concluding that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"); In re Allegheny Health Educ. & Rsch. Found., 383 F.3d 169, 176 (3d Cir. 2004) (holding that the bankruptcy court had core subject matter jurisdiction to interpret and give effect to its previous sale order); In re NE Opco, Inc., 513 B.R. 871, 875 (Bankr. D. Del. 2014) ("It is well-settled that a bankruptcy court retains jurisdiction to interpret and enforce its prior orders, especially where, as here, the bankruptcy court expressly retains jurisdiction to do so.").

The Court also had the authority to enter a final order on this contested matter. See, e.g., NE Opco, 513 B.R. at 875 (concluding that the bankruptcy court had the judicial power to enter a final order on the interpretation of its sale order).

III. DISCUSSION

    A.    Principles of Contract Interpretation

Where a written contract is clear and unambiguous, the Court need not look beyond its four corners. See, e.g., Bathla v. 913 Mkt., LLC, 200 A.3d 754, 759-60 (Del. 2018). In interpreting a written contract, the Court should endeavor to give effect to each provision and to avoid concluding that the contract is internally inconsistent or contradictory. See, e.g., Kuhn Const., Inc. v. Diamond State Port Corp., 990 A.2d 393, 396-97 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."); Axis Reinsurance Co. v. HLTH Corp., 993 A.2d 1057 (Del. 2010) ("[A] court will not adopt [an] interpretation that leads to unreasonable results, but instead will adopt [a] construction that is reasonable and that harmonizes the affected contract provisions.").

    B.    Application

The parties both agreed that the APA is unambiguous and that extrinsic evidence was, therefore, not required. At oral

argument, each cited different sections of the APA to support its position.

The Movant contended that under sections 2.3 and 2.4(j) of the APA, Lantern had assumed all liabilities for "Participations" for any period after the Closing Date for each Covered Title sold to it, including the Film.  He argued that the interest granted to him under the 2010 Employment Agreement was a Participation under the APA.  He also argued that because he had a 1.875% Participation interest in the Film, the Debtors did not own 100% of the Film and could only sell what they owned to Spyglass.  He contended that this interpretation is confirmed by section 3.10(a) of the APA in which the Debtors represented that they "owned all right, title, and interest in and to" the Film "free and clear of all liens (other than Permitted Liens)."  (D.I. 846, Ex. 1 at § 3.10(a) (emphasis added).)  The Disclosure Schedule to that section specifically listed the Movant's Participation Interest in the Film as currently owed by the Debtors.

Spyglass argued that the APA expressly provides that Spyglass did not assume any liability to the Movant for anything.  It points to section 2.4(b) which states that "Notwithstanding any other provision in this Agreement or any other writing to the contrary" Spyglass does not assume "any amounts due to Affiliates of any Seller Party, including any declared dividends or distributions."  It also points to section 2.4(f) which excludes

5

from liabilities it assumed under the APA "all Liabilities arising under any Contract that is not an Assigned Contract." It was not disputed that the Movant is an Affiliate of the Debtors and that his Employment Agreement was not assumed and assigned to Spyglass. Spyglass contended that the Sale Order did not eliminate Movant's claim, but merely provided that it was the Debtors, not Spyglass, that were required to pay it.

The Liquidating Trust, however, disputed this last contention. It argued that it was not reasonable to conclude that the Debtors sold the Film (and therefore, no longer owned it or the revenues it would generate in the future) but that the estate would be required to pay any claim for future revenues realized by that Film.

The Movant argued that Spyglass' interpretation is also contradicted by numerous sections of the APA, including section 2.3 in which Lantern assumed, inter alia, "all liabilities arising from operation of the Purchased Assets . . . ." The Movant argued that the Film is a Purchased Asset and the Participation Rights claimed by him arise from the operation (i.e., distribution) of the Film. He also contended that section 2.4(j) supported this interpretation of the APA because it provided that only pre-closing Participation Interest payments were Excluded Liabilities, which meant that post-closing Participation payments are not Excluded Liabilities.

Spyglass argued, however, that section 2.4(b) is the more specific provision as to the Movant and thus has precedence over the more general provisions of sections 2.1, 2.3 and 3.10 which related to Participation Interests held by numerous parties.

The Court agreed with the premise that the specific provisions of a contract control more general ones. See, e.g., Williams v. Medley Opportunity Fund II, LP, 965 F.3d 229, 239 (3d Cir. 2020) (noting that under Pennsylvania law, "the specific controls the general when interpreting a contract") (citations omitted); In re Premier Int'l Holdings, Inc., 443 B.R. 320, 335 (Bankr. D. Del. 2010) (acknowledging that the "rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract [and] if there was an inconsistency between a specific provision and a general provision of a contract . . . [the] specific provision controls."); In re IT Grp., Inc., 377 B.R. 471, 476 (Bankr. D. Del. 2007) ("It is a 'fundamental axiom of contract interpretation that specific provisions control general provisions.') (quoting Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp., 289 F.3d 373, 377 (5th Cir.2002)).

However, the Court disagreed with Spyglass' conclusion that section 2.4(b) was the more specific provision. That provision is very broad and states that _any_ liability owed to _any_ Affiliate of the Debtors was an Excluded Liability that Spyglass was not

7

assuming. (D.I. 846, Ex. 1 at § 2.4(b).) Instead, the Court concluded that the more specific provisions of the APA (and the Sale Order) were those that provided that the Movant's Participation Interest was preserved. Section 2.1 of the APA and paragraph 12 of the Sale Order provide that all assets owned by the Debtors are sold free and clear of all interests except for a narrow category of interests, Permitted Liens. (D.I. 846 ¶ 12 & Ex. 1 at § 2.1.) Permitted Liens are defined in the APA to include Participations, which are defined to include "contractually required payments . . . payable to or on behalf of any third party involved in the development or production" of any Film sold to Spyglass. (Id. at Ex. 1 at Ex. A.) Further, the schedule to section 3.10(a) of the APA specifically identifies the Movant's Participation Interest in the Film as a Permitted Lien. (Id. at Ex. 1 at § 3.10(a) and Schedule 3.10(a).) Therefore, the Court concluded that the general provision that stated that Spyglass was not assuming any liabilities to Affiliates of the Debtors did not trump the specific provisions of the APA (and the Sale Order) that sold the Film to Spyglass free and clear of all liens, claims, and interests, <u>except</u> the Movant's Participation Interest in that Film.

    The Court also questioned how the Court could interpret the APA to relieve Spyglass of the obligation to pay the Movant for his Participation Interest in the Film, when the APA and the Sale

Order specifically provided that the sale of the Film was subject to that interest. (D.I. 846 at AA, ¶ 12, & Ex. 1 at §§ 2.1 & 3.10(a).) The Sale Order also stated that "nothing in this Order or the APA shall be deemed to otherwise alter, modify, extend or enhance the Debtors' rights, title or interest to or under any Purchased Asset. . . ." (D.I. 846 ¶ LL.) In the APA, the Debtors specifically acknowledged that they owned the Film free and clear of all liens except Permitted Liens, which included the Movant's Participation Interest in the Film. (Id. Ex. 1 at §§ 3.5, 3.10(a) & Schedule 3.10(a).)

The Court likened Spyglass' argument to the suggestion that a buyer could purchase real estate under section 363 subject to a mortgage but nonetheless relieve itself of any obligation to pay that mortgage. The Court could find nothing in section 363 that would allow that result and nothing in the Sale Order that suggested that while the sale of the Film to Spyglass was subject to the Movant's Participation interest, Spyglass nonetheless was absolved of paying that interest. Because courts should not interpret a contract to be contrary to law, the Court concluded that Spyglass' interpretation of section 2.4 was not reasonable. See, e.g., Walsh v. Schlecht, 429 U.S. 401, 408 (1977) ("Since a general rule of construction presumes the legality and enforceability of contracts, ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where

9

the wording lends itself to a logically acceptable construction that renders them legal and enforceable." (citing 6A A. Corbin, Contracts §§ 1499, 1533 (1962)); <u>Doyle v. U.S. Sec'y of Labor</u>, 285 F.3d 243, 251 (3d Cir. 2002) (disfavoring a construction of an ambiguous release that would result in it being declared illegal in light of the "well-recognized principle of law requiring that ambiguous documents should not be deemed illegal where capable of constructions that will validate them").

Further, the Court noted that Spyglass' interpretation of section 2.4(b) of the APA would make that provision inconsistent with numerous other terms of the APA (particularly sections 2.3, 2.4(j), and 3.10(a)) and inconsistent with the Sale Order.[3] (D.I. 846 at ¶¶ AA, LL & 12.)  Instead, the Court found that the interpretation advocated by the Movant was the more reasonable and internally consistent interpretation:  that sections 2.1, 2.3, 2.4(j), and 3.10(a) of the APA and paragraph 12 of the Sale Order were the more specific provisions dealing with what interests in the assets sold to Spyglass were preserved and that section 2.4(b) was the more general provision stating that Spyglass was not assuming liabilities to Affiliates of the Debtors.

---

[3]     The Sale Order expressly states that "To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern." (D.I. 846 at ¶ 49.)

Because the Court found that there was no basis in the Sale Order or the APA under which Spyglass was relieved of the Movant's Participation Interest in the Film, the Court concluded that the sale was not free of that interest. Consequently, the Court orally granted the Motion to Enforce the Sale Order.

Dated: August 12, 2021                BY THE COURT:

                                                                  _____
                                                                  Mary F. Walrath
                                                                 United States Bankruptcy Judge

```
                       SERVICE LIST

Adam G. Landis, Esquire
Kerri K. Mumford, Esquire
Matthew R. Pierce, Esquire
Landis Rath & Cobb LLC
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Counsel for the Movant

Robert S. Chapman, Esquire
Sauer & Wagner LLP
1801 Century Park E
Los Angeles, California 90067
Counsel for the Movant

R. Craig Martin, Esquire
Matthew S. Sarna, Esquire
DLA PIPER LLP (US)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Counsel for Spyglass Media Group, LLC

Rachel Ehrlich Albanese, Esquire
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Counsel for Spyglass Media Group, LLC

Brett Ingerman, Esquire
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, MD 21209
Counsel for Spyglass Media Group, LLC

Colin Robinson, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Counsel for the Liquidating Trustee
```